ELLEN F. ROSENBLUM
Oregon Attorney General
MARC ABRAMS  #890149
Assistant Attorney-in-Charge
Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301
Telephone: (503) 947-4700
Fax: (503) 947-4791
Email:  marc.abrams@doj.state.or.us
          Additional attorneys listed on signature page

Attorneys for Plaintiffs State of Oregon, Kate Brown, and Ellen Rosenblum

TRACY P. REEVE  #891123
City Attorney
DENIS M. VANNIER  #044406
Senior Deputy City Attorney
Portland Office of the City Attorney
1221 SW Fourth Avenue, Suite 430
Portland, OR 97204
Telephone: (503) 823-4047
Fax: (503) 823-3089
Email:  Denis.Vannier@portlandoregon.gov

Attorneys for Plaintiff City of Portland

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| THE STATE OF OREGON; KATE BROWN, Governor; ELLEN ROSENBLUM, Attorney General; and THE CITY OF PORTLAND,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, President of the United States, in his official capacity; MATTHEW G. WHITAKER, Acting Attorney General of the United States, in his official capacity; and the UNITED STATES OF AMERICA,<br><br>Defendants. | Case No.  6:18-cv-01959-MC<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF** |

Page 1 -   **FIRST AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF**

Justice #9293999 v3

## INTRODUCTION

1.

The State of Oregon acting by and through its Governor Kate Brown and its Attorney General Ellen Rosenblum (together the "State of Oregon") and the City of Portland (the "City") bring this complaint to enforce the boundaries between the broad constitutional police powers of the State of Oregon under the Tenth Amendment and the federal government's power over the subject of immigration and the status of undocumented residents.

2.

Defendants seek to create a national requirement that state and local law enforcement assist in the federal government's immigration enforcement.  Defendants have implemented this national requirement by imposing sweeping new conditions on an established and congressionally appropriated federal grant program — the Edward Byrne Memorial Justice Assistance Grant ("Byrne JAG") — that has for years provided crucial support for law enforcement in Oregon.  Essentially, Defendants have "used the sword of federal funding to conscript state and local authorities to aid in federal civil immigration enforcement." *City of Chicago v. Sessions*, 888 F.3d 272, 277 (7th Cir. 2018).  In support of this effort, Defendants rely on two immigration statutes — 8 U.S.C. §§ 1373 and 1644 — that violate the Tenth Amendment to the U.S. Constitution.

3.

In response, the State of Oregon and the City now seek to protect their jurisdictions and their residents from Defendants' unconstitutional attempt to compel the State of Oregon and the City to enforce federal immigration policies in a manner contrary to their best interests.

4.

In their effort to impermissibly commandeer the resources of the State of Oregon and the City, Defendants have withheld Byrne JAG funds because the State of Oregon and the City have

Page 2 -   **FIRST AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF**

not acquiesced to Defendants' immigration enforcement demands.  As a result, the State of Oregon has been unlawfully deprived of $2,034,945 in federal funds for fiscal year ("FY") 2017 and expects to be deprived of $2,092,704 for FY 2018.

5.

Similarly, the City has been deprived of $391,515 for FY 2018.  In addition, while Defendants recently provided the City with an award notice in the amount of $385,515 for FY 2017 pursuant to a preliminary injunction won by the United States Conference of Mayors, of which the City is a member, *see City of Evanston et al. v. Sessions*, No. 18 c 4853, Dkt. No. 23 (N.D. Ill. Aug. 9, 2018) (stay lifted in *United States Conference of Mayors v. Sessions*, No. 18-2734, Dkt. No. 13 (7th Cir. Aug. 29, 2018)), Defendants still have not processed that award or disbursed any of those funds. Moreover, Defendants have stated that, while they will not enforce their immigration enforcement demands against the City's FY 2017 award while Defendants' action against the United States Conference of Mayors in the Seventh Circuit is pending, they may do so or seek reimbursement from the City if Defendants eventually prevail that action.

6.

In effect, Defendants seek to use the Byrne JAG program as a tool to further their immigration enforcement agenda.  Defendants appear to have targeted the State of Oregon and the City for denial of Byrne JAG funds based on their interpretation of two Oregon laws — ORS 181A.820 and ORS 180.805.  Defendants have implied in correspondence with Oregon officials that these statutes violate federal law by preventing cooperation between law enforcement and immigration authorities.  But in the statutes requiring Defendants to distribute Byrne JAG funds to states and localities, Congress did not impose any condition requiring states to have laws that aid Defendants' implementation of federal immigration policy.  For that reason, the Seventh Circuit recently concluded that Defendants' actions are unlawful. *Chicago v. Sessions*, 888 F.3d at 287. Defendants' decision to withhold this federally-mandated funding for

Page 3 -  **FIRST AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF**

law enforcement is contrary to law, good policing, and common sense.

7.

The State of Oregon and the City seek declaratory, injunctive, and mandamus relief to address Defendants' violations of federal statutes and the Constitution of the United States. Most importantly, the State of Oregon and the City seek a declaration that 8 U.S.C. §§ 1373 and 1644, which are the ultimate source of this conflict, are unconstitutional.

## PARTIES

8.

Plaintiff State of Oregon is a sovereign state in the United States of America existing under the constitution of the State of Oregon. Pursuant to 34 U.S.C. §§ 10151-10158 the State of Oregon is an eligible recipient of funds under the Byrne JAG program.

9.

Plaintiff Kate Brown is the Governor of the State of Oregon.

10.

Plaintiff Ellen Rosenblum is the Attorney General for the State of Oregon. Rosenblum is the chief law officer of the State of Oregon and attorney for the Oregon Criminal Justice Commission, as well as the head of the Oregon Department of Justice, authorized by Chapter 180 of the Oregon Revised Statutes to ensure that Oregon's laws are enforced.

11.

Brown in her official capacity as Governor of the State of Oregon, and Rosenblum, in her official capacity as Attorney General of the State of Oregon, bring this civil action on behalf of the State of Oregon, its agencies and political subdivisions. They also bring this action on behalf of the State as *parens patriae* to protect Oregon residents. Plaintiffs have the authority to bring this action under ORS 180.060 and the common law.

Page 4 -   **FIRST AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF**

12.

Plaintiff City of Portland is a municipal corporation of the State of Oregon duly organized and existing under the laws of the State of Oregon. Pursuant to 34 U.S.C. §§ 10151-10158 the City is an eligible recipient of funds under the Byrne JAG program.

13.

Defendant Donald J. Trump is President of the United States of America and is the head of the executive branch of the government of the United States of America. He is sued in his official capacity pursuant to 5 U.S.C. § 702.

