W. SCOTT SIMPSON (Va. Bar #27487)
Senior Trial Counsel
Department of Justice, Civil Division
318 South Sixth Street, Room 244
Springfield, Illinois 62701
Telephone:     (202) 514-3495
Facsimile:      (217) 492-4888
E-mail:          scott.simpson@usdoj.gov

COUNSEL FOR DEFENDANTS

DONALD J. TRUMP, President of the
United States; WILLIAM P. BARR,
Attorney General of the United States;
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| THE STATE OF OREGON, *et al.*, | Case No. 6:18-cv-01959-MC |
| Plaintiffs, | |
| v. | **DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS** |
| DONALD J. TRUMP, President of the United States, *et al.*, | |
| Defendants. | |

Defendants respectfully request, pursuant to Federal Rule of Evidence 201, that the Court

take judicial notice of the following documents:

1.  Attached hereto as **Exhibit A** is a true and correct copy of the Byrne JAG award

package issued by the Office of Justice Programs of the U.S. Department of Justice to the State

of Oregon for Fiscal Year 2016.

2.  Attached hereto as **Exhibit B** is a true and correct copy of the Byrne JAG award

package issued by the Office of Justice Programs of the U.S. Department of Justice to the City of

Portland for Fiscal Year 2016.

3.  Attached hereto as **Exhibit C** is a true and correct copy of the Byrne JAG award package issued by the Office of Justice Programs of the U.S. Department of Justice to the State of California for Fiscal Year 2017.

4.  Attached hereto as **Exhibit D** is a true and correct copy of the Byrne JAG award package issued by the Office of Justice Programs of the U.S. Department of Justice to the City of Portland for Fiscal Year 2017.

5.  Attached hereto as **Exhibit E** is a true and correct copy of the Byrne JAG award package issued by the Office of Justice Programs of the U.S. Department of Justice to the State of California for Fiscal Year 2018.

6.  Attached hereto as **Exhibit F** is a true and correct copy of the Byrne JAG award package issued by the Office of Justice Programs of the U.S. Department of Justice to the City and County of San Francisco for Fiscal Year 2018.

7.  Attached hereto as **Exhibit G** is a true and correct copy of Directive 810.10 from the Portland Police Bureau's Directives Manual, as posted on the city government's Web site at https://www.portlandoregon.gov/police/article/669542, as of February 20, 2019.

Each of these exhibits is a matter of public record and is therefore subject to judicial notice.  *See* Fed. R. Evid. 201(b); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (court may take judicial notice of matters of public record unless the matter is a fact subject to reasonable dispute).

These exhibits are judicially noticeable because official government records are matters of public record appropriate for judicial notice.  *See Brown v. Valoff*, 422 F.3d 926, 933 n.9 (9th Cir. 2005) (taking judicial notice of government administrative bulletin); *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986) (court may take judicial notice of state

administrative records), *overruled on other grounds*, *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991); *Interstate Nat. Gas. Co. v. S. Cal. Gas. Co.*, 209 F.2d 380, 385 (9th Cir. 1953) (court "may take judicial notice of records and reports of administrative bodies"); *California Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, 124 F. Supp. 3d 1007, 1016 (E.D. Cal. 2015) ("Government records are susceptible to judicial notice when 'relevant to an[] issue' before the court.") (quoting *Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386, 392 n. 7 (9th Cir. 2000)).

These exhibits are also judicially noticeable because the existence of the statements of government officials that they contain is not subject to reasonable dispute, as the statements "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

Dated: March 5, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

BILLY J. WILLIAMS
United States Attorney

JOHN R. TYLER
Assistant Branch Director

s/ W. Scott Simpson

_____
W. SCOTT SIMPSON (Va. Bar #27487)

Department of Justice, Civil Division
318 South Sixth Street, Room 244
Springfield, Illinois 62701
Telephone: (202) 514-3495
Facsimile: (217) 492-4888
E-mail: scott.simpson@usdoj.gov

COUNSEL FOR DEFENDANTS

DONALD J. TRUMP, President of the
United States; WILLIAM P. BARR,
Attorney General of the United States;
UNITED STATES OF AMERICA



**U.S. Department of Justice**

Office of Justice Programs

Bureau of Justice Assistance

Office of Justice Programs    *Washington, D.C.  20531*

August 29, 2016

Mr. Michael Schmidt
Oregon Criminal Justice Commission
885 Summer St NE
Salem, OR 97301-2522

Dear Mr. Schmidt:

On behalf of Attorney General Loretta Lynch, it is my pleasure to inform you that the Office of Justice Programs has approved your application for funding under the FY 16 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - State Solicitation in the amount of $2,080,047 for Oregon Criminal Justice Commission.

Enclosed you will find the Grant Award and Special Conditions documents.  This award is subject to all administrative and financial requirements, including the timely submission of all financial and programmatic reports, resolution of all interim audit findings, and the maintenance of a minimum level of cash-on-hand.  Should you not adhere to these requirements, you will be in violation of the terms of this agreement and the award will be subject to termination for cause or other administrative action as appropriate.

If you have questions regarding this award, please contact:

- Program Questions, Heather Wiley, Program Manager at (202) 598-3969; and

- Financial Questions, the Office of the Chief Financial Officer, Customer Service Center (CSC) at
  (800) 458-0786, or you may contact the CSC at ask.ocfo@usdoj.gov.

Congratulations, and we look forward to working with you.

Sincerely,

*Denise E. O'Donnell*

Denise O'Donnell
Director

Enclosures

**Exhibit A**



# OFFICE FOR CIVIL RIGHTS

Office of Justice Programs

U.S. Department of Justice

810 7th Street, NW
Washington, DC 20531

Tel: (202) 307-0690
TTY: (202) 307-2027
E-mail: askOCR@usdoj.gov
Website: www.ojp.usdoj.gov/ocr

---

August 29, 2016

Mr. Michael Schmidt
Oregon Criminal Justice Commission
885 Summer St NE
Salem, OR 97301-2522

Dear Mr. Schmidt:

Congratulations on your recent award. In establishing financial assistance programs, Congress linked the receipt of federal funding to compliance with federal civil rights laws. The Office for Civil Rights (OCR), Office of Justice Programs (OJP), U.S. Department of Justice (DOJ) is responsible for ensuring that recipients of financial assistance from the OJP, the Office of Community Oriented Policing Services (COPS), and the Office on Violence Against Women (OVW) comply with the applicable federal civil rights laws. We at the OCR are available to help you and your organization meet the civil rights requirements that come with DOJ funding.

**Ensuring Access to Federally Assisted Programs**

Federal laws that apply to recipients of financial assistance from the DOJ prohibit discrimination on the basis of race, color, national origin, religion, sex, or disability in funded programs or activities, not only in employment but also in the delivery of services or benefits. A federal law also prohibits recipients from discriminating on the basis of age in the delivery of services or benefits.

In March of 2013, President Obama signed the Violence Against Women Reauthorization Act of 2013. The statute amends the Violence Against Women Act of 1994 (VAWA) by including a nondiscrimination grant condition that prohibits discrimination based on actual or perceived race, color, national origin, religion, sex, disability, sexual orientation, or gender identity. The new nondiscrimination grant condition applies to certain programs funded after October 1, 2013. The OCR and the OVW have developed answers to some frequently asked questions about this provision to assist recipients of VAWA funds to understand their obligations. The Frequently Asked Questions are available at http://ojp.gov/about/ocr/vawafaqs.htm.

**Enforcing Civil Rights Laws**

All recipients of federal financial assistance, regardless of the particular funding source, the amount of the grant award, or the number of employees in the workforce, are subject to prohibitions against unlawful discrimination. Accordingly, the OCR investigates recipients that are the subject of discrimination complaints from both individuals and groups. In addition, based on regulatory criteria, the OCR selects a number of recipients each year for compliance reviews, audits that require recipients to submit data showing that they are providing services equitably to all segments of their service population and that their employment practices meet equal opportunity standards.

**Providing Services to Limited English Proficiency (LEP) Individuals**

In accordance with DOJ guidance pertaining to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, recipients of federal financial assistance must take reasonable steps to provide meaningful access to their programs and activities for persons with limited English proficiency (LEP). See U.S. Department of Justice, Guidance to Federal Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin Discrimination Affecting Limited English Proficient Persons, 67 Fed. Reg. 41,455 (2002). For more information on the civil rights responsibilities that recipients have in providing language services to LEP individuals, please see the website http://www.lep.gov.

**Ensuring Equal Treatment for Faith-Based Organizations**

The DOJ regulation, Equal Treatment for Faith-Based Organizations, 28 C.F.R. pt. 38, requires State Administering Agencies (SAAs) to treat faith-based organizations the same as any other applicant or recipient. The regulation prohibits SAAs from making awards or grant administration decisions on the basis of an organization's religious character or affiliation, religious name, or the religious composition of its board of directors.

The regulation also prohibits faith-based organizations from using financial assistance from the DOJ to fund inherently (or explicitly) religious activities. While faith-based organizations can engage in non-funded inherently religious activities, they must hold them separately from the program funded by the DOJ, and recipients cannot compel beneficiaries to participate in them. The Equal Treatment Regulation also makes clear that organizations participating in programs funded by the DOJ are not permitted to discriminate in the provision of services on the basis of a beneficiary's religion. For more information on the regulation, please see the OCR's website at http://www.ojp.usdoj.gov/about/ocr/equal_fbo.htm.

SAAs and faith-based organizations should also note that the Omnibus Crime Control and Safe Streets Act (Safe Streets Act) of 1968, as amended, 42 U.S.C. § 3789d(c); the Victims of Crime Act of 1984, as amended, 42 U.S.C. § 10604(e); the Juvenile Justice and Delinquency Prevention Act of 1974, as amended, 42 U.S.C. § 5672(b); and VAWA, Pub. L. No. 113-4, sec. 3(b)(4), 127 Stat. 54, 61-62 (to be codified at 42 U.S.C. § 13925(b)(13)) contain prohibitions against discrimination on the basis of religion in employment. Despite these nondiscrimination provisions, the DOJ has concluded that it may construe the Religious Freedom Restoration Act (RFRA) on a case-by-case basis to permit some faith-based organizations to receive DOJ funds while taking into account religion when hiring staff, even if the statute that authorizes the funding program generally forbids recipients from considering religion in employment decisions. Please consult with the OCR if you have any questions about the regulation or the application of RFRA to the statutes that prohibit discrimination in employment.

**Using Arrest and Conviction Records in Making Employment Decisions**

The OCR issued an advisory document for recipients on the proper use of arrest and conviction records in making hiring decisions. See Advisory for Recipients of Financial Assistance from the U.S. Department of Justice on the U.S. Equal Employment Opportunity Commission's Enforcement Guidance: Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of 1964 (June 2013), available at http://www.ojp.usdoj.gov//about/ocr/pdfs/UseofConviction_Advisory.pdf. Recipients should be mindful that the misuse of arrest or conviction records to screen either applicants for employment or employees for retention or promotion may have a disparate impact based on race or national origin, resulting in unlawful employment discrimination. In light of the Advisory, recipients should consult local counsel in reviewing their employment practices. If warranted, recipients should also incorporate an analysis of the use of arrest and conviction records in their Equal Employment Opportunity Plans (EEOPs) (see below).

**Complying with the Safe Streets Act**

An organization that is a recipient of financial assistance subject to the nondiscrimination provisions of the Safe Streets Act, must meet two obligations: (1) complying with the federal regulation pertaining to the development of an EEOP (see 28 C.F.R. pt. 42, subpt. E) and (2) submitting to the OCR findings of discrimination (see 28 C.F.R. §§ 42.204(c), .205(c)(5)).

**Meeting the EEOP Requirement**

If your organization has less than fifty employees or receives an award of less than $25,000 or is a nonprofit organization, a medical institution, an educational institution, or an Indian tribe, then it is exempt from the EEOP requirement. To claim the exemption, your organization must complete and submit Section A of the Certification Form, which is available online at http://www.ojp.usdoj.gov/about/ocr/pdfs/cert.pdf.

If your organization is a government agency or private business and receives an award of $25,000 or more, but less than $500,000, and has fifty or more employees (counting both full- and part-time employees but excluding political appointees), then it has to prepare a Utilization Report (formerly called an EEOP Short Form), but it does not have to submit the report to the OCR for review. Instead, your organization has to maintain the Utilization Report on file and make it available for review on request. In addition, your organization has to complete Section B of the Certification Form and return it to the OCR. The Certification Form is available at http://www.ojp.usdoj.gov/about/ocr/pdfs/cert.pdf.

If your organization is a government agency or private business and has received an award for $500,000 or more and has fifty or more employees (counting both full- and part-time employees but excluding political appointees), then it has to prepare a Utilization Report (formerly called an EEOP Short Form) and submit it to the OCR for review within sixty days from the date of this letter. For assistance in developing a Utilization Report, please consult the OCR's website at http://www.ojp.usdoj.gov/about/ocr/eeop.htm. In addition, your organization has to complete Section C of the Certification Form and return it to the OCR. The Certification Form is available at http://www.ojp.usdoj.gov/about/ocr/pdfs/cert.pdf.

To comply with the EEOP requirements, you may request technical assistance from an EEOP specialist at the OCR by telephone at (202) 307-0690, by TTY at (202) 307-2027, or by e-mail at EEOsubmisson@usdoj.gov.

**Meeting the Requirement to Submit Findings of Discrimination**

If in the three years prior to the date of the grant award, your organization has received an adverse finding of discrimination based on race, color, national origin, religion, or sex, after a due-process hearing, from a state or federal court or from a state or federal administrative agency, your organization must send a copy of the finding to the OCR.

**Ensuring the Compliance of Subrecipients**

SAAs must have standard assurances to notify subrecipients of their civil rights obligations, written procedures to address discrimination complaints filed against subrecipients, methods to monitor subrecipients' compliance with civil rights requirements, and a program to train subrecipients on applicable civil rights laws. In addition, SAAs must submit to the OCR every three years written Methods of Administration (MOA) that summarize the policies and procedures that they have implemented to ensure the civil rights compliance of subrecipients. For more information on the MOA requirement, see http://www.ojp.usdoj.gov/funding/other_requirements.htm.

If the OCR can assist you in any way in fulfilling your organization's civil rights responsibilities as a recipient of federal financial assistance, please contact us.

Sincerely,

Michael L. Alston
Director

cc:   Grant Manager
       Financial Analyst

U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**Grant**

| | |
|---|---|
| **1. RECIPIENT NAME AND ADDRESS (Including Zip Code)**<br><br>Oregon Criminal Justice Commission<br>885 Summer St NE<br>Salem, OR 97301-2522 | **4. AWARD NUMBER:** 2016-DJ-BX-0459 |

| | | |
|---|---|---|
| **5. PROJECT PERIOD: FROM** 10/01/2015 **TO** 09/30/2019 | | |
| **BUDGET PERIOD: FROM** 10/01/2015 **TO** 09/30/2019 | | |

**6. AWARD DATE** 08/29/2016    **7. ACTION**    Initial

| | |
|---|---|
| **2a. GRANTEE IRS/VENDOR NO.**<br>930902048 | **8. SUPPLEMENT NUMBER**<br>00 |
| **2b. GRANTEE DUNS NO.**<br>136203424 | **9. PREVIOUS AWARD AMOUNT**    $ 0 |
| **3. PROJECT TITLE**<br>FY16 Oregon Byrne JAG | **10. AMOUNT OF THIS AWARD**    $ 2,080,047 |
| | **11. TOTAL AWARD**    $ 2,080,047 |

**12. SPECIAL CONDITIONS**

THE ABOVE GRANT PROJECT IS APPROVED SUBJECT TO SUCH CONDITIONS OR LIMITATIONS AS ARE SET FORTH ON THE ATTACHED PAGE(S).

**13. STATUTORY AUTHORITY FOR GRANT**

This project is supported under FY16(BJA - JAG) 42 USC 3750, et seq.

**14 . CATALOG OF DOMESTIC FEDERAL ASSISTANCE (CFDA Number)**

16.738 - Edward Byrne Memorial Justice Assistance Grant Program

**15. METHOD OF PAYMENT**

GPRS

| AGENCY APPROVAL | GRANTEE ACCEPTANCE |
|---|---|
| **16. TYPED NAME AND TITLE OF APPROVING OFFICIAL**<br><br>Denise O'Donnell<br><br>Director | **18. TYPED NAME AND TITLE OF AUTHORIZED GRANTEE OFFICIAL**<br><br>Michael Schmidt<br>Executive Director |
| **17. SIGNATURE OF APPROVING OFFICIAL**<br><br>*Denise E O'Donnell* | **19. SIGNATURE OF AUTHORIZED RECIPIENT OFFICIAL**     **19A. DATE** |

| AGENCY USE ONLY | |
|---|---|
| **20. ACCOUNTING CLASSIFICATION CODES** | **21. RDJUGT0686** |

**20. ACCOUNTING CLASSIFICATION CODES**

| FISCAL YEAR | FUND CODE | BUD. ACT. | OFC. | DIV. REG. | SUB. | POMS | AMOUNT |
|---|---|---|---|---|---|---|---|
| X | B | DJ | 80 | 00 | 00 | | 2080047 |

OJP FORM 4000/2 (REV. 5-87) PREVIOUS EDITIONS ARE OBSOLETE.

OJP FORM 4000/2 (REV. 4-88)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE  2  OF  13

| PROJECT NUMBER | 2016-DJ-BX-0459 | AWARD DATE | 08/29/2016 |
|---|---|---|---|

*SPECIAL CONDITIONS*

1. Applicability of Part 200 Uniform Requirements

    The Uniform Administrative Requirements, Cost Principles, and Audit Requirements in 2 C.F.R. Part 200, as adopted and supplemented by the Department of Justice (DOJ) in 2 C.F.R. Part 2800 (together, the "Part 200 Uniform Requirements") apply to this 2016 award from the Office of Justice Programs (OJP).

    The Part 200 Uniform Requirements were first adopted by DOJ on December 26, 2014. If this 2016 award supplements funds previously awarded by OJP under the same award number (e.g., funds awarded in 2014 or earlier years), the Part 200 Uniform Requirements apply with respect to all funds under that award number (regardless of the award date, and regardless of whether derived from the initial award or a supplemental award) that are obligated on or after the acceptance date of this 2016 award.

    For more information and resources on the Part 200 Uniform Requirements as they relate to OJP awards and subawards ("subgrants"), see the Office of Justice Programs (OJP) website at http://ojp.gov/funding/Part200UniformRequirements.htm.

    In the event that an award-related question arises from documents or other materials prepared or distributed by OJP that may appear to conflict with, or differ in some way from, the provisions of the Part 200 Uniform Requirements, the recipient is to contact OJP promptly for clarification.

2. Compliance with DOJ Grants Financial Guide

    The recipient agrees to comply with the Department of Justice Grants Financial Guide as posted on the OJP website (currently, the "2015 DOJ Grants Financial Guide"), including any updated version that may be posted during the period of performance.

3. Required training for Point of Contact and all Financial Points of Contact

    Both the Point of Contact (POC) and all Financial Points of Contact (FPOCs) for this award must have successfully completed an "OJP financial management and grant administration training" by 120 days after the date of the recipient's acceptance of the award. Successful completion of such a training on or after January 1, 2015, will satisfy this condition.

    In the event that either the POC or an FPOC for this award changes during the period of performance, the new POC or FPOC must have successfully completed an "OJP financial management and grant administration training" by 120 calendar days after -- (1) the date of OJP's approval of the "Change Grantee Contact" GAN (in the case of a new POC), or (2) the date the POC enters information on the new FPOC in GMS (in the case of a new FPOC). Successful completion of such a training on or after January 1, 2015, will satisfy this condition.

    A list of OJP trainings that OJP will consider "OJP financial management and grant administration training" for purposes of this condition is available at http://www.ojp.gov/training/fmts.htm. All trainings that satisfy this condition include a session on grant fraud prevention and detection

    The recipient should anticipate that OJP will immediately withhold ("freeze") award funds if the recipient fails to comply with this condition. The recipient's failure to comply also may lead OJP to impose additional appropriate conditions on this award.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE  3  OF 13

| PROJECT NUMBER | 2016-DJ-BX-0459 | AWARD DATE | 08/29/2016 |
|---|---|---|---|

*SPECIAL CONDITIONS*

4.  Requirements related to "de minimis" indirect cost rate

A recipient that is eligible under the Part 200 Uniform Requirements and other applicable law to use the "de minimis" indirect cost rate described in 2 C.F.R. 200.414(f), and that elects to use the "de minimis" indirect cost rate, must advise OJP in writing of both its eligibility and its election, and must comply with all associated requirements in the Part 200 Uniform Requirements. The "de minimis" rate may be applied only to modified total direct costs (MTDC) as defined by the Part 200 Uniform Requirements.

5.  Requirement to report potentially duplicative funding

If the recipient currently has other active awards of federal funds, or if the recipient receives any other award of federal funds during the period of performance for this award, the recipient promptly must determine whether funds from any of those other federal awards have been, are being, or are to be used (in whole or in part) for one or more of the identical cost items for which funds are provided under this award. If so, the recipient must promptly notify the DOJ awarding agency (OJP or OVW, as appropriate) in writing of the potential duplication, and, if so requested by DOJ awarding agency, must seek a budget-modification or change-of-project-scope grant adjustment notice (GAN) to eliminate any inappropriate duplication of funding.

6.  Requirements related to System for Award Management and Unique Entity Identifiers

The recipient must comply with applicable requirements regarding the System for Award Management (SAM), currently accessible at http://www.sam.gov. This includes applicable requirements regarding registration with SAM, as well as maintaining the currency of information in SAM.

The recipient also must comply with applicable restrictions on subawards ("subgrants") to first-tier subrecipients (first-tier "subgrantees"), including restrictions on subawards to entities that do not acquire and provide (to the recipient) the unique entity identifier required for SAM registration.

The details of the recipient's obligations related to SAM and to unique entity identifiers are posted on the OJP web site at http://ojp.gov/funding/Explore/SAM.htm (Award condition: System for Award Management (SAM) and Universal Identifier Requirements), and are incorporated by reference here.

This special condition does not apply to an award to an individual who received the award as a natural person (i.e., unrelated to any business or non-profit organization that he or she may own or operate in his or her name).

7.  All subawards ("subgrants") must have specific federal authorization

The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements for authorization of any subaward. This condition applies to agreements that -- for purposes of federal grants administrative requirements -- OJP considers a "subaward" (and therefore does not consider a procurement "contract").

The details of the requirement for authorization of any subaward are posted on the OJP web site at http://ojp.gov/funding/Explore/SubawardAuthorization.htm (Award condition: Award Condition: All subawards ("subgrants") must have specific federal authorization), and are incorporated by reference here.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE  4  OF  13

| PROJECT NUMBER | 2016-DJ-BX-0459 | AWARD DATE | 08/29/2016 |

*SPECIAL CONDITIONS*

8. Specific post-award approval required to use a noncompetitive approach in any procurement contract that would exceed $150,000

   The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements to obtain specific advance approval to use a noncompetitive approach in any procurement contract that would exceed the Simplified Acquisition Threshold (currently, $150,000). This condition applies to agreements that -- for purposes of federal grants administrative requirements -- OJP considers a procurement "contract" (and therefore does not consider a subaward).

   The details of the requirement for advance approval to use a noncompetitive approach in a procurement contract under an OJP award are posted on the OJP web site at http://ojp.gov/funding/Explore/NoncompetitiveProcurement.htm (Award condition: Specific post-award approval required to use a noncompetitive approach in a procurement contract (if contract would exceed $150,000)), and are incorporated by reference here.

9. Requirements pertaining to prohibited conduct related to trafficking in persons (including reporting requirements and OJP authority to terminate award)

   The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements (including requirements to report allegations) pertaining to prohibited conduct related to the trafficking of persons, whether on the part of recipients, subrecipients ("subgrantees"), or individuals defined (for purposes of this condition) as "employees" of the recipient or of any subrecipient.
   The details of the recipient's obligations related to prohibited conduct related to trafficking in persons are posted on the OJP web site at http://ojp.gov/funding/Explore/ProhibitedConduct-Trafficking.htm (Award condition: Prohibited conduct by recipients and subrecipients related to trafficking in persons (including reporting requirements and OJP authority to terminate award)), and are incorporated by reference here.

10. Compliance with applicable rules regarding approval, planning, and reporting of conferences, meetings, trainings, and other events

    The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable laws, regulations, policies, and official DOJ guidance (including specific cost limits, prior approval and reporting requirements, where applicable) governing the use of federal funds for expenses related to conferences (as that term is defined by DOJ), including the provision of food and/or beverages at such conferences, and costs of attendance at such conferences.

    Information on the pertinent DOJ definition of conferences and the rules applicable to this award appears in the DOJ Grants Financial Guide (currently, as section 3.10 of "Postaward Requirements" in the "2015 DOJ Grants Financial Guide").

11. Requirement for data on performance and effectiveness under the award

    The recipient must collect and maintain data that measure the performance and effectiveness of activities under this award. The data must be provided to OJP in the manner (including within the timeframes) specified by OJP in the program solicitation or other applicable written guidance. Data collection supports compliance with the Government Performance and Results Act (GPRA) and the GPRA Modernization Act, and other applicable laws.

12. OJP Training Guiding Principles

    Any training or training materials that the recipient -- or any subrecipient ("subgrantee") at any tier -- develops or delivers with OJP award funds must adhere to the OJP Training Guiding Principles for Grantees and Subgrantees, available at http://ojp.gov/funding/ojptrainingguidingprinciples.htm.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE 5 OF 13

| PROJECT NUMBER | 2016-DJ-BX-0459 | AWARD DATE | 08/29/2016 |
|---|---|---|---|

*SPECIAL CONDITIONS*

13. Effect of failure to address audit issues

    The recipient understands and agrees that the DOJ awarding agency (OJP or OVW, as appropriate) may withhold award funds, or may impose other related requirements, if (as determined by the DOJ awarding agency) the recipient does not satisfactorily and promptly address outstanding issues from audits required by the Part 200 Uniform Requirements (or by the terms of this award), or other outstanding issues that arise in connection with audits, investigations, or reviews of DOJ awards.

14. The recipient agrees to comply with any additional requirements that may be imposed by the DOJ awarding agency (OJP or OVW, as appropriate) during the period of performance for this award, if the recipient is designated as "high-risk" for purposes of the DOJ high-risk grantee list.

15. Compliance with DOJ regulations pertaining to civil rights and nondiscrimination - 28 C.F.R. Part 42

    The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements of 28 C.F.R. Part 42, specifically including any applicable requirements in Subpart E of 28 C.F.R. Part 42 that relate to an equal employment opportunity program.

16. Compliance with DOJ regulations pertaining to civil rights and nondiscrimination - 28 C.F.R. Part 38

    The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements of 28 C.F.R. Part 38, specifically including any applicable requirements regarding written notice to program beneficiaries and prospective program beneficiaries. Part 38 of 28 C.F.R., a DOJ regulation, was amended effective May 4, 2016.

    Among other things, 28 C.F.R. Part 38 includes rules that prohibit specific forms of discrimination on the basis of religion, a religious belief, a refusal to hold a religious belief, or refusal to attend or participate in a religious practice. Part 38 also sets out rules and requirements that pertain to recipient and subrecipient ("subgrantee") organizations that engage in or conduct explicitly religious activities, as well as rules and requirements that pertain to recipients and subrecipients that are faith-based or religious organizations.

    The text of the regulation, now entitled "Partnerships with Faith-Based and Other Neighborhood Organizations," is available via the Electronic Code of Federal Regulations (currently accessible at http://www.ecfr.gov/cgi-bin/ECFR?page=browse), by browsing to Title 28-Judicial Administration, Chapter 1, Part 38, under e-CFR "current" data.

17. Restrictions on "lobbying"

    Federal funds may not be used by the recipient, or any subrecipient ("subgrantee") at any tier, either directly or indirectly, to support or oppose the enactment, repeal, modification or adoption of any law, regulation, or policy, at any level of government.

    Should any question arise as to whether a particular use of Federal funds by a recipient (or subrecipient) would or might fall within the scope of this prohibition, the recipient is to contact OJP for guidance, and may not proceed without the express prior written approval of OJP.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE  6  OF  13

| PROJECT NUMBER | 2016-DJ-BX-0459 | AWARD DATE | 08/29/2016 |
| --- | --- | --- | --- |

*SPECIAL CONDITIONS*

18. Compliance with general appropriations-law restrictions on the use of federal funds (FY 2016)

    The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable restrictions on the use of federal funds set out in federal appropriations statutes. Pertinent restrictions, including from various "general provisions" in the Consolidated Appropriations Act, 2016, are set out at http://ojp.gov/funding/Explore/FY2016-AppropriationsLawRestrictions.htm, and are incorporated by reference here.

    Should a question arise as to whether a particular use of federal funds by a recipient (or a subrecipient) would or might fall within the scope of an appropriations-law restriction, the recipient is to contact OJP for guidance, and may not proceed without the express prior written approval of OJP.

19. Reporting Potential Fraud, Waste, and Abuse, and Similar Misconduct

    The recipient and any subrecipients ("subgrantees") must promptly refer to the DOJ Office of the Inspector General (OIG) any credible evidence that a principal, employee, agent, subrecipient, contractor, subcontractor, or other person has, in connection with funds under this award -- (1) submitted a claim that violates the False Claims Act; or (2) committed a criminal or civil violation of laws pertaining to fraud, conflict of interest, bribery, gratuity, or similar misconduct.

    Potential fraud, waste, abuse, or misconduct involving or relating to funds under this award should be reported to the OIG by-- (1) mail directed to: Office of the Inspector General, U.S. Department of Justice, Investigations Division, 950 Pennsylvania Avenue, N.W. Room 4706, Washington, DC 20530; (2) e-mail to: oig.hotline@usdoj.gov; and/or (3) the DOJ OIG hotline: (contact information in English and Spanish) at (800) 869-4499 (phone) or (202) 616-9881 (fax).

    Additional information is available from the DOJ OIG website at http://www.usdoj.gov/oig.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE 7 OF 13

| PROJECT NUMBER | 2016-DJ-BX-0459 | AWARD DATE | 08/29/2016 |
|---|---|---|---|

*SPECIAL CONDITIONS*

20. Restrictions and certifications regarding non-disclosure agreements and related matters

No recipient or subrecipient ("subgrantee") under this award, or entity that receives a procurement contract or subcontract with any funds under this award, may require any employee or contractor to sign an internal confidentiality agreement or statement that prohibits or otherwise restricts, or purports to prohibit or restrict, the reporting (in accordance with law) of waste, fraud, or abuse to an investigative or law enforcement representative of a federal department or agency authorized to receive such information.

The foregoing is not intended, and shall not be understood by the agency making this award, to contravene requirements applicable to Standard Form 312 (which relates to classified information), Form 4414 (which relates to sensitive compartmented information), or any other form issued by a federal department or agency governing the nondisclosure of classified information.

1. In accepting this award, the recipient--

a. represents that it neither requires nor has required internal confidentiality agreements or statements from employees or contractors that currently prohibit or otherwise currently restrict (or purport to prohibit or restrict) employees or contractors from reporting waste, fraud, or abuse as described above; and

b. certifies that, if it learns or is notified that it is or has been requiring its employees or contractors to execute agreements or statements that prohibit or otherwise restrict (or purport to prohibit or restrict), reporting of waste, fraud, or abuse as described above, it will immediately stop any further obligations of award funds, will provide prompt written notification to the federal agency making this award, and will resume (or permit resumption of) such obligations only if expressly authorized to do so by that agency.

2. If the recipient does or is authorized under this award to make subawards ("subgrants"), procurement contracts, or both--

a. it represents that--

(1) it has determined that no other entity that the recipient's application proposes may or will receive award funds (whether through a subaward ("subgrant"), procurement contract, or subcontract under a procurement contract) either requires or has required internal confidentiality agreements or statements from employees or contractors that currently prohibit or otherwise currently restrict (or purport to prohibit or restrict) employees or contractors from reporting waste, fraud, or abuse as described above; and

(2) it has made appropriate inquiry, or otherwise has an adequate factual basis, to support this representation; and

b. it certifies that, if it learns or is notified that any subrecipient, contractor, or subcontractor entity that receives funds under this award is or has been requiring its employees or contractors to execute agreements or statements that prohibit or otherwise restrict (or purport to prohibit or restrict), reporting of waste, fraud, or abuse as described above, it will immediately stop any further obligations of award funds to or by that entity, will provide prompt written notification to the federal agency making this award, and will resume (or permit resumption of) such obligations only if expressly authorized to do so by that agency.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE  8  OF  13

| PROJECT NUMBER | 2016-DJ-BX-0459 | AWARD DATE | 08/29/2016 |
|---|---|---|---|

*SPECIAL CONDITIONS*

21.  Compliance with 41 U.S.C. 4712 (including prohibitions on reprisal; notice to employees)

The recipient must comply with, and is subject to, all applicable provisions of 41 U.S.C. 4712, including all applicable provisions that prohibit, under specified circumstances, discrimination against an employee as reprisal for the employee's disclosure of information related to gross mismanagement of a federal grant, a gross waste of federal funds, an abuse of authority relating to a federal grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a federal grant.

The recipient also must inform its employees, in writing (and in the predominant native language of the workforce), of employee rights and remedies under 41 U.S.C. 4712.

Should a question arise as to the applicability of the provisions of 41 U.S.C. 4712 to this award, the recipient is to contact the DOJ awarding agency (OJP or OVW, as appropriate) for guidance.

22.  Encouragement of policies to ban text messaging while driving

Pursuant to Executive Order 13513, "Federal Leadership on Reducing Text Messaging While Driving," 74 Fed. Reg. 51225 (October 1, 2009), DOJ encourages recipients and subrecipients ("subgrantees") to adopt and enforce policies banning employees from text messaging while driving any vehicle during the course of performing work funded by this award, and to establish workplace safety policies and conduct education, awareness, and other outreach to decrease crashes caused by distracted drivers.

23.  The recipient agrees to comply with OJP grant monitoring guidelines, protocols, and procedures, and to cooperate with BJA and OCFO on all grant monitoring requests, including requests related to desk reviews, enhanced programmatic desk reviews, and/or site visits.  The recipient agrees to provide to BJA and OCFO all documentation necessary to complete monitoring tasks, including documentation related to any subawards made under this award.  Further, the recipient agrees to abide by reasonable deadlines set by BJA and OCFO for providing the requested documents. Failure to cooperate with BJA's/OCFO's grant monitoring activities may result in sanctions affecting the recipient's DOJ awards, including, but not limited to: withholdings and/or other restrictions on the recipient's access to grant funds; referral to the Office of the Inspector General for audit review; designation of the recipient as a DOJ High Risk grantee; or termination of an award(s).

24.  The recipient agrees to comply with applicable requirements to report first-tier subawards of $25,000 or more and, in certain circumstances, to report the names and total compensation of the five most highly compensated executives of the recipient and first-tier subrecipients of award funds.  Such data will be submitted to the FFATA Subaward Reporting System (FSRS).  The details of recipient obligations, which derive from the Federal Funding Accountability and Transparency Act of 2006 (FFATA), are posted on the Office of Justice Programs web site at http://ojp.gov/funding/Explore/FFATA.htm (Award condition: Reporting Subawards and Executive Compensation), and are incorporated by reference here.  This condition, and its reporting requirement, does not apply to grant awards made to an individual who received the award as a natural person (i.e., unrelated to any business or non-profit organization that he or she may own or operate in his or her name).

25.  Program income (as defined in the Part 200 Uniform Requirements) must be used in accordance with the provisions of the Part 200 Uniform Requirements.  Program income earnings and expenditures both must be reported on the quarterly Federal Financial Report, SF 425.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE 9 OF 13

| PROJECT NUMBER | 2016-DJ-BX-0459 | AWARD DATE | 08/29/2016 |

*SPECIAL CONDITIONS*

26. The recipient understands and agrees that it has a responsibility to monitor its subrecipients' compliance with applicable federal civil rights laws. The recipient agrees to submit written Methods of Administration (MOA) for ensuring subrecipients' compliance to the OJP's Office for Civil Rights at CivilRightsMOA@usdoj.gov within 90 days of receiving the grant award, and to make supporting documentation available for review upon request by OJP or any other authorized persons. The required elements of the MOA are set forth at http://www.ojp.usdoj.gov/funding/other_requirements.htm, under the heading, "Civil Rights Compliance Specific to State Administering Agencies."

27. In order to promote information sharing and enable interoperability among disparate systems across the justice and public safety community, OJP requires the grantee to comply with DOJ's Global Justice Information Sharing Initiative (DOJ's Global) guidelines and recommendations for this particular grant. Grantee shall conform to the Global Standards Package (GSP) and all constituent elements, where applicable, as described at: http://www.it.ojp.gov/gsp_grantcondition. Grantee shall document planned approaches to information sharing and describe compliance to the GSP and appropriate privacy policy that protects shared information, or provide detailed justification for why an alternative approach is recommended.

28. To avoid duplicating existing networks or IT systems in any initiatives funded by BJA for law enforcement information sharing systems which involve interstate connectivity between jurisdictions, such systems shall employ, to the extent possible, existing networks as the communication backbone to achieve interstate connectivity, unless the grantee can demonstrate to the satisfaction of BJA that this requirement would not be cost effective or would impair the functionality of an existing or proposed IT system.

29. The recipient agrees that any information technology system funded or supported by OJP funds will comply with 28 C.F.R. Part 23, Criminal Intelligence Systems Operating Policies, if OJP determines this regulation to be applicable. Should OJP determine 28 C.F.R. Part 23 to be applicable, OJP may, at its discretion, perform audits of the system, as per the regulation. Should any violation of 28 C.F.R. Part 23 occur, the recipient may be fined as per 42 U.S.C. 3789g(c)-(d). Recipient may not satisfy such a fine with federal funds.

30. Grantee agrees to comply with the requirements of 28 C.F.R. Part 46 and all Office of Justice Programs policies and procedures regarding the protection of human research subjects, including obtainment of Institutional Review Board approval, if appropriate, and subject informed consent.

31. Grantee agrees to comply with all confidentiality requirements of 42 U.S.C. section 3789g and 28 C.F.R. Part 22 that are applicable to collection, use, and revelation of data or information. Grantee further agrees, as a condition of grant approval, to submit a Privacy Certificate that is in accord with requirements of 28 C.F.R. Part 22 and, in particular, section 22.23.

32. Award recipients must verify Point of Contact(POC), Financial Point of Contact (FPOC), and Authorized Representative contact information in GMS, including telephone number and e-mail address. If any information is incorrect or has changed, a Grant Adjustment Notice (GAN) must be submitted via the Grants Management System (GMS) to document changes.

OJP FORM 4000/2 (REV. 4-88)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE  10  OF  13

| PROJECT NUMBER | 2016-DJ-BX-0459 | AWARD DATE | 08/29/2016 |
| --- | --- | --- | --- |

*SPECIAL CONDITIONS*

33.  The grantee agrees that within 120 days of award acceptance, each current member of a law enforcement task force funded with these funds who is a task force commander, agency executive, task force officer, or other task force member of equivalent rank, will complete required online (internet-based) task force training. Additionally, all future task force members are required to complete this training once during the life of this award, or once every four years if multiple awards include this requirement. The training is provided free of charge online through BJA's Center for Task Force Integrity and Leadership (www.ctfli.org). This training addresses task force effectiveness as well as other key issues including privacy and civil liberties/rights, task force performance measurement, personnel selection, and task force oversight and accountability. When BJA funding supports a task force, a task force personnel roster should be compiled and maintained, along with course completion certificates, by the grant recipient. Additional information is available regarding this required training and access methods via BJA's web site and the Center for Task Force Integrity and Leadership (www.ctfli.org).

34.  The recipient agrees to participate in BJA-sponsored training events, technical assistance events, or conferences held by BJA or its designees, upon BJA's request.

35.  Approval of this award does not indicate approval of any consultant rate in excess of $650 per day. A detailed justification must be submitted to and approved by the Office of Justice Programs (OJP) program office prior to obligation or expenditure of such funds.

36.  The grantee agrees to assist BJA in complying with the National Environmental Policy Act (NEPA), the National Historic Preservation Act, and other related federal environmental impact analyses requirements in the use of these grant funds, either directly by the grantee or by a subgrantee. Accordingly, the grantee agrees to first determine if any of the following activities will be funded by the grant, prior to obligating funds for any of these purposes. If it is determined that any of the following activities will be funded by the grant, the grantee agrees to contact BJA.

The grantee understands that this special condition applies to its following new activities whether or not they are being specifically funded with these grant funds. That is, as long as the activity is being conducted by the grantee, a subgrantee, or any third party and the activity needs to be undertaken in order to use these grant funds, this special condition must first be met. The activities covered by this special condition are:
a.  New construction;
b.  Minor renovation or remodeling of a property located in an environmentally or historically sensitive area, including properties located within a 100-year flood plain, a wetland, or habitat for endangered species, or a property listed on or eligible for listing on the National Register of Historic Places;
c.  A renovation, lease, or any proposed use of a building or facility that will either (a) result in a change in its basic prior use or (b) significantly change its size;
d.  Implementation of a new program involving the use of chemicals other than chemicals that are (a) purchased as an incidental component of a funded activity and (b) traditionally used, for example, in office, household, recreational, or education environments; and
e.  Implementation of a program relating to clandestine methamphetamine laboratory operations, including the identification, seizure, or closure of clandestine methamphetamine laboratories.

The grantee understands and agrees that complying with NEPA may require the preparation of an Environmental Assessment and/or an Environmental Impact Statement, as directed by BJA. The grantee further understands and agrees to the requirements for implementation of a Mitigation Plan, as detailed at http://www.ojp.usdoj.gov/BJA/resource/nepa.html, for programs relating to methamphetamine laboratory operations.

Application of This Special Condition to Grantee's Existing Programs or Activities: For any of the grantee's or its subgrantees' existing programs or activities that will be funded by these grant funds, the grantee, upon specific request from BJA, agrees to cooperate with BJA in any preparation by BJA of a national or program environmental assessment of that funded program or activity.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE 11 OF 13

| PROJECT NUMBER | 2016-DJ-BX-0459 | AWARD DATE | 08/29/2016 |
| --- | --- | --- | --- |

*SPECIAL CONDITIONS*

37. The recipient is required to establish a trust fund account. (The trust fund may or may not be an interest-bearing account.) The fund, including any interest, may not be used to pay debts or expenses incurred by other activities beyond the scope of the Edward Byrne Memorial Justice Assistance Grant Program (JAG). The recipient also agrees to obligate the grant funds in the trust fund (including any interest earned) during the period of the grant and expend within 90 days thereafter. Any unobligated or unexpended funds, including interest earned, must be returned to the Office of Justice Programs at the time of closeout.

38. JAG funds may be used to purchase vests for an agency, but they may not be used as the 50% match for purposes of the Bulletproof Vest Partnership (BVP) program.

39. Ballistic-resistant and stab-resistant body armor purchased with JAG funds may be purchased at any threat level, make or model, from any distributor or manufacturer, as long as the vests have been tested and found to comply with applicable National Institute of Justice ballistic or stab standards and are listed on the NIJ Compliant Body Armor Model List (http://nij.gov). In addition, ballistic-resistant and stab-resistant body armor purchased must be American-made. The latest NIJ standard information can be found here: http://www.nij.gov/topics/technology/body-armor/safety-initiative.htm.

40. The recipient agrees to submit a signed certification that all law enforcement agencies receiving vests purchased with JAG funds have a written "mandatory wear" policy in effect. Fiscal agents and state agencies must keep signed certifications on file for any subrecipients planning to utilize JAG funds for ballistic-resistant and stab-resistant body armor purchases. This policy must be in place for at least all uniformed officers before any JAG funding can be used by the agency for body armor. There are no requirements regarding the nature of the policy other than it be a mandatory wear policy for all uniformed officers while on duty.

41. The recipient agrees to monitor subawards under this JAG award in accordance with all applicable statutes, regulations, OMB circulars, and guidelines, including the DOJ Financial Guide, and to include the applicable conditions of this award in any subaward. The recipient is responsible for oversight of subrecipient spending and monitoring of specific outcomes and benefits attributable to use of JAG funds by subrecipients. The recipient agrees to submit, upon request, documentation of its policies and procedures for monitoring of subawards under this award.

42. Award recipients must submit quarterly Federal Financial Reports (SF-425) and semi-annual performance reports through GMS (https://grants.ojp.usdoj.gov). Consistent with the Department's responsibilities under the Government Performance and Results Act (GPRA), P.L. 103-62, applicants who receive funding under this solicitation must provide data that measure the results of their work. Therefore, quarterly performance metrics reports must be submitted through BJA's Performance Measurement Tool (PMT) website (www.bjaperformancetools.org). For more detailed information on reporting and other JAG requirements, refer to the JAG reporting requirements webpage. Failure to submit required JAG reports by established deadlines may result in the freezing of grant funds and future High Risk designation.

43. Recipient understands and agrees that award funds may not be used for items that are listed on the Prohibited Expenditure List at the time of purchase or acquisition, including as the list may be amended from time to time. The Prohibited Expenditure list may be accessed here: https://www.bja.gov/funding/JAGControlledPurchaseList.pdf.

44. Recipient understands and agrees that award funds may not be used for items that are listed on the Controlled Expenditure List at the time of purchase or acquisition, including as the list may be amended from time to time, without explicit written prior approval from BJA. The Controlled Expenditure List, and instructions on how to request approval for purchase or acquisitions may be accessed here: https://www.bja.gov/funding/JAGControlledPurchaseList.pdf



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE 12 OF 13

| PROJECT NUMBER | 2016-DJ-BX-0459 | AWARD DATE | 08/29/2016 |
|---|---|---|---|

*SPECIAL CONDITIONS*

45. The recipient understands that, pursuant to recommendation 2.1 of Executive Order 13688, law enforcement agencies that acquire controlled equipment through Federal programs must adopt robust and specific written policies and protocols governing General Policing Standards and Specific Controlled Equipment Standards. General Policing Standards includes policies on (a) Community Policing; (b) Constitutional Policing; and (c) Community Input and Impact Considerations. Specific Controlled Equipment Standards includes policies specifically related to (a) Appropriate Use of Controlled Equipment; (b) Supervision of Use; (c) Effectiveness Evaluation; (d) Auditing and Accountability; and (e) Transparency and Notice Considerations. Upon OJP's request, the recipient agrees to provide a copy of the General Policing Standards and Specific Controlled Equipment Standards, and any related policies and protocols.

46. Recipient understands and agrees that the purchase or acquisition of any item on the Controlled Expenditure List at the time of purchase or acquisition, including as the list may be amended from time to time, with award funds by an agency will trigger a requirement that the agency collect and retain (for at least 3 years) certain information about the use of 1) any federally-acquired Controlled Equipment in the agency's inventory, and 2) any other controlled equipment in the same category as the federally-acquired controlled equipment in the agency's inventory, regardless of source; and make that information available to BJA upon request. Details about what information must be collected and retained may be accessed here: https://www.whitehouse.gov/sites/default/files/docs/le_equipment_wg_final_report_final.pdf

47. Recipient understands and agrees that failure to comply with conditions related to Prohibited or Controlled Expenditures may result in a prohibition from further Controlled Expenditure approval under this or other federal awards.

48. Recipient understands and agrees that, notwithstanding 2 CFR § 200.313, no equipment listed on the Controlled Expenditure List that is purchased under this award may be transferred or sold to a third party, except as described below:

a. Agencies may transfer or sell any controlled equipment, except riot helmets and riot shields, to a Law Enforcement Agency (LEA) after obtaining prior written approval from BJA. As a condition of that approval, the acquiring LEA will be required to submit information and certifications to BJA as if it was requesting approval to use award fund for the initial purchase of items on the Controlled Expenditure List.
b. Agencies may not transfer or sell any riot helmets or riot shields purchased under this award.
c. Agencies may not transfer or sell any Controlled Equipment purchased under this award to non-LEAs, with the exception of fixed wing aircraft, rotary wing aircraft, and command and control vehicles. Before any such transfer or sale is finalized, the agency must obtain prior written approval from BJA. All law enforcement-related and other sensitive or potentially dangerous components, and all law enforcement insignias and identifying markings must be removed prior to transfer or sale.

Recipient further understands and agrees to notify BJA prior to the disposal of any items on the Controlled Expenditure List purchased under this award, and to abide by any applicable laws and regulations in such disposal.

49. BJA strongly encourages the recipient to submit annual (or more frequent) JAG success stories. To submit a success story, sign in to your My BJA account at https://www.bja.gov/Login.aspx to access the Success Story Submission form. If you do not yet have a My BJA account, please register at https://www.bja.gov/profile.aspx. Once you register, one of the available areas on your My BJA page will be "My Success Stories". Within this box, you will see an option to add a Success Story. Once reviewed and approved by BJA, all success stories will appear on the new BJA Success Story web page at https://www.bja.gov/SuccessStoryList.aspx.

50. Any law enforcement agency receiving direct or sub-awarded JAG funding must submit quarterly accountability metrics data related to training that officers have received on the use of force, racial and ethnic bias, de-escalation of conflict, and constructive engagement with the public.

OJP FORM 4000/2 (REV. 4-88)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE  13  OF  13

| PROJECT NUMBER | 2016-DJ-BX-0459 | AWARD DATE | 08/29/2016 |
|---|---|---|---|

*SPECIAL CONDITIONS*

51.　The recipient agrees that funds received under this award will not be used to supplant State or local funds, but will be used to increase the amounts of such funds that would, in the absence of Federal funds, be made available for law enforcement activities.

52.　Recipient integrity and performance matters:  Requirement to report information on certain civil, criminal, and administrative proceedings to SAM and FAPIIS

The recipient must comply with any and all applicable requirements regarding reporting of information on civil, criminal, and administrative proceedings connected with (or connected to the performance of) either this OJP award or any other grant, cooperative agreement, or procurement contract from the federal government.  Under certain circumstances, recipients of OJP awards are required to report information about such proceedings, through the federal System for Award Management (known as "SAM"), to the designated federal integrity and performance system (currently, "FAPIIS").

The details of recipient obligations regarding the required reporting (and updating) of information on certain civil, criminal, and administrative proceedings to the federal designated integrity and performance system (currently, "FAPIIS") within SAM are posted on the OJP web site at http://ojp.gov/funding/FAPIIS.htm (Award condition: Recipient Integrity and Performance Matters, including Recipient Reporting to FAPIIS), and are incorporated by reference here.

53.　Recipient acknowledges the final agency decision made by the U.S. Department of Justice that recipient's jurisdiction did not substantially implement the Sex Offender Registration and Notification Act (P.L. 109-248) before the deadline, which determination impacts the funding amount of this award, pursuant to 42 U.S.C. § 16925.  In accepting this specific formula award, recipient hereby voluntarily agrees that if it elects to file a judicial appeal of that final agency decision, which was integral in determining this particular funding amount, no such appeal may commence more than 6 months after the date of this award.



**U.S. Department of Justice**

Office of Justice Programs

*Bureau of Justice Assistance*

---

*Washington, D.C. 20531*

**Memorandum To:** Official Grant File

**From:** Orbin Terry, NEPA Coordinator

**Subject:** Incorporates NEPA Compliance in Further Developmental Stages for Oregon
Criminal Justice Commission

The Edward Byrne Memorial Justice Assistance Grant Program (JAG) allows states and local governments to support a broad range of activities to prevent and control crime and to improve the criminal justice system, some of which could have environmental impacts. All recipients of JAG funding must assist BJA in complying with NEPA and other related federal environmental impact analyses requirements in the use of grant funds, whether the funds are used directly by the grantee or by a subgrantee or third party. Accordingly, prior to obligating funds for any of the specified activities, the grantee must first determine if any of the specified activities will be funded by the grant.

The specified activities requiring environmental analysis are:
a. New construction;
b. Any renovation or remodeling of a property located in an environmentally or historically sensitive area, including properties located within a 100-year flood plain, a wetland, or habitat for endangered species, or a property listed on or eligible for listing on the National Register of Historic Places;
c. A renovation, lease, or any proposed use of a building or facility that will either (a) result in a change in its basic prior use or (b) significantly change its size;
d. Implementation of a new program involving the use of chemicals other than chemicals that are (a) purchased as an incidental component of a funded activity and (b) traditionally used, for example, in office, household, recreational, or education environments; and
e. Implementation of a program relating to clandestine methamphetamine laboratory operations, including the identification, seizure, or closure of clandestine methamphetamine laboratories.

Complying with NEPA may require the preparation of an Environmental Assessment and/or an Environmental Impact Statement, as directed by BJA. Further, for programs relating to methamphetamine laboratory operations, the preparation of a detailed Mitigation Plan will be required. For more information about Mitigation Plan requirements, please see https://www.bja.gov/Funding/nepa.html.

Please be sure to carefully review the grant conditions on your award document, as it may contain more specific information about environmental compliance.



U.S. Department of Justice
Office of Justice Programs

Bureau of Justice Assistance

# GRANT MANAGER'S MEMORANDUM, PT. I: PROJECT SUMMARY

## Grant

| PROJECT NUMBER<br><br>2016-DJ-BX-0459 | PAGE 1 OF 1 |
| --- | --- |

This project is supported under FY16(BJA - JAG) 42 USC 3750, et seq.

| 1. STAFF CONTACT (Name & telephone number)<br><br>Heather Wiley<br>(202) 598-3969 | 2. PROJECT DIRECTOR (Name, address & telephone number)<br><br>Paul Egbert<br>Operations Director<br>885 Summer St NE<br>Salem, OR 97301-0000<br>(503) 378-5796 |
| --- | --- |

| 3a. TITLE OF THE PROGRAM<br><br>Fiscal Year 2016 JAG | 3b. POMS CODE (SEE INSTRUCTIONS ON REVERSE) |
| --- | --- |

**4. TITLE OF PROJECT**

FY16 Oregon Byrne JAG

| 5. NAME & ADDRESS OF GRANTEE<br><br>Oregon Criminal Justice Commission<br>885 Summer St NE<br>Salem, OR 97301-2522 | 6. NAME & ADRESS OF SUBGRANTEE |
| --- | --- |

| 7. PROGRAM PERIOD<br><br>FROM: 10/01/2015    TO: 09/30/2019 | 8. BUDGET PERIOD<br><br>FROM: 10/01/2015    TO: 09/30/2019 |
| --- | --- |

| 9. AMOUNT OF AWARD<br><br>$ 2,080,047 | 10. DATE OF AWARD<br><br>08/29/2016 |
| --- | --- |

| 11. SECOND YEAR'S BUDGET | 12. SECOND YEAR'S BUDGET AMOUNT |
| --- | --- |

| 13. THIRD YEAR'S BUDGET PERIOD | 14. THIRD YEAR'S BUDGET AMOUNT |
| --- | --- |

**15. SUMMARY DESCRIPTION OF PROJECT (See instruction on reverse)**

The Edward Byrne Memorial Justice Assistance Grant Program (JAG) allows states and units of local government, including tribes, to support a broad range of activities to prevent and control crime based on their own state and local needs and conditions. Grant funds can be used for state and local initiatives, technical assistance, training, personnel, equipment, supplies, contractual support, and information systems for criminal justice, including for any one or more of the following program areas: 1) law enforcement programs; 2) prosecution and court programs; 3) prevention and education programs; 4) corrections and community corrections programs; 5) drug treatment and enforcement programs; 6) planning, evaluation, and technology improvement programs; and 7) crime victim and witness programs (other than compensation).

The Oregon Criminal Justice Commission will allocate JAG funds to Drug Treatment and Enforcement Programs as well as Planning, Evaluation, Technology Improvements. Additionally, funds will be allocated to the Witness Intimidation Support Program (WISP) to provide services of an immediate nature to crime

victims and the Victims Portal Pilot Program to assist with relaying the victims preferences and needs as an offender moves through the criminal justice system. Finally a portion of the grant will be utilized for administrative costs.

NCA/NCF



**U.S. Department of Justice**

Office of Justice Programs

Bureau of Justice Assistance

Office of Justice Programs                    *Washington, D.C.  20531*

August 16, 2016

The Honorable Charlie Hales
City of Portland
1120 SW Fifth Avenue
Room 1250
Portland, OR 97204-1912

Dear Mayor Hales:

On behalf of Attorney General Loretta Lynch, it is my pleasure to inform you that the Office of Justice Programs has approved your application for funding under the FY 16 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - Local Solicitation in the amount of $465,810 for City of Portland.

Enclosed you will find the Grant Award and Special Conditions documents.  This award is subject to all administrative and financial requirements, including the timely submission of all financial and programmatic reports, resolution of all interim audit findings, and the maintenance of a minimum level of cash-on-hand.  Should you not adhere to these requirements, you will be in violation of the terms of this agreement and the award will be subject to termination for cause or other administrative action as appropriate.

If you have questions regarding this award, please contact:

  - Program Questions, Heather Wiley, Program Manager at (202) 598-3969; and

  - Financial Questions, the Office of the Chief Financial Officer, Customer Service Center (CSC) at
    (800) 458-0786, or you may contact the CSC at ask.ocfo@usdoj.gov.

Congratulations, and we look forward to working with you.

Sincerely,

Denise O'Donnell
Director

Enclosures

**Exhibit B**



# OFFICE FOR CIVIL RIGHTS

Office of Justice Programs

U.S. Department of Justice

810 7th Street, NW
Washington, DC 20531

Tel: (202) 307-0690
TTY: (202) 307-2027
E-mail: askOCR@usdoj.gov
Website: www.ojp.usdoj.gov/ocr

---

August 16, 2016

The Honorable Charlie Hales
City of Portland
1120 SW Fifth Avenue
Room 1250
Portland, OR 97204-1912

Dear Mayor Hales:

Congratulations on your recent award. In establishing financial assistance programs, Congress linked the receipt of federal funding to compliance with federal civil rights laws. The Office for Civil Rights (OCR), Office of Justice Programs (OJP), U.S. Department of Justice (DOJ) is responsible for ensuring that recipients of financial assistance from the OJP, the Office of Community Oriented Policing Services (COPS), and the Office on Violence Against Women (OVW) comply with the applicable federal civil rights laws. We at the OCR are available to help you and your organization meet the civil rights requirements that come with DOJ funding.

**Ensuring Access to Federally Assisted Programs**

Federal laws that apply to recipients of financial assistance from the DOJ prohibit discrimination on the basis of race, color, national origin, religion, sex, or disability in funded programs or activities, not only in employment but also in the delivery of services or benefits. A federal law also prohibits recipients from discriminating on the basis of age in the delivery of services or benefits.

In March of 2013, President Obama signed the Violence Against Women Reauthorization Act of 2013. The statute amends the Violence Against Women Act of 1994 (VAWA) by including a nondiscrimination grant condition that prohibits discrimination based on actual or perceived race, color, national origin, religion, sex, disability, sexual orientation, or gender identity. The new nondiscrimination grant condition applies to certain programs funded after October 1, 2013. The OCR and the OVW have developed answers to some frequently asked questions about this provision to assist recipients of VAWA funds to understand their obligations. The Frequently Asked Questions are available at http://ojp.gov/about/ocr/vawafaqs.htm.

**Enforcing Civil Rights Laws**

All recipients of federal financial assistance, regardless of the particular funding source, the amount of the grant award, or the number of employees in the workforce, are subject to prohibitions against unlawful discrimination. Accordingly, the OCR investigates recipients that are the subject of discrimination complaints from both individuals and groups. In addition, based on regulatory criteria, the OCR selects a number of recipients each year for compliance reviews, audits that require recipients to submit data showing that they are providing services equitably to all segments of their service population and that their employment practices meet equal opportunity standards.

**Providing Services to Limited English Proficiency (LEP) Individuals**

In accordance with DOJ guidance pertaining to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, recipients of federal financial assistance must take reasonable steps to provide meaningful access to their programs and activities for persons with limited English proficiency (LEP). See U.S. Department of Justice, Guidance to Federal Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin Discrimination Affecting Limited English Proficient Persons, 67 Fed. Reg. 41,455 (2002). For more information on the civil rights responsibilities that recipients have in providing language services to LEP individuals, please see the website http://www.lep.gov.

**Ensuring Equal Treatment for Faith-Based Organizations**

The DOJ regulation, Equal Treatment for Faith-Based Organizations, 28 C.F.R. pt. 38, requires State Administering Agencies (SAAs) to treat faith-based organizations the same as any other applicant or recipient. The regulation prohibits SAAs from making awards or grant administration decisions on the basis of an organization's religious character or affiliation, religious name, or the religious composition of its board of directors.

The regulation also prohibits faith-based organizations from using financial assistance from the DOJ to fund inherently (or explicitly) religious activities. While faith-based organizations can engage in non-funded inherently religious activities, they must hold them separately from the program funded by the DOJ, and recipients cannot compel beneficiaries to participate in them. The Equal Treatment Regulation also makes clear that organizations participating in programs funded by the DOJ are not permitted to discriminate in the provision of services on the basis of a beneficiary's religion. For more information on the regulation, please see the OCR's website at http://www.ojp.usdoj.gov/about/ocr/equal_fbo.htm.

SAAs and faith-based organizations should also note that the Omnibus Crime Control and Safe Streets Act (Safe Streets Act) of 1968, as amended, 42 U.S.C. § 3789d(c); the Victims of Crime Act of 1984, as amended, 42 U.S.C. § 10604(e); the Juvenile Justice and Delinquency Prevention Act of 1974, as amended, 42 U.S.C. § 5672(b); and VAWA, Pub. L. No. 113-4, sec. 3(b)(4), 127 Stat. 54, 61-62 (to be codified at 42 U.S.C. § 13925(b)(13)) contain prohibitions against discrimination on the basis of religion in employment. Despite these nondiscrimination provisions, the DOJ has concluded that it may construe the Religious Freedom Restoration Act (RFRA) on a case-by-case basis to permit some faith-based organizations to receive DOJ funds while taking into account religion when hiring staff, even if the statute that authorizes the funding program generally forbids recipients from considering religion in employment decisions. Please consult with the OCR if you have any questions about the regulation or the application of RFRA to the statutes that prohibit discrimination in employment.

**Using Arrest and Conviction Records in Making Employment Decisions**

The OCR issued an advisory document for recipients on the proper use of arrest and conviction records in making hiring decisions. See Advisory for Recipients of Financial Assistance from the U.S. Department of Justice on the U.S. Equal Employment Opportunity Commission's Enforcement Guidance: Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of 1964 (June 2013), available at http://www.ojp.usdoj.gov//about/ocr/pdfs/UseofConviction_Advisory.pdf. Recipients should be mindful that the misuse of arrest or conviction records to screen either applicants for employment or employees for retention or promotion may have a disparate impact based on race or national origin, resulting in unlawful employment discrimination. In light of the Advisory, recipients should consult local counsel in reviewing their employment practices. If warranted, recipients should also incorporate an analysis of the use of arrest and conviction records in their Equal Employment Opportunity Plans (EEOPs) (see below).

**Complying with the Safe Streets Act**

An organization that is a recipient of financial assistance subject to the nondiscrimination provisions of the Safe Streets Act, must meet two obligations: (1) complying with the federal regulation pertaining to the development of an EEOP (see 28 C.F.R. pt. 42, subpt. E) and (2) submitting to the OCR findings of discrimination (see 28 C.F.R. §§ 42.204(c), .205(c)(5)).

**Meeting the EEOP Requirement**

If your organization has less than fifty employees or receives an award of less than $25,000 or is a nonprofit organization, a medical institution, an educational institution, or an Indian tribe, then it is exempt from the EEOP requirement. To claim the exemption, your organization must complete and submit Section A of the Certification Form, which is available online at http://www.ojp.usdoj.gov/about/ocr/pdfs/cert.pdf.

If your organization is a government agency or private business and receives an award of $25,000 or more, but less than $500,000, and has fifty or more employees (counting both full- and part-time employees but excluding political appointees), then it has to prepare a Utilization Report (formerly called an EEOP Short Form), but it does not have to submit the report to the OCR for review. Instead, your organization has to maintain the Utilization Report on file and make it available for review on request. In addition, your organization has to complete Section B of the Certification Form and return it to the OCR. The Certification Form is available at http://www.ojp.usdoj.gov/about/ocr/pdfs/cert.pdf.

If your organization is a government agency or private business and has received an award for $500,000 or more and has fifty or more employees (counting both full- and part-time employees but excluding political appointees), then it has to prepare a Utilization Report (formerly called an EEOP Short Form) and submit it to the OCR for review within sixty days from the date of this letter. For assistance in developing a Utilization Report, please consult the OCR's website at http://www.ojp.usdoj.gov/about/ocr/eeop.htm. In addition, your organization has to complete Section C of the Certification Form and return it to the OCR. The Certification Form is available at http://www.ojp.usdoj.gov/about/ocr/pdfs/cert.pdf.

To comply with the EEOP requirements, you may request technical assistance from an EEOP specialist at the OCR by telephone at (202) 307-0690, by TTY at (202) 307-2027, or by e-mail at EEOsubmisson@usdoj.gov.

**Meeting the Requirement to Submit Findings of Discrimination**

If in the three years prior to the date of the grant award, your organization has received an adverse finding of discrimination based on race, color, national origin, religion, or sex, after a due-process hearing, from a state or federal court or from a state or federal administrative agency, your organization must send a copy of the finding to the OCR.

**Ensuring the Compliance of Subrecipients**

SAAs must have standard assurances to notify subrecipients of their civil rights obligations, written procedures to address discrimination complaints filed against subrecipients, methods to monitor subrecipients' compliance with civil rights requirements, and a program to train subrecipients on applicable civil rights laws. In addition, SAAs must submit to the OCR every three years written Methods of Administration (MOA) that summarize the policies and procedures that they have implemented to ensure the civil rights compliance of subrecipients. For more information on the MOA requirement, see http://www.ojp.usdoj.gov/funding/other_requirements.htm.

If the OCR can assist you in any way in fulfilling your organization's civil rights responsibilities as a recipient of federal financial assistance, please contact us.

Sincerely,

Michael L. Alston
Director

cc:   Grant Manager
      Financial Analyst

U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**Grant**

| | |
|---|---|
| 1. RECIPIENT NAME AND ADDRESS (Including Zip Code) | 4. AWARD NUMBER: 2016-DJ-BX-0833 |

City of Portland
1120 SW Fifth Avenue Room 1250
Portland, OR 97204-1912

5. PROJECT PERIOD: FROM 10/01/2015 TO 09/30/2019

BUDGET PERIOD: FROM 10/01/2015 TO 09/30/2019

6. AWARD DATE 08/16/2016

7. ACTION    Initial

2a. GRANTEE IRS/VENDOR NO.
936002236

8. SUPPLEMENT NUMBER
00

2b. GRANTEE DUNS NO.
054971197

9. PREVIOUS AWARD AMOUNT    $ 0

3. PROJECT TITLE
2016 Portland-Metropolitan Area Law Enforcement Community Justice Assistance Grant (JAG) Program

10. AMOUNT OF THIS AWARD    $ 465,810

11. TOTAL AWARD    $ 465,810

12. SPECIAL CONDITIONS

THE ABOVE GRANT PROJECT IS APPROVED SUBJECT TO SUCH CONDITIONS OR LIMITATIONS AS ARE SET FORTH
ON THE ATTACHED PAGE(S).

13. STATUTORY AUTHORITY FOR GRANT

This project is supported under FY16(BJA - JAG) 42 USC 3750, et seq.

14 . CATALOG OF DOMESTIC FEDERAL ASSISTANCE (CFDA Number)

16.738 - Edward Byrne Memorial Justice Assistance Grant Program

15. METHOD OF PAYMENT

GPRS

**AGENCY APPROVAL**

16. TYPED NAME AND TITLE OF APPROVING OFFICIAL

Denise O'Donnell

Director

17. SIGNATURE OF APPROVING OFFICIAL

*Denise E O'Donnell*

**GRANTEE ACCEPTANCE**

18. TYPED NAME AND TITLE OF AUTHORIZED GRANTEE OFFICIAL

Charlie Hales
Mayor

19. SIGNATURE OF AUTHORIZED RECIPIENT OFFICIAL

19A. DATE

**AGENCY USE ONLY**

21. RDJUGT0242

20. ACCOUNTING CLASSIFICATION CODES

| FISCAL YEAR | FUND CODE | BUD. ACT. | OFC. | DIV. REG. | SUB. | POMS | AMOUNT |
|---|---|---|---|---|---|---|---|
| X | B | DJ | 80 | 00 | 00 | | 465810 |

OJP FORM 4000/2 (REV. 5-87) PREVIOUS EDITIONS ARE OBSOLETE.

OJP FORM 4000/2 (REV. 4-88)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE 2 OF 12

| PROJECT NUMBER | 2016-DJ-BX-0833 | AWARD DATE | 08/16/2016 |
|---|---|---|---|

*SPECIAL CONDITIONS*

1. Applicability of Part 200 Uniform Requirements

   The Uniform Administrative Requirements, Cost Principles, and Audit Requirements in 2 C.F.R. Part 200, as adopted and supplemented by the Department of Justice (DOJ) in 2 C.F.R. Part 2800 (together, the "Part 200 Uniform Requirements") apply to this 2016 award from the Office of Justice Programs (OJP).

   The Part 200 Uniform Requirements were first adopted by DOJ on December 26, 2014. If this 2016 award supplements funds previously awarded by OJP under the same award number (e.g., funds awarded in 2014 or earlier years), the Part 200 Uniform Requirements apply with respect to all funds under that award number (regardless of the award date, and regardless of whether derived from the initial award or a supplemental award) that are obligated on or after the acceptance date of this 2016 award.

   For more information and resources on the Part 200 Uniform Requirements as they relate to OJP awards and subawards ("subgrants"), see the Office of Justice Programs (OJP) website at http://ojp.gov/funding/Part200UniformRequirements.htm.

   In the event that an award-related question arises from documents or other materials prepared or distributed by OJP that may appear to conflict with, or differ in some way from, the provisions of the Part 200 Uniform Requirements, the recipient is to contact OJP promptly for clarification.

2. Compliance with DOJ Grants Financial Guide

   The recipient agrees to comply with the Department of Justice Grants Financial Guide as posted on the OJP website (currently, the "2015 DOJ Grants Financial Guide"), including any updated version that may be posted during the period of performance.

3. Required training for Point of Contact and all Financial Points of Contact

   Both the Point of Contact (POC) and all Financial Points of Contact (FPOCs) for this award must have successfully completed an "OJP financial management and grant administration training" by 120 days after the date of the recipient's acceptance of the award. Successful completion of such a training on or after January 1, 2015, will satisfy this condition.

   In the event that either the POC or an FPOC for this award changes during the period of performance, the new POC or FPOC must have successfully completed an "OJP financial management and grant administration training" by 120 calendar days after -- (1) the date of OJP's approval of the "Change Grantee Contact" GAN (in the case of a new POC), or (2) the date the POC enters information on the new FPOC in GMS (in the case of a new FPOC). Successful completion of such a training on or after January 1, 2015, will satisfy this condition.

   A list of OJP trainings that OJP will consider "OJP financial management and grant administration training" for purposes of this condition is available at http://www.ojp.gov/training/fmts.htm. All trainings that satisfy this condition include a session on grant fraud prevention and detection

   The recipient should anticipate that OJP will immediately withhold ("freeze") award funds if the recipient fails to comply with this condition. The recipient's failure to comply also may lead OJP to impose additional appropriate conditions on this award.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE  3  OF  12

| PROJECT NUMBER | 2016-DJ-BX-0833 | AWARD DATE | 08/16/2016 |
| --- | --- | --- | --- |

*SPECIAL CONDITIONS*

4.  Requirements related to "de minimis" indirect cost rate

    A recipient that is eligible under the Part 200 Uniform Requirements and other applicable law to use the "de minimis"
    indirect cost rate described in 2 C.F.R. 200.414(f), and that elects to use the "de minimis" indirect cost rate, must advise
    OJP in writing of both its eligibility and its election, and must comply with all associated requirements in the Part 200
    Uniform Requirements.  The "de minimis" rate may be applied only to modified total direct costs (MTDC) as defined
    by the Part 200 Uniform Requirements.

5.  Requirement to report potentially duplicative funding

    If the recipient currently has other active awards of federal funds, or if the recipient receives any other award of federal
    funds during the period of performance for this award, the recipient promptly must determine whether funds from any
    of those other federal awards have been, are being, or are to be used (in whole or in part) for one or more of the
    identical cost items for which funds are provided under this award.  If so, the recipient must promptly notify the DOJ
    awarding agency (OJP or OVW, as appropriate) in writing of the potential duplication, and, if so requested by DOJ
    awarding agency, must seek a budget-modification or change-of-project-scope grant adjustment notice (GAN) to
    eliminate any inappropriate duplication of funding.

6.  Requirements related to System for Award Management and Unique Entity Identifiers

    The recipient must comply with applicable requirements regarding the System for Award Management (SAM),
    currently accessible at http://www.sam.gov.  This includes applicable requirements regarding registration with SAM, as
    well as maintaining the currency of information in SAM.

    The recipient also must comply with applicable restrictions on subawards ("subgrants") to first-tier subrecipients
    (first-tier "subgrantees"), including restrictions on subawards to entities that do not acquire and provide (to the
    recipient) the unique entity identifier required for SAM registration.

    The details of the recipient's obligations related to SAM and to unique entity identifiers are posted on the OJP web site
    at http://ojp.gov/funding/Explore/SAM.htm (Award condition:  System for Award Management (SAM) and Universal
    Identifier Requirements), and are incorporated by reference here.

    This special condition does not apply to an award to an individual who received the award as a natural person (i.e.,
    unrelated to any business or non-profit organization that he or she may own or operate in his or her name).

7.  All subawards ("subgrants") must have specific federal authorization

    The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements for
    authorization of any subaward.  This condition applies to agreements that -- for purposes of federal grants
    administrative requirements -- OJP considers a "subaward" (and therefore does not consider a procurement
    "contract").

    The details of the requirement for authorization of any subaward are posted on the OJP web site at
    http://ojp.gov/funding/Explore/SubawardAuthorization.htm (Award condition:  Award Condition:  All subawards
    ("subgrants") must have specific federal authorization), and are incorporated by reference here.

U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE 4 OF 12



| PROJECT NUMBER | 2016-DJ-BX-0833 | AWARD DATE | 08/16/2016 |

*SPECIAL CONDITIONS*

8. Specific post-award approval required to use a noncompetitive approach in any procurement contract that would exceed $150,000

   The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements to obtain specific advance approval to use a noncompetitive approach in any procurement contract that would exceed the Simplified Acquisition Threshold (currently, $150,000). This condition applies to agreements that -- for purposes of federal grants administrative requirements -- OJP considers a procurement "contract" (and therefore does not consider a subaward).

   The details of the requirement for advance approval to use a noncompetitive approach in a procurement contract under an OJP award are posted on the OJP web site at http://ojp.gov/funding/Explore/NoncompetitiveProcurement.htm (Award condition: Specific post-award approval required to use a noncompetitive approach in a procurement contract (if contract would exceed $150,000)), and are incorporated by reference here.

9. Requirements pertaining to prohibited conduct related to trafficking in persons (including reporting requirements and OJP authority to terminate award)

   The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements (including requirements to report allegations) pertaining to prohibited conduct related to the trafficking of persons, whether on the part of recipients, subrecipients ("subgrantees"), or individuals defined (for purposes of this condition) as "employees" of the recipient or of any subrecipient.
   The details of the recipient's obligations related to prohibited conduct related to trafficking in persons are posted on the OJP web site at http://ojp.gov/funding/Explore/ProhibitedConduct-Trafficking.htm (Award condition: Prohibited conduct by recipients and subrecipients related to trafficking in persons (including reporting requirements and OJP authority to terminate award)), and are incorporated by reference here.

10. Compliance with applicable rules regarding approval, planning, and reporting of conferences, meetings, trainings, and other events

    The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable laws, regulations, policies, and official DOJ guidance (including specific cost limits, prior approval and reporting requirements, where applicable) governing the use of federal funds for expenses related to conferences (as that term is defined by DOJ), including the provision of food and/or beverages at such conferences, and costs of attendance at such conferences.

    Information on the pertinent DOJ definition of conferences and the rules applicable to this award appears in the DOJ Grants Financial Guide (currently, as section 3.10 of "Postaward Requirements" in the "2015 DOJ Grants Financial Guide").

11. Requirement for data on performance and effectiveness under the award

    The recipient must collect and maintain data that measure the performance and effectiveness of activities under this award. The data must be provided to OJP in the manner (including within the timeframes) specified by OJP in the program solicitation or other applicable written guidance. Data collection supports compliance with the Government Performance and Results Act (GPRA) and the GPRA Modernization Act, and other applicable laws.

12. OJP Training Guiding Principles

    Any training or training materials that the recipient -- or any subrecipient ("subgrantee") at any tier -- develops or delivers with OJP award funds must adhere to the OJP Training Guiding Principles for Grantees and Subgrantees, available at http://ojp.gov/funding/ojptrainingguidingprinciples.htm.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

| PROJECT NUMBER | 2016-DJ-BX-0833 | AWARD DATE | 08/16/2016 |

*SPECIAL CONDITIONS*

13. Effect of failure to address audit issues

    The recipient understands and agrees that the DOJ awarding agency (OJP or OVW, as appropriate) may withhold award funds, or may impose other related requirements, if (as determined by the DOJ awarding agency) the recipient does not satisfactorily and promptly address outstanding issues from audits required by the Part 200 Uniform Requirements (or by the terms of this award), or other outstanding issues that arise in connection with audits, investigations, or reviews of DOJ awards.

14. The recipient agrees to comply with any additional requirements that may be imposed by the DOJ awarding agency (OJP or OVW, as appropriate) during the period of performance for this award, if the recipient is designated as "high-risk" for purposes of the DOJ high-risk grantee list.

15. Compliance with DOJ regulations pertaining to civil rights and nondiscrimination - 28 C.F.R. Part 42

    The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements of 28 C.F.R. Part 42, specifically including any applicable requirements in Subpart E of 28 C.F.R. Part 42 that relate to an equal employment opportunity program.

16. Compliance with DOJ regulations pertaining to civil rights and nondiscrimination - 28 C.F.R. Part 38

    The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements of 28 C.F.R. Part 38, specifically including any applicable requirements regarding written notice to program beneficiaries and prospective program beneficiaries. Part 38 of 28 C.F.R., a DOJ regulation, was amended effective May 4, 2016.

    Among other things, 28 C.F.R. Part 38 includes rules that prohibit specific forms of discrimination on the basis of religion, a religious belief, a refusal to hold a religious belief, or refusal to attend or participate in a religious practice. Part 38 also sets out rules and requirements that pertain to recipient and subrecipient ("subgrantee") organizations that engage in or conduct explicitly religious activities, as well as rules and requirements that pertain to recipients and subrecipients that are faith-based or religious organizations.

    The text of the regulation, now entitled "Partnerships with Faith-Based and Other Neighborhood Organizations," is available via the Electronic Code of Federal Regulations (currently accessible at http://www.ecfr.gov/cgi-bin/ECFR?page=browse), by browsing to Title 28-Judicial Administration, Chapter 1, Part 38, under e-CFR "current" data.

17. Restrictions on "lobbying"

    Federal funds may not be used by the recipient, or any subrecipient ("subgrantee") at any tier, either directly or indirectly, to support or oppose the enactment, repeal, modification or adoption of any law, regulation, or policy, at any level of government.

    Should any question arise as to whether a particular use of Federal funds by a recipient (or subrecipient) would or might fall within the scope of this prohibition, the recipient is to contact OJP for guidance, and may not proceed without the express prior written approval of OJP.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE 6 OF 12

| PROJECT NUMBER | 2016-DJ-BX-0833 | AWARD DATE | 08/16/2016 |
|---|---|---|---|

*SPECIAL CONDITIONS*

18. Compliance with general appropriations-law restrictions on the use of federal funds (FY 2016)

   The recipient, and any subrecipient ("grantee") at any tier, must comply with all applicable restrictions on the use of federal funds set out in federal appropriations statutes. Pertinent restrictions, including from various "general provisions" in the Consolidated Appropriations Act, 2016, are set out at http://ojp.gov/funding/Explore/FY2016-AppropriationsLawRestrictions.htm, and are incorporated by reference here.

   Should a question arise as to whether a particular use of federal funds by a recipient (or a subrecipient) would or might fall within the scope of an appropriations-law restriction, the recipient is to contact OJP for guidance, and may not proceed without the express prior written approval of OJP.

19. Reporting Potential Fraud, Waste, and Abuse, and Similar Misconduct

   The recipient and any subrecipients ("subgrantees") must promptly refer to the DOJ Office of the Inspector General (OIG) any credible evidence that a principal, employee, agent, subrecipient, contractor, subcontractor, or other person has, in connection with funds under this award -- (1) submitted a claim that violates the False Claims Act; or (2) committed a criminal or civil violation of laws pertaining to fraud, conflict of interest, bribery, gratuity, or similar misconduct.

   Potential fraud, waste, abuse, or misconduct involving or relating to funds under this award should be reported to the OIG by-- (1) mail directed to: Office of the Inspector General, U.S. Department of Justice, Investigations Division, 950 Pennsylvania Avenue, N.W. Room 4706, Washington, DC 20530; (2) e-mail to: oig.hotline@usdoj.gov; and/or (3) the DOJ OIG hotline: (contact information in English and Spanish) at (800) 869-4499 (phone) or (202) 616-9881 (fax).

   Additional information is available from the DOJ OIG website at http://www.usdoj.gov/oig.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

| PROJECT NUMBER | 2016-DJ-BX-0833 | AWARD DATE | 08/16/2016 |
|---|---|---|---|

*SPECIAL CONDITIONS*

20. Restrictions and certifications regarding non-disclosure agreements and related matters

No recipient or subrecipient ("subgrantee") under this award, or entity that receives a procurement contract or subcontract with any funds under this award, may require any employee or contractor to sign an internal confidentiality agreement or statement that prohibits or otherwise restricts, or purports to prohibit or restrict, the reporting (in accordance with law) of waste, fraud, or abuse to an investigative or law enforcement representative of a federal department or agency authorized to receive such information.

The foregoing is not intended, and shall not be understood by the agency making this award, to contravene requirements applicable to Standard Form 312 (which relates to classified information), Form 4414 (which relates to sensitive compartmented information), or any other form issued by a federal department or agency governing the nondisclosure of classified information.

1. In accepting this award, the recipient--

a. represents that it neither requires nor has required internal confidentiality agreements or statements from employees or contractors that currently prohibit or otherwise currently restrict (or purport to prohibit or restrict) employees or contractors from reporting waste, fraud, or abuse as described above; and

b. certifies that, if it learns or is notified that it is or has been requiring its employees or contractors to execute agreements or statements that prohibit or otherwise restrict (or purport to prohibit or restrict), reporting of waste, fraud, or abuse as described above, it will immediately stop any further obligations of award funds, will provide prompt written notification to the federal agency making this award, and will resume (or permit resumption of) such obligations only if expressly authorized to do so by that agency.

2. If the recipient does or is authorized under this award to make subawards ("subgrants"), procurement contracts, or both--

a. it represents that--

(1) it has determined that no other entity that the recipient's application proposes may or will receive award funds (whether through a subaward ("subgrant"), procurement contract, or subcontract under a procurement contract) either requires or has required internal confidentiality agreements or statements from employees or contractors that currently prohibit or otherwise currently restrict (or purport to prohibit or restrict) employees or contractors from reporting waste, fraud, or abuse as described above; and

(2) it has made appropriate inquiry, or otherwise has an adequate factual basis, to support this representation; and

b. it certifies that, if it learns or is notified that any subrecipient, contractor, or subcontractor entity that receives funds under this award is or has been requiring its employees or contractors to execute agreements or statements that prohibit or otherwise restrict (or purport to prohibit or restrict), reporting of waste, fraud, or abuse as described above, it will immediately stop any further obligations of award funds to or by that entity, will provide prompt written notification to the federal agency making this award, and will resume (or permit resumption of) such obligations only if expressly authorized to do so by that agency.

U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE 8 OF 12



| PROJECT NUMBER | 2016-DJ-BX-0833 | AWARD DATE | 08/16/2016 |
|---|---|---|---|

*SPECIAL CONDITIONS*

21. Compliance with 41 U.S.C. 4712 (including prohibitions on reprisal; notice to employees)

    The recipient must comply with, and is subject to, all applicable provisions of 41 U.S.C. 4712, including all applicable provisions that prohibit, under specified circumstances, discrimination against an employee as reprisal for the employee's disclosure of information related to gross mismanagement of a federal grant, a gross waste of federal funds, an abuse of authority relating to a federal grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a federal grant.

    The recipient also must inform its employees, in writing (and in the predominant native language of the workforce), of employee rights and remedies under 41 U.S.C. 4712.

    Should a question arise as to the applicability of the provisions of 41 U.S.C. 4712 to this award, the recipient is to contact the DOJ awarding agency (OJP or OVW, as appropriate) for guidance.

22. Encouragement of policies to ban text messaging while driving

    Pursuant to Executive Order 13513, "Federal Leadership on Reducing Text Messaging While Driving," 74 Fed. Reg. 51225 (October 1, 2009), DOJ encourages recipients and subrecipients ("subgrantees") to adopt and enforce policies banning employees from text messaging while driving any vehicle during the course of performing work funded by this award, and to establish workplace safety policies and conduct education, awareness, and other outreach to decrease crashes caused by distracted drivers.

23. The recipient agrees to comply with OJP grant monitoring guidelines, protocols, and procedures, and to cooperate with BJA and OCFO on all grant monitoring requests, including requests related to desk reviews, enhanced programmatic desk reviews, and/or site visits. The recipient agrees to provide to BJA and OCFO all documentation necessary to complete monitoring tasks, including documentation related to any subawards made under this award. Further, the recipient agrees to abide by reasonable deadlines set by BJA and OCFO for providing the requested documents. Failure to cooperate with BJA's/OCFO's grant monitoring activities may result in sanctions affecting the recipient's DOJ awards, including, but not limited to: withholdings and/or other restrictions on the recipient's access to grant funds; referral to the Office of the Inspector General for audit review; designation of the recipient as a DOJ High Risk grantee; or termination of an award(s).

24. The recipient agrees to comply with applicable requirements to report first-tier subawards of $25,000 or more and, in certain circumstances, to report the names and total compensation of the five most highly compensated executives of the recipient and first-tier subrecipients of award funds. Such data will be submitted to the FFATA Subaward Reporting System (FSRS). The details of recipient obligations, which derive from the Federal Funding Accountability and Transparency Act of 2006 (FFATA), are posted on the Office of Justice Programs web site at http://ojp.gov/funding/Explore/FFATA.htm (Award condition: Reporting Subawards and Executive Compensation), and are incorporated by reference here. This condition, and its reporting requirement, does not apply to grant awards made to an individual who received the award as a natural person (i.e., unrelated to any business or non-profit organization that he or she may own or operate in his or her name).

25. Program income (as defined in the Part 200 Uniform Requirements) must be used in accordance with the provisions of the Part 200 Uniform Requirements. Program income earnings and expenditures both must be reported on the quarterly Federal Financial Report, SF 425.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE  9  OF  12

| PROJECT NUMBER | 2016-DJ-BX-0833 | AWARD DATE | 08/16/2016 |
| --- | --- | --- | --- |

*SPECIAL CONDITIONS*

26.  In order to promote information sharing and enable interoperability among disparate systems across the justice and public safety community, OJP requires the grantee to comply with DOJ's Global Justice Information Sharing Initiative (DOJ's Global) guidelines and recommendations for this particular grant. Grantee shall conform to the Global Standards Package (GSP) and all constituent elements, where applicable, as described at: http://www.it.ojp.gov/gsp_grantcondition. Grantee shall document planned approaches to information sharing and describe compliance to the GSP and appropriate privacy policy that protects shared information, or provide detailed justification for why an alternative approach is recommended.

27.  To avoid duplicating existing networks or IT systems in any initiatives funded by BJA for law enforcement information sharing systems which involve interstate connectivity between jurisdictions, such systems shall employ, to the extent possible, existing networks as the communication backbone to achieve interstate connectivity, unless the grantee can demonstrate to the satisfaction of BJA that this requirement would not be cost effective or would impair the functionality of an existing or proposed IT system.

28.  The recipient agrees that any information technology system funded or supported by OJP funds will comply with 28 C.F.R. Part 23, Criminal Intelligence Systems Operating Policies, if OJP determines this regulation to be applicable. Should OJP determine 28 C.F.R. Part 23 to be applicable, OJP may, at its discretion, perform audits of the system, as per the regulation.  Should any violation of 28 C.F.R. Part 23 occur, the recipient may be fined as per 42 U.S.C. 3789g(c)-(d).  Recipient may not satisfy such a fine with federal funds.

29.  Grantee agrees to comply with the requirements of 28 C.F.R. Part 46 and all Office of Justice Programs policies and procedures regarding the protection of human research subjects, including obtainment of Institutional Review Board approval, if appropriate, and subject informed consent.

30.  Grantee agrees to comply with all confidentiality requirements of 42 U.S.C. section 3789g and 28 C.F.R. Part 22 that are applicable to collection, use, and revelation of data or information. Grantee further agrees, as a condition of grant approval, to submit a Privacy Certificate that is in accord with requirements of 28 C.F.R. Part 22 and, in particular, section 22.23.

31.  Award recipients must verify Point of Contact(POC), Financial Point of Contact (FPOC), and Authorized Representative contact information in GMS, including telephone number and e-mail address.  If any information is incorrect or has changed, a Grant Adjustment Notice (GAN) must be submitted via the Grants Management System (GMS) to document changes.

32.  The grantee agrees that within 120 days of award acceptance, each current member of a law enforcement task force funded with these funds who is a task force commander, agency executive, task force officer, or other task force member of equivalent rank, will complete required online (internet-based) task force training. Additionally, all future task force members are required to complete this training once during the life of this award, or once every four years if multiple awards include this requirement. The training is provided free of charge online through BJA's Center for Task Force Integrity and Leadership (www.ctfli.org). This training addresses task force effectiveness as well as other key issues including privacy and civil liberties/rights, task force performance measurement, personnel selection, and task force oversight and accountability. When BJA funding supports a task force, a task force personnel roster should be compiled and maintained, along with course completion certificates, by the grant recipient. Additional information is available regarding this required training and access methods via BJA's web site and the Center for Task Force Integrity and Leadership (www.ctfli.org).

33.  The recipient agrees to participate in BJA-sponsored training events, technical assistance events, or conferences held by BJA or its designees, upon BJA's request.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE 10 OF 12

| PROJECT NUMBER | 2016-DJ-BX-0833 | AWARD DATE | 08/16/2016 |
|---|---|---|---|

*SPECIAL CONDITIONS*

34. Approval of this award does not indicate approval of any consultant rate in excess of $650 per day. A detailed justification must be submitted to and approved by the Office of Justice Programs (OJP) program office prior to obligation or expenditure of such funds.

35. The grantee agrees to assist BJA in complying with the National Environmental Policy Act (NEPA), the National Historic Preservation Act, and other related federal environmental impact analyses requirements in the use of these grant funds, either directly by the grantee or by a subgrantee. Accordingly, the grantee agrees to first determine if any of the following activities will be funded by the grant, prior to obligating funds for any of these purposes. If it is determined that any of the following activities will be funded by the grant, the grantee agrees to contact BJA.

    The grantee understands that this special condition applies to its following new activities whether or not they are being specifically funded with these grant funds. That is, as long as the activity is being conducted by the grantee, a subgrantee, or any third party and the activity needs to be undertaken in order to use these grant funds, this special condition must first be met. The activities covered by this special condition are:
    a. New construction;
    b. Minor renovation or remodeling of a property located in an environmentally or historically sensitive area, including properties located within a 100-year flood plain, a wetland, or habitat for endangered species, or a property listed on or eligible for listing on the National Register of Historic Places;
    c. A renovation, lease, or any proposed use of a building or facility that will either (a) result in a change in its basic prior use or (b) significantly change its size;
    d. Implementation of a new program involving the use of chemicals other than chemicals that are (a) purchased as an incidental component of a funded activity and (b) traditionally used, for example, in office, household, recreational, or education environments; and
    e. Implementation of a program relating to clandestine methamphetamine laboratory operations, including the identification, seizure, or closure of clandestine methamphetamine laboratories.

    The grantee understands and agrees that complying with NEPA may require the preparation of an Environmental Assessment and/or an Environmental Impact Statement, as directed by BJA. The grantee further understands and agrees to the requirements for implementation of a Mitigation Plan, as detailed at http://www.ojp.usdoj.gov/BJA/resource/nepa.html, for programs relating to methamphetamine laboratory operations.

    Application of This Special Condition to Grantee's Existing Programs or Activities: For any of the grantee's or its subgrantees' existing programs or activities that will be funded by these grant funds, the grantee, upon specific request from BJA, agrees to cooperate with BJA in any preparation by BJA of a national or program environmental assessment of that funded program or activity.

36. The recipient is required to establish a trust fund account. (The trust fund may or may not be an interest-bearing account.) The fund, including any interest, may not be used to pay debts or expenses incurred by other activities beyond the scope of the Edward Byrne Memorial Justice Assistance Grant Program (JAG). The recipient also agrees to obligate the grant funds in the trust fund (including any interest earned) during the period of the grant and expend within 90 days thereafter. Any unobligated or unexpended funds, including interest earned, must be returned to the Office of Justice Programs at the time of closeout.

37. JAG funds may be used to purchase vests for an agency, but they may not be used as the 50% match for purposes of the Bulletproof Vest Partnership (BVP) program.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE 11 OF 12

| PROJECT NUMBER | 2016-DJ-BX-0833 | AWARD DATE | 08/16/2016 |
|---|---|---|---|

*SPECIAL CONDITIONS*

38. Ballistic-resistant and stab-resistant body armor purchased with JAG funds may be purchased at any threat level, make or model, from any distributor or manufacturer, as long as the vests have been tested and found to comply with applicable National Institute of Justice ballistic or stab standards and are listed on the NIJ Compliant Body Armor Model List (http://nij.gov). In addition, ballistic-resistant and stab-resistant body armor purchased must be American-made. The latest NIJ standard information can be found here: http://www.nij.gov/topics/technology/body-armor/safety-initiative.htm.

39. The recipient agrees to submit a signed certification that all law enforcement agencies receiving vests purchased with JAG funds have a written "mandatory wear" policy in effect. Fiscal agents and state agencies must keep signed certifications on file for any subrecipients planning to utilize JAG funds for ballistic-resistant and stab-resistant body armor purchases. This policy must be in place for at least all uniformed officers before any JAG funding can be used by the agency for body armor. There are no requirements regarding the nature of the policy other than it be a mandatory wear policy for all uniformed officers while on duty.

40. The recipient agrees to monitor subawards under this JAG award in accordance with all applicable statutes, regulations, OMB circulars, and guidelines, including the DOJ Financial Guide, and to include the applicable conditions of this award in any subaward. The recipient is responsible for oversight of subrecipient spending and monitoring of specific outcomes and benefits attributable to use of JAG funds by subrecipients. The recipient agrees to submit, upon request, documentation of its policies and procedures for monitoring of subawards under this award.

41. The recipient agrees that funds received under this award will not be used to supplant State or local funds, but will be used to increase the amounts of such funds that would, in the absence of Federal funds, be made available for law enforcement activities.

42. Award recipients must submit quarterly Federal Financial Reports (SF-425) and semi-annual performance reports through GMS (https://grants.ojp.usdoj.gov). Consistent with the Department's responsibilities under the Government Performance and Results Act (GPRA), P.L. 103-62, applicants who receive funding under this solicitation must provide data that measure the results of their work. Therefore, quarterly performance metrics reports must be submitted through BJA's Performance Measurement Tool (PMT) website (www.bjaperformancetools.org). For more detailed information on reporting and other JAG requirements, refer to the JAG reporting requirements webpage. Failure to submit required JAG reports by established deadlines may result in the freezing of grant funds and future High Risk designation.

43. Any law enforcement agency receiving direct or sub-awarded JAG funding must submit quarterly accountability metrics data related to training that officers have received on the use of force, racial and ethnic bias, de-escalation of conflict, and constructive engagement with the public.

44. BJA strongly encourages the recipient to submit annual (or more frequent) JAG success stories. To submit a success story, sign in to your My BJA account at https://www.bja.gov/Login.aspx to access the Success Story Submission form. If you do not yet have a My BJA account, please register at https://www.bja.gov/profile.aspx. Once you register, one of the available areas on your My BJA page will be "My Success Stories". Within this box, you will see an option to add a Success Story. Once reviewed and approved by BJA, all success stories will appear on the new BJA Success Story web page at https://www.bja.gov/SuccessStoryList.aspx.

45. Recipient understands and agrees that award funds may not be used for items that are listed on the Controlled Expenditure List at the time of purchase or acquisition, including as the list may be amended from time to time, without explicit written prior approval from BJA. The Controlled Expenditure List, and instructions on how to request approval for purchase or acquisitions may be accessed here: https://www.bja.gov/funding/JAGControlledPurchaseList.pdf



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET**

**Grant**

PAGE 12 OF 12

| PROJECT NUMBER | 2016-DJ-BX-0833 | AWARD DATE | 08/16/2016 |
| --- | --- | --- | --- |

*SPECIAL CONDITIONS*

46.   The recipient understands that, pursuant to recommendation 2.1 of Executive Order 13688, law enforcement agencies that acquire controlled equipment through Federal programs must adopt robust and specific written policies and protocols governing General Policing Standards and Specific Controlled Equipment Standards. General Policing Standards includes policies on (a) Community Policing; (b) Constitutional Policing; and (c) Community Input and Impact Considerations. Specific Controlled Equipment Standards includes policies specifically related to (a) Appropriate Use of Controlled Equipment; (b) Supervision of Use; (c) Effectiveness Evaluation; (d) Auditing and Accountability; and (e) Transparency and Notice Considerations. Upon OJP's request, the recipient agrees to provide a copy of the General Policing Standards and Specific Controlled Equipment Standards, and any related policies and protocols.

47.   Recipient understands and agrees that the purchase or acquisition of any item on the Controlled Expenditure List at the time of purchase or acquisition, including as the list may be amended from time to time, with award funds by an agency will trigger a requirement that the agency collect and retain (for at least 3 years) certain information about the use of 1) any federally-acquired Controlled Equipment in the agency's inventory, and 2) any other controlled equipment in the same category as the federally-acquired controlled equipment in the agency's inventory, regardless of source; and make that information available to BJA upon request. Details about what information must be collected and retained may be accessed here: https://www.whitehouse.gov/sites/default/files/docs/le_equipment_wg_final_report_final.pdf

48.   Recipient understands and agrees that failure to comply with conditions related to Prohibited or Controlled Expenditures may result in a prohibition from further Controlled Expenditure approval under this or other federal awards.

49.   Recipient understands and agrees that award funds may not be used for items that are listed on the Prohibited Expenditure List at the time of purchase or acquisition, including as the list may be amended from time to time. The Prohibited Expenditure list may be accessed here: https://www.bja.gov/funding/JAGControlledPurchaseList.pdf.

50.   Recipient understands and agrees that, notwithstanding 2 CFR § 200.313, no equipment listed on the Controlled Expenditure List that is purchased under this award may be transferred or sold to a third party, except as described below:

a. Agencies may transfer or sell any controlled equipment, except riot helmets and riot shields, to a Law Enforcement Agency (LEA) after obtaining prior written approval from BJA. As a condition of that approval, the acquiring LEA will be required to submit information and certifications to BJA as if it was requesting approval to use award fund for the initial purchase of items on the Controlled Expenditure List.
b. Agencies may not transfer or sell any riot helmets or riot shields purchased under this award.
c. Agencies may not transfer or sell any Controlled Equipment purchased under this award to non-LEAs, with the exception of fixed wing aircraft, rotary wing aircraft, and command and control vehicles. Before any such transfer or sale is finalized, the agency must obtain prior written approval from BJA. All law enforcement-related and other sensitive or potentially dangerous components, and all law enforcement insignias and identifying markings must be removed prior to transfer or sale.

Recipient further understands and agrees to notify BJA prior to the disposal of any items on the Controlled Expenditure List purchased under this award, and to abide by any applicable laws and regulations in such disposal.



**U.S. Department of Justice**

Office of Justice Programs

*Bureau of Justice Assistance*

---

**Memorandum To:** Official Grant File

**From:** Orbin Terry, NEPA Coordinator

**Subject:** Incorporates NEPA Compliance in Further Developmental Stages for City of Portland

The Edward Byrne Memorial Justice Assistance Grant Program (JAG) allows states and local governments to support a broad range of activities to prevent and control crime and to improve the criminal justice system, some of which could have environmental impacts. All recipients of JAG funding must assist BJA in complying with NEPA and other related federal environmental impact analyses requirements in the use of grant funds, whether the funds are used directly by the grantee or by a subgrantee or third party. Accordingly, prior to obligating funds for any of the specified activities, the grantee must first determine if any of the specified activities will be funded by the grant.

The specified activities requiring environmental analysis are:
a. New construction;
b. Any renovation or remodeling of a property located in an environmentally or historically sensitive area, including properties located within a 100-year flood plain, a wetland, or habitat for endangered species, or a property listed on or eligible for listing on the National Register of Historic Places;
c. A renovation, lease, or any proposed use of a building or facility that will either (a) result in a change in its basic prior use or (b) significantly change its size;
d. Implementation of a new program involving the use of chemicals other than chemicals that are (a) purchased as an incidental component of a funded activity and (b) traditionally used, for example, in office, household, recreational, or education environments; and
e. Implementation of a program relating to clandestine methamphetamine laboratory operations, including the identification, seizure, or closure of clandestine methamphetamine laboratories.

Complying with NEPA may require the preparation of an Environmental Assessment and/or an Environmental Impact Statement, as directed by BJA. Further, for programs relating to methamphetamine laboratory operations, the preparation of a detailed Mitigation Plan will be required. For more information about Mitigation Plan requirements, please see https://www.bja.gov/Funding/nepa.html.

Please be sure to carefully review the grant conditions on your award document, as it may contain more specific information about environmental compliance.



U.S. Department of Justice
Office of Justice Programs

Bureau of Justice Assistance

# GRANT MANAGER'S MEMORANDUM, PT. I: PROJECT SUMMARY

## Grant

| PROJECT NUMBER | |
|---|---|
| 2016-DJ-BX-0833 | PAGE 1 OF 1 |

This project is supported under FY16(BJA - JAG) 42 USC 3750, et seq.

| 1. STAFF CONTACT (Name & telephone number) | 2. PROJECT DIRECTOR (Name, address & telephone number) |
|---|---|
| Heather Wiley<br>(202) 598-3969 | Eileen Roe<br>Financial Analyst<br>1120 SW Fifth Avenue<br>Room 1250<br>Portland, OR 97204-1912<br>(503) 823-6819 |

| 3a. TITLE OF THE PROGRAM | 3b. POMS CODE (SEE INSTRUCTIONS ON REVERSE) |
|---|---|
| 2016 Edward Byrne Memorial Justice Assistance Grant Program | |

**4. TITLE OF PROJECT**

2016 Portland-Metropolitan Area Law Enforcement Community Justice Assistance Grant (JAG) Program

| 5. NAME & ADDRESS OF GRANTEE | 6. NAME & ADRESS OF SUBGRANTEE |
|---|---|
| City of Portland<br>1120 SW Fifth Avenue Room 1250<br>Portland, OR 97204-1912 | |

| 7. PROGRAM PERIOD | 8. BUDGET PERIOD |
|---|---|
| FROM: 10/01/2015 TO: 09/30/2019 | FROM: 10/01/2015 TO: 09/30/2019 |

| 9. AMOUNT OF AWARD | 10. DATE OF AWARD |
|---|---|
| $ 465,810 | 08/16/2016 |

| 11. SECOND YEAR'S BUDGET | 12. SECOND YEAR'S BUDGET AMOUNT |
|---|---|
| | |

| 13. THIRD YEAR'S BUDGET PERIOD | 14. THIRD YEAR'S BUDGET AMOUNT |
|---|---|
| | |

**15. SUMMARY DESCRIPTION OF PROJECT (See instruction on reverse)**

The Edward Byrne Memorial Justice Assistance Grant Program (JAG) allows states and units of local government, including tribes, to support a broad range of activities to prevent and control crime based on their own state and local needs and conditions. Grant funds can be used for state and local initiatives, technical assistance, training, personnel, equipment, supplies, contractual support, and information systems for criminal justice, including for any one or more of the following program areas: 1) law enforcement programs; 2) prosecution and court programs; 3) prevention and education programs; 4) corrections and community corrections programs; 5) drug treatment and enforcement programs; 6) planning, evaluation, and technology improvement programs; and 7) crime victim and witness programs (other than compensation).

The City of Portland will allocate the 2016 JAG funds to the City, Multnomah County and the City of Gresham for staff salaries to include: a crime analyst to compile, maintain, integrate, analyze, and report findings on criminal intelligence; a deputy district attorney; and a parole and probation officer. Funds will also be

OJP FORM 4000/2 (REV. 4-88)

used to contract with a local service provider that coordinates treatment, temporary housing, counseling, and training opportunities for women involved in prostitution-related offenses. Digital signage for facilities, camera equipment, Tasers, and a FARO Focus 3-D Scanner will be purchased.

NCA/NCF



**U.S. Department of Justice**

Office of Justice Programs

---

Office of the Assistant Attorney General

*Washington, D.C. 20531*

November 2, 2018

Ms. Kathleen Howard
California Board of State and Community Corrections
2590 Venture Oaks Way
Suite 200
Sacramento, CA 95833-3200

Dear Ms. Howard:

On behalf of Attorney General Jefferson Sessions III, it is my pleasure to inform you that the Office of Justice Programs has approved your application for funding under the FY 17 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - State Solicitation in the amount of $17,701,281 for California Board of State and Community Corrections.

Enclosed you will find the Grant Award and Special Conditions documents. This award is subject to all administrative and financial requirements, including the timely submission of all financial and programmatic reports, resolution of all interim audit findings, and the maintenance of a minimum level of cash-on-hand. Should you not adhere to these requirements, you will be in violation of the terms of this agreement and the award will be subject to termination for cause or other administrative action as appropriate.

If you have questions regarding this award, please contact:

- Program Questions, Tahitia M. Barringer, Program Manager at (202) 616-3294; and

- Financial Questions, the Office of the Chief Financial Officer, Customer Service Center (CSC) at (800) 458-0786, or you may contact the CSC at ask.ocfo@usdoj.gov.

Congratulations, and we look forward to working with you.

Sincerely,

Matt Dummermuth
Principal Deputy Assistant Attorney General

Enclosures

**Exhibit C**



# OFFICE FOR CIVIL RIGHTS

Office of Justice Programs

U.S. Department of Justice

810 7th Street, NW
Washington, DC 20531

Tel: (202) 307-0690
TTY: (202) 307-2027
E-mail: askOCR@usdoj.gov
Website: www.ojp.usdoj.gov/ocr

---

**OCR Letter to All Recipients**

November 2, 2018

Ms. Kathleen Howard
California Board of State and Community Corrections
2590 Venture Oaks Way
Suite 200
Sacramento, CA 95833-3200

Dear Ms. Howard:

Congratulations on your recent award. In establishing financial assistance programs, Congress linked the receipt of federal funding to compliance with federal civil rights laws. The Office for Civil Rights (OCR), Office of Justice Programs (OJP), U.S. Department of Justice (DOJ) is responsible for ensuring that recipients of financial assistance from the OJP, the Office of Community Oriented Policing Services (COPS), and the Office on Violence Against Women (OVW) comply with the applicable federal civil rights laws. We at the OCR are available to help you and your organization meet the civil rights requirements that come with DOJ funding.

**Ensuring Access to Federally Assisted Programs**

Federal laws that apply to recipients of financial assistance from the DOJ prohibit discrimination on the basis of race, color, national origin, religion, sex, or disability in funded programs or activities, not only in employment but also in the delivery of services or benefits. A federal law also prohibits recipients from discriminating on the basis of age in the delivery of services or benefits.

In March of 2013, President Obama signed the Violence Against Women Reauthorization Act of 2013. The statute amends the Violence Against Women Act of 1994 (VAWA) by including a nondiscrimination grant condition that prohibits discrimination based on actual or perceived race, color, national origin, religion, sex, disability, sexual orientation, or gender identity. The new nondiscrimination grant condition applies to certain programs funded after October 1, 2013. The OCR and the OVW have developed answers to some frequently asked questions about this provision to assist recipients of VAWA funds to understand their obligations. The Frequently Asked Questions are available at https://ojp.gov/about/ocr/vawafaqs.htm.

**Enforcing Civil Rights Laws**

All recipients of federal financial assistance, regardless of the particular funding source, the amount of the grant award, or the number of employees in the workforce, are subject to prohibitions against unlawful discrimination. Accordingly, the OCR investigates recipients that are the subject of discrimination complaints from both individuals and groups. In addition, based on regulatory criteria, the OCR selects a number of recipients each year for compliance reviews, audits that require recipients to submit data showing that they are providing services equitably to all segments of their service population and that their employment practices meet equal opportunity standards.

**Providing Services to Limited English Proficiency (LEP) Individuals**

In accordance with DOJ guidance pertaining to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, recipients of federal financial assistance must take reasonable steps to provide meaningful access to their programs and activities for persons with limited English proficiency (LEP). See U.S. Department of Justice, Guidance to Federal Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin Discrimination Affecting Limited English Proficient Persons, 67 Fed. Reg. 41,455 (2002). For more information on the civil rights responsibilities that recipients have in providing language services to LEP individuals, please see the website https://www.lep.gov.

**Ensuring Equal Treatment of Faith-Based Organizations and Safeguarding Constitutional Protections Related to Religion**

The DOJ regulation, Partnerships with Faith-Based and Other Neighborhood Organizations, 28 C.F.R. pt. 38, updated in April 2016, prohibits all recipient organizations, whether they are law enforcement agencies, governmental agencies, educational institutions, houses of worship, or faith-based organizations, from using financial assistance from the DOJ to fund explicitly religious activities. Explicitly religious activities include worship, religious instruction, or proselytization. While funded organizations may engage in non-funded explicitly religious activities (e.g., prayer), they must hold them separately from the activities funded by the DOJ, and recipients cannot compel beneficiaries to participate in them. The regulation also makes clear that organizations participating in programs funded by the DOJ are not permitted to discriminate in the provision of services on the basis of a beneficiary's religion, religious belief, a refusal to hold a religious belief, or a refusal to attend or participate in a religious practice. Funded faith-based organizations must also provide written notice to beneficiaries, advising them that if they should object to the religious character of the funded faith based organization, the funded faith-based organization will take reasonable steps to refer the beneficiary to an alternative service provider. For more information on the regulation, please see the OCR's website at https://ojp.gov/about/ocr/partnerships.htm.

SAAs and faith-based organizations should also note that the Omnibus Crime Control and Safe Streets Act (Safe Streets Act) of 1968, as amended, 34 U.S.C. § 10228(c); the Victims of Crime Act of 1984, as amended, 34 U.S.C. § 20110(e); the Juvenile Justice and Delinquency Prevention Act of 1974, as amended, 34 U.S.C. § 11182(b); and VAWA, as amended,
34 U.S.C. § 12291(b)(13), contain prohibitions against discrimination on the basis of religion in employment. Despite these nondiscrimination provisions, the DOJ has concluded that it may construe the Religious Freedom Restoration Act (RFRA) on a case-by-case basis to permit some faith-based organizations to receive DOJ funds while taking into account religion when hiring staff, even if the statute that authorizes the funding program generally forbids recipients from considering religion in employment decisions. Please consult with the OCR if you have any questions about the regulation or the application of RFRA to the statutes that prohibit discrimination in employment.

**Using Arrest and Conviction Records in Making Employment Decisions**

The OCR issued an advisory document for recipients on the proper use of arrest and conviction records in making hiring decisions. See Advisory for Recipients of Financial Assistance from the U.S. Department of Justice on the U.S. Equal Employment Opportunity Commission's Enforcement Guidance: *Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of 1964 (June 2013)*, available at https://ojp.gov/about/ocr/pdfs/UseofConviction_Advisory.pdf. Recipients should be mindful that the misuse of arrest or conviction records to screen either applicants for employment or employees for retention or promotion may have a disparate impact based on race or national origin, resulting in unlawful employment discrimination. In light of the Advisory, recipients should consult local counsel in reviewing their employment practices. If warranted, recipients should also incorporate an analysis of the use of arrest and conviction records in their Equal Employment Opportunity Plans (EEOPs) (see below).

**Complying with the Safe Streets Act**

An organization that is a recipient of financial assistance subject to the nondiscrimination provisions of the Safe Streets Act, must meet two obligations: (1) complying with the federal regulation pertaining to the development of an EEOP (see 28 C.F.R. pt. 42, subpt. E) and (2) submitting to the OCR findings of discrimination (see 28 C.F.R. §§ 42.204(c), .205(c)(5)).

**Meeting the EEOP Requirement**

An EEOP is a comprehensive document that analyzes a recipient's relevant labor market data, as well as the recipient's employment practices, to identify possible barriers to the participation of women and minorities in all levels of a recipient's workforce. As a recipient of DOJ funding, you may be required to submit an EEOP Certification Report or an EEOP Utilization Report to the OCR. For more information on whether your organization is subject to the EEOP requirements, see https://ojp.gov/about/ocr/eeop.htm. Additionally, you may request technical assistance from an EEOP specialist at the OCR by telephone at (202) 616-1771 or by e-mail at EEOPforms@usdoj.gov.

**Meeting the Requirement to Submit Findings of Discrimination**

If in the three years prior to the date of the grant award, your organization has received an adverse finding of discrimination based on race, color, national origin, religion, or sex, after a due-process hearing, from a state or federal court or from a state or federal administrative agency, your organization must send a copy of the finding to the OCR.

**Ensuring the Compliance of Subrecipients**

SAAs must have standard assurances to notify subrecipients of their civil rights obligations, written procedures to address discrimination complaints filed against subrecipients, methods to monitor subrecipients' compliance with civil rights requirements, and a program to train subrecipients on applicable civil rights laws. In addition, SAAs must submit to the OCR every three years written Methods of Administration (MOA) that summarize the policies and procedures that they have implemented to ensure the civil rights compliance of subrecipients. For more information on the MOA requirement, see https://ojp.gov/funding/Explore/StateMethodsAdmin-FY2017update.htm.

If the OCR can assist you in any way in fulfilling your organization's civil rights responsibilities as a recipient of federal financial assistance, please contact us.

Sincerely,

Michael L. Alston
Director

cc:    Grant Manager
        Financial Analyst

U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**Grant**

| | |
|---|---|
| 1. RECIPIENT NAME AND ADDRESS (Including Zip Code) | 4. AWARD NUMBER: 2017-DJ-BX-0184 |

California Board of State and Community Corrections
2590 Venture Oaks Way Suite 200
Sacramento, CA 95833-3200

5. PROJECT PERIOD: FROM 10/01/2016 TO 09/30/2020
   BUDGET PERIOD: FROM 10/01/2016 TO 09/30/2020

6. AWARD DATE 11/02/2018

7. ACTION — Initial

2a. GRANTEE IRS/VENDOR NO.
   680282717

8. SUPPLEMENT NUMBER
   00

2b. GRANTEE DUNS NO.
   949095731

9. PREVIOUS AWARD AMOUNT $ 0

3. PROJECT TITLE
   2017 Byrne JAG Program

10. AMOUNT OF THIS AWARD $ 17,701,281

11. TOTAL AWARD $ 17,701,281

12. SPECIAL CONDITIONS

THE ABOVE GRANT PROJECT IS APPROVED SUBJECT TO SUCH CONDITIONS OR LIMITATIONS AS ARE SET FORTH
ON THE ATTACHED PAGE(S).

13. STATUTORY AUTHORITY FOR GRANT

This project is supported under FY17(BJA - JAG State and JAG Local) Title I of Pub. L. No. 90-351 (generally codified at 42 U.S.C. 3711 - 3797ff-5),
including subpart 1 of part E (codified at 42 U.S.C. 3750 - 3758); see also 28 U.S.C. 530C(a).

14. CATALOG OF DOMESTIC FEDERAL ASSISTANCE (CFDA Number)

16.738 - Edward Byrne Memorial Justice Assistance Grant Program

15. METHOD OF PAYMENT

GPRS

**AGENCY APPROVAL**

16. TYPED NAME AND TITLE OF APPROVING OFFICIAL

Matt Dummermuth

Principal Deputy Assistant Attorney General

**GRANTEE ACCEPTANCE**

18. TYPED NAME AND TITLE OF AUTHORIZED GRANTEE OFFICIAL

Kathleen Howard
Executive Director

17. SIGNATURE OF APPROVING OFFICIAL

*Matt Dummermuth*

19. SIGNATURE OF AUTHORIZED RECIPIENT OFFICIAL

19A. DATE

**AGENCY USE ONLY**

20. ACCOUNTING CLASSIFICATION CODES

21. SDJUGT0005

| FISCAL YEAR | FUND CODE | BUD. ACT. | OFC. | DIV. REG. | SUB. | POMS | AMOUNT |
|---|---|---|---|---|---|---|---|
| X | B | DJ | 80 | 00 | 00 | | 17701281 |

OJP FORM 4000/2 (REV. 5-87) PREVIOUS EDITIONS ARE OBSOLETE.

OJP FORM 4000/2 (REV. 4-88)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE  2  OF  22

| PROJECT NUMBER | 2017-DJ-BX-0184 | AWARD DATE | 11/02/2018 |
| --- | --- | --- | --- |

*SPECIAL CONDITIONS*

1.  Requirements of the award; remedies for non-compliance or for materially false statements

    The conditions of this award are material requirements of the award.  Compliance with any certifications or assurances submitted by or on behalf of the recipient that relate to conduct during the period of performance also is a material requirement of this award.

    Failure to comply with any one or more of these award requirements -- whether a condition set out in full below, a condition incorporated by reference below, or a certification or assurance related to conduct during the award period -- may result in the Office of Justice Programs ("OJP") taking appropriate action with respect to the recipient and the award.  Among other things, the OJP may withhold award funds, disallow costs, or suspend or terminate the award.  The Department of Justice ("DOJ"), including OJP, also may take other legal action as appropriate.

    Any materially false, fictitious, or fraudulent statement to the federal government related to this award (or concealment or omission of a material fact) may be the subject of criminal prosecution (including under 18 U.S.C. 1001 and/or 1621, and/or 42 U.S.C. 3795a), and also may lead to imposition of civil penalties and administrative remedies for false claims or otherwise (including under 31 U.S.C. 3729-3730 and 3801-3812).

    Should any provision of a requirement of this award be held to be invalid or unenforceable by its terms, that provision shall first be applied with a limited construction so as to give it the maximum effect permitted by law.  Should it be held, instead, that the provision is utterly invalid or -unenforceable, such provision shall be deemed severable from this award.

2.  Applicability of Part 200 Uniform Requirements

    The Uniform Administrative Requirements, Cost Principles, and Audit Requirements in 2 C.F.R. Part 200, as adopted and supplemented by DOJ in 2 C.F.R. Part 2800 (together, the "Part 200 Uniform Requirements") apply to this FY 2017 award from OJP.

    The Part 200 Uniform Requirements were first adopted by DOJ on December 26, 2014.  If this FY 2017 award supplements funds previously awarded by OJP under the same award number (e.g., funds awarded during or before December 2014), the Part 200 Uniform Requirements apply with respect to all funds under that award number (regardless of the award date, and regardless of whether derived from the initial award or a supplemental award) that are obligated on or after the acceptance date of this FY 2017 award.

    For more information and resources on the Part 200 Uniform Requirements as they relate to OJP awards and subawards ("subgrants"), see the OJP website at https://ojp.gov/funding/Part200UniformRequirements.htm.

    In the event that an award-related question arises from documents or other materials prepared or distributed by OJP that may appear to conflict with, or differ in some way from, the provisions of the Part 200 Uniform Requirements, the recipient is to contact OJP promptly for clarification.

3.  Compliance with DOJ Grants Financial Guide

    The recipient agrees to comply with the DOJ Grants Financial Guide as posted on the OJP website (currently, the "2015 DOJ Grants Financial Guide" available at https://ojp.gov/financialguide/DOJ/index.htm), including any updated version that may be posted during the period of performance.


| PROJECT NUMBER | 2017-DJ-BX-0184 | AWARD DATE | 11/02/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

4.  Required training for Point of Contact and all Financial Points of Contact

Both the Point of Contact (POC) and all Financial Points of Contact (FPOCs) for this award must have successfully completed an "OJP financial management and grant administration training" by 120 days after the date of the recipient's acceptance of the award.  Successful completion of such a training on or after January 1, 2016, will satisfy this condition.

In the event that either the POC or an FPOC for this award changes during the period of performance, the new POC or FPOC must have successfully completed an "OJP financial management and grant administration training" by 120 calendar days after-- (1) the date of OJP's approval of the "Change Grantee Contact" GAN (in the case of a new POC), or (2) the date the POC enters information on the new FPOC in GMS (in the case of a new FPOC).  Successful completion of such a training on or after January 1, 2016, will satisfy this condition.

A list of OJP trainings that OJP will consider "OJP financial management and grant administration training" for purposes of this condition is available at https://www.ojp.gov/training/fmts.htm.  All trainings that satisfy this condition include a session on grant fraud prevention and detection.

The recipient should anticipate that OJP will immediately withhold ("freeze") award funds if the recipient fails to comply with this condition.  The recipient's failure to comply also may lead OJP to impose additional appropriate conditions on this award.

5.  Requirements related to "de minimis" indirect cost rate

A recipient that is eligible under the Part 200 Uniform Requirements and other applicable law to use the "de minimis" indirect cost rate described in 2 C.F.R. 200.414(f), and that elects to use the "de minimis" indirect cost rate, must advise OJP in writing of both its eligibility and its election, and must comply with all associated requirements in the Part 200 Uniform Requirements.  The "de minimis" rate may be applied only to modified total direct costs (MTDC) as defined by the Part 200 Uniform Requirements.

6.  Requirement to report potentially duplicative funding

If the recipient currently has other active awards of federal funds, or if the recipient receives any other award of federal funds during the period of performance for this award, the recipient promptly must determine whether funds from any of those other federal awards have been, are being, or are to be used (in whole or in part) for one or more of the identical cost items for which funds are provided under this award.  If so, the recipient must promptly notify the DOJ awarding agency (OJP or OVW, as appropriate) in writing of the potential duplication, and, if so requested by the DOJ awarding agency, must seek a budget-modification or change-of-project-scope grant adjustment notice (GAN) to eliminate any inappropriate duplication of funding.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**
**Grant**

PAGE  4  OF  22

| PROJECT NUMBER | 2017-DJ-BX-0184 | AWARD DATE | 11/02/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

7. Requirements related to System for Award Management and Universal Identifier Requirements

   The recipient must comply with applicable requirements regarding the System for Award Management (SAM), currently accessible at https://www.sam.gov/. This includes applicable requirements regarding registration with SAM, as well as maintaining the currency of information in SAM.

   The recipient also must comply with applicable restrictions on subawards ("subgrants") to first-tier subrecipients (first-tier "subgrantees"), including restrictions on subawards to entities that do not acquire and provide (to the recipient) the unique entity identifier required for SAM registration.

   The details of the recipient's obligations related to SAM and to unique entity identifiers are posted on the OJP web site at https://ojp.gov/funding/Explore/SAM.htm (Award condition: System for Award Management (SAM) and Universal Identifier Requirements), and are incorporated by reference here.

   This condition does not apply to an award to an individual who received the award as a natural person (i.e., unrelated to any business or non-profit organization that he or she may own or operate in his or her name).

8. All subawards ("subgrants") must have specific federal authorization

   The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements for authorization of any subaward. This condition applies to agreements that -- for purposes of federal grants administrative requirements -- OJP considers a "subaward" (and therefore does not consider a procurement "contract").

   The details of the requirement for authorization of any subaward are posted on the OJP web site at https://ojp.gov/funding/Explore/SubawardAuthorization.htm (Award condition: All subawards ("subgrants") must have specific federal authorization), and are incorporated by reference here.

9. Specific post-award approval required to use a noncompetitive approach in any procurement contract that would exceed $150,000

   The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements to obtain specific advance approval to use a noncompetitive approach in any procurement contract that would exceed the Simplified Acquisition Threshold (currently, $150,000). This condition applies to agreements that -- for purposes of federal grants administrative requirements -- OJP considers a procurement "contract" (and therefore does not consider a subaward).

   The details of the requirement for advance approval to use a noncompetitive approach in a procurement contract under an OJP award are posted on the OJP web site at https://ojp.gov/funding/Explore/NoncompetitiveProcurement.htm (Award condition: Specific post-award approval required to use a noncompetitive approach in a procurement contract (if contract would exceed $150,000)), and are incorporated by reference here.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE 5 OF 22

PROJECT NUMBER 2017-DJ-BX-0184      AWARD DATE 11/02/2018

*SPECIAL CONDITIONS*

10. Requirements pertaining to prohibited conduct related to trafficking in persons (including reporting requirements and OJP authority to terminate award)

The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements (including requirements to report allegations) pertaining to prohibited conduct related to the trafficking of persons, whether on the part of recipients, subrecipients ("subgrantees"), or individuals defined (for purposes of this condition) as "employees" of the recipient or of any subrecipient.

The details of the recipient's obligations related to prohibited conduct related to trafficking in persons are posted on the OJP web site at https://ojp.gov/funding/Explore/ProhibitedConduct-Trafficking.htm (Award condition: Prohibited conduct by recipients and subrecipients related to trafficking in persons (including reporting requirements and OJP authority to terminate award)), and are incorporated by reference here.

11. Compliance with applicable rules regarding approval, planning, and reporting of conferences, meetings, trainings, and other events

The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable laws, regulations, policies, and official DOJ guidance (including specific cost limits, prior approval and reporting requirements, where applicable) governing the use of federal funds for expenses related to conferences (as that term is defined by DOJ), including the provision of food and/or beverages at such conferences, and costs of attendance at such conferences.

Information on the pertinent DOJ definition of conferences and the rules applicable to this award appears in the DOJ Grants Financial Guide (currently, as section 3.10 of "Postaward Requirements" in the "2015 DOJ Grants Financial Guide").

12. Requirement for data on performance and effectiveness under the award

The recipient must collect and maintain data that measure the performance and effectiveness of work under this award. The data must be provided to OJP in the manner (including within the timeframes) specified by OJP in the program solicitation or other applicable written guidance. Data collection supports compliance with the Government Performance and Results Act (GPRA) and the GPRA Modernization Act of 2010, and other applicable laws.

13. OJP Training Guiding Principles

Any training or training materials that the recipient -- or any subrecipient ("subgrantee") at any tier -- develops or delivers with OJP award funds must adhere to the OJP Training Guiding Principles for Grantees and Subgrantees, available at https://ojp.gov/funding/ojptrainingguidingprinciples.htm.

14. Effect of failure to address audit issues

The recipient understands and agrees that the DOJ awarding agency (OJP or OVW, as appropriate) may withhold award funds, or may impose other related requirements, if (as determined by the DOJ awarding agency) the recipient does not satisfactorily and promptly address outstanding issues from audits required by the Part 200 Uniform Requirements (or by the terms of this award), or other outstanding issues that arise in connection with audits, investigations, or reviews of DOJ awards.

15. Potential imposition of additional requirements

The recipient agrees to comply with any additional requirements that may be imposed by the DOJ awarding agency (OJP or OVW, as appropriate) during the period of performance for this award, if the recipient is designated as "high-risk" for purposes of the DOJ high-risk grantee list.

OJP FORM 4000/2 (REV. 4-88)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**
**Grant**

PAGE 6 OF 22

| PROJECT NUMBER | 2017-DJ-BX-0184 | AWARD DATE | 11/02/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

16. Compliance with DOJ regulations pertaining to civil rights and nondiscrimination - 28 C.F.R. Part 42

    The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements of 28 C.F.R. Part 42, specifically including any applicable requirements in Subpart E of 28 C.F.R. Part 42 that relate to an equal employment opportunity program.

17. Compliance with DOJ regulations pertaining to civil rights and nondiscrimination - 28 C.F.R. Part 54

    The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements of 28 C.F.R. Part 54, which relates to nondiscrimination on the basis of sex in certain "education programs."

18. Compliance with DOJ regulations pertaining to civil rights and nondiscrimination - 28 C.F.R. Part 38

    The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements of 28 C.F.R. Part 38, specifically including any applicable requirements regarding written notice to program beneficiaries and prospective program beneficiaries. Part 38 of 28 C.F.R., a DOJ regulation, was amended effective May 4, 2016.

    Among other things, 28 C.F.R. Part 38 includes rules that prohibit specific forms of discrimination on the basis of religion, a religious belief, a refusal to hold a religious belief, or refusal to attend or participate in a religious practice. Part 38 also sets out rules and requirements that pertain to recipient and subrecipient ("subgrantee") organizations that engage in or conduct explicitly religious activities, as well as rules and requirements that pertain to recipients and subrecipients that are faith-based or religious organizations.

    The text of the regulation, now entitled "Partnerships with Faith-Based and Other Neighborhood Organizations," is available via the Electronic Code of Federal Regulations (currently accessible at https://www.ecfr.gov/cgi-bin/ECFR?page=browse), by browsing to Title 28-Judicial Administration, Chapter 1, Part 38, under e-CFR "current" data.

19. Restrictions on "lobbying"

    In general, as a matter of federal law, federal funds awarded by OJP may not be used by the recipient, or any subrecipient ("subgrantee") at any tier, either directly or indirectly, to support or oppose the enactment, repeal, modification, or adoption of any law, regulation, or policy, at any level of government. See 18 U.S.C. 1913. (There may be exceptions if an applicable federal statute specifically authorizes certain activities that otherwise would be barred by law.)

    Another federal law generally prohibits federal funds awarded by OJP from being used by the recipient, or any subrecipient at any tier, to pay any person to influence (or attempt to influence) a federal agency, a Member of Congress, or Congress (or an official or employee of any of them) with respect to the awarding of a federal grant or cooperative agreement, subgrant, contract, subcontract, or loan, or with respect to actions such as renewing, extending, or modifying any such award. See 31 U.S.C. 1352. Certain exceptions to this law apply, including an exception that applies to Indian tribes and tribal organizations.

    Should any question arise as to whether a particular use of federal funds by a recipient (or subrecipient) would or might fall within the scope of these prohibitions, the recipient is to contact OJP for guidance, and may not proceed without the express prior written approval of OJP.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE  7  OF  22

| PROJECT NUMBER | 2017-DJ-BX-0184 | AWARD DATE | 11/02/2018 |
| --- | --- | --- | --- |

*SPECIAL CONDITIONS*

20. Compliance with general appropriations-law restrictions on the use of federal funds (FY 2017)

   The recipient, and any subrecipient ("grantee") at any tier, must comply with all applicable restrictions on the use of federal funds set out in federal appropriations statutes. Pertinent restrictions, including from various "general provisions" in the Consolidated Appropriations Act, 2017, are set out at https://ojp.gov/funding/Explore/FY17AppropriationsRestrictions.htm, and are incorporated by reference here.

   Should a question arise as to whether a particular use of federal funds by a recipient (or a subrecipient) would or might fall within the scope of an appropriations-law restriction, the recipient is to contact OJP for guidance, and may not proceed without the express prior written approval of OJP.

21. Reporting Potential Fraud, Waste, and Abuse, and Similar Misconduct

   The recipient and any subrecipients ("subgrantees") must promptly refer to the DOJ Office of the Inspector General (OIG) any credible evidence that a principal, employee, agent, subrecipient, contractor, subcontractor, or other person has, in connection with funds under this award -- (1) submitted a claim that violates the False Claims Act; or (2) committed a criminal or civil violation of laws pertaining to fraud, conflict of interest, bribery, gratuity, or similar misconduct.

   Potential fraud, waste, abuse, or misconduct involving or relating to funds under this award should be reported to the OIG by-- (1) mail directed to: Office of the Inspector General, U.S. Department of Justice, Investigations Division, 1425 New York Avenue, N.W. Suite 7100, Washington, DC 20530; and/or (2) the DOJ OIG hotline: (contact information in English and Spanish) at (800) 869-4499 (phone) or (202) 616-9881 (fax).

   Additional information is available from the DOJ OIG website at https://oig.justice.gov/hotline.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE  8  OF  22

| PROJECT NUMBER | 2017-DJ-BX-0184 | AWARD DATE | 11/02/2018 |

*SPECIAL CONDITIONS*

22.  Restrictions and certifications regarding non-disclosure agreements and related matters

No recipient or subrecipient ("subgrantee") under this award, or entity that receives a procurement contract or subcontract with any funds under this award, may require any employee or contractor to sign an internal confidentiality agreement or statement that prohibits or otherwise restricts, or purports to prohibit or restrict, the reporting (in accordance with law) of waste, fraud, or abuse to an investigative or law enforcement representative of a federal department or agency authorized to receive such information.

The foregoing is not intended, and shall not be understood by the agency making this award, to contravene requirements applicable to Standard Form 312 (which relates to classified information), Form 4414 (which relates to sensitive compartmented information), or any other form issued by a federal department or agency governing the nondisclosure of classified information.

1.  In accepting this award, the recipient--

a.  represents that it neither requires nor has required internal confidentiality agreements or statements from employees or contractors that currently prohibit or otherwise currently restrict (or purport to prohibit or restrict) employees or contractors from reporting waste, fraud, or abuse as described above; and

b.  certifies that, if it learns or is notified that it is or has been requiring its employees or contractors to execute agreements or statements that prohibit or otherwise restrict (or purport to prohibit or restrict), reporting of waste, fraud, or abuse as described above, it will immediately stop any further obligations of award funds, will provide prompt written notification to the federal agency making this award, and will resume (or permit resumption of) such obligations only if expressly authorized to do so by that agency.

2.  If the recipient does or is authorized under this award to make subawards ("subgrants"), procurement contracts, or both--

a.  it represents that--

(1)  it has determined that no other entity that the recipient's application proposes may or will receive award funds (whether through a subaward ("subgrant"), procurement contract, or subcontract under a procurement contract) either requires or has required internal confidentiality agreements or statements from employees or contractors that currently prohibit or otherwise currently restrict (or purport to prohibit or restrict) employees or contractors from reporting waste, fraud, or abuse as described above; and

(2)  it has made appropriate inquiry, or otherwise has an adequate factual basis, to support this representation; and

b.  it certifies that, if it learns or is notified that any subrecipient, contractor, or subcontractor entity that receives funds under this award is or has been requiring its employees or contractors to execute agreements or statements that prohibit or otherwise restrict (or purport to prohibit or restrict), reporting of waste, fraud, or abuse as described above, it will immediately stop any further obligations of award funds to or by that entity, will provide prompt written notification to the federal agency making this award, and will resume (or permit resumption of) such obligations only if expressly authorized to do so by that agency.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE  9  OF  22

| PROJECT NUMBER | 2017-DJ-BX-0184 | AWARD DATE | 11/02/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

23.  Compliance with 41 U.S.C. 4712 (including prohibitions on reprisal; notice to employees)

The recipient (and any subrecipient at any tier) must comply with, and is subject to, all applicable provisions of 41 U.S.C. 4712, including all applicable provisions that prohibit, under specified circumstances, discrimination against an employee as reprisal for the employee's disclosure of information related to gross mismanagement of a federal grant, a gross waste of federal funds, an abuse of authority relating to a federal grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a federal grant.

The recipient also must inform its employees, in writing (and in the predominant native language of the workforce), of employee rights and remedies under 41 U.S.C. 4712.

Should a question arise as to the applicability of the provisions of 41 U.S.C. 4712 to this award, the recipient is to contact the DOJ awarding agency (OJP or OVW, as appropriate) for guidance.

24.  Encouragement of policies to ban text messaging while driving

Pursuant to Executive Order 13513, "Federal Leadership on Reducing Text Messaging While Driving," 74 Fed. Reg. 51225 (October 1, 2009), DOJ encourages recipients and subrecipients ("subgrantees") to adopt and enforce policies banning employees from text messaging while driving any vehicle during the course of performing work funded by this award, and to establish workplace safety policies and conduct education, awareness, and other outreach to decrease crashes caused by distracted drivers.

25.  Cooperating with OJP Monitoring

The recipient agrees to cooperate with OJP monitoring of this award pursuant to OJP's guidelines, protocols, and procedures, and to cooperate with OJP (including the grant manager for this award and the Office of Chief Financial Officer (OCFO)) requests related to such monitoring, including requests related to desk reviews and/or site visits. The recipient agrees to provide to OJP all documentation necessary for OJP to complete its monitoring tasks, including documentation related to any subawards made under this award. Further, the recipient agrees to abide by reasonable deadlines set by OJP for providing the requested documents. Failure to cooperate with OJP's monitoring activities may result in actions that affect the recipient's DOJ awards, including, but not limited to: withholdings and/or other restrictions on the recipient's access to award funds; referral to the DOJ OIG for audit review; designation of the recipient as a DOJ High Risk grantee; or termination of an award(s).

26.  FFATA reporting:  Subawards and executive compensation

The recipient must comply with applicable requirements to report first-tier subawards ("subgrants") of $25,000 or more and, in certain circumstances, to report the names and total compensation of the five most highly compensated executives of the recipient and first-tier subrecipients (first-tier "subgrantees") of award funds. The details of recipient obligations, which derive from the Federal Funding Accountability and Transparency Act of 2006 (FFATA), are posted on the OJP web site at https://ojp.gov/funding/Explore/FFATA.htm (Award condition: Reporting Subawards and Executive Compensation), and are incorporated by reference here.

This condition, including its reporting requirement, does not apply to-- (1) an award of less than $25,000, or (2) an award made to an individual who received the award as a natural person (i.e., unrelated to any business or non-profit organization that he or she may own or operate in his or her name).



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PROJECT NUMBER   2017-DJ-BX-0184                   AWARD DATE      11/02/2018

*SPECIAL CONDITIONS*

27.   Use of program income

Program income (as defined in the Part 200 Uniform Requirements) must be used in accordance with the provisions of the Part 200 Uniform Requirements.  Program income earnings and expenditures both must be reported on the quarterly Federal Financial Report, SF 425.

28.   Justice Information Sharing

In order to promote information sharing and enable interoperability among disparate systems across the justice and public safety community, the recipient (and any subrecipient at any tier)  must comply with DOJ's Global Justice Information Sharing Initiative (DOJ's Global) guidelines and recommendations for this particular award. The recipient shall conform to the Global Standards Package (GSP) and all constituent elements, where applicable, as described at: https://it.ojp.gov/gsp_grantcondition. The recipient shall document planned approaches to information sharing and describe compliance to the GSP and appropriate privacy policy that protects shared information, or provide detailed justification for why an alternative approach is recommended.

29.   Avoidance of duplication of networks

To avoid duplicating existing networks or IT systems in any initiatives funded by BJA for law enforcement information sharing systems which involve interstate connectivity between jurisdictions, such systems shall employ, to the extent possible, existing networks as the communication backbone to achieve interstate connectivity, unless the recipient can demonstrate to the satisfaction of BJA that this requirement would not be cost effective or would impair the functionality of an existing or proposed IT system.

30.   Compliance with 28 C.F.R. Part 23

With respect to any information technology system funded or supported by funds under this award, the recipient (and any subrecipient at any tier) must comply with 28 C.F.R. Part 23, Criminal Intelligence Systems Operating Policies, if OJP determines this regulation to be applicable. Should OJP determine 28 C.F.R. Part 23 to be applicable, OJP may, at its discretion, perform audits of the system, as per the regulation. Should any violation of 28 C.F.R. Part 23 occur, the recipient may be fined as per 42 U.S.C. 3789g(c)-(d).  The recipient may not satisfy such a fine with federal funds.

31.   Protection of human research subjects

The recipient (and any subrecipient at any tier) must comply with the requirements of 28 C.F.R. Part 46 and all OJP policies and procedures regarding the protection of human research subjects, including obtainment of Institutional Review Board approval, if appropriate, and subject informed consent.

32.   Confidentiality of data

The recipient (and any subrecipient at any tier) must comply with all confidentiality requirements of 42 U.S.C. 3789g and 28 C.F.R. Part 22 that are applicable to collection, use, and revelation of data or information. The recipient further agrees, as a condition of award approval, to submit a Privacy Certificate that is in accord with requirements of 28 C.F.R. Part 22 and, in particular, 28 C.F.R. 22.23.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE  11  OF  22

| PROJECT NUMBER | 2017-DJ-BX-0184 | AWARD DATE | 11/02/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

33. Verification and updating of recipient contact information

   The recipient must verify its Point of Contact(POC), Financial Point of Contact (FPOC), and Authorized Representative contact information in GMS, including telephone number and e-mail address.  If any information is incorrect or has changed, a Grant Adjustment Notice (GAN) must be submitted via the Grants Management System (GMS) to document changes.

34. Law enforcement task forces - required training

   Within 120 days of award acceptance, each current member of a law enforcement task force funded with award funds who is a task force commander, agency executive, task force officer, or other task force member of equivalent rank, must complete required online (internet-based) task force training. Additionally, all future task force members must complete this training once during the period of performance for this award, or once every four years if multiple OJP awards include this requirement.

   The required training is available free of charge online through the BJA-funded Center for Task Force Integrity and Leadership (www.ctfli.org). The training addresses task force effectiveness, as well as other key issues including privacy and civil liberties/rights, task force performance measurement, personnel selection, and task force oversight and accountability. If award funds are used to support a task force, the recipient must compile and maintain a task force personnel roster, along with course completion certificates.

   Additional information regarding the training is available through BJA's web site and the Center for Task Force Integrity and Leadership (www.ctfli.org).

35. Required attendance at BJA-sponsored events

   The recipient (and its subrecipients at any tier) must participate in BJA-sponsored training events, technical assistance events, or conferences held by BJA or its designees, upon BJA's request.

36. Justification of consultant rate

   Approval of this award does not indicate approval of any consultant rate in excess of $650 per day. A detailed justification must be submitted to and approved by the OJP program office prior to obligation or expenditure of such funds.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE 12 OF 22

| PROJECT NUMBER | 2017-DJ-BX-0184 | AWARD DATE | 11/02/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

37. Compliance with National Environmental Policy Act and related statutes

Upon request, the recipient (and any subrecipient at any tier) must assist BJA in complying with the National Environmental Policy Act (NEPA), the National Historic Preservation Act, and other related federal environmental impact analyses requirements in the use of these award funds, either directly by the recipient or by a subrecipient. Accordingly, the recipient agrees to first determine if any of the following activities will be funded by the grant, prior to obligating funds for any of these purposes. If it is determined that any of the following activities will be funded by the award, the recipient agrees to contact BJA.

The recipient understands that this condition applies to new activities as set out below, whether or not they are being specifically funded with these award funds. That is, as long as the activity is being conducted by the recipient, a subrecipient, or any third party, and the activity needs to be undertaken in order to use these award funds, this condition must first be met. The activities covered by this condition are:

a. New construction;

b. Minor renovation or remodeling of a property located in an environmentally or historically sensitive area, including properties located within a 100-year flood plain, a wetland, or habitat for endangered species, or a property listed on or eligible for listing on the National Register of Historic Places;

c. A renovation, lease, or any proposed use of a building or facility that will either (a) result in a change in its basic prior use or (b) significantly change its size;

d. Implementation of a new program involving the use of chemicals other than chemicals that are (a) purchased as an incidental component of a funded activity and (b) traditionally used, for example, in office, household, recreational, or education environments; and

e. Implementation of a program relating to clandestine methamphetamine laboratory operations, including the identification, seizure, or closure of clandestine methamphetamine laboratories.

The recipient understands and agrees that complying with NEPA may require the preparation of an Environmental Assessment and/or an Environmental Impact Statement, as directed by BJA. The recipient further understands and agrees to the requirements for implementation of a Mitigation Plan, as detailed at https://bja.gov/Funding/nepa.html, for programs relating to methamphetamine laboratory operations.

Application of This Condition to Recipient's Existing Programs or Activities: For any of the recipient's or its subrecipients' existing programs or activities that will be funded by these award funds, the recipient, upon specific request from BJA, agrees to cooperate with BJA in any preparation by BJA of a national or program environmental assessment of that funded program or activity.

38. Establishment of trust fund

If award funds are being drawn down in advance, the recipient (or a subrecipient, with respect to a subaward) is required to establish a trust fund account. (The trust fund may or may not be an interest-bearing account.) The fund, including any interest, may not be used to pay debts or expenses incurred by other activities beyond the scope of the Edward Byrne Memorial Justice Assistance Grant Program (JAG). The recipient also agrees to obligate the award funds in the trust fund (including any interest earned) during the period of performance for the award and expend within 90 days thereafter. Any unobligated or unexpended funds, including interest earned, must be returned to OJP at the time of closeout.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE 13 OF 22

| PROJECT NUMBER | 2017-DJ-BX-0184 | AWARD DATE | 11/02/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

39. Prohibition on use of award funds for match under BVP program

JAG funds may be used to purchase vests for an agency, but they may not be used as the 50% match for purposes of the DOJ Bulletproof Vest Partnership (BVP) program.

40. Certification of body armor "mandatory wear" policies

The recipient agrees to submit a signed certification that all law enforcement agencies receiving body armor purchased with funds from this award have a written "mandatory wear" policy in effect. The recipient must keep signed certifications on file for any subrecipients planning to utilize funds from this award for ballistic-resistant and stab-resistant body armor purchases. This policy must be in place for at least all uniformed officers before any funds from this award may be used by an agency for body armor. There are no requirements regarding the nature of the policy other than it be a mandatory wear policy for all uniformed officers while on duty.

41. Body armor - compliance with NIJ standards

Ballistic-resistant and stab-resistant body armor purchased with JAG award funds may be purchased at any threat level, make or model, from any distributor or manufacturer, as long as the body armor has been tested and found to comply with applicable National Institute of Justice ballistic or stab standards and is listed on the NIJ Compliant Body Armor Model List (https://nij.gov/). In addition, ballistic-resistant and stab-resistant body armor purchased must be American-made. The latest NIJ standard information can be found here: https://nij.gov/topics/technology/body-armor/pages/safety-initiative.aspx.

42. Required monitoring of subawards

The recipient must monitor subawards under this JAG award in accordance with all applicable statutes, regulations, award conditions, and the DOJ Grants Financial Guide, and must include the applicable conditions of this award in any subaward. Among other things, the recipient is responsible for oversight of subrecipient spending and monitoring of specific outcomes and benefits attributable to use of award funds by subrecipients. The recipient agrees to submit, upon request, documentation of its policies and procedures for monitoring of subawards under this award.

43. Reporting requirements

The recipient must submit quarterly Federal Financial Reports (SF-425) and semi-annual performance reports through OJP's GMS (https://grants.ojp.usdoj.gov). Consistent with the Department's responsibilities under the Government Performance and Results Act (GPRA) and the GPRA Modernization Act of 2010, the recipient must provide data that measure the results of its work. The recipient must submit quarterly performance metrics reports through BJA's Performance Measurement Tool (PMT) website (www.bjaperformancetools.org). For more detailed information on reporting and other JAG requirements, refer to the JAG reporting requirements webpage. Failure to submit required JAG reports by established deadlines may result in the freezing of grant funds and future High Risk designation.

44. Required data on law enforcement agency training

Any law enforcement agency receiving direct or sub-awarded funding from this JAG award must submit quarterly accountability metrics data related to training that officers have received on the use of force, racial and ethnic bias, de-escalation of conflict, and constructive engagement with the public.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE 14 OF 22

| PROJECT NUMBER | 2017-DJ-BX-0184 | AWARD DATE | 11/02/2018 |
| --- | --- | --- | --- |

*SPECIAL CONDITIONS*

45. Prohibited Expenditures List

Award funds may not be used for items that are listed on the Prohibited Expenditure List at the time of purchase or acquisition, including as the list may be amended from time to time. The Prohibited Expenditure List may be accessed here: https://www.bja.gov/funding/JAGControlledPurchaseList.pdf

46. Controlled expenditures - prior written approval required

Award funds may not be used for items that are listed on the Controlled Expenditure List at the time of purchase or acquisition, including as the list may be amended from time to time, without explicit written prior approval from BJA. The Controlled Expenditure List, and instructions on how to request approval for purchase or acquisitions are set out at https://www.bja.gov/funding/JAGControlledPurchaseList.pdf

47. Controlled expenditures - incident reporting

If an agency uses award funds to purchase or acquire any item on the Controlled Expenditure List at the time of purchase or acquisition, including as the list may be amended from time to time, the agency must collect and retain (for at least 3 years) certain information about the use of-- (1) any federally-acquired Controlled Equipment in the agency's inventory, and (2) any other controlled equipment in the same category as the federally-acquired controlled equipment in the agency's inventory, regardless of source; and the agency must make that information available to BJA upon request. Details about what information must be collected and retained are set out at https://ojp.gov/docs/LE-Equipment-WG-Final-Report.pdf.

48. Sale of items on Controlled Expenditure List

Notwithstanding the provision of the Part 200 Uniform Requirements set out at 2 C.F.R. 200.313, no equipment listed on the Controlled Expenditure List that is purchased with award funds may be transferred or sold to a third party, except as described below:

a. Agencies may transfer or sell any controlled equipment, except riot helmets and riot shields, to a Law Enforcement Agency (LEA) after obtaining prior written approval from BJA. As a condition of that approval, the acquiring LEA will be required to submit information and certifications to BJA as if it were requesting approval to use award funds for the initial purchase of items on the Controlled Expenditure List.

b. Agencies may not transfer or sell any riot helmets or riot shields purchased under this award.

c. Agencies may not transfer or sell any Controlled Equipment purchased under this award to non-LEAs, with the exception of fixed wing aircraft, rotary wing aircraft, and command and control vehicles. Before any such transfer or sale is finalized, the agency must obtain prior written approval from BJA. All law enforcement-related and other sensitive or potentially dangerous components, and all law enforcement insignias and identifying markings must be removed prior to transfer or sale.

The recipient must notify BJA prior to the disposal of any items on the Controlled Expenditure List purchased with award funds, and must abide by any applicable laws (including regulations) in such disposal.

49. Prohibited or controlled expenditures - Effect of failure to comply

Failure to comply with an award condition related to prohibited or controlled expenditures may result in denial of any further approvals of controlled expenditures under this or other federal awards.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE 15 OF 22

| | | | |
|---|---|---|---|
| PROJECT NUMBER | 2017-DJ-BX-0184 | AWARD DATE | 11/02/2018 |

*SPECIAL CONDITIONS*

50. Controlled expenditures - Standards

Consistent with recommendation 2.1 of Executive Order 13688, a law enforcement agency that acquires controlled equipment with award funds must adopt robust and specific written policies and protocols governing General Policing Standards and Specific Controlled Equipment Standards. General Policing Standards includes policies on (a) Community Policing; (b) Constitutional Policing; and (c) Community Input and Impact Considerations. Specific Controlled Equipment Standards includes policies specifically related to (a) Appropriate Use of Controlled Equipment; (b) Supervision of Use; (c) Effectiveness Evaluation; (d) Auditing and Accountability; and (e) Transparency and Notice Considerations. Upon OJP's request, the recipient must provide a copy of the General Policing Standards and Specific Controlled Equipment Standards, and any related policies and protocols.

51. Authorization to obligate (federal) award funds to reimburse certain project costs incurred on or after October 1, 2016

The recipient may obligate (federal) award funds only after the recipient makes a valid acceptance of the award. As of the first day of the period of performance for the award (October 1, 2016), however, the recipient may choose to incur project costs using non-federal funds, but any such project costs are incurred at the recipient's risk until, at a minimum-- (1) the recipient makes a valid acceptance of the award, and (2) all applicable withholding conditions are removed by OJP (via a Grant Adjustment Notice). (A withholding condition is a condition in the award document that precludes the recipient from obligating, expending, or drawing down all or a portion of the award funds until the condition is removed.)

Except to the extent (if any) that an award condition expressly precludes reimbursement of project costs incurred "at-risk," if and when the recipient makes a valid acceptance of this award and OJP removes each applicable withholding condition through a Grant Adjustment Notice, the recipient is authorized to obligate (federal) award funds to reimburse itself for project costs incurred "at-risk" earlier during the period of performance (such as project costs incurred prior to award acceptance or prior to removal of an applicable withholding condition), provided that those project costs otherwise are allowable costs under the award.

Nothing in this condition shall be understood to authorize the recipient (or any subrecipient at any tier) to use award funds to "supplant" State or local funds in violation of the recipient's certification (executed by the chief executive of the State or local government) that federal funds will be used to increase the amounts of such funds that would, in the absence of federal funds, be made available for law enforcement activities.

52. "Certification of Compliance with 8 U.S.C. 1373" required for valid award acceptance by a "State"

In order validly to accept this award, the prospective recipient must submit the required "Certification of Compliance with 8 U.S.C. 1373" (executed by the chief legal officer of the State). Unless that executed certification either-- (1) is submitted to OJP together with the fully-executed award document, or (2) is uploaded in OJP's GMS no later than the day the signed award document is submitted to OJP, any submission by a State that purports to accept the award is invalid.

If an initial award-acceptance submission by the recipient is invalid, once the State does submit the necessary certification regarding 8 U.S.C. 1373, the State may submit a fully-executed award document executed by the State on or after the date of that certification.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**
**Grant**

PAGE 16 OF 22

| PROJECT NUMBER | 2017-DJ-BX-0184 | AWARD DATE | 11/02/2018 |
| --- | --- | --- | --- |

*SPECIAL CONDITIONS*

53. Ongoing compliance with 8 U.S.C. 1373 is required

1. With respect to the "program or activity" funded in whole or part under this award (including any such "program or activity" of any subrecipient at any tier), throughout the period of performance for the award, no State or local government entity, -agency, or -official may prohibit or in any way restrict-- (1) any government entity or -official from sending or receiving information regarding citizenship or immigration status as described in 8 U.S.C. 1373(a); or (2) a government entity or -agency from sending, requesting or receiving, maintaining, or exchanging information regarding immigration status as described in 8 U.S.C. 1373(b). For purposes of this award, any prohibition (or restriction) that violates this condition is an "information-communication restriction."

2. Certifications from subrecipients. The recipient may not make a subaward to a State or local government or a "public" institution of higher education, unless it first obtains a certification of compliance with 8 U.S.C. 1373, properly executed by the chief legal officer of the jurisdiction or institution that would receive the subaward, using the appropriate form available at https://ojp.gov/funding/Explore/SampleCertifications-8USC1373.htm. Similarly, the recipient must require that no subrecipient (at any tier) may make a further subaward to a State or local government or a "public" institution of higher education, unless it first obtains a certification of compliance with 8 U.S.C. 1373, properly executed by the chief legal officer of the jurisdiction or institution that would receive the further subaward, using the appropriate OJP form.

3. The recipient's monitoring responsibilities include monitoring of subrecipient compliance with the requirements of this condition.

4. Allowable costs. Compliance with these requirements is an authorized and priority purpose of this award. To the extent that such costs are not reimbursed under any other federal program, award funds may be obligated (including for authorized reimbursements) for the reasonable, necessary, and allocable costs (if any) that the recipient, or any subrecipient at any tier that is a State or local government or a "public" institution of higher education, incurs to implement this condition.

5. Rules of Construction

A. For purposes of this condition:

(1) "State" and "local government" include any agency or other entity thereof, but not any institution of higher education or any Indian tribe.

(2) A "public" institution of higher education is one that is owned, controlled, or directly funded by a State or local government.

(3) "Program or activity" means what it means under title VI of the Civil Rights Act of 1964 (see 42 U.S.C. 2000d-4a).

(4) "Immigration status" means what it means for purposes of 8 U.S.C. 1373 (Illegal Immigration Reform and Immigrant Responsibility Act of 1996); and terms that are defined in 8 U.S.C. 1101 (Immigration and Nationality Act) mean what they mean under that section 1101, except that the term "State" also shall include American Samoa (cf. 42 U.S.C. 901(a)(2)).

(5) Pursuant to the provisions set out at (or referenced in) 8 U.S.C. 1551 note ("Abolition … and Transfer of Functions"), references to the "Immigration and Naturalization Service" in 8 U.S.C. 1373 are to be read as references to particular components of the Department of Homeland Security (DHS).

B. Nothing in this condition shall be understood to authorize or require any recipient, any subrecipient at any tier, any State or local government, any "public" institution of higher education, or any other entity (or individual) to violate any federal law, including any applicable civil rights or nondiscrimination law.


| PROJECT NUMBER | 2017-DJ-BX-0184 | AWARD DATE | 11/02/2018 |

*SPECIAL CONDITIONS*

IMPORTANT NOTE: Any questions about the meaning or scope of this condition should be directed to OJP, before award acceptance.

54. Authority to obligate award funds contingent on compliance with 8 U.S.C. 1373; unallowable costs; obligation to notify

1. If the recipient is a State or local government--

A. The recipient may not obligate award funds if, at the time of the obligation, the "program or activity" of the recipient (or of any subrecipient at any tier that is a either a State or unit of local government or a "public" institution of higher education) that is funded in whole or in part with award funds is subject to any "information-communication restriction."

B. In addition, with respect to any project costs it incurs "at risk," the recipient may not obligate award funds to reimburse itself if -- at the time it incurs such costs -- the "program or activity" of the recipient (or of any subrecipient at any tier that is a either a State or unit of local government or a "public" institution of higher education) that would be reimbursed in whole or in part with award funds was subject to any "information-communication restriction."

C. Any drawdown of award funds by the recipient shall be considered, for all purposes, to be a material representation by the recipient to OJP that, as of the date the recipient requests the drawdown, the recipient and all subrecipients (regardless of tier) are in compliance with 8 U.S.C. 1373.

D. The recipient must promptly notify OJP (in writing) if the recipient, from its requisite monitoring of compliance with award conditions or otherwise, has credible evidence that indicates that the funded "program or activity" of the recipient, or of any subrecipient at any tier that is either a State or a local government or a "public" institution of higher education, may be subject to any "information-communication restriction." In addition, any subaward (at any tier) to a subrecipient that is either a State or a local government or a "public" institution of higher education must require prompt notification to the entity that made the subaward, should the subrecipient such credible evidence regarding an "information-communication restriction."

2. Any subaward (at any tier) to a subrecipient that is either a State or a local government or a "public" institution of higher education must provide that the subrecipient may not obligate award funds if, at the time of the obligation, the "program or activity" of the subrecipient (or of any further such subrecipient at any tier) that is funded in whole or in part with award funds is subject to any "information-communication restriction."

3. Absent an express written determination by DOJ to the contrary, based upon a finding by DOJ of compelling circumstances (e.g., a small amount of award funds obligated by the recipient at the time of a subrecipient's minor and transitory non-compliance, which was unknown to the recipient despite diligent monitoring), any obligations of award funds that, under this condition, may not be made shall be unallowable costs for purposes of this award. In making any such determination, DOJ will give great weight to evidence submitted by the recipient that demonstrates diligent monitoring of subrecipient compliance with the requirements set out in the award condition entitled "Ongoing compliance with 8 U.S.C. 1373 is required."

4. Rules of Construction

A. For purposes of this condition "information-communication restriction" has the meaning set out in the award condition entitled "Ongoing compliance with 8 U.S.C. 1373 is required."

B. Both the "Rules of Construction" and the "Important Note" set out in the award condition entitled "Ongoing compliance with 8 U.S.C. 1373 is required" are incorporated by reference as though set forth here in full.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE 18 OF 22

| PROJECT NUMBER | 2017-DJ-BX-0184 | AWARD DATE | 11/02/2018 |
| --- | --- | --- | --- |

*SPECIAL CONDITIONS*

55. Required State-level rules or practices related to aliens; allowable costs

The following provisions apply to the recipient of this award, if the recipient is a State government, and also apply to any State-government subrecipient at any tier (whether or not the recipient is a State government).

1. Requirements

With respect to the "program or activity" that is funded (in whole or in part) by this award, as of the date the recipient accepts this award, and throughout the remainder of the period of performance for the award--

A. A State statute, or a State rule, -regulation, -policy, or -practice, must be in place that is designed to ensure that agents of the United States acting under color of federal law in fact are given to access any State (or State-contracted) correctional facility for the purpose of permitting such agents to meet with individuals who are (or are believed by such agents to be) aliens and to inquire as to such individuals' right to be or remain in the United States.

B. A State statute, or a State rule, -regulation, -policy, or -practice, must be in place that is designed to ensure that, when a State (or State-contracted) correctional facility receives from DHS a formal written request authorized by the Immigration and Nationality Act that seeks advance notice of the scheduled release date and time for a particular alien in such facility, then such facility will honor such request and -- as early as practicable (see para. 4.B. of this condition) -- provide the requested notice to DHS.

2. Monitoring

The recipient's monitoring responsibilities include monitoring of subrecipient compliance with the requirements of this condition.

3. Allowable costs

Compliance with these requirements is an authorized and priority purpose of this award. To the extent that such costs are not reimbursed under any other federal program, award funds may be obligated (including for authorized reimbursements) for the reasonable, necessary, and allocable costs (if any) of-- (1) developing and putting into place statutes, rules, regulations, policies, and practices to satisfy this condition, and (2) permitting access as described in para. 1.A. above, and (3) honoring any request from DHS that is encompassed by para. 1.B. above.

4. Rules of construction

A. For purposes of this condition--

(1) the term "alien" means what it means under section 101 of the Immigration and Nationality Act (see 8 U.S.C. 1101(a)(3)).

(2) the term "correctional facility" means what it means under the Title I of the Omnibus Crime Control and Safe Streets Act of 1968 (see 42 U.S.C. 3791(a)(7)).

B. Nothing in this condition shall be understood to authorize or require any recipient, any subrecipient at any tier, any State or local government, or any other entity or individual to maintain (or detain) any individual in custody beyond the date and time the individual would have been released in the absence of this condition.

Current DHS practice is ordinarily to request advance notice of scheduled release "as early as practicable (at least 48 hours, if possible)." (See DHS Form I-247A (3/17)). In the event that (e.g., in light of the date DHS made such request) the scheduled release date and time for an alien are such as not to permit the advance notice that DHS has requested, it shall not be a violation of this condition to provide only as much advance notice as practicable.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE 19 OF 22

| PROJECT NUMBER | 2017-DJ-BX-0184 | AWARD DATE | 11/02/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

NOTE: Current DHS practice is to use one form (DHS Form I-247A (3/17)) for two distinct purposes -- to request advance notice of scheduled release, and to request that an individual be detained for up to 48 hours AFTER the scheduled release. This condition imposes NO requirements as to such DHS requests for detention.

C. Both the "Rules of Construction" and the "Important Note" set out in the award condition entitled "Ongoing compliance with 8 U.S.C. 1373 is required" are incorporated by reference as though set forth here in full.

56. Required local-government-level rules or practices related to aliens; allowable costs

The following provisions apply to the recipient of this award, if the recipient is a unit of local government, and also apply to any local-government subrecipient of this award at any tier (whether or not the recipient itself is a unit of local government).

1. Requirements

With respect to the "program or activity" that is funded (in whole or in part) by this award, as of the date the recipient accepts this award, and throughout the remainder of the period of performance for the award--

A. A local ordinance, -rule, -regulation, -policy, or -practice (or an applicable State statute, -rule, -regulation, -policy, or -practice) must be in place that is designed to ensure that agents of the United States acting under color of federal law in fact are given access a local-government (or local-government-contracted) correctional facility for the purpose of permitting such agents to meet with individuals who are (or are believed by such agents to be) aliens and to inquire as to such individuals' right to be or remain in the United States.

B. A local ordinance, -rule, -regulation, -policy, or -practice (or an applicable State statute, -rule, -regulation, -policy, or -practice) must be in place that is designed to ensure that, when a local-government (or local-government-contracted) correctional facility receives from DHS a formal written request authorized by the Immigration and Nationality Act that seeks advance notice of the scheduled release date and time for a particular alien in such facility, then such facility will honor such request and -- as early as practicable (see "Rules of Construction" incorporated by para. 4.B. of this condition) -- provide the requested notice to DHS.

2. Monitoring

The recipient's monitoring responsibilities include monitoring of subrecipient compliance with the requirements of this condition.

3. Allowable costs

Compliance with these requirements is an authorized and priority purpose of this award. To the extent that such costs are not reimbursed under any other federal program, award funds may be obligated (including for authorized reimbursements) for the reasonable, necessary, and allocable costs (if any) of-- (1) developing and putting into place statutes, ordinances, rules, regulations, policies, and practices to satisfy this condition, (2) permitting access as described in para. 1.A. above, and (3) honoring any request from DHS that is encompassed by para. 1.B. above.

4. Rules of construction

A. The "Rules of Construction" and the "Important Note" set out in the award condition entitled "Ongoing compliance with 8 U.S.C. 1373 is required" are incorporated by reference as though set forth here in full.

B. The "Rules of Construction" set out in the award condition entitled "Required State-level rules or practices related to aliens; allowable costs" are incorporated by reference as though set forth here in full.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE  20  OF  22

| | |
|---|---|
| PROJECT NUMBER    2017-DJ-BX-0184 | AWARD DATE      11/02/2018 |

*SPECIAL CONDITIONS*

57.  Use of funds for DNA testing; upload of DNA profiles

If award funds are used for DNA testing of evidentiary materials, any resulting eligible DNA profiles must be uploaded to the Combined DNA Index System ("CODIS," the DNA database operated by the FBI) by a government DNA laboratory with access to CODIS.

No profiles generated under this award may be entered or uploaded into any non-governmental DNA database without prior express written approval from BJA.

Award funds may not be used for the purchase of DNA equipment and supplies unless the resulting DNA profiles may be accepted for entry into CODIS.

58.  Encouragement of submission of "success stories"

BJA strongly encourages the recipient to submit annual (or more frequent) JAG success stories. To submit a success story, sign in to a My BJA account at https://www.bja.gov/Login.aspx to access the Success Story Submission form. If the recipient does not yet have a My BJA account, please register at https://www.bja.gov/profile.aspx. Once registered, one of the available areas on the My BJA page will be "My Success Stories." Within this box, there is an option to add a Success Story. Once reviewed and approved by BJA, all success stories will appear on the BJA Success Story web page at https://www.bja.gov/SuccessStoryList.aspx.

59.  "Methods of Administration" - monitoring compliance with civil rights laws and nondiscrimination provisions

The recipient's monitoring responsibilities include monitoring of subrecipient compliance with applicable federal civil rights laws and nondiscrimination provisions.  Within 90 days of the date of award acceptance, the recipient must submit to OJP's Office for Civil Rights (at CivilRightsMOA@usdoj.gov) written Methods of Administration ("MOA") for subrecipient monitoring with respect to civil rights requirements.  In addition, upon request by OJP (or by another authorized federal agency), the recipient must make associated documentation available for review.

The details of the recipient's obligations related to Methods of Administration are posted on the OJP web site at https://ojp.gov/funding/Explore/StateMethodsAdmin-FY2017update.htm (Award condition: "Methods of Administration" - Requirements applicable to States (FY 2017 Update)), and are incorporated by reference here.

60.  Requirement to disclose whether recipient is designated "high risk" by a federal grant-making agency outside of DOJ

If the recipient is designated "high risk" by a federal grant-making agency outside of DOJ, currently or at any time during the course of the period of performance under this award, the recipient must disclose that fact and certain related information to OJP by email at OJP.ComplianceReporting@ojp.usdoj.gov.  For purposes of this disclosure, high risk includes any status under which a federal awarding agency provides additional oversight due to the recipient's past performance, or other programmatic or financial concerns with the recipient. The recipient's disclosure must include the following: 1. The federal awarding agency that currently designates the recipient high risk, 2. The date the recipient was designated high risk, 3. The high-risk point of contact at that federal awarding agency (name, phone number, and email address), and 4. The reasons for the high-risk status, as set out by the federal awarding agency.


| | | |
|---|---|---|
| PROJECT NUMBER 2017-DJ-BX-0184 | AWARD DATE 11/02/2018 | |

*SPECIAL CONDITIONS*

61. Reclassification of various statutory provisions to a new Title 34 of the United States Code

    On September 1, 2017, various statutory provisions previously codified elsewhere in the U.S. Code were editorially reclassified to a new Title 34, entitled "Crime Control and Law Enforcement."  The reclassification encompassed a number of statutory provisions pertinent to OJP awards (that is, OJP grants and cooperative agreements), including many provisions previously codified in Title 42 of the U.S. Code.

    Effective as of September 1, 2017, any reference in this award document to a statutory provision that has been reclassified to the new Title 34 of the U.S. Code is to be read as a reference to that statutory provision as reclassified to Title 34.  This rule of construction specifically includes references set out in award conditions, references set out in material incorporated by reference through award conditions, and references set out in other award requirements.

62. SORNA final agency decision - Appeals

    The recipient acknowledges the final agency decision made by DOJ that recipient's jurisdiction did not substantially implement the Sex Offender Registration and Notification Act (Public Law 109-248, "SORNA") before the deadline, and understands that, as a result of that final agency decision, the amount of this JAG award was reduced, pursuant to 42 U.S.C. 16925.  By accepting this specific award, the recipient voluntarily agrees that if it elects to file a judicial appeal of that final agency decision, which was integral in determining this particular funding amount, no such appeal may commence more than 6 months after the date of acceptance of this award.

63. Withholding of funds:  Budget narrative

    The recipient may not obligate, expend, or draw down any award funds until the recipient submits, and OJP reviews and accepts, the budget narrative for the award, and a Grant Adjustment Notice (GAN) has been issued to remove this condition.

64. Withholding of funds: Required certification from the chief executive of the applicant government

    The recipient may not obligate, expend, or draw down any award funds until the recipient submits the required "Certifications and Assurances by the Chief Executive of the Applicant Government," properly-executed (as determined by OJP), and a Grant Adjustment Notice (GAN) has been issued to remove this condition.

65. Withholding of funds:  Project abstract

    The recipient may not obligate, expend, or draw down any award funds until the recipient submits, and OJP reviews and accepts, the project abstract, and a Grant Adjustment Notice (GAN) has been issued to remove this condition.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET**

**Grant**

PAGE  22  OF  22

| PROJECT NUMBER | 2017-DJ-BX-0184 | AWARD DATE | 11/02/2018 |
| --- | --- | --- | --- |

*SPECIAL CONDITIONS*

66.  Withholding of funds:  Certification with respect to federal taxes

The recipient may not obligate, expend, or draw down any funds under this award until it has submitted to the program
manager, in a format acceptable to OJP, a formal written certification directed to OJP and executed by an official with
authority to sign on behalf of the recipient, that the recipient-- (1) has filed all Federal tax returns required for the three
tax years immediately preceding the tax year in which the certification is made; (2) has not been convicted of a criminal
offense under the Internal Revenue Code of 1986; and (3) has not, more than 90 days prior to this certification, been
notified of any unpaid federal tax assessment for which the liability remains unsatisfied, unless the assessment is the
subject of an installment agreement or offer in compromise that has been approved by the Internal Revenue Service and
is not in default, or the assessment is the subject of a non-frivolous administrative or judicial proceeding; and until a
Grant Adjustment Notice (GAN) has been issued to remove this condition.

The certification must be dated, and must indicate the full name and title of the signer, as well as the full legal name of
the recipient.

67.  Recipient integrity and performance matters:  Requirement to report information on certain civil, criminal, and
administrative proceedings to SAM and FAPIIS

The recipient must comply with any and all applicable requirements regarding reporting of information on civil,
criminal, and administrative proceedings connected with (or connected to the performance of) either this OJP award or
any other grant, cooperative agreement, or procurement contract from the federal government.  Under certain
circumstances, recipients of OJP awards are required to report information about such proceedings, through the federal
System for Award Management (known as "SAM"), to the designated federal integrity and performance system
(currently, "FAPIIS").

The details of recipient obligations regarding the required reporting (and updating) of information on certain civil,
criminal, and administrative proceedings to the federal designated integrity and performance system (currently,
"FAPIIS") within SAM are posted on the OJP web site at https://ojp.gov/funding/FAPIIS.htm (Award condition:
Recipient Integrity and Performance Matters, including Recipient Reporting to FAPIIS), and are incorporated by
reference here.



**U.S. Department of Justice**

Office of Justice Programs

*Bureau of Justice Assistance*

---

*Washington, D.C. 20531*

**Memorandum To:** Official Grant File

**From:** Orbin Terry, NEPA Coordinator

**Subject:** Incorporates NEPA Compliance in Further Developmental Stages for California
Board of State and Community Corrections

The Edward Byrne Memorial Justice Assistance Grant Program (JAG) allows states and local governments to support a broad range of activities to prevent and control crime and to improve the criminal justice system, some of which could have environmental impacts. All recipients of JAG funding must assist BJA in complying with NEPA and other related federal environmental impact analyses requirements in the use of grant funds, whether the funds are used directly by the grantee or by a subgrantee or third party. Accordingly, prior to obligating funds for any of the specified activities, the grantee must first determine if any of the specified activities will be funded by the grant.

The specified activities requiring environmental analysis are:
a. New construction;
b. Any renovation or remodeling of a property located in an environmentally or historically sensitive area, including properties located within a 100-year flood plain, a wetland, or habitat for endangered species, or a property listed on or eligible for listing on the National Register of Historic Places;
c. A renovation, lease, or any proposed use of a building or facility that will either (a) result in a change in its basic prior use or (b) significantly change its size;
d. Implementation of a new program involving the use of chemicals other than chemicals that are (a) purchased as an incidental component of a funded activity and (b) traditionally used, for example, in office, household, recreational, or education environments; and
e. Implementation of a program relating to clandestine methamphetamine laboratory operations, including the identification, seizure, or closure of clandestine methamphetamine laboratories.

Complying with NEPA may require the preparation of an Environmental Assessment and/or an Environmental Impact Statement, as directed by BJA. Further, for programs relating to methamphetamine laboratory operations, the preparation of a detailed Mitigation Plan will be required. For more information about Mitigation Plan requirements, please see https://www.bja.gov/Funding/nepa.html.

Please be sure to carefully review the grant conditions on your award document, as it may contain more specific information about environmental compliance.



U.S. Department of Justice
Office of Justice Programs

Bureau of Justice Assistance

# GRANT MANAGER'S MEMORANDUM, PT. I: PROJECT SUMMARY

## Grant

| PROJECT NUMBER | |
|---|---|
| 2017-DJ-BX-0184 | PAGE 1 OF 1 |

This project is supported under FY17(BJA - JAG State and JAG Local) Title I of Pub. L. No. 90-351 (generally codified at 42 U.S.C. 3711 - 3797ff-5), including subpart 1 of part E (codified at 42 U.S.C. 3750 - 3758); see also 28 U.S.C. 530C(a).

| 1. STAFF CONTACT (Name & telephone number) | 2. PROJECT DIRECTOR (Name, address & telephone number) |
|---|---|
| Tahitia M. Barringer<br>(202) 616-3294 | Timothy Polasik<br>Field Representative<br>2590 Venture Oaks Way<br>Suite 200<br>Sacramento, CA 95833-3200<br>(916) 621-2853 |

| 3a. TITLE OF THE PROGRAM | 3b. POMS CODE (SEE INSTRUCTIONS ON REVERSE) |
|---|---|
| BJA FY 17 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - State Solicitation | |

4. TITLE OF PROJECT

    2017 Byrne JAG Program

| 5. NAME & ADDRESS OF GRANTEE | 6. NAME & ADRESS OF SUBGRANTEE |
|---|---|
| California Board of State and Community Corrections<br>2590 Venture Oaks Way Suite 200<br>Sacramento, CA 95833-3200 | |

| 7. PROGRAM PERIOD | 8. BUDGET PERIOD |
|---|---|
| FROM: 10/01/2016 TO: 09/30/2020 | FROM: 10/01/2016 TO: 09/30/2020 |

| 9. AMOUNT OF AWARD | 10. DATE OF AWARD |
|---|---|
| $ 17,701,281 | 11/02/2018 |

| 11. SECOND YEAR'S BUDGET | 12. SECOND YEAR'S BUDGET AMOUNT |
|---|---|
| | |

| 13. THIRD YEAR'S BUDGET PERIOD | 14. THIRD YEAR'S BUDGET AMOUNT |
|---|---|
| | |

15. SUMMARY DESCRIPTION OF PROJECT (See instruction on reverse)

The Edward Byrne Memorial Justice Assistance Grant Program (JAG) allows states and units of local government, including tribes, to support a broad range of activities to prevent and control crime based on their own state and local needs and conditions. Grant funds can be used for state and local initiatives, technical assistance, training, personnel, equipment, supplies, contractual support, and information systems for criminal justice, including for any one or more of the following program areas: 1) law enforcement programs; 2) prosecution and court programs; 3) prevention and education programs; 4) corrections and community corrections programs; 5) drug treatment and enforcement programs; 6) planning, evaluation, and technology improvement programs; and 7) crime victim and witness programs (other than compensation) and 8) mental health programs and related law enforcement and corrections programs, including behavioral programs and crisis intervention teams.

This State JAG award will be used to support criminal justice initiatives that fall under one or more of the allowable program areas above. Funded programs or

OJP FORM 4000/2 (REV. 4-88)

initiatives may include multijurisdictional drug and gang task forces, crime prevention and domestic violence programs, courts, corrections, treatment, justice information sharing initiatives, or other programs aimed at reducing crime and/or enhancing public/officer safety.

NCA/NCF



**U.S. Department of Justice**

Office of Justice Programs

---

Office of the Assistant Attorney General        *Washington, D.C. 20531*

October 10, 2018

The Honorable Ted Wheeler
City of Portland
1120 SW Fifth Avenue
Room 1250
Portland, OR 97204-1912

Dear Mayor Wheeler:

On behalf of Attorney General Jefferson Sessions III, it is my pleasure to inform you that the Office of Justice Programs has approved your application for funding under the FY 17 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - Local Solicitation in the amount of $385,515 for City of Portland.

Enclosed you will find the Grant Award and Special Conditions documents. This award is subject to all administrative and financial requirements, including the timely submission of all financial and programmatic reports, resolution of all interim audit findings, and the maintenance of a minimum level of cash-on-hand. Should you not adhere to these requirements, you will be in violation of the terms of this agreement and the award will be subject to termination for cause or other administrative action as appropriate.

If you have questions regarding this award, please contact:

-  Program Questions, Heather Wiley, Program Manager at (202) 598-3969; and

-  Financial Questions, the Office of the Chief Financial Officer, Customer Service Center (CSC) at (800) 458-0786, or you may contact the CSC at ask.ocfo@usdoj.gov.

Congratulations, and we look forward to working with you.

Sincerely,

Matt Dummermuth
Principal Deputy Assistant Attorney General

Enclosures

**Exhibit D**



# OFFICE FOR CIVIL RIGHTS

Office of Justice Programs

U.S. Department of Justice

810 7th Street, NW
Washington, DC 20531

Tel: (202) 307-0690
TTY: (202) 307-2027
E-mail: askOCR@usdoj.gov
Website: www.ojp.usdoj.gov/ocr

---

**OCR Letter to All Recipients**

October 10, 2018

The Honorable Ted Wheeler
City of Portland
1120 SW Fifth Avenue
Room 1250
Portland, OR 97204-1912

Dear Mayor Wheeler:

Congratulations on your recent award. In establishing financial assistance programs, Congress linked the receipt of federal funding to compliance with federal civil rights laws. The Office for Civil Rights (OCR), Office of Justice Programs (OJP), U.S. Department of Justice (DOJ) is responsible for ensuring that recipients of financial assistance from the OJP, the Office of Community Oriented Policing Services (COPS), and the Office on Violence Against Women (OVW) comply with the applicable federal civil rights laws. We at the OCR are available to help you and your organization meet the civil rights requirements that come with DOJ funding.

**Ensuring Access to Federally Assisted Programs**

Federal laws that apply to recipients of financial assistance from the DOJ prohibit discrimination on the basis of race, color, national origin, religion, sex, or disability in funded programs or activities, not only in employment but also in the delivery of services or benefits. A federal law also prohibits recipients from discriminating on the basis of age in the delivery of services or benefits.

In March of 2013, President Obama signed the Violence Against Women Reauthorization Act of 2013. The statute amends the Violence Against Women Act of 1994 (VAWA) by including a nondiscrimination grant condition that prohibits discrimination based on actual or perceived race, color, national origin, religion, sex, disability, sexual orientation, or gender identity. The new nondiscrimination grant condition applies to certain programs funded after October 1, 2013. The OCR and the OVW have developed answers to some frequently asked questions about this provision to assist recipients of VAWA funds to understand their obligations. The Frequently Asked Questions are available at https://ojp.gov/about/ocr/vawafaqs.htm.

**Enforcing Civil Rights Laws**

All recipients of federal financial assistance, regardless of the particular funding source, the amount of the grant award, or the number of employees in the workforce, are subject to prohibitions against unlawful discrimination. Accordingly, the OCR investigates recipients that are the subject of discrimination complaints from both individuals and groups. In addition, based on regulatory criteria, the OCR selects a number of recipients each year for compliance reviews, audits that require recipients to submit data showing that they are providing services equitably to all segments of their service population and that their employment practices meet equal opportunity standards.

**Providing Services to Limited English Proficiency (LEP) Individuals**

In accordance with DOJ guidance pertaining to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, recipients of federal financial assistance must take reasonable steps to provide meaningful access to their programs and activities for persons with limited English proficiency (LEP). See U.S. Department of Justice, Guidance to Federal Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin Discrimination Affecting Limited English Proficient Persons, 67 Fed. Reg. 41,455 (2002). For more information on the civil rights responsibilities that recipients have in providing language services to LEP individuals, please see the website https://www.lep.gov.

**Ensuring Equal Treatment of Faith-Based Organizations and Safeguarding Constitutional Protections Related to Religion**

The DOJ regulation, Partnerships with Faith-Based and Other Neighborhood Organizations, 28 C.F.R. pt. 38, updated in April 2016, prohibits all recipient organizations, whether they are law enforcement agencies, governmental agencies, educational institutions, houses of worship, or faith-based organizations, from using financial assistance from the DOJ to fund explicitly religious activities. Explicitly religious activities include worship, religious instruction, or proselytization. While funded organizations may engage in non-funded explicitly religious activities (e.g., prayer), they must hold them separately from the activities funded by the DOJ, and recipients cannot compel beneficiaries to participate in them. The regulation also makes clear that organizations participating in programs funded by the DOJ are not permitted to discriminate in the provision of services on the basis of a beneficiary's religion, religious belief, a refusal to hold a religious belief, or a refusal to attend or participate in a religious practice. Funded faith-based organizations must also provide written notice to beneficiaries, advising them that if they should object to the religious character of the funded faith based organization, the funded faith-based organization will take reasonable steps to refer the beneficiary to an alternative service provider. For more information on the regulation, please see the OCR's website at https://ojp.gov/about/ocr/partnerships.htm.

SAAs and faith-based organizations should also note that the Omnibus Crime Control and Safe Streets Act (Safe Streets Act) of 1968, as amended, 34 U.S.C. § 10228(c); the Victims of Crime Act of 1984, as amended, 34 U.S.C. § 20110(e); the Juvenile Justice and Delinquency Prevention Act of 1974, as amended, 34 U.S.C. § 11182(b); and VAWA, as amended,
34 U.S.C. § 12291(b)(13), contain prohibitions against discrimination on the basis of religion in employment. Despite these nondiscrimination provisions, the DOJ has concluded that it may construe the Religious Freedom Restoration Act (RFRA) on a case-by-case basis to permit some faith-based organizations to receive DOJ funds while taking into account religion when hiring staff, even if the statute that authorizes the funding program generally forbids recipients from considering religion in employment decisions. Please consult with the OCR if you have any questions about the regulation or the application of RFRA to the statutes that prohibit discrimination in employment.

**Using Arrest and Conviction Records in Making Employment Decisions**

The OCR issued an advisory document for recipients on the proper use of arrest and conviction records in making hiring decisions. See Advisory for Recipients of Financial Assistance from the U.S. Department of Justice on the U.S. Equal Employment Opportunity Commission's Enforcement Guidance: *Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of 1964 (June 2013)*, available at https://ojp.gov/about/ocr/pdfs/UseofConviction_Advisory.pdf. Recipients should be mindful that the misuse of arrest or conviction records to screen either applicants for employment or employees for retention or promotion may have a disparate impact based on race or national origin, resulting in unlawful employment discrimination. In light of the Advisory, recipients should consult local counsel in reviewing their employment practices. If warranted, recipients should also incorporate an analysis of the use of arrest and conviction records in their Equal Employment Opportunity Plans (EEOPs) (see below).

**Complying with the Safe Streets Act**

An organization that is a recipient of financial assistance subject to the nondiscrimination provisions of the Safe Streets Act, must meet two obligations: (1) complying with the federal regulation pertaining to the development of an EEOP (see 28 C.F.R. pt. 42, subpt. E) and (2) submitting to the OCR findings of discrimination (see 28 C.F.R. §§ 42.204(c), .205(c)(5)).

**Meeting the EEOP Requirement**

An EEOP is a comprehensive document that analyzes a recipient's relevant labor market data, as well as the recipient's employment practices, to identify possible barriers to the participation of women and minorities in all levels of a recipient's workforce. As a recipient of DOJ funding, you may be required to submit an EEOP Certification Report or an EEOP Utilization Report to the OCR. For more information on whether your organization is subject to the EEOP requirements, see https://ojp.gov/about/ocr/eeop.htm. Additionally, you may request technical assistance from an EEOP specialist at the OCR by telephone at (202) 616-1771 or by e-mail at EEOPforms@usdoj.gov.

**Meeting the Requirement to Submit Findings of Discrimination**

If in the three years prior to the date of the grant award, your organization has received an adverse finding of discrimination based on race, color, national origin, religion, or sex, after a due-process hearing, from a state or federal court or from a state or federal administrative agency, your organization must send a copy of the finding to the OCR.

**Ensuring the Compliance of Subrecipients**

SAAs must have standard assurances to notify subrecipients of their civil rights obligations, written procedures to address discrimination complaints filed against subrecipients, methods to monitor subrecipients' compliance with civil rights requirements, and a program to train subrecipients on applicable civil rights laws. In addition, SAAs must submit to the OCR every three years written Methods of Administration (MOA) that summarize the policies and procedures that they have implemented to ensure the civil rights compliance of subrecipients. For more information on the MOA requirement, see https://ojp.gov/funding/Explore/StateMethodsAdmin-FY2017update.htm.

If the OCR can assist you in any way in fulfilling your organization's civil rights responsibilities as a recipient of federal financial assistance, please contact us.

Sincerely,

Michael L. Alston
Director

cc:  Grant Manager
       Financial Analyst

U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**Grant**

| | |
|---|---|
| 1. RECIPIENT NAME AND ADDRESS (Including Zip Code) | 4. AWARD NUMBER: 2017-DJ-BX-0666 |

City of Portland
1120 SW Fifth Avenue Room 1250
Portland, OR 97204-1912

5. PROJECT PERIOD: FROM 10/01/2016 TO 09/30/2020

BUDGET PERIOD: FROM 10/01/2016 TO 09/30/2020

6. AWARD DATE 10/10/2018

7. ACTION    Initial

2a. GRANTEE IRS/VENDOR NO.
936002236

8. SUPPLEMENT NUMBER
00

2b. GRANTEE DUNS NO.
054971197

9. PREVIOUS AWARD AMOUNT    $ 0

3. PROJECT TITLE
Justice Assistance Grant Program Fiscal Year 2017

10. AMOUNT OF THIS AWARD    $ 385,515

11. TOTAL AWARD    $ 385,515

12. SPECIAL CONDITIONS

THE ABOVE GRANT PROJECT IS APPROVED SUBJECT TO SUCH CONDITIONS OR LIMITATIONS AS ARE SET FORTH
ON THE ATTACHED PAGE(S).

13. STATUTORY AUTHORITY FOR GRANT

This project is supported under FY17(BJA - JAG State and JAG Local) Title I of Pub. L. No. 90-351 (generally codified at 42 U.S.C. 3711 - 3797ff-5),
including subpart 1 of part E (codified at 42 U.S.C. 3750 - 3758); see also 28 U.S.C. 530C(a).

14 . CATALOG OF DOMESTIC FEDERAL ASSISTANCE (CFDA Number)

16.738 - Edward Byrne Memorial Justice Assistance Grant Program

15. METHOD OF PAYMENT

GPRS

---

**AGENCY APPROVAL**     **GRANTEE ACCEPTANCE**

16. TYPED NAME AND TITLE OF APPROVING OFFICIAL

Matt Dummermuth

Principal Deputy Assistant Attorney General

18. TYPED NAME AND TITLE OF AUTHORIZED GRANTEE OFFICIAL

Ted Wheeler
Mayor

17. SIGNATURE OF APPROVING OFFICIAL

*Matt Dummermuth*

19. SIGNATURE OF AUTHORIZED RECIPIENT OFFICIAL

19A. DATE

---

**AGENCY USE ONLY**

20. ACCOUNTING CLASSIFICATION CODES

21. SDJUGT0009

| FISCAL YEAR | FUND CODE | BUD. ACT. | OFC. | DIV. REG. | SUB. | POMS | AMOUNT |
|---|---|---|---|---|---|---|---|
| X | B | DJ | 80 | 00 | 00 | | 385515 |

OJP FORM 4000/2 (REV. 5-87) PREVIOUS EDITIONS ARE OBSOLETE.

OJP FORM 4000/2 (REV. 4-88)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE  2  OF  21

| PROJECT NUMBER | 2017-DJ-BX-0666 | AWARD DATE | 10/10/2018 |
| --- | --- | --- | --- |

*SPECIAL CONDITIONS*

1. Requirements of the award; remedies for non-compliance or for materially false statements

   The conditions of this award are material requirements of the award.  Compliance with any certifications or assurances submitted by or on behalf of the recipient that relate to conduct during the period of performance also is a material requirement of this award.

   Failure to comply with any one or more of these award requirements -- whether a condition set out in full below, a condition incorporated by reference below, or a certification or assurance related to conduct during the award period -- may result in the Office of Justice Programs ("OJP") taking appropriate action with respect to the recipient and the award.  Among other things, the OJP may withhold award funds, disallow costs, or suspend or terminate the award. The Department of Justice ("DOJ"), including OJP, also may take other legal action as appropriate.

   Any materially false, fictitious, or fraudulent statement to the federal government related to this award (or concealment or omission of a material fact) may be the subject of criminal prosecution (including under 18 U.S.C. 1001 and/or 1621, and/or 42 U.S.C. 3795a), and also may lead to imposition of civil penalties and administrative remedies for false claims or otherwise (including under 31 U.S.C. 3729-3730 and 3801-3812).

   Should any provision of a requirement of this award be held to be invalid or unenforceable by its terms, that provision shall first be applied with a limited construction so as to give it the maximum effect permitted by law.  Should it be held, instead, that the provision is utterly invalid or -unenforceable, such provision shall be deemed severable from this award.

2. Applicability of Part 200 Uniform Requirements

   The Uniform Administrative Requirements, Cost Principles, and Audit Requirements in 2 C.F.R. Part 200, as adopted and supplemented by DOJ in 2 C.F.R. Part 2800 (together, the "Part 200 Uniform Requirements") apply to this FY 2017 award from OJP.

   The Part 200 Uniform Requirements were first adopted by DOJ on December 26, 2014.  If this FY 2017 award supplements funds previously awarded by OJP under the same award number (e.g., funds awarded during or before December 2014), the Part 200 Uniform Requirements apply with respect to all funds under that award number (regardless of the award date, and regardless of whether derived from the initial award or a supplemental award) that are obligated on or after the acceptance date of this FY 2017 award.

   For more information and resources on the Part 200 Uniform Requirements as they relate to OJP awards and subawards ("subgrants"), see the OJP website at https://ojp.gov/funding/Part200UniformRequirements.htm.

   In the event that an award-related question arises from documents or other materials prepared or distributed by OJP that may appear to conflict with, or differ in some way from, the provisions of the Part 200 Uniform Requirements, the recipient is to contact OJP promptly for clarification.

3. Compliance with DOJ Grants Financial Guide

   The recipient agrees to comply with the DOJ Grants Financial Guide as posted on the OJP website (currently, the "2015 DOJ Grants Financial Guide" available at https://ojp.gov/financialguide/DOJ/index.htm), including any updated version that may be posted during the period of performance.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE 3 OF 21

| PROJECT NUMBER | 2017-DJ-BX-0666 | AWARD DATE | 10/10/2018 |
| --- | --- | --- | --- |

*SPECIAL CONDITIONS*

4.  Required training for Point of Contact and all Financial Points of Contact

    Both the Point of Contact (POC) and all Financial Points of Contact (FPOCs) for this award must have successfully completed an "OJP financial management and grant administration training" by 120 days after the date of the recipient's acceptance of the award. Successful completion of such a training on or after January 1, 2016, will satisfy this condition.

    In the event that either the POC or an FPOC for this award changes during the period of performance, the new POC or FPOC must have successfully completed an "OJP financial management and grant administration training" by 120 calendar days after-- (1) the date of OJP's approval of the "Change Grantee Contact" GAN (in the case of a new POC), or (2) the date the POC enters information on the new FPOC in GMS (in the case of a new FPOC). Successful completion of such a training on or after January 1, 2016, will satisfy this condition.

    A list of OJP trainings that OJP will consider "OJP financial management and grant administration training" for purposes of this condition is available at https://www.ojp.gov/training/fmts.htm. All trainings that satisfy this condition include a session on grant fraud prevention and detection.

    The recipient should anticipate that OJP will immediately withhold ("freeze") award funds if the recipient fails to comply with this condition. The recipient's failure to comply also may lead OJP to impose additional appropriate conditions on this award.

5.  Requirements related to "de minimis" indirect cost rate

    A recipient that is eligible under the Part 200 Uniform Requirements and other applicable law to use the "de minimis" indirect cost rate described in 2 C.F.R. 200.414(f), and that elects to use the "de minimis" indirect cost rate, must advise OJP in writing of both its eligibility and its election, and must comply with all associated requirements in the Part 200 Uniform Requirements. The "de minimis" rate may be applied only to modified total direct costs (MTDC) as defined by the Part 200 Uniform Requirements.

6.  Requirement to report potentially duplicative funding

    If the recipient currently has other active awards of federal funds, or if the recipient receives any other award of federal funds during the period of performance for this award, the recipient promptly must determine whether funds from any of those other federal awards have been, are being, or are to be used (in whole or in part) for one or more of the identical cost items for which funds are provided under this award. If so, the recipient must promptly notify the DOJ awarding agency (OJP or OVW, as appropriate) in writing of the potential duplication, and, if so requested by the DOJ awarding agency, must seek a budget-modification or change-of-project-scope grant adjustment notice (GAN) to eliminate any inappropriate duplication of funding.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE  4  OF 21

| PROJECT NUMBER | 2017-DJ-BX-0666 | AWARD DATE | 10/10/2018 |
| --- | --- | --- | --- |

*SPECIAL CONDITIONS*

7. Requirements related to System for Award Management and Universal Identifier Requirements

   The recipient must comply with applicable requirements regarding the System for Award Management (SAM), currently accessible at https://www.sam.gov/. This includes applicable requirements regarding registration with SAM, as well as maintaining the currency of information in SAM.

   The recipient also must comply with applicable restrictions on subawards ("subgrants") to first-tier subrecipients (first-tier "subgrantees"), including restrictions on subawards to entities that do not acquire and provide (to the recipient) the unique entity identifier required for SAM registration.

   The details of the recipient's obligations related to SAM and to unique entity identifiers are posted on the OJP web site at https://ojp.gov/funding/Explore/SAM.htm (Award condition: System for Award Management (SAM) and Universal Identifier Requirements), and are incorporated by reference here.

   This condition does not apply to an award to an individual who received the award as a natural person (i.e., unrelated to any business or non-profit organization that he or she may own or operate in his or her name).

8. All subawards ("subgrants") must have specific federal authorization

   The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements for authorization of any subaward. This condition applies to agreements that -- for purposes of federal grants administrative requirements -- OJP considers a "subaward" (and therefore does not consider a procurement "contract").

   The details of the requirement for authorization of any subaward are posted on the OJP web site at https://ojp.gov/funding/Explore/SubawardAuthorization.htm (Award condition: All subawards ("subgrants") must have specific federal authorization), and are incorporated by reference here.

9. Specific post-award approval required to use a noncompetitive approach in any procurement contract that would exceed $150,000

   The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements to obtain specific advance approval to use a noncompetitive approach in any procurement contract that would exceed the Simplified Acquisition Threshold (currently, $150,000). This condition applies to agreements that -- for purposes of federal grants administrative requirements -- OJP considers a procurement "contract" (and therefore does not consider a subaward).

   The details of the requirement for advance approval to use a noncompetitive approach in a procurement contract under an OJP award are posted on the OJP web site at https://ojp.gov/funding/Explore/NoncompetitiveProcurement.htm (Award condition: Specific post-award approval required to use a noncompetitive approach in a procurement contract (if contract would exceed $150,000)), and are incorporated by reference here.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE  5  OF 21

| PROJECT NUMBER | 2017-DJ-BX-0666 | AWARD DATE | 10/10/2018 |
| --- | --- | --- | --- |

*SPECIAL CONDITIONS*

10. Requirements pertaining to prohibited conduct related to trafficking in persons (including reporting requirements and OJP authority to terminate award)

The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements (including requirements to report allegations) pertaining to prohibited conduct related to the trafficking of persons, whether on the part of recipients, subrecipients ("subgrantees"), or individuals defined (for purposes of this condition) as "employees" of the recipient or of any subrecipient.

The details of the recipient's obligations related to prohibited conduct related to trafficking in persons are posted on the OJP web site at https://ojp.gov/funding/Explore/ProhibitedConduct-Trafficking.htm (Award condition:  Prohibited conduct by recipients and subrecipients related to trafficking in persons (including reporting requirements and OJP authority to terminate award)), and are incorporated by reference here.

11. Compliance with applicable rules regarding approval, planning, and reporting of conferences, meetings, trainings, and other events

The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable laws, regulations, policies, and official DOJ guidance (including specific cost limits, prior approval and reporting requirements, where applicable) governing the use of federal funds for expenses related to conferences (as that term is defined by DOJ), including the provision of food and/or beverages at such conferences, and costs of attendance at such conferences.

Information on the pertinent DOJ definition of conferences and the rules applicable to this award appears in the DOJ Grants Financial Guide (currently, as section 3.10 of "Postaward Requirements" in the "2015 DOJ Grants Financial Guide").

12. Requirement for data on performance and effectiveness under the award

The recipient must collect and maintain data that measure the performance and effectiveness of work under this award. The data must be provided to OJP in the manner (including within the timeframes) specified by OJP in the program solicitation or other applicable written guidance.  Data collection supports compliance with the Government Performance and Results Act (GPRA) and the GPRA Modernization Act of 2010, and other applicable laws.

13. OJP Training Guiding Principles

Any training or training materials that the recipient -- or any subrecipient ("subgrantee") at any tier -- develops or delivers with OJP award funds must adhere to the OJP Training Guiding Principles for Grantees and Subgrantees, available at https://ojp.gov/funding/ojptrainingguidingprinciples.htm.

14. Effect of failure to address audit issues

The recipient understands and agrees that the DOJ awarding agency (OJP or OVW, as appropriate) may withhold award funds, or may impose other related requirements, if (as determined by the DOJ awarding agency) the recipient does not satisfactorily and promptly address outstanding issues from audits required by the Part 200 Uniform Requirements (or by the terms of this award), or other outstanding issues that arise in connection with audits, investigations, or reviews of DOJ awards.

15. Potential imposition of additional requirements

The recipient agrees to comply with any additional requirements that may be imposed by the DOJ awarding agency (OJP or OVW, as appropriate) during the period of performance for this award, if the recipient is designated as "high-risk" for purposes of the DOJ high-risk grantee list.


| PROJECT NUMBER | 2017-DJ-BX-0666 | AWARD DATE | 10/10/2018 |

*SPECIAL CONDITIONS*

16. Compliance with DOJ regulations pertaining to civil rights and nondiscrimination - 28 C.F.R. Part 42

   The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements of 28 C.F.R. Part 42, specifically including any applicable requirements in Subpart E of 28 C.F.R. Part 42 that relate to an equal employment opportunity program.

17. Compliance with DOJ regulations pertaining to civil rights and nondiscrimination - 28 C.F.R. Part 54

   The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements of 28 C.F.R. Part 54, which relates to nondiscrimination on the basis of sex in certain "education programs."

18. Compliance with DOJ regulations pertaining to civil rights and nondiscrimination - 28 C.F.R. Part 38

   The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements of 28 C.F.R. Part 38, specifically including any applicable requirements regarding written notice to program beneficiaries and prospective program beneficiaries. Part 38 of 28 C.F.R., a DOJ regulation, was amended effective May 4, 2016.

   Among other things, 28 C.F.R. Part 38 includes rules that prohibit specific forms of discrimination on the basis of religion, a religious belief, a refusal to hold a religious belief, or refusal to attend or participate in a religious practice. Part 38 also sets out rules and requirements that pertain to recipient and subrecipient ("subgrantee") organizations that engage in or conduct explicitly religious activities, as well as rules and requirements that pertain to recipients and subrecipients that are faith-based or religious organizations.

   The text of the regulation, now entitled "Partnerships with Faith-Based and Other Neighborhood Organizations," is available via the Electronic Code of Federal Regulations (currently accessible at https://www.ecfr.gov/cgi-bin/ECFR?page=browse), by browsing to Title 28-Judicial Administration, Chapter 1, Part 38, under e-CFR "current" data.

19. Restrictions on "lobbying"

   In general, as a matter of federal law, federal funds awarded by OJP may not be used by the recipient, or any subrecipient ("subgrantee") at any tier, either directly or indirectly, to support or oppose the enactment, repeal, modification, or adoption of any law, regulation, or policy, at any level of government. See 18 U.S.C. 1913. (There may be exceptions if an applicable federal statute specifically authorizes certain activities that otherwise would be barred by law.)

   Another federal law generally prohibits federal funds awarded by OJP from being used by the recipient, or any subrecipient at any tier, to pay any person to influence (or attempt to influence) a federal agency, a Member of Congress, or Congress (or an official or employee of any of them) with respect to the awarding of a federal grant or cooperative agreement, subgrant, contract, subcontract, or loan, or with respect to actions such as renewing, extending, or modifying any such award. See 31 U.S.C. 1352. Certain exceptions to this law apply, including an exception that applies to Indian tribes and tribal organizations.

   Should any question arise as to whether a particular use of federal funds by a recipient (or subrecipient) would or might fall within the scope of these prohibitions, the recipient is to contact OJP for guidance, and may not proceed without the express prior written approval of OJP.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE  7  OF  21

| PROJECT NUMBER | 2017-DJ-BX-0666 | AWARD DATE | 10/10/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

20. Compliance with general appropriations-law restrictions on the use of federal funds (FY 2017)

   The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable restrictions on the use of federal funds set out in federal appropriations statutes.  Pertinent restrictions, including from various "general provisions" in the Consolidated Appropriations Act, 2017, are set out at https://ojp.gov/funding/Explore/FY17AppropriationsRestrictions.htm, and are incorporated by reference here.

   Should a question arise as to whether a particular use of federal funds by a recipient (or a subrecipient) would or might fall within the scope of an appropriations-law restriction, the recipient is to contact OJP for guidance, and may not proceed without the express prior written approval of OJP.

21. Reporting Potential Fraud, Waste, and Abuse, and Similar Misconduct

   The recipient and any subrecipients ("subgrantees") must promptly refer to the DOJ Office of the Inspector General (OIG) any credible evidence that a principal, employee, agent, subrecipient, contractor, subcontractor, or other person has, in connection with funds under this award -- (1) submitted a claim that violates the False Claims Act; or (2) committed a criminal or civil violation of laws pertaining to fraud, conflict of interest, bribery, gratuity, or similar misconduct.

   Potential fraud, waste, abuse, or misconduct involving or relating to funds under this award should be reported to the OIG by-- (1) mail directed to: Office of the Inspector General, U.S. Department of Justice, Investigations Division, 1425 New York Avenue, N.W. Suite 7100, Washington, DC 20530; and/or (2) the DOJ OIG hotline: (contact information in English and Spanish) at (800) 869-4499 (phone) or (202) 616-9881 (fax).

   Additional information is available from the DOJ OIG website at https://oig.justice.gov/hotline.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE  8  OF  21

| PROJECT NUMBER | 2017-DJ-BX-0666 | AWARD DATE | 10/10/2018 |
| --- | --- | --- | --- |

*SPECIAL CONDITIONS*

22. Restrictions and certifications regarding non-disclosure agreements and related matters

No recipient or subrecipient ("subgrantee") under this award, or entity that receives a procurement contract or subcontract with any funds under this award, may require any employee or contractor to sign an internal confidentiality agreement or statement that prohibits or otherwise restricts, or purports to prohibit or restrict, the reporting (in accordance with law) of waste, fraud, or abuse to an investigative or law enforcement representative of a federal department or agency authorized to receive such information.

The foregoing is not intended, and shall not be understood by the agency making this award, to contravene requirements applicable to Standard Form 312 (which relates to classified information), Form 4414 (which relates to sensitive compartmented information), or any other form issued by a federal department or agency governing the nondisclosure of classified information.

1. In accepting this award, the recipient--

a. represents that it neither requires nor has required internal confidentiality agreements or statements from employees or contractors that currently prohibit or otherwise currently restrict (or purport to prohibit or restrict) employees or contractors from reporting waste, fraud, or abuse as described above; and

b. certifies that, if it learns or is notified that it is or has been requiring its employees or contractors to execute agreements or statements that prohibit or otherwise restrict (or purport to prohibit or restrict), reporting of waste, fraud, or abuse as described above, it will immediately stop any further obligations of award funds, will provide prompt written notification to the federal agency making this award, and will resume (or permit resumption of) such obligations only if expressly authorized to do so by that agency.

2. If the recipient does or is authorized under this award to make subawards ("subgrants"), procurement contracts, or both--

a. it represents that--

(1) it has determined that no other entity that the recipient's application proposes may or will receive award funds (whether through a subaward ("subgrant"), procurement contract, or subcontract under a procurement contract) either requires or has required internal confidentiality agreements or statements from employees or contractors that currently prohibit or otherwise currently restrict (or purport to prohibit or restrict) employees or contractors from reporting waste, fraud, or abuse as described above; and

(2) it has made appropriate inquiry, or otherwise has an adequate factual basis, to support this representation; and

b. it certifies that, if it learns or is notified that any subrecipient, contractor, or subcontractor entity that receives funds under this award is or has been requiring its employees or contractors to execute agreements or statements that prohibit or otherwise restrict (or purport to prohibit or restrict), reporting of waste, fraud, or abuse as described above, it will immediately stop any further obligations of award funds to or by that entity, will provide prompt written notification to the federal agency making this award, and will resume (or permit resumption of) such obligations only if expressly authorized to do so by that agency.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE 9 OF 21

| PROJECT NUMBER | 2017-DJ-BX-0666 | AWARD DATE | 10/10/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

23. Compliance with 41 U.S.C. 4712 (including prohibitions on reprisal; notice to employees)

   The recipient (and any subrecipient at any tier) must comply with, and is subject to, all applicable provisions of 41 U.S.C. 4712, including all applicable provisions that prohibit, under specified circumstances, discrimination against an employee as reprisal for the employee's disclosure of information related to gross mismanagement of a federal grant, a gross waste of federal funds, an abuse of authority relating to a federal grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a federal grant.

   The recipient also must inform its employees, in writing (and in the predominant native language of the workforce), of employee rights and remedies under 41 U.S.C. 4712.

   Should a question arise as to the applicability of the provisions of 41 U.S.C. 4712 to this award, the recipient is to contact the DOJ awarding agency (OJP or OVW, as appropriate) for guidance.

24. Encouragement of policies to ban text messaging while driving

   Pursuant to Executive Order 13513, "Federal Leadership on Reducing Text Messaging While Driving," 74 Fed. Reg. 51225 (October 1, 2009), DOJ encourages recipients and subrecipients ("subgrantees") to adopt and enforce policies banning employees from text messaging while driving any vehicle during the course of performing work funded by this award, and to establish workplace safety policies and conduct education, awareness, and other outreach to decrease crashes caused by distracted drivers.

25. Cooperating with OJP Monitoring

   The recipient agrees to cooperate with OJP monitoring of this award pursuant to OJP's guidelines, protocols, and procedures, and to cooperate with OJP (including the grant manager for this award and the Office of Chief Financial Officer (OCFO)) requests related to such monitoring, including requests related to desk reviews and/or site visits. The recipient agrees to provide to OJP all documentation necessary for OJP to complete its monitoring tasks, including documentation related to any subawards made under this award. Further, the recipient agrees to abide by reasonable deadlines set by OJP for providing the requested documents. Failure to cooperate with OJP's monitoring activities may result in actions that affect the recipient's DOJ awards, including, but not limited to: withholdings and/or other restrictions on the recipient's access to award funds; referral to the DOJ OIG for audit review; designation of the recipient as a DOJ High Risk grantee; or termination of an award(s).

26. FFATA reporting: Subawards and executive compensation

   The recipient must comply with applicable requirements to report first-tier subawards ("subgrants") of $25,000 or more and, in certain circumstances, to report the names and total compensation of the five most highly compensated executives of the recipient and first-tier subrecipients (first-tier "subgrantees") of award funds. The details of recipient obligations, which derive from the Federal Funding Accountability and Transparency Act of 2006 (FFATA), are posted on the OJP web site at https://ojp.gov/funding/Explore/FFATA.htm (Award condition: Reporting Subawards and Executive Compensation), and are incorporated by reference here.

   This condition, including its reporting requirement, does not apply to-- (1) an award of less than $25,000, or (2) an award made to an individual who received the award as a natural person (i.e., unrelated to any business or non-profit organization that he or she may own or operate in his or her name).



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET**

**Grant**

PROJECT NUMBER     2017-DJ-BX-0666                     AWARD DATE     10/10/2018

*SPECIAL CONDITIONS*

27.  Use of program income

Program income (as defined in the Part 200 Uniform Requirements) must be used in accordance with the provisions of
the Part 200 Uniform Requirements.  Program income earnings and expenditures both must be reported on the quarterly
Federal Financial Report, SF 425.

28.  Justice Information Sharing

In order to promote information sharing and enable interoperability among disparate systems across the justice and
public safety community, the recipient (and any subrecipient at any tier)  must comply with DOJ's Global Justice
Information Sharing Initiative (DOJ's Global) guidelines and recommendations for this particular award. The recipient
shall conform to the Global Standards Package (GSP) and all constituent elements, where applicable, as described at:
https://it.ojp.gov/gsp_grantcondition. The recipient shall document planned approaches to information sharing and
describe compliance to the GSP and appropriate privacy policy that protects shared information, or provide detailed
justification for why an alternative approach is recommended.

29.  Avoidance of duplication of networks

To avoid duplicating existing networks or IT systems in any initiatives funded by BJA for law enforcement information
sharing systems which involve interstate connectivity between jurisdictions, such systems shall employ, to the extent
possible, existing networks as the communication backbone to achieve interstate connectivity, unless the recipient can
demonstrate to the satisfaction of BJA that this requirement would not be cost effective or would impair the
functionality of an existing or proposed IT system.

30.  Compliance with 28 C.F.R. Part 23

With respect to any information technology system funded or supported by funds under this award, the recipient (and
any subrecipient at any tier) must comply with 28 C.F.R. Part 23, Criminal Intelligence Systems Operating Policies, if
OJP determines this regulation to be applicable. Should OJP determine 28 C.F.R. Part 23 to be applicable, OJP may, at
its discretion, perform audits of the system, as per the regulation. Should any violation of 28 C.F.R. Part 23 occur, the
recipient may be fined as per 42 U.S.C. 3789g(c)-(d).  The recipient may not satisfy such a fine with federal funds.

31.  Protection of human research subjects

The recipient (and any subrecipient at any tier) must comply with the requirements of 28 C.F.R. Part 46 and all OJP
policies and procedures regarding the protection of human research subjects, including obtainment of Institutional
Review Board approval, if appropriate, and subject informed consent.

32.  Confidentiality of data

The recipient (and any subrecipient at any tier) must comply with all confidentiality requirements of 42 U.S.C. 3789g
and 28 C.F.R. Part 22 that are applicable to collection, use, and revelation of data or information. The recipient further
agrees, as a condition of award approval, to submit a Privacy Certificate that is in accord with requirements of 28
C.F.R. Part 22 and, in particular, 28 C.F.R. 22.23.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE  11  OF  21

| PROJECT NUMBER | 2017-DJ-BX-0666 | AWARD DATE | 10/10/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

33. Verification and updating of recipient contact information

    The recipient must verify its Point of Contact(POC), Financial Point of Contact (FPOC), and Authorized Representative contact information in GMS, including telephone number and e-mail address.  If any information is incorrect or has changed, a Grant Adjustment Notice (GAN) must be submitted via the Grants Management System (GMS) to document changes.

34. Law enforcement task forces - required training

    Within 120 days of award acceptance, each current member of a law enforcement task force funded with award funds who is a task force commander, agency executive, task force officer, or other task force member of equivalent rank, must complete required online (internet-based) task force training. Additionally, all future task force members must complete this training once during the period of performance for this award, or once every four years if multiple OJP awards include this requirement.

    The required training is available free of charge online through the BJA-funded Center for Task Force Integrity and Leadership (www.ctfli.org). The training addresses task force effectiveness, as well as other key issues including privacy and civil liberties/rights, task force performance measurement, personnel selection, and task force oversight and accountability. If award funds are used to support a task force, the recipient must compile and maintain a task force personnel roster, along with course completion certificates.

    Additional information regarding the training is available through BJA's web site and the Center for Task Force Integrity and Leadership (www.ctfli.org).

35. Required attendance at BJA-sponsored events

    The recipient (and its subrecipients at any tier) must participate in BJA-sponsored training events, technical assistance events, or conferences held by BJA or its designees, upon BJA's request.

36. Justification of consultant rate

    Approval of this award does not indicate approval of any consultant rate in excess of $650 per day. A detailed justification must be submitted to and approved by the OJP program office prior to obligation or expenditure of such funds.



| PROJECT NUMBER | 2017-DJ-BX-0666 | AWARD DATE | 10/10/2018 |

*SPECIAL CONDITIONS*

37.  Compliance with National Environmental Policy Act and related statutes

Upon request, the recipient (and any subrecipient at any tier) must assist BJA in complying with the National Environmental Policy Act (NEPA), the National Historic Preservation Act, and other related federal environmental impact analyses requirements in the use of these award funds, either directly by the recipient or by a subrecipient. Accordingly, the recipient agrees to first determine if any of the following activities will be funded by the grant, prior to obligating funds for any of these purposes. If it is determined that any of the following activities will be funded by the award, the recipient agrees to contact BJA.

The recipient understands that this condition applies to new activities as set out below, whether or not they are being specifically funded with these award funds. That is, as long as the activity is being conducted by the recipient, a subrecipient, or any third party, and the activity needs to be undertaken in order to use these award funds, this condition must first be met. The activities covered by this condition are:

a. New construction;

b. Minor renovation or remodeling of a property located in an environmentally or historically sensitive area, including properties located within a 100-year flood plain, a wetland, or habitat for endangered species, or a property listed on or eligible for listing on the National Register of Historic Places;

c. A renovation, lease, or any proposed use of a building or facility that will either (a) result in a change in its basic prior use or (b) significantly change its size;

d. Implementation of a new program involving the use of chemicals other than chemicals that are (a) purchased as an incidental component of a funded activity and (b) traditionally used, for example, in office, household, recreational, or education environments; and

e. Implementation of a program relating to clandestine methamphetamine laboratory operations, including the identification, seizure, or closure of clandestine methamphetamine laboratories.

The recipient understands and agrees that complying with NEPA may require the preparation of an Environmental Assessment and/or an Environmental Impact Statement, as directed by BJA. The recipient further understands and agrees to the requirements for implementation of a Mitigation Plan, as detailed at https://bja.gov/Funding/nepa.html, for programs relating to methamphetamine laboratory operations.

Application of This Condition to Recipient's Existing Programs or Activities:  For any of the recipient's or its subrecipients' existing programs or activities that will be funded by these award funds, the recipient, upon specific request from BJA, agrees to cooperate with BJA in any preparation by BJA of a national or program environmental assessment of that funded program or activity.

38.  Establishment of trust fund

If award funds are being drawn down in advance, the recipient (or a subrecipient, with respect to a subaward) is required to establish a trust fund account. (The trust fund may or may not be an interest-bearing account.) The fund, including any interest, may not be used to pay debts or expenses incurred by other activities beyond the scope of the Edward Byrne Memorial Justice Assistance Grant Program (JAG). The recipient also agrees to obligate the award funds in the trust fund (including any interest earned) during the period of performance for the award and expend within 90 days thereafter. Any unobligated or unexpended funds, including interest earned, must be returned to OJP at the time of closeout.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE  13  OF  21

| PROJECT NUMBER | 2017-DJ-BX-0666 | AWARD DATE | 10/10/2018 |
| --- | --- | --- | --- |

*SPECIAL CONDITIONS*

39. Prohibition on use of award funds for match under BVP program

    JAG funds may be used to purchase vests for an agency, but they may not be used as the 50% match for purposes of the DOJ Bulletproof Vest Partnership (BVP) program.

40. Certification of body armor "mandatory wear" policies

    The recipient agrees to submit a signed certification that all law enforcement agencies receiving body armor purchased with funds from this award have a written "mandatory wear" policy in effect. The recipient must keep signed certifications on file for any subrecipients planning to utilize funds from this award for ballistic-resistant and stab-resistant body armor purchases. This policy must be in place for at least all uniformed officers before any funds from this award may be used by an agency for body armor. There are no requirements regarding the nature of the policy other than it be a mandatory wear policy for all uniformed officers while on duty.

41. Body armor - compliance with NIJ standards

    Ballistic-resistant and stab-resistant body armor purchased with JAG award funds may be purchased at any threat level, make or model, from any distributor or manufacturer, as long as the body armor has been tested and found to comply with applicable National Institute of Justice ballistic or stab standards and is listed on the NIJ Compliant Body Armor Model List (https://nij.gov/). In addition, ballistic-resistant and stab-resistant body armor purchased must be American-made. The latest NIJ standard information can be found here: https://nij.gov/topics/technology/body-armor/pages/safety-initiative.aspx.

42. Required monitoring of subawards

    The recipient must monitor subawards under this JAG award in accordance with all applicable statutes, regulations, award conditions, and the DOJ Grants Financial Guide, and must include the applicable conditions of this award in any subaward. Among other things, the recipient is responsible for oversight of subrecipient spending and monitoring of specific outcomes and benefits attributable to use of award funds by subrecipients. The recipient agrees to submit, upon request, documentation of its policies and procedures for monitoring of subawards under this award.

43. Reporting requirements

    The recipient must submit quarterly Federal Financial Reports (SF-425) and semi-annual performance reports through OJP's GMS (https://grants.ojp.usdoj.gov). Consistent with the Department's responsibilities under the Government Performance and Results Act (GPRA) and the GPRA Modernization Act of 2010, the recipient must provide data that measure the results of its work. The recipient must submit quarterly performance metrics reports through BJA's Performance Measurement Tool (PMT) website (www.bjaperformancetools.org). For more detailed information on reporting and other JAG requirements, refer to the JAG reporting requirements webpage. Failure to submit required JAG reports by established deadlines may result in the freezing of grant funds and future High Risk designation.

44. Required data on law enforcement agency training

    Any law enforcement agency receiving direct or sub-awarded funding from this JAG award must submit quarterly accountability metrics data related to training that officers have received on the use of force, racial and ethnic bias, de-escalation of conflict, and constructive engagement with the public.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE  14  OF  21

PROJECT NUMBER     2017-DJ-BX-0666                     AWARD DATE     10/10/2018

*SPECIAL CONDITIONS*

45.   Prohibited Expenditures List

Award funds may not be used for items that are listed on the Prohibited Expenditure List at the time of purchase or acquisition, including as the list may be amended from time to time. The Prohibited Expenditure List may be accessed here: https://www.bja.gov/funding/JAGControlledPurchaseList.pdf

46.   Controlled expenditures - prior written approval required

Award funds may not be used for items that are listed on the Controlled Expenditure List at the time of purchase or acquisition, including as the list may be amended from time to time, without explicit written prior approval from BJA. The Controlled Expenditure List, and instructions on how to request approval for purchase or acquisitions are set out at https://www.bja.gov/funding/JAGControlledPurchaseList.pdf

47.   Controlled expenditures - incident reporting

If an agency uses award funds to purchase or acquire any item on the Controlled Expenditure List at the time of purchase or acquisition, including as the list may be amended from time to time, the agency must collect and retain (for at least 3 years) certain information about the use of-- (1) any federally-acquired Controlled Equipment in the agency's inventory, and (2) any other controlled equipment in the same category as the federally-acquired controlled equipment in the agency's inventory, regardless of source; and the agency must make that information available to BJA upon request. Details about what information must be collected and retained are set out at https://ojp.gov/docs/LE-Equipment-WG-Final-Report.pdf.

48.   Sale of items on Controlled Expenditure List

Notwithstanding the provision of the Part 200 Uniform Requirements set out at 2 C.F.R. 200.313, no equipment listed on the Controlled Expenditure List that is purchased with award funds may be transferred or sold to a third party, except as described below:

a.  Agencies may transfer or sell any controlled equipment, except riot helmets and riot shields, to a Law Enforcement Agency (LEA) after obtaining prior written approval from BJA. As a condition of that approval, the acquiring LEA will be required to submit information and certifications to BJA as if it were requesting approval to use award funds for the initial purchase of items on the Controlled Expenditure List.

b.  Agencies may not transfer or sell any riot helmets or riot shields purchased under this award.

c.  Agencies may not transfer or sell any Controlled Equipment purchased under this award to non-LEAs, with the exception of fixed wing aircraft, rotary wing aircraft, and command and control vehicles. Before any such transfer or sale is finalized, the agency must obtain prior written approval from BJA. All law enforcement-related and other sensitive or potentially dangerous components, and all law enforcement insignias and identifying markings must be removed prior to transfer or sale.

The recipient must notify BJA prior to the disposal of any items on the Controlled Expenditure List purchased with award funds, and must abide by any applicable laws (including regulations) in such disposal.

49.   Prohibited or controlled expenditures - Effect of failure to comply

Failure to comply with an award condition related to prohibited or controlled expenditures may result in denial of any further approvals of controlled expenditures under this or other federal awards.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE 15 OF 21

| PROJECT NUMBER | 2017-DJ-BX-0666 | AWARD DATE | 10/10/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

50. Controlled expenditures - Standards

Consistent with recommendation 2.1 of Executive Order 13688, a law enforcement agency that acquires controlled equipment with award funds must adopt robust and specific written policies and protocols governing General Policing Standards and Specific Controlled Equipment Standards. General Policing Standards includes policies on (a) Community Policing; (b) Constitutional Policing; and (c) Community Input and Impact Considerations. Specific Controlled Equipment Standards includes policies specifically related to (a) Appropriate Use of Controlled Equipment; (b) Supervision of Use; (c) Effectiveness Evaluation; (d) Auditing and Accountability; and (e) Transparency and Notice Considerations. Upon OJP's request, the recipient must provide a copy of the General Policing Standards and Specific Controlled Equipment Standards, and any related policies and protocols.

51. Authorization to obligate (federal) award funds to reimburse certain project costs incurred on or after October 1, 2016

The recipient may obligate (federal) award funds only after the recipient makes a valid acceptance of the award. As of the first day of the period of performance for the award (October 1, 2016), however, the recipient may choose to incur project costs using non-federal funds, but any such project costs are incurred at the recipient's risk until, at a minimum-- (1) the recipient makes a valid acceptance of the award, and (2) all applicable withholding conditions are removed by OJP (via a Grant Adjustment Notice). (A withholding condition is a condition in the award document that precludes the recipient from obligating, expending, or drawing down all or a portion of the award funds until the condition is removed.)

Except to the extent (if any) that an award condition expressly precludes reimbursement of project costs incurred "at-risk," if and when the recipient makes a valid acceptance of this award and OJP removes each applicable withholding condition through a Grant Adjustment Notice, the recipient is authorized to obligate (federal) award funds to reimburse itself for project costs incurred "at-risk" earlier during the period of performance (such as project costs incurred prior to award acceptance or prior to removal of an applicable withholding condition), provided that those project costs otherwise are allowable costs under the award.

Nothing in this condition shall be understood to authorize the recipient (or any subrecipient at any tier) to use award funds to "supplant" State or local funds in violation of the recipient's certification (executed by the chief executive of the State or local government) that federal funds will be used to increase the amounts of such funds that would, in the absence of federal funds, be made available for law enforcement activities.

52. "Certification of Compliance with 8 U.S.C. 1373" required for valid award acceptance by a unit of local government

In order validly to accept this award, the applicant local government must submit the required "Certification of Compliance with 8 U.S.C. 1373" (executed by the chief legal officer of the local government). Unless that executed certification either-- (1) is submitted to OJP together with the fully-executed award document, or (2) is uploaded in OJP's GMS no later than the day the signed award document is submitted to OJP, any submission by a unit of local government that purports to accept the award is invalid.

If an initial award-acceptance submission by the recipient is invalid, once the unit of local government does submit the necessary certification regarding 8 U.S.C. 1373, it may submit a fully-executed award document executed by the unit of local government on or after the date of that certification.

For purposes of this condition, "local government" does not include any Indian tribes.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE  16  OF  21

| PROJECT NUMBER | 2017-DJ-BX-0666 | AWARD DATE | 10/10/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

53.  Ongoing compliance with 8 U.S.C. 1373 is required

1. With respect to the "program or activity" funded in whole or part under this award (including any such "program or activity" of any subrecipient at any tier), throughout the period of performance for the award, no State or local government entity, -agency, or -official may prohibit or in any way restrict-- (1) any government entity or -official from sending or receiving information regarding citizenship or immigration status as described in 8 U.S.C. 1373(a); or (2) a government entity or -agency from sending, requesting or receiving, maintaining, or exchanging information regarding immigration status as described in 8 U.S.C. 1373(b).  For purposes of this award, any prohibition (or restriction) that violates this condition is an "information-communication restriction."

2. Certifications from subrecipients.  The recipient may not make a subaward to a State or local government or a "public" institution of higher education, unless it first obtains a certification of compliance with 8 U.S.C. 1373, properly executed by the chief legal officer of the jurisdiction or institution that would receive the subaward, using the appropriate form available at https://ojp.gov/funding/Explore/SampleCertifications-8USC1373.htm.  Similarly, the recipient must require that no subrecipient (at any tier) may make a further subaward to a State or local government or a "public" institution of higher education, unless it first obtains a certification of compliance with 8 U.S.C. 1373, properly executed by the chief legal officer of the jurisdiction or institution that would receive the further subaward, using the appropriate OJP form.

3. The recipient's monitoring responsibilities include monitoring of subrecipient compliance with the requirements of this condition.

4. Allowable costs.  Compliance with these requirements is an authorized and priority purpose of this award.  To the extent that such costs are not reimbursed under any other federal program, award funds may be obligated (including for authorized reimbursements) for the reasonable, necessary, and allocable costs (if any) that the recipient, or any subrecipient at any tier that is a State or local government or a "public" institution of higher education, incurs to implement this condition.

5. Rules of Construction

A. For purposes of this condition:

(1) "State" and "local government" include any agency or other entity thereof, but not any institution of higher education or any Indian tribe.

(2) A "public" institution of higher education is one that is owned, controlled, or directly funded by a State or local government.

(3) "Program or activity" means what it means under title VI of the Civil Rights Act of 1964 (see 42 U.S.C. 2000d-4a).

(4) "Immigration status" means what it means for purposes of 8 U.S.C. 1373 (Illegal Immigration Reform and Immigrant Responsibility Act of 1996); and terms that are defined in 8 U.S.C. 1101 (Immigration and Nationality Act) mean what they mean under that section 1101, except that the term "State" also shall include American Samoa (cf. 42 U.S.C. 901(a)(2)).

(5) Pursuant to the provisions set out at (or referenced in) 8 U.S.C. 1551 note ("Abolition … and Transfer of Functions"), references to the "Immigration and Naturalization Service" in 8 U.S.C. 1373 are to be read as references to particular components of the Department of Homeland Security (DHS).

B. Nothing in this condition shall be understood to authorize or require any recipient, any subrecipient at any tier, any State or local government, any "public" institution of higher education, or any other entity (or individual) to violate any federal law, including any applicable civil rights or nondiscrimination law.

OJP FORM 4000/2 (REV. 4-88)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE 17 OF 21

| PROJECT NUMBER | 2017-DJ-BX-0666 | AWARD DATE | 10/10/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

IMPORTANT NOTE: Any questions about the meaning or scope of this condition should be directed to OJP, before award acceptance.

54. Authority to obligate award funds contingent on compliance with 8 U.S.C. 1373; unallowable costs; obligation to notify

1. If the recipient is a State or local government--

A. The recipient may not obligate award funds if, at the time of the obligation, the "program or activity" of the recipient (or of any subrecipient at any tier that is a either a State or unit of local government or a "public" institution of higher education) that is funded in whole or in part with award funds is subject to any "information-communication restriction."

B. In addition, with respect to any project costs it incurs "at risk," the recipient may not obligate award funds to reimburse itself if -- at the time it incurs such costs -- the "program or activity" of the recipient (or of any subrecipient at any tier that is a either a State or unit of local government or a "public" institution of higher education) that would be reimbursed in whole or in part with award funds was subject to any "information-communication restriction."

C. Any drawdown of award funds by the recipient shall be considered, for all purposes, to be a material representation by the recipient to OJP that, as of the date the recipient requests the drawdown, the recipient and all subrecipients (regardless of tier) are in compliance with 8 U.S.C. 1373.

D. The recipient must promptly notify OJP (in writing) if the recipient, from its requisite monitoring of compliance with award conditions or otherwise, has credible evidence that indicates that the funded "program or activity" of the recipient, or of any subrecipient at any tier that is either a State or a local government or a "public" institution of higher education, may be subject to any "information-communication restriction." In addition, any subaward (at any tier) to a subrecipient that is either a State or a local government or a "public" institution of higher education must require prompt notification to the entity that made the subaward, should the subrecipient such credible evidence regarding an "information-communication restriction."

2. Any subaward (at any tier) to a subrecipient that is either a State or a local government or a "public" institution of higher education must provide that the subrecipient may not obligate award funds if, at the time of the obligation, the "program or activity" of the subrecipient (or of any further such subrecipient at any tier) that is funded in whole or in part with award funds is subject to any "information-communication restriction."

3. Absent an express written determination by DOJ to the contrary, based upon a finding by DOJ of compelling circumstances (e.g., a small amount of award funds obligated by the recipient at the time of a subrecipient's minor and transitory non-compliance, which was unknown to the recipient despite diligent monitoring), any obligations of award funds that, under this condition, may not be made shall be unallowable costs for purposes of this award. In making any such determination, DOJ will give great weight to evidence submitted by the recipient that demonstrates diligent monitoring of subrecipient compliance with the requirements set out in the award condition entitled "Ongoing compliance with 8 U.S.C. 1373 is required."

4. Rules of Construction

A. For purposes of this condition "information-communication restriction" has the meaning set out in the award condition entitled "Ongoing compliance with 8 U.S.C. 1373 is required."

B. Both the "Rules of Construction" and the "Important Note" set out in the award condition entitled "Ongoing compliance with 8 U.S.C. 1373 is required" are incorporated by reference as though set forth here in full.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE 18 OF 21

| | | |
|---|---|---|
| PROJECT NUMBER | 2017-DJ-BX-0666 | AWARD DATE 10/10/2018 |

*SPECIAL CONDITIONS*

55. Required State-level rules or practices related to aliens; allowable costs

The following provisions apply to the recipient of this award, if the recipient is a State government, and also apply to any State-government subrecipient at any tier (whether or not the recipient is a State government).

1. Requirements

With respect to the "program or activity" that is funded (in whole or in part) by this award, as of the date the recipient accepts this award, and throughout the remainder of the period of performance for the award--

A. A State statute, or a State rule, -regulation, -policy, or -practice, must be in place that is designed to ensure that agents of the United States acting under color of federal law in fact are given to access any State (or State-contracted) correctional facility for the purpose of permitting such agents to meet with individuals who are (or are believed by such agents to be) aliens and to inquire as to such individuals' right to be or remain in the United States.

B. A State statute, or a State rule, -regulation, -policy, or -practice, must be in place that is designed to ensure that, when a State (or State-contracted) correctional facility receives from DHS a formal written request authorized by the Immigration and Nationality Act that seeks advance notice of the scheduled release date and time for a particular alien in such facility, then such facility will honor such request and -- as early as practicable (see para. 4.B. of this condition) -- provide the requested notice to DHS.

2. Monitoring

The recipient's monitoring responsibilities include monitoring of subrecipient compliance with the requirements of this condition.

3. Allowable costs

Compliance with these requirements is an authorized and priority purpose of this award. To the extent that such costs are not reimbursed under any other federal program, award funds may be obligated (including for authorized reimbursements) for the reasonable, necessary, and allocable costs (if any) of-- (1) developing and putting into place statutes, rules, regulations, policies, and practices to satisfy this condition, and (2) permitting access as described in para. 1.A. above, and (3) honoring any request from DHS that is encompassed by para. 1.B. above.

4. Rules of construction

A. For purposes of this condition--

(1) the term "alien" means what it means under section 101 of the Immigration and Nationality Act (see 8 U.S.C. 1101(a)(3)).

(2) the term "correctional facility" means what it means under the Title I of the Omnibus Crime Control and Safe Streets Act of 1968 (see 42 U.S.C. 3791(a)(7)).

B. Nothing in this condition shall be understood to authorize or require any recipient, any subrecipient at any tier, any State or local government, or any other entity or individual to maintain (or detain) any individual in custody beyond the date and time the individual would have been released in the absence of this condition.

Current DHS practice is ordinarily to request advance notice of scheduled release "as early as practicable (at least 48 hours, if possible)." (See DHS Form I-247A (3/17)). In the event that (e.g., in light of the date DHS made such request) the scheduled release date and time for an alien are such as not to permit the advance notice that DHS has requested, it shall not be a violation of this condition to provide only as much advance notice as practicable.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE  19  OF  21

| PROJECT NUMBER | 2017-DJ-BX-0666 | AWARD DATE | 10/10/2018 |
| --- | --- | --- | --- |

*SPECIAL CONDITIONS*

NOTE: Current DHS practice is to use one form (DHS Form I-247A (3/17)) for two distinct purposes -- to request advance notice of scheduled release, and to request that an individual be detained for up to 48 hours AFTER the scheduled release. This condition imposes NO requirements as to such DHS requests for detention.

C. Both the "Rules of Construction" and the "Important Note" set out in the award condition entitled "Ongoing compliance with 8 U.S.C. 1373 is required" are incorporated by reference as though set forth here in full.

56.  Required local-government-level rules or practices related to aliens; allowable costs

The following provisions apply to the recipient of this award, if the recipient is a unit of local government, and also apply to any local-government subrecipient of this award at any tier (whether or not the recipient itself is a unit of local government).

1.  Requirements

With respect to the "program or activity" that is funded (in whole or in part) by this award, as of the date the recipient accepts this award, and throughout the remainder of the period of performance for the award--

A.  A local ordinance, -rule, -regulation, -policy, or -practice (or an applicable State statute, -rule, -regulation, -policy, or -practice) must be in place that is designed to ensure that agents of the United States acting under color of federal law in fact are given access a local-government (or local-government-contracted) correctional facility for the purpose of permitting such agents to meet with individuals who are (or are believed by such agents to be) aliens and to inquire as to such individuals' right to be or remain in the United States.

B.  A local ordinance, -rule, -regulation, -policy, or -practice (or an applicable State statute, -rule, -regulation, -policy, or -practice) must be in place that is designed to ensure that, when a local-government (or local-government-contracted) correctional facility receives from DHS a formal written request authorized by the Immigration and Nationality Act that seeks advance notice of the scheduled release date and time for a particular alien in such facility, then such facility will honor such request and -- as early as practicable (see "Rules of Construction" incorporated by para. 4.B. of this condition) -- provide the requested notice to DHS.

2.  Monitoring

The recipient's monitoring responsibilities include monitoring of subrecipient compliance with the requirements of this condition.

3.  Allowable costs

Compliance with these requirements is an authorized and priority purpose of this award.  To the extent that such costs are not reimbursed under any other federal program, award funds may be obligated (including for authorized reimbursements) for the reasonable, necessary, and allocable costs (if any) of-- (1) developing and putting into place statutes, ordinances, rules, regulations, policies, and practices to satisfy this condition, (2) permitting access as described in para. 1.A. above, and (3) honoring any request from DHS that is encompassed by para. 1.B. above.

4.  Rules of construction

A.  The "Rules of Construction" and the "Important Note" set out in the award condition entitled "Ongoing compliance with 8 U.S.C. 1373 is required" are incorporated by reference as though set forth here in full.

B.  The "Rules of Construction" set out in the award condition entitled "Required State-level rules or practices related to aliens; allowable costs" are incorporated by reference as though set forth here in full.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE 20 OF 21

| PROJECT NUMBER | 2017-DJ-BX-0666 | AWARD DATE | 10/10/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

57. Use of funds for DNA testing; upload of DNA profiles

   If award funds are used for DNA testing of evidentiary materials, any resulting eligible DNA profiles must be uploaded to the Combined DNA Index System ("CODIS," the DNA database operated by the FBI) by a government DNA laboratory with access to CODIS.

   No profiles generated under this award may be entered or uploaded into any non-governmental DNA database without prior express written approval from BJA.

   Award funds may not be used for the purchase of DNA equipment and supplies unless the resulting DNA profiles may be accepted for entry into CODIS.

58. Encouragement of submission of "success stories"

   BJA strongly encourages the recipient to submit annual (or more frequent) JAG success stories. To submit a success story, sign in to a My BJA account at https://www.bja.gov/Login.aspx to access the Success Story Submission form. If the recipient does not yet have a My BJA account, please register at https://www.bja.gov/profile.aspx. Once registered, one of the available areas on the My BJA page will be "My Success Stories." Within this box, there is an option to add a Success Story. Once reviewed and approved by BJA, all success stories will appear on the BJA Success Story web page at https://www.bja.gov/SuccessStoryList.aspx.

59. Requirement to disclose whether recipient is designated "high risk" by a federal grant-making agency outside of DOJ

   If the recipient is designated "high risk" by a federal grant-making agency outside of DOJ, currently or at any time during the course of the period of performance under this award, the recipient must disclose that fact and certain related information to OJP by email at OJP.ComplianceReporting@ojp.usdoj.gov. For purposes of this disclosure, high risk includes any status under which a federal awarding agency provides additional oversight due to the recipient's past performance, or other programmatic or financial concerns with the recipient. The recipient's disclosure must include the following: 1. The federal awarding agency that currently designates the recipient high risk, 2. The date the recipient was designated high risk, 3. The high-risk point of contact at that federal awarding agency (name, phone number, and email address), and 4. The reasons for the high-risk status, as set out by the federal awarding agency.

60. Reclassification of various statutory provisions to a new Title 34 of the United States Code

   On September 1, 2017, various statutory provisions previously codified elsewhere in the U.S. Code were editorially reclassified to a new Title 34, entitled "Crime Control and Law Enforcement." The reclassification encompassed a number of statutory provisions pertinent to OJP awards (that is, OJP grants and cooperative agreements), including many provisions previously codified in Title 42 of the U.S. Code.

   Effective as of September 1, 2017, any reference in this award document to a statutory provision that has been reclassified to the new Title 34 of the U.S. Code is to be read as a reference to that statutory provision as reclassified to Title 34. This rule of construction specifically includes references set out in award conditions, references set out in material incorporated by reference through award conditions, and references set out in other award requirements.

61. Withholding of funds: Required certification from the chief executive of the applicant government

   The recipient may not obligate, expend, or draw down any award funds until the recipient submits the required "Certifications and Assurances by the Chief Executive of the Applicant Government," properly-executed (as determined by OJP), and a Grant Adjustment Notice (GAN) has been issued to remove this condition.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE  21  OF  21

| PROJECT NUMBER | 2017-DJ-BX-0666 | AWARD DATE | 10/10/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

62. Withholding of funds:  Memorandum of Understanding

The recipient may not obligate, expend, or draw down any award funds until OJP has reviewed and approved the Memorandum of Understanding (MOU), and a Grant Adjustment Notice (GAN) has been issued to remove this condition.

63. No funds under this award may be provided to Multnomah County unless and until (1) the recipient and Multnomah County have submitted additional material to OJP concerning Multnomah County's compliance with 8 U.S.C. § 1373, (2) OJP has verified that jurisdiction's compliance with 8 U.S.C. § 1373, and (3) OJP issues a Grant Adjustment Notice (GAN) to modify or remove this condition.



**U.S. Department of Justice**

Office of Justice Programs

*Bureau of Justice Assistance*

---

*Washington, D.C. 20531*

**Memorandum To:** Official Grant File

**From:** Orbin Terry, NEPA Coordinator

**Subject:** Incorporates NEPA Compliance in Further Developmental Stages for City of Portland

The Edward Byrne Memorial Justice Assistance Grant Program (JAG) allows states and local governments to support a broad range of activities to prevent and control crime and to improve the criminal justice system, some of which could have environmental impacts. All recipients of JAG funding must assist BJA in complying with NEPA and other related federal environmental impact analyses requirements in the use of grant funds, whether the funds are used directly by the grantee or by a subgrantee or third party. Accordingly, prior to obligating funds for any of the specified activities, the grantee must first determine if any of the specified activities will be funded by the grant.

The specified activities requiring environmental analysis are:
a. New construction;
b. Any renovation or remodeling of a property located in an environmentally or historically sensitive area, including properties located within a 100-year flood plain, a wetland, or habitat for endangered species, or a property listed on or eligible for listing on the National Register of Historic Places;
c. A renovation, lease, or any proposed use of a building or facility that will either (a) result in a change in its basic prior use or (b) significantly change its size;
d. Implementation of a new program involving the use of chemicals other than chemicals that are (a) purchased as an incidental component of a funded activity and (b) traditionally used, for example, in office, household, recreational, or education environments; and
e. Implementation of a program relating to clandestine methamphetamine laboratory operations, including the identification, seizure, or closure of clandestine methamphetamine laboratories.

Complying with NEPA may require the preparation of an Environmental Assessment and/or an Environmental Impact Statement, as directed by BJA. Further, for programs relating to methamphetamine laboratory operations, the preparation of a detailed Mitigation Plan will be required. For more information about Mitigation Plan requirements, please see https://www.bja.gov/Funding/nepa.html.

Please be sure to carefully review the grant conditions on your award document, as it may contain more specific information about environmental compliance.



U.S. Department of Justice
Office of Justice Programs

Bureau of Justice Assistance

# GRANT MANAGER'S MEMORANDUM, PT. I: PROJECT SUMMARY

## Grant

| PROJECT NUMBER | PAGE 1 OF 1 |
|---|---|
| 2017-DJ-BX-0666 | |

This project is supported under FY17(BJA - JAG State and JAG Local) Title I of Pub. L. No. 90-351 (generally codified at 42 U.S.C. 3711 - 3797ff-5), including subpart 1 of part E (codified at 42 U.S.C. 3750 - 3758); see also 28 U.S.C. 530C(a).

| 1. STAFF CONTACT (Name & telephone number) | 2. PROJECT DIRECTOR (Name, address & telephone number) |
|---|---|
| Heather Wiley<br>(202) 598-3969 | Michael Clark<br>Financial Analyst<br>1120 SW Fifth Avenue<br>Room 1250<br>Portland, OR 97204-1912<br>(503) 823-6862 |

| 3a. TITLE OF THE PROGRAM | 3b. POMS CODE (SEE INSTRUCTIONS ON REVERSE) |
|---|---|
| BJA FY 17 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - Local Solicitation | |

4. TITLE OF PROJECT

Justice Assistance Grant Program Fiscal Year 2017

| 5. NAME & ADDRESS OF GRANTEE | 6. NAME & ADRESS OF SUBGRANTEE |
|---|---|
| City of Portland<br>1120 SW Fifth Avenue Room 1250<br>Portland, OR 97204-1912 | |

| 7. PROGRAM PERIOD | 8. BUDGET PERIOD |
|---|---|
| FROM: 10/01/2016   TO: 09/30/2020 | FROM: 10/01/2016   TO: 09/30/2020 |

| 9. AMOUNT OF AWARD | 10. DATE OF AWARD |
|---|---|
| $ 385,515 | 10/10/2018 |

| 11. SECOND YEAR'S BUDGET | 12. SECOND YEAR'S BUDGET AMOUNT |
|---|---|
| | |

| 13. THIRD YEAR'S BUDGET PERIOD | 14. THIRD YEAR'S BUDGET AMOUNT |
|---|---|
| | |

15. SUMMARY DESCRIPTION OF PROJECT (See instruction on reverse)

The Edward Byrne Memorial Justice Assistance Grant Program (JAG) allows states and units of local government, including tribes, to support a broad range of criminal justice related activities based on their own state and local needs and conditions. Grant funds can be used for state and local initiatives, technical assistance, training, personnel, equipment, supplies, contractual support, and information systems for criminal justice, including for any one or more of the following purpose areas: 1) law enforcement programs; 2) prosecution and court programs; 3) prevention and education programs; 4) corrections and community corrections programs; 5) drug treatment and enforcement programs; 6) planning, evaluation, and technology improvement programs; 7) crime victim and witness programs (other than compensation); and 8) mental health programs and related law enforcement and corrections programs, including behavioral programs and crisis intervention teams.

This Local JAG award will be shared by the City and one or more jurisdictions identified as disparate within the current Fiscal Year eligibility list (www.bja.gov/Jag). JAG funding will be used to support criminal justice initiatives that fall under one or more of the allowable program areas above. Any

OJP FORM 4000/2 (REV. 4-88)

equipment purchases or funded initiatives such as overtime, task forces, drug programs, information sharing, etc. will be aimed at reducing crime and/or enhancing public/officer safety.

NCA/NCF



**U.S. Department of Justice**

Office of Justice Programs

Office of the Assistant Attorney General

*Washington, D.C. 20531*

November 16, 2018

Ms. Kathleen T. Howard
California Board of State and Community Corrections
2590 Venture Oaks Way, Ste. 200
Sacramento, CA 95833-3288

Dear Ms. Howard:

On behalf of Attorney General Jefferson Sessions III, it is my pleasure to inform you that the Office of Justice Programs has approved your application for funding under the FY 18 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - State Solicitation in the amount of $18,056,180 for California Board of State and Community Corrections.

Enclosed you will find the Grant Award and Special Conditions documents. This award is subject to all administrative and financial requirements, including the timely submission of all financial and programmatic reports, resolution of all interim audit findings, and the maintenance of a minimum level of cash-on-hand. Should you not adhere to these requirements, you will be in violation of the terms of this agreement and the award will be subject to termination for cause or other administrative action as appropriate.

If you have questions regarding this award, please contact:

- Program Questions, Linda Hill-Franklijn, Program Manager at (202) 514-0712; and

- Financial Questions, the Office of the Chief Financial Officer, Customer Service Center (CSC) at (800) 458-0786, or you may contact the CSC at ask.ocfo@usdoj.gov.

Congratulations, and we look forward to working with you.

Sincerely,

Matt Dummermuth
Principal Deputy Assistant Attorney General

Enclosures

**Exhibit E**



# OFFICE FOR CIVIL RIGHTS

Office of Justice Programs

U.S. Department of Justice

810 7th Street, NW
Washington, DC 20531

Tel: (202) 307-0690
TTY: (202) 307-2027
E-mail: askOCR@usdoj.gov
Website: www.ojp.usdoj.gov/ocr

---

**OCR Letter to All Recipients**

November 16, 2018

Ms. Kathleen T. Howard
California Board of State and Community Corrections
2590 Venture Oaks Way, Ste. 200
Sacramento, CA 95833-3288

Dear Ms. Howard:

Congratulations on your recent award. In establishing financial assistance programs, Congress linked the receipt of federal funding to compliance with federal civil rights laws. The Office for Civil Rights (OCR), Office of Justice Programs (OJP), U.S. Department of Justice (DOJ) is responsible for ensuring that recipients of financial assistance from the OJP, the Office of Community Oriented Policing Services (COPS), and the Office on Violence Against Women (OVW) comply with the applicable federal civil rights laws. We at the OCR are available to help you and your organization meet the civil rights requirements that come with DOJ funding.

**Ensuring Access to Federally Assisted Programs**

Federal laws that apply to recipients of financial assistance from the DOJ prohibit discrimination on the basis of race, color, national origin, religion, sex, or disability in funded programs or activities, not only in employment but also in the delivery of services or benefits. A federal law also prohibits recipients from discriminating on the basis of age in the delivery of services or benefits.

In March of 2013, President Obama signed the Violence Against Women Reauthorization Act of 2013. The statute amends the Violence Against Women Act of 1994 (VAWA) by including a nondiscrimination grant condition that prohibits discrimination based on actual or perceived race, color, national origin, religion, sex, disability, sexual orientation, or gender identity. The new nondiscrimination grant condition applies to certain programs funded after October 1, 2013. The OCR and the OVW have developed answers to some frequently asked questions about this provision to assist recipients of VAWA funds to understand their obligations. The Frequently Asked Questions are available at https://ojp.gov/about/ocr/vawafaqs.htm.

**Enforcing Civil Rights Laws**

All recipients of federal financial assistance, regardless of the particular funding source, the amount of the grant award, or the number of employees in the workforce, are subject to prohibitions against unlawful discrimination. Accordingly, the OCR investigates recipients that are the subject of discrimination complaints from both individuals and groups. In addition, based on regulatory criteria, the OCR selects a number of recipients each year for compliance reviews, audits that require recipients to submit data showing that they are providing services equitably to all segments of their service population and that their employment practices meet equal opportunity standards.

**Providing Services to Limited English Proficiency (LEP) Individuals**

In accordance with DOJ guidance pertaining to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, recipients of federal financial assistance must take reasonable steps to provide meaningful access to their programs and activities for persons with limited English proficiency (LEP). See U.S. Department of Justice, Guidance to Federal Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin Discrimination Affecting Limited English Proficient Persons, 67 Fed. Reg. 41,455 (2002). For more information on the civil rights responsibilities that recipients have in providing language services to LEP individuals, please see the website https://www.lep.gov.

**Ensuring Equal Treatment of Faith-Based Organizations and Safeguarding Constitutional Protections Related to Religion**

The DOJ regulation, Partnerships with Faith-Based and Other Neighborhood Organizations, 28 C.F.R. pt. 38, updated in April 2016, prohibits all recipient organizations, whether they are law enforcement agencies, governmental agencies, educational institutions, houses of worship, or faith-based organizations, from using financial assistance from the DOJ to fund explicitly religious activities. Explicitly religious activities include worship, religious instruction, or proselytization. While funded organizations may engage in non-funded explicitly religious activities (e.g., prayer), they must hold them separately from the activities funded by the DOJ, and recipients cannot compel beneficiaries to participate in them. The regulation also makes clear that organizations participating in programs funded by the DOJ are not permitted to discriminate in the provision of services on the basis of a beneficiary's religion, religious belief, a refusal to hold a religious belief, or a refusal to attend or participate in a religious practice. Funded faith-based organizations must also provide written notice to beneficiaries, advising them that if they should object to the religious character of the funded faith based organization, the funded faith-based organization will take reasonable steps to refer the beneficiary to an alternative service provider. For more information on the regulation, please see the OCR's website at https://ojp.gov/about/ocr/partnerships.htm.

SAAs and faith-based organizations should also note that the Omnibus Crime Control and Safe Streets Act (Safe Streets Act) of 1968, as amended, 34 U.S.C. § 10228(c); the Victims of Crime Act of 1984, as amended, 34 U.S.C. § 20110(e); the Juvenile Justice and Delinquency Prevention Act of 1974, as amended, 34 U.S.C. § 11182(b); and VAWA, as amended,
34 U.S.C. § 12291(b)(13), contain prohibitions against discrimination on the basis of religion in employment. Despite these nondiscrimination provisions, the DOJ has concluded that it may construe the Religious Freedom Restoration Act (RFRA) on a case-by-case basis to permit some faith-based organizations to receive DOJ funds while taking into account religion when hiring staff, even if the statute that authorizes the funding program generally forbids recipients from considering religion in employment decisions. Please consult with the OCR if you have any questions about the regulation or the application of RFRA to the statutes that prohibit discrimination in employment.

**Using Arrest and Conviction Records in Making Employment Decisions**

The OCR issued an advisory document for recipients on the proper use of arrest and conviction records in making hiring decisions. See Advisory for Recipients of Financial Assistance from the U.S. Department of Justice on the U.S. Equal Employment Opportunity Commission's Enforcement Guidance: *Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of 1964 (June 2013)*, available at https://ojp.gov/about/ocr/pdfs/UseofConviction_Advisory.pdf. Recipients should be mindful that the misuse of arrest or conviction records to screen either applicants for employment or employees for retention or promotion may have a disparate impact based on race or national origin, resulting in unlawful employment discrimination. In light of the Advisory, recipients should consult local counsel in reviewing their employment practices. If warranted, recipients should also incorporate an analysis of the use of arrest and conviction records in their Equal Employment Opportunity Plans (EEOPs) (see below).

**Complying with the Safe Streets Act**

An organization that is a recipient of financial assistance subject to the nondiscrimination provisions of the Safe Streets Act, must meet two obligations: (1) complying with the federal regulation pertaining to the development of an EEOP (see 28 C.F.R. pt. 42, subpt. E) and (2) submitting to the OCR findings of discrimination (see 28 C.F.R. §§ 42.204(c), .205(c)(5)).

**Meeting the EEOP Requirement**

An EEOP is a comprehensive document that analyzes a recipient's relevant labor market data, as well as the recipient's employment practices, to identify possible barriers to the participation of women and minorities in all levels of a recipient's workforce. As a recipient of DOJ funding, you may be required to submit an EEOP Certification Report or an EEOP Utilization Report to the OCR. For more information on whether your organization is subject to the EEOP requirements, see https://ojp.gov/about/ocr/eeop.htm. Additionally, you may request technical assistance from an EEOP specialist at the OCR by telephone at (202) 616-1771 or by e-mail at EEOPforms@usdoj.gov.

**Meeting the Requirement to Submit Findings of Discrimination**

If in the three years prior to the date of the grant award, your organization has received an adverse finding of discrimination based on race, color, national origin, religion, or sex, after a due-process hearing, from a state or federal court or from a state or federal administrative agency, your organization must send a copy of the finding to the OCR.

**Ensuring the Compliance of Subrecipients**

SAAs must have standard assurances to notify subrecipients of their civil rights obligations, written procedures to address discrimination complaints filed against subrecipients, methods to monitor subrecipients' compliance with civil rights requirements, and a program to train subrecipients on applicable civil rights laws. In addition, SAAs must submit to the OCR every three years written Methods of Administration (MOA) that summarize the policies and procedures that they have implemented to ensure the civil rights compliance of subrecipients. For more information on the MOA requirement, see https://ojp.gov/funding/Explore/StateMethodsAdmin-FY2017update.htm.

If the OCR can assist you in any way in fulfilling your organization's civil rights responsibilities as a recipient of federal financial assistance, please contact us.

Sincerely,

Michael L. Alston
Director

cc:   Grant Manager
        Financial Analyst

U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**Grant**

| | |
|---|---|
| 1. RECIPIENT NAME AND ADDRESS (Including Zip Code) | 4. AWARD NUMBER: 2018-DJ-BX-0744 |

California Board of State and Community Corrections
2590 Venture Oaks Way, Ste. 200
Sacramento, CA 95833-3288

5. PROJECT PERIOD: FROM 10/01/2017 TO 09/30/2021

  BUDGET PERIOD: FROM 10/01/2017 TO 09/30/2021

6. AWARD DATE 11/16/2018

7. ACTION

Initial

2a. GRANTEE IRS/VENDOR NO.
  680282717

8. SUPPLEMENT NUMBER
  00

2b. GRANTEE DUNS NO.
  949095731

9. PREVIOUS AWARD AMOUNT          $ 0

3. PROJECT TITLE
  2018 JAG Program

10. AMOUNT OF THIS AWARD          $ 18,056,180

11. TOTAL AWARD          $ 18,056,180

12. SPECIAL CONDITIONS

  THE ABOVE GRANT PROJECT IS APPROVED SUBJECT TO SUCH CONDITIONS OR LIMITATIONS AS ARE SET FORTH
  ON THE ATTACHED PAGE(S).

13. STATUTORY AUTHORITY FOR GRANT

  This project is supported under FY18(BJA - JAG State & JAG Local) Title I of Pub. L. No. 90-351 (generally codified at 34 U.S.C. 10101 - 10726), including
  subpart I of part E (codified at 34 U.S.C. 10151 - 10158); see also 28 U.S.C. 530C(a)

14. CATALOG OF DOMESTIC FEDERAL ASSISTANCE (CFDA Number)

  16.738 - Edward Byrne Memorial Justice Assistance Grant Program

15. METHOD OF PAYMENT

  GPRS

| AGENCY APPROVAL | GRANTEE ACCEPTANCE |
|---|---|
| 16. TYPED NAME AND TITLE OF APPROVING OFFICIAL | 18. TYPED NAME AND TITLE OF AUTHORIZED GRANTEE OFFICIAL |
| Matt Dummermuth<br><br>Principal Deputy Assistant Attorney General | Kathleen T. Howard<br>Executive Director |
| 17. SIGNATURE OF APPROVING OFFICIAL | 19. SIGNATURE OF AUTHORIZED RECIPIENT OFFICIAL | 19A. DATE |
| *Matt Dummermuth* | | |

| AGENCY USE ONLY |
|---|

20. ACCOUNTING CLASSIFICATION CODES

| FISCAL YEAR | FUND CODE | BUD. ACT. | OFC. | DIV. REG. | SUB. | POMS | AMOUNT |
|---|---|---|---|---|---|---|---|
| X | B | DJ | 80 | 00 | 00 | | 18056180 |

21. TDJUGT1117

OJP FORM 4000/2 (REV. 5-87) PREVIOUS EDITIONS ARE OBSOLETE.

OJP FORM 4000/2 (REV. 4-88)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE  2  OF  23

| PROJECT NUMBER | 2018-DJ-BX-0744 | AWARD DATE | 11/16/2018 |
| --- | --- | --- | --- |

*SPECIAL CONDITIONS*

1. Requirements of the award; remedies for non-compliance or for materially false statements

   The conditions of this award are material requirements of the award.  Compliance with any certifications or assurances submitted by or on behalf of the recipient that relate to conduct during the period of performance also is a material requirement of this award.

   Failure to comply with any one or more of these award requirements -- whether a condition set out in full below, a condition incorporated by reference below, or a certification or assurance related to conduct during the award period -- may result in the Office of Justice Programs ("OJP") taking appropriate action with respect to the recipient and the award.  Among other things, the OJP may withhold award funds, disallow costs, or suspend or terminate the award. The Department of Justice ("DOJ"), including OJP, also may take other legal action as appropriate.

   Any materially false, fictitious, or fraudulent statement to the federal government related to this award (or concealment or omission of a material fact) may be the subject of criminal prosecution (including under 18 U.S.C. 1001 and/or 1621, and/or 34 U.S.C. 10271-10273), and also may lead to imposition of civil penalties and administrative remedies for false claims or otherwise (including under 31 U.S.C. 3729-3730 and 3801-3812).

   Should any provision of a requirement of this award be held to be invalid or unenforceable by its terms, that provision shall first be applied with a limited construction so as to give it the maximum effect permitted by law.  Should it be held, instead, that the provision is utterly invalid or -unenforceable, such provision shall be deemed severable from this award.

2. Applicability of Part 200 Uniform Requirements

   The Uniform Administrative Requirements, Cost Principles, and Audit Requirements in 2 C.F.R. Part 200, as adopted and supplemented by DOJ in 2 C.F.R. Part 2800 (together, the "Part 200 Uniform Requirements") apply to this FY 2018 award from OJP.

   The Part 200 Uniform Requirements were first adopted by DOJ on December 26, 2014.  If this FY 2018 award supplements funds previously awarded by OJP under the same award number (e.g., funds awarded during or before December 2014), the Part 200 Uniform Requirements apply with respect to all funds under that award number (regardless of the award date, and regardless of whether derived from the initial award or a supplemental award) that are obligated on or after the acceptance date of this FY 2018 award.

   For more information and resources on the Part 200 Uniform Requirements as they relate to OJP awards and subawards ("subgrants"), see the OJP website at https://ojp.gov/funding/Part200UniformRequirements.htm.

   Record retention and access:  Records pertinent to the award that the recipient (and any subrecipient ("subgrantee") at any tier) must retain -- typically for a period of 3 years from the date of submission of the final expenditure report (SF 425), unless a different retention period applies -- and to which the recipient (and any subrecipient ("subgrantee") at any tier) must provide access, include performance measurement information, in addition to the financial records, supporting documents, statistical records, and other pertinent records indicated at 2 C.F.R. 200.333.

   In the event that an award-related question arises from documents or other materials prepared or distributed by OJP that may appear to conflict with, or differ in some way from, the provisions of the Part 200 Uniform Requirements, the recipient is to contact OJP promptly for clarification.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE   3   OF   23

| PROJECT NUMBER | 2018-DJ-BX-0744 | AWARD DATE | 11/16/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

3. Compliance with DOJ Grants Financial Guide

    References to the DOJ Grants Financial Guide are to the DOJ Grants Financial Guide as posted on the OJP website
    (currently, the "DOJ Grants Financial Guide" available at https://ojp.gov/financialguide/DOJ/index.htm), including any
    updated version that may be posted during the period of performance.   The recipient agrees to comply with the DOJ
    Grants Financial Guide.

4. Reclassification of various statutory provisions to a new Title 34 of the United States Code

    On September 1, 2017, various statutory provisions previously codified elsewhere in the U.S. Code were editorially
    reclassified to a new Title 34, entitled "Crime Control and Law Enforcement." The reclassification encompassed a
    number of statutory provisions pertinent to OJP awards (that is, OJP grants and cooperative agreements), including
    many provisions previously codified in Title 42 of the U.S. Code.

    Effective as of September 1, 2017, any reference in this award document to a statutory provision that has been
    reclassified to the new Title 34 of the U.S. Code is to be read as a reference to that statutory provision as reclassified to
    Title 34. This rule of construction specifically includes references set out in award conditions, references set out in
    material incorporated by reference through award conditions, and references set out in other award requirements.

5. Required training for Point of Contact and all Financial Points of Contact

    Both the Point of Contact (POC) and all Financial Points of Contact (FPOCs) for this award must have successfully
    completed an "OJP financial management and grant administration training" by 120 days after the date of the
    recipient's acceptance of the award.  Successful completion of such a training on or after January 1, 2016, will satisfy
    this condition.

    In the event that either the POC or an FPOC for this award changes during the period of performance, the new POC or
    FPOC must have successfully completed an "OJP financial management and grant administration training" by 120
    calendar days after-- (1) the date of OJP's approval of the "Change Grantee Contact" GAN (in the case of a new
    POC), or (2) the date the POC enters information on the new FPOC in GMS (in the case of a new FPOC).  Successful
    completion of such a training on or after January 1, 2016, will satisfy this condition.

    A list of OJP trainings that OJP will consider "OJP financial management and grant administration training" for
    purposes of this condition is available at https://www.ojp.gov/training/fmts.htm.  All trainings that satisfy this condition
    include a session on grant fraud prevention and detection.

    The recipient should anticipate that OJP will immediately withhold ("freeze") award funds if the recipient fails to
    comply with this condition.  The recipient's failure to comply also may lead OJP to impose additional appropriate
    conditions on this award.

6. Requirements related to "de minimis" indirect cost rate

    A recipient that is eligible under the Part 200 Uniform Requirements and other applicable law to use the "de minimis"
    indirect cost rate described in 2 C.F.R. 200.414(f), and that elects to use the "de minimis" indirect cost rate, must advise
    OJP in writing of both its eligibility and its election, and must comply with all associated requirements in the Part 200
    Uniform Requirements.  The "de minimis" rate may be applied only to modified total direct costs (MTDC) as defined
    by the Part 200 Uniform Requirements.


| PROJECT NUMBER | 2018-DJ-BX-0744 | AWARD DATE | 11/16/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

7. Requirement to report potentially duplicative funding

   If the recipient currently has other active awards of federal funds, or if the recipient receives any other award of federal funds during the period of performance for this award, the recipient promptly must determine whether funds from any of those other federal awards have been, are being, or are to be used (in whole or in part) for one or more of the identical cost items for which funds are provided under this award. If so, the recipient must promptly notify the DOJ awarding agency (OJP or OVW, as appropriate) in writing of the potential duplication, and, if so requested by the DOJ awarding agency, must seek a budget-modification or change-of-project-scope grant adjustment notice (GAN) to eliminate any inappropriate duplication of funding.

8. Requirements related to System for Award Management and Universal Identifier Requirements

   The recipient must comply with applicable requirements regarding the System for Award Management (SAM), currently accessible at https://www.sam.gov/. This includes applicable requirements regarding registration with SAM, as well as maintaining the currency of information in SAM.

   The recipient also must comply with applicable restrictions on subawards ("subgrants") to first-tier subrecipients (first-tier "subgrantees"), including restrictions on subawards to entities that do not acquire and provide (to the recipient) the unique entity identifier required for SAM registration.

   The details of the recipient's obligations related to SAM and to unique entity identifiers are posted on the OJP web site at https://ojp.gov/funding/Explore/SAM.htm (Award condition: System for Award Management (SAM) and Universal Identifier Requirements), and are incorporated by reference here.

   This condition does not apply to an award to an individual who received the award as a natural person (i.e., unrelated to any business or non-profit organization that he or she may own or operate in his or her name).

9. Requirement to report actual or imminent breach of personally identifiable information (PII)

   The recipient (and any "subrecipient" at any tier) must have written procedures in place to respond in the event of an actual or imminent "breach" (OMB M-17-12) if it (or a subrecipient)-- 1) creates, collects, uses, processes, stores, maintains, disseminates, discloses, or disposes of "personally identifiable information (PII)" (2 CFR 200.79) within the scope of an OJP grant-funded program or activity, or 2) uses or operates a "Federal information system" (OMB Circular A-130). The recipient's breach procedures must include a requirement to report actual or imminent breach of PII to an OJP Program Manager no later than 24 hours after an occurrence of an actual breach, or the detection of an imminent breach.

10. All subawards ("subgrants") must have specific federal authorization

    The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements for authorization of any subaward. This condition applies to agreements that -- for purposes of federal grants administrative requirements -- OJP considers a "subaward" (and therefore does not consider a procurement "contract").

    The details of the requirement for authorization of any subaward are posted on the OJP web site at https://ojp.gov/funding/Explore/SubawardAuthorization.htm (Award condition: All subawards ("subgrants") must have specific federal authorization), and are incorporated by reference here.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE  5  OF  23

| PROJECT NUMBER | 2018-DJ-BX-0744 | AWARD DATE | 11/16/2018 |
| --- | --- | --- | --- |

*SPECIAL CONDITIONS*

11. Specific post-award approval required to use a noncompetitive approach in any procurement contract that would exceed $150,000

    The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements to obtain specific advance approval to use a noncompetitive approach in any procurement contract that would exceed the Simplified Acquisition Threshold (currently, $150,000). This condition applies to agreements that -- for purposes of federal grants administrative requirements -- OJP considers a procurement "contract" (and therefore does not consider a subaward).

    The details of the requirement for advance approval to use a noncompetitive approach in a procurement contract under an OJP award are posted on the OJP web site at https://ojp.gov/funding/Explore/NoncompetitiveProcurement.htm (Award condition: Specific post-award approval required to use a noncompetitive approach in a procurement contract (if contract would exceed $150,000)), and are incorporated by reference here.

12. Requirements pertaining to prohibited conduct related to trafficking in persons (including reporting requirements and OJP authority to terminate award)

    The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements (including requirements to report allegations) pertaining to prohibited conduct related to the trafficking of persons, whether on the part of recipients, subrecipients ("subgrantees"), or individuals defined (for purposes of this condition) as "employees" of the recipient or of any subrecipient.

    The details of the recipient's obligations related to prohibited conduct related to trafficking in persons are posted on the OJP web site at https://ojp.gov/funding/Explore/ProhibitedConduct-Trafficking.htm (Award condition: Prohibited conduct by recipients and subrecipients related to trafficking in persons (including reporting requirements and OJP authority to terminate award)), and are incorporated by reference here.

13. Compliance with applicable rules regarding approval, planning, and reporting of conferences, meetings, trainings, and other events

    The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable laws, regulations, policies, and official DOJ guidance (including specific cost limits, prior approval and reporting requirements, where applicable) governing the use of federal funds for expenses related to conferences (as that term is defined by DOJ), including the provision of food and/or beverages at such conferences, and costs of attendance at such conferences.

    Information on the pertinent DOJ definition of conferences and the rules applicable to this award appears in the DOJ Grants Financial Guide (currently, as section 3.10 of "Postaward Requirements" in the "DOJ Grants Financial Guide").

14. Requirement for data on performance and effectiveness under the award

    The recipient must collect and maintain data that measure the performance and effectiveness of work under this award. The data must be provided to OJP in the manner (including within the timeframes) specified by OJP in the program solicitation or other applicable written guidance. Data collection supports compliance with the Government Performance and Results Act (GPRA) and the GPRA Modernization Act of 2010, and other applicable laws.

15. OJP Training Guiding Principles

    Any training or training materials that the recipient -- or any subrecipient ("subgrantee") at any tier -- develops or delivers with OJP award funds must adhere to the OJP Training Guiding Principles for Grantees and Subgrantees, available at https://ojp.gov/funding/Implement/TrainingPrinciplesForGrantees-Subgrantees.htm.


| PROJECT NUMBER | 2018-DJ-BX-0744 | AWARD DATE | 11/16/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

16. Effect of failure to address audit issues

    The recipient understands and agrees that the DOJ awarding agency (OJP or OVW, as appropriate) may withhold award funds, or may impose other related requirements, if (as determined by the DOJ awarding agency) the recipient does not satisfactorily and promptly address outstanding issues from audits required by the Part 200 Uniform Requirements (or by the terms of this award), or other outstanding issues that arise in connection with audits, investigations, or reviews of DOJ awards.

17. Potential imposition of additional requirements

    The recipient agrees to comply with any additional requirements that may be imposed by the DOJ awarding agency (OJP or OVW, as appropriate) during the period of performance for this award, if the recipient is designated as "high-risk" for purposes of the DOJ high-risk grantee list.

18. Compliance with DOJ regulations pertaining to civil rights and nondiscrimination - 28 C.F.R. Part 42

    The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements of 28 C.F.R. Part 42, specifically including any applicable requirements in Subpart E of 28 C.F.R. Part 42 that relate to an equal employment opportunity program.

19. Compliance with DOJ regulations pertaining to civil rights and nondiscrimination - 28 C.F.R. Part 54

    The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements of 28 C.F.R. Part 54, which relates to nondiscrimination on the basis of sex in certain "education programs."

20. Compliance with DOJ regulations pertaining to civil rights and nondiscrimination - 28 C.F.R. Part 38

    The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements of 28 C.F.R. Part 38, specifically including any applicable requirements regarding written notice to program beneficiaries and prospective program beneficiaries.

    Among other things, 28 C.F.R. Part 38 includes rules that prohibit specific forms of discrimination on the basis of religion, a religious belief, a refusal to hold a religious belief, or refusal to attend or participate in a religious practice. Part 38 also sets out rules and requirements that pertain to recipient and subrecipient ("subgrantee") organizations that engage in or conduct explicitly religious activities, as well as rules and requirements that pertain to recipients and subrecipients that are faith-based or religious organizations.

    The text of the regulation, now entitled "Partnerships with Faith-Based and Other Neighborhood Organizations," is available via the Electronic Code of Federal Regulations (currently accessible at https://www.ecfr.gov/cgi-bin/ECFR?page=browse), by browsing to Title 28-Judicial Administration, Chapter 1, Part 38, under e-CFR "current" data.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE 7 OF 23

| PROJECT NUMBER | 2018-DJ-BX-0744 | AWARD DATE | 11/16/2018 |

*SPECIAL CONDITIONS*

21. Restrictions on "lobbying"

In general, as a matter of federal law, federal funds awarded by OJP may not be used by the recipient, or any subrecipient ("subgrantee") at any tier, either directly or indirectly, to support or oppose the enactment, repeal, modification, or adoption of any law, regulation, or policy, at any level of government. See 18 U.S.C. 1913. (There may be exceptions if an applicable federal statute specifically authorizes certain activities that otherwise would be barred by law.)

Another federal law generally prohibits federal funds awarded by OJP from being used by the recipient, or any subrecipient at any tier, to pay any person to influence (or attempt to influence) a federal agency, a Member of Congress, or Congress (or an official or employee of any of them) with respect to the awarding of a federal grant or cooperative agreement, subgrant, contract, subcontract, or loan, or with respect to actions such as renewing, extending, or modifying any such award. See 31 U.S.C. 1352. Certain exceptions to this law apply, including an exception that applies to Indian tribes and tribal organizations.

Should any question arise as to whether a particular use of federal funds by a recipient (or subrecipient) would or might fall within the scope of these prohibitions, the recipient is to contact OJP for guidance, and may not proceed without the express prior written approval of OJP.

22. Compliance with general appropriations-law restrictions on the use of federal funds (FY 2018)

The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable restrictions on the use of federal funds set out in federal appropriations statutes. Pertinent restrictions, including from various "general provisions" in the Consolidated Appropriations Act, 2018, are set out at https://ojp.gov/funding/Explore/FY18AppropriationsRestrictions.htm, and are incorporated by reference here.

Should a question arise as to whether a particular use of federal funds by a recipient (or a subrecipient) would or might fall within the scope of an appropriations-law restriction, the recipient is to contact OJP for guidance, and may not proceed without the express prior written approval of OJP.

23. Reporting Potential Fraud, Waste, and Abuse, and Similar Misconduct

The recipient and any subrecipients ("subgrantees") must promptly refer to the DOJ Office of the Inspector General (OIG) any credible evidence that a principal, employee, agent, subrecipient, contractor, subcontractor, or other person has, in connection with funds under this award -- (1) submitted a claim that violates the False Claims Act; or (2) committed a criminal or civil violation of laws pertaining to fraud, conflict of interest, bribery, gratuity, or similar misconduct.

Potential fraud, waste, abuse, or misconduct involving or relating to funds under this award should be reported to the OIG by-- (1) mail directed to: Office of the Inspector General, U.S. Department of Justice, Investigations Division, 1425 New York Avenue, N.W. Suite 7100, Washington, DC 20530; and/or (2) the DOJ OIG hotline: (contact information in English and Spanish) at (800) 869-4499 (phone) or (202) 616-9881 (fax).

Additional information is available from the DOJ OIG website at https://oig.justice.gov/hotline.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

| PROJECT NUMBER | 2018-DJ-BX-0744 | AWARD DATE | 11/16/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

24.  Restrictions and certifications regarding non-disclosure agreements and related matters

No recipient or subrecipient ("subgrantee") under this award, or entity that receives a procurement contract or subcontract with any funds under this award, may require any employee or contractor to sign an internal confidentiality agreement or statement that prohibits or otherwise restricts, or purports to prohibit or restrict, the reporting (in accordance with law) of waste, fraud, or abuse to an investigative or law enforcement representative of a federal department or agency authorized to receive such information.

The foregoing is not intended, and shall not be understood by the agency making this award, to contravene requirements applicable to Standard Form 312 (which relates to classified information), Form 4414 (which relates to sensitive compartmented information), or any other form issued by a federal department or agency governing the nondisclosure of classified information.

1.  In accepting this award, the recipient--

a.  represents that it neither requires nor has required internal confidentiality agreements or statements from employees or contractors that currently prohibit or otherwise currently restrict (or purport to prohibit or restrict) employees or contractors from reporting waste, fraud, or abuse as described above; and

b.  certifies that, if it learns or is notified that it is or has been requiring its employees or contractors to execute agreements or statements that prohibit or otherwise restrict (or purport to prohibit or restrict), reporting of waste, fraud, or abuse as described above, it will immediately stop any further obligations of award funds, will provide prompt written notification to the federal agency making this award, and will resume (or permit resumption of) such obligations only if expressly authorized to do so by that agency.

2.  If the recipient does or is authorized under this award to make subawards ("subgrants"), procurement contracts, or both--

a.  it represents that--

(1)  it has determined that no other entity that the recipient's application proposes may or will receive award funds (whether through a subaward ("subgrant"), procurement contract, or subcontract under a procurement contract) either requires or has required internal confidentiality agreements or statements from employees or contractors that currently prohibit or otherwise currently restrict (or purport to prohibit or restrict) employees or contractors from reporting waste, fraud, or abuse as described above; and

(2)  it has made appropriate inquiry, or otherwise has an adequate factual basis, to support this representation; and

b.  it certifies that, if it learns or is notified that any subrecipient, contractor, or subcontractor entity that receives funds under this award is or has been requiring its employees or contractors to execute agreements or statements that prohibit or otherwise restrict (or purport to prohibit or restrict), reporting of waste, fraud, or abuse as described above, it will immediately stop any further obligations of award funds to or by that entity, will provide prompt written notification to the federal agency making this award, and will resume (or permit resumption of) such obligations only if expressly authorized to do so by that agency.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE 9 OF 23

| PROJECT NUMBER | 2018-DJ-BX-0744 | AWARD DATE | 11/16/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

25. Compliance with 41 U.S.C. 4712 (including prohibitions on reprisal; notice to employees)

   The recipient (and any subrecipient at any tier) must comply with, and is subject to, all applicable provisions of 41 U.S.C. 4712, including all applicable provisions that prohibit, under specified circumstances, discrimination against an employee as reprisal for the employee's disclosure of information related to gross mismanagement of a federal grant, a gross waste of federal funds, an abuse of authority relating to a federal grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a federal grant.

   The recipient also must inform its employees, in writing (and in the predominant native language of the workforce), of employee rights and remedies under 41 U.S.C. 4712.

   Should a question arise as to the applicability of the provisions of 41 U.S.C. 4712 to this award, the recipient is to contact the DOJ awarding agency (OJP or OVW, as appropriate) for guidance.

26. Encouragement of policies to ban text messaging while driving

   Pursuant to Executive Order 13513, "Federal Leadership on Reducing Text Messaging While Driving," 74 Fed. Reg. 51225 (October 1, 2009), DOJ encourages recipients and subrecipients ("subgrantees") to adopt and enforce policies banning employees from text messaging while driving any vehicle during the course of performing work funded by this award, and to establish workplace safety policies and conduct education, awareness, and other outreach to decrease crashes caused by distracted drivers.

27. Requirement to disclose whether recipient is designated "high risk" by a federal grant-making agency outside of DOJ

   If the recipient is designated "high risk" by a federal grant-making agency outside of DOJ, currently or at any time during the course of the period of performance under this award, the recipient must disclose that fact and certain related information to OJP by email at OJP.ComplianceReporting@ojp.usdoj.gov. For purposes of this disclosure, high risk includes any status under which a federal awarding agency provides additional oversight due to the recipient's past performance, or other programmatic or financial concerns with the recipient. The recipient's disclosure must include the following: 1. The federal awarding agency that currently designates the recipient high risk, 2. The date the recipient was designated high risk, 3. The high-risk point of contact at that federal awarding agency (name, phone number, and email address), and 4. The reasons for the high-risk status, as set out by the federal awarding agency.

28. Cooperating with OJP Monitoring

   The recipient agrees to cooperate with OJP monitoring of this award pursuant to OJP's guidelines, protocols, and procedures, and to cooperate with OJP (including the grant manager for this award and the Office of Chief Financial Officer (OCFO)) requests related to such monitoring, including requests related to desk reviews and/or site visits. The recipient agrees to provide to OJP all documentation necessary for OJP to complete its monitoring tasks, including documentation related to any subawards made under this award. Further, the recipient agrees to abide by reasonable deadlines set by OJP for providing the requested documents. Failure to cooperate with OJP's monitoring activities may result in actions that affect the recipient's DOJ awards, including, but not limited to: withholdings and/or other restrictions on the recipient's access to award funds; referral to the DOJ OIG for audit review; designation of the recipient as a DOJ High Risk grantee; or termination of an award(s).



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE 10 OF 23

| PROJECT NUMBER | 2018-DJ-BX-0744 | AWARD DATE | 11/16/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

29. FFATA reporting: Subawards and executive compensation

The recipient must comply with applicable requirements to report first-tier subawards ("subgrants") of $25,000 or more and, in certain circumstances, to report the names and total compensation of the five most highly compensated executives of the recipient and first-tier subrecipients (first-tier "subgrantees") of award funds. The details of recipient obligations, which derive from the Federal Funding Accountability and Transparency Act of 2006 (FFATA), are posted on the OJP web site at https://ojp.gov/funding/Explore/FFATA.htm (Award condition: Reporting Subawards and Executive Compensation), and are incorporated by reference here.

This condition, including its reporting requirement, does not apply to-- (1) an award of less than $25,000, or (2) an award made to an individual who received the award as a natural person (i.e., unrelated to any business or non-profit organization that he or she may own or operate in his or her name).

30. Required monitoring of subawards

The recipient must monitor subawards under this award in accordance with all applicable statutes, regulations, award conditions, and the DOJ Grants Financial Guide, and must include the applicable conditions of this award in any subaward. Among other things, the recipient is responsible for oversight of subrecipient spending and monitoring of specific outcomes and benefits attributable to use of award funds by subrecipients. The recipient agrees to submit, upon request, documentation of its policies and procedures for monitoring of subawards under this award.

31. Use of program income

Program income (as defined in the Part 200 Uniform Requirements) must be used in accordance with the provisions of the Part 200 Uniform Requirements. Program income earnings and expenditures both must be reported on the quarterly Federal Financial Report, SF 425.

32. Justice Information Sharing

Information sharing projects funded under this award must comply with DOJ's Global Justice Information Sharing Initiative (Global) guidelines. The recipient (and any subrecipient at any tier) must conform to the Global Standards Package (GSP) and all constituent elements, where applicable, as described at: https:/ / it.ojp.gov/ gsp_grantcondition. The recipient (and any subrecipient at any tier) must document planned approaches to information sharing and describe compliance with the GSP and appropriate privacy policy that protects shared information, or provide detailed justification for why an alternative approach is recommended.

33. Avoidance of duplication of networks

To avoid duplicating existing networks or IT systems in any initiatives funded by BJA for law enforcement information sharing systems which involve interstate connectivity between jurisdictions, such systems shall employ, to the extent possible, existing networks as the communication backbone to achieve interstate connectivity, unless the recipient can demonstrate to the satisfaction of BJA that this requirement would not be cost effective or would impair the functionality of an existing or proposed IT system.

34. Compliance with 28 C.F.R. Part 23

With respect to any information technology system funded or supported by funds under this award, the recipient (and any subrecipient at any tier) must comply with 28 C.F.R. Part 23, Criminal Intelligence Systems Operating Policies, if OJP determines this regulation to be applicable. Should OJP determine 28 C.F.R. Part 23 to be applicable, OJP may, at its discretion, perform audits of the system, as per the regulation. Should any violation of 28 C.F.R. Part 23 occur, the recipient may be fined as per 34 U.S.C. 10231(c)-(d). The recipient may not satisfy such a fine with federal funds.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE 11 OF 23

| PROJECT NUMBER | 2018-DJ-BX-0744 | AWARD DATE | 11/16/2018 |
| --- | --- | --- | --- |

*SPECIAL CONDITIONS*

35. Protection of human research subjects

   The recipient (and any subrecipient at any tier) must comply with the requirements of 28 C.F.R. Part 46 and all OJP policies and procedures regarding the protection of human research subjects, including obtainment of Institutional Review Board approval, if appropriate, and subject informed consent.

36. Confidentiality of data

   The recipient (and any subrecipient at any tier) must comply with all confidentiality requirements of 34 U.S.C. 10231 and 28 C.F.R. Part 22 that are applicable to collection, use, and revelation of data or information. The recipient further agrees, as a condition of award approval, to submit a Privacy Certificate that is in accord with requirements of 28 C.F.R. Part 22 and, in particular, 28 C.F.R. 22.23.

37. Verification and updating of recipient contact information

   The recipient must verify its Point of Contact(POC), Financial Point of Contact (FPOC), and Authorized Representative contact information in GMS, including telephone number and e-mail address. If any information is incorrect or has changed, a Grant Adjustment Notice (GAN) must be submitted via the Grants Management System (GMS) to document changes.

38. Law enforcement task forces - required training

   Within 120 days of award acceptance, each current member of a law enforcement task force funded with award funds who is a task force commander, agency executive, task force officer, or other task force member of equivalent rank, must complete required online (internet-based) task force training. Additionally, all future task force members must complete this training once during the period of performance for this award, or once every four years if multiple OJP awards include this requirement.

   The required training is available free of charge online through the BJA-funded Center for Task Force Integrity and Leadership (www.ctfli.org). The training addresses task force effectiveness, as well as other key issues including privacy and civil liberties/rights, task force performance measurement, personnel selection, and task force oversight and accountability. If award funds are used to support a task force, the recipient must compile and maintain a task force personnel roster, along with course completion certificates.

   Additional information regarding the training is available through BJA's web site and the Center for Task Force Integrity and Leadership (www.ctfli.org).

39. Justification of consultant rate

   Approval of this award does not indicate approval of any consultant rate in excess of $650 per day. A detailed justification must be submitted to and approved by the OJP program office prior to obligation or expenditure of such funds.


| PROJECT NUMBER | 2018-DJ-BX-0744 | AWARD DATE | 11/16/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

40. Submission of eligible records relevant to the National Instant Background Check System

    Consonant with federal statutes that pertain to firearms and background checks -- including 18 U.S.C. 922 and 34 U.S.C. ch. 409 -- if the recipient (or any subrecipient at any tier) uses this award to fund (in whole or in part) a specific project or program (such as a law enforcement, prosecution, or court program) that results in any court dispositions, information, or other records that are "eligible records" (under federal or State law) relevant to the National Instant Background Check System (NICS), or that has as one of its purposes the establishment or improvement of records systems that contain any court dispositions, information, or other records that are "eligible records" (under federal or State law) relevant to the NICS, the recipient (or subrecipient, if applicable) must ensure that all such court dispositions, information, or other records that are "eligible records" (under federal or State law) relevant to the NICS are promptly made available to the NICS or to the "State" repository/database that is electronically available to (and accessed by) the NICS, and -- when appropriate -- promptly must update, correct, modify, or remove such NICS-relevant "eligible records".

    In the event of minor and transitory non-compliance, the recipient may submit evidence to demonstrate diligent monitoring of compliance with this condition (including subrecipient compliance). DOJ will give great weight to any such evidence in any express written determination regarding this condition.

41. Certification of Compliance with 8 U.S.C. 1373 and 1644 (within the funded "program or activity") required for valid award acceptance by a "State"

    In order validly to accept this award, the prospective recipient must submit the required "State or Local Government: FY 2018 Certification of Compliance with 8 U.S.C. 1373 and 1644" (executed by the chief legal officer of the State). Unless that executed certification either-- (1) is submitted to OJP together with the fully-executed award document, or (2) is uploaded in OJP's GMS no later than the day the signed award document is submitted to OJP, any submission by a State that purports to accept the award is invalid.

    If an initial award-acceptance submission by the recipient is invalid, once the State does submit the necessary certification regarding 8 U.S.C. 1373 and 1644, the State may submit a fully-executed award document executed by the State on or after the date of that certification.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE 13 OF 23

| PROJECT NUMBER | 2018-DJ-BX-0744 | AWARD DATE | 11/16/2018 |
| --- | --- | --- | --- |

*SPECIAL CONDITIONS*

42. Noninterference (within the funded "program or activity") with federal law enforcement: 8 U.S.C. 1373 and 1644; ongoing compliance

1. With respect to the "program or activity" funded in whole or part under this award (including any such program or activity of any subrecipient at any tier), throughout the period of performance, no State or local government entity, -agency, or -official may prohibit or in any way restrict-- (1) any government entity or -official from sending or receiving information regarding citizenship or immigration status as described in 8 U.S.C. 1373(a); or (2) a government entity or -agency from sending, requesting or receiving, maintaining, or exchanging information regarding immigration status as described in either 8 U.S.C. 1373(b) or 1644. Any prohibition (or restriction) that violates this condition is an "information-communication restriction" under this award.

2. Certifications from subrecipients. The recipient may not make a subaward to a State, a local government, or a "public" institution of higher education, unless it first obtains a certification of compliance with 8 U.S.C. 1373 and 1644, properly executed by the chief legal officer of the government or educational institution that would receive the subaward, using the appropriate form available at https://ojp.gov/funding/Explore/SampleCertifications-8USC1373.htm. Also, the recipient must require that no subrecipient (at any tier) may make a further subaward to a State, a local government, or a public institution of higher education, unless it first obtains a certification of compliance with 8 U.S.C. 1373 and 1644, properly executed by the chief legal officer of the government or institution that would receive the further subaward, using the appropriate OJP form.

3. The recipient's monitoring responsibilities include monitoring of subrecipient compliance with the requirements of this condition.

4. Allowable costs. Compliance with these requirements is an authorized and priority purpose of this award. To the extent that such costs are not reimbursed under any other federal program, award funds may be obligated for the reasonable, necessary, and allocable costs (if any) that the recipient, or any subrecipient at any tier that is a State, a local government, or a public institution of higher education, incurs to implement this condition.

5. Rules of Construction

A. For purposes of this condition:

(1) "State" and "local government" include any agency or other entity thereof, but not any institution of higher education or any Indian tribe.

(2) A "public" institution of higher education is defined as one that is owned, controlled, or directly funded (in whole or in substantial part) by a State or local government. (Such a public institution is considered to be a "government entity," and its officials to be "government officials.")

(3) "Program or activity" means what it means under title VI of the Civil Rights Act of 1964 (see 42 U.S.C. 2000d-4a).

(4) "Immigration status" means what it means under 8 U.S.C. 1373 and 8 U.S.C. 1644; and terms that are defined in 8 U.S.C. 1101 mean what they mean under that section 1101, except that "State" also includes American Samoa.

(5) Pursuant to the provisions set out at (or referenced in) 8 U.S.C. 1551 note ("Abolition ... and Transfer of Functions"), references to the "Immigration and Naturalization Service" in 8 U.S.C. 1373 and 1644 are to be read as references to particular components of the Department of Homeland Security (DHS).

B. Nothing in this condition shall be understood to authorize or require any recipient, any subrecipient at any tier, any State or local government, any public institution of higher education, or any other entity (or individual) to violate any federal law, including any applicable civil rights or nondiscrimination law.

IMPORTANT NOTE: Any questions about the meaning or scope of this condition should be directed to OJP, before

U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE 14 OF 23



| PROJECT NUMBER | 2018-DJ-BX-0744 | AWARD DATE | 11/16/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

award acceptance.

43. Authority to obligate award funds contingent on noninterference (within the funded "program or activity") with federal law enforcement (8 U.S.C. 1373 and 1644); unallowable costs; notification

1. If the recipient is a "State," a local government, or a "public" institution of higher education:

A. The recipient may not obligate award funds if, at the time of the obligation, the "program or activity" of the recipient (or of any subrecipient at any tier that is a State, a local government, or a public institution of higher education) that is funded in whole or in part with award funds is subject to any "information-communication restriction."

B. In addition, with respect to any project costs it incurs "at risk," the recipient may not obligate award funds to reimburse itself if -- at the time it incurs such costs -- the program or activity of the recipient (or of any subrecipient at any tier that is a State, a local government, or a public institution of higher education) that would be reimbursed in whole or in part with award funds was subject to any information-communication restriction.

C. Any drawdown of award funds by the recipient shall be considered, for all purposes, to be a material representation by the recipient to OJP that, as of the date the recipient requests the drawdown, the recipient and each subrecipient (regardless of tier) that is a State, a local government, or a public institution of higher education, is in compliance with the award condition entitled "Noninterference (within the funded 'program or activity') with federal law enforcement: 8 U.S.C. 1373 and 1644 and ongoing compliance."

D. The recipient must promptly notify OJP (in writing) if the recipient, from its requisite monitoring of compliance with award conditions or otherwise, has credible evidence that indicates that the funded program or activity of the recipient, or of any subrecipient at any tier that is either a State or a local government or a public institution of higher education, may be subject to any information-communication restriction. In addition, any subaward (at any tier) to a subrecipient that is a State, a local government, or a public institution of higher education must require prompt notification to the entity that made the subaward, should the subrecipient have such credible evidence regarding an information-communication restriction.

2. Any subaward (at any tier) to a subrecipient that is a State, a local government, or a public institution of higher education must provide that the subrecipient may not obligate award funds if, at the time of the obligation, the program or activity of the subrecipient (or of any further such subrecipient at any tier) that is funded in whole or in part with award funds is subject to any information-communication restriction.

3. Absent an express written determination by DOJ to the contrary, based upon a finding by DOJ of compelling circumstances (e.g., a small amount of award funds obligated by the recipient at the time of a subrecipient's minor and transitory non-compliance, which was unknown to the recipient despite diligent monitoring), any obligations of award funds that, under this condition, may not be made shall be unallowable costs for purposes of this award. In making any such determination, DOJ will give great weight to evidence submitted by the recipient that demonstrates diligent monitoring of subrecipient compliance with the requirements set out in the "Noninterference ... 8 U.S.C. 1373 and 1644 and ongoing compliance" award condition.

4. Rules of Construction

A. For purposes of this condition "information-communication restriction" has the meaning set out in the "Noninterference ... 8 U.S.C. 1373 and 1644 and ongoing compliance" condition.

B. Both the "Rules of Construction" and the "Important Note" set out in the "Noninterference ... 8 U.S.C. 1373 and 1644 and ongoing compliance" condition are incorporated by reference as though set forth here in full.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE 15 OF 23

| PROJECT NUMBER | 2018-DJ-BX-0744 | AWARD DATE | 11/16/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

44. Noninterference (within the funded "program or activity") with federal law enforcement: No public disclosure of certain law enforcement sensitive information

SCOPE. This condition applies with respect to the "program or activity" that is funded (in whole or in part) by the award, as of the date the recipient accepts this award, and throughout the remainder of the period of performance. Its provisions must be among those included in any subaward (at any tier).

1. Noninterference: No public disclosure of federal law enforcement information in order to conceal, harbor, or shield

Consistent with the purposes and objectives of federal law enforcement statutes and federal criminal law (including 8 U.S.C. 1324 and 18 U.S.C. chs. 1, 49, 227), no public disclosure may be made of any federal law enforcement information in a direct or indirect attempt to conceal, harbor, or shield from detection any fugitive from justice under 18 U.S.C. ch. 49, or any alien who has come to, entered, or remains in the United States in violation of 8 U.S.C. ch. 12 -- without regard to whether such disclosure would constitute (or could form a predicate for) a violation of 18 U.S.C. 1071 or 1072 or of 8 U.S.C. 1324(a).

2. Monitoring

The recipient's monitoring responsibilities include monitoring of subrecipient compliance with this condition.

3. Allowable costs

To the extent that such costs are not reimbursed under any other federal program, award funds may be obligated for the reasonable, necessary, and allocable costs (if any) of actions (e.g., training) designed to ensure compliance with this condition.

4. Rules of construction

A. For purposes of this condition--

(1) the term "alien" means what it means under section 101 of the Immigration and Nationality Act (see 8 U.S.C. 1101(a)(3));

(2) the term "federal law enforcement information" means law enforcement sensitive information communicated or made available, by the federal government, to a State or local government entity, -agency, or -official, through any means, including, without limitation-- (1) through any database, (2) in connection with any law enforcement partnership or -task-force, (3) in connection with any request for law enforcement assistance or -cooperation, or (4) through any deconfliction (or courtesy) notice of planned, imminent, commencing, continuing, or impending federal law enforcement activity;

(3) the term "law enforcement sensitive information" means records or information compiled for any law enforcement purpose; and

(4) the term "public disclosure" means any communication or release other than one-- (a) within the recipient, or (b) to any subrecipient (at any tier) that is a government entity.

B. Both the "Rules of Construction" and the "Important Note" set out in the "Noninterference (within the funded 'program or activity') with federal law enforcement: 8 U.S.C. 1373 and 1644 and ongoing compliance" award condition are incorporated by reference as though set forth here in full.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE  16  OF  23

| PROJECT NUMBER | 2018-DJ-BX-0744 | AWARD DATE | 11/16/2018 |

*SPECIAL CONDITIONS*

45. Noninterference (within the funded "program or activity") with federal law enforcement: Interrogation of certain aliens

SCOPE. This condition applies with respect to the "program or activity" that is funded (in whole or in part) by this award, as of the date the recipient accepts this award, and throughout the remainder of the period of performance for the award.  Its provisions must be among those included in any subaward (at any tier).

1. Noninterference with statutory law enforcement access to correctional facilities

Consonant with federal law enforcement statutes and regulations -- including 8 U.S.C. 1357(a), under which certain federal officers and employees "have power without warrant ... to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States," and 8 C.F.R. 287.5(a), under which that power may be exercised "anywhere in or outside the United States" -- within the funded program or activity, no State or local government entity, -agency, or -official may interfere with the exercise of that power to interrogate "without warrant" (by agents of the United States acting under color of federal law) by impeding access to any State or local government (or government-contracted) correctional facility by such agents for the purpose "interrogat[ing] any alien or person believed to be an alien as to his [or her] right to be or to remain in the United States."

2. Monitoring

The recipient's monitoring responsibilities include monitoring of subrecipient compliance with this condition.

3. Allowable costs

To the extent that such costs are not reimbursed under any other federal program, award funds may be obligated for the reasonable, necessary, and allocable costs (if any) of actions (e.g., training) designed to ensure compliance with this condition.

4. Rules of construction

A. For purposes of this condition:

(1) The term "alien" means what it means under section 101 of the Immigration and Nationality Act (INA) (see 8 U.S.C. 1101(a)(3)).

(2) The term "correctional facility" means what it means under the title I of the Omnibus Crime Control and Safe Streets Act of 1968 (see 34 U.S.C. 10251(a)(7)).

(3) The term "impede" includes taking or continuing any action, or implementing or maintaining any law, policy, rule, or practice, that--

(a) is designed to prevent or to significantly delay or complicate, or

(b) has the effect of preventing or of significantly delaying or complicating.

B. Both the "Rules of Construction" and the "Important Note" set out in the "Noninterference (within the funded 'program or activity') with federal law enforcement: 8 U.S.C. 1373 and 1644 and ongoing compliance" award condition are incorporated by reference as though set forth here in full.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE 17 OF 23

| PROJECT NUMBER | 2018-DJ-BX-0744 | AWARD DATE | 11/16/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

46. Noninterference (within the funded "program or activity") with federal law enforcement: Notice of scheduled release

SCOPE. This condition applies with respect to the "program or activity" that is funded (in whole or in part) by the award, as of the date the recipient accepts the award, and throughout the remainder of the period of performance. Its provisions must be among those included in any subaward at any tier.

1. Noninterference with "removal" process: Notice of scheduled release date and time

Consonant with federal law enforcement statutes -- including 8 U.S.C. 1231 (for an alien incarcerated by a State or local government, a 90-day "removal period" during which the federal government "shall" detain and then "shall" remove an alien from the U.S. "begins" no later than "the date the alien is released from ... confinement"; also, the federal government is expressly authorized to make payments to a "State or a political subdivision of the State ... with respect to the incarceration of [an] undocumented criminal alien"); 8 U.S.C. 1226 (the federal government "shall take into custody" certain criminal aliens "when the alien is released"); and 8 U.S.C. 1366 (requiring an annual DOJ report to Congress on "the number of illegal alien[ felons] in Federal and State prisons" and programs underway "to ensure the prompt removal" from the U.S. of removable "criminal aliens") -- within the funded program or activity, no State or local government entity, -agency, or -official (including a government-contracted correctional facility) may interfere with the "removal" process by failing to provide -- as early as practicable (see para. 4.C. below) -- advance notice to DHS of the scheduled release date and time for a particular alien, if a State or local government (or government-contracted) correctional facility receives from DHS a formal written request pursuant to the INA that seeks such advance notice.

2. Monitoring

The recipient's monitoring responsibilities include monitoring of subrecipient compliance with this condition.

3. Allowable costs

To the extent that such costs are not reimbursed under any other federal program, award funds may be obligated for the reasonable, necessary, and allocable costs (if any) of actions (e.g., training) designed to ensure compliance with this condition.

4. Rules of construction

A. For purposes of this condition:

(1) The term "alien" means what it means under section 101 of the INA (see 8 U.S.C. 1101(a)(3)).

(2) The term "correctional facility" means what it means under the title I of the Omnibus Crime Control and Safe Streets Act of 1968 (see 34 U.S.C. 10251(a)(7)).

B. Nothing in this condition shall be understood to authorize or require any recipient, any subrecipient at any tier, any State or local government, or any other entity or individual to maintain (or detain) any individual in custody beyond the date and time the individual otherwise would have been released.

C. Applicability

(1) Current DHS practice is ordinarily to request advance notice of scheduled release "as early as practicable (at least 48 hours, if possible)." (See DHS Form I-247A (3/17)). If (e.g., in light of the date DHS made such request) the scheduled release date and time for an alien are such as not to allow for the advance notice that DHS has requested, it shall NOT be a violation of this condition to provide only as much advance notice as practicable.

(2) Current DHS practice is to use the same form for a second, distinct purpose -- to request that an individual be



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE  18  OF  23

| PROJECT NUMBER | 2018-DJ-BX-0744 | AWARD DATE | 11/16/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

detained for up to 48 hours AFTER the scheduled release. This condition does NOT encompass such DHS requests for detention.

D. Both the "Rules of Construction" and the "Important Note" set out in the "Noninterference (within the funded 'program or activity') with federal law enforcement: 8 U.S.C. 1373 and 1644 and ongoing compliance" award condition are incorporated by reference as though set forth here in full.

47. Requirement to collect certain information from subrecipients

The recipient may not make a subaward to a State, a local government, or a "public" institution of higher education, unless it first obtains from the proposed subrecipient responses to the questions identified in the program solicitation as "Information regarding Communication with the Department of Homeland Security (DHS) and/or Immigration and Customs Enforcement (ICE)." All subrecipient responses must be collected and maintained by the recipient, consistent with regular document retention requirements, and must be made available to DOJ upon request. Responses to these questions are not required from subrecipients that are either a tribal government/organization, a nonprofit organization, or a private institution of higher education.

48. "Methods of Administration" - monitoring compliance with civil rights laws and nondiscrimination provisions

The recipient's monitoring responsibilities include monitoring of subrecipient compliance with applicable federal civil rights laws and nondiscrimination provisions. Within 90 days of the date of award acceptance, the recipient must submit to OJP's Office for Civil Rights (at CivilRightsMOA@usdoj.gov) written Methods of Administration ("MOA") for subrecipient monitoring with respect to civil rights requirements. In addition, upon request by OJP (or by another authorized federal agency), the recipient must make associated documentation available for review.

The details of the recipient's obligations related to Methods of Administration are posted on the OJP web site at https://ojp.gov/funding/Explore/StateMethodsAdmin-FY2017update.htm (Award condition: "Methods of Administration" - Requirements applicable to States (FY 2017 Update)), and are incorporated by reference here.

49. Required attendance at BJA-sponsored events

The recipient (and its subrecipients at any tier) must participate in BJA-sponsored training events, technical assistance events, or conferences held by BJA or its designees, upon BJA's request.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE 19 OF 23

| PROJECT NUMBER | 2018-DJ-BX-0744 | AWARD DATE | 11/16/2018 |
| --- | --- | --- | --- |

*SPECIAL CONDITIONS*

50. Compliance with National Environmental Policy Act and related statutes

   Upon request, the recipient (and any subrecipient at any tier) must assist BJA in complying with the National Environmental Policy Act (NEPA), the National Historic Preservation Act, and other related federal environmental impact analyses requirements in the use of these award funds, either directly by the recipient or by a subrecipient. Accordingly, the recipient agrees to first determine if any of the following activities will be funded by the grant, prior to obligating funds for any of these purposes. If it is determined that any of the following activities will be funded by the award, the recipient agrees to contact BJA.

   The recipient understands that this condition applies to new activities as set out below, whether or not they are being specifically funded with these award funds. That is, as long as the activity is being conducted by the recipient, a subrecipient, or any third party, and the activity needs to be undertaken in order to use these award funds, this condition must first be met. The activities covered by this condition are:

   a. New construction;

   b. Minor renovation or remodeling of a property located in an environmentally or historically sensitive area, including properties located within a 100-year flood plain, a wetland, or habitat for endangered species, or a property listed on or eligible for listing on the National Register of Historic Places;

   c. A renovation, lease, or any proposed use of a building or facility that will either (a) result in a change in its basic prior use or (b) significantly change its size;

   d. Implementation of a new program involving the use of chemicals other than chemicals that are (a) purchased as an incidental component of a funded activity and (b) traditionally used, for example, in office, household, recreational, or education environments; and

   e. Implementation of a program relating to clandestine methamphetamine laboratory operations, including the identification, seizure, or closure of clandestine methamphetamine laboratories.

   The recipient understands and agrees that complying with NEPA may require the preparation of an Environmental Assessment and/or an Environmental Impact Statement, as directed by BJA. The recipient further understands and agrees to the requirements for implementation of a Mitigation Plan, as detailed at https://bja.gov/Funding/nepa.html, for programs relating to methamphetamine laboratory operations.

   Application of This Condition to Recipient's Existing Programs or Activities:  For any of the recipient's or its subrecipients' existing programs or activities that will be funded by these award funds, the recipient, upon specific request from BJA, agrees to cooperate with BJA in any preparation by BJA of a national or program environmental assessment of that funded program or activity.

51. Establishment of trust fund

   If award funds are being drawn down in advance, the recipient (or a subrecipient, with respect to a subaward) is required to establish a trust fund account. Recipients (and subrecipients) must maintain advance payments of federal awards in interest-bearing accounts, unless regulatory exclusions apply (2 C.F.R. 200.305(b)(8)). The trust fund, including any interest, may not be used to pay debts or expenses incurred by other activities beyond the scope of the Edward Byrne Memorial Justice Assistance Grant Program (JAG). The recipient also agrees to obligate the award funds in the trust fund (including any interest earned) during the period of performance for the award and expend within 90 days thereafter. Any unobligated or unexpended funds, including interest earned, must be returned to OJP at the time of closeout.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE 20 OF 23

| PROJECT NUMBER | 2018-DJ-BX-0744 | AWARD DATE | 11/16/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

52. Prohibition on use of award funds for match under BVP program

JAG funds may not be used as the 50% match for purposes of the DOJ Bulletproof Vest Partnership (BVP) program.

53. Certification of body armor "mandatory wear" policies

The recipient agrees to submit a signed certification that all law enforcement agencies receiving body armor purchased with funds from this award have a written "mandatory wear" policy in effect. The recipient must keep signed certifications on file for any subrecipients planning to utilize funds from this award for ballistic-resistant and stab-resistant body armor purchases. This policy must be in place for at least all uniformed officers before any funds from this award may be used by an agency for body armor. There are no requirements regarding the nature of the policy other than it be a mandatory wear policy for all uniformed officers while on duty.

54. Body armor - compliance with NIJ standards and other requirements

Ballistic-resistant and stab-resistant body armor purchased with JAG award funds may be purchased at any threat level, make or model, from any distributor or manufacturer, as long as the body armor has been tested and found to comply with applicable National Institute of Justice ballistic or stab standards and is listed on the NIJ Compliant Body Armor Model List (https://nij.gov/topics/technology/body-armor/Pages/compliant-ballistic-armor.aspx). In addition, ballistic-resistant and stab-resistant body armor purchased must be made in the United States and must be uniquely fitted, as set forth in 34 U.S.C. 10202(c)(1)(A). The latest NIJ standard information can be found here: https:// nij.gov/ topics/ technology/ body-armor/ pages/ safety-initiative.aspx.

55. Reporting requirements

The recipient must submit quarterly Federal Financial Reports (SF-425) and semi-annual performance reports through OJP's GMS (https://grants.ojp.usdoj.gov). Consistent with the Department's responsibilities under the Government Performance and Results Act (GPRA) and the GPRA Modernization Act of 2010, the recipient must provide data that measure the results of its work. The recipient must submit quarterly performance metrics reports through BJA's Performance Measurement Tool (PMT) website (www.bjaperformancetools.org). For more detailed information on reporting and other JAG requirements, refer to the JAG reporting requirements webpage. Failure to submit required JAG reports by established deadlines may result in the freezing of grant funds and future High Risk designation.

56. Required data on law enforcement agency training

Any law enforcement agency receiving direct or sub-awarded funding from this JAG award must submit quarterly accountability metrics data related to training that officers have received on the use of force, racial and ethnic bias, de-escalation of conflict, and constructive engagement with the public.

57. Expenditures prohibited without waiver

No funds under this award may be expended on the purchase of items prohibited by the JAG program statute, unless, as set forth at 34 U.S.C. 10152, the BJA Director certifies that extraordinary and exigent circumstances exist, making such expenditures essential to the maintenance of public safety and good order.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE  21  OF  23

| PROJECT NUMBER | 2018-DJ-BX-0744 | AWARD DATE | 11/16/2018 |
| --- | --- | --- | --- |

*SPECIAL CONDITIONS*

58. Authorization to obligate (federal) award funds to reimburse certain project costs incurred on or after October 1, 2017

    The recipient may obligate (federal) award funds only after the recipient makes a valid acceptance of the award.  As of the first day of the period of performance for the award (October 1, 2017), however, the recipient may choose to incur project costs using non-federal funds, but any such project costs are incurred at the recipient's risk until, at a minimum-- (1) the recipient makes a valid acceptance of the award, and (2) all applicable withholding conditions are removed by OJP (via a Grant Adjustment Notice).  (A withholding condition is a condition in the award document that precludes the recipient from obligating, expending, or drawing down all or a portion of the award funds until the condition is removed.)

    Except to the extent (if any) that an award condition expressly precludes reimbursement of project costs incurred "at-risk," if and when the recipient makes a valid acceptance of this award and OJP removes each applicable withholding condition through a Grant Adjustment Notice, the recipient is authorized to obligate (federal) award funds to reimburse itself for project costs incurred "at-risk" earlier during the period of performance (such as project costs incurred prior to award acceptance or prior to removal of an applicable withholding condition), provided that those project costs otherwise are allowable costs under the award.

    Nothing in this condition shall be understood to authorize the recipient (or any subrecipient at any tier) to use award funds to "supplant" State or local funds in violation of the recipient's certification (executed by the chief executive of the State or local government) that federal funds will be used to increase the amounts of such funds that would, in the absence of federal funds, be made available for law enforcement activities.

59. Use of funds for DNA testing; upload of DNA profiles

    If award funds are used for DNA testing of evidentiary materials, any resulting eligible DNA profiles must be uploaded to the Combined DNA Index System ("CODIS," the DNA database operated by the FBI) by a government DNA laboratory with access to CODIS.

    No profiles generated under this award may be entered or uploaded into any non-governmental DNA database without prior express written approval from BJA.

    Award funds may not be used for the purchase of DNA equipment and supplies unless the resulting DNA profiles may be accepted for entry into CODIS.

60. Three percent set-aside for NIBRS compliance

    The recipient must ensure that at least 3 percent of the total amount of this award is dedicated to achieving full compliance with the FBI's National Incident-Based Reporting System (NIBRS), unless the FBI has certified that the recipient state is already NIBRS compliant, and evidence of this has been submitted to and approved by BJA.  The recipient will be required  by BJA to make revisions to budgets that do not clearly indicate what projects will be supported by this 3 percent set-aside, unless the evidence of NIBRS compliance has been submitted to and approved by BJA. (This condition does not apply to awards to the Commonwealth of Puerto Rico, the Northern Mariana Islands, the U.S. Virgin Islands, Guam, or American Samoa.)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE  22  OF  23

| PROJECT NUMBER | 2018-DJ-BX-0744 | AWARD DATE | 11/16/2018 |
| --- | --- | --- | --- |

*SPECIAL CONDITIONS*

61.  Encouragement of submission of "success stories"

BJA strongly encourages the recipient to submit annual (or more frequent) JAG success stories. To submit a success story, sign in to a My BJA account at https:/ / www.bja.gov/ Login.aspx to access the Success Story Submission form. If the recipient does not yet have a My BJA account, please register at https:/ / www.bja.gov/ profile.aspx. Once registered, one of the available areas on the My BJA page will be "My Success Stories." Within this box, there is an option to add a Success Story. Once reviewed and approved by BJA, all success stories will appear on the BJA Success Story web page at https:/ / www.bja.gov/ SuccessStoryList.aspx.

62.  Withholding of funds: Required certification from the chief executive of the applicant government

The recipient may not obligate, expend, or draw down any award funds until the recipient submits the required "Certifications and Assurances by the Chief Executive of the Applicant Government," properly-executed (as determined by OJP), and a Grant Adjustment Notice (GAN) has been issued to remove this condition.

63.  Recipient integrity and performance matters:  Requirement to report information on certain civil, criminal, and administrative proceedings to SAM and FAPIIS

The recipient must comply with any and all applicable requirements regarding reporting of information on civil, criminal, and administrative proceedings connected with (or connected to the performance of) either this OJP award or any other grant, cooperative agreement, or procurement contract from the federal government.  Under certain circumstances, recipients of OJP awards are required to report information about such proceedings, through the federal System for Award Management (known as "SAM"), to the designated federal integrity and performance system (currently, "FAPIIS").

The details of recipient obligations regarding the required reporting (and updating) of information on certain civil, criminal, and administrative proceedings to the federal designated integrity and performance system (currently, "FAPIIS") within SAM are posted on the OJP web site at https://ojp.gov/funding/FAPIIS.htm (Award condition: Recipient Integrity and Performance Matters, including Recipient Reporting to FAPIIS), and are incorporated by reference here.

64.  Withholding of funds: NIBRS set-aside

The recipient may not obligate, expend, or draw down any award funds until the recipient submits, and BJA reviews and accepts, a budget that clearly dedicates at least 3 percent of the total amount of the award to NIBRS compliance activities or documentation showing that the recipient has been certified as NIBRS compliant, and a Grant Adjustment Notice (GAN) has been issued to remove this condition.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE  23  OF  23

| PROJECT NUMBER | 2018-DJ-BX-0744 | AWARD DATE | 11/16/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

65. Withholding of funds:  Certification with respect to federal taxes

   The recipient may not obligate, expend, or draw down any funds under this award until it has submitted to the program manager, in a format acceptable to OJP, a formal written certification directed to OJP and executed by an official with authority to sign on behalf of the recipient, that the recipient-- (1) has filed all Federal tax returns required for the three tax years immediately preceding the tax year in which the certification is made; (2) has not been convicted of a criminal offense under the Internal Revenue Code of 1986; and (3) has not, more than 90 days prior to this certification, been notified of any unpaid federal tax assessment for which the liability remains unsatisfied, unless the assessment is the subject of an installment agreement or offer in compromise that has been approved by the Internal Revenue Service and is not in default, or the assessment is the subject of a non-frivolous administrative or judicial proceeding; and until a Grant Adjustment Notice (GAN) has been issued to remove this condition.

   The certification must be dated, and must indicate the full name and title of the signer, as well as the full legal name of the recipient.

66. Withholding of funds:  Budget narrative or information

   The recipient may not obligate, expend, or draw down any award funds until the recipient submits, and OJP reviews and accepts, the required budget information or narrative for the award, and a Grant Adjustment Notice (GAN) has been issued to remove this condition.

67. Withholding of funds: Disclosure of pending applications

   The recipient may not obligate, expend, or draw down any award funds until: (1) it has provided to the grant manager for this OJP award either an "applicant disclosure of pending applications" for federal funding or a specific affirmative statement that no such pending applications (whether direct or indirect) exist, in accordance with the detailed instructions in the program solicitation, (2) OJP has completed its review of the information provided and of any supplemental information it may request, (3) the recipient has made any adjustments to the award that OJP may require to prevent or eliminate any inappropriate duplication of funding (e.g., budget modification, project scope adjustment), (4) if appropriate adjustments to a discretionary award cannot be made, the recipient has agreed in writing to any necessary reduction of the award amount in any amount sufficient to prevent duplication (as determined by OJP), and (5) a Grant Adjustment Notice has been issued to remove this condition.

68. SORNA final agency decision - Appeals

   The recipient acknowledges the final agency decision made by DOJ that recipient's jurisdiction did not substantially implement the Sex Offender Registration and Notification Act (Public Law 109-248, "SORNA") before the deadline, and understands that, as a result of that final agency decision, the amount of this JAG award was reduced, pursuant to 34 U.S.C. 20927.  By accepting this specific award, the recipient voluntarily agrees that if it elects to file a judicial appeal of that final agency decision, which was integral in determining this particular funding amount, no such appeal may commence more than 6 months after the date of acceptance of this award.

69. Recipient may not obligate, expend or drawdown funds until the Bureau of Justice Assistance, Office of Justice Programs has received and approved the required application attachment(s) and has issued a Grant Adjustment Notice (GAN) releasing this special condition.



**U.S. Department of Justice**

Office of Justice Programs

*Bureau of Justice Assistance*

*Washington, D.C. 20531*

**Memorandum To:** Official Grant File

**From:** Orbin Terry, NEPA Coordinator

**Subject:** Incorporates NEPA Compliance in Further Developmental Stages for California Board of State and Community Corrections

The Edward Byrne Memorial Justice Assistance Grant Program (JAG) allows states and local governments to support a broad range of activities to prevent and control crime and to improve the criminal justice system, some of which could have environmental impacts. All recipients of JAG funding must assist BJA in complying with NEPA and other related federal environmental impact analyses requirements in the use of grant funds, whether the funds are used directly by the grantee or by a subgrantee or third party. Accordingly, prior to obligating funds for any of the specified activities, the grantee must first determine if any of the specified activities will be funded by the grant.

The specified activities requiring environmental analysis are:
a. New construction;
b. Any renovation or remodeling of a property located in an environmentally or historically sensitive area, including properties located within a 100-year flood plain, a wetland, or habitat for endangered species, or a property listed on or eligible for listing on the National Register of Historic Places;
c. A renovation, lease, or any proposed use of a building or facility that will either (a) result in a change in its basic prior use or (b) significantly change its size;
d. Implementation of a new program involving the use of chemicals other than chemicals that are (a) purchased as an incidental component of a funded activity and (b) traditionally used, for example, in office, household, recreational, or education environments; and
e. Implementation of a program relating to clandestine methamphetamine laboratory operations, including the identification, seizure, or closure of clandestine methamphetamine laboratories.

Complying with NEPA may require the preparation of an Environmental Assessment and/or an Environmental Impact Statement, as directed by BJA. Further, for programs relating to methamphetamine laboratory operations, the preparation of a detailed Mitigation Plan will be required. For more information about Mitigation Plan requirements, please see https://www.bja.gov/Funding/nepa.html.

Please be sure to carefully review the grant conditions on your award document, as it may contain more specific information about environmental compliance.



U.S. Department of Justice

Office of Justice Programs

Bureau of Justice Assistance

# GRANT MANAGER'S MEMORANDUM, PT. I: PROJECT SUMMARY

## Grant

| PROJECT NUMBER<br>2018-DJ-BX-0744 | PAGE 1 OF 1 |
|---|---|

This project is supported under FY18(BJA - JAG State & JAG Local) Title I of Pub. L. No. 90-351 (generally codified at 34 U.S.C. 10101 - 10726), including subpart I of part E (codified at 34 U.S.C. 10151 - 10158); see also 28 U.S.C. 530C(a)

| 1. STAFF CONTACT (Name & telephone number)<br><br>Linda Hill-Franklijn<br>(202) 514-0712 | 2. PROJECT DIRECTOR (Name, address & telephone number)<br><br>Daryle McDaniel<br>Field Representative<br>2590 Venture Oaks Way, Suite 200<br>2590 Venture Oaks Way, Suite 200<br>Sacramento, CA 95833-3288<br>(916) 341-7392 |
|---|---|

| 3a. TITLE OF THE PROGRAM<br><br>BJA FY 18 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - State Solicitation | 3b. POMS CODE (SEE INSTRUCTIONS ON REVERSE) |
|---|---|

4. TITLE OF PROJECT

    2018 JAG Program

| 5. NAME & ADDRESS OF GRANTEE<br><br>  California Board of State and Community Corrections<br>  2590 Venture Oaks Way, Ste. 200<br>  Sacramento, CA 95833-3288 | 6. NAME & ADRESS OF SUBGRANTEE |
|---|---|

| 7. PROGRAM PERIOD<br>  FROM:    10/01/2017    TO:  09/30/2021 | 8. BUDGET PERIOD<br>  FROM:    10/01/2017    TO:  09/30/2021 |
|---|---|

| 9. AMOUNT OF AWARD<br>  $ 18,056,180 | 10. DATE OF AWARD<br>  11/16/2018 |
|---|---|

| 11. SECOND YEAR'S BUDGET | 12. SECOND YEAR'S BUDGET AMOUNT |
|---|---|

| 13. THIRD YEAR'S BUDGET PERIOD | 14. THIRD YEAR'S BUDGET AMOUNT |
|---|---|

15. SUMMARY DESCRIPTION OF PROJECT (See instruction on reverse)

The Edward Byrne Memorial Justice Assistance Grant Program (JAG) allows states and units of local government, including tribes, to support a broad range of activities to prevent and control crime based on their own state and local needs and conditions. Grant funds can be used for state and local initiatives, technical assistance, training, personnel, equipment, supplies, contractual support, and information systems for criminal justice, including for any one or more of the following program areas: 1) law enforcement programs; 2) prosecution and court programs; 3) prevention and education programs; 4) corrections and community corrections programs; 5) drug treatment and enforcement programs; 6) planning, evaluation, and technology improvement programs; and 7) crime victim and witness programs (other than compensation) and 8) mental health programs and related law enforcement and corrections programs, including behavioral programs and crisis intervention teams.

This State JAG award will be used to support criminal justice initiatives that fall under one or more of the allowable program areas above. Funded programs or

OJP FORM 4000/2 (REV. 4-88)

initiatives may include multijurisdictional drug and gang task forces, crime prevention and domestic violence programs, courts, corrections, treatment, justice information sharing initiatives, or other programs aimed at reducing crime and enhancing public and officer safety.

NCA/NCF



**U.S. Department of Justice**

Office of Justice Programs

Office of the Assistant Attorney General                    *Washington, D.C. 20531*

November 16, 2018

The Honorable London N. Breed
City and County of San Francisco
1245 Third Street
San Francisco, CA 94158

Dear Mayor Breed:

On behalf of Attorney General Jefferson Sessions III, it is my pleasure to inform you that the Office of Justice Programs has approved your application for funding under the FY 18 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - Local Solicitation in the amount of $489,966 for City and County of San Francisco.

Enclosed you will find the Grant Award and Special Conditions documents. This award is subject to all administrative and financial requirements, including the timely submission of all financial and programmatic reports, resolution of all interim audit findings, and the maintenance of a minimum level of cash-on-hand. Should you not adhere to these requirements, you will be in violation of the terms of this agreement and the award will be subject to termination for cause or other administrative action as appropriate.

If you have questions regarding this award, please contact:

- Program Questions, Linda Hill-Franklin, Program Manager at (202) 514-0712; and

- Financial Questions, the Office of the Chief Financial Officer, Customer Service Center (CSC) at (800) 458-0786, or you may contact the CSC at ask.ocfo@usdoj.gov.

Congratulations, and we look forward to working with you.

Sincerely,

Matt Dummermuth
Principal Deputy Assistant Attorney General

Enclosures

**Exhibit F**



# OFFICE FOR CIVIL RIGHTS

Office of Justice Programs

U.S. Department of Justice

810 7th Street, NW
Washington, DC 20531

Tel: (202) 307-0690
TTY: (202) 307-2027
E-mail: askOCR@usdoj.gov
Website: www.ojp.usdoj.gov/ocr

---

**OCR Letter to All Recipients**

November 16, 2018

The Honorable London N. Breed
City and County of San Francisco
1245 Third Street
San Francisco, CA 94158

Dear Mayor Breed:

Congratulations on your recent award. In establishing financial assistance programs, Congress linked the receipt of federal funding to compliance with federal civil rights laws. The Office for Civil Rights (OCR), Office of Justice Programs (OJP), U.S. Department of Justice (DOJ) is responsible for ensuring that recipients of financial assistance from the OJP, the Office of Community Oriented Policing Services (COPS), and the Office on Violence Against Women (OVW) comply with the applicable federal civil rights laws. We at the OCR are available to help you and your organization meet the civil rights requirements that come with DOJ funding.

**Ensuring Access to Federally Assisted Programs**

Federal laws that apply to recipients of financial assistance from the DOJ prohibit discrimination on the basis of race, color, national origin, religion, sex, or disability in funded programs or activities, not only in employment but also in the delivery of services or benefits. A federal law also prohibits recipients from discriminating on the basis of age in the delivery of services or benefits.

In March of 2013, President Obama signed the Violence Against Women Reauthorization Act of 2013. The statute amends the Violence Against Women Act of 1994 (VAWA) by including a nondiscrimination grant condition that prohibits discrimination based on actual or perceived race, color, national origin, religion, sex, disability, sexual orientation, or gender identity. The new nondiscrimination grant condition applies to certain programs funded after October 1, 2013. The OCR and the OVW have developed answers to some frequently asked questions about this provision to assist recipients of VAWA funds to understand their obligations. The Frequently Asked Questions are available at https://ojp.gov/about/ocr/vawafaqs.htm.

**Enforcing Civil Rights Laws**

All recipients of federal financial assistance, regardless of the particular funding source, the amount of the grant award, or the number of employees in the workforce, are subject to prohibitions against unlawful discrimination. Accordingly, the OCR investigates recipients that are the subject of discrimination complaints from both individuals and groups. In addition, based on regulatory criteria, the OCR selects a number of recipients each year for compliance reviews, audits that require recipients to submit data showing that they are providing services equitably to all segments of their service population and that their employment practices meet equal opportunity standards.

**Providing Services to Limited English Proficiency (LEP) Individuals**

In accordance with DOJ guidance pertaining to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, recipients of federal financial assistance must take reasonable steps to provide meaningful access to their programs and activities for persons with limited English proficiency (LEP). See U.S. Department of Justice, Guidance to Federal Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin Discrimination Affecting Limited English Proficient Persons, 67 Fed. Reg. 41,455 (2002). For more information on the civil rights responsibilities that recipients have in providing language services to LEP individuals, please see the website https://www.lep.gov.

**Ensuring Equal Treatment of Faith-Based Organizations and Safeguarding Constitutional Protections Related to Religion**

The DOJ regulation, Partnerships with Faith-Based and Other Neighborhood Organizations, 28 C.F.R. pt. 38, updated in April 2016, prohibits all recipient organizations, whether they are law enforcement agencies, governmental agencies, educational institutions, houses of worship, or faith-based organizations, from using financial assistance from the DOJ to fund explicitly religious activities. Explicitly religious activities include worship, religious instruction, or proselytization. While funded organizations may engage in non-funded explicitly religious activities (e.g., prayer), they must hold them separately from the activities funded by the DOJ, and recipients cannot compel beneficiaries to participate in them. The regulation also makes clear that organizations participating in programs funded by the DOJ are not permitted to discriminate in the provision of services on the basis of a beneficiary's religion, religious belief, a refusal to hold a religious belief, or a refusal to attend or participate in a religious practice. Funded faith-based organizations must also provide written notice to beneficiaries, advising them that if they should object to the religious character of the funded faith based organization, the funded faith-based organization will take reasonable steps to refer the beneficiary to an alternative service provider. For more information on the regulation, please see the OCR's website at https://ojp.gov/about/ocr/partnerships.htm.

SAAs and faith-based organizations should also note that the Omnibus Crime Control and Safe Streets Act (Safe Streets Act) of 1968, as amended, 34 U.S.C. § 10228(c); the Victims of Crime Act of 1984, as amended, 34 U.S.C. § 20110(e); the Juvenile Justice and Delinquency Prevention Act of 1974, as amended, 34 U.S.C. § 11182(b); and VAWA, as amended,
34 U.S.C. § 12291(b)(13), contain prohibitions against discrimination on the basis of religion in employment. Despite these nondiscrimination provisions, the DOJ has concluded that it may construe the Religious Freedom Restoration Act (RFRA) on a case-by-case basis to permit some faith-based organizations to receive DOJ funds while taking into account religion when hiring staff, even if the statute that authorizes the funding program generally forbids recipients from considering religion in employment decisions. Please consult with the OCR if you have any questions about the regulation or the application of RFRA to the statutes that prohibit discrimination in employment.

**Using Arrest and Conviction Records in Making Employment Decisions**

The OCR issued an advisory document for recipients on the proper use of arrest and conviction records in making hiring decisions. See Advisory for Recipients of Financial Assistance from the U.S. Department of Justice on the U.S. Equal Employment Opportunity Commission's Enforcement Guidance: *Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of 1964 (June 2013)*, available at https://ojp.gov/about/ocr/pdfs/UseofConviction_Advisory.pdf. Recipients should be mindful that the misuse of arrest or conviction records to screen either applicants for employment or employees for retention or promotion may have a disparate impact based on race or national origin, resulting in unlawful employment discrimination. In light of the Advisory, recipients should consult local counsel in reviewing their employment practices. If warranted, recipients should also incorporate an analysis of the use of arrest and conviction records in their Equal Employment Opportunity Plans (EEOPs) (see below).

**Complying with the Safe Streets Act**

An organization that is a recipient of financial assistance subject to the nondiscrimination provisions of the Safe Streets Act, must meet two obligations: (1) complying with the federal regulation pertaining to the development of an EEOP (see 28 C.F.R. pt. 42, subpt. E) and (2) submitting to the OCR findings of discrimination (see 28 C.F.R. §§ 42.204(c), .205(c)(5)).

**Meeting the EEOP Requirement**

An EEOP is a comprehensive document that analyzes a recipient's relevant labor market data, as well as the recipient's employment practices, to identify possible barriers to the participation of women and minorities in all levels of a recipient's workforce. As a recipient of DOJ funding, you may be required to submit an EEOP Certification Report or an EEOP Utilization Report to the OCR. For more information on whether your organization is subject to the EEOP requirements, see https://ojp.gov/about/ocr/eeop.htm. Additionally, you may request technical assistance from an EEOP specialist at the OCR by telephone at (202) 616-1771 or by e-mail at EEOPforms@usdoj.gov.

**Meeting the Requirement to Submit Findings of Discrimination**

If in the three years prior to the date of the grant award, your organization has received an adverse finding of discrimination based on race, color, national origin, religion, or sex, after a due-process hearing, from a state or federal court or from a state or federal administrative agency, your organization must send a copy of the finding to the OCR.

**Ensuring the Compliance of Subrecipients**

SAAs must have standard assurances to notify subrecipients of their civil rights obligations, written procedures to address discrimination complaints filed against subrecipients, methods to monitor subrecipients' compliance with civil rights requirements, and a program to train subrecipients on applicable civil rights laws. In addition, SAAs must submit to the OCR every three years written Methods of Administration (MOA) that summarize the policies and procedures that they have implemented to ensure the civil rights compliance of subrecipients. For more information on the MOA requirement, see https://ojp.gov/funding/Explore/StateMethodsAdmin-FY2017update.htm.

If the OCR can assist you in any way in fulfilling your organization's civil rights responsibilities as a recipient of federal financial assistance, please contact us.

Sincerely,

Michael L. Alston
Director

cc: Grant Manager
Financial Analyst

U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**Grant**

| | |
|---|---|
| 1. RECIPIENT NAME AND ADDRESS (Including Zip Code)<br><br>City and County of San Francisco<br>1245 Third Street<br>San Francisco, CA 94158 | 4. AWARD NUMBER: 2018-DJ-BX-0658 |
| | 5. PROJECT PERIOD: FROM 10/01/2017 TO 09/30/2021<br><br>BUDGET PERIOD: FROM 10/01/2017 TO 09/30/2021 |
| | 6. AWARD DATE 11/16/2018    7. ACTION |
| 2a. GRANTEE IRS/VENDOR NO.<br>946000484 | 8. SUPPLEMENT NUMBER<br>00    Initial |
| 2b. GRANTEE DUNS NO.<br>070384255 | 9. PREVIOUS AWARD AMOUNT                $ 0 |
| 3. PROJECT TITLE<br>FY 18 Local JAG Program | 10. AMOUNT OF THIS AWARD           $ 489,966 |
| | 11. TOTAL AWARD                          $ 489,966 |

12. SPECIAL CONDITIONS

THE ABOVE GRANT PROJECT IS APPROVED SUBJECT TO SUCH CONDITIONS OR LIMITATIONS AS ARE SET FORTH
ON THE ATTACHED PAGE(S).

13. STATUTORY AUTHORITY FOR GRANT

This project is supported under FY18(BJA - JAG State & JAG Local) Title I of Pub. L. No. 90-351 (generally codified at 34 U.S.C. 10101 - 10726), including
subpart I of part E (codified at 34 U.S.C. 10151 - 10158); see also 28 U.S.C. 530C(a)

14 . CATALOG OF DOMESTIC FEDERAL ASSISTANCE (CFDA Number)

16.738 - Edward Byrne Memorial Justice Assistance Grant Program

15. METHOD OF PAYMENT

GPRS

**AGENCY APPROVAL**

16. TYPED NAME AND TITLE OF APPROVING OFFICIAL

Matt Dummermuth

Principal Deputy Assistant Attorney General

17. SIGNATURE OF APPROVING OFFICIAL

*Matt Dummermuth*

**GRANTEE ACCEPTANCE**

18. TYPED NAME AND TITLE OF AUTHORIZED GRANTEE OFFICIAL

London N. Breed
Mayor

19. SIGNATURE OF AUTHORIZED RECIPIENT OFFICIAL    19A. DATE

**AGENCY USE ONLY**

20. ACCOUNTING CLASSIFICATION CODES

| FISCAL<br>YEAR | FUND<br>CODE | BUD.<br>ACT. | OFC. | DIV.<br>REG. | SUB. | POMS | AMOUNT |
|---|---|---|---|---|---|---|---|
| X | B | DJ | 80 | 00 | 00 | | 489966 |

21. TDJUGT0658

OJP FORM 4000/2 (REV. 5-87) PREVIOUS EDITIONS ARE OBSOLETE.

OJP FORM 4000/2 (REV. 4-88)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE 2 OF 22

| PROJECT NUMBER | 2018-DJ-BX-0658 | AWARD DATE | 11/16/2018 |

*SPECIAL CONDITIONS*

1. Requirements of the award; remedies for non-compliance or for materially false statements

    The conditions of this award are material requirements of the award. Compliance with any certifications or assurances submitted by or on behalf of the recipient that relate to conduct during the period of performance also is a material requirement of this award.

    Failure to comply with any one or more of these award requirements -- whether a condition set out in full below, a condition incorporated by reference below, or a certification or assurance related to conduct during the award period -- may result in the Office of Justice Programs ("OJP") taking appropriate action with respect to the recipient and the award. Among other things, the OJP may withhold award funds, disallow costs, or suspend or terminate the award. The Department of Justice ("DOJ"), including OJP, also may take other legal action as appropriate.

    Any materially false, fictitious, or fraudulent statement to the federal government related to this award (or concealment or omission of a material fact) may be the subject of criminal prosecution (including under 18 U.S.C. 1001 and/or 1621, and/or 34 U.S.C. 10271-10273), and also may lead to imposition of civil penalties and administrative remedies for false claims or otherwise (including under 31 U.S.C. 3729-3730 and 3801-3812).

    Should any provision of a requirement of this award be held to be invalid or unenforceable by its terms, that provision shall first be applied with a limited construction so as to give it the maximum effect permitted by law. Should it be held, instead, that the provision is utterly invalid or -unenforceable, such provision shall be deemed severable from this award.

2. Applicability of Part 200 Uniform Requirements

    The Uniform Administrative Requirements, Cost Principles, and Audit Requirements in 2 C.F.R. Part 200, as adopted and supplemented by DOJ in 2 C.F.R. Part 2800 (together, the "Part 200 Uniform Requirements") apply to this FY 2018 award from OJP.

    The Part 200 Uniform Requirements were first adopted by DOJ on December 26, 2014. If this FY 2018 award supplements funds previously awarded by OJP under the same award number (e.g., funds awarded during or before December 2014), the Part 200 Uniform Requirements apply with respect to all funds under that award number (regardless of the award date, and regardless of whether derived from the initial award or a supplemental award) that are obligated on or after the acceptance date of this FY 2018 award.

    For more information and resources on the Part 200 Uniform Requirements as they relate to OJP awards and subawards ("subgrants"), see the OJP website at https://ojp.gov/funding/Part200UniformRequirements.htm.

    Record retention and access: Records pertinent to the award that the recipient (and any subrecipient ("subgrantee") at any tier) must retain -- typically for a period of 3 years from the date of submission of the final expenditure report (SF 425), unless a different retention period applies -- and to which the recipient (and any subrecipient ("subgrantee") at any tier) must provide access, include performance measurement information, in addition to the financial records, supporting documents, statistical records, and other pertinent records indicated at 2 C.F.R. 200.333.

    In the event that an award-related question arises from documents or other materials prepared or distributed by OJP that may appear to conflict with, or differ in some way from, the provisions of the Part 200 Uniform Requirements, the recipient is to contact OJP promptly for clarification.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE 3 OF 22

| PROJECT NUMBER | 2018-DJ-BX-0658 | AWARD DATE | 11/16/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

3. Compliance with DOJ Grants Financial Guide

   References to the DOJ Grants Financial Guide are to the DOJ Grants Financial Guide as posted on the OJP website (currently, the "DOJ Grants Financial Guide" available at https://ojp.gov/financialguide/DOJ/index.htm), including any updated version that may be posted during the period of performance. The recipient agrees to comply with the DOJ Grants Financial Guide.

4. Reclassification of various statutory provisions to a new Title 34 of the United States Code

   On September 1, 2017, various statutory provisions previously codified elsewhere in the U.S. Code were editorially reclassified to a new Title 34, entitled "Crime Control and Law Enforcement." The reclassification encompassed a number of statutory provisions pertinent to OJP awards (that is, OJP grants and cooperative agreements), including many provisions previously codified in Title 42 of the U.S. Code.

   Effective as of September 1, 2017, any reference in this award document to a statutory provision that has been reclassified to the new Title 34 of the U.S. Code is to be read as a reference to that statutory provision as reclassified to Title 34. This rule of construction specifically includes references set out in award conditions, references set out in material incorporated by reference through award conditions, and references set out in other award requirements.

5. Required training for Point of Contact and all Financial Points of Contact

   Both the Point of Contact (POC) and all Financial Points of Contact (FPOCs) for this award must have successfully completed an "OJP financial management and grant administration training" by 120 days after the date of the recipient's acceptance of the award. Successful completion of such a training on or after January 1, 2016, will satisfy this condition.

   In the event that either the POC or an FPOC for this award changes during the period of performance, the new POC or FPOC must have successfully completed an "OJP financial management and grant administration training" by 120 calendar days after-- (1) the date of OJP's approval of the "Change Grantee Contact" GAN (in the case of a new POC), or (2) the date the POC enters information on the new FPOC in GMS (in the case of a new FPOC). Successful completion of such a training on or after January 1, 2016, will satisfy this condition.

   A list of OJP trainings that OJP will consider "OJP financial management and grant administration training" for purposes of this condition is available at https://www.ojp.gov/training/fmts.htm. All trainings that satisfy this condition include a session on grant fraud prevention and detection.

   The recipient should anticipate that OJP will immediately withhold ("freeze") award funds if the recipient fails to comply with this condition. The recipient's failure to comply also may lead OJP to impose additional appropriate conditions on this award.

6. Requirements related to "de minimis" indirect cost rate

   A recipient that is eligible under the Part 200 Uniform Requirements and other applicable law to use the "de minimis" indirect cost rate described in 2 C.F.R. 200.414(f), and that elects to use the "de minimis" indirect cost rate, must advise OJP in writing of both its eligibility and its election, and must comply with all associated requirements in the Part 200 Uniform Requirements. The "de minimis" rate may be applied only to modified total direct costs (MTDC) as defined by the Part 200 Uniform Requirements.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE   4   OF  22

| PROJECT NUMBER | 2018-DJ-BX-0658 | AWARD DATE | 11/16/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

7. Requirement to report potentially duplicative funding

If the recipient currently has other active awards of federal funds, or if the recipient receives any other award of federal funds during the period of performance for this award, the recipient promptly must determine whether funds from any of those other federal awards have been, are being, or are to be used (in whole or in part) for one or more of the identical cost items for which funds are provided under this award. If so, the recipient must promptly notify the DOJ awarding agency (OJP or OVW, as appropriate) in writing of the potential duplication, and, if so requested by the DOJ awarding agency, must seek a budget-modification or change-of-project-scope grant adjustment notice (GAN) to eliminate any inappropriate duplication of funding.

8. Requirements related to System for Award Management and Universal Identifier Requirements

The recipient must comply with applicable requirements regarding the System for Award Management (SAM), currently accessible at https://www.sam.gov/. This includes applicable requirements regarding registration with SAM, as well as maintaining the currency of information in SAM.

The recipient also must comply with applicable restrictions on subawards ("subgrants") to first-tier subrecipients (first-tier "subgrantees"), including restrictions on subawards to entities that do not acquire and provide (to the recipient) the unique entity identifier required for SAM registration.

The details of the recipient's obligations related to SAM and to unique entity identifiers are posted on the OJP web site at https://ojp.gov/funding/Explore/SAM.htm (Award condition: System for Award Management (SAM) and Universal Identifier Requirements), and are incorporated by reference here.

This condition does not apply to an award to an individual who received the award as a natural person (i.e., unrelated to any business or non-profit organization that he or she may own or operate in his or her name).

9. Requirement to report actual or imminent breach of personally identifiable information (PII)

The recipient (and any "subrecipient" at any tier) must have written procedures in place to respond in the event of an actual or imminent "breach" (OMB M-17-12) if it (or a subrecipient)-- 1) creates, collects, uses, processes, stores, maintains, disseminates, discloses, or disposes of "personally identifiable information (PII)" (2 CFR 200.79) within the scope of an OJP grant-funded program or activity, or 2) uses or operates a "Federal information system" (OMB Circular A-130). The recipient's breach procedures must include a requirement to report actual or imminent breach of PII to an OJP Program Manager no later than 24 hours after an occurrence of an actual breach, or the detection of an imminent breach.

10. All subawards ("subgrants") must have specific federal authorization

The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements for authorization of any subaward. This condition applies to agreements that -- for purposes of federal grants administrative requirements -- OJP considers a "subaward" (and therefore does not consider a procurement "contract").

The details of the requirement for authorization of any subaward are posted on the OJP web site at https://ojp.gov/funding/Explore/SubawardAuthorization.htm (Award condition: All subawards ("subgrants") must have specific federal authorization), and are incorporated by reference here.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

| PROJECT NUMBER | 2018-DJ-BX-0658 | AWARD DATE | 11/16/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

11. Specific post-award approval required to use a noncompetitive approach in any procurement contract that would exceed $150,000

    The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements to obtain specific advance approval to use a noncompetitive approach in any procurement contract that would exceed the Simplified Acquisition Threshold (currently, $150,000). This condition applies to agreements that -- for purposes of federal grants administrative requirements -- OJP considers a procurement "contract" (and therefore does not consider a subaward).

    The details of the requirement for advance approval to use a noncompetitive approach in a procurement contract under an OJP award are posted on the OJP web site at https://ojp.gov/funding/Explore/NoncompetitiveProcurement.htm (Award condition: Specific post-award approval required to use a noncompetitive approach in a procurement contract (if contract would exceed $150,000)), and are incorporated by reference here.

12. Requirements pertaining to prohibited conduct related to trafficking in persons (including reporting requirements and OJP authority to terminate award)

    The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements (including requirements to report allegations) pertaining to prohibited conduct related to the trafficking of persons, whether on the part of recipients, subrecipients ("subgrantees"), or individuals defined (for purposes of this condition) as "employees" of the recipient or of any subrecipient.

    The details of the recipient's obligations related to prohibited conduct related to trafficking in persons are posted on the OJP web site at https://ojp.gov/funding/Explore/ProhibitedConduct-Trafficking.htm (Award condition: Prohibited conduct by recipients and subrecipients related to trafficking in persons (including reporting requirements and OJP authority to terminate award)), and are incorporated by reference here.

13. Compliance with applicable rules regarding approval, planning, and reporting of conferences, meetings, trainings, and other events

    The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable laws, regulations, policies, and official DOJ guidance (including specific cost limits, prior approval and reporting requirements, where applicable) governing the use of federal funds for expenses related to conferences (as that term is defined by DOJ), including the provision of food and/or beverages at such conferences, and costs of attendance at such conferences.

    Information on the pertinent DOJ definition of conferences and the rules applicable to this award appears in the DOJ Grants Financial Guide (currently, as section 3.10 of "Postaward Requirements" in the "DOJ Grants Financial Guide").

14. Requirement for data on performance and effectiveness under the award

    The recipient must collect and maintain data that measure the performance and effectiveness of work under this award. The data must be provided to OJP in the manner (including within the timeframes) specified by OJP in the program solicitation or other applicable written guidance. Data collection supports compliance with the Government Performance and Results Act (GPRA) and the GPRA Modernization Act of 2010, and other applicable laws.

15. OJP Training Guiding Principles

    Any training or training materials that the recipient -- or any subrecipient ("subgrantee") at any tier -- develops or delivers with OJP award funds must adhere to the OJP Training Guiding Principles for Grantees and Subgrantees, available at https://ojp.gov/funding/Implement/TrainingPrinciplesForGrantees-Subgrantees.htm.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE  6  OF  22

| PROJECT NUMBER | 2018-DJ-BX-0658 | AWARD DATE | 11/16/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

16. Effect of failure to address audit issues

    The recipient understands and agrees that the DOJ awarding agency (OJP or OVW, as appropriate) may withhold award funds, or may impose other related requirements, if (as determined by the DOJ awarding agency) the recipient does not satisfactorily and promptly address outstanding issues from audits required by the Part 200 Uniform Requirements (or by the terms of this award), or other outstanding issues that arise in connection with audits, investigations, or reviews of DOJ awards.

17. Potential imposition of additional requirements

    The recipient agrees to comply with any additional requirements that may be imposed by the DOJ awarding agency (OJP or OVW, as appropriate) during the period of performance for this award, if the recipient is designated as "high-risk" for purposes of the DOJ high-risk grantee list.

18. Compliance with DOJ regulations pertaining to civil rights and nondiscrimination - 28 C.F.R. Part 42

    The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements of 28 C.F.R. Part 42, specifically including any applicable requirements in Subpart E of 28 C.F.R. Part 42 that relate to an equal employment opportunity program.

19. Compliance with DOJ regulations pertaining to civil rights and nondiscrimination - 28 C.F.R. Part 54

    The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements of 28 C.F.R. Part 54, which relates to nondiscrimination on the basis of sex in certain "education programs."

20. Compliance with DOJ regulations pertaining to civil rights and nondiscrimination - 28 C.F.R. Part 38

    The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable requirements of 28 C.F.R. Part 38, specifically including any applicable requirements regarding written notice to program beneficiaries and prospective program beneficiaries.

    Among other things, 28 C.F.R. Part 38 includes rules that prohibit specific forms of discrimination on the basis of religion, a religious belief, a refusal to hold a religious belief, or refusal to attend or participate in a religious practice. Part 38 also sets out rules and requirements that pertain to recipient and subrecipient ("subgrantee") organizations that engage in or conduct explicitly religious activities, as well as rules and requirements that pertain to recipients and subrecipients that are faith-based or religious organizations.

    The text of the regulation, now entitled "Partnerships with Faith-Based and Other Neighborhood Organizations," is available via the Electronic Code of Federal Regulations (currently accessible at https://www.ecfr.gov/cgi-bin/ECFR?page=browse), by browsing to Title 28-Judicial Administration, Chapter 1, Part 38, under e-CFR "current" data.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

nonePAGE 7 OF 22

PROJECT NUMBER   2018-DJ-BX-0658          AWARD DATE   11/16/2018

*SPECIAL CONDITIONS*

21. Restrictions on "lobbying"

In general, as a matter of federal law, federal funds awarded by OJP may not be used by the recipient, or any subrecipient ("subgrantee") at any tier, either directly or indirectly, to support or oppose the enactment, repeal, modification, or adoption of any law, regulation, or policy, at any level of government. See 18 U.S.C. 1913. (There may be exceptions if an applicable federal statute specifically authorizes certain activities that otherwise would be barred by law.)

Another federal law generally prohibits federal funds awarded by OJP from being used by the recipient, or any subrecipient at any tier, to pay any person to influence (or attempt to influence) a federal agency, a Member of Congress, or Congress (or an official or employee of any of them) with respect to the awarding of a federal grant or cooperative agreement, subgrant, contract, subcontract, or loan, or with respect to actions such as renewing, extending, or modifying any such award. See 31 U.S.C. 1352. Certain exceptions to this law apply, including an exception that applies to Indian tribes and tribal organizations.

Should any question arise as to whether a particular use of federal funds by a recipient (or subrecipient) would or might fall within the scope of these prohibitions, the recipient is to contact OJP for guidance, and may not proceed without the express prior written approval of OJP.

22. Compliance with general appropriations-law restrictions on the use of federal funds (FY 2018)

The recipient, and any subrecipient ("subgrantee") at any tier, must comply with all applicable restrictions on the use of federal funds set out in federal appropriations statutes. Pertinent restrictions, including from various "general provisions" in the Consolidated Appropriations Act, 2018, are set out at https://ojp.gov/funding/Explore/FY18AppropriationsRestrictions.htm, and are incorporated by reference here.

Should a question arise as to whether a particular use of federal funds by a recipient (or a subrecipient) would or might fall within the scope of an appropriations-law restriction, the recipient is to contact OJP for guidance, and may not proceed without the express prior written approval of OJP.

23. Reporting Potential Fraud, Waste, and Abuse, and Similar Misconduct

The recipient and any subrecipients ("subgrantees") must promptly refer to the DOJ Office of the Inspector General (OIG) any credible evidence that a principal, employee, agent, subrecipient, contractor, subcontractor, or other person has, in connection with funds under this award -- (1) submitted a claim that violates the False Claims Act; or (2) committed a criminal or civil violation of laws pertaining to fraud, conflict of interest, bribery, gratuity, or similar misconduct.

Potential fraud, waste, abuse, or misconduct involving or relating to funds under this award should be reported to the OIG by-- (1) mail directed to: Office of the Inspector General, U.S. Department of Justice, Investigations Division, 1425 New York Avenue, N.W. Suite 7100, Washington, DC 20530; and/or (2) the DOJ OIG hotline: (contact information in English and Spanish) at (800) 869-4499 (phone) or (202) 616-9881 (fax).

Additional information is available from the DOJ OIG website at https://oig.justice.gov/hotline.

OJP FORM 4000/2 (REV. 4-88)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE 8 OF 22

| PROJECT NUMBER | 2018-DJ-BX-0658 | AWARD DATE | 11/16/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

24. Restrictions and certifications regarding non-disclosure agreements and related matters

No recipient or subrecipient ("subgrantee") under this award, or entity that receives a procurement contract or subcontract with any funds under this award, may require any employee or contractor to sign an internal confidentiality agreement or statement that prohibits or otherwise restricts, or purports to prohibit or restrict, the reporting (in accordance with law) of waste, fraud, or abuse to an investigative or law enforcement representative of a federal department or agency authorized to receive such information.

The foregoing is not intended, and shall not be understood by the agency making this award, to contravene requirements applicable to Standard Form 312 (which relates to classified information), Form 4414 (which relates to sensitive compartmented information), or any other form issued by a federal department or agency governing the nondisclosure of classified information.

1. In accepting this award, the recipient--

a. represents that it neither requires nor has required internal confidentiality agreements or statements from employees or contractors that currently prohibit or otherwise currently restrict (or purport to prohibit or restrict) employees or contractors from reporting waste, fraud, or abuse as described above; and

b. certifies that, if it learns or is notified that it is or has been requiring its employees or contractors to execute agreements or statements that prohibit or otherwise restrict (or purport to prohibit or restrict), reporting of waste, fraud, or abuse as described above, it will immediately stop any further obligations of award funds, will provide prompt written notification to the federal agency making this award, and will resume (or permit resumption of) such obligations only if expressly authorized to do so by that agency.

2. If the recipient does or is authorized under this award to make subawards ("subgrants"), procurement contracts, or both--

a. it represents that--

(1) it has determined that no other entity that the recipient's application proposes may or will receive award funds (whether through a subaward ("subgrant"), procurement contract, or subcontract under a procurement contract) either requires or has required internal confidentiality agreements or statements from employees or contractors that currently prohibit or otherwise currently restrict (or purport to prohibit or restrict) employees or contractors from reporting waste, fraud, or abuse as described above; and

(2) it has made appropriate inquiry, or otherwise has an adequate factual basis, to support this representation; and

b. it certifies that, if it learns or is notified that any subrecipient, contractor, or subcontractor entity that receives funds under this award is or has been requiring its employees or contractors to execute agreements or statements that prohibit or otherwise restrict (or purport to prohibit or restrict), reporting of waste, fraud, or abuse as described above, it will immediately stop any further obligations of award funds to or by that entity, will provide prompt written notification to the federal agency making this award, and will resume (or permit resumption of) such obligations only if expressly authorized to do so by that agency.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE  9  OF  22

PROJECT NUMBER      2018-DJ-BX-0658                   AWARD DATE      11/16/2018

*SPECIAL CONDITIONS*

25. Compliance with 41 U.S.C. 4712 (including prohibitions on reprisal; notice to employees)

   The recipient (and any subrecipient at any tier) must comply with, and is subject to, all applicable provisions of 41
   U.S.C. 4712, including all applicable provisions that prohibit, under specified circumstances, discrimination against an
   employee as reprisal for the employee's disclosure of information related to gross mismanagement of a federal grant, a
   gross waste of federal funds, an abuse of authority relating to a federal grant, a substantial and specific danger to public
   health or safety, or a violation of law, rule, or regulation related to a federal grant.

   The recipient also must inform its employees, in writing (and in the predominant native language of the workforce), of
   employee rights and remedies under 41 U.S.C. 4712.

   Should a question arise as to the applicability of the provisions of 41 U.S.C. 4712 to this award, the recipient is to
   contact the DOJ awarding agency (OJP or OVW, as appropriate) for guidance.

26. Encouragement of policies to ban text messaging while driving

   Pursuant to Executive Order 13513, "Federal Leadership on Reducing Text Messaging While Driving," 74 Fed. Reg.
   51225 (October 1, 2009), DOJ encourages recipients and subrecipients ("subgrantees") to adopt and enforce policies
   banning employees from text messaging while driving any vehicle during the course of performing work funded by this
   award, and to establish workplace safety policies and conduct education, awareness, and other outreach to decrease
   crashes caused by distracted drivers.

27. Requirement to disclose whether recipient is designated "high risk" by a federal grant-making agency outside of DOJ

   If the recipient is designated "high risk" by a federal grant-making agency outside of DOJ, currently or at any time
   during the course of the period of performance under this award, the recipient must disclose that fact and certain related
   information to OJP by email at OJP.ComplianceReporting@ojp.usdoj.gov.  For purposes of this disclosure, high risk
   includes any status under which a federal awarding agency provides additional oversight due to the recipient's past
   performance, or other programmatic or financial concerns with the recipient. The recipient's disclosure must include
   the following: 1. The federal awarding agency that currently designates the recipient high risk, 2. The date the recipient
   was designated high risk, 3. The high-risk point of contact at that federal awarding agency (name, phone number, and
   email address), and 4. The reasons for the high-risk status, as set out by the federal awarding agency.

28. Cooperating with OJP Monitoring

   The recipient agrees to cooperate with OJP monitoring of this award pursuant to OJP's guidelines, protocols, and
   procedures, and to cooperate with OJP (including the grant manager for this award and the Office of Chief Financial
   Officer (OCFO)) requests related to such monitoring, including requests related to desk reviews and/or site visits.  The
   recipient agrees to provide to OJP all documentation necessary for OJP to complete its monitoring tasks, including
   documentation related to any subawards made under this award.  Further, the recipient agrees to abide by reasonable
   deadlines set by OJP for providing the requested documents.  Failure to cooperate with OJP's monitoring activities may
   result in actions that affect the recipient's DOJ awards, including, but not limited to: withholdings and/or other
   restrictions on the recipient's access to award funds; referral to the DOJ OIG for audit review; designation of the
   recipient as a DOJ High Risk grantee; or termination of an award(s).



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE  10  OF  22

| PROJECT NUMBER | 2018-DJ-BX-0658 | AWARD DATE | 11/16/2018 |
| --- | --- | --- | --- |

*SPECIAL CONDITIONS*

29. FFATA reporting:  Subawards and executive compensation

    The recipient must comply with applicable requirements to report first-tier subawards ("subgrants") of $25,000 or
    more and, in certain circumstances, to report the names and total compensation of the five most highly compensated
    executives of the recipient and first-tier subrecipients (first-tier "subgrantees") of award funds.  The details of recipient
    obligations, which derive from the Federal Funding Accountability and Transparency Act of 2006 (FFATA), are posted
    on the OJP web site at https://ojp.gov/funding/Explore/FFATA.htm (Award condition: Reporting Subawards and
    Executive Compensation), and are incorporated by reference here.

    This condition, including its reporting requirement, does not apply to-- (1) an award of less than $25,000, or (2) an
    award made to an individual who received the award as a natural person (i.e., unrelated to any business or non-profit
    organization that he or she may own or operate in his or her name).

30. Required monitoring of subawards

    The recipient must monitor subawards under this award in accordance with all applicable statutes, regulations, award
    conditions, and the DOJ Grants Financial Guide, and must include the applicable conditions of this award in any
    subaward. Among other things, the recipient is responsible for oversight of subrecipient spending and monitoring of
    specific outcomes and benefits attributable to use of award funds by subrecipients. The recipient agrees to submit, upon
    request, documentation of its policies and procedures for monitoring of subawards under this award.

31. Use of program income

    Program income (as defined in the Part 200 Uniform Requirements) must be used in accordance with the provisions of
    the Part 200 Uniform Requirements.  Program income earnings and expenditures both must be reported on the quarterly
    Federal Financial Report, SF 425.

32. Justice Information Sharing

    Information sharing projects funded under this award must comply with DOJ's Global Justice Information Sharing
    Initiative (Global) guidelines. The recipient (and any subrecipient at any tier) must conform to the Global Standards
    Package (GSP) and all constituent elements, where applicable, as described at: https:// it.ojp.gov/ gsp_grantcondition.
    The recipient (and any subrecipient at any tier) must document planned approaches to information sharing and describe
    compliance with the GSP and appropriate privacy policy that protects shared information, or provide detailed
    justification for why an alternative approach is recommended.

33. Avoidance of duplication of networks

    To avoid duplicating existing networks or IT systems in any initiatives funded by BJA for law enforcement information
    sharing systems which involve interstate connectivity between jurisdictions, such systems shall employ, to the extent
    possible, existing networks as the communication backbone to achieve interstate connectivity, unless the recipient can
    demonstrate to the satisfaction of BJA that this requirement would not be cost effective or would impair the
    functionality of an existing or proposed IT system.

34. Compliance with 28 C.F.R. Part 23

    With respect to any information technology system funded or supported by funds under this award, the recipient (and
    any subrecipient at any tier) must comply with 28 C.F.R. Part 23, Criminal Intelligence Systems Operating Policies, if
    OJP determines this regulation to be applicable. Should OJP determine 28 C.F.R. Part 23 to be applicable, OJP may, at
    its discretion, perform audits of the system, as per the regulation. Should any violation of 28 C.F.R. Part 23 occur, the
    recipient may be fined as per 34 U.S.C. 10231(c)-(d).  The recipient may not satisfy such a fine with federal funds.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET**

**Grant**

PAGE 11 OF 22

| PROJECT NUMBER | 2018-DJ-BX-0658 | AWARD DATE | 11/16/2018 |
| --- | --- | --- | --- |

*SPECIAL CONDITIONS*

35. Protection of human research subjects

   The recipient (and any subrecipient at any tier) must comply with the requirements of 28 C.F.R. Part 46 and all OJP policies and procedures regarding the protection of human research subjects, including obtainment of Institutional Review Board approval, if appropriate, and subject informed consent.

36. Confidentiality of data

   The recipient (and any subrecipient at any tier) must comply with all confidentiality requirements of 34 U.S.C. 10231 and 28 C.F.R. Part 22 that are applicable to collection, use, and revelation of data or information. The recipient further agrees, as a condition of award approval, to submit a Privacy Certificate that is in accord with requirements of 28 C.F.R. Part 22 and, in particular, 28 C.F.R. 22.23.

37. Verification and updating of recipient contact information

   The recipient must verify its Point of Contact(POC), Financial Point of Contact (FPOC), and Authorized Representative contact information in GMS, including telephone number and e-mail address. If any information is incorrect or has changed, a Grant Adjustment Notice (GAN) must be submitted via the Grants Management System (GMS) to document changes.

38. Law enforcement task forces - required training

   Within 120 days of award acceptance, each current member of a law enforcement task force funded with award funds who is a task force commander, agency executive, task force officer, or other task force member of equivalent rank, must complete required online (internet-based) task force training. Additionally, all future task force members must complete this training once during the period of performance for this award, or once every four years if multiple OJP awards include this requirement.

   The required training is available free of charge online through the BJA-funded Center for Task Force Integrity and Leadership (www.ctfli.org). The training addresses task force effectiveness, as well as other key issues including privacy and civil liberties/rights, task force performance measurement, personnel selection, and task force oversight and accountability. If award funds are used to support a task force, the recipient must compile and maintain a task force personnel roster, along with course completion certificates.

   Additional information regarding the training is available through BJA's web site and the Center for Task Force Integrity and Leadership (www.ctfli.org).

39. Justification of consultant rate

   Approval of this award does not indicate approval of any consultant rate in excess of $650 per day. A detailed justification must be submitted to and approved by the OJP program office prior to obligation or expenditure of such funds.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE  12  OF  22

| PROJECT NUMBER | 2018-DJ-BX-0658 | AWARD DATE | 11/16/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

40.  Submission of eligible records relevant to the National Instant Background Check System

Consonant with federal statutes that pertain to firearms and background checks -- including 18 U.S.C. 922 and 34
U.S.C. ch. 409 -- if the recipient (or any subrecipient at any tier) uses this award to fund (in whole or in part) a specific
project or program (such as a law enforcement, prosecution, or court program) that results in any court dispositions,
information, or other records that are "eligible records" (under federal or State law) relevant to the National Instant
Background Check System (NICS), or that has as one of its purposes the establishment or improvement of records
systems that contain any court dispositions, information, or other records that are "eligible records" (under federal or
State law) relevant to the NICS, the recipient (or subrecipient, if applicable) must ensure that all such court
dispositions, information, or other records that are "eligible records" (under federal or State law) relevant to the NICS
are promptly made available to the NICS or to the "State" repository/database that is electronically available to (and
accessed by) the NICS, and -- when appropriate -- promptly must update, correct, modify, or remove such NICS-
relevant "eligible records".

In the event of minor and transitory non-compliance, the recipient may submit evidence to demonstrate diligent
monitoring of compliance with this condition (including subrecipient compliance).  DOJ will give great weight to any
such evidence in any express written determination regarding this condition.

41.  Certification of Compliance with 8 U.S.C. 1373 and 1644 (within the funded "program or activity") required for valid
award acceptance by a local government

In order validly to accept this award, the applicant local government must submit the required "State or Local
Government: FY 2018 Certification of Compliance with 8 U.S.C. 1373 and 1644" (executed by the chief legal officer
of the local government).  Unless that executed certification either-- (1) is submitted to OJP together with the fully-
executed award document, or (2) is uploaded in OJP's GMS no later than the day the signed award document is
submitted to OJP, any submission by a local government that purports to accept the award is invalid.

If an initial award-acceptance submission by the recipient is invalid, once the local government does submit the
necessary certification regarding 8 U.S.C. 1373 and 1644, it may submit a fully-executed award document executed by
the local government on or after the date of that certification.

For purposes of this condition, "local government" does not include any Indian tribe.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE 13 OF 22

| PROJECT NUMBER | 2018-DJ-BX-0658 | AWARD DATE | 11/16/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

42. Noninterference (within the funded "program or activity") with federal law enforcement: 8 U.S.C. 1373 and 1644; ongoing compliance

1. With respect to the "program or activity" funded in whole or part under this award (including any such program or activity of any subrecipient at any tier), throughout the period of performance, no State or local government entity, -agency, or -official may prohibit or in any way restrict-- (1) any government entity or -official from sending or receiving information regarding citizenship or immigration status as described in 8 U.S.C. 1373(a); or (2) a government entity or -agency from sending, requesting or receiving, maintaining, or exchanging information regarding immigration status as described in either 8 U.S.C. 1373(b) or 1644. Any prohibition (or restriction) that violates this condition is an "information-communication restriction" under this award.

2. Certifications from subrecipients. The recipient may not make a subaward to a State, a local government, or a "public" institution of higher education, unless it first obtains a certification of compliance with 8 U.S.C. 1373 and 1644, properly executed by the chief legal officer of the government or educational institution that would receive the subaward, using the appropriate form available at https://ojp.gov/funding/Explore/SampleCertifications-8USC1373.htm. Also, the recipient must require that no subrecipient (at any tier) may make a further subaward to a State, a local government, or a public institution of higher education, unless it first obtains a certification of compliance with 8 U.S.C. 1373 and 1644, properly executed by the chief legal officer of the government or institution that would receive the further subaward, using the appropriate OJP form.

3. The recipient's monitoring responsibilities include monitoring of subrecipient compliance with the requirements of this condition.

4. Allowable costs. Compliance with these requirements is an authorized and priority purpose of this award. To the extent that such costs are not reimbursed under any other federal program, award funds may be obligated for the reasonable, necessary, and allocable costs (if any) that the recipient, or any subrecipient at any tier that is a State, a local government, or a public institution of higher education, incurs to implement this condition.

5. Rules of Construction

A. For purposes of this condition:

(1) "State" and "local government" include any agency or other entity thereof, but not any institution of higher education or any Indian tribe.

(2) A "public" institution of higher education is defined as one that is owned, controlled, or directly funded (in whole or in substantial part) by a State or local government. (Such a public institution is considered to be a "government entity," and its officials to be "government officials.")

(3) "Program or activity" means what it means under title VI of the Civil Rights Act of 1964 (see 42 U.S.C. 2000d-4a).

(4) "Immigration status" means what it means under 8 U.S.C. 1373 and 8 U.S.C. 1644; and terms that are defined in 8 U.S.C. 1101 mean what they mean under that section 1101, except that "State" also includes American Samoa.

(5) Pursuant to the provisions set out at (or referenced in) 8 U.S.C. 1551 note ("Abolition ... and Transfer of Functions"), references to the "Immigration and Naturalization Service" in 8 U.S.C. 1373 and 1644 are to be read as references to particular components of the Department of Homeland Security (DHS).

B. Nothing in this condition shall be understood to authorize or require any recipient, any subrecipient at any tier, any State or local government, any public institution of higher education, or any other entity (or individual) to violate any federal law, including any applicable civil rights or nondiscrimination law.

IMPORTANT NOTE: Any questions about the meaning or scope of this condition should be directed to OJP, before



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE 14 OF 22

| PROJECT NUMBER | 2018-DJ-BX-0658 | AWARD DATE | 11/16/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

award acceptance.

43. Authority to obligate award funds contingent on noninterference (within the funded "program or activity") with federal law enforcement (8 U.S.C. 1373 and 1644); unallowable costs; notification

    1. If the recipient is a "State," a local government, or a "public" institution of higher education:

    A. The recipient may not obligate award funds if, at the time of the obligation, the "program or activity" of the recipient (or of any subrecipient at any tier that is a State, a local government, or a public institution of higher education) that is funded in whole or in part with award funds is subject to any "information-communication restriction."

    B. In addition, with respect to any project costs it incurs "at risk," the recipient may not obligate award funds to reimburse itself if -- at the time it incurs such costs -- the program or activity of the recipient (or of any subrecipient at any tier that is a State, a local government, or a public institution of higher education) that would be reimbursed in whole or in part with award funds was subject to any information-communication restriction.

    C. Any drawdown of award funds by the recipient shall be considered, for all purposes, to be a material representation by the recipient to OJP that, as of the date the recipient requests the drawdown, the recipient and each subrecipient (regardless of tier) that is a State, local government, or public institution of higher education, is in compliance with the award condition entitled "Noninterference (within the funded 'program or activity') with federal law enforcement: 8 U.S.C. 1373 and 1644 and ongoing compliance."

    D. The recipient must promptly notify OJP (in writing) if the recipient, from its requisite monitoring of compliance with award conditions or otherwise, has credible evidence that indicates that the funded program or activity of the recipient, or of any subrecipient at any tier that is either a State or a local government or a public institution of higher education, may be subject to any information-communication restriction. In addition, any subaward (at any tier) to a subrecipient that is a State, a local government, or a public institution of higher education must require prompt notification to the entity that made the subaward, should the subrecipient have such credible evidence regarding an information-communication restriction.

    2. Any subaward (at any tier) to a subrecipient that is a State, a local government, or a public institution of higher education must provide that the subrecipient may not obligate award funds if, at the time of the obligation, the program or activity of the subrecipient (or of any further such subrecipient at any tier) that is funded in whole or in part with award funds is subject to any information-communication restriction.

    3. Absent an express written determination by DOJ to the contrary, based upon a finding by DOJ of compelling circumstances (e.g., a small amount of award funds obligated by the recipient at the time of a subrecipient's minor and transitory non-compliance, which was unknown to the recipient despite diligent monitoring), any obligations of award funds that, under this condition, may not be made shall be unallowable costs for purposes of this award. In making any such determination, DOJ will give great weight to evidence submitted by the recipient that demonstrates diligent monitoring of subrecipient compliance with the requirements set out in the "Noninterference ... 8 U.S.C. 1373 and 1644 and ongoing compliance" award condition.

    4. Rules of Construction

    A. For purposes of this condition "information-communication restriction" has the meaning set out in the "Noninterference ... 8 U.S.C. 1373 and 1644 and ongoing compliance" condition.

    B. Both the "Rules of Construction" and the "Important Note" set out in the "Noninterference ... 8 U.S.C. 1373 and 1644 and ongoing compliance" condition are incorporated by reference as though set forth here in full.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE 15 OF 22

| PROJECT NUMBER | 2018-DJ-BX-0658 | AWARD DATE | 11/16/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

44. Noninterference (within the funded "program or activity") with federal law enforcement: No public disclosure of certain law enforcement sensitive information

SCOPE. This condition applies with respect to the "program or activity" that is funded (in whole or in part) by the award, as of the date the recipient accepts this award, and throughout the remainder of the period of performance. Its provisions must be among those included in any subaward (at any tier).

1. Noninterference: No public disclosure of federal law enforcement information in order to conceal, harbor, or shield

Consistent with the purposes and objectives of federal law enforcement statutes and federal criminal law (including 8 U.S.C. 1324 and 18 U.S.C. chs. 1, 49, 227), no public disclosure may be made of any federal law enforcement information in a direct or indirect attempt to conceal, harbor, or shield from detection any fugitive from justice under 18 U.S.C. ch. 49, or any alien who has come to, entered, or remains in the United States in violation of 8 U.S.C. ch. 12 -- without regard to whether such disclosure would constitute (or could form a predicate for) a violation of 18 U.S.C. 1071 or 1072 or of 8 U.S.C. 1324(a).

2. Monitoring

The recipient's monitoring responsibilities include monitoring of subrecipient compliance with this condition.

3. Allowable costs

To the extent that such costs are not reimbursed under any other federal program, award funds may be obligated for the reasonable, necessary, and allocable costs (if any) of actions (e.g., training) designed to ensure compliance with this condition.

4. Rules of construction

A. For purposes of this condition--

(1) the term "alien" means what it means under section 101 of the Immigration and Nationality Act (see 8 U.S.C. 1101(a)(3));

(2) the term "federal law enforcement information" means law enforcement sensitive information communicated or made available, by the federal government, to a State or local government entity, -agency, or -official, through any means, including, without limitation-- (1) through any database, (2) in connection with any law enforcement partnership or -task-force, (3) in connection with any request for law enforcement assistance or -cooperation, or (4) through any deconfliction (or courtesy) notice of planned, imminent, commencing, continuing, or impending federal law enforcement activity;

(3) the term "law enforcement sensitive information" means records or information compiled for any law enforcement purpose; and

(4) the term "public disclosure" means any communication or release other than one-- (a) within the recipient, or (b) to any subrecipient (at any tier) that is a government entity.

B. Both the "Rules of Construction" and the "Important Note" set out in the "Noninterference (within the funded 'program or activity') with federal law enforcement: 8 U.S.C. 1373 and 1644 and ongoing compliance" award condition are incorporated by reference as though set forth here in full.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE 16 OF 22

| PROJECT NUMBER | 2018-DJ-BX-0658 | AWARD DATE | 11/16/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

45. Noninterference (within the funded "program or activity") with federal law enforcement: Interrogation of certain aliens

SCOPE. This condition applies with respect to the "program or activity" that is funded (in whole or in part) by this award, as of the date the recipient accepts this award, and throughout the remainder of the period of performance for the award. Its provisions must be among those included in any subaward (at any tier).

1. Noninterference with statutory law enforcement access to correctional facilities

Consonant with federal law enforcement statutes and regulations -- including 8 U.S.C. 1357(a), under which certain federal officers and employees "have power without warrant ... to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States," and 8 C.F.R. 287.5(a), under which that power may be exercised "anywhere in or outside the United States" -- within the funded program or activity, no State or local government entity, -agency, or -official may interfere with the exercise of that power to interrogate "without warrant" (by agents of the United States acting under color of federal law) by impeding access to any State or local government (or government-contracted) correctional facility by such agents for the purpose "interrogat[ing] any alien or person believed to be an alien as to his [or her] right to be or to remain in the United States."

2. Monitoring

The recipient's monitoring responsibilities include monitoring of subrecipient compliance with this condition.

3. Allowable costs

To the extent that such costs are not reimbursed under any other federal program, award funds may be obligated for the reasonable, necessary, and allocable costs (if any) of actions (e.g., training) designed to ensure compliance with this condition.

4. Rules of construction

A. For purposes of this condition:

(1) The term "alien" means what it means under section 101 of the Immigration and Nationality Act (INA) (see 8 U.S.C. 1101(a)(3)).

(2) The term "correctional facility" means what it means under the title I of the Omnibus Crime Control and Safe Streets Act of 1968 (see 34 U.S.C. 10251(a)(7)).

(3) The term "impede" includes taking or continuing any action, or implementing or maintaining any law, policy, rule, or practice, that--

(a) is designed to prevent or to significantly delay or complicate, or

(b) has the effect of preventing or of significantly delaying or complicating.

B. Both the "Rules of Construction" and the "Important Note" set out in the "Noninterference (within the funded 'program or activity') with federal law enforcement: 8 U.S.C. 1373 and 1644 and ongoing compliance" award condition are incorporated by reference as though set forth here in full.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE 17 OF 22

| PROJECT NUMBER | 2018-DJ-BX-0658 | AWARD DATE | 11/16/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

46. Noninterference (within the funded "program or activity") with federal law enforcement: Notice of scheduled release

SCOPE. This condition applies with respect to the "program or activity" that is funded (in whole or in part) by the award, as of the date the recipient accepts the award, and throughout the remainder of the period of performance. Its provisions must be among those included in any subaward at any tier.

1. Noninterference with "removal" process: Notice of scheduled release date and time

Consonant with federal law enforcement statutes -- including 8 U.S.C. 1231 (for an alien incarcerated by a State or local government, a 90-day "removal period" during which the federal government "shall" detain and then "shall" remove an alien from the U.S. "begins" no later than "the date the alien is released from ... confinement"; also, the federal government is expressly authorized to make payments to a "State or a political subdivision of the State ... with respect to the incarceration of [an] undocumented criminal alien"); 8 U.S.C. 1226 (the federal government "shall take into custody" certain criminal aliens "when the alien is released"); and 8 U.S.C. 1366 (requiring an annual DOJ report to Congress on "the number of illegal alien[ felons] in Federal and State prisons" and programs underway "to ensure the prompt removal" from the U.S. of removable "criminal aliens") -- within the funded program or activity, no State or local government entity, -agency, or -official (including a government-contracted correctional facility) may interfere with the "removal" process by failing to provide -- as early as practicable (see para. 4.C. below) -- advance notice to DHS of the scheduled release date and time for a particular alien, if a State or local government (or government-contracted) correctional facility receives from DHS a formal written request pursuant to the INA that seeks such advance notice.

2. Monitoring

The recipient's monitoring responsibilities include monitoring of subrecipient compliance with this condition.

3. Allowable costs

To the extent that such costs are not reimbursed under any other federal program, award funds may be obligated for the reasonable, necessary, and allocable costs (if any) of actions (e.g., training) designed to ensure compliance with this condition.

4. Rules of construction

A. For purposes of this condition:

(1) The term "alien" means what it means under section 101 of the INA (see 8 U.S.C. 1101(a)(3)).

(2) The term "correctional facility" means what it means under the title I of the Omnibus Crime Control and Safe Streets Act of 1968 (see 34 U.S.C. 10251(a)(7)).

B. Nothing in this condition shall be understood to authorize or require any recipient, any subrecipient at any tier, any State or local government, or any other entity or individual to maintain (or detain) any individual in custody beyond the date and time the individual otherwise would have been released.

C. Applicability

(1) Current DHS practice is ordinarily to request advance notice of scheduled release "as early as practicable (at least 48 hours, if possible)." (See DHS Form I-247A (3/17)). If (e.g., in light of the date DHS made such request) the scheduled release date and time for an alien are such as not to allow for the advance notice that DHS has requested, it shall NOT be a violation of this condition to provide only as much advance notice as practicable.

(2) Current DHS practice is to use the same form for a second, distinct purpose -- to request that an individual be



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE 18 OF 22

| PROJECT NUMBER | 2018-DJ-BX-0658 | AWARD DATE | 11/16/2018 |
| --- | --- | --- | --- |

*SPECIAL CONDITIONS*

detained for up to 48 hours AFTER the scheduled release. This condition does NOT encompass such DHS requests for detention.

D. Both the "Rules of Construction" and the "Important Note" set out in the "Noninterference (within the funded 'program or activity') with federal law enforcement: 8 U.S.C. 1373 and 1644 and ongoing compliance" award condition are incorporated by reference as though set forth here in full.

47. Requirement to collect certain information from subrecipients

The recipient may not make a subaward to a State, a local government, or a "public" institution of higher education, unless it first obtains from the proposed subrecipient responses to the questions identified in the program solicitation as "Information regarding Communication with the Department of Homeland Security (DHS) and/or Immigration and Customs Enforcement (ICE)." All subrecipient responses must be collected and maintained by the recipient, consistent with regular document retention requirements, and must be made available to DOJ upon request. Responses to these questions are not required from subrecipients that are either a tribal government/organization, a nonprofit organization, or a private institution of higher education.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

PAGE 19 OF 22

| PROJECT NUMBER | 2018-DJ-BX-0658 | AWARD DATE | 11/16/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

48. Compliance with National Environmental Policy Act and related statutes

Upon request, the recipient (and any subrecipient at any tier) must assist BJA in complying with the National Environmental Policy Act (NEPA), the National Historic Preservation Act, and other related federal environmental impact analyses requirements in the use of these award funds, either directly by the recipient or by a subrecipient. Accordingly, the recipient agrees to first determine if any of the following activities will be funded by the grant, prior to obligating funds for any of these purposes. If it is determined that any of the following activities will be funded by the award, the recipient agrees to contact BJA.

The recipient understands that this condition applies to new activities as set out below, whether or not they are being specifically funded with these award funds. That is, as long as the activity is being conducted by the recipient, a subrecipient, or any third party, and the activity needs to be undertaken in order to use these award funds, this condition must first be met. The activities covered by this condition are:

a. New construction;

b. Minor renovation or remodeling of a property located in an environmentally or historically sensitive area, including properties located within a 100-year flood plain, a wetland, or habitat for endangered species, or a property listed on or eligible for listing on the National Register of Historic Places;

c. A renovation, lease, or any proposed use of a building or facility that will either (a) result in a change in its basic prior use or (b) significantly change its size;

d. Implementation of a new program involving the use of chemicals other than chemicals that are (a) purchased as an incidental component of a funded activity and (b) traditionally used, for example, in office, household, recreational, or education environments; and

e. Implementation of a program relating to clandestine methamphetamine laboratory operations, including the identification, seizure, or closure of clandestine methamphetamine laboratories.

The recipient understands and agrees that complying with NEPA may require the preparation of an Environmental Assessment and/or an Environmental Impact Statement, as directed by BJA. The recipient further understands and agrees to the requirements for implementation of a Mitigation Plan, as detailed at https://bja.gov/Funding/nepa.html, for programs relating to methamphetamine laboratory operations.

Application of This Condition to Recipient's Existing Programs or Activities:  For any of the recipient's or its subrecipients' existing programs or activities that will be funded by these award funds, the recipient, upon specific request from BJA, agrees to cooperate with BJA in any preparation by BJA of a national or program environmental assessment of that funded program or activity.

49. Establishment of trust fund

If award funds are being drawn down in advance, the recipient (or a subrecipient, with respect to a subaward) is required to establish a trust fund account. Recipients (and subrecipients) must maintain advance payments of federal awards in interest-bearing accounts, unless regulatory exclusions apply (2 C.F.R. 200.305(b)(8)). The trust fund, including any interest, may not be used to pay debts or expenses incurred by other activities beyond the scope of the Edward Byrne Memorial Justice Assistance Grant Program (JAG). The recipient also agrees to obligate the award funds in the trust fund (including any interest earned) during the period of performance for the award and expend within 90 days thereafter. Any unobligated or unexpended funds, including interest earned, must be returned to OJP at the time of closeout.



<table>
<tr><td>U.S. Department of Justice<br>Office of Justice Programs<br><b>Bureau of Justice Assistance</b></td><td><b>AWARD CONTINUATION SHEET</b><br><b>Grant</b></td><td>PAGE 20 OF 22</td></tr>
</table>

| U.S. Department of Justice<br>Office of Justice Programs<br>**Bureau of Justice Assistance** | **AWARD CONTINUATION SHEET**<br>**Grant** | PAGE 20 OF 22 |
|---|---|---|

| PROJECT NUMBER 2018-DJ-BX-0658 | AWARD DATE 11/16/2018 |
|---|---|

*SPECIAL CONDITIONS*

50. Prohibition on use of award funds for match under BVP program

    JAG funds may not be used as the 50% match for purposes of the DOJ Bulletproof Vest Partnership (BVP) program.

51. Certification of body armor "mandatory wear" policies

    The recipient agrees to submit a signed certification that all law enforcement agencies receiving body armor purchased with funds from this award have a written "mandatory wear" policy in effect. The recipient must keep signed certifications on file for any subrecipients planning to utilize funds from this award for ballistic-resistant and stab-resistant body armor purchases. This policy must be in place for at least all uniformed officers before any funds from this award may be used by an agency for body armor. There are no requirements regarding the nature of the policy other than it be a mandatory wear policy for all uniformed officers while on duty.

52. Body armor - compliance with NIJ standards and other requirements

    Ballistic-resistant and stab-resistant body armor purchased with JAG award funds may be purchased at any threat level, make or model, from any distributor or manufacturer, as long as the body armor has been tested and found to comply with applicable National Institute of Justice ballistic or stab standards and is listed on the NIJ Compliant Body Armor Model List (https://nij.gov/topics/technology/body-armor/Pages/compliant-ballistic-armor.aspx). In addition, ballistic-resistant and stab-resistant body armor purchased must be made in the United States and must be uniquely fitted, as set forth in 34 U.S.C. 10202(c)(1)(A). The latest NIJ standard information can be found here: https:// nij.gov/ topics/ technology/ body-armor/ pages/ safety-initiative.aspx.

53. Body armor - impact on eligibility for other program funds

    The recipient understands that the use of funds under this award for purchase of body armor may impact eligibility for funding under the Bulletproof Vest Partnership (BVP) program, a separate program operated by BJA, pursuant to the BVP statute at 34 USC 10531(c)(5).

54. Reporting requirements

    The recipient must submit quarterly Federal Financial Reports (SF-425) and semi-annual performance reports through OJP's GMS (https://grants.ojp.usdoj.gov). Consistent with the Department's responsibilities under the Government Performance and Results Act (GPRA) and the GPRA Modernization Act of 2010, the recipient must provide data that measure the results of its work. The recipient must submit quarterly performance metrics reports through BJA's Performance Measurement Tool (PMT) website (www.bjaperformancetools.org). For more detailed information on reporting and other JAG requirements, refer to the JAG reporting requirements webpage. Failure to submit required JAG reports by established deadlines may result in the freezing of grant funds and future High Risk designation.

55. Required data on law enforcement agency training

    Any law enforcement agency receiving direct or sub-awarded funding from this JAG award must submit quarterly accountability metrics data related to training that officers have received on the use of force, racial and ethnic bias, de-escalation of conflict, and constructive engagement with the public.

56. Expenditures prohibited without waiver

    No funds under this award may be expended on the purchase of items prohibited by the JAG program statute, unless, as set forth at 34 U.S.C. 10152, the BJA Director certifies that extraordinary and exigent circumstances exist, making such expenditures essential to the maintenance of public safety and good order.

OJP FORM 4000/2 (REV. 4-88)



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION SHEET**

**Grant**

| PROJECT NUMBER | 2018-DJ-BX-0658 | AWARD DATE | 11/16/2018 |
|---|---|---|---|

*SPECIAL CONDITIONS*

57. Authorization to obligate (federal) award funds to reimburse certain project costs incurred on or after October 1, 2017

The recipient may obligate (federal) award funds only after the recipient makes a valid acceptance of the award. As of the first day of the period of performance for the award (October 1, 2017), however, the recipient may choose to incur project costs using non-federal funds, but any such project costs are incurred at the recipient's risk until, at a minimum-- (1) the recipient makes a valid acceptance of the award, and (2) all applicable withholding conditions are removed by OJP (via a Grant Adjustment Notice). (A withholding condition is a condition in the award document that precludes the recipient from obligating, expending, or drawing down all or a portion of the award funds until the condition is removed.)

Except to the extent (if any) that an award condition expressly precludes reimbursement of project costs incurred "at-risk," if and when the recipient makes a valid acceptance of this award and OJP removes each applicable withholding condition through a Grant Adjustment Notice, the recipient is authorized to obligate (federal) award funds to reimburse itself for project costs incurred "at-risk" earlier during the period of performance (such as project costs incurred prior to award acceptance or prior to removal of an applicable withholding condition), provided that those project costs otherwise are allowable costs under the award.

Nothing in this condition shall be understood to authorize the recipient (or any subrecipient at any tier) to use award funds to "supplant" State or local funds in violation of the recipient's certification (executed by the chief executive of the State or local government) that federal funds will be used to increase the amounts of such funds that would, in the absence of federal funds, be made available for law enforcement activities.

58. Use of funds for DNA testing; upload of DNA profiles

If award funds are used for DNA testing of evidentiary materials, any resulting eligible DNA profiles must be uploaded to the Combined DNA Index System ("CODIS," the DNA database operated by the FBI) by a government DNA laboratory with access to CODIS.

No profiles generated under this award may be entered or uploaded into any non-governmental DNA database without prior express written approval from BJA.

Award funds may not be used for the purchase of DNA equipment and supplies unless the resulting DNA profiles may be accepted for entry into CODIS.

59. Three percent set-aside for NIBRS compliance

The recipient must ensure that at least 3 percent of the total amount of this award is dedicated to achieving full compliance with the FBI's National Incident-Based Reporting System (NIBRS), unless the FBI or appropriate State official has certified that the recipient locality is already NIBRS compliant, and evidence of this has been submitted to and approved by BJA. The recipient will be required by BJA to make revisions to budgets that do not clearly indicate what projects will be supported by this 3 percent set-aside, unless evidence of NIBRS compliance has been submitted to and approved by BJA. Recipients serving as fiscal agents for "disparate jurisdictions," (as defined at 34 USC 10156(d)(4)) have to pass this requirement through to in subawards to other localities in the disparate jurisdiction, so that each locality in a disparate jurisdiction group dedicates at least 3 percent of award funds to NIBRS compliance, unless, with respect to each locality in the disparate jurisdiction group, evidence of NIBRS compliance has been submitted to and approved by BJA.



U.S. Department of Justice
Office of Justice Programs
**Bureau of Justice Assistance**

**AWARD CONTINUATION
SHEET
Grant**

PAGE 22 OF 22

| PROJECT NUMBER | 2018-DJ-BX-0658 | AWARD DATE | 11/16/2018 |

*SPECIAL CONDITIONS*

60. Encouragement of submission of "success stories"

BJA strongly encourages the recipient to submit annual (or more frequent) JAG success stories. To submit a success story, sign in to a My BJA account at https:// www.bja.gov/ Login.aspx to access the Success Story Submission form. If the recipient does not yet have a My BJA account, please register at https:// www.bja.gov/ profile.aspx. Once registered, one of the available areas on the My BJA page will be "My Success Stories." Within this box, there is an option to add a Success Story. Once reviewed and approved by BJA, all success stories will appear on the BJA Success Story web page at https:// www.bja.gov/ SuccessStoryList.aspx.

61. Withholding of funds: Required certification from the chief executive of the applicant government

The recipient may not obligate, expend, or draw down any award funds until the recipient submits the required "Certifications and Assurances by the Chief Executive of the Applicant Government," properly-executed (as determined by OJP), and a Grant Adjustment Notice (GAN) has been issued to remove this condition.

62. Withholding of funds: NIBRS set-aside

The recipient may not obligate, expend, or draw down any award funds until the recipient submits, and BJA reviews and accepts, a budget that clearly dedicates at least 3 percent of the total amount of the award to NIBRS compliance activities or documentation showing that the recipient has been certified as NIBRS compliant, and a Grant Adjustment Notice (GAN) has been issued to remove this condition.

63. Withholding of funds: Disclosure of lobbying

The recipient may not obligate, expend, or draw down any funds under this award until it has provided to the grant manager for this OJP award a complete Disclosure of Lobbying Activities (SF-LLL) form, and OJP has issued a Grant Adjustment Notice to remove this special condition.

64. Withholding of funds: Budget narrative or information

The recipient may not obligate, expend, or draw down any award funds until the recipient submits, and OJP reviews and accepts, the required budget information or narrative for the award, and a Grant Adjustment Notice (GAN) has been issued to remove this condition.



**U.S. Department of Justice**

Office of Justice Programs

*Bureau of Justice Assistance*

---

*Washington, D.C. 20531*

**Memorandum To:**  Official Grant File

**From:**  Orbin Terry, NEPA Coordinator

**Subject:**  Incorporates NEPA Compliance in Further Developmental Stages for City and County of San Francisco

The Edward Byrne Memorial Justice Assistance Grant Program (JAG) allows states and local governments to support a broad range of activities to prevent and control crime and to improve the criminal justice system, some of which could have environmental impacts.  All recipients of JAG funding must assist BJA in complying with NEPA and other related federal environmental impact analyses requirements in the use of grant funds, whether the funds are used directly by the grantee or by a subgrantee or third party.  Accordingly, prior to obligating funds for any of the specified activities, the grantee must first determine if any of the specified activities will be funded by the grant.

The specified activities requiring environmental analysis are:
a. New construction;
b. Any renovation or remodeling of a property located in an environmentally or historically sensitive area, including properties located within a 100-year flood plain, a wetland, or habitat for endangered species, or a property listed on or eligible for listing on the National Register of Historic Places;
c.  A renovation, lease, or any proposed use of a building or facility that will either (a) result in a change in its basic prior use or (b) significantly change its size;
d.  Implementation of a new program involving the use of chemicals other than chemicals that are (a) purchased as an incidental component of a funded activity and (b) traditionally used, for example, in office, household, recreational, or education environments; and
e. Implementation of a program relating to clandestine methamphetamine laboratory operations, including the identification, seizure, or closure of clandestine methamphetamine laboratories.

Complying with NEPA may require the preparation of an Environmental Assessment and/or an Environmental Impact Statement, as directed by BJA.  Further, for programs relating to methamphetamine laboratory operations, the preparation of a detailed Mitigation Plan will be required.  For more information about Mitigation Plan requirements, please see https://www.bja.gov/Funding/nepa.html.

Please be sure to carefully review the grant conditions on your award document, as it may contain more specific information about environmental compliance.



U.S. Department of Justice

Office of Justice Programs

Bureau of Justice Assistance

# GRANT MANAGER'S MEMORANDUM, PT. I:
# PROJECT SUMMARY

## Grant

| PROJECT NUMBER<br><br>2018-DJ-BX-0658 | PAGE 1 OF 1 |
|---|---|

This project is supported under FY18(BJA - JAG State & JAG Local) Title I of Pub. L. No. 90-351 (generally codified at 34 U.S.C. 10101 - 10726), including subpart I of part E (codified at 34 U.S.C. 10151 - 10158); see also 28 U.S.C. 530C(a)

| 1. STAFF CONTACT (Name & telephone number)<br><br>Linda Hill-Franklin<br>(202) 514-0712 | 2. PROJECT DIRECTOR (Name, address & telephone number)<br><br>Maria Su<br>Director<br>1390 Market Street<br>Suite 900<br>San Francisco, CA 94102-5402<br>(415) 554-3547 |
|---|---|

| 3a. TITLE OF THE PROGRAM<br><br>BJA FY 18 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - Local Solicitation | 3b. POMS CODE (SEE INSTRUCTIONS ON REVERSE) |
|---|---|

4. TITLE OF PROJECT

    FY 18 Local JAG Program

| 5. NAME & ADDRESS OF GRANTEE<br><br>City and County of San Francisco<br>1245 Third Street<br>San Francisco, CA 94158 | 6. NAME & ADRESS OF SUBGRANTEE |
|---|---|

| 7. PROGRAM PERIOD<br><br>FROM: 10/01/2017    TO: 09/30/2021 | 8. BUDGET PERIOD<br><br>FROM: 10/01/2017    TO: 09/30/2021 |
|---|---|

| 9. AMOUNT OF AWARD<br><br>$ 489,966 | 10. DATE OF AWARD<br><br>11/16/2018 |
|---|---|

| 11. SECOND YEAR'S BUDGET | 12. SECOND YEAR'S BUDGET AMOUNT |
|---|---|

| 13. THIRD YEAR'S BUDGET PERIOD | 14. THIRD YEAR'S BUDGET AMOUNT |
|---|---|

15. SUMMARY DESCRIPTION OF PROJECT (See instruction on reverse)

The Edward Byrne Memorial Justice Assistance Grant Program (JAG) allows states and units of local government, including tribes, to support a broad range of criminal justice related activities based on their own state and local needs and conditions. Grant funds can be used for state and local initiatives, technical assistance, training, personnel, equipment, supplies, contractual support, and information systems for criminal justice, including for any one or more of the following purpose areas: 1) law enforcement programs; 2) prosecution and court programs; 3) prevention and education programs; 4) corrections and community corrections programs; 5) drug treatment and enforcement programs; 6) planning, evaluation, and technology improvement programs; 7) crime victim and witness programs (other than compensation); and 8) mental health programs and related law enforcement and corrections programs, including behavioral programs and crisis intervention teams.

This Local JAG award will be used to support criminal justice initiatives that fall under one or more of the allowable program areas above. Any equipment purchases or funded initiatives such as overtime, task forces, drug programs or information sharing, will be aimed at reducing crime and enhancing public and

OJP FORM 4000/2 (REV. 4-88)

officer safety.

NCA/NCF

# Police Bureau

Sworn to protect. Dedicated to serve.

Phone: 503-823-0000   Fax: 503-823-0342   Non-Emergency: 503-823-3333
1111 S.W. 2nd Avenue, Portland, OR 97204




## 0810.10 Immigration Enforcement and Diplomatic Immunity

*This Directive is currently under review*

810.10, Immigration Enforcement and Diplomatic Immunity

Refer:

Title 8, U.S. Code 1357(d)  Detainer of Aliens for Violation of Controlled Substance Laws
Title 8, U.S. Code 1373(a)(b) Communication Between Government Agencies and the Immigration and Naturalization Service
U.S. Department of State website: http://state.gov
U.S. Department of State, Bureau of Consular Affairs: http://travel.state.gov
ORS §181A.820  Enforcement of Federal Immigration Laws
Oregon House Bill 3464
Oregon Executive Order 17-04, Renewing Oregon's Commitment to Protecting Its Immigrant, Refugee, and Religious-Minority Residents
City of Portland Resolution No. 37277, Declare the City of Portland a Welcoming City, a Sanctuary City, and an Inclusive City For All
Human Resources Administrative Rule 11.04, Protection of Restricted and Confidential Information
DIR 310.70 Dissemination of Information
DIR 344.05 Bias-Based Policing/Profiling Prohibited
DIR 631.30 Cooperation with Other Agencies
DIR 810.00 Arrest, Persons Exempt
Detention of Foreign National Checklist (Operations Branch)
Definitions:

Administrative Removal Warrant:  A document, typically signed by a supervisory level Immigration and Customs Enforcement (ICE) administrator and not a judge, that authorizes ICE officers/Enforcement Removal Operations (ERO) to arrest non-citizens who have committed immigration violations and/or who have been previously determined to be deportable.  An administrative removal warrant allows only the detention of a named person and does not allow for a search of a premises.

Consular Immunity:  A principle of international law that offers similar protections as diplomatic immunity, but with more limitations, given the functional differences between consular and diplomatic officers.  Consular officers are not accorded absolute immunity from a host country's criminal jurisdiction and are immune from local jurisdiction only in cases directly relating to consular functions.

Detainer Request: For the purposes of this directive, 810.10, Immigration Enforcement and Diplomatic Immunity, a completed Form I-247A submitted by any federal immigration law enforcement branch of ICE to a law enforcement agency that currently has legal and physical custody of a suspected undocumented immigrant.  The form asks the law enforcement agency upon which it is served to contact ICE and agree to secure transfer of the person to ICE's custody prior to their release from custody on state or local criminal charges.  Form I-247A is only submitted where the law enforcement agency is holding a person on other criminal charges.

Diplomatic Immunity:  A principle of international law by which certain foreign government officials are not subject to the jurisdiction of local courts and other authorities for both their official and, to a large extent, their personal activities.  In addition to being immune from prosecution, individuals with diplomatic immunity are also exempt from search and seizure.

Enforcement and Removal Operations (ERO):  The immigration law enforcement branch ICE, under the Department of Homeland Security (DHS).  ERO focuses on identifying, detaining and removing individuals who have not lawfully entered the U.S.

Foreign National: A person who was born outside of the jurisdiction of the U.S., who is subject to the laws of a foreign government, and who has not been naturalized under U.S. law (e.g., refugee, green card holder, etc.).

Honorary Consular Immunity:  A principle of international law that offers limited legal protections to honorary consular officers.  Honorary consular officers are distinct from career Consular officers in that they may perform consular services on a part-time basis.  They retain immunity only for cases relating to consular functions.  They are not protected from arrest or search and seizure.

Homeland Security Investigations (HSI):  The investigative branch of the Department of Homeland Security (DHS).  HSI focuses on combating criminal organizations illegally exploiting America's travel, trade, financial, and immigration systems.  HSI is authorized to

**Exhibit G**

investigate criminal activities related to human, drug and weapons trafficking; cybercrime; transnational gang activity; human rights violations; and other cross-border criminal activity.

Judicial Warrant:  A warrant signed by a federal district court or magistrate judge, or an Oregon state or county judge, that must be executed by law enforcement as a judicial order based on probable cause and full vetting by a neutral judge.  These warrants generally allow for a complete search of a premises or parts of a premises, as specifically described in the warrant, and allow for the seizure of either or both persons or evidence, as described in the warrant.

Nonimmigrant Visitor: A foreign-born person, having a permanent residence abroad, who seeks temporary entry into the United States for a specific duration and purpose with the intention to leave the United States upon completion of that purpose and at the end of the specified timeframe.

Undocumented Immigrant:  A foreign-born person residing in the United States who has not obtained a visa, possesses an expired or otherwise invalid visa, or who, regardless of their intent to permanently reside in the U.S., overstayed a lawful entry or otherwise violated the terms of their visa status and thus has not been granted the right to be legally present in the U.S.  A person's undocumented status is determined by DHS.

U.S. Customs and Border Protection (CBP):  The federal law enforcement agency under DHS responsible for the management of border security, regulation and facilitation of trade and travel, and the enforcement of federal laws governing trade, customs and immigration.

U.S. Department of Homeland Security (DHS):  The federal government agency, comprised of various departments and sub-agencies, responsible for enforcing and administering customs and immigration laws, managing natural and man-made disaster events, combatting terrorism and other threats to national security, and regulating trade and travel.

U.S. Immigration and Customs Enforcement (ICE):  The federal law enforcement agency under DHS responsible for the enforcement of federal laws governing border control, customs, trade and immigration.

Policy.

1. The purpose of this Directive is to provide guidance for member contact and interaction with undocumented immigrants, nonimmigrant visitors, and foreign nationals.  Additionally, this policy establishes procedures that direct member actions when managing DHS requests for support, assistance, and information.

2. The Portland Police Bureau is committed to protecting, serving and supporting all residents and community members of the City of Portland, regardless of their national origin or immigration status.  Accordingly, no Bureau member shall interrogate, detain, arrest, initiate an investigation or take other official police action against an individual solely on the basis of either of these aspects of their identity.

3. When necessary, the Bureau partners with DHS to assist in their efforts of managing emergency situations and combatting a wide array of global criminal threats related to drug and human trafficking, terrorism, and human rights violations.  Although the Bureau supports the DHS mission as it relates to confronting these security and human rights threats, the Bureau is steadfast in its commitment to contributing to the City's efforts to create a welcoming environment that encourages diversity and inclusivity.

4. To the extent that the mission of DHS, as communicated to the Bureau, is enforcement of immigration laws, the Bureau will follow the direction of the state statutory law and City ordinances by not enforcing or assisting in the enforcement of federal immigration laws, as that is a federal function.  Moreover, the Bureau shall not expend personnel, equipment, monetary, or other resources to enforce or assist in the enforcement of federal immigration laws, unless in a manner that comports with applicable law.

Procedure.

1. Bureau Contact with Undocumented Immigrants Who Are Not Suspected of a Crime.

    1.1. Members shall not make inquiries regarding the immigration or citizenship status of an individual or document immigration status solely or primarily for the purpose of federal immigration law enforcement.

        1.1.1. Members may need to inquire about an individual's status where the inquiry relates to a legitimate law enforcement purpose that is unrelated to the enforcement of a federal immigration law, or where required by state or federal law to verify eligibility for a law enforcement cooperation visa or deferred action request.

    1.2. A member shall not ask for a victim's immigration status when investigating a crime unless relevant to an element of the crime.  If the individual's immigration status is relevant to the investigation (e.g., human trafficking, hate crime, etc.), the member shall explain to the individual why they are documenting the individual's immigration status and its relevance to the investigation.

        1.2.1. An exception to this rule exists if it appears a victim or witness might qualify for a visa or other immigration protections based on cooperation with law enforcement in an investigation of a crime.

    1.3. Temporary Immigration Benefits and Protections.

1.3.1. In limited circumstances, an individual who is a victim of or witness to specific qualifying crimes and are helpful to the investigation may be eligible for certain immigration benefits or protections, such as law enforcement cooperation visas (i.e., T visa and U visa), continued presence status, deferred action status, or other federal resources that provide temporary immigration protections.

1.3.1.1. Although a member is under no duty to affirmatively request or inquire about an individual's immigration status, if the person requesting temporary immigration benefits or protections volunteers the information, the member is under the same duty to document relevant facts of the case as they would in any police report.

1.3.1.2. All requests initiated by a victim/witness who is seeking member assistance with enforcement cooperation visas (T visas and U visas) shall be submitted to the Chief's Office. The Chief of Police shall designate, in writing, an individual to review and approve or deny these requests.

1.3.1.3. Deferred action or continued presence requests initiated by an investigator shall be submitted to the Chief of Police or a designee for approval or denial.

1.3.1.4. Bureau members authorizing these requests may consult the City Attorney's Office for guidance.

1.3.1.4.1. Upon approval, the member-initiated certification paperwork should be submitted to the appropriate federal authority and victim/witness-initiated certification paperwork should be provided to the requester to complete the necessary nonimmigrant visa application.

1.4. If communication appears to be a barrier, the individual has the right to request translation, interpretation, or other communication aids (e.g., sign language interpreter). The Bureau shall provide the appropriate communication aid at no expense to the individual.

2. Arrests, Detentions of Undocumented Immigrants.

2.1. Members shall not arrest a person for the sole reason that they are an undocumented immigrant.

2.2. Members shall not assist ICE, CBP or ERO with the execution of administrative removal warrants. The Bureau shall require a judicial warrant prior to the arrest or detention of an individual at the request of ICE, CBP or ERO.

2.3. Members shall not honor or comply with federal immigration detainer requests issued by ICE, CBP, or ERO.

2.4. Members shall not arrest, detain or transport an individual solely on the basis of an immigration detainer or other administrative document issued by ICE, CBP or ERO.

2.4.1. Members shall only carry out an arrest or detention if directed to do so by way of a judicial warrant or order.

3. Scope of Contact and Coordination with DHS.

3.1. Members shall not assist ICE, CBP or ERO as it pertains to the enforcement of federal immigration laws.

3.2. ICE, CBP or ERO may request the Bureau's assistance for pre-planned missions. In these circumstances, members shall only provide cover or assistance (e.g., traffic control) to ensure the safety of all involved. Members shall not assist in the enforcement of federal immigration laws.

3.2.1. The Chief or a designee shall consider the request and authorize approval to provide such assistance only in those rare circumstances where other cover resources (i.e., another federal law enforcement agency) are unavailable.

3.3. Members are authorized to respond to emergency calls for cover or assistance (e.g., code three cover, injured officer, shots fired) sought by ICE, CBP or ERO. In those instances, members shall limit their involvement to providing emergency law enforcement cover. Members shall not assist in the enforcement of federal immigration laws.

3.4. When necessary, members shall grant access to restricted areas in a Bureau facility only if ICE, CBP or ERO agents are acting pursuant to a judicial order.

3.4.1. When their sole purpose is to execute an immigration detainer or administrative warrant, members shall grant agents access only to publicly accessible areas in a Bureau facility.

3.5. Investigations.

3.5.1. Members may work in conjunction with HSI or other investigative agencies within DHS to:

3.5.1.1. Further the investigation of any felony, unrelated to federal immigration laws, that has been committed, and/or

3.5.1.2. Investigate and make arrests for any controlled substance offense.

3.5.2. If assisting HSI or another investigative agency within DHS with a criminal investigation as described above, members shall not engage in the surveillance of a person or group based solely or primarily upon a person or group's actual or perceived national origin or immigration status.

4. Diplomatic and Consular Immunity.

4.1. Categories of persons entitled to privileges and immunities include the following:

4.1.1. Members of Diplomatic Missions;

4.1.2. Members of Consular Posts;

4.1.3. International Organization Personnel and National Missions to Such Organizations (e.g., the United Nations); and

4.1.4. Designated Employees of the Taipei Economic and Culturally Representative Office in the U.S. (TECRO) and of the Taipei Economic and Cultural Offices (TECO).

4.2. If a person asserts diplomatic or consular immunity or exemption at the time of police contact, the burden of proof for establishing their identity and immunity rests with the individual(s).  The individual(s) must produce to the member U.S. Department of State ("State Department")-authenticated proof of identity in the form of an identity card issued by:

4.2.1. The State Department,

4.2.2. The U.S. Mission to the United Nations, or

4.2.3. The American Institute in Taiwan for the employees of TECRO or TECO.

4.2.4. The member may, if necessary, take the person to a location (i.e., a precinct or another facility with the necessary research tools or resources) to establish identity and immunity.

4.2.5. Members should refer to State Department guidelines for additional information regarding diplomatic and consular immunity.

4.2.6. Members shall refer to Directive 810.00, Arrest, Persons Exempt, for guidance regarding the detainment of other individuals who are exempt from arrest.

5. Consular Notifications.

5.1. When any foreign national (e.g., a nonimmigrant visitor who has volunteered their immigration status, or a person claiming diplomatic, consular or honorary consular immunity) is taken into custody or otherwise could be taken into custody, the arresting member or their supervisor shall refer to State Department's Bureau of Consular Affairs guidelines pertaining to mandatory consular notification countries to determine if providing notification to the individual's country is required.

5.1.1. It is the opinion of the State Department that stops for routine traffic violations and resultant citations are not arrests or detention for the purposes of notification.

5.1.2. If notification is mandatory, members shall:

5.1.2.1. Contact the nearest consulate or embassy as soon as practicable and prior to the end of shift.  Members should be aware that foreign consular officials have the right to visit their arrested/detained nationals, subject to local laws and regulations regarding access to detained persons;

5.1.2.2. Inform the individual that the consulate or embassy has been notified;

5.1.2.3. Complete the "Detention of Foreign Nationals Checklist" and attach the document to their report; and

5.1.2.4. Make arrangements for a courtesy notification (during business hours) to the Oregon State Police to facilitate any international contact through INTERPOL channels.

5.1.3. If notification is not mandatory, members shall:

5.1.3.1. As soon as practicable, inform the individual of their right to have their home country notified of their detention.

5.1.3.2. If the individual requests notification, contact the nearest consulate or embassy as soon as practicable and prior to the end of shift.

5.2. Members should refer to the website for the State Department's Bureau of Consular Affairs for information regarding countries and jurisdictions with mandatory notifications.

6. Requests for and Release of Information.

6.1. Federal law prohibits the Bureau from limiting or in any way restricting the exchange of information regarding the citizenship or immigration status, lawful or unlawful, between a government official and an agency responsible for the enforcement of federal immigration laws.  However, the Bureau shall not require members to disclose or otherwise share information regarding an individual's immigration status with any federal immigration law enforcement agencies.

6.1.1. Where necessary to further the investigation of a federal, state or local crime unrelated to the enforcement of federal immigration laws, members may exchange information with investigative branches of DHS (e.g., HSI) or the federal government.  Members shall consult with their supervisor to determine whether the information sought by the immigration law enforcement agency is for a criminal investigative purpose.

6.2. Except as required by state or federal law, members shall not disclose any of the following personal information to a federal immigration law enforcement agency for the purpose of enforcing federal immigration laws:

6.2.1. A person's address;

6.2.2. A person's place of employment or work hours;

6.2.3. A person's school or school hours;

6.2.4. A person's contact information (e.g., phone number, e-mail address, social media information);

6.2.5. A person's known associates or relatives;

6.2.6. The date, time, or location of hearings, proceedings, or appointments with a person that are not matters of public record; and/or

6.2.7. Information described in Sections 6.2.1. through 6.2.6. with respect to known relatives or associates of the individual.

6.3. Members shall act in accordance with Bureau policies and applicable City Human Resources Administrative Rules (HRARs) regarding the handling of confidential information.

History:

Originating Directive Date: 09/06/01
Last Revision Signed: 02/01/18
Effective Date: 02/01/18
Next Review Date: 08/01/18