ELLEN F. ROSENBLUM
Attorney General
MARC ABRAMS  #890149
Assistant Attorney-in-Charge
Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301
Telephone: (503) 947-4700
Fax: (503) 947-4791
Email:  marc.abrams@doj.state.or.us
        Additional attorneys listed on signature page

Attorneys for Plaintiffs State of Oregon, Kate Brown, and Ellen Rosenblum

TRACY P. REEVE  #891123
City Attorney
DENIS M. VANNIER  #044406
Senior Deputy City Attorney
Portland Office of the City Attorney
1221 SW Fourth Avenue, Suite 430
Portland, OR 97204
Telephone: (503) 823-4047
Fax: (503) 823-3089
Email:  Denis.Vannier@portlandoregon.gov

Attorneys for Plaintiff City of Portland


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION


| | |
|---|---|
| THE STATE OF OREGON, KATE BROWN, Governor; ELLEN ROSENBLUM, Attorney General; and THE CITY OF PORTLAND, | Case No.  6:18-cv-01959-MC |
| Plaintiffs, | DECLARATION OF PEENESH SHAH |
| v. | |
| DONALD J. TRUMP, President of the United State, in his official capacity; MATTHEW G. WHITAKER, Acting Attorney General of the United States, in his official capacity; and the UNITED STATES OF AMERICA, | |
| Defendants. | |


Page 1 -   DECLARATION OF PEENESH SHAH
      MA/crr/9518040-v1

I, Peenesh Shah, declare:

1.      I am an Assistant Attorney General in the Appellate Division of the Oregon

Department of Justice.  I am one of the attorneys representing Plaintiffs State of Oregon, Kate

Brown, and Ellen Rosenblum.

2.      I make this declaration in support of the First Amended Complaint for

Declaratory, Injunctive, and Mandamus Relief and also in support of Plaintiff's Combined

Motion for Summary Judgment and Response to Defendant's Motion to Dismiss.  I further make

this declaration from a combination of personal knowledge and reliance upon Oregon

Department of Justice records which are regularly maintained in the ordinary course of business.

I am competent to testify to the facts herein.

3.      Attached as exhibit 1 is a true and correct copy of a letter submitted by the Mayor

of Woodburn to the Oregon House of Representatives' Rules Committee in support of 2017 HB

3464, which was codified, once enacted, at ORS 180.805.  The letter was entered as Exhibit 12

during a June 8, 2017 public hearing on the bill, and it is available on the internet at

https://olis.leg.state.or.us/liz/2017R1/Downloads/CommitteeMeetingDocument/133031.

4.      Attached as exhibit 2 is a true and correct copy of a letter written by then-Chief

Justice Thomas Balmer of the Oregon Supreme Court and submitted to the Oregon House of

Representatives' Rules Committee by then-Presiding Judge Nan Waller of the Multnomah

County Circuit Court, at a hearing on 2017 HB 3464, which was codified, once enacted, at

ORS 180.805.  The letter was entered as Exhibit 8 during a June 8, 2017 public hearing on the

bill, and it is available on the internet at

https://olis.leg.state.or.us/liz/2017R1/Downloads/CommitteeMeetingDocument/133444.  Judge

Waller referenced the letter during her testimony about problems experienced by Oregon's courts

as a result of immigration enforcement at or near Oregon's courthouses; that testimony,

beginning shortly after the 27th minute of the recorded hearing, is available on the internet at

Page 2 -    DECLARATION OF PEENESH SHAH
MA/crr/9518040-v1

Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301
(503) 947-4700 / Fax: (503) 947 -4791

http://oregon.granicus.com/MediaPlayer.php?clip_id=23909, and it explicitly references the exhibit letter shortly before the 30th minute of the recorded hearing.

    5.    Attached as exhibit 3 is a true and correct copy of a written summary of testimony given by Oregon State Representative Rocky Barilla to the Senate Judiciary Committee in support of 1987 HB 2314, which was codified after enactment at ORS 181.850 before being renumbered ORS 181A.820.  As shown by the stamp placed in the upper-right-hand corner of that written summary, it was entered as Exhibit E at a hearing before that committee on May 20, 1987.

    6.    Attached as Exhibit 4 is a true and correct copy of legislative history materials for 1987 HB 2314, which was codified after enactment at ORS 181.850 before being renumbered ORS 181A.820.

    **I declare under penalty of perjury that the foregoing is true and correct.**

    EXECUTED on March  8 , 2019.


                    _s/ Peenesh Shah_
                    _____
                    PEENESH SHAH
                    Assistant Attorney General

Page 3 -    DECLARATION OF PEENESH SHAH

Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301
(503) 947-4700 / Fax: (503) 947 -4791



# WOODBURN
### O R E G O N
*Incorporated 1889*

June 7, 2017

The Honorable Jennifer Williamson
Chair, House Rules Committee

VIA E-Mail

**Re: HB 3464**

Chair Williamson and Members of the Committee:

As Mayor of the City of Woodburn, I am writing to express my enthusiastic support for HB 3464.

Woodburn is the largest minority-majority city in the State of Oregon. The largest single minority group is Latinos. While most of Woodburn's Latino population consists of American citizens and legal residents, a smaller but still significant group are not documented or the beneficiaries of more limited residency status, such as DACA. It is important to note that both local agencies and academic researchers have found that most undocumented people in Woodburn are the family and household members of others who are citizens or legal residents.

Woodburn provides its services to residents and/or ratepayers without reference to their immigration status. Undocumented residents pay property taxes directly or through their mortgage or rent payment. They pay for sewer and water services. They may pay to have their children participate in sports or recreational activities we offer, or to participate in adult league play. We believe that in return they deserve the same quality service as any other community member.

Our Police Chief, Jim Ferraris, has been a leader in reassuring community members that they are safe when they report crimes, provide tips, or otherwise cooperate with police. He has made it clear that, for purposes of law enforcement and community policing, we do not care about a community member's immigration status. Fortunately, this approach is not just the Woodburn Police Department's internal policy, it is supported by Oregon statute. Unfortunately, policing is only one function a local government provides. We also function as a utility company, a library operator, and a recreation provider, among other things. HB3464 offers statutory support for our practices that we do not find under existing Oregon law.

I've attached a letter that I sent to Attorney General Rosenblum in March. In that, we expressed our concern about the level of fear affecting community members because of increased ICE activity and the level of rhetoric coming from the new administration in Washington, D.C. We also expressed an interest in having the Attorney General provide some direction to us and other local governments as to our rights and obligations while serving our community members who are not documented and their family and household members.

A number of the concerns that prompted my letter were the following:

1.  As stated above, we provide services without reference to immigration status. Some services are fee-for-service, and others are available to all individuals with an address within the Woodburn city limits. To do otherwise, we believe, is both unfair and potentially discriminatory. Are we on solid ground in having such a policy?

2.  We collect various types of information about community members as we work with them as a local government. People sign up for water service, a library card, or a park program. They may pay a traffic or ordinance fine, or make arrangements to pay a fine in installments. If ICE or a similar agency were to ask us for this information, we believe we face substantial potential liability whether we share such information or whether we refuse.

3.  We are concerned about people who are afraid to use our facilities or services, or allow family members to do so, because of concerns about ICE enforcement activities. We want to encourage the fullest community participation possible, but do not want to put individuals and families in harm's way. We need some direction on how to do this consistently with state and federal law.

I am pleased to see that HB 3464 addresses all of the concerns set forth above. Unfortunately, federal enforcement priorities that conflict with Oregon communities' values will continue for some time, but this legislation will offer valuable assistance to local governments as we tend to some of our most vulnerable community members.

We thank Governor Brown and Attorney General Rosenblum for their wisdom and compassion in asking that this legislation be introduced. We thank Representatives Alonso Leon and Hernandez for introducing it. We thank the co-sponsors. We believe HB 3464 deserves the Committee's favorable consideration.

Sincerely,

Kathy Figley
Mayor, City of Woodburn

Exhibit 1
Page 2 of 4



March 22, 2017

The Honorable Ellen F. Rosenblum, Attorney General
Oregon Department of Justice
1162 Court Street NE
Salem, Oregon 97301-4096

**Sent via Email and U.S. Postal Service**

Dear Attorney General Rosenblum,

Woodburn is one of Oregon's most diverse and growing communities, comprised of significant Latino, Russian, Somali and senior populations. We are a community deeply committed to the notion of family, faith and hard work. As a result, Woodburn provides a quality of life and cultural richness that few in the Northwest enjoy. We are proud of Woodburn's diversity and strong leadership.

Recently, we have seen media reports suggesting federal immigration agents are actively targeting the greater Woodburn area simply because of our Latino community. These reports have caused significant alarm and fear.

Regardless of their immigration status, many in Woodburn are fearful they will be stopped, questioned and even taken from their homes simply based on the color of their skin, lack of language skills, or because of family relationships. Many of these people are first, second and even third generation American citizens with children in our schools.

I have concluded that we need your help in explaining what rights exist for Oregon residents. Specifically, I am asking you to provide guidelines advising Oregonians of their legal rights when interacting with federal immigration agents – or any law enforcement officer – should they face questioning about their citizenship or immigration status. It is my hope the City can then relay this information to our community, helping ease fears and better empower our residents.

In Woodburn, the American Dream is alive and well with families, entrepreneurs and young people from all over the world. They have moved to Woodburn seeking freedom, education, opportunity and the ability to participate in civic life.

I appreciate your assistance and look forward to your response.

Sincerely,

Kathy Figley, Mayor
City of Woodburn

cc:  Senator Peter Courtney
     Representative Teresa Alonso Leon
     Woodburn City Council

Exhibit 1
Page 4 of 4

Thomas A. Balmer
Chief Justice



**OREGON SUPREME COURT**

1163 State Street
Salem, OR  97301-2563
Phone: 503.986.5717
Fax: 503.986.5730
Oregon Relay Service: 711
Thomas.Balmer@ojd.state.or.us

April 6, 2017

Attorney General Jeff Sessions
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC  20530-0001

The Honorable John F. Kelly
Secretary of Homeland Security
Washington, DC  20528

Dear Attorney General Sessions and Secretary Kelly:

On behalf of the Oregon Judicial Department, I write to urge you to direct federal law enforcement agencies, including Immigration and Customs Enforcement (ICE), not to arrest individuals inside or in the immediate vicinity of Oregon's county courthouses. If you are unwilling to adopt that policy, then at a minimum, I request that you formally expand the definition of "sensitive locations" in the Homeland Security Policy to include these areas.

Let me explain.  Our courthouses are open to the public, as a matter of tradition and as required by the Oregon Constitution, which provides that "justice shall be administered openly."  ICE agents and other law enforcement officers have the same access to the public areas of our courthouses as all members of the public.

I fully recognize the scope of the statutory authority of ICE and other federal law enforcement agencies. OJD's policy is scrupulous neutrality -- just as we will not hinder federal, state, or local law enforcement agencies, including ICE, in the exercise of their enforcement authority, neither can we assist federal (or other) law enforcement in apprehending those who may have violated the law. As you know, the courts strive to be -- and must be -- impartial and neutral forums for the resolution of criminal and other cases.

To help the Oregon courts preserve their mandated impartial and neutral role, I respectfully request that you exercise your broad discretion in enforcing federal immigration and criminal laws, and *not* detain or arrest individuals in or in the immediate vicinity of the Oregon courthouses.

Exhibit 2
Page 1 of 3

Letter to Attorney General Sessions
and Secretary Kelly
April 6, 2017
Page 2


    As I am sure you appreciate, the Oregon courts must be accessible to all members of the public.  The safety of individuals and families, the protection of economic and other rights, and the integrity of the criminal justice system all depend on individuals being willing and able to attend court proceedings:  a witness who is subpoenaed to testify in a criminal case; a victim seeking a restraining order against an abusive former spouse; a driver paying a traffic fine; a landlord seeking an eviction or a tenant defending against one; or a small claims court plaintiff in a dispute with a neighbor.

    The State of Oregon needs to encourage, not discourage, court appearances by parties and witnesses, regardless of their immigration status.  However, ICE's increasingly visible practice of arresting or detaining individuals in or near courthouses for possible violations of immigration laws is developing into a strong deterrent to access to the courts for many Oregon residents.  A number of our trial courts report that even attendance at scheduled hearings has been adversely affected because parties or witnesses fear the presence of ICE agents.  The chilling effect of ICE's actions deters not only undocumented residents, but also those who are uncertain about the implications of their immigration or residency status or are close family, friends, or neighbors of undocumented residents.  ICE's actions also deter appearances in court by those who are legal residents or citizens, but who do not want to face the prospect of what they see as hostile questioning based on perceived ethnicity, cases of misidentification, or other intrusive interactions with ICE agents.

    ·I understand and appreciate the difficulty of the law enforcement work that you do.  I trust that you understand as well the central role that the Oregon courts play in our state's criminal justice system, our efforts to protect children and families, and our daily work to ensure the rule of law for all Oregon residents.  ICE's detention or arrest of undocumented residents in and near Oregon's courthouses seriously impedes those efforts.  It deters individuals, some undocumented and some not, from coming to court when they should.  For that reason, I urge you to adopt a policy of *not* arresting individuals for alleged immigration violations in or near Oregon's courthouses, or, at a minimum, to formally include courthouses in your definition of "sensitive locations" where ICE will thoroughly review the implications of and alternatives to making such arrests.

Exhibit 2
Page 2 of 3

Letter to Attorney General Sessions
and Secretary Kelly
April 6, 2017
Page 3


    We appreciate the discussions that our judges and staff have had with ICE officials
in Oregon about their policies and practices, but believe this current and prospective
interference with the administration of justice in Oregon calls for policy changes that
only you can direct.

    Thank you for your attention to this serious problem for the Oregon courts.

                              Sincerely,

                              Thomas A. Balmer
                              Chief Justice


cc:  Governor Kate Brown
     Attorney General Ellen Rosenblum
     Senator Ron Wyden
     Senator Jeff Merkley
     Oregon Congressional Delegation
     Oregon Presiding Judges


Exhibit 2
Page 3 of 3

ROCKY BARILLA
DISTRICT 31

REPLY TO:
H-471 State Capitol Building
Salem, Oregon 97310-1347



COMMITTEES
Vice-Chairperson
Housing and Urban
Development

Member
Environment and Energy
State and Federal Affairs
Legislative Rules,
   Operations and Reform
Legislative Counsel

HOUSE OF REPRESENTATIVES
SALEM, OREGON
97310-1347

Testimony to be given by Rep. Rocky Barilla
Wednesday, May 20, 1987
Subject: HB 2314 Local Enforcement of Immigration Laws

Chairperson Frye and Members of the Senate Judiciary Committee:

HB 2314 clarifies the existing law prohibiting local police
from enforcing federal immigration laws.