14.

Defendant Matthew G. Whitaker is the Acting Attorney General of the United States of America, and he oversees the United States Department of Justice ("USDOJ"), including the Office of Justice Programs ("OJP"), which administers the Byrne JAG program. He is sued in his official capacity pursuant to 5 U.S.C. § 702.

**JURISDICTION AND VENUE**

15.

Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because this case involves a civil action arising under the U.S. Constitution and the laws of the United States. The Court also has jurisdiction under 28 U.S.C. § 1346 because this is a civil action against the federal government founded upon the U.S. Constitution and an Act of Congress. The Court has authority to provide relief under the Declaratory Judgment Act, 28 U.S.C. § 2201. The Court also has authority to provide mandamus relief pursuant to 28 U.S.C. § 1361.

16.

Pursuant to 28 U.S.C. § 1391(e)(1), venue is proper in the District of Oregon because the Oregon Attorney General and the State of Oregon have offices in Salem, Marion County, Oregon, the City has offices in Portland, Oregon, and Defendants have offices at 1000 SW Third

Page 5 -    **FIRST AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF**

Justice #9293999 v3

Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301
(503) 947-4700 / Fax: (503) 947-4791

Ave, Portland, Oregon, and at 405 E. 8th Avenue, Eugene, Oregon.

## INTRADISTRICT ASSIGNMENT

### 17.

Assignment to the Eugene Division of this District is proper pursuant to Local Rule 3-2(3) because Plaintiff State of Oregon has its capital in Salem, Marion County, Oregon.

## STANDING

### 18.

Plaintiffs bring this action to protect numerous important state interests harmed by Defendants' actions. This Court can provide the State of Oregon and the City with meaningful redress.

### 19.

Defendants' unlawful actions threaten the State of Oregon's proprietary interests in millions of dollars appropriated by Congress for the direct benefit of Oregon, its law enforcement agencies, and its residents. Defendants are required by statute to distribute Byrne JAG funds to the State of Oregon pursuant to a strict formula. *See* 34 U.S.C. § 10156(a). The State of Oregon is entitled to an allocation of over $2,034,945 in Byrne JAG funds for FY 2017. To date Defendants have withheld the State of Oregon's FY 2017 Byrne JAG funds. The State of Oregon has now applied for Byrne JAG funds for FY 2018, and expects to be entitled to receive $2,092,704 for FY 2018. Because Defendants have not paid the Byrne JAG funds for FY 2017, the State of Oregon expects that Defendants will also withhold the Byrne JAG funds for FY 2018. Absent injunctive relief, the State of Oregon will face significant funding shortfalls for critical law enforcement initiatives funded by Byrne JAG.

### 20.

Defendants' unlawful actions similarly threaten the City's proprietary interests in hundreds of thousands of dollars appropriated by Congress for the direct benefit of the City, its

Page 6 -    **FIRST AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF**

law enforcement agencies, and its residents. Defendants are required by statute to distribute Byrne JAG funds to the City pursuant to a strict formula. *See* 34 U.S.C. § 10156(a). For FY 2017, the City was entitled to an allocation of $385,515. This allocation was unlawfully withheld for over a year, and an award notice was only recently provided pursuant to a preliminary injunction. *City of Evanston et al. v. Sessions*, No. 18 c 4853, Dkt. No. 23 (N.D. Ill. Aug. 9, 2018) (stay lifted in *United States Conference of Mayors v. Sessions*, No. 18-2734, Dkt. No. 13 (7th Cir. Aug. 29, 2018)).  Notwithstanding that award notice, Defendants have not yet processed that award and the City has not yet received the $385,515. The City has now applied for Byrne JAG funds for FY 2018 and expects to be entitled to $391,684 for FY 2018. In the FY 2018 Byrne JAG solicitation, the Department of Justice specifically noted that it would issue awards by September 30, 2018. In early October 2018, USDOJ began releasing FY 2018 Byrne JAG award letters. To date, USDOJ has issued 752 FY 2018 local awards, totaling almost $59 million. Despite the release of a substantial portion of FY 2018 funding, USDOJ has not yet issued the City's award. Absent injunctive relief, the City will face significant funding shortfalls for critical law enforcement initiatives funded by Byrne JAG.

21.

Defendants' actions threaten the physical and economic health and well-being of Oregon residents, including those assisted by Oregon law enforcement entities entitled to receive Byrne JAG funds.  Oregon has a legitimate interest in preventing present and future harm to its residents.  Governor Brown and Attorney General Rosenblum therefore have authority to commence this legal action under the doctrine of *parens patriae*.

22.

The Oregon Attorney General, as the State of Oregon's chief law officer, is uniquely situated to seek declaratory and injunctive relief that protects the rights of law enforcement entities and state and local government entities across Oregon. In addition, Defendants have

Page 7 -   **FIRST AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF**

Justice #9293999 v3

Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301
(503) 947-4700 / Fax: (503) 947-4791

specifically and impermissibly required the Oregon Attorney General to certify the State of Oregon's compliance with unconstitutional federal requirements.

23.

The City Attorney is the chief legal officer for the City of Portland. Defendants have specifically and impermissibly required the City Attorney to certify the City's compliance with unconstitutional federal requirements.

24.

In addition to requiring the Oregon Attorney General and the City Attorney to certify that the State and the City, respectively, comply with unconstitutional statutes, Defendants are purporting to require certification that subgrantees comply with those unconstitutional provisions. The State of Oregon has numerous subgrantees, many of them counties and cities that exercise a significant degree of political independence pursuant to Oregon's constitution and laws. The City, meanwhile, also has county and city subgrantees that are politically independent of the City. Ascertaining subgrantee compliance with unconstitutional statues is an unjustified burden. And it is exacerbated by the inexplicably broad interpretation of the relevant statutes that Defendants have endorsed. Defendants have stated in other legal proceedings that "information regarding citizenship or immigration status" under 8 U.S.C. § 1373 encompasses any "information critical in applying the 'immigration laws,'" including information helpful to Defendants in effectuating the "removal of aliens."

25.

Earlier this year, United States Secretary for Homeland Security Kirstjen Nielsen stated that, at her department's request, the USDOJ was exploring commencing criminal prosecutions under 8 U.S.C. § 1324 against state and local elected officials of jurisdictions that do not actively assist federal immigration enforcement. In January, then-acting Director of the U.S. Immigration and Customs Enforcement ("ICE") Tom Homan, similarly stated, "we gotta start charging some

Page 8 -   **FIRST AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF**

Justice #9293999 v3

Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301
(503) 947-4700 / Fax: (503) 947-4791

of these politicians with crimes" and "hold back their funding."  The certifications that Defendants are requiring grant recipients to submit echo these public comments, threatening "criminal prosecution" of state and local officials and "holding back funding" from jurisdictions that do not actively assist Defendants' immigration enforcement efforts.