The intent of this measure is to ensure that only the
Immigration and Naturalization Service enforces immigration law.

Immigration laws are very complex and require specialized
training in their enforcement.  Local police have neither the
authority nor the training to enforce any such laws.  The State
has enough to do in enforcing its own criminal laws.  There are
problems when local police try to enforce federal immigration
laws, to mention a few:

1.  An increased fiscal impact on cities and counties in
terms of higher costs of enforcement.

2.  There are increased litigation and insurance costs
against cities and counties for false arrests by local police.

3.  This also exacerbates the jail overcrowding problem.

4.  There are also questions of infringements upon civil
rights just because a person looks like an alien.

5.  Lastly, in the face of the new Immigration Reform Act of
1986, there would be great difficulty in trying to determine the
immigration status of an alien.

In 1977, an Attorney General's Opinion stated that neither
state nor federal law authorizes local police to initiate
investigations of, or to stop, detain or arrest persons solely
because they are suspected illegal aliens.  This bill would
codify that opinion.

What the bill does not do:

It doesn't prevent local police from arresting aliens who
are engaged in criminal activity.  Nobody should go unpunished
for criminal activity.

This bill passed the House 54-3.
I urge your support.  Thank you.

Exhibit 3
Page 1 of 1

Corrections and the Executive Department to defray the training costs of police officers and parole and probation officers and to defray the cost of the law enforcement data system. The amounts transferred under this subsection shall be deposited in the cash accounts of such agencies in accordance with an allotment plan approved by the Executive Department. [1961 c 721 §7; 1979 c.410 §7, 1987 c 320 §140]

**181.700  Legislative intent; use of funds.** It is the intent of the legislature in creating this agency to provide for the coordination of training programs for police officers, to provide for the coordination of training programs for corrections officers, to provide for the coordination of training programs for parole and probation officers and to set standards. The moneys provided in chapter 721, Oregon Laws 1961, are to be used for this purpose primarily and are not intended to replace other existing contributions to the functions outlined in ORS 181.610 to 181.700. [1961 c 721 §14, 1975 c.290 §14, 1977 c.382 §11]

**181.705  Minimum standards and training requirements not applicable to certain police officers.** The minimum standards and training requirements established pursuant to ORS 181.640 (1) do not apply to police officers commissioned by the Governor under ORS 131.880 who have served in that capacity for at least two years immediately preceding October 4, 1977. [1977 c.737 §4]

### LAW ENFORCEMENT DATA SYSTEMS ACCOUNT

**181.710  Law Enforcement Data System Account.** There is established in the General Fund of the State Treasury an account to be known as the Law Enforcement Data System Account. All moneys received by the Executive Department for development and operation of the system shall be paid to the credit of the Law Enforcement Data System Account, and such moneys are continuously appropriated for the purposes indicated. [1969 c 488 §§5, 6; 1973 c 130 §3, 1979 c 92 §5; 1981 c.59 §1]

### POLICE GENERALLY

**181.850  Enforcement of federal immigration laws.** (1) No law enforcement agency of the State of Oregon or of any political subdivision of the state shall use agency moneys, equipment or personnel for the purpose of detecting or apprehending persons whose only violation of law is that they are persons of foreign citizenship residing in the United States in violation of federal immigration laws.

(2) Notwithstanding subsection (1) of this section, a law enforcement agency may exchange information with the United States Immigration and Naturalization Service in order to:

(a) Verify the immigration status of a person if the person is arrested for any criminal offense; or

(b) Request criminal investigation information with reference to persons named in service records.

(3) For purposes of subsection (1) of this section, the Bureau of Labor and Industries is not a law enforcement agency. [1987 c 467 §1]

**Note:**  181 850 was enacted into law by the Legislative Assembly but was not added to and made a part of ORS chapter 181 or any series therein by legislative action  See Preface to Oregon Revised Statutes for further explanation.

### PENALTIES

**181.990  Penalties.** Violation of ORS 181.140 is a Class A misdemeanor. [Amended by 1971 c 743 §343]

Exhibit 4
Page 1 of 55

Chap. 467                    OREGON LAWS 1987

employes who has been authorized or designated by it for
that purpose.
    Approved by the Governor July 7, 1987
    Filed in the office of Secretary of State July 8, 1987

_____

## CHAPTER 467

### AN ACT                    HB 2314

Relating to law enforcement.
**Be It Enacted by the People of the State of Oregon:**

    **SECTION 1.** (1) No law enforcement agency of the
State of Oregon or of any political subdivision of the state
shall use agency moneys, equipment or personnel for the
purpose of detecting or apprehending persons whose only
violation of law is that they are persons of foreign cit-
izenship residing in the United States in violation of
federal immigration laws.
    (2) Notwithstanding subsection (1) of this section, a
law enforcement agency may exchange information with
the United States Immigration and Naturalization Serv-
ice in order to:
    (a) Verify the immigration status of a person if the
person is arrested for any criminal offense; or
    (b) Request criminal investigation information with
reference to persons named in service records.
    (3) For purposes of subsection (1) of this section, the
Bureau of Labor and Industries is not a law enforcement
agency.
    Approved by the Governor July 7, 1987
    Filed in the office of Secretary of State July 8, 1987

_____

## CHAPTER 468

### AN ACT                    HB 2330

Relating to real estate; amending ORS 305.230, 696.010,
    696.025, 696.162, 696.355 and 696.730.
**Be It Enacted by the People of the State of Oregon:**

    **SECTION 1.** ORS 696.010 is amended to read:
    696.010. As used in ORS 696.010 to 696.490 and
696.710 to 696.730, unless the context requires otherwise:
    (1) "Advance fee" means a fee received before the
professional real estate activity involved is completed[,
*where such activity is the listing of any real estate for sale,
lease or exchange*]. The term "advance fee" shall not
include a retainer fee paid to a real estate broker,
**appraiser** or organization to secure the availability of
such broker, **appraiser** or organization for future [*serv-
ices*] **professional real estate activity**, or a consulting
fee paid to a real estate licensee engaged to provide

consultation or advice concerning the valuation, mar-
ketability or acquisition potential of real estate.
    (2) "Bank" includes any bank or trust company,
mutual savings bank or savings and loan association that
maintains a head office or a branch in this state in the
capacity of a bank or trust company, mutual savings bank
or savings and loan association.
    (3) "Board" means the Real Estate Board.
    (4)(a) "Branch office" means a business location other
than the main office designated under ORS 696.200 (1),
where professional real estate activity is regularly con-
ducted or which is advertised to the public as a place
where such business may be regularly conducted.
    (b) Model units or temporary structures used solely
for the dissemination of information and distribution of
lawfully required public reports shall not be considered
branch offices. A model unit means a permanent residen-
tial structure located in a subdivision or development
used for such distribution and dissemination, so long as
the unit is at all times available for sale, lease, lease option
or exchange.
    (5) "Commissioner" means the Real Estate Commis-
sioner.
    (6) "Compensation" means any fee, commission, sal-
ary, money or valuable consideration for services rendered
or to be rendered as well as the promise thereof and
whether contingent or otherwise.
    (7) "Controlling shareholder" means:
    (a) Any individual who owns or controls, directly or
indirectly, a majority of the outstanding shares of a
corporate real estate organization.
    (b) Any real estate salesperson who owns shares of
stock of a corporate real estate organization, the majority
of shares of which are owned or controlled, directly or
indirectly, by real estate salespersons.
    (8) "Division" means the Real Estate Division of the
Department of Commerce.
    (9) "Inactive license" means a license which has been
returned to the commissioner and is being held by the
commissioner on an inactive status.
    (10) "Professional real estate activity" means any of
the following actions, when engaged in for another and for
compensation or with the intention or in the expectation
or upon the promise of receiving or collecting compensa-
tion, by any person who:
    (a) Sells, exchanges, purchases, rents or leases real
estate.
    (b) Offers to sell, exchange, purchase, rent or lease
real estate.
    (c) Negotiates, offers, attempts or agrees to negotiate
the sale, exchange, purchase, rental or leasing of real
estate.
    (d) Lists, offers, attempts or agrees to list real estate
for sale.
    (e) Appraises, offers, attempts or agrees to appraise
real estate.

Exhibit 4
Page 2 of 55

OREGON STATE HOUSE OF REPRESENTATIVES

LEGISLATIVE SESSION - 1987

STAFF MEASURE ANALYSIS

Measure:  HB 2314

Title: Relating to Law Enforcement

Committee:  House Judiciary

Hearing Date: 2/6/87 (sub. 2); 2/11/87 w.s.; 2/13/87 (full)

Explanation prepared by:  Bill Taylor

---

**PROBLEM ADDRESSED.**

Immigration Law is federal civil law.  It is enforced solely by
the Immigration and Naturalization Service.  INS has specialized
training in immigration law and its enforcement.  Local law
enforcement agencies have no authority to enforce immigration
laws and have been successfully challenged when they have tried.
These lawsuits have been costly to defend.

**FUNCTION AND PURPOSE OF MEASURE AS REPORTED OUT.**

This measure would codify existing law prohibiting local law
enforcement agencies from enforcing immigration laws.  There is no
fiscal impact.

**MAJOR ISSUES DISCUSSED.**

The intent of the measure is to ensure that only INS enforces
immigration law, and to verify that police have only the authority
to enforce criminal laws.  The committee discussed whether this
measure would prohibit law enforcement officials from enforcing or
assisting in enforcing state or federal criminal laws.  It
determined that this measure would not prohibit such enforcement.

**EFFECT OF COMMITTEE AMENDMENTS.**

**VOTING:**

**AYES:** Bauman, Bellamy, Bunn, Burton, Dix, Hanlon, Miller,
Phillips,Springer

**NAYS:**

**CARRIER:** Barilla

Note:  This analysis is intended for information only and has not
been adopted or officially endorsed by action of the committee.

Exhibit 4
Page 3 of 55

64th OREGON LEGISLATIVE ASSEMBLY--1987 Regular Session

# Enrolled

## House Bill 2314

Ordered printed by the Speaker pursuant to House Rule 12.00A (5). Presession filed (at the request of Joint Interim Judiciary Committee for Hispanic Political Action Committee)

CHAPTER ...................................................

AN ACT

Relating to law enforcement.

**Be It Enacted by the People of the State of Oregon:**

**SECTION 1.** (1) No law enforcement agency of the State of Oregon or of any political subdivision of the state shall use agency moneys, equipment or personnel for the purpose of detecting or apprehending persons whose only violation of law is that they are persons of foreign citizenship residing in the United States in violation of federal immigration laws.

(2) Notwithstanding subsection (1) of this section, a law enforcement agency may exchange information with the United States Immigration and Naturalization Service in order to:

(a) Verify the immigration status of a person if the person is arrested for any criminal offense; or

(b) Request criminal investigation information with reference to persons named in service records.

(3) For purposes of subsection (1) of this section, the Bureau of Labor and Industries is not a law enforcement agency.

----

Passed by House February 20, 1987

Repassed by House June 11, 1987

..........................................................................
Chief Clerk of House

..........................................................................
Speaker of House

Passed by Senate June 9, 1987

..........................................................................
President of Senate

Received by Governor:

.....................M.,.................................................., 1987

Approved:

.....................M.,.................................................., 1987

..........................................................................
Governor

Filed by Office of Secretary of State:

.....................M.,.................................................., 1987

..........................................................................
Secretary of State

Exhibit 4
Page 4 of 55

OREGON STATE SENATE

LEGISLATIVE SESSION - 1987

STAFF MEASURE ANALYSIS

Measure:  HB 2314  A-eng.

Title:  Relating to law enforcement

Committee:  Senate Judiciary

Hearing Dates:  5/20/87, 6/03/87 (w/s)

Explanation prepared by:  Eric Carlson, co-counsel

**PROBLEM ADDRESSED.**
    Immigration law is federal civil law.  It is enforced solely
by the INS.  INS agents have specialized training that state and
local police and sheriffs do not have.
    Local and state law enforcement agencies have no authority
under federal law to enforce immigration laws, and have been
successfully challenged when they have tried.
    In AG Op no. 7439, dated 28 April 1977, Jim Redden stated
that a police officer's right to stop, interrogate, or arrest a
person must be granted to the policeman by a governmental unit.
In examining Oregon law, there was no authority found for police
officers to enforce federal immigration law.
    Nevertheless, law enforcement personnel in some communities
do from time to time stop and interrogate people using immigration
law as the basis for the stop.

**FUNCTION AND PURPOSE OF MEASURE AS REPORTED OUT.**
    The measure would codify existing practice and prohibit the
use of public resources to detect or apprehend persons whose only
apparent violation of law is that they are residing in the U.S. in
violation of federal immigration law.
    The measure does provide that law enforcement agencies may
exchange information with the INS to verify immigration status and
criminal offense history.

**MAJOR ISSUES DISCUSSED.**
    Whether law enforcement agencies can be limited in the
matters they are allowed to participate in.

**EFFECT OF COMMITTEE AMENDMENTS.**
    Amendments would allow the INS to request criminal
investigation information about persons who are named in INS
records, and define the Bureau of Labor as not a law enforcement
agency for purposes of this act.

hb2314.sma

Note:  This analysis is intended for information only and has not
been adopted or officially endorsed by action of the committee.

Exhibit 4
Page 5 of 55

64th OREGON LEGISLATIVE ASSEMBLY--1987 Regular Session



*Enrolled*

A-Engrossed

# House Bill 2314

Ordered by the Senate June 5
Including Senate Amendments dated June 5

Ordered printed by the Speaker pursuant to House Rule 12.00A (5). Presession filed (at the request of Joint Interim Judiciary Committee for Hispanic Political Action Committee)

### SUMMARY

The following summary is not prepared by the sponsors of the measure and is not a part of the body thereof subject to consideration by the Legislative Assembly. It is an editor's brief statement of the essential features of the measure.

Prohibits state and local law enforcement agencies from enforcing immigration laws. Permits law enforcement agency to [*contact*] **exchange information with United States Immigration and Naturalization Service in order to verify immigration status of person arrested for criminal offense or request criminal investigation information about persons named in service records. Specifies that Bureau of Labor and Industries is not law enforcement agency for purposes of prohibition.**

### A BILL FOR AN ACT

1
2  Relating to law enforcement.
3  **Be It Enacted by the People of the State of Oregon:**
4  **SECTION 1.** (1) No law enforcement agency of the State of Oregon or of any political subdi-
5  vision of the state shall use agency moneys, equipment or personnel for the purpose of detecting or
6  apprehending persons whose only violation of law is that they are persons of foreign citizenship
7  residing in the United States in violation of federal immigration laws.
8  (2) Notwithstanding subsection (1) of this section, a law enforcement agency may exchange in-
9  formation with the United States Immigration and Naturalization Service in order to:
10  (a) Verify the immigration status of a person if the person is arrested for any criminal offense;
11  or
12  (b) Request criminal investigation information with reference to persons named in service re-
13  cords.
14  (3) For purposes of subsection (1) of this section, the Bureau of Labor and Industries is not a
15  law enforcement agency.
16

———————————

NOTE:  Matter in **bold face** in an amended section is new; matter [*italic and bracketed*] is existing law to be omitted.