26.

Finally, Defendants' actions directly injure the sovereignty of the State of Oregon and the City.  The federal statutes at issue, 8 U.S.C. §§ 1373 and 1644, require the State of Oregon and the City to exercise their police power in a manner contrary to the best interests of Oregon and City residents.

**FACTUAL AND LEGAL BACKGROUND**

27.

This case presents a conflict between federal immigration enforcement policies and the State of Oregon's and the City's exercise of their broad police powers under the Tenth Amendment.

28.

"Immigration policy shapes the destiny of the Nation." *Arizona v. United States*, 567 U.S. 387, 415 (2012).  Plaintiffs do not dispute that the United States has significant power over the subject of immigration and the status of undocumented residents.  *Id.* at 394.  "The federal power to determine immigration policy is well settled.  Immigration policy can affect trade, investment, tourism, and diplomatic relations for the entire Nation, as well as the perceptions and expectations of aliens in this country who seek the full protection of its laws." *Id.* at 395.

29.

While the federal government has significant power to regulate immigration, "[w]ith power comes responsibility, and the sound exercise of national power over immigration depends

Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301
(503) 947-4700 / Fax: (503) 947-4791

on the Nation's meeting its responsibility to base its laws on a political will informed by searching, thoughtful, rational civic discourse." *Arizona v. United States*, 567 U.S. 387, 416. That responsibility also requires ensuring that the federal immigration laws do not encroach on the states' sovereign authority to exercise their broad police powers according to their own political will.

30.

The authority of the federal government with regard to immigration does not diminish the separate sovereignty of the states:

> When the original States declared their independence, they claimed the powers inherent in sovereignty—in the words of the Declaration of Independence, the authority "to do all * * * Acts and Things which Independent States may of right do."  The Constitution limited but did not abolish the sovereign powers of the States, which retained "a residuary and inviolable sovereignty."  *The Federalist* No. 39, p. 245 (C. Rossiter ed. 1961).  Thus, both the Federal Government and the States wield sovereign powers, and that is why our system of government is said to be one of 'dual sovereignty.'

*Murphy v. NCAA*, 138 S. Ct. 1461, 1475 (2018).

31.

A core aspect of state sovereignty is the notion that Congress cannot issue legislative directives to states in their role as states. "Conspicuously absent from the list of powers given to Congress is the power to issue direct orders to the governments of the States."  *Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. at 1476.

**Immigration and Nationality Act Sections 1373 and 1644**

32.

Through the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 et seq., Congress granted the executive branch significant power over the regulation and enforcement of immigration laws in the U.S.  *See Arizona v. United States*, 567 U.S. at 395-96.

Justice #9293999 v3

Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301
(503) 947-4700 / Fax: (503) 947-4791

33.

Section 1373 of the INA, which Congress passed in 1996, prohibits state and local governments from restricting government officials or entities from communicating information regarding immigration status to ICE. It states in relevant part:

(a) In General.  Notwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual.

(b) Additional Authority of Government Entities.  Notwithstanding any other provision of Federal, State, or local law, no person or agency may prohibit, or in any way restrict, a Federal, State, or local government entity from doing any of the following with respect to information regarding the immigration status, lawful or unlawful, of any individual:

(1) Sending such information to, or requesting or receiving such information from, the Immigration and Naturalization Service.

(2) Maintaining such information.

(3) Exchanging such information with any other Federal, State, or local government entity.

8 U.S.C. § 1373.

34.

In 1996, Congress also passed Section 1644 of the INA, which similarly bars state and local government officials or entities from restricting how they communicate information regarding immigration status to ICE. It states:

Notwithstanding any other provision of Federal, State, or local law, no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from the Immigration and Naturalization Service information regarding the immigration status, lawful or unlawful, of an alien in the United States.

8 U.S.C. § 1644.

35.

Both of these statutes specifically regulate conduct by states (and political subdivisions of states) in their sovereign capacities.  Specifically, the statutes purport to prohibit state and local

Page 11 -  **FIRST AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF**

Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301
(503) 947-4700 / Fax: (503) 947-4791

governments from enacting laws (or adopting other policies) that govern the official conduct of public officers and employees.

### Oregon's Immigration Enforcement Statutes

36.

The State of Oregon has enacted laws regarding the participation of local and state law enforcement agencies in federal immigration enforcement.  In 1987, Oregon enacted ORS 181A.820, which bars Oregon law enforcement agencies from expending money for the purpose of detecting or apprehending persons whose only violation of law is that they are persons of foreign citizenship present in the United States in violation of federal immigration laws.

37.

In 2017, the Oregon Legislature enacted ORS 180.805, which the legislature drafted specifically to comply with Section 1373.  The statute, in pertinent part, provides as follows:

> (1) Except as required by state or federal law, a public body may not disclose, for the purpose of enforcement of federal immigration laws, the following information concerning any person, whether current or otherwise:
>> (a) The person's address;
>> (b) The person's workplace or hours of work;
>> (c) The person's school or school hours;
>> (d) The person's contact information, including telephone number, electronic mail address or social media account information;
>> (e) The identity of known associates or relatives of the person;
>> (f) The date, time or location of the person's hearings, proceedings or appointments with the public body that are not matters of public record; or
>> (g) Information described in paragraphs (a) through (f) of this subsection with respect to known relatives or associates of the person.
>
> ***
>
> (3)(a) If a public body collects information concerning a person's citizenship or immigration status, the public body may decline to disclose the information unless disclosure is required by:
>> (A) State or federal law;
>> (B) A court order; or
>> (C) A warrant authorized by a court.
>
> ***

Page 12 -  **FIRST AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF**

Justice #9293999 v3

Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301
(503) 947-4700 / Fax: (503) 947-4791

(5) Nothing in this section prohibits any public body from complying with a federal immigration authority as required by federal law.
\*\*\*

38.

Oregon's state and local officials are responsible for policing, protecting, and serving all residents, including more than 389,000 foreign-born individuals, who live in the State.  To achieve those goals, the State of Oregon enacted the foregoing statutes as an exercise of the State's police power to regulate the health, welfare, and public safety of its residents.  Those laws are instrumental to building the trust necessary to ensuring that victims report crimes to law enforcement so that perpetrators are apprehended before harming others.  Building that trust has historically been difficult in immigrant communities, where residents often fear—regardless of immigration status—that engaging with law enforcement could result in deportation.  When local and state officials engage in immigration enforcement, as Defendants contemplate, vulnerable victims and witnesses are less likely to come forward to report crimes, creating a danger to all Oregon residents.