Exhibit 4
Page 6 of 55

*Ordered by the Senate June 5*
*(Including Senate Amendments dated June 5*

64th OREGON LEGISLATIVE ASSEMBLY—1987 Regular Session

*A-Engrossed*

# House Bill 2314

Ordered printed by the Speaker pursuant to House Rule 12.00A (5). Presession filed (at the request of Joint Interim Judiciary Committee for Hispanic Political Action Committee)

### SUMMARY

The following summary is not prepared by the sponsors of the measure and is not a part of the body thereof subject to consideration by the Legislative Assembly. It is an editor's brief statement of the essential features of the measure **as introduced.**

Prohibits state and local law enforcement agencies from enforcing immigration laws. Permits law enforcement agency to contact United States Immigration and Naturalization Service in order to verify immigration status of person arrested for criminal offense.

1  **A BILL FOR AN ACT**

2  Relating to law enforcement.

3  **Be It Enacted by the People of the State of Oregon:**

4  **SECTION 1.** (1) No law enforcement agency of the State of Oregon or of any political subdi-

5  vision of the state shall use agency moneys, equipment or personnel for the purpose of detecting or

6  apprehending persons whose only offense is that they are persons of foreign citizenship residing in

7  the United States in violation of federal immigration laws.

8  (2) Notwithstanding subsection (1) of this section, a law enforcement agency may contact the

9  United States Immigration and Naturalization Service in order to verify the immigration status of

10  a person if the person is arrested for any criminal offense; or

11  ①

6  ①(b) Request criminal investigation information with reference

7  to persons named in service records.

8  (3) For purposes of subsection (1) of this section, the Bureau

9  of Labor and Industries is not a law enforcement agency.

NOTE:  Matter in **bold face** in an amended section is new; matter [*italic and bracketed*] is existing law to be omitted.

Exhibit 4
Page 7 of 55

64th OREGON LEGISLATIVE ASSEMBLY--1987 Regular Session

## A-Engrossed

# House Bill 2314

Ordered by the Senate June 5
Including Senate Amendments dated June 5

Ordered printed by the Speaker pursuant to House Rule 12.00A (5). Presession filed (at the request of Joint Interim
Judiciary Committee for Hispanic Political Action Committee)

### SUMMARY

The following summary is not prepared by the sponsors of the measure and is not a part of the body thereof subject
to consideration by the Legislative Assembly. It is an editor's brief statement of the essential features of the
measure.

Prohibits state and local law enforcement agencies from enforcing immigration laws. Permits
law enforcement agency to [contact] **exchange information with** United States Immigration and
Naturalization Service in order to verify immigration status of person arrested for criminal offense
**or request criminal investigation information about persons named in service records.
Specifies that Bureau of Labor and Industries is not law enforcement agency for purposes
of prohibition.**

1                                    **A BILL FOR AN ACT**

2    Relating to law enforcement.

3    **Be It Enacted by the People of the State of Oregon:**

4        **SECTION 1.** (1) No law enforcement agency of the State of Oregon or of any political subdi-

5    vision of the state shall use agency moneys, equipment or personnel for the purpose of detecting or

6    apprehending persons whose only violation of law is that they are persons of foreign citizenship

7    residing in the United States in violation of federal immigration laws.

8        (2) Notwithstanding subsection (1) of this section, a law enforcement agency may exchange in-

9    formation with the United States Immigration and Naturalization Service in order to:

10        (a) Verify the immigration status of a person if the person is arrested for any criminal offense;

11    or

12        (b) Request criminal investigation information with reference to persons named in service re-

13    cords.

14        (3) For purposes of subsection (1) of this section, the Bureau of Labor and Industries is not a

15    law enforcement agency.

16

---

NOTE:  Matter in **bold face** in an amended section is new; matter [*italic and bracketed*] is existing law to be omitted.

Exhibit 4
Page 8 of 55

64th OREGON LEGISLATIVE ASSEMBLY–1987 Regular Session

# SENATE AMENDMENTS TO
# HOUSE BILL 2314

By COMMITTEE ON JUDICIARY

June 5

1   In line 6 of the printed bill, delete "offense" and insert "violation of law".

2   In line 8, delete "contact" and insert "exchange information with".

3   In line 9, after "to" insert a colon and begin a new paragraph and insert "(a)".

4   In line 10, delete the period and insert "; or

5   "(b) Request criminal investigation information with reference to persons named in service re-
6   cords.

7   "(3) For purposes of subsection (1) of this section, the Bureau of Labor and Industries is not a
8   law enforcement agency.".

9   ————————————

Exhibit 4
Page 9 of 55

①

# SENATE COMMITTEE REPORT

DATE: *June 4, 1987*

PRESIDENT KITZHABER:

YOUR COMMITTEE ON _____ Judiciary _____ TO WHOM WAS REFERRED

_____ HB 2314 _____, HAVING HAD THE SAME

UNDER CONSIDERATION, RESPECTFULLY REPORT IT BACK RECOMMENDING:

_____ passage. (adoption)

__X__ passage (adoption) with amendments.

_____ passage with amendments to the
_____ - Engrossed measure.

_____ passage (adoption) with amendments
to resolve conflicts.

_____ without recommendation as to passage.

_____ without recommendation as to passage;
with amendments.

_____ that the measure be returned to the
President's desk pursuant to
SR 8.50. Letter attached requesting:

_____ A.  subsequent referral to
another committee; or

_____ B.  that subsequent referral
be rescinded.

_____ that the measure be printed engrossed
and rereferred to committee for
further consideration.

_____ that _____ be substituted
therefor. (SR 8.95)

_____ Other: _____

_____

_____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

_____ Subsequent referral to Committee on _____

NOT CONCURRING (SR 8.60) Senator (s) _____

Senator _____ *J. Hill* _____ will lead floor discussion.

_____
                                    Chair
              Senator Bill Frye

Submit:
2 copies if no amdts.
7 copies if amdts.

Rev. 3 87

Exhibit 4
Page 10 of 55

Legislative Counsel
HB 2314-1
(LC 1353)
5/21/87 (lc)

1          PROPOSED AMENDMENTS TO HOUSE BILL 2314

2        In line 9 ~~of the printed bill~~, after "to" insert a colon and

3    begin a new paragraph and insert "(a)".

4        In line 10, delete the period and insert "; or"

5        ~~After line 10, insert:~~

6        "(b) Request criminal investigation information with reference

7    to persons named in service records.

8        "(3) For purposes of subsection (1) of this section, the Bureau

9    of Labor and Industries is not a law enforcement agency.".

                        ********

In line 6/ of the printed bill delete "offense" and insert "violation
of law".

In line 8, delete "contact" and insert "exchange
information with".

Exhibit 4
Page 11 of 55

# HOUSE COMMITTEE REPORT

DATE: Feb. 17          , 1987

Speaker Katz

Your Committee on _____JUDICIARY_____ to whom was referred
                        (Name of Committee)

_____HB 2314_____ having had the same under consideration, respectfully reports it back:
Bill #    Engrossment

☐  WITHOUT RECOMMENDATION AS TO PASSAGE
☒  WITH RECOMMENDATION THAT IT

☒  DO PASS
☐  BE ADOPTED

☐  WITH AMENDMENTS
☐  WITH SECOND HOUSE AMENDMENTS

☐  BE REFERRED TO WAYS AND MEANS BY PRIOR REFERENCE
☐  BE REFERRED TO REVENUE AND SCHOOL FINANCE BY PRIOR REFERENCE
☐  RESCIND SUBSEQUENT REFERRAL TO COMMITTEE ON _____
☐  BE REFERRED TO COMMITTEE ON _____
☐  BE REREFERRED TO COMMITTEE ON _____
☐  _____

☐  BE PRINTED ENGROSSED

_____Rep. Barilla_____                    _Dick Springer_
    CARRIER OF MEASURE                Rep. Springer, CHAIRPERSON

submit:   4 copies if no amendments
          9 copies if amendments
retain:   1 copy for committee file

------------------------------------------------------------------------

### FOR INFORMATION ONLY - NOT PART OF COMMITTEE REPORT

VOTING AYE: Bauman, Bellamy, Bunn, Burton, Dix, Hanlon, Miller, Phillips, Springer

VOTING NO: _____

EXCUSED: _____

ABSENT: _____

------------------------------------------------------------------------

### FOR OFFICE USE ONLY

☐ _____

Exhibit 4
Page 12 of 55

64th OREGON LEGISLATIVE ASSEMBLY--1987 Regular Session

# House Bill 2314

Ordered printed by the Speaker pursuant to House Rule 12.00A (5). Presession filed (at the request of Joint Interim Judiciary Committee for Hispanic Political Action Committee)

### SUMMARY

The following summary is not prepared by the sponsors of the measure and is not a part of the body thereof subject to consideration by the Legislative Assembly. It is an editor's brief statement of the essential features of the measure **as introduced.**

Prohibits state and local law enforcement agencies from enforcing immigration laws. Permits law enforcement agency to contact United States Immigration and Naturalization Service in order to verify immigration status of person arrested for criminal offense.

1                                 **A BILL FOR AN ACT**

2 Relating to law enforcement.

3 **Be It Enacted by the People of the State of Oregon:**

4     **SECTION 1.** (1) No law enforcement agency of the State of Oregon or of any political subdi-

5 vision of the state shall use agency moneys, equipment or personnel for the purpose of detecting or

6 apprehending persons whose only offense is that they are persons of foreign citizenship residing in

7 the United States in violation of federal immigration laws.

8     (2) Notwithstanding subsection (1) of this section, a law enforcement agency may contact the

9 United States Immigration and Naturalization Service in order to verify the immigration status of

10 a person if the person is arrested for any criminal offense.

11                              ————————————

**NOTE:** Matter in **bold face** in an amended section is new; matter [*italic and bracketed*] is existing law to be omitted.

Exhibit 4
Page 13 of 55

HB 2314                    (1)

LC 1353
12/3/86  (dp)

MEASURE SUMMARY

    Prohibits state and local law enforcement agencies from
enforcing immigration laws.  Permits law enforcement agency to
contact United States Immigration and Naturalization Service in
order to verify immigration status of person arrested for criminal
offense.

 1                    A BILL FOR AN ACT

 2    Relating to law enforcement.

 3    Be It Enacted by the People of the State of Oregon:

 4        SECTION 1.   (1) No law enforcement agency of the State of

 5    Oregon or of any political subdivision of the state shall use

 6    agency moneys, equipment or personnel for the purpose of detecting

 7    or apprehending persons whose only offense is that they are persons

 8    of foreign citizenship residing in the United States in violation

 9    of federal immigration laws.

10        (2) Notwithstanding subsection (1) of this section, a law

11    enforcement agency may contact the United States Immigration and

12    Naturalization Service in order to verify the immigration status of

13    a person if the person is arrested for any criminal offense.

                        _____

Exhibit 4
Page 14 of 55

DEC 3 1 1986

Pre-session Filed                  **HOUSE BILL BACK**                Pre-session Filed
                              (Cross out inapplicable words)

_____    ~~RESOLUTION~~

_____    BILL                    NUMBER.... 2314 .......

_____    ~~MEMORIAL~~

Title:
        Relating to law enforcement

Sponsored by
Committee on:

At the request of:   All agencies, organizations and persons that have formally
                     requested the measure are named herein in accordance with ORS
                     171.127.
                        JOINT INTERIM COMMITTEE ON JUDICIARY
                        FOR
                        HISPANIC POLITICAL ACTION COMMITTEE

                                             _Dick Springer_
                        CHIEF SPONSOR/AGENCY DIRECTOR

                        REP. DICK SPRINGER, Chairperson

                        FOR INFORMATION ONLY

        Glenda Harris                      8-5962
CONTACT PERSON (please print or type)      TELEPHONE NUMBER

        ( )  Ordered printed by the Speaker pursuant to        VK
             House Rule 12.00A (5).  Pre-session Filed.        _____

        ( )  Pre-session Filed and Printed pursuant to
             House Rule 12.00A (2) (3).                        _____

        ( )  Pre-session Filed pursuant to House Rule
             12.00A (2) (6).                                   _____

Exhibit 4
Page 15 of 55

MEASURE HB2314  DATE 2 20 87

MOTION  PASSAGE X

| YEAS 54 | NAYS 3 | ABSENT 1 | EXCUSED 2 | EXCUSED-HOUSE BUSINESS 0 |
|---|---|---|---|---|

| Name | Nay | Abs | Ex. | Name | Nay | Abs | Ex. | Name | Nay | Abs | Ex. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| AGRONS | | | | GILMOUR | | | | MINNIS | | | |
| ANDERSON | N | | | GOLD | | | | NORRIS | | | |
| BARILLA | | | | HANLON | | | | PARKINSON | | | |
| BAUMAN | | | | HANNEMAN | | | | PETERSON | | | |
| BELLAMY | | | | HAYDEN | | | | PHILLIPS | | | |
| BROGOITTI | | | 1 | HOOLEY | | | | PICKARD | | | |
| BUNN | | | | HOSTICKA | | | | ROBERTS | | | |
| BURTON | | | | HUGO | | | | SAYLER | | | |
| BUTSCH | | | | JOHNSON | | | | SCHOON | | | |
| CALOURI | | | | JOLIN | | | | SCHROEDER | | | |
| CAMPBELL | | | 1 | JONES D. | | | | SHIPRACK | | | |
| CARTER | | | | JONES D. E. | | | | SIDES | | | |
| CEASE | | | | KOPETSKI | | A | | SOWA | | | |
| DIX | | | | KOTULSKI | | | | SPRINGER | | | |
| DWYER | | | | MARKHAM | | | | TRAHERN | N | | |
| EACHUS | | | | MASON | | | | VAN VLIET | | | |
| FAWBUSH | | | | MCCARTY | | | | VANLEEUWEN | | | |
| FORD | | | | MCCRACKEN | | | | WHITTY | | | |
| FRENCH | | | | MCTEAGUE | | | | YOUNG | | | |
| GILMAN | N | | | MILLER | | | | SPEAKER KATZ | | | |