39.

Moreover, those laws ensure that state and local resources are devoted to fulfilling state and local policing responsibilities.  State and local law enforcement agencies are not required to expend their limited resources on enforcing immigration policies that are a federal responsibility.

40.

Oregon is not alone in adopting this approach.  Across the country, many other state and local jurisdictions have enacted laws to limit state and local law enforcement of federal immigration policy. *See e.g. City of Chicago v. Sessions*, 888 F.3d at 281; *City of Philadelphia v. Sessions*, 280 F. Supp. 3d 579, 591, 602 (E.D. Pa. 2017). Significantly, Oregon law does not interfere with Defendants' lawful pursuit of its civil immigration activities in Oregon. *See City of Chicago v. Sessions*, 888 F.3d at 281 ("The federal government can and does freely operate in 'sanctuary' localities.").

Page 13 -  **FIRST AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF**

## The City of Portland and its Police Bureau Policies

41.

In accordance with ORS 181A.820, the Portland Police Bureau does not enforce federal immigration laws. In January 2017, the Portland Chief of Police explained that compliance with ORS 181A.820, and positive engagement with refugees and immigrants in Portland, improves public safety.

42.

Portland Police Bureau Policy 810.10 states: "The Portland Police Bureau is committed to protecting, serving and supporting all residents and community members of the City of Portland, regardless of their national origin or immigration status. Accordingly, no Bureau member shall interrogate, detain, arrest, initiate an investigation or take other official police action against an individual solely on the basis of either of these aspects of their identity."

43.

Portland Police Bureau Policy 810.10 further states: "When necessary, the Bureau partners with [the Department of Homeland Security ("DHS")] to assist in their efforts of managing emergency situations and combatting a wide array of global criminal threats related to drug and human trafficking, terrorism, and human rights violations.  Although the Bureau supports the DHS mission as it relates to confronting these security and human rights threats, the Bureau is steadfast in its commitment to contributing to the City's efforts to create a welcoming environment that encourages diversity and inclusivity."

44.

Portland Police Bureau Policy 810.10 further states: "To the extent that the mission of DHS, as communicated to the Bureau, is enforcement of immigration laws, the Bureau will follow the direction of the state statutory law and City ordinances by not enforcing or assisting in the enforcement of federal immigration laws, as that is a federal function.  Moreover, the Bureau

Page 14 -  **FIRST AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF**

shall not expend personnel, equipment, monetary, or other resources to enforce or assist in the enforcement of federal immigration laws, unless in a manner that comports with applicable law."

45.

Portland Police Bureau Policy 810.10 further states: "Members shall not arrest a person for the sole reason that they are an undocumented immigrant" and "shall not assist ICE, CBP or ERO as it pertains to the enforcement of federal immigration laws." However, "Where necessary to further the investigation of a federal, state or local crime unrelated to the enforcement of federal immigration laws, members may exchange information with investigative branches of DHS (*e.g.*, HSI) or the federal government."

46.

Finally, Portland Police Bureau Policy 810.10 provides: "Federal law prohibits the Bureau from limiting or in any way restricting the exchange of information regarding the citizenship or immigration status, lawful or unlawful, between a government official and an agency responsible for the enforcement of federal immigration laws. However, the Bureau shall not require members to disclose or otherwise share information regarding an individual's immigration status with any federal immigration law enforcement agencies."

### The Byrne JAG Program

47.

The USDOJ, overseen by Defendant Whitaker and acting through the OJP, administers the Byrne JAG program. *See* 34 U.S.C. §§ 10151-10158.

48.

The Byrne JAG program is a mandatory formula grant: it requires awarding grant funds based on a statutorily-defined formula, and the federal government must disburse funds in the amount dictated by that formula if an applicant meets the requirements set forth in the authorizing statutes. 34 U.S.C. § 10156.

Page 15 -  **FIRST AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF**

49.

Byrne JAG awards are provided to each state, as well as to certain local jurisdictions within each state.  Under the governing statute, defendants "shall" allocate all congressionally-appropriated funds to each state and qualifying unit of local government according to a prescribed methodology. 34 U.S.C. § 10156(a), (b), (c), (d).

50.

The Byrne JAG program supports state and local law enforcement efforts by providing an additional source of funding for personnel, equipment, training, and other criminal justice needs. 34 U.S.C § 10152.   The purposes of the grant include: supporting law enforcement programs, reducing recidivism, conducting crime prevention and education programs for at-risk youth, and supporting programs for crime victims and witnesses.

51.

The Byrne JAG program merges two earlier programs: the Edward Byrne Memorial State and Local Law Enforcement Assistance Program grants; and Local Law Enforcement Block Grants. *See* Pub. L. No. 109-162, 119 Stat. 2960, 3094 (2006).  In merging those two programs, Congress identified eight types of programs that the grant was intended to fund: (1) law enforcement programs; (2) prosecution and court programs; (3) prevention and education programs; (4) corrections and community corrections programs; (5) drug treatment and enforcement programs; (6) planning, evaluation, and technology improvement programs; (7) crime victim and witness programs; and (8) mental health programs and related law enforcement and corrections programs.  34 U.S.C. § 10152(a)(1)(A)-(H).

52.

For FY 2017, Congress has appropriated $396 million for the Byrne JAG program. Consolidated Appropriations Act of 2017, Pub. L. No. 115–31, 131 Stat. 135, 203.

Page 16 -  **FIRST AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF**

Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301
(503) 947-4700 / Fax: (503) 947-4791

53.

The City is a qualifying unit of local government under the Byrne JAG statute, and Federal law entitles the State of Oregon and the City to Byrne JAG funds so long as they propose to use them to achieve one of the eight criminal justice goals articulated in the authorizing statute. *See* 34 U.S.C. § 10152(a)(1). The State of Oregon may retain some of these funds for itself, *see id*. § 10156(c)(1), and must disburse the rest to its local governments, *see id*. § 10156(c)(2).

54.

The State of Oregon has received Byrne JAG funds every year since the program's creation in 2005. The State of Oregon has used Byrne JAG funds to support drug treatment and enforcement programs, mental health programs, and technology improvement programs among other efforts. With respect to the FY 2017 Byrne JAG award, the State of Oregon planned to use the grants to support specialty courts designed to address root causes of criminal activity and to provide statewide assistance to local crime victims. For FY 2018, the State of Oregon plans to use Byrne JAG funds to support specialty court programs that target non-violent felony offenders in an integrated, systemic approach to reduce drug use and recidivism while increasing public safety.