1 = Excused    2 = Excused for business of the House

HOUSE ELECTRONIC
ROLL CALL

*OREGON HOUSE OF REPRESENTATIVES*
*ELECTRONIC ROLL CALL*

Exhibit 4
Page 16 of 55

MEASURE  HB2314A                    DATE  6 11 87

MOTION                              PASSAGE  X

| YEAS 58 | NAYS 1 | ABSENT 0 | EXCUSED 1 | EXCUSED-HOUSE BUSINESS 0 |

| Name | Nay | Abs. | Ex. | Name | Nay | Abs. | Ex. | Name | Nay | Abs. | Ex. |
|------|-----|------|-----|------|-----|------|-----|------|-----|------|-----|
| AGRONS | | | | GILMOUR | | | | MINNIS | | | |
| ANDERSON | | | | GOLD | | | | NORRIS | | | |
| BARILLA | | | | HAMMERSTAD | | | | PARKINSON | | | |
| BAUMAN | | | | HANLON | | | | PETERSON | | | |
| BELLAMY | | | | HANNEMAN | | | | PHILLIPS | | | |
| BROGOITTI | | | | HAYDEN | | | | PICKARD | | | |
| BUNN | | | | HOSTICKA | | | | ROBERTS | | | |
| BURTON | | | | HUGO | | | | SAYLER | | | |
| BUTSCH | | | | JOHNSON | | | | SCHOON | | | |
| CALOURI | | | | JOLIN | | | 1 | SCHROEDER | | | |
| CAMPBELL | | | | JONES D. | | | | SHIPRACK | | | |
| CARTER | | | | JONES D. E. | | | | SIDES | | | |
| CEASE | | | | KOPETSKI | | | | SOWA | | | |
| DIX | | | | KOTULSKI | | | | SPRINGER | | | |
| DWYER | | | | MARKHAM | | | | TRAHERN | N | | |
| EACHUS | | | | MASON | | | | VAN VLIET | | | |
| FAWBUSH | | | | MCCARTY | | | | VANLEEUWEN | | | |
| FORD | | | | MCCRACKEN | | | | WHITTY | | | |
| FRENCH | | | | MCTEAGUE | | | | YOUNG | | | |
| GILMAN | | | | MILLER | | | | SPEAKER KATZ | | | |

1 = Excused    2 = Excused for business of the House

HOUSE ELECTRONIC
ROLL CALL

*OREGON HOUSE OF REPRESENTATIVES*
*ELECTRONIC ROLL CALL*

Exhibit 4
Page 17 of 55

Ordered printed by the Speaker pursuant to House Rule 12.00A (5).
Presession filed

(at the request of Joint Interim Judiciary Committee for Hispanic
Political Action Committee)

Relating to law enforcement.

Engrossed .......
Printed A .......
Re-engrossed .......
Eng Re-eng .......
Printed B .......
Printed C .......
Re-eng Re-eng .......
Printed D .......
Eng Re-eng Re-eng .......
Printed E .......

ENROLLED ........ June 1.

Date

## HOUSE ACTION

READ FIRST TIME, REFERRED TO SPEAKER'S DESK    JAN 16 1987
REFERRED TO  Judiciary    REFERRED    JAN 21 1987
REPORTED BACK  FEB 18 1987    WITH THE RECOMMENDATION THAT IT
☑ DO PASS    ☐ DO PASS WITH AMENDMENT

REFERRED TO
REPORTED BACK    WITH THE RECOMMENDATION THAT IT
☐ DO PASS    ☐ DO PASS WITH    AMENDMENT

READ SECOND TIME
READ THIRD TIME AND    PASSED    FEB 20 1987
FEB 19 1987
SIGNED
CHIEF CLERK
DATE

## SENATE ACTION

READ FIRST TIME, REFERRED TO PRESIDENT'S DESK    2-23-87    REFERRED  2-24
REFERRED TO  Judiciary
REPORTED BACK  6-5-87    WITH THE RECOMMENDATION THAT IT
☐ DO PASS    ☒ DO PASS WITH AMENDMENT

REFERRED TO
REPORTED BACK    WITH THE RECOMMENDATION THAT IT
☐ DO PASS    ☐ DO PASS WITH    AMENDMENT

READ SECOND TIME  6-5-87    READ THIRD TIME AND    PASSED  6-9-87
SIGNED
SECRETARY OF SENATE
JUN 11 1987  HSE CONCURRED IN SENATE AMENDMENTS AND REPASSED

## ADDITIONAL ACTION — See Inside

Exhibit 4
Page 18 of 55

Listing of Legislative records in the Oregon State Archives pertaining to:
**1987 HB 2314** relating to: law enforcement

### HOUSE JUDICIARY SUBCOMMITTEE 2 MINUTES:

Feb 6:  p. 1-3                              Also on audio tape: 94

Feb 11:  p. 14                             Also on audio tape: 117

### HOUSE JUDICIARY FULL COMMITTEE MINUTES:

Feb 13:  p. 2-3                            Also on audio tape: 125

Separate exhibit file contains:
1. Exh. A of 2/6:  Danny Santas (HPAC) testimony.  2 pages.
2. Exh. B of 2/6:  Rep. Rocky Barilla testimony.  1 page.
3. Exh. C of 2/6:  Robert Mendoza (Commission on Hispanic Affairs) testimony. 1 page.

### SENATE JUDICIARY COMMITTEE MINUTES:

May 20:  p. 2-3                           Also on audio tape: 151, side A

Jun 3:  p. 4-5                             Also on audio tape: 170, side A

Separate exhibit file contains:

1. Exh. E of 5/20:  Rep. Rocky Barilla testimony.  1 page.
2. Exh. F of 5/20:  Danny Santos testimony.  2 pages.
3. Exh. G of 5/20:  Marilyn Coffel (BOLI) testimony.  2 pages.
4. Exh. H of 5/20:  Lee Erickson (Oregon State Police) testimony.  3 pages.
5. Exh. S of 5/20:  Robert Mendoza testimony.  1 page.
6. Exh. C of 6/3:  Staff proposed amendments.  2 pages.
7. Exh. D of 6/3:  Staff Measure Analysis.  1 page.
8. Exh. E of 6/3:  Danny Santos testimony.  1 page.

*Total minutes:* 10
*Total exhibits:* 17
***Total pages:***  27

Compiled by Todd Shaffer, Reference Archivist, September 3, 2002

Exhibit 4
Page 19 of 55

                                        Bills to be considered:
                                        HB 2195, 2288, 2314
                                        HB2093, 2087, 2062
                                        HB 2063, 2064

             HOUSE JUDICIARY COMMITTEE
                  SUBCOMMITTEE 2

February 6, 1987                        Hearing Room 350
1:30 p.m.                                 Salem, Oregon
Tapes: 94-99

MEMBERS PRESENT: REPRESENTATIVE JUDY BAUMAN
                 REPRESENTATIVE RANDY MILLER
                 REPRESENTATIVE PAUL PHILLIPS
                 REPRESENTATIVE DICK SPRINGER, ACCT. CHAIR

STAFF PRESENT:   BILL TAYLOR, CO-COUNSEL
                 GLORIA FISHER, ASSISTANT

WITNESSES:       DANNY SANTOS, HISPANIC POLITICAL ACTION COMM.
                 REPRESENTATIVE ROCKY BARILLA
                 ROBERT MENDOZA, COMMISSION ON HISPANIC AFFAIRS
                 STEPHEN PEIFER, DEPARTMENT OF JUSTICE
                 WALTER TODD, CRIMINAL DEFENSE LAWYERS ASSOC.
                 SCOTT WEINEGER, PORTLAND POLICE BUREAU
                 BILL LINDEN, STATE COURT ADMINISTRATOR
                 STEVE JACOBSON, METROPOLITAN PUBLIC DEFENDERS
                 JOHN MOSSER, COMMISSION ON THE JUDICIAL BRANCH
                 JUDGE NELY JOHNSON, COMMISSION ON THE JUDICIAL
                     BRANCH
                 NORMAN MYER, LANE CO. TRIAL COURT ADMINISTRATOR
                 BOB GELTZ, DEPARTMENT OF REVENUE
                 GERRI CHRISTENSEN, DEPARTMENT OF JUSTICE
                 PEGGY RAY, EUGENE MUNICIPAL COURT
                 ULYS STAPLETON, D.A., LINCOLN COUNTY
                 TONY DELORENZO, MOTOR VEHICLE DIVISION

000   REPRESENTATIVE SPRINGER called the hearing to order. Present
      were REPRESENTATIVES BAUMAN, MILLER, PHILLIPS, SPRINGER.
      REPRESENTATIVE BURTON WAS EXCUSED.

004   HOUSE BILL 2314 RELATING TO CRIME PREVENTION; AMENDING ORS
      131.605 AND 131.625.

      DANNY SANTOS, Hispanic Political Action Committee, said the
      bill would forbid local law enforcement people from being
      involved in enforcement of the immigration law. Immigration
      is civil in nature; the problem with law enforcement is that
      the minority, and particularly the Hispanic community, are
      subjected to harassment and invasion of privacy. The
      authority to enforce this law lies in INS and they are
      trained to do it. Local law enforcement officers are not
      trained and not up to date on the law. The result is that

Exhibit 4
Page 20 of 55

House Judiciary Committee
Subcommittee 2
February 6, 1987
Page 2

Hispanics are faced with an imposition on privacy and with
harassment. This bill would focus law enforcement on criminal
activity. It would be a financial savings, keeping time on
law enforcement, and reduce costs of liability for defense of
counties and cities against civil rights charges. Several
cases have shown that local authorities have no authority to
enforce immigration law. In the 1983 Session the Counsel for
INS said it is the role of INS to enforce immigration law. He
will supply that testimony.  (EXHIBIT A)

066   REP. ROCKY BARILLA said they see this bill as having public
      policy points; priority for law enforcement should be
      protection of life and property. Liability can be incurred
      because of improper stopping people. In terms of fiscal
      impact and priority of enforcemnt, attempted enforcement is a
      waste of person hours. In terms of prison crowding, there are
      illegal aliens who have not broken a law but are
      incarcerated. The U.S. Congress has passed the Immigration
      Reform Act which is over 100 pages and it is impossible to
      tell who is legal, who is illegal. They do not oppose
      criminal laws enforced against alliens; this bill is simply
      to prohibit enforcement of immigration law.  (EXHIBIT B)

104   ROBERT MENDOZA, COMMISSION ON HISPANIC AFFARIS, said that
      U.S. citizens are detained and harassed because of color or
      dress. The majority of law enforcement agencies do not
      attempt to enforce immigration law, but there are some who
      cause concern. This law would make clear the role of all
      local enforcement bodies.  (EXHIBIT C)

132   REPRESENTATIVE SPRINGER asked for background on the issue.
      REP. BARILLA said this bill had passed the house alost
      unanimously last Session. REPRESENTATIVE PHILLIPS asked what
      organizations are against. BARILLA said he thinks the DDA is
      opposed to the bill; sheriffs and police are on both sides.

      REPRESENTATIVE SPRINGER asked how many Hispanics are in law
      enforcement. MR. MENDOZA said there are only a handful of
      state police.  REPRESENTATIVE SPRINGER said a goal is to
      improve participaton. MR. MENDOZA said there is a need for
      understanding of Spanish. REPRESENTATIVE SPRINGER asked how
      many Hispanics in Oregon. MR. MENDOZA said there are about
      200,000.

      REPRESENTATIVE PHILLIPS asked whether the Hispanic Commission
      was involved in the Portland Police Bureau training program
      on Spanish. MR. M. did not know. MR. MENDOZA said he had
      asked Chief Harrington regarding the Bureau's enforcement of
      immigration law and she responded that they would not be
      involved.

Exhibit 4
Page 21 of 55

House Judiciary Committee
Subcommittee 2
February 6, 1987
Page 3

REPRESENTATIVE MILLER asked how this bill compared to the
last bill. REP. BARILLA said it is nearly identical, there
are some changes. The vote in the House in 1985 was 59-1.

194     REPRESENTATIVE SPRINGER called to order the hearing on House
        Bill 2195 RELATING TO CRIME PREVENTION; AMENDING ORS 131.605
        AND 131.625.

        STEPHEN PEIFER said that police officers who stop persons to
        issue minor citations cannot frisk for weapons and have been
        shot. This bill would provide protection. In the case of less
        than an ounce of marijuana, the officer cannot presume that
        the person is involved in other drug activity so cannot
        frisk.  There are many reasons why a person stopped in a non-
        criminal situation may want to resist, ie parole violators.
        It is not authority to conduct a full search, but an
        extension of stop and frisk to allow a pat-down. There must
        be articulable reasons why the officer performs the frisk.
        The stop and frisk was enacted in 1973; at that time all
        traffic offenses were crimes so officers were protected.
        This statute does not create constitutional problems.

300     WALTER TODD, OCDLA, said the likelihood of abuse by officers
        is clear. It is not his position that there would be bad
        faith but the potential is there to make frisks when the
        totality of factors is not present. The primary example would
        be where, as in Marion County, there is a list of targetted
        persons. The police officer, being aware, could make a stop
        for a routine traffic violation and create a situation for a
        frisk. The 4th Amendment guarantees freedom from
        unreasonable search and seizure. Finding a hard object would
        lead to a search. There is an interest of the citizenry in
        remaining free of search. The citizen would not have to make
        any type of move or statement to make the officer believe he
        had a weapon or contraband. This would permit an officer to
        search a person with a suspected offense -- could include
        city ordinances, traffic, etc. This does not mean that an
        officer does not have the ability to frisk if he has probably
        cause to believe the person has a weapon or other illegal
        goods.

409     REPRESENTATIVE SPRINGER asked if Mr. Tood was a DA in Oregon.
        MR. TODD replied that he was a DA in Marion County.
        REPRESENTATIVE SPRINGER asked if an officer felt something
        that contained contraband, would that evidence be admissible
        if the person was charged. MR.  TODD said it would if the
        person was arrested. If the office felt an object he thinks
        might contain drugs, he could say that was his belief. The
        probable cause might be stretched to that point.
        REPRESENTATIVE SPRINGER asked if an officer's reasonable
        belief is challenged, and the officer is testifying under
        oath, who often is his belief of probable cause not
        sustained. MR.  TODD said the judge will stretch it to the
        absolute limit to support the officer. REPRESENTATIVE

Exhibit 4
Page 22 of 55

House Judiciary Committee
Subcommittee 2
February 6, 1987
Page 11

one or two other bills. One imposes additional penalties.
REPRESENTATIVE SPRINGER asked if he has any sense of the
record of convictions for driving without insurance. MR.
DELORENZO will provide this information. He said the number
of convictions is up substantially.

MR. PHILLIPS MOVED THAT HB 2064 BE ADOPTED WITH A DO PASS
RECOMMENDATION. AYS: BAUMAN, MILLER, PHILLIPS, SPRINGER.
NOS: NONE. EXCUSED: BURTON.