55.

To date, the State of Oregon has not received the FY 2017 grant totaling $2,034,945 that Congress has appropriated in law enforcement funding to the State of Oregon and its political subdivisions pursuant to the Byrne JAG program.

56.

For FY 2018, the State of Oregon anticipates receiving $2,092,704, but the State anticipates that Defendants will also withhold the FY 2018 funds.

Page 17 - **FIRST AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF**

57.

The City has also received Byrne JAG funds every year since the program's creation in 2005. The City has used Byrne JAG funds, among other things, to purchase bulletproof vests and special-threat plates, tactical medical kits, GPS systems, and to fund a victims' advocate in the Sex Crimes Unit. In addition, the City, as authorized by the Byrne JAG statute, has passed on funds to subrecipients Multnomah County and the City of Gresham, who have used those Byrne JAG funds to support, among other things, a Neighborhood Deputy District Attorney, police equipment, and a parole and probation officer.

58.

The City has now been awarded, but has not yet received, the FY 2017 JAG award totaling $385,515 that Congress has appropriated in law-enforcement funding for the City and its subgrantees pursuant to the Byrne JAG program. Moreover, Defendants have indicated that they may seek to enforce immigration enforcement requirements against the City or seek reimbursement of any disbursed FY 2017 funds from the City if Defendants prevail in their separate action against the United States Conference of Mayors.

59.

For FY 2018, the City anticipates receiving $391,694 in Byrne JAG funds. Of those FY 2018 funds, $189,585 are to be retained by the City for its Police Bureau, $148,960 are to be passed on to subgrantee Multnomah County for its district attorney's office, and $53,149 are to be passed on to subgrantee City of Gresham for its police bureau.  The City anticipates that Defendants will withhold the FY 2018 funds.

**Defendants Impose Three Unlawful Conditions on Byrne JAG Funds**

60.

The Byrne JAG authorizing statute, 34 U.S.C. § 10153(a)(5)(D), requires that jurisdictions comply with "applicable Federal laws."

Page 18 -  **FIRST AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF**

61.

On July 25, 2017, Defendants announced they were seeking state and municipal applications for FY 2017 Byrne JAG funds.  In this solicitation, Defendants announced new requirements for every state and municipality receiving FY 2017 Byrne JAG funds, including the three unlawful, immigration-related conditions that are the subject of this action.  This complaint refers to those conditions as the "Compliance Condition," the "Access Condition", and the "Notice Condition."

62.

For the purposes of this lawsuit, and consistent with its correspondence with OJP, the State of Oregon does not allege or concede that it is out of compliance with the Compliance, Access or Notice Conditions.  Nor does the City of Portland allege or concede that its Police Bureau policies are inconsistent with those conditions.  Plaintiffs' compliance or noncompliance is ultimately immaterial to the question whether Defendants have authority to impose the conditions.  Under the governing statutes, Plaintiffs are entitled to Byrne JAG funds and cannot be required to meet these additional, unconstitutional, conditions.

**A. Compliance Condition.**

63.

In the FY 2017 Byrne JAG solicitation, Defendants announced that, "in order to validly to accept an FY 2017 [Byrne] JAG award, the chief legal officer of the applicant State must properly execute, and the State must submit, the specific certification regarding compliance with 8 U.S.C. § 1373 attached to this solicitation as Appendix II."  Similarly, Defendants announced that, "in order validly to accept a Fiscal Year (FY) 2017 JAG award, the chief legal officer of the applicant unit of local government must properly execute, and the unit of local government must submit, the specific certification regarding compliance with 8 U.S.C. § 1373 attached to this solicitation as Appendix II."  The Attorney General of Oregon is the State's chief legal officer, as

Page 19 -  **FIRST AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF**

Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301
(503) 947-4700 / Fax: (503) 947-4791

a result, the Attorney General must execute and submit certification regarding the State of Oregon's compliance with 8 U.S.C. § 1373.

64.

Defendants' FY 2018 Byrne JAG solicitation added additional language requiring the jurisdictions' chief legal officer to certify compliance with 8 U.S.C. § 1644. Defendants' FY 2018 Certificate of Compliance confirms that the Attorney General (on behalf of the State of Oregon) and the City Attorney (on behalf of the City) must certify compliance with 8 U.S.C. § 1644. As a result, for the FY 2018 Byrne JAG, the Attorney General and the City Attorney must execute and submit certification regarding the State of Oregon's and the City's respective compliance with 8 U.S.C. §§ 1373 and 1644.

**B. The Access and Notice Conditions.**

65.

Defendants' FY 2017 state and local government solicitations also announced the application of two additional "express conditions" relating to immigration enforcement – the Access Condition and the Notice Condition.

66.

Pursuant to the Access Condition, Defendants require recipients of Byrne JAG funds to "permit personnel of the U.S. Department of Homeland Security ("DHS") to access any correctional or detention facility in order to meet with an alien (or an individual believed to be an alien) and inquire as to his or her right to be or remain in the United States."

67.

Pursuant to the Notice Condition, Defendants require recipients of Byrne JAG funds to "provide at least 48 hours' advance notice to DHS regarding the scheduled release date and time of an alien in the jurisdiction's custody when DHS requests such notice in order to take custody of the alien pursuant to the Immigration and Nationality Act."

Justice #9293999 v3

Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301
(503) 947-4700 / Fax: (503) 947-4791

**Defendants Withhold the FY 2017 Byrne JAG Award**

68.

The Oregon Criminal Justice Commission ("OCJC") is the Oregon state agency that receives and administers Byrne JAG funds on behalf of Oregon.  OCJC responded to Defendants' solicitation by the deadline of August 25, 2017.  OCJC's application proposed to use Byrne JAG funds to achieve the criminal justice goals articulated in the authorizing statute, *see* 34 U.S.C. § 10152(a)(1), and OCJC's approach satisfied all other lawfully imposed requirements.

69.

Similarly, the City responded to Defendants' solicitation by the deadline of August 25, 2017.  The City's application proposed to use Byrne JAG funds to achieve the criminal justice goals articulated in the authorizing statute and satisfied all other lawfully imposed requirements.

70.