MR. DELARENZO said in 1986 there were 13,943 convictions for
driving uninsured. In 1985 there were 7,898. A fine can be
imposed; the person has to file proof of insurance for 3
years. A mandatory suspension follows an uninsured accident.

REPRESENTATIVE SPRINGER said another work session will be
scheduled in about a week to deal with HB 2062 and HB 2063.

Submitted by,

Gloria Fisher,
Assistant

EXHIBITS:

A - HB 2314: Testimony of Danny Santos, HPAC
B - HB 2314: Testimony of Rep. Rocky Barilla
C - HB 2314: Testimony of Robert Mendoza, Commission on Hispanic
            Affairs
D - HB 2195: Testimony of Stephen Peifer, Justice Department
E - HB 2087: Statement in support, Commission on the Judicial
            Branch.
F - HB 2087: Criminal and Quasi-criminal fines, fees, etc.
G - HB 2087: Typical Assessments/Distribution
H - HB 2087: Propsoed Amendment, Multnomah Co. Victims Assistance
            Unit, District Attorney's Office.
I - HB 2087: Positive effects, Judicial Department
J - HB 2087: Proposed amendments, Department of Revenue
K - HB 2087: Testimony of Gerri Christensen, Crime Victims
            Program, Justice Department.
L - HB 2062: Statement, Motor Vehicle Division
M - HB 2063: Statement, Motor Vehicle Division
N - HB 2062: Blood alcohol levels in other jurisdictions
O - HB 2064: Profile of uninsured drivers (Archives only)

Exhibit 4
Page 23 of 55

HOUSE JUDICIARY
Bill No. 2314 . Pages 2
Exhibit A Date 2/6/87
Presented by Santos

February 6, 1987

To:    House Judiciary Committee
From:  Danny Santos, State President of HPAC
Re:    House Bill 2314

Dear Committee Members:

The Hispanic Political Action Committee is concerned about the
enforcement of federal immigration laws by local, county and
state law enforcement agencies. Such attempts by Oregon officials
to enforce these federal laws has had an adverse affect on
community relations with the Hispanic citizenry. We believe that
HB 2314 will help solve this problem and we respectfully request
your support.

## THE LAW
Under the United States Constitution's Pre-emption Clause, the
Immigration and Naturalization Act (8 USC 1101 et.seq.), U.S.
Attorney General Bell's Opinion, Oregon Attorney General Redden's
Opinion (No. 7439, April 28, 1977), and several court decisions,
it is clear that state and local law enforcement officers have no
authority to enforce federal immigration laws. The authority to
enforce immigration laws is delegated to the Immigration and
Naturalization Service (INS) under 8 USC 1357.

## THE PROBLEMS
The majority of law enforcement agencies seem to understand the
law and do not attempt to enforce immigration laws. However, some
local law enforcement agencies have attempted to enforce
immigration laws by themselves or in conjunction with the INS.
The justification for these illegal practices are threefold: 1)
they have done it in the past and do not understand why they can
not continue to do so; 2) they are sworn to uphold the laws of
this country and they are doing so by looking for illegal aliens;
3) they do not understand the law because there is no state
statute covering this matter. The statutes, legal opinions, and
the courts all indicate that such rationales are invalid. In
Oregon there have been several lawsuits regarding these
illegalities [Trevino v. City of Independence Police and Polk
County Sheriff (1977)].

## RAMIFICATIONS OF ILLEGAL ENFORCEMENT
1) Hispanic and other ethic minorities, citizen and non-citizen
alike, are detained, interrogated, and harassed by local law
enforcement agencies on the basis of skin color, language, and
dress. This is a violation of one's right to privacy and equal
protection. Hispanics and other minorities are treated as second
class citizens.

 **Hispanic Political Action Committee**

Exhibit 4
Page 24 of 55

2) Local law enforcement agencies are not trained in immigration law. Local police are usually trained only in criminal law which remains fairly constant. Immigration law, however, is not criminal, but civil law, and is constantly changing. INS agents are specially trained in the enforcement of immigration laws. (Please note that local law enforcement agencies do not enforce the federal tax laws which are also civil)

3) High priority criminal law enforcement and investigation is being subdued for the purpose of enforcing low priority, non-criminal matters. This does not set well with the local taxpayers, especially the Hispanic taxpayers, when local law enforcement agencies are trying to justify their budgets.

4) Local governments run the risk of incurring liability for violating a person civil rights. Governments then have to expend monies out of their coffers in defending these types of cases. They are also quite time consuming. In most cases, a local government's insurance does not cover civil rights violations, and therfore, additional legal costs will be incurred.

## THE BILL ITSELF
The purpose of this bill is to resolve the problem of local law enforcement agencies attempting to enforce federal immigration laws. The bill would be a restatement of what the law is and will give an Oregon statute citation as to what the law is. Hopefully, this bill will assist law enforcement agencies in better understanding what the law is. The bill would reiterate the fact that only the INS has the authority to enforce federal immigration laws. The bill would not interfere with law enforcement agencies' enforcement of criminal laws. Under the bill, local police are allowed to contact INS if an alien is arrested in a criminal matter.

## LEGISLATIVE BACKGROUND
This bill passed the House as HB 2450 in 1983 by a vote of 40-11 and passed the House in 1985 as HB 2337 by a vote of 54-1.

If we may be of any further assistance on this bill or any other matter, please do not hesitate to contact us.

>           Rebecca Crocker           Danny Santos
>           Legislative Liaison       State President
>           362-7905                  370-8889/6057

Thank you for your consideration and service.

Exhibit 4
Page 25 of 55



**HOUSE OF REPRESENTATIVES**
SALEM, OREGON
97310

Testimony to be given by Rep. Rocky Barilla
Friday, Feb. 6, 1987
Subject: HB 2314

Dear Chairperson Springer and House Judiciary Members,

This measure clarifies that only the Immigration and
Naturalization Service can enforce federal immigration laws, and
codifies that police have only the authority to enforce criminal
laws.

There is no authority for local law enforcement agencies to
enforce immigration laws.  Immigration law is federal civil law
which is enforced only by the Immigration and Naturalization
Service.  Law enforcement agencies have authority to enforce
criminal law.  ORS 181.030 (1) states that "The Department of
State Police and each member of the Oregon State Police shall be
charged with enforcement of <u>all criminal laws</u>."  No mention is
made of whether the term "all criminal laws" means violations of
federal law.  Local police have no authority to enforce other
federal civil laws, for example, the Federal Clean Water Act.

There is an Attorney General's Opinion of April 28th, 1977,
stating that state and local law enforcement officers have no
authority to enforce United States Statutes and regulations
regarding immigration and naturalization.  A state or local
enforcement officer may only stop and detain a suspected alien if
the officer has probable cause to do so for possible violations
of a state or local criminal law.

Immigration law is a federal, not a state and local, issue.
The state and local governments have enough to do with enforcing
their own laws and regulations.  A high priority for the law
enforcement is protection of persons and property.

Exhibit 4
Page 26 of 55



*Commission on Hispanic Affairs*

695 SUMMER STREET NE., SALEM, OREGON 97310    PHONE 373-7397

VICTOR ATIYEH
GOVERNOR

HOUSE JUDICIARY
Bill No. 2314
C
Presented by     Mendoza
Pages    1
Date   2/6/87

February 6, 1987

To: Committee Members
From: Commission on Hispanic Affairs

Dear Committee:

The Commission on Hispanic Affairs would like to take this
opportunity to lend their support to House Bill 2314. The
Commission on Hispanic Affairs does not believe that the
enforcement of federal immigration laws by our local law
enforcement agencies is in the best interest of our state
because of the adverse effect it has had and would have on our
Hispanic citizenry. We therefore urge your support on House
Bill 2314.

While most of the controversy today is over illegal
immigration there is hardly any discussion of LEGAL
immigration into this country. The ramifications of ILLEGAL
ENFORCEMENT is such that Hispanics and other ethnic
minorities, including United States citizens, are detained,
interrogated, and harassed by local law enforcement agencies
on the mere bases of color, language, and dress, a clear
violation of one's constitutional rights. Hispanics, whether
they be American citizens or legal immigrants are entitled to
the same rights and protections as any other citizen. Local
police are usually only trained in criminal law, immigration
law, however, is not criminal, but civil law which is
constantly changing. Further more, local governments have to
expend money out of there own pockets to pursue this type of
law enforcement. High priority criminal law enforcement and
investigation moneys have been and would be diverted for the
purpose of enforcing low priority, non-criminal matters.

The majority of law enforcement agencies seem to know and
understand the Law and do not attempt to enforce immigration
law, and those agencies do not concern us. However, It is the
local law enforcement agencies that have attempted to enforce
immigration law on their own or in conjunction with the INS
that cause us to have grave concern. We of the Hispanic
Commission respectfully urge your support of House Bill 2314
on the basis that this law would put into perspective for all
local law enforcement agencies in the State of Oregon their
role in the enforcement of federal immigration law. House Bill
2314 is a restatement of what the Law is and will give an
Oregon statute citation of what the law is. Thank you.

Robert Mendoza

Commissioner

Exhibit 4
Page 27 of 55

                                        HB 2331, 2383, 2389,
                                          2393


                    HOUSE JUDICIARY COMMITTEE
                         SUBCOMMITTEE 2

February 11, 1987                    Hearing Room 350
1:30 p.m.                            Salem, Oregon

                                     Tapes 112-117


MEMBERS:            REP. MIKE BURTON, CHAIR
                    REP. JUDITH BAUMAN
                    REP. RANDY MILLER
                    REP. PAUL PHILLIPS
                    REP. DICK SPRINGER


STAFF PRESENT:      BILL TAYLOR, COUNSEL
                    DEBORAH FLAGER, ASSISTANT


WITNESSES:          RON MCCARTY, STATE REPRESENTATIVE, DISTRICT 16
                    EDWARD S. MCGLONE, OREGON BOARD OF DENTISTRY
                    DON ORR, POLAR CRYOGENICS
                    BILL DWYER, STATE REPRESENTATIVE, DISTRICT 42
                    RICK KOTULSKI, STATE REPRESENTATIVE, DISTRICT 22
                    LARRY SOWA, STATE REPRESENTATIVE, DISTRICT 26
                    TEX SHIVELY, PRIVATE CITIZEN
                    JOHN NICHOLS, OREGON STATE RIFLE AND PISTOL
                        ASSOCIATION
                    BRYAN JUDY, NATIONAL RIFLE ASSOCIATION
                    LEONARD ZYGAR, PRIVATE CITIZEN
                    LARRY LORD, MARION COUNTY SHERIFF'S ASSOCIATION
                    JOHN MINNIS, STATE REPRESENTATIVE, DISTRICT 20
                    SY KORNBRONDT, FEDERATION OF OREGON PAROLE
                        AND PROBATION OFFICERS
                    MARY BOTKIN, AFSCME
                    MICHAEL LINCICUM, PRIVATE CITIZEN
                    LT. JAMES STEVENSON, OREGON STATE POLICE
                    VINITA HOWARD, MOTOR VEHICLES DIVISION
                    BRADD SWANK, OREGON JUDICIAL DEPARTMENT
                    DON FORDYCE, U.S. BANK
                    MARK MCDUNNELL, GOVERNOR'S DUII TASK FORCE
                    JANE AIKEN, GOVERNOR'S DUII TASK FORCE

Exhibit 4
Page 28 of 55

House Judiciary Committee
Subcommittee 2
February 11, 1987
Page 14

said there might be many groups competing for the funds and
he indicated that in probation and diversion hearings people
say they cannot afford treatment.  Proceeds might go for
treatment.

108   BILL TAYLOR asked if Oregon constitution would prohibit the
proceeds from going to pay administrative costs.  MR.
MCDUNNELL said he was not aware of that provision.  MS. AIKEN
said they have not researched that issue because they have
not drafted the forfeiture legislation but they will look for
that information and would provide to counsel.

122   REPRESENTATIVE BURTON closed the hearing on HB 2389 and
called a brief recess at 4:25 p.m.

HB 2314 - RELATING TO LAW ENFORCEMENT.

137   REPRESENTATIVE BURTON reopened the meeting at 4:36 p.m.

144   REPRESENTATIVE SPRINGER made a motion to move to full
committee with a do pass recommendation.   The motion was
seconded by REPRESENTATIVE BAUMAN.  THE MOTION PASSED WITHOUT
OBJECTION.

156   REPRESENTATIVE BURTON closed the hearing at 4:40 p.m.

Submitted by,

*Deborah Flager*

Deborah Flager
Committee Assistant

EXHIBITS:

A - HB 2331, testimony, Edward McGlone

B - HB 2393, testimony, Rep. Larry Sowa

C - HB 2393, testimony, Tex Shively

D - HB 2393, testimony, Leonard Zygar

E - HB 2393, concealed weapon permit application, Leonard Zygar

F - HB 2383, testimony, John Minnis

Exhibit 4
Page 29 of 55

House Judiciary Committee
Subcommittee 2
February 11, 1987
Page 15

G — HB 2389, testimony, Michael Lincicum

H — HB 2389, testimony, Lt. James Stevenson

I — HB 2389, testimony, Vinita Howard

J — HB 2389, testimony, Bradd Swank

Exhibit 4
Page 30 of 55

HOUSE COMMITTEE ON JUDICIARY


February 13, 1987                          HEARING ROOM 350
TAPE 125                                   STATE CAPITOL


MEMBERS PRESENT: REP. DICK SPRINGER, Chair
                 REP. TOM HANLON, Vice-Chair
                 REP. JUDITH BAUMAN
                 REP. BILL BELLAMY
                 REP. STAN BUNN
                 REP. MIKE BURTON
                 REP. DAVE DIX
                 REP. RANDY MILLER
                 REP. PAUL PHILLIPS

STAFF PRESENT:   BILL TAYLOR, Legal Counsel
                 GLENDA HARRIS, Chief Committee Assistant

005   REPRESENTATIVE SPRINGER called the meeting to order at 1:40.
      All members were present.

      REPRESENTATIVE SPRINGER noted the list of bill drafts which
      is before the committee for possible introduction today.
      (Exhibit A).

022   MOTION: REPRSENTATIVE BUNN moved introduction of the bills
      which were listed, with the caveat that approval for
      introduction indicates no position whatsoever as it relates
      to the merits of the legislation, as contained therein.

      VOTE: The motion passed without objection.

WORK SESSION

      HOUSE BILL 2064 - Relating to motor vehicles

031   BILL TAYLOR, Counsel reviewed HB 2064 for the full committee.


050   MOTION:  REPRESENTATIVE BURTON Moved HB 2064 to the House
      Floor with a do pass recommendation.

      VOTE:  The motion passed in a roll call vote.  All members
      were present and voted AYE.  Reprsentative Bauman will carry
      the bill.