According to the FY 2017 Byrne JAG solicitation, Defendants anticipated issuing Byrne JAG award notifications by September 30, 2017.  To date, however, Defendants have not issued an award notification or otherwise contacted OCJC or any other state entity regarding an acceptance of Oregon's FY 2017 Byrne JAG applications. And while Defendants have issued an award notification to the City pursuant to a preliminary injunction, *City of Evanston et al. v. Sessions*, No. 18 c 4853, Dkt. No. 23 (N.D. Ill. Aug. 9, 2018) (stay lifted in *United States Conference of Mayors v. Sessions*, No. 18-2734, Dkt. No. 13 (7th Cir. Aug. 29, 2018)), Defendants have not processed the City's award or released the funds related to the FY 2017 Byrne JAG award to the City at this time.

71.

Instead of responding directly to Oregon's Byrne JAG application, Defendants responded

Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301
(503) 947-4700 / Fax: (503) 947-4791

in a letter to the State dated November 15, 2017, claiming that ORS 181A.820 and ORS 180.805 appear to conflict with 8 U.S.C. § 1373.  OJP's letter did not explain OJP's view that ORS 181A.820 and ORS 180.805 conflict with 8 U.S.C. § 1373(a).  Instead it requested a narrative detailing any Oregon "laws, policies, or practices that violate section 1373," including ORS 181A.820 and ORS 180.805.  OCJC replied with a detailed explanation that the laws do not conflict with federal law.

72.

On April 17, 2018, the OJP sent an email to OCJC in which it explained that "The Bureau of Justice Assistance (BJA) has not awarded its FY 2017 Byrne JAG grants due to the issuance of a nationwide injunction by a U.S. District Court on September 15, 2017," but that in the meantime "state and local applicants for Byrne JAG grants under the FY 2017 program may obligate and expend their own funds on allowable JAG projects after the start date of October 1, 2016.  Once the grants are awarded, FY 2017 Byrne JAG funds received, if any, may be used for reimbursement of those expenditures."

73.

Defendants' imposition of immigration-related conditions on FY 2017 Byrne JAG funding has been litigated in several courts, including the Seventh Circuit, which concluded in April 2018 that the USDOJ lacked authority to impose the Access and Notice Conditions.  *City of Chicago v. Sessions*, 888 F.3d at 277; *see also City of Chicago v. Sessions,* No. 17CV5720, 2018 WL 3608564, at *11-*12 (N.D. Ill. July 27, 2018).  Two district courts have also held that Section 1373 violates the Tenth Amendment and that as a result, Defendants may not condition the receipt of Byrne JAG funds on compliance with an unconstitutional statute.  *City of Chicago v. Sessions,* 2018 WL 3608564, at *5-*11 ("Section 1373 is this unconstitutional on its face."); *City of Philadelphia v. Sessions*, 309 F. Supp. 3d 289, 328-31 (E.D. Pa. 2018) (holding Section 1373 unconstitutional under the anti-commandeering doctrine).

Page 22 -  **FIRST AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF**

74.

Despite these rulings, Defendants continue to withhold State of Oregon's FY 2017 Byrne JAG funds.  Moreover, while the City, as a member of the United States Conference of Mayors, is expressly included in a similar ruling, *see City of Evanston et al. v. Sessions*, No. 18 c 4853, Dkt. No. 23 (N.D. Ill. Aug. 9, 2018) (stay lifted in *United States Conference of Mayors v. Sessions*, No. 18-2734, Dkt. No. 13 (7th Cir. Aug. 29, 2018)), it has still not received its FY 2017 Byrne JAG funds.  Defendants' correspondence with the State of Oregon regarding Oregon's 2017 Byrne JAG application indicates that Defendants seek to override Oregon policy designed to encourage all residents to interact with state and local law enforcement, and with government agencies.

**Defendants Impose Further Conditions on FY 2018 Byrne JAG Funds**

75.

On July 20, 2018, Defendants announced that they would impose a number of immigration-related conditions on jurisdictions seeking FY 2018 Byrne JAG funding.

76.

Two of those conditions are materially identical to the Access and Notice Conditions discussed above.  Defendants have also expanded the Compliance condition to incorporate 8 U.S.C. § 1644 in addition to § 1373.  Given the substantive similarities between the two federal statutes, this addition does not appear to meaningfully change the nature of the Compliance Condition.

77.

In addition to the certification required with regard to the Compliance Condition, the 2018 application requires applicants to respond to questions related to the Compliance Condition:

(1)     Does your jurisdiction have any laws, policies, or practices related to whether, when, or how employees may communicate with DHS or ICE?

Page 23 -  **FIRST AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF**

Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301
(503) 947-4700 / Fax: (503) 947-4791

(2)    Is your jurisdiction subject to any laws from a superior political entity (*e.g.,* a state law that binds a city) that meet the description in question 1?

Answers, and potentially additional material, "must be provided by the applicant as part of the JAG application," as a condition of receiving Byrne JAG funds.

78.

The FY 2018 Byrne JAG application also states that the "reasonable costs" of complying with the Notice and Access Conditions, including the costs of "honoring any duly authorized requests from DHS that is encompassed by these conditions, will be allowable costs under the award." That provision further demonstrates Defendants' usurpation of the Congressional spending power. Byrne JAG funds, which Congress explicitly directed to support local criminal-justice efforts, will instead be used to unlawfully fund federal immigration enforcement.

79.

The FY 2018 Byrne JAG applications also purport to condition awards on the jurisdiction's chief legal officer (the Attorney General for the State of Oregon, and the City Attorney for the City of Portland) certifying that the jurisdiction will not "violate, or aid or abet any violation of, 8 U.S.C. §1324(a) (forbidding any 'person,' in 'knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law,' to 'conceal, harbor, or shield from detection, or attempt to conceal, harbor, or shield from detection, such alien in any place, including any building or any means to aid or abet in the commission of the preceding acts')."

**Defendants Lack Authority to Impose the Compliance Condition**

80.

Because 8 U.S.C. §§ 1373 and 1644 violate the Tenth Amendment, Defendants may not rely on the Compliance Condition to withhold Plaintiffs' FY 2017 Byrne JAG funds, or to reject Plaintiffs' FY 2018 Byrne JAG applications. The Tenth Amendment limits Congress's legislative authority to those powers enumerated in the Constitution. Congress may not directly

Page 24 -  **FIRST AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF**

Justice #9293999 v3

compel states and their political subdivisions to enact a regulation or enforce a federal regulatory program, may not conscript state officers for such purpose, and may not prohibit a state from enacting laws. This constitutional anti-commandeering principle "is one of the Constitution's structural protections of liberty." *Printz v. United States*, 521 U.S. 898, 921 (1997).  Among other benefits, the anti-commandeering principle ensures that the sovereign states are free to legislate as they see fit to promote the safety and welfare of their residents.