Exhibit 4
Page 31 of 55

Page 2
House Judiciary Committee
February 13, 1987

HOUSE BILL 2314 - Relating to law enforcement

063    COUNSEL TAYLOR reviewed HB 2314 for the full committee. He
said this bill is the same as the bill which passed out of
this committee two years ago

REPRESENTATIVE BURTON moved HB 2314 to House Floor with a Do
Pass recomendation.

077    REPRESENTATIVE HANLON said it was understanding there has
occurred recently, activity within the jurisdiction of
Oregon, on the Columbia river - people without green cards,
Canadian citizens - that may be in conflict with some of the
activities that occur in the state of Oregon and work
performed by citizens of the United States, involving the
loading and unloading of timber based resources.  He asked if
this bill would affect Oregon's ability to deal with this
situation.

COUNSEL TAYLOR indicated he thought it codified the existing
opinion.  He read from the Attorney General's Opinion 38,
7/5/77.  He thought this bill would save many state and local
officials from the possibility of suit for acting illegally.

106    REPRESENTATIVE HANLON clarified there might be other laws
involved relating to labor laws, separate and apart from the
immigration laws, and Counsel was saying this would not
affect the state's ability to get involved in the situation
he had described.

115    REPRESENTATIVE MILLER asked if the termonology "initiate
enforcement activities" would in any way distinquish the
initiation of enforcement activities versus somehow or at
some point they were asked to participate after such
proceedings had been initiated.

COUNSEL said that in his opinion, there would be no
distinction - they could not initiate nor could they
participate in any stage.

123    REPRESENTATIVE BELLAMY referred to lines 8-10 which allows
them to contact, particularly for the purpose of their file.
He agreed that it would not allow any law enforcement agency
in this state to participate; if the feds were going to do a
roundup, they would do it with their own vehicles and their
own officers.

136    REPRESENTATIVE BURTON said Section 1 clarified there was no
use of agency moneys, personnel or resources; in Section 2,
however, if a person was arrested in the commission of a
different crime, and a check was made wtih INS, he thought
that would be an opportunity for INS to follow up. That is
not initiating, that is checking status.

Exhibit 4
Page 32 of 55

Page 3
House Judiciary Committee
February 13, 1987

150    VOTE:  The motion passed in a roll call vote.  All members
       were present and voted AYE.

158    REPRESENTATIVE PHILLIPS questioned when the Committee might
       be looking at committee rules.

       REPRESENTATIVE SPRINGER asked that if any members had any
       sugggestions on how rules ought to be drafted, they get those
       suggestions to him or to staff the first part of next week.
       He said he would anticipate scheduling full comittee not
       later than the end of next week to take up that matter.

172    REPRESENTATIVE SPRINGER adjourned the hearing at 1:55 PM.

                                   Submitted by,


                                   Glenda Harris,
                                   Chief Assistant

EXHIBITS:

A - List of drafts submitted for bill introduction, Staff.

Exhibit 4
Page 33 of 55

```
                                                    BILLS CONSIDERED:
                                                    SB 219, 566, 847
                                                    HB 2291, 2293,
                                                    2298, 2304, 2314,
                                                    2724
```

SENATE COMMITTEE ON JUDICIARY
64th LEGISLATIVE SESSION

May 20, 1987                                        Hearing Room 343
Tapes 151-153                                       State Capitol


MEMBERS PRESENT:            SENATOR WILLIAM (BILL) FRYE, CHAIRMAN
                            SENATOR JAN WYERS, CO-CHAIRMAN
                            SENATOR JOHN BRENNEMAN
                            SENATOR PETER BROCKMAN
                            SENATOR JOYCE COHEN (EXCUSED)
                            SENATOR JEANNETTE HAMBY
                            SENATOR JIM HILL

STAFF PRESENT:              ERIC CARLSON, ADMINISTRATOR
                            PAM WATTS, COMMITTEE ASSISTANT

WITNESSES:                  SENATOR CLIFFORD TROW
                            REPRESENTATIVE ROCKY BARILLA
                            DANNY SANTOS, HISPANIC POLITICAL ACTION COMMITTEE
                            KELLY HAGAN, BUREAU OF LABOR
                            LEE ERICKSON, OREGON STATE POLICE
                            SENATOR LARRY HILL
                            BONNIE SMITH
                            REPRESENTATIVE PAUL PHILLIPS
                            BOB OLESON, OREGON STATE BAR
                            DIANA GODWIN, OREGON STATE BAR
                            THAD GUYER, MEDFORD ATTORNEY
                            DAVID MARCUS, OREGON ASSOCIATION OF ADMINISTRATIVE LAW
                                JUDGES
                            TERRY ROGERS, LEGAL AID
                            BRADD SWANK, STATE COURT ADMINISTRATOR'S OFFICE
                            RICHARD BRAY, OREGON ASSOCIATION OF PROCESS SERVERS
                            JIM SWANSON, LINCOLN CREDIT
                            RON SOMERS, OREGON STATE BAR
                            JASON CROWE, OREGON ASSOCIATION OF PROCESS SERVERS
                            BOB DONALDSON, SALEM ATTORNEY

---

TAPE 151, SIDE A

009     CHAIRMAN BILL FRYE called the meeting to order at 5:07 p.m. Present at that
        time were SENATORS FRYE and WYERS and COUNSEL CARLSON.


WORK SESSION
SB 219 - Relating to public records

016     SENATOR CLIFF TROW read his written testimony (EXHIBIT A) in support of
        amendments to Section 3, Subsection (1)(O) proposed by the State System of
        Higher Education. He referred to written testimony by Hewlett-Packard Company
        and Tektronix, Inc. in support of the proposed amendments (EXHIBITS B and C).

Exhibit 4
Page 34 of 55

Page 2
Senate Committee
on Judiciary
May 20, 1987

5:10    SENATOR BROCKMAN arrived.

052     SENATOR TROW urged amendment of SB 219 in order to protect higher education
        research and project design so that researchers have some guarantee that their
        work can proceed without being stolen or interfered with.

057     CHAIRMAN FRYE asked if Senator Trow's concern was to page 3, lines 32-33.
        SENATOR TROW agreed.

060     SENATOR TROW referred to the amendment proposed by the Oregon State System of
        Higher Education (EXHIBIT D).

5:11    SENATOR BRENNEMAN arrived.

**PUBLIC HEARING**
HB 2314 - Relating to law enforcement

095     REPRESENTATIVE ROCKY BARILLA testified in support of HB 2314 and paraphrased
        his written testimony (EXHIBIT E).

5:16    SENATOR HAMBY arrived.

120     REPRESENTATIVE BARILLA continued reading his testimony.

127     CHAIRMAN FRYE asked if HB 2314 would prevent an officer from taking an illegal
        alien into custody if he was stopped on probable cause and the officer
        determined there was no probable cause to make an arrest, but in the course of
        the authorized identification gathering process, the officer found that this
        person was an illegal alien. REPRESENTATIVE BARILLA answered yes and said the
        present policy with the Oregon State Police is that they will not arrest a
        person on that basis. If there was a reason to arrest the person, the police
        would arrest him and then call Immigration authorities.

138     DANNY SANTOS, representing the Hispanic Political Action Committee, summarized
        his written testimony in support of HB 2314 (EXHIBIT F). MR. SANTOS said the
        purpose of HB 2314 is to resolve the problem of local law enforcement agencies
        attempting to enforce federal immigration laws.

158     CHAIRMAN FRYE referred to a letter by the Bureau of Labor and Industries
        proposing an amendment to HB 2314 (EXHIBIT G).

164     REPRESENTATIVE BARILLA was aware of the proposed amendment and had no problem
        with it.

167     SENATOR HAMBY recalled that a bill was introduced last session dealing with
        confidentiality of school records and preventing local law enforcement agents
        from entering schools and pulling out suspected aliens. MR. SANTOS believed
        that bill had passed last session.

175     KELLY HAGAN, representing the Bureau of Labor and Industries, submitted
        proposed amendments by the Bureau (EXHIBIT G). He said they would consider it
        a severe if not fatal restriction of their enforcement efforts in farm labor
        contracting if they were considered a law enforcement agency under this bill.

Exhibit 4
Page 35 of 55

Page 3
Senate Committee
on Judiciary
May 20, 1987

187    LT. LEE ERICKSON, representing the Oregon State Police Criminal Division,
paraphrased his written testimony in opposition to HB 2314 (EXHIBIT H). They
are in opposition to the bill due to wording in Section 2. He advised that the
Oregon State Police, by written policy, does not involve itself in the
enforcement of federal immigration laws. He said Section 2 would prohibit
their ability to contact the U.S. Immigration and Naturalization Service during
an investigation, many times where an illegal immigrant is the victim of the
crime.

208    CHAIRMAN FRYE asked if striking the words on line 10 beginning with "if" would
take care of this.

212    OFFICER ERICKSON said the OSP would like to have the ability to contact the
U.S. Immigration and Naturalization Service to request investigative
information with reference to persons named in their files.

216    CHAIRMAN FRYE asked Representative Barilla and Lt. Erickson to work on proposed
language.

**PUBLIC HEARING**
**SB 847 - Relating to land sale contract foreclosure**

227    SENATOR LARRY HILL, chief sponsor of SB 847, introduced Bonnie Smith, a
constituent, and read his written testimony (EXHIBIT I). SENATOR HILL said SB
847 would add remedies for forfeitures under land sales contracts. He
explained that it would add provisions that when a purchaser had an unpaid
balance of 100%, there is a 10-day period from delivery of the notice to the
time that forfeiture is accomplished, and if the purchaser has an unpaid
balance between 90-100%, there is a 30-day period, and then the existing law of
a 60-day period would take over when the purchaser has an unpaid balance on the
contract of more than 75% but less than 90%. SENATOR HILL suggested in
Subsection 4 that proceedings initiated pursuant to this new language have
priority on the court docket of jurisdiction over all other cases except those
given equal or greater status by statute. SENATOR HILL explained that
accomplishing a forfeiture is difficult and the remedy through court is very
slow, and landlord-tenant law does not apply in the case of land sales
contracts. He said SB 847 would help speed up resolution to these problems.

285    BONNIE SMITH, a real estate broker and small investor, testified in support of
SB 847. She explained that currently if a buyer signs an earnest money to move
into a property and agrees to make a down payment at a certain time and does
not make it, there is no way to get that buyer off the property, that landlord-
tenant law does not apply, and the seller has to go through circuit court to
get the buyer out of the property, which often takes 9-10 months to accomplish.
MS. SMITH said it cost her thousands of dollars to get the buyer off her
property and she had no remedies to enforce the buyer to even pay rent. She
felt this might be remedied by putting a clause in the land sales contract to
the effect that if a buyer does not live up to his obligations, then he would
come under SB 847 or the landlord-tenant law.

309    CHAIRMAN FRYE asked Mrs. Smith if the prospective buyer in the case she talked
about signed an actual contract. MS. SMITH said the buyer signed only an
earnest money agreement and he did not follow through and do anything as

Exhibit 4
Page 36 of 55

Page 14
Senate Committee
on Judiciary
May 20, 1987

**PUBLIC HEARING**
SB 307 – Relating to administrative procedures

145    CHAIRMAN FRYE said the public hearing on SB 307 would be put on as the first
       item on the 5/21/87 agenda.

**WORK SESSION**
HB 2298 – Relating to perpetuation of testimony by deposition

157    COUNSEL CARLSON explained that HB 2298 would provide a procedure by which an
       attorney may serve notice that he wishes to take a deposition to perpetuate
       testimony; the notice requirements are the same as for any other deposition; if
       an opposing attorney objects, he files an objection with the court and a
       hearing is set, the objections are presented and the party which noticed the
       perpetuation deposition then has the burden of showing that it is appropriate.
       The purpose of the bill is to add flexibility to the current law on
       perpetuation depositions which currently can only be taken if there is a
       showing that the witness essentially will not be able to attend for primarily
       physical reasons. COUNSEL CARLSON said HB 2298 recognizes that the interest of
       the witness should be taken into account as well as the interests of the judge,
       plaintiff, defendant, and attorneys.

182    **MOTION:**          SENATOR HAMBY moved HB 2298 to the floor with a Do Pass
                            recommendation.

       **VOTE:**           In a roll call vote, all members present voted AYE, with
                            SENATOR COHEN excused. The motion passed.

185    CHAIRMAN FRYE adjourned the meeting at 7:22 p.m.

                                      Submitted by,

                                      *Pam Watts*
                                      Pam Watts
                                      Committee Assistant

                                      Reviewed by,

                                      *Eric Carlson*
                                      Eric Carlson
                                      Committee Administrator

**EXHIBIT SUMMARY**
A  – Testimony, Sen. Cliff Trow, SB 219
B  – Written Testimony, Jerry Fisher, SB 219
C  – Written Testimony, Gary Conkling, SB 219
D  – Written Testimony, Oregon State System of Higher Education, SB 219
E  – Testimony, Rep. Rocky Barilla, HB 2314
F  – Testimony, Danny Santos HB 2314
G  – Proposed Amendment, Marilyn Coffel, HB 2314
H  – Testimony, Lee Erickson, HB 2314
I  – Testimony, Sen. Larry Hill, SB 847
J  – Letter, Thad Guyer, HB 2724

Exhibit 4
Page 37 of 55

```
K  - Testimony, Max Rae, HB 2304
L  - Testimony, Terry Rogers, HB 2304
M  - Revised SB 566 with Proposed Amendments, Bradd Swank, SB 566
N  - Proposed Amendments, Bradd Swank, SB 566
O  - Memorandum, Staff, SB 566
P  - List of Process Servers, Richard Bray, SB 566
Q  - Testimony, Jim Swanson, SB 566
R  - Written Testimony, Mark Comstock, SB 566
MATERIALS SUBMITTED BUT NOT REFERRED TO
S  - Written Testimony, Commission on Hispanic Affairs, HB 2314
T  - Written Testimony, Harrison Latto, SB 847
U  - Written Testimony, Kris Gorsuch, SB 847
V  - Written Testimony, Eric Yandell, SB 847
W  - Written Testimony, Karen Wisenor, SB 566
X  - Written Testimony, R.P. Bray, SB 566
Y  - Written Testimony, Bruce Bray, SB 566
Z  - Written Testimony, Jeff Campbell, SB 566
AA - Written Testimony, Elaine Dunlap-Heer, SB 566
BB - Written Testimony, Jim Bushling, SB 566
CC - Written Testimony, Carl Stecker, SB 566
DD - Written Testimony, Robert Neuberger, HB 2298
EE - Written Testimony, Orrin Ormsbee, HB 2298
```

Exhibit 4
Page 38 of 55

ROCKY BARILLA
DISTRICT 31

REPLY TO:
H-471 State Capitol Building
Salem, Oregon 97310-1347



SENATE JUDICIARY

Bill No. HB 2314
E
....nted by Rep. Rocky Barilla

COMMITTEES
Vice-Chairperson:
Housing and Urban
Development
Member:
Environment and Energy
State and Federal Affairs
Legislative Rules,
Operations and Reform
Legislative Counsel

## HOUSE OF REPRESENTATIVES
### SALEM, OREGON
### 97310-1347

**Testimony to be given by Rep. Rocky Barilla**
Wednesday, May 20, 1987
Subject: **HB 2314 Local** Enforcement of Immigration Laws

Chairperson Frye and Members of the Senate Judiciary Committee:

HB 2314 clarifies the existing law prohibiting local police from enforcing federal immigration laws.