81.

The Supreme Court recently affirmed that the anti-commandeering principle prevents Congress from issuing direct orders to state legislatures.  *Murphy v. NCAA*, 138 S. Ct. at 1478. This is precisely what 8 U.S.C. § 1373(a) and (b) and § 1644 do.  These provisions dictate to states like Oregon that they may not promulgate laws or regulations that prohibit state or local officials from sharing immigration-status information with federal officials, even if sharing that information would directly undermine state or local programs.  "A more direct affront to state sovereignty is not easy to imagine." *Id.*  Sections 1373(a)-(b) and 1644 regulate only state actors, and regulate them only in their capacity as state actors. Thus neither is a preemptive federal law. *Murphy v. NCAA*, 138 S. Ct. at 1481.  8 U.S.C. § 1373(a)-(b) and § 1644 are unconstitutional.

82.

Defendants may not condition Oregon's or the City's Byrne JAG funds on their compliance with an unconstitutional statute.  *City of Chicago v. Sessions,* 2018 WL 3608564, at *13 ("[T]he Attorney General has no authority to demand compliance with Section 1373, hereby deemed unconstitutional, under the Byrne JAG statute."); *City of Philadelphia v. Sessions*, 309 F. Supp. 3d at 329 ("Because the JAG Byrne Program requires compliance with an unconstitutional statute (in this case, Section 1373) in order to receive grant funds, the Certification Condition is itself unconstitutional."); *see also generally United States v. California*, No. 2:18-cv-490-JAM-

Page 25 -  **FIRST AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF**

Justice #9293999 v3

Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301
(503) 947-4700 / Fax: (503) 947-4791

KJN, 2018 WL 3301414, at *14 (E.D. Cal. July 5, 2018) ("The Court finds the constitutionality of Section 1373 highly suspect.").

**Defendants Lack Authority to Impose the Notice and Access Conditions**

83.

For different, but equally important constitutional reasons, Defendants also lack the authority to impose the Access and Notice Conditions.  The creation of these conditions by the executive branch to impede congressionally-appropriated funding of state and local law enforcement violates the doctrine of separation of powers by invading Congress's spending authority. "The power of the purse does not belong to the Executive Branch. It rests in the Legislative Branch." *City of Chicago v. Sessions*, 888 F.3d at 283.  Defendants, as executive branch officials, have no authority to impose additional conditions on the receipt of funds appropriated by the legislative branch for the Byrne JAG program; the authority to condition the receipt of federal funds lies exclusively with Congress.  As the Seventh Circuit held in *City of Chicago v. Sessions*, 888 F.3d at 283-87, the Byrne JAG statute does not contain a single provision that could authorize Defendants to impose the Access and Notice Conditions on any state or local jurisdiction.  Nor does any other statute grant Defendants such authority.

84.

Finally, nothing in the Byrne JAG statutes empowers Defendants to simply decline to issue an award letter to any jurisdiction that, in Defendants' estimation, does not share the Department's commitment to enforcing federal immigration policy.  As noted above, the Byrne JAG is a formula grant administered by Defendants, who "shall" allocate all congressionally-appropriated funds to each state and qualifying unit of local government according to a prescribed methodology. 34 U.S.C. §§ 10156(a), (b), (c), (d).  Defendants may not constructively deny funds appropriated by Congress for the benefit of the State of Oregon and the City by simply declining to act.

Page 26 -  **FIRST AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF**

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### DECLARATORY AND INJUNCTIVE RELIEF

### (Compliance Condition – 8 U.S.C. §§ 1373 and 1644 Violate the Tenth Amendment)

85.

Plaintiffs repeat and re-allege Paragraphs 1 through 84 as if fully set forth herein.

86.

The Tenth Amendment to the United States Constitution prohibits the federal government from requiring state and local governments to govern according to Congress's instructions, or from commandeering state and local officials to administer or enforce a federal regulatory program.  This anti-commandeering principle also forbids Congress from unequivocally dictating what a state legislature may and may not do.

87.

Sections 1373 and 1644 on their face violate the Tenth Amendment because they require state and local governments to govern according to Congress's instructions.

88.

In addition, Sections 1373 and 1644 on their face violate the Tenth Amendment because they commandeer state and local officials to administer or enforce a federal regulatory program.

89.

Because Sections 1373 and 1644 violate the Tenth Amendment, Defendants cannot require the State of Oregon and the City to certify compliance with these unconstitutional statutes.

90.

An actual controversy exists because Defendants are requiring the State of Oregon and the City to certify compliance with Sections 1373 and 1644 in order to obtain congressionally

Page 27 -  **FIRST AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF**

appropriated federal funds even though the two statutes violate the Tenth Amendment.

91.

Pursuant to 28 U.S.C. § 2201, Plaintiffs are entitled to a declaration that Sections 1373 and 1644 violate the Tenth Amendment and are unconstitutional.

92.

Plaintiffs are also entitled to a declaration that Defendants cannot rely on these statutes, or on any reporting or certification requirements related to these statutes, to withhold the Byrne JAG funds under the Compliance Condition.

93.

Plaintiffs are also entitled to injunctive relief prohibiting Defendants from withholding FY 2017 Byrne JAG funds due to them.

94.

Plaintiffs are also entitled to injunctive relief prohibiting Defendants from declining to accept and process Plaintiffs' FY 2018 Byrne JAG applications, and from withholding FY 2018 Byrne JAG funds due to State of Oregon and the City.

## SECOND CLAIM FOR RELIEF

### VIOLATION OF CONGRESSIONAL SPENDING AUTHORITY AND SEPARATION OF POWERS

### DECLARATORY AND INJUNCTIVE RELIEF

#### (Ultra Vires as to the Access and Notice Conditions)

95.

Plaintiffs repeat and re-allege Paragraphs 1 through 94 as if fully set forth herein.

96.

Article I, Section I of the United States Constitution vests Congress with legislative powers, and Article I, Section VIII of the United States Constitution vests exclusively in Congress the spending power to "provide for * * * the General Welfare of the United States."

Page 28 - **FIRST AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF**

Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301
(503) 947-4700 / Fax: (503) 947-4791

Absent a statutory provision or express delegation, only Congress is empowered to attach conditions to federal funds.

97.

Defendants are officials of the Executive Branch.  The executive does not have unilateral authority to refuse to spend funds that have already been appropriated by Congress for a particular project or program.  Imposing a new condition on a federal grant program amounts to refusing to spend money appropriated by Congress.

98.

Congress has not enacted the Access and Notice Conditions as part of any statutory scheme.