The intent of this measure is to ensure that only the Immigration and Naturalization Service enforces immigration law.

Immigration laws are very complex and require specialized training in their enforcement. Local police have neither the authority nor the training to enforce any such laws. The State has enough to do in enforcing its own criminal laws. There are problems when local police try to enforce federal immigration laws, to mention a few:

1. An increased fiscal impact on cities and counties in terms of higher costs of enforcement.

2. There are increased litigation and insurance costs against cities and counties for false arrests by local police.

3. This also exacerbates the jail overcrowding problem.

4. There are also questions of infringements upon civil rights just because a person looks like an alien.

5. Lastly, in the face of the new Immigration Reform Act of 1986, there would be great difficulty in trying to determine the immigration status of an alien.

In 1977, an Attorney General's Opinion stated that neither state nor federal law authorizes local police to initiate investigations of, or to stop, detain or arrest persons solely because they are suspected illegal aliens. This bill would codify that opinion.

What the bill does not do:

It doesn't prevent local police from arresting aliens who are engaged in criminal activity. Nobody should go unpunished for criminal activity.

This bill passed the House 54-3.
I urge your support. Thank you.



Exhibit 4
Page 39 of 55

April 30, 1987

SENATE JUDICIARY
Bill No. ~~HB 2314~~    Pages    2
Exhibit    F    Date    5/20/87
Presented by    Danny Santos

To:      Senate Judiciary Committee
From:    Danny Santos, State President of HPAC
Re:      House Bill  2314

APR 3 0 REC'D

Dear Committee Members:

The Hispanic Political Action Committee is concerned about the
enforcement of federal immigration laws by local, county and
state law enforcement agencies.  Such attempts by Oregon
officials to enforce these federal laws has had an adverse
affect on community relations with the Hispanic citizenry.
We believe that HB 2314 will help solve this problem and we
respectfully request your support.  We ask that you schedule
a hearing for HB 2314 at your earliest possible convenience.

The following will provide you with background on the current
situation and the need for the bill.

**THE LAW**
Under the United States Constitution's Preemption Clause, the
Immigration and Naturalization Act (8 USC 1101 et.seq.), U.S.
Attorney General Bell's Opinion, Oregon Attorney General Redden's
Opinion (No. 7439, April 28, 1977), and several court decisions,
it is clear that state and local law enforcement officers have
no authority to enforce federal immigration laws.  The authority
to enforce immigration laws is delegated to the Immigration
and Naturalization Service (INS) under 8 USC 1357.

**THE PROBLEMS**
The majority of law enforcement agencies seem to understand the
law and do not attempt to enforce immigration laws.  However,
some local law enforcement agencies have attempted to enforce
immigration laws by themselves or in conjuction with the INS.
The  justification for these illegal practices are threefold:
1) they have done it in the past and do not understand why
they can not continue to do so; 2) they are sworn to uphold
the laws of this country and they are doing so by looking for
illegal aliens; 3) they do not understand the law because
there is no state statute covering this matter.  The statutes,
legal opinions, and the courts all indicate that such rationales
are invalid.  In Oregon there have been several lawsuits regard-
ing these illegalities[(Trevion v. City of Independence Police
and Polk County Sheriff (1977).]

**RAMIFICATIONS OF ILLEGAL ENFORCEMENT**
1) Hispanic and other ethic minorities, citizen and non-citizen
alike, are detained, interrogated, and harassed by local law
enforcement agencies on the basis of skin color, language, and
dress.  This is a violation of one's right to privacy and equal
protection.  Hispanics and other minorities are treated as
second class citizens.

2)  Local law enforcement agencies are not trained in immigration
law.  Local police are usually trained only in criminal law which



**HPAC Hispanic Political Action Committee**

Exhibit 4
Page 40 of 55

remains fairly constant.  Immigration law, however, is not criminal, but civil law, and is constantly changing.  INS agents are specially trained in the enforcement of immigration laws.  (Please note that local law enforcement agencies do not enforce the federal tax laws which are also civil).

3)  High priority criminal law enforcement and investigation is being subdued for the purpose of enforcing low priority, non-criminal matters.  This does not set well with the local taxpayers, especially the Hispanic taxpayers, when local law enforcement agencies are trying to justify their budgets.

4)  Local governments run the risk of incurring liability for violating a person's civil rights.  Governments then have to expend monies out of their coffers in defending these types of cases.  They are also quite time consuming.  In most cases, a local government's insurance does not cover civil rights violations, and therefore, additional legal costs will be incurred.

**THE BILL ITSELF**
The purpose of this bill is to resolve the problem of local law enforcement agencies attempting to enforce federal immigration laws.  The bill would be a restatement of what the law is and will give an Oregon statute citation as to what the law is .  Hopefully, this bill will assist law enforcement agencies in better understanding what the law is.  The bill would reiterate the fact that only the INS has the authority to enforce federal immigration laws.  The bill would not interfere with law enforcement agencies' enforcement of criminal laws.  Under the bill, local police are allowed to contact INS if an alien is arrested in a criminal matter.

**LEGISLATIVE BACKGROUND**
This bill passed the House on February 20, 1987 by a vote of 54-3.

If we may be of any further assistance on this bill or any other matter, please do not hesitate to contact us:

                    Hispanic Political Action Committee
                    P.O. Box 161
                    Salem, Oregon  97308

Thank you for your consideration and service.

Exhibit 4
Page 41 of 55

SENATE JUDICIARY
Bill No. *HB 2314*   Pages *2*
Exhibit *G*   Date *5/20/87*
Presented by *Marilyn Coffel*



# BUREAU OF LABOR AND INDUSTRIES
### Mary Roberts, Commissioner

Senate Judiciary                    April 14, 1987

**1 5 APR 1987**

Senator Bill Frye, Chair                    HB 2314
Senate Judiciary Committee
S217 State Capitol
Salem, Oregon 97310-1437

Dear Senator Frye & Members:

I would like to bring to your attention a potential conflict in state policy in regard to HB 2314 and Oregon's farm labor contractor statute. Current farm labor contractor law prohibits farm labor contractors from knowingly employing an alien not legally present or employable in the United States. In order to enforce this statute, the Bureau has found it necessary to accompany representatives of the Immigration and Naturalization Service (INS) when they check farm and forest labor crews for citizenship status. Although the Bureau does not assist in apprehending these persons, it might be interpreted that the Bureau does assist in the detection of such persons.

Because the bill contains no definition of a "law enforcement agency", my concern is that we could be defined as such. This interpretation could severely restrict the enforcement of that section of the Farm Labor Contractor Law as to render the statute useless. Only the INS has the statutory authority to determine the legality of an individual's citizenship and it is for this reason we accompany them.

The Bureau has revoked several licenses for violation of this law. Therefore, to ensure no possible conflicts, I will propose an amendment to HB 2314. The amendment would add a subsection (3) as follows on line 11:

"(3)  For purpose of subsection (1) of this section, the

Bureau of Labor and Industries is not a law enforcement

agency."

---

**PORTLAND**
1400 SW 5th Avenue
Portland, Oregon 97201

**SALEM**
3865 Wolverine St. NE; E-1
Salem, Oregon 97310

**EUGENE**
165 E. 7th Street, Suite 220
Eugene, Oregon 97401

**MEDFORD**
700 E. Main
Medford, Oregon 97504

**COOS BAY**
320 Central Ave., Suite 510
Coos Bay, Oregon 97420

**BEND**
1230 NE Third, Suite A244
Bend, Oregon 97701

**PENDLETON**
700 SE Emigrant, Suite 240
Pendleton, Oregon 97801

AN EQUAL OPPORTUNITY EMPLOYER

Exhibit 4
Page 42 of 55

Senator Frye
April 14, 1987
page 2


    When the bill is proposed for hearing, I will be there to testify and submit the above amendment.  I would appreciate your consideration of this proposal.

                                      Sincerely,

                                        Marilyn Coffel
                                        Executive Assistant

MC:cp

cc:  Members
     Senate Judiciary Committee

Exhibit 4
Page 43 of 55



SENATE JUDICIARY
Bill No. _HB_ _2314_ Pages _3_
Exhibit _H_
Presented by _lee erickson_ Date _5/20/87_

NEIL GOLDSCHMIDT
GOVERNOR

## *Department of State Police*

PUBLIC SERVICE BUILDING, SALEM, OREGON 97310

May 19, 1987

Senator William (Bill) Frye
Chairman
Senate Judiciary Committee
Salem, Oregon

Chairperson Frye, Committee Members, for the record, I am
Lieutenant Lee C. Erickson, Assistant Division Commander
of the Oregon State Police Criminal Division.    The
Department opposes House Bill 2314.

The Oregon State Police, by policy, does not enforce
federal immigration laws.    The only immigration issues
that the Department addresses are those surrounding
criminal behavior by illegal aliens.    This bill, however,
would hamper the Department's ability to conduct a
criminal investigation; and, for that reason, we must
oppose the bill as it is written.

The Department periodically initiates investigations into
a wide assortment of crimes including, but not limited
to, homicide, narcotic violations, burglary rings, sex
crimes, and other crimes against persons.    It is not

Exhibit 4
Page 44 of 55

House Bill 2314
Page 2

uncommon that illegal aliens are involved in some of these investigations. During the course of the investigation, it may be necessary to identify those involved and to verify their immigration status through INS. This bill under Section II would prohibit the Department from contacting United States Immigration and Naturalization Service unless the person is arrested. This would needlessly hamper the Department's investigations. Current investigations, such as the investigation being conducted by Marion County Sheriff's Office of an unidentified murder victim who is of apparent Mexican nationality and the Klamath Falls State Police investigation of a murdered hispanic citizen, could potentially be hampered if law enforcement agencies were restricted in their ability to contact the Naturalization Service for investigative assistance.

Certainly, the completed Rajneesh investigation depended in a large part on the contact with, and participation of, Immigration officials.

In closing, the Department of State Police, by written rules, adheres to Section I of the proposed law, but must oppose the bill for the limitations set forth in Section II.

Exhibit 4
Page 45 of 55

House Bill 2314
Page 3

Chairperson and Committee Members, this concludes my
testimony; if you have any questions, I will be free to
answer them.

Exhibit 4
Page 46 of 55



SENATE JUDICIARY
Bill No. HB 2314       Pages _____
Exhibit _____ 5 _____ Date 5/20/87
_____ Commission on Hispanic Affairs

*Commission on Hispanic Affairs*

695 SUMMER STREET NE., SALEM, OREGON 97310   PHONE 373-7397

To: Committee Members                    May 20, 1987
From: Commission on Hispanic Affairs

Dear Committee:

The Commission on Hispanic Affairs would like to take this
opportunity to lend their support to House Bill ~~2514~~. The 
Commission on Hispanic Affairs does not believe that the
enforcement of federal immigration laws by our local law
enforcement agencies is in the best interest of our state
because of the adverse effect it has had and would have on our
Hispanic citizenry. We therefore urge your support on House
Bill 2514.

While most of the controversy today is over illegal
immigration there is hardly any discussion of LEGAL
immigration into this country. The ramifications of ILLEGAL
ENFORCEMENT is such that Hispanics and other ethnic
minorities, including United States citizens, are detained,
interrogated, and harassed by local law enforcement agencies
on the mere bases of color, language, and dress, a clear
violation of one's constitutional rights. Hispanics, whether
they be American citizens or legal immigrants are entitled to
the same rights and protections as any other citizen. Local
police are usually only trained in criminal law, immigration
law, however, is not criminal, but civil law which is
constantly changing. Further more, local governments have to
expend money out of there own pockets to pursue this type of
law enforcement. High priority criminal law enforcement and
investigation moneys have been and would be diverted for the
purpose of enforcing low priority, non-criminal matters.

The majority of law enforcement agencies seem to know and
understand the Law and do not attempt to enforce immigration
law, and those agencies do not concern us. However, It is the
local law enforcement agencies that have attempted to enforce
immigration law on their own or in conjunction with the INS
that cause us to have grave concern. We of the Hispanic
Commission respectfully urge your support of House Bill 2514
on the basis that this law would put into perspective for all
local law enforcement agencies in the State of Oregon their
role in the enforcement of federal immigration law. House Bill
2514 is a restatement of what the Law is and will give an
Oregon statute citation of what the law is. Thank you.

Robert Mendoza

Commissioner

Exhibit 4
Page 47 of 55

Bills considered:
SB 909, HB 2171, 2293, 2394
2297, 2304, 2314, 2336, 2522,
2724, 2949, HJR 26

SENATE COMMITTEE ON JUDICIARY
64th LEGISLATIVE SESSION

June 3, 1987                                          Hearing Room 343
Tapes 170 - 171                                      State Capitol

MEMBERS PRESENT:        SEN. WILLIAM (BILL) FRYE, CHAIRMAN
                        SEN. JAN WYERS, CO-CHAIRMAN
                        SEN. JOHN BRENNEMAN
                        SEN. PETER BROCKMAN
                        SEN. JOYCE COHEN (excused)
                        SEN. JEANNETTE HAMBY
                        SEN. JIM HILL

STAFF PRESENT:          ERIC CARLSON, ADMINISTRATOR
                        JANE BEYER-HAYNES, COMMITTEE ASSISTANT

WITNESSES:              BETTY REYNOLDS, Executive Director of the Ethics Commission
                        ROGER MARTIN, Capitol Club
                        DAVE BARROWS, Capitol Club
                        FRANK BRONNER, Oregon Bankers Association
                        GREG MCMURDO, Oregon State Bar

TAPE 170, SIDE A

010     CHAIRMAN BILL FRYE called the meeting to order at 5:11 p.m.  Present at that
        time were SENATORS BRENNEMAN, BROCKMAN, HAMBY and HILL.

WORK SESSION
HB 2171 A-eng., relating to ethics

5:12    SEN. WYERS entered.