99.

Congress has not enacted the Access and Notice Conditions as applicable to Byrne JAG funds.

100.

Congress has not delegated to Defendants the authority to impose the Access and Notice Conditions on the acceptance of an application for Byrne JAG funds, the processing of such an application, or on the issuance of Byrne JAG funds.

101.

Defendants' imposition of the Notice and Access Conditions, and of all related reporting and certification requirements, unconstitutionally intrudes upon and usurps powers that belong to Congress, violating the principle of separation of powers generally and the Spending Clause specifically.

102.

Pursuant to 28 U.S.C. § 2201, Plaintiffs are entitled to a declaration that the Access and Notice Conditions are *ultra vires* and unconstitutional; that these conditions do not provide a

Page 29 -  **FIRST AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF**

basis for withholding or terminating any of the State's and City's federal funding; that Defendants may not impose these conditions or any related reporting or certification requirements to withhold the State's and City's FY 2017 Byrne JAG funds; that Defendants may not impose these conditions or any related reporting or certification requirements to decline to accept and process Plaintiffs' FY 2018 Byrne JAG applications, or to deny Plaintiffs' FY 2018 Byrne JAG funds; and that these conditions and any related reporting or certification requirements should be set aside.

103.

Plaintiffs are also entitled to injunctive relief prohibiting Defendants from withholding FY 2017 Byrne JAG funds due to them.

104.

Plaintiffs are also entitled to injunctive relief prohibiting Defendants from declining to accept and process Plaintiffs' FY 2018 Byrne JAG applications, and from withholding FY 2018 Byrne JAG funds due to State of Oregon and the City.

### THIRD CLAIM FOR RELIEF

### (Mandamus)

105.

Plaintiffs repeat and re-allege Paragraphs 1 through 104 as if fully set forth herein.

106.

Pursuant to Part A, Subchapter V, Chapter 101, Subtitle 1, of Title 34 of the United States Code, 34 U.S.C. §§ 10151-10158, Plaintiffs have a clear right to receive from Defendants — and Defendants have a nondiscretionary duty to provide to Plaintiffs — Byrne JAG award notifications for the full amount of funds to which they are entitled that do not contain any unconstitutional or unlawful conditions.  No other adequate remedy is available to Plaintiffs.

Page 30 -  **FIRST AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF**

Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301
(503) 947-4700 / Fax: (503) 947-4791

107.

In other lawsuits in which state and local jurisdictions have won injunctions barring

Defendants from imposing unlawful conditions on the receipt of Byrne JAG funds, Defendants

have simply declined to issue new award notifications — thereby complying with the letter of

those injunctions, but still denying Byrne JAG funds to those jurisdictions.

108.

Pursuant to 28 U.S.C. § 1361, this Court has the authority to issue a writ of mandamus

compelling Defendants Trump and Whitaker to perform their duty to provide Plaintiffs with

Byrne JAG funds in the full amount of funds to which Plaintiffs are entitled for FY 2017

forward, without attaching unconstitutional or otherwise unlawful conditions.

### PRAYER FOR RELIEF

WHEREFORE, the State of Oregon, Governor Kate Brown, Attorney General Ellen

Rosenblum, and the City of Portland request the following relief:

1.    Declare that 8 U.S.C. §§ 1373 and 1644 violate the Tenth Amendment and enjoin

Defendants from taking any action based on alleged noncompliance with those federal statutes.

2.    Declare that because 8 U.S.C. §§ 1373 and 1644 violate the Tenth Amendment,

the Compliance Condition does not provide a basis for withholding or terminating any of

Plaintiffs' congressionally appropriated Byrne JAG funding.

3.    Declare that the Access and Notice Conditions are ultra vires because those

conditions violate Article I, Section VIII of the US Constitution (the Spending Clause), as well

as separation-of-powers principles, and are therefore unconstitutional and cannot provide a basis

for withholding or terminating any of Plaintiffs' congressionally appropriated Byrne JAG

funding.

4.    Enjoin Defendants from requiring Plaintiffs to comply with, or certify compliance

with, 8 U.S.C. § 1373(a)-(b) and/or 8 U.S.C. § 1644 as a prerequisite to disbursing any of

Justice #9293999 v3

Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301
(503) 947-4700 / Fax: (503) 947-4791

Plaintiffs' congressionally appropriated Byrne JAG funding.

5.      Enjoin Defendants from requiring Plaintiffs to comply with, or certify compliance with, the Access and Notice Conditions, or any other conditions relating to federal immigration laws or policy, as a prerequisite to disbursing any of Plaintiffs' congressionally appropriated Byrne JAG funding.

6.      Issue a writ of mandamus pursuant to 28 U.S.C. § 1361 compelling Defendants Trump and Whitaker to perform their duty to provide Plaintiffs with Byrne JAG funds for FY 2017 forward without attaching any unconstitutional or otherwise unlawful conditions.

Page 32 - **FIRST AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF**

7.      Award Plaintiffs their costs and fees in this action.

8.      Award such other relief as the Court deems proper and just.

DATED November  21 , 2018.

                                   Respectfully submitted,

                                   ELLEN F. ROSENBLUM
                                   Attorney General

                                        s/ Marc Abrams
                                   MARC ABRAMS #890149
                                   Assistant Attorney-in-Charge
                                   TIMOTHY SMITH  #914374
                                   Senior Assistant Attorney General
                                   PEENESH SHAH #112131
                                   Assistant Attorney General
                                   JUSTIN KIDD  #094070
                                   Assistant Attorney General
                                   Trial Attorneys
                                   Tel (503) 947-4700
                                   Fax (503) 947-4791
                                   Marc.Abrams@doj.state.or.us
                                   Tim.Smith@doj.state.or.us
                                   Peenesh.H.Shah@doj.state.or.us
                                   Justin.Kidd@doj.state.or.us
                                        Of Attorneys for Plaintiffs State of Oregon,
                                        Kate Brown and Ellen Rosenblum


                                   TRACY P. REEVE  #891123
                                   Portland City Attorney

                                        s/ Tracy P. Reeve
                                   DENIS M. VANNIER  #044406
                                   Senior Deputy City Attorney
                                   NAOMI SHEFFIELD #170601
                                   Deputy City Attorney
                                   Tel: (503) 823-4047
                                   Fax: (503) 823-3089
                                   Denis.Vannier@portlandoregon.gov
                                   Naomi.Sheffield@portlandoregon.gov
                                        Of Attorneys for Plaintiff City of Portland


Page 33 -  **FIRST AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND
            MANDAMUS RELIEF**

Justice #9293999 v3