019     COUNSEL CARLSON said the Senate President's office has suggested an amendment
        to this bill, identified as the -3 amendments (EXHIBIT A).  The amendment
        addresses the issue of 16 hours or $50 of lobbying; the concern was that an
        organization of some kind might break that up between two or more individuals
        and as an organization, evade the limit.  This amendment would cover whole
        organizations, whether or not they are comprised of more than one individual.
        He suggested adopting the language in concept and allowing him to work with
        Legislative Counsel to make the language grammatically correct.  He stated that
        Roger Martin of the Capitol Club had testified in favor of the amendments (see
        minutes of 5-26-87).  Common Cause sent a letter to the committee indicating
        support of the bill (EXHIBIT B).  He referred members to an annotated version
        of the bill from Betty Reynolds (Ex. A, 5-26-87) which explains all the
        changes.  He stated that most of the changes the bill makes are clarifications,
        and any substantive changes are very minor and were necessitated by the
        clarifications.

044     SEN. BROCKMAN asked Ms. Reynolds how a corporation or association spends 16
        hours "doing something".

048     BETTY REYNOLDS, Executive Director of the Ethics Commission, explained that the
        amendment attempts to address a circumstance in which a group called Voters for
        Oregon Timber Resources launched a letter writing campaign encouraging

Exhibit 4
Page 48 of 55

Page 4
Senate Committee on
Judiciary
June 3, 1987

## HB 2304 A-Engrossed, relating to administrative procedures

356    COUNSEL CARLSON said the bill sets up a commission to study contested case proceedings, to report on the role of hearings officers and administrative law judges and to review the whole issue of ex parte communications.

SEN. WYERS stepped out.

CHAIRMAN FRYE stated this bill was in lieu of the other three bills which would make substantial changes in the procedures.

362    **MOTION**          SEN. BROCKMAN moved HB 2304 to the Floor with a do pass recommendation.

**VOTE:**          In a roll call vote, all members present voted aye.  Excused were Senators Cohen, Hill and Wyers.  (NOTE:  In a subsequent motion, it was unanimously agreed to allow Sen. Hill to cast an AYE vote on this bill.  See Tape Count 438, this tape.)

368    SEN. HAMBY suggested the committee may want to request that the subsequent referral to Ways and Means be rescinded.

COUNSEL CARLSON said the requestors of the bill had asked that it be rescinded.

**MOTION:**          CHAIRMAN FRYE moved to write to the President's office to request rescision of the subsequent referral to Ways and Means.

**VOTE**          There were no objections, and the motion passed.

5:36    SEN. HILL returned.

## HB 2314, relating to law enforcement

380    CHAIRMAN FRYE stated there had been no opposition to this bill that he knew of, even though the topic was coming back for the third session.

390    SEN. BRENNEMAN confirmed through Counsel Carlson that the −1 amendments (**EXHIBIT C**) were the ones from Rep. Barilla and the State Police.  COUNSEL CARLSON responded to a question from SEN. HAMBY by stating that the Bureau of Labor and Industries' amendments also show up in the −1 amendments.

404    **MOTION**          SEN. HAMBY moved adoption of the −1 amendments (as printed).

**VOTE**          There were no objections and it was so ordered.

408    COUNSEL CARLSON paraphrased his staff measure analysis (**EXHIBIT D**)  which suggests and explains the hand-written amendments on Ex. C.

A letter from Danny Santos of the Hispanic Political Action Committee supporting the proposed amendments was entered as **EXHIBIT E**.

**MOTION**          SEN. HAMBY moved adoption of the hand-written amendments contained on the hand-engrossed HB 2314 (pg. 2, Ex. C).

Exhibit 4
Page 49 of 55

Page 5
Senate Committee on
Judiciary
June 3, 1987

**VOTE**          There being no objections, the motion was passed.

425    **MOTION**        SEN. HAMBY moved HB 2314 as amended to the Floor with a do
                  pass recommendation.

       **VOTE:**         In a roll call vote, all members present voted aye.  Excused
                  were Senators Cohen and Wyers.

438    SEN. HILL asked to be recorded as an AYE vote on the last two bills which were
       passed out of committee while he was out of the room.  Hearing no objection,
       CHAIRMAN FRYE said it was allowed.

**HB 2293, relating to courts**

449    COUNSEL CARLSON said this bill was proposed by the Oregon State Bar to deal
       with cases filed in the wrong court.  Under current law, if a case is misfiled,
       it is then dismissed and started over in the right forum.  The bill establishes
       a transfer procedure rather than dismissal and refiling.

468    SEN. HAMBY said she had a note from the State Court Administrator stating his
       opposition to the bill (**EXHIBIT F**).  She added that she had no problem with it.
       CHAIRMAN FRYE commented that Mr. Linden is one of the attorneys who doesn't
       have to pay for Professional Liability Insurance, and he couldn't get caught up
       in making these mistakes.  CHAIRMAN FRYE said the bill would save people whose
       lawyers occasionally make a mistake and file in the wrong court.  He stated he
       couldn't see that it does anything to the court system.

491    **MOTION**        SEN. BRENNEMAN moved HB 2293 to the Floor with a do pass
                  recommendation.

       **VOTE**          In a roll call vote, all members present voted AYE.  Sen.
                  Cohen was excused.

       NOTE:  A letter from Chief Judge Joseph opposing the bill was entered as
       **EXHIBIT G**; a statement in support from the Oregon State Bar was entered as
       **EXHIBIT H**.

**TAPE 171, SIDE A**

**HB 2297, relating to financial statements**

037    COUNSEL CARLSON said this bill from the Bar adds an option for a ten year
       financing statement under the UCC.  He said the Banking Association proposed
       amendments which are identified as the -6 amendments (**EXHIBIT I**).

       COUNSEL CARLSON said in addition to the -6 amendments, the sentence beginning
       at the end of line 31 and continuing through line 33 of pg. 3 of the printed
       House Amendments needs to be deleted.  He said that would cure a number of
       problems that both the Bankers and the Bar discovered, and would not damage
       anybody.  He said Dianna Godwin of the OSB, the Secretary of State and Frank
       Brawner of the Bankers Assoc. have worked out this amendment.

       **MOTION**        CHAIRMAN FRYE moved to amend the House Amendments by
                  deleting the sentence beginning at the end of line 31, pg. 3
                  and continuing through line 33.

Exhibit 4
Page 50 of 55

Page 9
Senate Committee on
Judiciary
June 3, 1987

459     SEN. HAMBY said she would agree that $2,500 is not much these days and asked
        what type of cases go to small claims court.  CHAIRMAN FRYE said usually
        neighborhood disputes, bill collection, etc.

470     SEN. BRENNEMAN said he uses small claims court mainly for collection of unpaid
        bills because by the time you turn an account over to a collection agency, and
        they take half, there's not much left.  The filing fee is low, and he thinks
        it's an effective system.

**TAPE 170, SIDE B**

009     CHAIRMAN FRYE said by and large, most small claims do not involve bill
        collecting, but are two-bit disputes over small things.  Raising the limit to
        $2,500 would allow for a lot of property damage suits and tort liability cases
        that would tend to bog down the system.

022     SEN. WYERS said he would vote for the bill if he could have assurance that it
        wouldn't flood the small claims court in Multnomah County.  CHAIRMAN FRYE said
        the bill would have some investigation done on it and be rescheduled.

036     SEN. BRENNEMAN withdrew his motion.

038     CHAIRMAN FRYE adjourned at 6:12 pm.

Submitted by,                                    Reviewed by,

Susan C. Drago                                   Eric Carlson
Chief Committee Assistant                        Committee Administrator

**EXHIBIT SUMMARY**

A -     Proposed amendments, LC -3 (6/1/87), Staff and others, HB 2171
B -     Testimony, Oregon Common Cause, HB 2171
C -     Proposed amendments, LC -1 (5/21/87), Staff, Rep. Barilla and others, HB 2314
D -     Staff Measure Analysis, Counsel Carlson, HB 2314
E -     Written testimony, Hispanic Political Action Committee, HB 2314
F -     Letter in opposition, State Court Administrator, HB 2293
G -     Letter commentary, Chief Judge Joseph, HB 2293
H -     Statement in support, Oregon State Bar, HB 2293
I -     Proposed amendments, LC -6 (6/3/87), Oregon Bankers Association, HB 2297
J -     Staff Measure Analysis, Counsel Carlson, HB 2336
K -     Proposed amendments, LC -6 (5/29/87), Greg McMurdo, HB 2336

Exhibit 4
Page 51 of 55

SENATE JUDICIARY
Bill No. ~HB 2314~    Pages ____ 2 ____
Exhibit ____ C ____    Date ____ 6-3-87 ____    Legislative Counsel
Presented by _Staff, Rep. Barilla & others_    HB 2314-1
(LC 1353)
5/21/87 (lc)

1                PROPOSED AMENDMENTS TO HOUSE BILL 2314

2        In line 9 of the printed bill, after "to" insert a colon and

3    begin a new paragraph and insert "(a)".

4        In line 10, delete the period and insert "; or".

5        After line 10, insert:

6        "(b) Request criminal investigation information with reference

7    to persons named in service records.

8        "(3) For purposes of subsection (1) of this section, the Bureau

9    of Labor and Industries is not a law enforcement agency.".

                         ********

In line 6, delete "offense" and insert "violation of law".


In line 8, delete "Contact" and insert "exchange information with".

Exhibit 4
Page 52 of 55

64th OREGON LEGISLATIVE ASSEMBLY--1987 Regular Session

# House Bill 2314

Ordered printed by the Speaker pursuant to House Rule 12.00A (5). Presession filed (at the request of Joint Interim Judiciary Committee for Hispanic Political Action Committee)

### SUMMARY

The following summary is not prepared by the sponsors of the measure and is not a part of the body thereof subject to consideration by the Legislative Assembly. It is an editor's brief statement of the essential features of the measure as introduced.

Prohibits state and local law enforcement agencies from enforcing immigration laws. Permits law enforcement agency to contact United States Immigration and Naturalization Service in order to verify immigration status of person arrested for criminal offense.

### A BILL FOR AN ACT

Relating to law enforcement.

Be It Enacted by the People of the State of Oregon:

SECTION 1.  (1) No law enforcement agency of the State of Oregon or of any political subdivision of the state shall use agency moneys, equipment or personnel for the purpose of detecting or apprehending persons whose only ~~offense~~ violation of law is that they are persons of foreign citizenship residing in the United States in violation of federal immigration laws.

(2) Notwithstanding subsection (1) of this section, a law enforcement agency may ~~contact the~~ exchange info with United States Immigration and Naturalization Service in order to verify the immigration status of a person if the person is arrested for any criminal offense; or

(b) Request criminal investigation information with reference to persons named in service records

(3) For purposes of subsection (1) of this section, the Bureau of Labor and Industries is not a law enforcement agency.

NOTE:  Matter in **bold face** in an amended section is new; matter [*italic and bracketed*] is existing law to be omitted.

Exhibit 4
Page 53 of 55

SENATE JUDICIARY

Bill No. _HB 2314_    Pages ___1___
OREGON STATE SENATE    Date _6-3-87_
Presented by    PRELIMINARY: _Staff_
LEGISLATIVE SESSION - 1987    COMMITTEE
USE
ONLY

### STAFF MEASURE ANALYSIS

Measure:  HB 2314

Title:  Relating to law enforcement

Committee:  Senate Judiciary

Hearing Dates:  5/20/87, 6/03/87 (w/s)

Explanation prepared by:  Eric Carlson, co-counsel

---

**PROBLEM ADDRESSED.**
    Immigration law is federal <u>civil</u> law.  It is enforced solely
by the INS.  INS agents have specialized training that state and
local police and sheriffs do not have.
    Local and state law enforcement agencies have no authority
under <u>federal</u> law to enforce immigration laws, and have been
successfully challenged when they have tried.
    In opinion number 7439, dated 28 April 1977, A.G. Jim Redden
stated that a police officer's right to stop, interrogate, or
arrest a person must be granted to the policeman by a governmental
unit.  In examining <u>Oregon</u> law, there was no authority found for
police officers to enforce federal immigration law.
    Nevertheless, law enforcement personnel in certain
communities do from time to time stop and interrogate people using
immigration law as the basis for the stop.

**FUNCTION AND PURPOSE OF MEASURE AS <u>Printed</u>.**
    The measure would codify existing practice and prohibit the
use of public resources to detect or apprehend persons whose only
apparent violation of law is that they are residing in the U.S.
in violation of federal immigration law.
    The measure does provide that law enforcement agencies may
contact the INS to verify immigration status of people who are
arrested for a criminal offense.

**AMENDMENTS.**
    Rep. Barilla and Lt. Erickson of the OSP have worked out an
amendment which would allow the INS to request criminal
investigation information about persons who are named in INS
records.
    Cory Streisinger of the Gov's office suggests replacing
"offense" on line 6 with "violation of law", since an offense is
criminal, and immigration law is civil.
    I would suggest replacing "contact" on line 8 with "exchange
information with".  This would emphasize that information either
the INS or local officials could initiate the contact.

hb2314sm.pre
06/03/87

Note:  This analysis is intended for information only and has not
been adopted or officially endorsed by action of the committee.

Exhibit 4
Page 54 of 55

SENATE JUDICIARY

Bill No. _HB 2314_

Exhibit _____E_____

Presented by _Danny Santos, HPAC_

Date _6-3-87_

June 2, 1987

To:     Senator William Frye, Chair, Senate Judiciary Committee
        Committee Members, Senators: Jan Wyers; John Brenneman; Peter Brockman;
        Joyce Cohen; Jeannette Hamby; Jim Hill.
Re:     Support of HB 2314

Thank you for the opportunity to testify in support of HB 2314 at the hearing
on May 20, 1987. Likewise, your consideration of the bill at the work session
scheduled for June 3 is appreciated.

At this time I just wished to inform you that the Hispanic Political Action
Committee has no problems with the two amendments that were submitted to the
committee at the May 20th hearing. The first amendment was from the Bureau of
Labor and Industries requesting that the Bureau not be defined as an "law
enforcement agency" under the bill so as to allow it to enforce its rules. The
second amendment was proposed by the State Police requesting that law
enforcement agencies be given the ability to contact the Immigration and
Naturalization Service while conducting a _criminal_ investigation.

It is our hope that you can support the bill and send it to the Senate floor
with a "do pass" recommendation. Your consideration and support are deeply
appreciated. If HPAC can be of any further assistance in this or any other
matter, please do not hesitate to contact us.

Thank you.

Sincerely,

Daniel P. Santos
Hispanic Political Action Committee
P.O. Box 161
Salem, Oregon 97308

**IHPAC Hispanic Political Action Committee**

Exhibit 4
Page 55 of 55