ELLEN F. ROSENBLUM
Oregon Attorney General
MARC ABRAMS #890149
Assistant Attorney-in-Charge
Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301
Telephone: (503) 947-4700
Fax: (503) 947-4791
Email: marc.abrams@doj.state.or.us
      Additional attorneys listed on signature page

Attorneys for Plaintiffs State of Oregon, Kate Brown, and Ellen Rosenblum

TRACY P. REEVE #891123
City Attorney
DENIS M. VANNIER #044406
Senior Deputy City Attorney
Portland Office of the City Attorney
1221 SW Fourth Avenue, Suite 430
Portland, OR 97204
Telephone: (503) 823-4047
Fax: (503) 823-3089
Email: Denis.Vannier@portlandoregon.gov

Attorneys for Plaintiff City of Portland

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| THE STATE OF OREGON; KATE BROWN, Governor; and ELLEN ROSENBLUM, Attorney General; and THE CITY OF PORTLAND, | Case No. 6:18-cv-01959-MC |
|         Plaintiffs, | DECLARATION OF VERONICA NORDEEN |
|    v. | |
| DONALD J. TRUMP, President of the United State, in his official capacity; JEFFERSON BEAUREGARD SESSIONS III, Attorney General of the United States, in his official capacity; and the UNITED STATES OF AMERICA, | |
|         Defendants. | |

Page 1 – DECLARATION OF VERONICA NORDEEN

I, Veronica Nordeen, declare as follows:

1.       I am the grants analyst with the Portland Police Bureau. I have held this position since March 2007. In this capacity, I am responsible for the grants management for the Portland Police Bureau.  This includes writing and producing grant applications for federal, state, and local grant programs; production of Intergovernmental Agreements, Memoranda of Understanding, and ordinances; budget preparation and management; procurement with federal dollars; subrecipient monitoring; contract management; financial analysis of multiple grant program expenses for reimbursement eligibility; and Finance Section Chief for the bureau's Incident Management Team.

2.       The City of Portland ("City") has applied for and been awarded grants as a qualifying unit of local government under the Byrne JAG program every year from Federal FY2005 through Federal FY2017.

3.       The City has used its allocated Byrne JAG award funds to hire and/or retain bureau professional personnel, including most recently two victim advocates and two public safety aides for the Detective Division Sex Crimes Unit in support of the Department of Justice, Office of Justice Programs, Bureau of Justice Sexual Assault Kit Initiative.  Grant funds allowed the bureau to contract with a local treatment provider for prostitution outreach and prevention for six years and with several gang outreach agencies for outreach and prevention with FFY 2009 American Recovery and Reinvestment Act of 2009 (ARRA) JAG grant funds. The Bureau has used JAG funds to purchase Tasers, tactical and bullet proof vests, ballistic helmets, DVD tactical medic kits, bicycles and gear the Bicycle Patrol Units, Alarms Unit software, and Global Positioning System (GPS) units for their airplanes.

4.       The City has historically acted as fiscal agent and passed funds through to subrecipients Multnomah County and the City of Gresham. Under ARRA JAG 2009, the City passed funds through to the City of Troutdale and the City of Fairview, in addition to Multnomah County and the City of Gresham.  Multnomah County has used the Byrne JAG award funds to

Page 2  −  DECLARATION OF VERONICA NORDEEN

retain a full time Neighborhood Deputy District Attorney assigned to the Bureau's North Precinct; a full time Parole and Probation officer; and hire or retain Sheriff's Office deputies. The City of Gresham Police Department has used the funds for officer overtime; program expenses for "Every 15 Minutes," which is designed to educate high school students on the dangers of drinking and driving; and a 3-D scanner for the Police Department's Investigations Unit.

5.      Attached to this declaration as Exhibit 1 is a true and correct copy of the Edward Byrne Memorial Justice Assistance Grant Program FY 2017 Local Solicitation.

6.      The City of Portland responded to the FY 2017 Byrne JAG solicitation on September 5, 2017, prior to the solicitation deadline of September 5, 2017, 5:00 p.m. eastern time.

7.      Attached to this declaration as Exhibit 2 is a true and correct copy of the City of Portland's application for the FY 2017 Byrne JAG solicitation.

8.      The City received notice of award for the FY 2017 Byrne JAG grant on October 10, 2018. Exhibit D to Dkt. No. 15 is a true and correct copy of the award letter and package.

9.      The FY 2017 Byrne JAG funds have not yet been released to the City, however, the City has been informed that FY 2017 Byrne JAG award funds will be released once the City has met the remaining Award Special Condition #62, which is the submission of an executed Intergovernmental Agreement with the City of Gresham and the issuance of a Grant Adjustment Notice (GAN).

10.      Attached to this declaration as Exhibit 3 is a true and correct copy of the FY 2017 and FY 2018 JAG Award Special Notices published at https://www.bja.gov/Jag/award-conditions.html, viewed on March 13, 2019.

11.      For FY 2018, the City anticipates receiving $391,694 in Byrne JAG funds. The City will retain $189,585, $148,960 will be passed on to subgrantee Multnomah County for its district attorney's office, and $53,149 will be passed on to subgrantee City of Gresham for its

Page 3 – DECLARATION OF VERONICA NORDEEN


police bureau. Attached to this declaration as Exhibit 4 is a true and correct copy of the City of Portland's application for the FY 2018 Byrne JAG solicitation.

12.     The City of Portland responded to the FY 2018 Byrne JAG solicitation on August 22, 2018, prior to the solicitation deadline of August 22, 2018, 5:00 p.m. eastern time.

13.     Attached to this declaration as Exhibit 5 is a true and correct copy of the City of Portland's application for the FY 2018 Byrne JAG solicitation.

14.     The City of Portland has not received an award letter in response to its FY 2018 Byrne JAG application.

15.     Attached to this declaration as Exhibits 6-7 are true and correct copies of email communications between myself, Michael Clark (a former employee of the City), and Heather Wiley with the Department of Justice Office of Justice Programs regarding the City's Byrne JAG grants.

16.     Attached to this declaration as Exhibit 8 is a true and correct copy of the Portland Police Bureau's press release from January 30, 2017 entitled Portland Police Increasing Outreach to Address Safety Concerns in Immigrant and Refugee Community.

17.     Portland Police Bureau has developed policies, including Directive 810.10, consistent with its belief that positive engagement with refugees and immigrants in Portland improves public safety.

18.     I make this declaration in support of Plaintiffs' Combined Motion for Summary Judgment and Response to Defendants' Motion to Dismiss.

**I hereby declare that the above statement is true to the best of my knowledge and belief, and that I understand it is made for use as evidence in court and is subject to penalty for perjury.**

DATED:  3/29/19

_Veronica Nordeen_
Veronica Nordeen

Page  4  —  DECLARATION OF VERONICA NORDEEN

OMB No. 1121-0329
Approval Expires 12/31/2018

**U.S. Department of Justice**
Office of Justice Programs
*Bureau of Justice Assistance*



The U.S. Department of Justice (DOJ), Office of Justice Programs (OJP), Bureau of Justice Assistance (BJA) is seeking applications for the Edward Byrne Memorial Justice Assistance Grant (JAG) Program. This program furthers the Department's mission by assisting State, local, and tribal efforts to prevent or reduce crime and violence.

# Edward Byrne Memorial Justice Assistance Grant Program
## FY 2017 Local Solicitation
## Applications Due: September 5, 2017

### Eligibility

Only units of local government may apply under this solicitation. By law, for purposes of the JAG Program, the term "units of local government" includes a town, township, village, parish, city, county, borough, or other general purpose political subdivision of a state; or, it may also be a federally recognized Indian tribal government that performs law enforcement functions (as determined by the Secretary of the Interior). A unit of local government may be any law enforcement district or judicial enforcement district established under applicable State law with authority to independently establish a budget and impose taxes; for example, in Louisiana, a unit of local government means a district attorney or parish sheriff.

A JAG application is not complete, and a unit of local government may not receive award funds, unless the chief executive of the applicant unit of local government (e.g., a mayor) properly executes, and the unit of local government submits, the "Certifications and Assurances by Chief Executive of Applicant Government" attached to this solicitation as Appendix I.

In addition, as discussed further below, in order validly to accept a Fiscal Year (FY) 2017 JAG award, the chief legal officer of the applicant unit of local government must properly execute, and the unit of local government must submit, the specific certification regarding compliance with 8 U.S.C. § 1373 attached to this solicitation as Appendix II. (Note: this requirement does not apply to Indian tribal governments.) (The text of 8 U.S.C. § 1373 appears in Appendix II.)

Eligible allocations under JAG are posted annually on the JAG web page under "Funding."

# Deadline

Applicants must register in the OJP Grants Management System (GMS) prior to submitting an application under this solicitation. All applicants must register, even those that previously registered in GMS. Select the "Apply Online" button associated with the solicitation title. All registrations and applications are due by 5 p.m. eastern time on September 5, 2017.

This deadline does **not** apply to the certification regarding compliance with 8 U.S.C. § 1373. As explained below, a unit of local government (other than an Indian tribal government) may not validly accept an award unless that certification is submitted to the Office of Justice Programs (OJP) on or before the day the unit of local government submits the signed award acceptance documents.

For additional information, see How to Apply in Section D. Application and Submission Information.

# Contact Information

For technical assistance with submitting an application, contact the Grants Management System (GMS) Support Hotline at 888–549–9901, option 3, or via email at GMS.HelpDesk@usdoj.gov. The GMS Support Hotline operates 24 hours a day, 7 days a week, including on federal holidays.

An applicant that experiences unforeseen GMS technical issues beyond its control that prevent it from submitting its application by the deadline must email the National Criminal Justice Reference Service (NCJRS) Response Center at grants@ncjrs.gov **within 24 hours after the application deadline** in order to request approval to submit its application. Additional information on reporting technical issues appears under "Experiencing Unforeseen GMS Technical Issues" in How to Apply in Section D. Application and Submission Information.

For assistance with any other requirement of this solicitation, applicants may contact the NCJRS Response Center by telephone at 1–800–851–3420; via TTY at 301–240–6310 (hearing impaired only); by email at grants@ncjrs.gov; by fax to 301–240–5830, or by web chat at https://webcontact.ncjrs.gov/ncjchat/chat.jsp. The NCJRS Response Center hours of operation are 10:00 a.m. to 6:00 p.m. eastern time, Monday through Friday, and 10:00 a.m. to 8:00 p.m. eastern time on the solicitation close date. Applicants also may contact the appropriate BJA State Policy Advisor.

Funding opportunity number assigned to this solicitation: BJA-2017-11301

Release date: August 3, 2017

# Contents

A. Program Description ................................................................................. 5

Overview ....................................................................................................5

Program-Specific Information ......................................................................5

Permissible uses of JAG Funds – In general .............................................5

Limitations on the use of JAG funds ..........................................................6

Required compliance with applicable federal laws......................................8

BJA areas of emphasis ...............................................................................9

Goals, Objectives, and Deliverables .........................................................10

Evidence-Based Programs or Practices ....................................................10

B. Federal Award Information ..................................................................... 11

Type of Award...........................................................................................11

Financial Management and System of Internal Controls ...........................12

Budget and Financial Information .............................................................13

Cost Sharing or Match Requirement.........................................................14

Pre-Agreement Costs (also known as Pre-award Costs)...........................14

Prior Approval, Planning, and Reporting of Conference/Meeting/Training Costs...........14

Costs Associated with Language Assistance (if applicable) ......................14

C. Eligibility Information ............................................................................. 15

D. Application and Submission Information ................................................. 15

What an Application Should Include ..........................................................15

How to Apply.............................................................................................26

E. Application Review Information ............................................................... 28

Review Process .........................................................................................28

F. Federal Award Administration Information............................................... 29

Federal Award Notices ..............................................................................29

Statutory and Regulatory Requirements; Award Conditions......................29

General Information about Post-Federal Award Reporting Requirements....................30

G. Federal Awarding Agency Contact(s) ..................................................... 31

H. Other Information ................................................................................... 31

Freedom of Information Act and Privacy Act (5 U.S.C. § 552 and 5 U.S.C. § 552a) .....31

Provide Feedback to OJP ..........................................................................32

Application Checklist.................................................................................. 33

Appendix I................................................................................................. 35

BJA-2017-11301

Decl. of Nordeen
Exhibit 1, Page 3 of 41

Appendix II ................................................................................ 37

Appendix III ............................................................................... 39

Appendix IV .............................................................................. 40

BJA-2017-11301

Decl. of Nordeen
Exhibit 1, Page 4 of 41

# Edward Byrne Memorial Justice Assistance Grant Program
# FY 2017 Local Solicitation
# CFDA #16.738

## A. Program Description

**Overview**
The Edward Byrne Memorial Justice Assistance Grant (JAG) Program is the primary provider of federal criminal justice funding to States and units of local government. BJA will award JAG Program funds to eligible units of local government under this FY 2017 JAG Program Local Solicitation. (A separate solicitation will be issued for applications to BJA directly from States.)

**Statutory Authority:** The JAG Program statute is Subpart I of Part E of Title I of the Omnibus Crime Control and Safe Streets Act of 1968. Title I of the "Omnibus Act" generally is codified at Chapter 26 of Title 42 of the United States Code; the JAG Program statute is codified at 42 U.S.C. §§ 3750-3758. See also 28 U.S.C. § 530C(a).

**Program-Specific Information**

**Permissible uses of JAG Funds – In general**
In general, JAG funds awarded to a unit of local government under this FY 2017 solicitation may be used to provide additional personnel, equipment, supplies, contractual support, training, technical assistance, and information systems for criminal justice, including for any one or more of the following:

- Law enforcement programs
- Prosecution and court programs
- Prevention and education programs
- Corrections and community corrections programs
- Drug treatment and enforcement programs
- Planning, evaluation, and technology improvement programs
- Crime victim and witness programs (other than compensation)
- Mental health programs and related law enforcement and corrections programs, including behavioral programs and crisis intervention teams

Under the JAG Program, units of local government may use award funds for broadband deployment and adoption activities as they relate to criminal justice activities.

BJA-2017-11301

Decl. of Nordeen
Exhibit 1, Page 5 of 41

**Limitations on the use of JAG funds**

*Prohibited and controlled uses of funds* – JAG funds may not be used (whether directly or indirectly) for any purpose prohibited by federal statute or regulation, including those purposes specifically prohibited by the JAG Program statute as set out at 42 U.S.C. § 3751(d):

(1) Any security enhancements or any equipment to any nongovernmental entity that is not engaged in criminal justice or public safety.

(2) Unless the Attorney General certifies that extraordinary and exigent circumstances exist that make the use of such funds to provide such matters essential to the maintenance of public safety and good order—

(a) Vehicles (excluding police cruisers), vessels (excluding police boats), or aircraft (excluding police helicopters)
(b) Luxury items
(c) Real estate
(d) Construction projects (other than penal or correctional institutions)
(e) Any similar matters

For additional information on expenditures prohibited under JAG, as well as expenditures that are permitted but "controlled," along with the process for requesting approval regarding controlled items, refer to the JAG Prohibited and Controlled Expenditures Guidance. Information also appears in the JAG FAQs.

*Cap on use of JAG award funds for administrative costs* – A unit of local government may use up to 10 percent of a JAG award, including up to 10 percent of any earned interest, for costs associated with administering the award.

*Prohibition of supplanting; no use of JAG funds as "match"* – JAG funds may not be used to supplant State or local funds but must be used to increase the amounts of such funds that would, in the absence of federal funds, be made available for law enforcement activities. See the JAG FAQs on BJA's JAG web page for examples of supplanting.

Although supplanting is prohibited, as discussed under "What An Application Should Include," the leveraging of federal funding is encouraged.

Absent specific federal statutory authority to do so, JAG award funds may not be used as "match" for the purposes of other federal awards.

*Other restrictions on use of funds* – If a unit of local government chooses to use its FY 2017 JAG funds for particular, defined types of expenditures, it must satisfy certain preconditions:

▪ Body-Worn Cameras (BWC)
   A unit of local government that proposes to use FY 2017 JAG award funds to purchase BWC equipment or to implement or enhance BWC programs, must provide to OJP a certification(s) that the unit of local government has policies and procedures in place related to BWC equipment usage, data storage and access, privacy considerations, training, etc. The certification can be found at:
   https://www.bja.gov/Funding/BodyWornCameraCert.pdf.

A unit of local government that proposes to use JAG funds for BWC-related expenses will have funds withheld until the required certification is submitted and approved by OJP.

**The BJA BWC Toolkit provides model BWC policies and best practices to assist departments in implementing BWC programs.**

Apart from the JAG Program, BJA provides funds under the Body-Worn Camera Policy and Implementation Program (BWC Program). The BWC Program allows jurisdictions to develop and implement policies and practices required for effective program adoption and address program factors including the purchase, deployment, and maintenance of camera systems and equipment; data storage and access; and privacy considerations. Interested units of local government may wish to refer to the BWC web page for more information. Units of local government should note, however, that JAG funds may not be used as any part of the 50 percent match required by the BWC Program.

- Body Armor
  Ballistic-resistant and stab-resistant body armor can be funded through the JAG Program, as well as through BJA's Bulletproof Vest Partnership (BVP) Program. The BVP Program is designed to provide a critical resource to local law enforcement through the purchase of ballistic-resistant and stab-resistant body armor. For more information on the BVP Program, including eligibility and application, refer to the BVP web page. Units of local government should note, however, that JAG funds may not be used as any part of the 50 percent match required by the BVP Program.

  Body armor purchased with JAG funds may be purchased at any threat level, make, or model from any distributor or manufacturer, as long as the body armor has been tested and found to comply with the latest applicable National Institute of Justice (NIJ) ballistic or stab standards. In addition, body armor purchased must be made in the United States.

  As is the case in the BVP Program, units of local government that propose to purchase body armor with JAG funds must certify that law enforcement agencies receiving body armor have a written "mandatory wear" policy in effect. FAQs related to the mandatory wear policy and certifications can be found at: https://www.bja.gov/Funding/JAGFAQ.pdf. This policy must be in place for at least all uniformed officers before any FY 2017 funding can be used by the unit of local government for body armor. There are no requirements regarding the nature of the policy other than it being a mandatory wear policy for all uniformed officers while on duty. The certification must be signed by the Authorized Representative and must be attached to the application if proposed as part of the application. If the unit of local government proposes to change project activities to utilize JAG funds to purchase body armor after the award is accepted, the unit of local government must submit the signed certification to BJA at that time. A mandatory wear concept and issues paper and a model policy are available by contacting the BVP Customer Support Center at vests@usdoj.gov or toll free at 1–877–758–3787. The certification form related to mandatory wear can be found at: www.bja.gov/Funding/BodyArmorMandatoryWearCert.pdf.

- DNA Testing of Evidentiary Materials and Upload of DNA Profiles to a Database

If JAG Program funds will be used for DNA testing of evidentiary materials, any resulting **eligible** DNA profiles must be uploaded to the Combined DNA Index System (CODIS, the national DNA database operated by the Federal Bureau of Investigation [FBI]) by a government DNA lab with access to CODIS. No profiles generated with JAG funding may be entered into any other non-governmental DNA database without prior express written approval from BJA.

In addition, funds may not be used for purchase of DNA equipment and supplies when the resulting DNA profiles from such technology are not accepted for entry into CODIS.

- Interoperable Communication
  Units of local government (including subrecipients) that use FY 2017 JAG funds to support emergency communications activities (including the purchase of interoperable communications equipment and technologies such as voice-over-internet protocol bridging or gateway devices, or equipment to support the build out of wireless broadband networks in the 700 MHz public safety band under the Federal Communications Commission [FCC] Waiver Order) should review FY 2017 SAFECOM Guidance. The SAFECOM Guidance is updated annually to provide current information on emergency communications policies, eligible costs, best practices, and technical standards for State, local, tribal, and territorial grantees investing federal funds in emergency communications projects. Additionally, emergency communications projects should support the Statewide Communication Interoperability Plan (SCIP) and be coordinated with the fulltime Statewide Interoperability Coordinator (SWIC) in the State of the project. As the central coordination point for their State's interoperability effort, the SWIC plays a critical role, and can serve as a valuable resource. SWICs are responsible for the implementation of SCIP through coordination and collaboration with the emergency response community. The U.S. Department of Homeland Security Office of Emergency Communications maintains a list of SWICs for each of the States and territories. Contact OEC@hq.dhs.gov. All communications equipment purchased with FY 2017 JAG Program funding should be identified during quarterly performance metrics reporting.

  In order to promote information sharing and enable interoperability among disparate systems across the justice and public safety communities, OJP requires the recipient to comply with DOJ's Global Justice Information Sharing Initiative guidelines and recommendations for this particular grant. Recipients must conform to the Global Standards Package (GSP) and all constituent elements, where applicable, as described at: https://www.it.ojp.gov/gsp_grantcondition. Recipients must document planned approaches to information sharing and describe compliance to GSP and an appropriate privacy policy that protects shared information, or provide detailed justification for why an alternative approach is recommended.

**Required compliance with applicable federal laws**
By law, the chief executive (e.g., the mayor) of each unit of local government that applies for an FY 2017 JAG award must certify that the unit of local government will "comply with all provisions of [the JAG program statute] and all other applicable Federal laws." To satisfy this requirement, each unit of local government applicant must submit two properly executed certifications using the forms shown in Appendix I and Appendix II.

All applicants should understand that OJP awards, including certifications provided in connection with such awards, are subject to review by DOJ, including by OJP and by the DOJ

Office of the Inspector General. Applicants also should understand that a materially false, fictitious, or fraudulent statement (or concealment or omission of a material fact) in a certification submitted to OJP in support of an application may be the subject of criminal prosecution, and also may result in civil penalties and administrative remedies for false claims or otherwise. Administrative remedies that may be available to OJP with respect to an FY 2017 award include suspension or termination of the award, placement on the DOJ high risk grantee list, disallowance of costs, and suspension or debarment of the recipient.

**BJA areas of emphasis**

BJA recognizes that there are significant pressures on local criminal justice systems. In these challenging times, shared priorities and leveraged resources can make a significant impact. As a component of OJP, BJA intends to focus much of its work on the areas of emphasis described below, and encourages each unit of local government recipient of an FY 2017 JAG award to join us in addressing these challenges:

- *Reducing Gun Violence* – Gun violence has touched nearly every State and local government in America. While our nation has made great strides in reducing violent crime, some municipalities and regions continue to experience unacceptable levels of violent crime at rates far in excess of the national average. BJA encourages units of local government to invest JAG funds in programs to combat gun violence, enforce existing firearms laws, and improve the process for ensuring that persons prohibited from purchasing guns are prevented from doing so by enhancing reporting to the FBI's National Instant Criminal Background Check System (NICS).

- *National Incident-Based Reporting System (NIBRS)* – The FBI has formally announced its intentions to establish NIBRS as the law enforcement crime data reporting standard for the nation. The transition to NIBRS will provide a more complete and accurate picture of crime at the national, State, and local levels. Once this transition is complete, the FBI will no longer collect summary data and will accept data only in the NIBRS format. Also, once the transition is complete, JAG award amounts will be calculated on the basis of submitted NIBRS data. Transitioning all law enforcement agencies to NIBRS is the first step in gathering more comprehensive crime data. BJA encourages recipients of FY 2017 JAG awards to use JAG funds to expedite the transition to NIBRS.

- *Officer Safety and Wellness* – The issue of law enforcement safety and wellness is an important priority for the Department of Justice. Preliminary data compiled by the National Law Enforcement Officers Memorial Fund indicates that there were 135 line-of-duty law enforcement deaths in 2016—the highest level in the past 5 years and a 10 percent increase from 2015 (123 deaths).

  Firearms-related deaths continued to be the leading cause of death (64), increasing 56 percent from 2015 (41). Of particular concern is that of the 64 firearms-related deaths, 21 were as a result of ambush-style attacks representing the highest total in more than two decades. Traffic-related deaths continued to rise in 2016 with 53 officers killed, a 10 percent increase from 2015 (48 deaths). Additionally, there were 11 job-related illness deaths in 2016, mostly heart attacks.

  BJA sees a vital need to focus not only on tactical officer safety concerns but also on health and wellness as they affect officer performance and safety. It is important for law enforcement to have the tactical skills necessary, and also be physically and mentally well, to perform, survive, and be resilient in the face of the demanding duties of the

profession. BJA encourages units of local government to use JAG funds to address these needs by providing training, including paying for tuition and travel expenses related to attending trainings such as VALOR training, as well as funding for health and wellness programs for law enforcement officers.

- *Border Security* – The security of United States borders is critically important to the reduction and prevention of transnational drug-trafficking networks and combating all forms of human trafficking within the United States (sex and labor trafficking of foreign nationals and U.S. citizens of all sexes and ages). These smuggling operations on both sides of the border contribute to a significant increase in violent crime and U.S. deaths from dangerous drugs. Additionally, illegal immigration continues to place a significant strain on federal, State, and local resources—particularly on those agencies charged with border security and immigration enforcement—as well as the local communities into which many of the illegal immigrants are placed. BJA encourages units of local government to use JAG funds to support law enforcement hiring, training, and technology enhancement in the area of border security.

- *Collaborative Prosecution* – BJA supports strong partnerships between prosecutors and police as a means to improve case outcomes and take violent offenders off the street. BJA strongly encourages State and local law enforcement to foster strong partnerships with prosecutors to adopt new collaborative strategies aimed at combating increases in crime, particularly violent crime. (BJA's "Smart Prosecution" Initiative is a related effort by OJP to promote partnerships between prosecutors and researchers to develop and deliver effective, data-driven, evidence-based strategies to solve chronic problems and fight crime.)

**Goals, Objectives, and Deliverables**
In general, the FY 2017 JAG Program is designed to provide additional personnel, equipment, supplies, contractual support, training, technical assistance, and information systems for criminal justice. The JAG Local Program is designed to assist units of local government with respect to criminal justice.

As discussed in more detail below, a unit of local government that receives an FY 2017 JAG award will be required to prepare various types of reports and to submit data related to performance measures and accountability. The Goals, Objectives, and Deliverables are directly related to the JAG Progam accountability measures.

**Evidence-Based Programs or Practices**
OJP strongly emphasizes the use of data and evidence in policy making and program development in criminal justice, juvenile justice, and crime victim services. OJP is committed to:

- Improving the quantity and quality of evidence OJP generates
- Integrating evidence into program, practice, and policy decisions within OJP and the field
- Improving the translation of evidence into practice

OJP considers programs and practices to be evidence-based when their effectiveness has been demonstrated by causal evidence, generally obtained through one or more outcome evaluations. Causal evidence documents a relationship between an activity or intervention (including technology) and its intended outcome, including measuring the direction and size of a change, and the extent to which a change may be attributed to the activity or intervention.

Causal evidence depends on the use of scientific methods to rule out, to the extent possible, alternative explanations for the documented change. The strength of causal evidence, based on the factors described above, will influence the degree to which OJP considers a program or practice to be evidence-based. The OJP CrimeSolutions.gov website is one resource that applicants may use to find information about evidence-based programs in criminal justice, juvenile justice, and crime victim services.

A useful matrix of evidence-based policing programs and strategies is available through the Center for Evidence-Based Crime Policy at George Mason University. BJA offers a number of program models designed to effectively implement promising and evidence-based strategies through the BJA "Smart Suite" of programs, including Smart Policing, Smart Supervision, Smart Pretrial, Smart Defense, Smart Prosecution, Smart Reentry, and others (see: https://www.bja.gov/Programs/CRPPE/smartsuite.html). BJA encourages units of local government to use JAG funds to support these "smart on crime" strategies, including effective partnerships with universities, research partners, and non-traditional criminal justice partners.

**BJA Success Stories**
The BJA Success Stories web page features projects that have demonstrated success or shown promise in reducing crime and positively impacting communities. This web page will be a valuable resource for States, localities, territories, tribes, and criminal justice professionals that seek to identify and learn about JAG and other successful BJA-funded projects linked to innovation, crime reduction, and evidence-based practices. **BJA strongly encourages the recipient to submit success stories annually (or more frequently).**

If a unit of local government has a success story it would like to submit, it may be submitted through My BJA account, using "add a Success Story" and the Success Story Submission form. Register for a My BJA account using this registration link.

# B. Federal Award Information

BJA estimates that it will make up to 1,100 local awards totaling an estimated $83,000,000.

Awards of at least $25,000 are 4 years in length, and award periods will be from October 1, 2016 through September 30, 2020. Extensions beyond this period may be made on a case-by-case basis at the discretion of BJA and must be requested via GMS no less than 30 days prior to the grant end date.

Awards of less than $25,000 are 2 years in length, and award periods will be from October 1, 2016 through September 30, 2018. Extensions of up to 2 years can be requested for these awards via GMS **no less than 30 days prior to the grant end date**, and will be automatically granted upon request.

All awards are subject to the availability of appropriated funds and to any modifications or additional requirements that may be imposed by statute.

**Type of Award**
BJA expects that any award under this solicitation will be in the form of a grant. See Statutory and Regulatory Requirements; Award Conditions, under Section F. Federal Award Administration Information, for a brief discussion of important statutes, regulations, and award conditions that apply to many (or in some cases, all) OJP grants.

JAG awards are based on a statutory formula as described below.

Once each fiscal year's overall JAG Program funding level is determined, BJA works with the Bureau of Justice Statistics (BJS) to begin a four-step grant award calculation process, which, in general, consists of:

(1) Computing an initial JAG allocation for each State, based on its share of violent crime and population (weighted equally).

(2) Reviewing the initial JAG allocation amount to determine if the State allocation is less than the minimum award amount defined in the JAG legislation (0.25 percent of the total). If this is the case, the State is funded at the minimum level, and the funds required for this are deducted from the overall pool of JAG funds. Each of the remaining States receive the minimum award plus an additional amount based on its share of violent crime and population.

(3) Dividing each State's final award amount (except for the territories and District of Columbia) between the State and its units of local governments at a rate of 60 and 40 percent, respectively.

(4) Determining unit of local government award allocations, which are based on their proportion of the State's 3-year violent crime average. If the "eligible award amount" for a particular unit of local government as determined on this basis is $10,000 or more, then the unit of local government is eligible to apply directly to OJP (under the JAG Local solicitation) for a JAG award. If the "eligible award amount" to a particular unit of local government as determined on this basis would be less than $10,000, however, the funds are not made available for a direct award to that particular unit of local government, but instead are added to the amount that otherwise would have been awarded to the State.

**Financial Management and System of Internal Controls**
Award recipients and subrecipients (including recipients or subrecipients that are pass-through entities[1]) must, as described in the Part 200 Uniform Requirements[2] as set out at 2 C.F.R. 200.303:

(a) Establish and maintain effective internal control over the Federal award that provides reasonable assurance that [the recipient (and any subrecipient)] is managing the Federal award in compliance with Federal statutes, regulations, and the terms and conditions of the Federal award. These internal controls should be in compliance with guidance in "Standards for Internal Control in the Federal Government" issued by the Comptroller General of the United States and the "Internal Control Integrated Framework", issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO).

(b) Comply with Federal statutes, regulations, and the terms and conditions of the Federal awards.

---

[1] For purposes of this solicitation, the phrase "pass-through entity" includes any recipient or subrecipient that provides a subaward ("subgrant") to carry out part of the funded award or program.
[2] The "Part 200 Uniform Requirements" refers to the DOJ regulation at 2 C.F.R Part 2800, which adopts (with certain modifications) the provisions of 2 C.F.R. Part 200.

(c) Evaluate and monitor [the recipient's (and any subrecipient's)] compliance with statutes, regulations, and the terms and conditions of Federal awards.

(d) Take prompt action when instances of noncompliance are identified including noncompliance identified in audit findings.

(e) Take reasonable measures to safeguard protected personally identifiable information and other information the Federal awarding agency or pass-through entity designates as sensitive or [the recipient (or any subrecipient)] considers sensitive consistent with applicable Federal, State, local, and tribal laws regarding privacy and obligations of confidentiality.

To help ensure that applicants understand the administrative requirements and cost principles, OJP encourages prospective applicants to enroll, at no charge, in the DOJ Grants Financial Management Online Training, available here.

**Budget and Financial Information**

*Trust Fund* – Units of local government may draw down JAG funds either in advance or on a reimbursement basis. To draw down in advance, a trust fund must be established in which to deposit the funds. The trust fund may or may not be an interest-bearing account. If subrecipients draw down JAG funds in advance, they also must establish a trust fund in which to deposit funds.

*Tracking and reporting regarding JAG funds used for State administrative costs* – As indicated earlier, a unit of local government may use up to 10 percent of a JAG award, including up to 10 percent of any earned interest, for costs associated with administering the award. Administrative costs (when utilized) must be tracked separately; a recipient must report in separate financial status reports (SF-425) those expenditures that specifically relate to each particular JAG award during any particular reporting period.

*No commingling* – Both the unit of local government recipient and all subrecipients of JAG funds are prohibited from commingling funds on a program-by-program or project-by-project basis. *For this purpose, use of the administrative JAG funds to perform work across all active awards in any one year is not considered comingling.*

*Disparate Certification* – In some cases, as defined by the legislation, a disparity may exist between the funding eligibility of a county and its associated municipalities. Three different types of disparities may exist:

- The first type is a zero-county disparity. This situation exists when one or more municipalities within a county are eligible for a direct award but the county is not; yet the county is responsible for providing criminal justice services (such as prosecution and incarceration) for the municipality. In this case, the county is entitled to part of the municipality's award because it shares the cost of criminal justice operations, although it may not report crime data to the FBI. This is the most common type of disparity.

- A second type of disparity exists when both a county and a municipality within that county qualify for a direct award, but the award amount for the municipality exceeds 150 percent of the county's award amount.

13

- The third type of disparity occurs when a county and multiple municipalities within that county are all eligible for direct awards, but the sum of the awards for the individual municipalities exceeds 400 percent of the county's award amount.

Jurisdictions certified as disparate must identify a fiscal agent that will submit a joint application for the aggregate eligible allocation to all disparate municipalities. The joint application must determine and specify the award distribution to each unit of local government and the purposes for which the funds will be used. When beginning the JAG application process, a Memorandum of Understanding (MOU) that identifies which jurisdiction will serve as the applicant or fiscal agent for joint funds must be completed and signed by the Authorized Representative for each participating jurisdiction. The signed MOU should be attached to the application. For a sample MOU, go to: www.bja.gov/Funding/JAGMOU.pdf.

**Cost Sharing or Match Requirement**
The JAG Program does not require a match.

For additional cost sharing and match information, see the DOJ Grants Financial Guide.

**Pre-Agreement Costs (also known as Pre-award Costs)**
Pre-agreement costs are costs incurred by the applicant prior to the start date of the period of performance of the grant award.

OJP does *not* typically approve pre-agreement costs. An applicant must request and obtain the prior written approval of OJP for any such costs. All such costs incurred prior to award and prior to approval of the costs are incurred *at the sole risk* of the applicant. (Generally, no applicant should incur project costs *before* submitting an application requesting federal funding for those costs.)

Should there be extenuating circumstances that make it appropriate for OJP to consider approving pre-agreement costs, the applicant may contact the point of contact listed on the title page of this solicitation for the requirements concerning written requests for approval. If approved in advance by OJP, award funds may be used for pre-agreement costs, consistent with the recipient's approved budget and applicable cost principles. See the section on "Costs Requiring Prior Approval" in the DOJ Grants Financial Guide for more information.

**Prior Approval, Planning, and Reporting of Conference/Meeting/Training Costs\**
OJP strongly encourages every applicant that proposes to use award funds for any conference-, meeting-, or training-related activity (or similar event) to review carefully—before submitting an application—the OJP and DOJ policy and guidance on approval, planning, and reporting of such events, available at:
https://www.ojp.gov/financialguide/DOJ/PostawardRequirements/chapter3.10a.htm.

OJP policy and guidance (1) encourage minimization of conference, meeting, and training costs; (2) require prior written approval (which may affect project timelines) of most conference, meeting, and training costs for cooperative agreement recipients, as well as some conference, meeting, and training costs for grant recipients; and (3) set cost limits, which include a general prohibition of all food and beverage costs.

**Costs Associated with Language Assistance (if applicable)**
If an applicant proposes a program or activity that would deliver services or benefits to individuals, the costs of taking reasonable steps to provide meaningful access to those services

14

or benefits for individuals with limited English proficiency may be allowable. Reasonable steps to provide meaningful access to services or benefits may include interpretation or translation services, where appropriate.

For additional information, see the "Civil Rights Compliance" section under "Overview of Legal Requirements Generally Applicable to OJP Grants and Cooperative Agreements - FY 2017 Awards" in the OJP Funding Resource Center.

## C. Eligibility Information

For information on eligibility, see the title page of this solicitation.

Note that, as discussed in more detail below, the certification regarding compliance with 8 U.S.C. § 1373 must be executed and submitted before a unit of local government (other than an Indian tribal government) can make a valid award acceptance. Also, a unit of local government may not receive award funds (and its award will include a condition that withholds funds) until it submits a properly executed "Certifications and Assurances by Chief Executive of Applicant Government."

## D. Application and Submission Information

**What an Application Should Include**
This section describes in detail what an application should include. An applicant should anticipate that if it fails to submit an application that contains all of the specified elements, it may negatively affect the review of its application; and, should a decision be made to make an award, it may result in the inclusion of award conditions that preclude the recipient from accessing or using award funds until the recipient satisfies the conditions and OJP makes the funds available.

An applicant may combine the Budget Narrative and the Budget Detail Worksheet in one document. If an applicant submits only one budget document, however, it must contain **both** narrative and detail information. Please review the "Note on File Names and File Types" under How to Apply to be sure applications are submitted in permitted formats.

OJP strongly recommends that applicants use appropriately descriptive file names (e.g., "Program Narrative," "Budget Detail Worksheet and Budget Narrative," "Timelines," "Memoranda of Understanding," "Résumés") for all attachments. Also, OJP recommends that applicants include résumés in a single file.

**In general, if a unit of local government fails to submit required information or documents, OJP either will return the unit of local government's application in the Grants Management System (GMS) for submission of the missing information or documents, or will attach a condition to the award that will withhold award funds until the necessary information and documents are submitted. (As discussed elsewhere in this solicitation, the certification regarding compliance with 8 U.S.C. § 1373—which is set out at Appendix II—will be handled differently. Unless and until that certification is submitted, the unit of local government (other than an Indian tribal government) will be unable to make a valid acceptance of the award.)**

Decl. of Nordeen
Exhibit 1, Page 15 of 41

1. **Information to Complete the Application for Federal Assistance (SF-424)**
The SF-424 is a required standard form used as a cover sheet for submission of pre-applications, applications, and related information. GMS takes information from the applicant's profile to populate the fields on this form.

To avoid processing delays, an applicant must include an accurate legal name on its SF-424. Current OJP award recipients, when completing the field for "Legal Name," should use the same legal name that appears on the prior year award document, which is also the legal name stored in OJP's financial system. On the SF-424, enter the Legal Name in box 5 and Employer Identification Number (EIN) in box 6 exactly as it appears on the prior year award document. An applicant with a current, active award(s) must ensure that its GMS profile is current. If the profile is not current, the applicant should submit a Grant Adjustment Notice updating the information on its GMS profile prior to applying under this solicitation.

A new applicant entity should enter the Official Legal Name and address of the applicant entity in box 5 and the EIN in box 6 of the SF-424.

**Intergovernmental Review:** This solicitation ("funding opportunity") **is** within the scope of Executive Order 12372, concerning State opportunities to coordinate applications for federal financial assistance. See 28 C.F.R. Part 30. An applicant may find the names and addresses of State Single Points of Contact (SPOCs) at the following website: https://www.whitehouse.gov/omb/grants_spoc/. If the State appears on the SPOC list, the applicant must contact the State SPOC to find out about, and comply with, the State's process under E.O. 12372. In completing the SF-424, an applicant whose State appears on the SPOC list is to make the appropriate selection in response to question 19 once the applicant has complied with its State E.O. 12372 process. (An applicant whose State does not appear on the SPOC list should answer question 19 by selecting the response that the "Program is subject to E.O. 12372 but has not been selected by the State for review.")

2. **Project Abstract**
Applications should include a high-quality project abstract that summarizes the proposed project in 400 words or less. Project abstracts should be:

- Written for a general public audience.
- Submitted as a separate attachment with "Project Abstract" as part of its file name.
- Single-spaced, using a standard 12-point font (Times New Roman) with 1-inch margins.
- Include applicant name, title of the project, a brief description of the problem to be addressed and the targeted area/population, project goals and objectives, a description of the project strategy, any significant partnerships, and anticipated outcomes.
- Identify up to 10 project identifiers that would be associated with proposed project activities. The list of identifiers can be found at www.bja.gov/funding/JAGIdentifiers.pdf.

3. **Program Narrative**
The following sections **should** be included as part of the program narrative[3]:

a. <u>Statement of the Problem</u> – Identify the unit of local government's strategy/funding priorities for the FY 2017 JAG funds, the subgrant award process and timeline, and a

---

[3] For information on subawards (including the details on proposed subawards that should be included in the application), see "Budget and Associated Documentation" under Section D. Application and Submission Information.

description of the programs to be funded over the grant period. Units of local government are strongly encouraged to prioritize the funding on evidence-based projects.

b.  <u>Project Design and Implementation</u> – Describe the unit of local government's strategic planning process, if any, that guides its priorities and funding strategy. This should include a description of how the local community is engaged in the planning process and the data and analysis utilized to support the plan; it should identify the stakeholders currently participating in the strategic planning process, the gaps in the needed resources for criminal justice purposes, and how JAG funds will be coordinated with State and related justice funds.

c.  <u>Capabilities and Competencies</u> – Describe any additional strategic planning/coordination efforts in which the units of local government participates with other criminal justice criminal/juvenile justice agencies in the State.

d.  <u>Plan for Collecting the Data Required for this Solicitation's Performance Measures</u> – OJP will require each successful applicant to submit specific performance measures data as part of its reporting under the award (see "<u>General Information about Post-Federal Award Reporting Requirements</u>" in <u>Section F. Federal Award Administration Information</u>). The performance measures correlate to the goals, objectives, and deliverables identified under "<u>Goals, Objectives, and Deliverables</u>" in <u>Section A. Program Description</u>. Post award, recipients will be required to submit quarterly performance metrics through BJA's Performance Measurement Tool (PMT), located at: <u>https://bjapmt.ojp.gov</u>. The application should describe the applicant's plan for collection of all of the performance measures data listed in the JAG Program accountability measures at: <u>https://bjapmt.ojp.gov/help/jagdocs.html</u>.

BJA does not require applicants to submit performance measures data with their application. Performance measures are included as an alert that BJA will require successful applicants to submit specific data as part of their reporting requirements. For the application, applicants should indicate an understanding of these requirements and discuss how they will gather the required data, should they receive funding.

**Note on Project Evaluations**
An applicant that proposes to use award funds through this solicitation to conduct project evaluations should be aware that certain project evaluations (such as systematic investigations designed to develop or contribute to generalizable knowledge) may constitute "research" for purposes of applicable DOJ human subjects protection regulations. However, project evaluations that are intended only to generate internal improvements to a program or service, or are conducted only to meet OJP's performance measure data reporting requirements, likely do not constitute "research." Each applicant should provide sufficient information for OJP to determine whether the particular project it proposes would either intentionally or unintentionally collect and/or use information in such a way that it meets the DOJ regulatory definition of research that appears at 28 C.F.R. Part 46 ("Protection of Human Subjects").

Research, for the purposes of human subjects protection for OJP-funded programs, is defined as "a systematic investigation, including research development, testing and evaluation, designed to develop or contribute to generalizable knowledge." 28 C.F.R. 46.102(d).

17

For additional information on determining whether a proposed activity would constitute research for purposes of human subjects protection, applicants should consult the decision tree in the "Research and the Protection of Human Subjects" section of the "Requirements related to Research" web page of the "Overview of Legal Requirements Generally Applicable to OJP Grants and Cooperative Agreements - FY 2017" available through the OJP Funding Resource Center. Every prospective applicant whose application may propose a research or statistical component also should review the "Data Privacy and Confidentiality Requirements" section on that web page.

**4. Budget and Associated Documentation**

**(a) Budget Detail Worksheet**
A sample Budget Detail Worksheet can be found at www.ojp.gov/funding/Apply/Resources/BudgetDetailWorksheet.pdf. An applicant that submits its budget in a different format should use the budget categories listed in the sample budget worksheet. The Budget Detail Worksheet should break out costs by year.

For questions pertaining to budget and examples of allowable and unallowable costs, see the DOJ Grants Financial Guide.

**(b) Budget Narrative**
The Budget Narrative should thoroughly and clearly describe every category of expense listed in the proposed Budget Detail Worksheet. OJP expects proposed budgets to be complete, cost effective, and allowable (e.g., reasonable, allocable, and necessary for project activities). This narrative should include a full description of all costs, including administrative costs (if applicable).

An applicant should demonstrate in its Budget Narrative how it will maximize cost effectiveness of award expenditures. Budget narratives should generally describe cost effectiveness in relation to potential alternatives and the goals of the project. For example, a budget narrative should detail why planned in-person meetings are necessary, or how technology and collaboration with outside organizations could be used to reduce costs, without compromising quality.

The Budget Narrative should be mathematically sound and correspond clearly with the information and figures provided in the Budget Detail Worksheet. The narrative should explain how the applicant estimated and calculated all costs, and how those costs are necessary to the completion of the proposed project. The narrative may include tables for clarification purposes, but need not be in a spreadsheet format. As with the Budget Detail Worksheet, the Budget Narrative should describe costs by year.

**(c) Information on Proposed Subawards (if any), as well as on Proposed Procurement Contracts (if any)**
Applicants for OJP awards typically may propose to make "subawards." Applicants also may propose to enter into procurement "contracts" under the award.

Whether—for purposes of federal grants administrative requirements—a particular agreement between a recipient and a third party will be considered a "subaward" or instead considered a procurement "contract" under the award is determined by federal rules and applicable OJP guidance. It is an important distinction, in part because the

18

federal administrative rules and requirements that apply to "subawards" and procurement "contracts" under awards differ markedly.

In general, the central question is the relationship between what the third party will do under its agreement with the recipient and what the recipient has committed (to OJP) to do under its award to further a public purpose (e.g., services the recipient will provide, products it will develop or modify, research or evaluation it will conduct). If a third party will provide some of the services the recipient has committed (to OJP) to provide, will develop or modify all or part of a product the recipient has committed (to OJP) to develop or modify, or conduct part of the research or evaluation the recipient has committed (to OJP) to conduct, OJP will consider the agreement with the third party a subaward for purposes of federal grants administrative requirements.

This will be true **even if** the recipient, for internal or other non-federal purposes, labels or treats its agreement as a procurement, a contract, or a procurement contract. Neither the title nor the structure of an agreement determines whether the agreement—for purposes of federal grants administrative requirements—is a "subaward" or is instead a procurement "contract" under an award.

Additional guidance on the circumstances under which (for purposes of federal grants administrative requirements) an agreement constitutes a subaward as opposed to a procurement contract under an award is available (along with other resources) on the OJP Part 200 Uniform Requirements web page.

### (1) Information on proposed subawards and required certification regarding 8 U.S.C. § 1373 from certain subrecipients

***General requirement for federal authorization of any subaward; statutory authorizations of subawards under the JAG Program statute***. Generally, a recipient of an OJP award may not make subawards ("subgrants") unless the recipient has specific federal authorization to do so. Unless an applicable statute or DOJ regulation specifically authorizes (or requires) particular subawards, a recipient must have authorization from OJP before it may make a subaward.

**JAG subawards that are required or specifically authorized by statute (see 42 U.S.C. § 3751(a) and 42 U.S.C. § 3755) do not require prior approval to authorize subawards. This includes subawards made by units of local government under the JAG Program.**

A particular subaward may be authorized by OJP because the recipient included a sufficiently detailed description and justification of the proposed subaward in the application as approved by OJP. If, however, a particular subaward is not authorized by federal statute or regulation and is not sufficiently described and justified in the application as approved by OJP, the recipient will be required, post award, to request and obtain written authorization from OJP before it may make the subaward.

If an applicant proposes to make one or more subawards to carry out the federal award and program, and those subawards are not specifically authorized (or required) by statute or regulation, the applicant should: (1) identify (if known) the proposed subrecipient(s), (2) describe in detail what each subrecipient will do to carry out the federal award and federal program, and (3) provide a justification for the

19

subaward(s), with details on pertinent matters such as special qualifications and areas of expertise. Pertinent information on subawards should appear not only in the Program Narrative but also in the Budget Detail Worksheet and budget narrative.

**NEW** *Required certification regarding 8 U.S.C. § 1373 from any proposed subrecipient that is a unit of local government or "public" institution of higher education.* Before a unit of local government may subaward FY 2017 award funds to another unit of local government or to a public institution of higher education, it will be required (by award condition) to obtain a properly executed certification regarding compliance with 8 U.S.C. § 1373 from the proposed subrecipient. (This requirement regarding 8 U.S.C. § 1373 will not apply to subawards to Indian tribes). The specific certification the unit of local government must require from another unit of local government will vary somewhat from the specific certification it must require from a public institution of higher education. The forms will be posted and available for download at:  https://ojp.gov/funding/Explore/SampleCertifications-8USC1373.htm.

**(2) Information on proposed procurement contracts (with specific justification for proposed noncompetitive contracts over $150,000)**

Unlike a recipient contemplating a subaward, a recipient of an OJP award generally does not need specific prior federal authorization to enter into an agreement that—for purposes of federal grants administrative requirements—is considered a procurement contract, **provided that** (1) the recipient uses its own documented procurement procedures and (2) those procedures conform to applicable federal law, including the Procurement Standards of the (DOJ) Part 200 Uniform Requirements (as set out in 2 C.F.R. 200.317 - 200.326). The Budget Detail Worksheet and budget narrative should identify proposed procurement contracts. (As discussed above, subawards must be identified and described separately from procurement contracts.)

The Procurement Standards in the (DOJ) Part 200 Uniform Requirements, however, reflect a general expectation that agreements that (for purposes of federal grants administrative requirements) constitute procurement "contracts" under awards will be entered into on the basis of full and open competition. If a proposed procurement contract would exceed the simplified acquisition threshold—currently, $150,000—a recipient of an OJP award may not proceed without competition, unless and until the recipient receives specific advance authorization from OJP to use a non-competitive approach for the procurement.

An applicant that (at the time of its application) intends—without competition—to enter into a procurement contract that would exceed $150,000 should include a detailed justification that explains to OJP why, in the particular circumstances, it is appropriate to proceed without competition. Various considerations that may be pertinent to the justification are outlined in the DOJ Grants Financial Guide.

**(d) Pre-Agreement Costs**
     For information on pre-agreement costs, see Section B. Federal Award Information.

**5.  Indirect Cost Rate Agreement (if applicable)**
Indirect costs may be charged to an award only if:

(a) The recipient has a current (that is, unexpired), federally approved indirect cost rate; or

(b) The recipient is eligible to use, and elects to use, the "de minimis" indirect cost rate described in the (DOJ) Part 200 Uniform Requirements, as set out at 2 C.F.R. 200.414(f).

**Note**: This rule does not eliminate or alter the JAG-specific restriction in federal law that charges for administrative costs may not exceed 10 percent of the award amount, regardless of the approved indirect cost rate.

An applicant with a current (that is, unexpired) federally approved indirect cost rate is to attach a copy of the indirect cost rate agreement to the application. An applicant that does not have a current federally approved rate may request one through its cognizant federal agency, which will review all documentation and approve a rate for the applicant entity, or, if the applicant's accounting system permits, applicants may propose to allocate costs in the direct cost categories.

For assistance with identifying the appropriate cognizant federal agency for indirect costs, please contact the OCFO Customer Service Center at 1–800–458–0786 or at ask.ocfo@usdoj.gov. If DOJ is the cognizant federal agency, applicants may obtain information needed to submit an indirect cost rate proposal at: www.ojp.gov/funding/Apply/Resources/IndirectCosts.pdf.

Certain OJP recipients have the option of electing to use the "de minimis" indirect cost rate. An applicant that is eligible to use the "de minimis" rate that wishes to use the "de minimis" rate should attach written documentation to the application that advises OJP of both: (1) the applicant's eligibility to use the "de minimis" rate, and (2) its election to do so. If an eligible applicant elects the "de minimis" rate, costs must be consistently charged as either indirect or direct costs, but may not be double charged or inconsistently charged as both. The "de minimis" rate may no longer be used once an approved federally-negotiated indirect cost rate is in place. (No entity that ever has had a federally approved negotiated indirect cost rate is eligible to use the "de minimis" rate.)

6. **Tribal Authorizing Resolution (if applicable)**
An applicant that proposes to provide direct services or assistance to residents on tribal lands should include in its application a resolution, a letter, affidavit, or other documentation, as appropriate, that demonstrates (as a legal matter) that the applicant has the requisite authorization from the tribe(s) to implement the proposed project on tribal lands.

OJP will not deny an application for an FY 2017 award for failure to submit such tribal authorizing resolution (or other appropriate documentation) by the application deadline, but a unit of local government will not receive award funds (and its award will include a condition that withholds funds) until it submits the appropriate documentation.

7. **Financial Management and System of Internal Controls Questionnaire (including applicant disclosure of high-risk status)**
Every unit of local government is to complete the OJP Financial Management and System of Internal Controls Questionnaire as part of its application. In accordance with the Part 200 Uniform Requirements as set out at 2 C.F.R. 200.205, federal agencies must have in place a framework for evaluating the risks posed by applicants before they receive a federal award.

8. **Applicant Disclosure of High Risk Status**

Applicants that are currently designated high risk by another federal grant making agency must disclose that status. For purposes of this disclosure, high risk includes any status under which a federal awarding agency provides additional oversight due to the applicant's past performance, or other programmatic or financial concerns with the applicant. If an applicant is designated high risk by another federal awarding agency, the applicant must provide the following information:

- The federal agency that currently designated the applicant as high risk
- Date the applicant was designated high risk
- The high risk point of contact at that federal awarding agency (name, phone number, and email address).
- Reasons for the high risk status, as set out by the federal awarding agency

OJP seeks this information to help ensure appropriate federal oversight of OJP awards. An applicant that is considered "high risk" by another federal awarding agency is not automatically disqualified from receiving an OJP award. OJP may, however, consider the information in award decisions, and may impose additional OJP oversight of any award under this solicitation (including through the conditions that accompany the award document).

9. **Disclosure of Lobbying Activities**

An applicant that expends any funds for lobbying activities is to provide all of the information requested on the form Disclosure of Lobbying Activities (SF-LLL).

10. **Certifications and Assurances by the Chief Executive of the Applicant Government**

A JAG application is not complete, and a unit of local government may not receive award funds, unless the chief executive of the applicant unit of local government (e.g., the mayor) properly executes, and the unit of local government submits, the "Certifications and Assurances by the Chief Executive of the Applicant Government" attached to this solicitation as Appendix I.

OJP will not deny an application for an FY 2017 award for failure to submit these "Certifications and Assurances by the Chief Executive of the Applicant Government" by the application deadline, but a unit of local government will not receive award funds (and its award will include a condition that withholds funds) until it submits these certifications and assurances, properly executed by the chief executive of the unit of local government (e.g., the mayor).

11. **Certification of Compliance with 8 U.S.C. § 1373 by the Chief Legal Officer of the Applicant Government**

The chief legal officer of an applicant unit of local government (e.g., the General Counsel) is to carefully review the "State or Local Government: FY 2017 Certification of Compliance with 8 U.S.C. § 1373" that is attached as Appendix II to this solicitation. If the chief legal officer determines that he or she may execute the certification, the unit of local government is to submit the certification as part of its application. (Note: this requirement does not apply to Indian tribal governments.)

As discussed further below, a unit of local government (other than an Indian tribal government) applicant will be *unable to make a valid award acceptance* of an FY 2017 JAG

award unless and until a properly executed certification by its chief legal officer is received by OJP on or before the day the unit of local government submits an executed award document.

## 12. Additional Attachments

### (a) Applicant Disclosure of Pending Applications

Each applicant is to disclose whether it has (or is proposed as a subrecipient under) any pending applications for federally funded grants or cooperative agreements that (1) include requests for funding to support the same project being proposed in the application under this solicitation and (2) would cover identical cost items outlined in the budget submitted to OJP as part of the application under this solicitation. The applicant is to disclose applications made directly to federal awarding agencies, and also applications for subawards of federal funds (e.g., applications to State agencies that will subaward ("subgrant") federal funds).

OJP seeks this information to help avoid any inappropriate duplication of funding. Leveraging multiple funding sources in a complementary manner to implement comprehensive programs or projects is encouraged and is not seen as inappropriate duplication.

Each applicant that has one or more pending applications as described above is to provide the following information about pending applications submitted within the last 12 months:

- The federal or State funding agency
- The solicitation name/project name
- The point of contact information at the applicable federal or State funding agency

| Federal or State Funding Agency | Solicitation Name/Project Name | Name/Phone/Email for Point of Contact at Federal or State Funding Agency |
|---|---|---|
| DOJ/Office of Community Oriented Policing Services (COPS) | COPS Hiring Program | Jane Doe, 202/000-0000; jane.doe@usdoj.gov |
| Health & Human Services/ Substance Abuse and Mental Health Services Administration | Drug-Free Communities Mentoring Program/ North County Youth Mentoring Program | John Doe, 202/000-0000; john.doe@hhs.gov |

Each applicant should include the table as a separate attachment to its application. The file should be named "Disclosure of Pending Applications." The applicant Legal Name on the application must match the entity named on the disclosure of pending applications statement.

23

Decl. of Nordeen
Exhibit 1, Page 23 of 41

Any applicant that does not have any pending applications as described above is to submit, as a separate attachment, a statement to this effect: "[Applicant Name on SF-424] does not have (and is not proposed as a subrecipient under) any pending applications submitted within the last 12 months for federally funded grants or cooperative agreements (or for subawards under federal grants or cooperative agreements) that request funding to support the same project being proposed in this application to OJP and that would cover identical cost items outlined in the budget submitted as part of this application."

**(b) Research and Evaluation Independence and Integrity (if applicable)**
If an application involves research (including research and development) and/or evaluation, the applicant must demonstrate research/evaluation independence and integrity, including appropriate safeguards, before it may receive award funds. The applicant must demonstrate independence and integrity regarding both this proposed research and/or evaluation, and any current or prior related projects.

Each application should include an attachment that addresses **both** i. and ii. below.

i. For purposes of this solicitation, each applicant is to document research and evaluation independence and integrity by including one of the following two items:

a. A specific assurance that the applicant has reviewed its application to identify any actual or potential apparent conflicts of interest (including through review of pertinent information on the principal investigator, any co-principal investigators, and any subrecipients), and that the applicant has identified no such conflicts of interest—whether personal or financial or organizational (including on the part of the applicant entity or on the part of staff, investigators, or subrecipients)—that could affect the independence or integrity of the research, including the design, conduct, and reporting of the research.

OR

b. A specific description of actual or potential apparent conflicts of interest that the applicant has identified—including through review of pertinent information on the principal investigator, any co-principal investigators, and any subrecipients—that could affect the independence or integrity of the research, including the design, conduct, or reporting of the research. These conflicts may be personal (e.g., on the part of investigators or other staff), financial, or organizational (related to the applicant or any subrecipient entity). Some examples of potential investigator (or other personal) conflict situations are those in which an investigator would be in a position to evaluate a spouse's work product (actual conflict), or an investigator would be in a position to evaluate the work of a former or current colleague (potential apparent conflict). With regard to potential organizational conflicts of interest, as one example, generally an organization would not be given an award to evaluate a project, if that organization had itself provided substantial prior technical assistance to that specific project or a location implementing the project (whether funded by OJP or other sources), because the organization in such an

24

instance might appear to be evaluating the effectiveness of its own prior work. The key is whether a reasonable person understanding all of the facts would be able to have confidence that the results of any research or evaluation project are objective and reliable. Any outside personal or financial interest that casts doubt on that objectivity and reliability of an evaluation or research product is a problem and must be disclosed.

ii.   In addition, for purposes of this solicitation, each applicant is to address possible mitigation of research integrity concerns by including, at a minimum, one of the following two items:

a.   If an applicant reasonably believes that no actual or potential apparent conflicts of interest (personal, financial, or organizational) exist, then the applicant should provide a brief narrative explanation of how and why it reached that conclusion. The applicant also is to include an explanation of the specific processes and procedures that the applicant has in place, or will put in place, to identify and prevent (or, at the very least, mitigate) any such conflicts of interest pertinent to the funded project during the period of performance. Documentation that may be helpful in this regard may include organizational codes of ethics/conduct and policies regarding organizational, personal, and financial conflicts of interest. There is no guarantee that the plan, if any, will be accepted as proposed.

OR

b.   If the applicant has identified actual or potential apparent conflicts of interest (personal, financial, or organizational) that could affect the independence and integrity of the research, including the design, conduct, or reporting of the research, the applicant is to provide a specific and robust mitigation plan to address each of those conflicts. At a minimum, the applicant is expected to explain the specific processes and procedures that the applicant has in place, or will put in place, to identify and eliminate (or, at the very least, mitigate) any such conflicts of interest pertinent to the funded project during the period of performance. Documentation that may be helpful in this regard may include organizational codes of ethics/conduct and policies regarding organizational, personal, and financial conflicts of interest. There is no guarantee that the plan, if any, will be accepted as proposed.

OJP will assess research and evaluation independence and integrity based on considerations such as the adequacy of the applicant's efforts to identify factors that could affect the objectivity or integrity of the proposed staff and/or the applicant entity (and any subrecipients) in carrying out the research, development, or evaluation activity; and the adequacy of the applicant's existing or proposed remedies to control any such factors.

**(c)  Local Governing Body Review**
Applicants must submit information via the Certification and Assurances by the Chief Executive (See Appendix I) which documents that the JAG application was made available for review by the governing body of the unit of local government, or to an organization designated by that governing body, for a period that was not less than 30

BJA-2017-11391
Decl. of Nordeen
Exhibit 1, Page 25 of 41

days before the application was submitted to BJA. The same Chief Executive Certification will also specify that an opportunity to comment on this application was provided to citizens prior to the application submission to the extent applicable law or established procedures make such opportunity available. In the past, this has been accomplished via submission of specific review dates; now OJP will only accept a chief executive's certification to attest to these facts. Units of local government may continue to submit actual dates of review should they wish to do so, in addition to the submission of the Chief Executive Certification.

**How to Apply**

An applicant must submit its application through the Grants Management System (GMS), which provides support for the application, award, and management of awards at OJP. Each applicant entity **must register in GMS for each specific funding opportunity.** Although the registration and submission deadlines are the same, OJP urges each applicant entity to **register promptly**, especially if this is the first time the applicant is using the system. Find complete instructions on how to register and submit an application in GMS at www.ojp.gov/gmscbt/. An applicant that experiences technical difficulties during this process should email GMS.HelpDesk@usdoj.gov or call 888–549–9901 (option 3), 24 hours every day, including during federal holidays. OJP recommends that each applicant **register promptly** to prevent delays in submitting an application package by the deadline.

**Note on File Types: GMS does not accept executable file types as application attachments**. These disallowed file types include, but are not limited to, the following extensions: ".com," ".bat," ".exe," ".vbs," ".cfg," ".dat," ".db," ".dbf," ".dll," ".ini," ".log," ".ora," ".sys," and ".zip."

Every applicant entity must comply with all applicable System for Award Management (SAM) and unique entity identifier (currently, a Data Universal Numbering System [DUNS] number) requirements. If an applicant entity has not fully complied with applicable SAM and unique identifier requirements by the time OJP makes award decisions, OJP may determine that the applicant is not qualified to receive an award and may use that determination as a basis for making the award to a different applicant.

All applicants should complete the following steps:

**1. Acquire a unique entity identifier (DUNS number).** In general, the Office of Management and Budget requires every applicant for a federal award (other than an individual) to include a "unique entity identifier" in each application, including an application for a supplemental award. Currently, a DUNS number is the required unique entity identifier.

A DUNS number is a unique nine-digit identification number provided by the commercial company Dun and Bradstreet. This unique entity identifier is used for tracking purposes, and to validate address and point of contact information for applicants, recipients, and subrecipients. It will be used throughout the life cycle of an OJP award. Obtaining a DUNS number is a free, one-time activity. Call Dun and Bradstreet at 866–705–5711 to obtain a DUNS number or apply online at www.dnb.com. A DUNS number is usually received within 1–2 business days.

**2. Acquire registration with the SAM.** SAM is the repository for certain standard information about federal financial assistance applicants, recipients, and subrecipients. All applicants for OJP awards (other than individuals) must maintain current registrations in the SAM database.

26

Each applicant must **update or renew its SAM registration at least annually** to maintain an active status. SAM registration and renewal can take as long as 10 business days to complete.

Information about SAM registration procedures can be accessed at https://www.sam.gov/.

**3.  Acquire a GMS username and password**. New users must create a GMS profile by selecting the "First Time User" link under the sign-in box of the GMS home page. For more information on how to register in GMS, go to www.ojp.gov/gmscbt. Previously registered applicants should ensure, prior to applying, that the user profile information is up-to-date in GMS (including, but not limited to, address, legal name of agency and authorized representative) as this information is populated in any new application.

**4.  Verify the SAM (formerly CCR) registration in GMS.** OJP requires each applicant to verify its SAM registration in GMS. Once logged into GMS, click the "CCR Claim" link on the left side of the default screen. Click the submit button to verify the SAM (formerly CCR) registration.

**5.  Search for the funding opportunity on GMS.** After logging into GMS or completing the GMS profile for username and password, go to the "Funding Opportunities" link on the left side of the page. Select BJA and **FY 17 Edward Byrne Memorial Local Justice Assistance Grant (JAG) Program.**

**6.  Register by selecting the "Apply Online" button associated with the funding opportunity title.** The search results from step 5 will display the "funding opportunity" (solicitation) title along with the registration and application deadlines for this solicitation. Select the "Apply Online" button in the "Action" column to register for this solicitation and create an application in the system.

**7.  Follow the directions in GMS to submit an application consistent with this solicitation.** Once the application is submitted, GMS will display a confirmation screen stating the submission was successful. **Important:** In some instances, applicants must wait for GMS approval before submitting an application. OJP urges each applicant to submit its application **at least 72 hours prior** to the application due date.

**Note: Application Versions**
If an applicant submits multiple versions of the same application, OJP will review **only** the most recent system-validated version submitted.

**Experiencing Unforeseen GMS Technical Issues**
An applicant that experiences unforeseen GMS technical issues beyond its control that prevent it from submitting its application by the deadline may contact the GMS Help Desk or the SAM Help Desk (Federal Service Desk) to report the technical issue and receive a tracking number. The applicant is expected to email the NCJRS Response Center identified in the Contact Information section on the title page **within 24 hours after the application deadline** to request approval to submit its application after the deadline. The applicant's email must describe the technical difficulties, and must include a timeline of the applicant's submission efforts, the complete grant application, the applicant's DUNS number, and any GMS Help Desk or SAM tracking number(s).

**Note: OJP does not automatically approve requests to submit a late application.** After OJP reviews the applicant's request, and contacts the GMS Help Desk to verify the reported technical issues, OJP will inform the applicant whether the request to submit a late application

BJA-2017-11391    Decl. of Nordeen
Exhibit 1, Page 27 of 41

has been approved or denied. If OJP determines that the untimely application submission was due to the applicant's failure to follow all required procedures, OJP will deny the applicant's request to submit its application.

The following conditions generally are insufficient to justify late submissions to OJP solicitations:

- Failure to register in SAM or GMS in sufficient time (SAM registration and renewal can take as long as 10 business days to complete.)
- Failure to follow GMS instructions on how to register and apply as posted on the GMS website
- Failure to follow each instruction in the OJP solicitation
- Technical issues with the applicant's computer or information technology environment such as issues with firewalls

# E. Application Review Information

**Review Process**
OJP is committed to ensuring a fair and open process for making awards. BJA reviews the application to make sure that the information presented is reasonable, understandable, measurable, and achievable, as well as consistent with the solicitation. BJA will also review applications to help ensure that JAG program-statute requirements have been met.

Pursuant to the (DOJ) Part 200 Uniform Requirements, before awards are made, OJP also reviews information related to the degree of risk posed by applicants. Among other things, to help assess whether an applicant that has one or more prior federal awards has a satisfactory record with respect to performance, integrity, and business ethics, OJP checks whether the applicant is listed in SAM as excluded from receiving a federal award. In addition, if OJP anticipates that an award will exceed $150,000 in federal funds, OJP also must review and consider any information about the applicant that appears in the non-public segment of the integrity and performance system accessible through SAM (currently, the Federal Awardee Performance and Integrity Information System; "FAPIIS").

**Important note on FAPIIS:** An applicant, at its option, may review and comment on any information about itself that currently appears in FAPIIS and was entered by a federal awarding agency. OJP will consider any such comments by the applicant, in addition to the other information in FAPIIS, in its assessment of the risk posed by the applicant.

The evaluation of risks goes beyond information in SAM, however. OJP itself has in place a framework for evaluating risks posed by applicants. OJP takes into account information pertinent to matters such as—

1. Applicant financial stability and fiscal integrity
2. Quality of the management systems of the applicant, and the applicant's ability to meet prescribed management standards, including those outlined in the DOJ Grants Financial Guide
3. Applicant's history of performance under OJP and other DOJ awards (including compliance with reporting requirements and award conditions), as well as awards from other federal agencies

28

4. Reports and findings from audits of the applicant, including audits under the (DOJ) Part 200 Uniform Requirements
5. Applicant's ability to comply with statutory and regulatory requirements, and to effectively implement other award requirements

Absent explicit statutory authorization or written delegation of authority to the contrary, the Assistant Attorney General will make all final award decisions.


# F. Federal Award Administration Information

**Federal Award Notices**

OJP expects to issue award notifications by September 30, 2017. OJP sends award notifications by email through GMS to the individuals listed in the application as the point of contact and the authorizing official. The email notification includes detailed instructions on how to access and view the award documents, and steps to take in GMS to start the award acceptance process. GMS automatically issues the notifications at 9:00 p.m. eastern time on the award date.

**NOTE:** In order validly to accept an award under the FY 2017 JAG Program, a unit of local government (other than an Indian tribal government) must submit to GMS the certification by its chief legal officer regarding compliance with 8 U.S.C. § 1373, executed using the form that appears in Appendix II. (The form also may be downloaded at https://ojp.gov/funding/Explore/SampleCertifications-8USC1373.htm.) Unless the executed certification either (1) is submitted to OJP together with the signed award document or (2) is uploaded in GMS no later than the day the signed award document is submitted, **OJP will reject as invalid** any submission by a unit of local government (other than an Indian tribal government) that purports to accept an award under this solicitation.

Rejection of an initial submission as an invalid award acceptance is not a denial of the award. Consistent with award requirements, once the unit of local government **does** submit the necessary certification regarding 8 U.S.C. § 1373, the unit of local government **will** be permitted to submit an award document executed by the unit of local government on or after the date of that certification.

Also, in order for a unit of local government applicant validly to accept an award under the FY 2017 JAG Program, an individual with the necessary authority to bind the applicant will be required to log in; execute a set of legal certifications and a set of legal assurances; designate a financial point of contact; thoroughly review the award, including **all** award conditions; and sign and accept the award. The award acceptance process requires physical signature of the award document by the authorized representative and the scanning of the fully executed award document (along with the required certification regarding 8 U.S.C. § 1373, if not already uploaded in GMS) to OJP.

**Statutory and Regulatory Requirements; Award Conditions**

If selected for funding, in addition to implementing the funded project consistent with the OJP-approved application, the recipient must comply with all award requirements (including all award conditions), as well as all applicable requirements of federal statutes and regulations (including those referred to in assurances and certifications executed as part of the application or in

29

connection with award acceptance, and administrative and policy requirements set by statute or regulation).

OJP strongly encourages prospective applicants to review information on post-award legal requirements generally applicable to FY 2017 OJP awards and common OJP award conditions **prior** to submitting an application.

Applicants should consult the "Overview of Legal Requirements Generally Applicable to OJP Grants and Cooperative Agreements - FY 2017 Awards," available in the OJP Funding Resource Center. In addition, applicants should examine the following two legal documents, as each successful applicant must execute both documents in GMS before it may receive any award funds.

- Certifications Regarding Lobbying; Debarment, Suspension and Other Responsibility Matters; and Drug-Free Workplace Requirements

- OJP Certified Standard Assurances (attached to this solicitation as Appendix IV)

The web pages accessible through the "Overview of Legal Requirements Generally Applicable to OJP Grants and Cooperative Agreements - FY 2017 Awards" are intended to give applicants for OJP awards a general overview of important statutes, regulations, and award conditions that apply to many (or in some cases, all) OJP grants and cooperative agreements awarded in FY 2017. Individual OJP awards typically also will include additional award conditions. Those additional conditions may relate to the particular statute, program, or solicitation under which the award is made; to the substance of the funded application; to the recipient's performance under other federal awards; to the recipient's legal status (e.g., as a for-profit entity); or to other pertinent considerations.

Individual FY 2017 JAG awards will include two new express conditions that, with respect to the "program or activity" that would be funded by the FY 2017 award, are designed to ensure that States and units of local government that receive funds from the FY 2017 JAG award: (1) permit personnel of the U.S. Department of Homeland Security (DHS) to access any correctional or detention facility in order to meet with an alien (or an individual believed to be an alien) and inquire as to his or her right to be or remain in the United States and (2) provide at least 48 hours' advance notice to DHS regarding the scheduled release date and time of an alien in the jurisdiction's custody when DHS requests such notice in order to take custody of the alien pursuant to the Immigration and Nationality Act.

Compliance with the requirements of the two foregoing new award conditions will be an authorized and priority purpose of the award. The reasonable costs (to the extent not reimbursed under any other federal program) of developing and putting into place statutes, rules, regulations, policies, or practices as required by these conditions, and to honor any duly authorized requests from DHS that is encompassed by these conditions, will be allowable costs under the award.

**General Information about Post-Federal Award Reporting Requirements**
A unit of local government recipient of an award under this solicitation will be required to submit the following reports and data:

Required reports. Recipients typically must submit quarterly financial status reports, semi-annual progress reports, final financial and progress reports, and, if applicable, an annual audit report in accordance with the (DOJ) Part 200 Uniform Requirements or specific award conditions. Future awards and fund drawdowns may be withheld if reports are delinquent. (In appropriate cases, OJP may require additional reports.)

Awards that exceed $500,000 will include an additional condition that, under specific circumstances, will require the recipient to report (to FAPIIS) information on civil, criminal, and administrative proceedings connected with (or connected to the performance of) either the OJP award or any other grant, cooperative agreement, or procurement contract from the federal government. Additional information on this reporting requirement appears in the text of the award condition posted on the OJP website at: https://ojp.gov/funding/FAPIIS.htm

Data on performance measures. In addition to required reports, each recipient of an award under this solicitation also must provide data that measure the results of the work done under the award. To demonstrate program progress and success, as well as to assist DOJ with fulfilling its responsibilities under GPRA and the GPRA Modernization Act of 2010, OJP will require State recipients to provide accountability metrics data. Accountability metrics data must be submitted through BJA's Performance Measurement Tool (PMT), available at https://bjapmt.ojp.gov. The accountability measures are available at: https://bjapmt.ojp.gov/help/jagdocs.html. (Note that if a law enforcement agency receives JAG funds from a State, the State must submit quarterly accountability metrics data related to training that officers have received on use of force, racial and ethnic bias, de-escalation of conflict, and constructive engagement with the public.)

OJP may restrict access to award funds if a recipient of an OJP award fails to report required performance measures data in a timely manner.

## G. Federal Awarding Agency Contact(s)

For OJP contact(s), see the title page of this solicitation.

For contact information for GMS, see the title page.

## H. Other Information

**Freedom of Information Act and Privacy Act (5 U.S.C. § 552 and 5 U.S.C. § 552a)**
All applications submitted to OJP (including all attachments to applications) are subject to the federal Freedom of Information Act (FOIA) and to the Privacy Act. By law, DOJ may withhold information that is responsive to a request pursuant to FOIA if DOJ determines that the responsive information either is protected under the Privacy Act or falls within the scope of one of nine statutory exemptions under FOIA. DOJ cannot agree in advance of a request pursuant to FOIA not to release some or all portions of an application.

In its review of records that are responsive to a FOIA request, OJP will withhold information in those records that plainly falls within the scope of the Privacy Act or one of the statutory exemptions under FOIA. (Some examples include certain types of information in budgets, and names and contact information for project staff other than certain key personnel.) In appropriate

31

circumstances, OJP will request the views of the applicant/recipient that submitted a responsive document.

For example, if OJP receives a request pursuant to FOIA for an application submitted by a nonprofit or for-profit organization or an institution of higher education, or for an application that involves research, OJP typically will contact the applicant/recipient that submitted the application and ask it to identify—quite precisely—any particular information in the application that applicant/recipient believes falls under a FOIA exemption, the specific exemption it believes applies, and why. After considering the submission by the applicant/recipient, OJP makes an independent assessment regarding withholding information. OJP generally follows a similar process for requests pursuant to FOIA for applications that may contain law-enforcement sensitive information.

**Provide Feedback to OJP**
To assist OJP in improving its application and award processes, OJP encourages applicants to provide feedback on this solicitation, the application submission process, and/or the application review process. Provide feedback to OJPSolicitationFeedback@usdoj.gov.

**IMPORTANT:** This email is for feedback and suggestions only. OJP does **not** reply to messages it receives in this mailbox. A prospective applicant that has specific questions on any program or technical aspect of the solicitation **must** use the appropriate telephone number or email listed on the front of this solicitation document to obtain information. These contacts are provided to help ensure that prospective applicants can directly reach an individual who can address specific questions in a timely manner.

If you are interested in being a reviewer for other OJP grant applications, please email your résumé to ojppeerreview@lmsolas.com. (Do not send your résumé to the OJP Solicitation Feedback email account.) **Note:** Neither you nor anyone else from your organization or entity can be a peer reviewer in a competition in which you or your organization/entity has submitted an application.

BJA-2017-11391
Decl. of Nordeen
Exhibit 1, Page 32 of 41

# Application Checklist

## Edward Byrne Memorial Justice Assistance Grant (JAG) Program:

## FY 2017 Local Solicitation

This application checklist has been created as an aid in developing an application.

**What an Applicant Should Do:**

*Prior to Registering in GMS:*
_____ Acquire a DUNS Number                                                                  (see page 27)
_____ Acquire or renew registration with SAM                                       (see page 27)
*To Register with GMS*:
_____ For new users, acquire a GMS username and password*           (see page 27)
_____ For existing users, check GMS username and password* to ensure account access
                                                                                                                          (see page 27)
_____ Verify SAM registration in GMS                                                      (see page 27)
_____ Search for correct funding opportunity in GMS                          (see page 27)
_____ Select correct funding opportunity in GMS                                  (see page 27)
_____ Register by selecting the "Apply Online" button associated with the funding opportunity
  title                                                                                                               (see page 27)
_____ Read OJP policy and guidance on conference approval, planning, and reporting
available at ojp.gov/financialguide/DOJ/PostawardRequirements/chapter3.10a.htm
                                                                                                                          (see page 14)
_____ If experiencing technical difficulties in GMS, contact the NCJRS Response Center
                                                                                                                          (see page 2)

*Password Reset Notice – GMS users are reminded that while password reset capabilities exist, this function is only associated with points of contact designated within GMS at the time the account was established. Neither OJP nor the GMS Help Desk will initiate a password reset unless requested by the authorized official or a designated point of contact associated with an award or application.

**Overview of Post-Award Legal Requirements:**

_____ Review the "Overview of Legal Requirements Generally Applicable to OJP Grants and Cooperative Agreements - FY 2017 Awards" in the OJP Funding Resource Center.

**Scope Requirement:**

_____ The federal amount requested is within the allowable limit(s) of the FY 2017 JAG Allocations List as listed on BJA's JAG web page.

**What an Application Should Include:**

\_\_\_\_\_ Application for Federal Assistance (SF-424)     (see page 16)
\_\_\_\_\_ Project Abstract             (see page 16)
\_\_\_\_\_ Program Narrative           (see page 17)
\_\_\_\_\_ Budget Detail Worksheet        (see page 18)
\_\_\_\_\_ Budget Narrative           (see page 18)
\_\_\_\_\_ Indirect Cost Rate Agreement (if applicable)   (see page 21)
\_\_\_\_\_ Tribal Authorizing Resolution (if applicable)   (see page 21)
\_\_\_\_\_ Financial Management and System of Internal Controls Questionnaire  (see page 22)
\_\_\_\_\_ Disclosure of Lobbying Activities (SF-LLL) (if applicable)  (see page 22)
\_\_\_\_\_ Certifications and Assurances by Chief Executive  (see page 22)
\_\_\_\_\_ Certification of Compliance with 8 U.S.C. § 1373 by Chief Legal Officer (Note: this requirement does not apply to Indian tribal governments.)  (see page 23)
\_\_\_\_\_ OJP Certified Standard Assurances     (see page 40)
\_\_\_\_\_ Additional Attachments
\_\_\_\_\_ Applicant Disclosure of Pending Applications   (see page 23)
\_\_\_\_\_ Research and Evaluation Independence and Integrity (if applicable)
                   (see page 24)

34

# Appendix I

## Certifications and Assurances by the Chief Executive of the Applicant Government

### Template for use by *chief executive* of the "Unit of local government" (e.g., the mayor)

**Note**: By law, for purposes of the JAG Program, the term "unit of local government " includes a town, township, village, parish, city, county, borough, or other general purpose political subdivision of a state; or, it may also be a federally recognized Indian tribal government that performs law enforcement functions (as determined by the Secretary of the Interior). A unit of local government may be any law enforcement district or judicial enforcement district established under applicable State law with authority to independently establish a budget and impose taxes; for example, in Louisiana, a unit of local government means a district attorney or parish sheriff.

**U.S. DEPARTMENT OF JUSTICE**
**OFFICE OF JUSTICE PROGRAMS**

**Edward Byrne Justice Assistance Grant Program**
**FY 2017 Local Solicitation**

<span style="color:red">**Certifications and Assurances**</span>
<span style="color:red">**by the Chief Executive of the Applicant Government**</span>

On behalf of the applicant unit of local government named below, in support of that locality's application for an award under the FY 2017 Edward Byrne Justice Assistance Grant ("JAG") Program, and further to 42 U.S.C. § 3752(a), I certify under penalty of perjury to the Office of Justice Programs ("OJP"), U.S. Department of Justice ("USDOJ"), that all of the following are true and correct:

1. I am the chief executive of the applicant unit of local government named below, and I have the authority to make the following representations on my own behalf and on behalf of the applicant unit of local government. I understand that these representations will be relied upon as material in any OJP decision to make an award, under the application described above, to the applicant unit of local government.

2. I certify that no federal funds made available by the award (if any) that OJP makes based on the application described above will be used to supplant local funds, but will be used to increase the amounts of such funds that would, in the absence of federal funds, be made available for law enforcement activities.

3. I assure that the application described above (and any amendment to that application) was submitted for review to the governing body of the unit of local government (e.g., city council or county commission), or to an organization designated by that governing body, not less than 30 days before the date of this certification.

4. I assure that, before the date of this certification— (a) the application described above (and any amendment to that application) was made public; and (b) an opportunity to comment on that application (or amendment) was provided to citizens and to neighborhood or community-based organizations, to the extent applicable law or established procedure made such an opportunity available.

5. I assure that, for each fiscal year of the award (if any) that OJP makes based on the application described above, the applicant unit of local government will maintain and report such data, records, and information (programmatic and financial), as OJP may reasonably require.

6. I certify that— (a) the programs to be funded by the award (if any) that OJP makes based on the application described above meet all the requirements of the JAG Program statute (42 U.S.C. §§ 3750-3758); (b) all the information contained in that application is correct; (c) in connection with that application, there has been appropriate coordination with affected agencies; and (d) in connection with that award (if any), the applicant unit of local government will comply with all provisions of the JAG Program statute and all other applicable federal laws.

7. I have examined certification entitled "State or Local Government: FY 2017 Certification of Compliance with 8 U.S.C. § 1373" executed by the chief legal officer of the applicant government with respect to the FY 2017 JAG program and submitted in support of the application described above, and I hereby adopt that certification as my own on behalf of that government.

I acknowledge that a materially false, fictitious, or fraudulent statement (or concealment or omission of a material fact) in this certification, or in the application that it "supports, may be the subject of criminal prosecution (including under 18 U.S.C. §§ 1001 and/or 1621, and/or 42 U.S.C. § 3795a), and also may subject me and the applicant unit of local government to civil penalties and administrative remedies for false claims or otherwise (including under 31 U.S.C. §§ 3729-3730 and §§ 3801-3812). I also acknowledge that OJP awards, including certifications provided in connection with such awards, are subject to review by USDOJ, including by OJP and by the USDOJ Office of the Inspector General.

---

Signature of Chief Executive of the Applicant Unit of
Local Government

---

Date of Certification

---

Printed Name of Chief Executive

---

Title of Chief Executive

---

Name of Applicant Unit of Local Government

# Appendix II

## State or Local Government:
## Certification of Compliance with 8 U.S.C. § 1373

**Template for use by the *chief legal officer* of the "Local Government"**
**(e.g., the General Counsel)** (Note: this Certification is not required by Indian tribal government applicants.)

**Available for download at:**
https://ojp.gov/funding/Explore/SampleCertifications-8USC1373.htm

37

**U.S. DEPARTMENT OF JUSTICE**
**OFFICE OF JUSTICE PROGRAMS**

<span style="color:red">**State or Local Government: FY 2017 Certification of Compliance with 8 U.S.C. § 1373**</span>

On behalf of the applicant government entity named below, and in support of its application, I certify under penalty of perjury to the Office of Justice Programs ("OJP"), U.S. Department of Justice ("USDOJ"), that all of the following are true and correct:

> (1) I am the chief legal officer of the State or local government of which the applicant entity named below is a part ("the jurisdiction"), and I have the authority to make this certification on behalf of the jurisdiction and the applicant entity (that is, the entity applying directly to OJP). I understand that OJP will rely upon this certification as a material representation in any decision to make an award to the applicant entity.

> (2) I have carefully reviewed 8 U.S.C. § 1373(a) and (b), including the prohibitions on certain actions by State and local government entities, -agencies, and -officials regarding information on citizenship and immigration status. I also have reviewed the provisions set out at (or referenced in) 8 U.S.C. § 1551 note ("Abolition … and Transfer of Functions"), pursuant to which references to the "Immigration and Naturalization Service" in 8 U.S.C. § 1373 are to be read, as a legal matter, as references to particular components of the U.S. Department of Homeland Security.

> (3) I (and also the applicant entity) understand that the U.S. Department of Justice will require States and local governments (and agencies or other entities thereof) to comply with 8 U.S.C. § 1373, with respect to any "program or activity" funded in whole or in part with the federal financial assistance provided through the FY 2017 OJP program under which this certification is being submitted ("the FY 2017 OJP Program" identified below), specifically including any such "program or activity" of a governmental entity or -agency that is a subrecipient (at any tier) of funds under the FY 2017 OJP Program.

> (4) I (and also the applicant entity) understand that, for purposes of this certification, "program or activity" means what it means under title VI of the Civil Rights Act of 1964 (see 42 U.S.C. § 2000d-4a), and that terms used in this certification that are defined in 8 U.S.C. § 1101 mean what they mean under that section 1101, except that the term "State" also shall include American Samoa (cf. 42 U.S.C. § 901(a)(2)). Also, I understand that, for purposes of this certification, neither a "public" institution of higher education (i.e., one that is owned, controlled, or directly funded by a State or local government) nor an Indian tribe is considered a State or local government entity or -agency.

> (5) I have conducted (or caused to be conducted for me) a diligent inquiry and review concerning both—

>> (a) the "program or activity" to be funded (in whole or in part) with the federal financial assistance sought by the applicant entity under this FY 2017 OJP Program; and

>> (b) any prohibitions or restrictions potentially applicable to the "program or activity" sought to be funded under the FY 2017 OJP Program that deal with sending to, requesting or receiving from, maintaining, or exchanging information of the types described in 8 U.S.C. § 1373(a) or (b), whether imposed by a State or local government entity, -agency, or -official.

> (6) As of the date of this certification, neither the jurisdiction nor any entity, agency, or official of the jurisdiction has in effect, purports to have in effect, or is subject to or bound by, any prohibition or any restriction that would apply to the "program or activity" to be funded in whole or in part under the FY 2017 OJP Program (which, for the specific purpose of this paragraph 6, shall not be understood to include any such "program or activity" of any subrecipient at any tier), and that deals with either— (1) a government entity or -official sending or receiving information regarding citizenship or immigration status as described in 8 U.S.C. § 1373(a); or (2) a government entity or -agency sending to, requesting or receiving from, maintaining, or exchanging information of the types (and with respect to the entities) described in 8 U.S.C. § 1373(b).

I acknowledge that a materially false, fictitious, or fraudulent statement (or concealment or omission of a material fact) in this certification, or in the application that it supports, may be the subject of criminal prosecution (including under 18 U.S.C. §§ 1001 and/or 1621, and/or 42 U.S.C. § 3795a), and also may subject me and the applicant entity to civil penalties and administrative remedies for false claims or otherwise (including under 31 U.S.C. §§ 3729-3730 and §§ 3801-3812). I also acknowledge that OJP awards, including certifications provided in connection with such awards, are subject to review by USDOJ, including by OJP and by the USDOJ Office of the Inspector General.

| | |
|---|---|
| _____ | _____ |
| Signature of Chief Legal Officer of the Jurisdiction | Printed Name of Chief Legal Officer |
| _____ | _____ |
| Date of Certification | Title of Chief Legal Officer of the Jurisdiction |

_____
Name of Applicant Government Entity (i.e., the applicant to the FY 2017 OJP Program identified below)

<span style="color:red">*FY 2017 OJP Program:*</span> **Byrne Justice Assistance Grant ("JAG") Program**

38

# Appendix III

## 8 U.S.C. § 1373 (as in effect on June 21, 2017)

## Communication between government agencies and the Immigration and Naturalization Service

### (a) In general

Notwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual.

### (b) Additional authority of government entities

Notwithstanding any other provision of Federal, State, or local law, no person or agency may prohibit, or in any way restrict, a Federal, State, or local government entity from doing any of the following with respect to information regarding the immigration status, lawful or unlawful, of any individual:

(1) Sending such information to, or requesting or receiving such information from, the Immigration and Naturalization Service.
(2) Maintaining such information.
(3) Exchanging such information with any other Federal, State, or local government entity.

### (c) Obligation to respond to inquiries

The Immigration and Naturalization Service shall respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information.

*See also* provisions set out at (or referenced in) 8 U.S.C. § 1551 note ("Abolition … and Transfer of Functions")

BJA-2017-11391
Decl. of Nordeen
Exhibit 1, Page 39 of 41

# Appendix IV

## OJP Certified Standard Assurances

BJA-2017-11301

OMB No. 1121-0140
Expires 5/31/2019

**U.S. DEPARTMENT OF JUSTICE**
**OFFICE OF JUSTICE PROGRAMS**

**CERTIFIED STANDARD ASSURANCES**

On behalf of the Applicant, and in support of this application for a grant or cooperative agreement, I certify under penalty of perjury to the Office of Justice Programs (OJP), U.S. Department of Justice ("Department"), that all of the following are true and correct:

(1) I have the authority to make the following representations on behalf of myself and the Applicant. I understand that these representations will be relied upon as material in any OJP decision to make an award to the Applicant based on its application.

(2) I certify that the Applicant has the legal authority to apply for the federal assistance sought by the application, and that it has the institutional, managerial, and financial capability (including funds sufficient to pay any required non-federal share of project costs) to plan, manage, and complete the project described in the application properly.

(3) I assure that, throughout the period of performance for the award (if any) made by OJP based on the application—

(a) the Applicant will comply with all award requirements and all federal statutes and regulations applicable to the award;

(b) the Applicant will require all subrecipients to comply with all applicable award requirements and all applicable federal statutes and regulations; and

(c) the Applicant will maintain safeguards to address and prevent any organizational conflict of interest, and also to prohibit employees from using their positions in any manner that poses, or appears to pose, a personal or financial conflict of interest.

(4) The Applicant understands that the federal statutes and regulations applicable to the award (if any) made by OJP based on the application specifically include statutes and regulations pertaining to civil rights and nondiscrimination, and, in addition—

(a) the Applicant understands that the applicable statutes pertaining to civil rights will include section 601 of the Civil Rights Act of 1964 (42 U.S.C. § 2000d); section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794); section 901 of the Education Amendments of 1972 (20 U.S.C. § 1681); and section 303 of the Age Discrimination Act of 1975 (42 U.S.C. § 6102);

(b) the Applicant understands that the applicable statutes pertaining to nondiscrimination may include section 815(c) of Title I of the Omnibus Crime Control and Safe Streets Act of 1968 (42 U.S.C. § 3789d(c)); section 1407(e) of the Victims of Crime Act of 1984 (42 U.S.C. § 10604(e)); section 299A(b) of the Juvenile Justice and Delinquency Prevention Act of 2002 (42 U.S.C. § 5672(b)); and that the grant condition set out at section 40002(b)(13) of the Violence Against Women Act (42 U.S.C. § 13925(b)(13)) also may apply;

(c) the Applicant understands that it must require any subrecipient to comply with all such applicable statutes (and associated regulations); and

(d) on behalf of the Applicant, I make the specific assurances set out in 28 C.F.R. §§ 42.105 and 42.204.

(5) The Applicant also understands that (in addition to any applicable program-specific regulations and to applicable federal regulations that pertain to civil rights and nondiscrimination) the federal regulations applicable to the award (if any) made by OJP based on the application may include, but are not limited to, 2 C.F.R. Part 2800 (the DOJ "Part 200 Uniform Requirements") and 28 C.F.R. Parts 22 (confidentiality - research and statistical information), 23 (criminal intelligence systems), and 46 (human subjects protection).

(6) I assure that the Applicant will assist OJP as necessary (and will require subrecipients and contractors to assist as necessary) with the Department's compliance with section 106 of the National Historic Preservation Act of 1966 (54 U.S.C. § 306108), the Archeological and Historical Preservation Act of 1974 (54 U.S.C. §§ 312501-312508), and the National Environmental Policy Act of 1969 (42 U.S.C. §§ 4321-4335), and 28 C.F.R. Parts 61 (NEPA) and 63 (floodplains and wetlands).

(7) I assure that the Applicant will give the Department and the Government Accountability Office, through any authorized representative, access to, and opportunity to examine, all paper or electronic records related to the award (if any) made by OJP based on the application.

(8) I assure that, if the Applicant is a governmental entity, with respect to the award (if any) made by OJP based on the application—

(a) it will comply with the requirements of the Uniform Relocation Assistance and Real Property Acquisitions Act of 1970 (42 U.S.C. §§ 4601-4655), which govern the treatment of persons displaced as a result of federal and federally-assisted programs; and

(b) it will comply with requirements of 5 U.S.C. §§ 1501-1508 and 7324-7328, which limit certain political activities of State or local government employees whose principal employment is in connection with an activity financed in whole or in part by federal assistance.

I acknowledge that a materially false, fictitious, or fraudulent statement (or concealment or omission of a material fact) in this certification, or in the application that it supports, may be the subject of criminal prosecution (including under 18 U.S.C. §§ 1001 and/or 1621, and/or 42 U.S.C. § 3795a), and also may subject me and the Applicant to civil penalties and administrative remedies for false claims or otherwise (including under 31 U.S.C. §§ 3729-3730 and 3801-3812). I also acknowledge that OJP awards, including certifications provided in connection with such awards, are subject to review by the Department, including by OJP and by the Department's Office of the Inspector General.

41



**BJA FY 17 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - Local Solicitation** 2017-H2342-OR-DJ

<u>Help/Frequently Asked Questions</u>

<u>GMS Home</u>

<u>Log Off</u>

**Submit Application**

Your application for the BJA FY 17 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - Local Solicitation has been successfully submitted. You will no longer be able to edit any information submitted. However, you can log in any time to view the application information.

You will be contacted by the Program Office when your application is processed or any other action is required by you.

Decl. of Nordeen
Exhibit 2, Page 1 of 50

**BJA FY 17 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - Local Solicitation** 2017-H2342-OR-DJ

| Application | | Correspondence | | Application: | Switch to ... ▾ |

## Application Handbook

Overview

Applicant Information

Project Information

Budget and Program Attachments

Assurances and Certifications

Review SF 424

Submit Application

Help/Frequently Asked Questions

GMS Home

Log Off

## Overview

This handbook allows you to complete the application process for applying to the BJA FY 17 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - Local Solicitation. At the end of the application process you will have the opportunity to view and print the SF-424 form.

| | |
|---|---|
| *Type of Submission | Application Non-Construction |
| *Type of Application | New<br>If Revision, select appropriate option<br>If Other, specify |
| *Is application subject to review by state executive order 12372 process? | N/A Program has not been selected by state for review |

[ Continue ]

**BJA FY 17 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - Local Solicitation** 2017-H2342-OR-DJ

| Application | | Correspondence | | Application: | Switch to ... |

**Application Handbook**

Overview

Applicant Information

Project Information

Budget and Program Attachments

Assurances and Certifications

Review SF 424

Submit Application

Help/Frequently Asked Questions

GMS Home

Log Off

## Applicant Information

| | |
|---|---|
| *Is the applicant delinquent on any federal debt | No |
| *Employer Identification Number (EIN) | 93-6002236 |
| *Type of Applicant | Municipal |
| Type of Applicant (other): | |
| *Organizational Unit | Portland Police Bureau |
| *Legal Name (Legal Jurisdiction Name) | City of Portland |
| *Vendor Address 1 | 1120 SW Fifth Avenue |
| Vendor Address 2 | Room 1250 |
| *Vendor City | Portland |
| Vendor County/Parish | Multnomah |
| *Vendor State | Oregon |
| *Vendor ZIP | 97204-1912 |
| **Point of Contact Information for matters involving this application** | |
| Contact Prefix: | Mr. |
| Contact Prefix (Other): | |
| Contact First Name: | Michael |
| Contact Middle Initial: | |
| Cotnact Last Name: | Clark |
| Contact Suffix: | |
| Contact Suffix (Other): | |
| Contact Title: | Financial Analyst |
| Contact Address Line 1: | 1120 SW Fifth Avenue |
| Contact Address Line 2: | Room 1250 |
| Contact City: | Portland |

| Contact State: | Oregon |
|---|---|
| Contact Zip Code: | 97204-1912 |
| Contact Phone Number: | (503) 823-6862 |
| Contact Fax Number: | (503) 823-5877 |
| Contact E-mail Address: | michael.clark@portlandoregon.gov |

Continue



**BJA FY 17 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - Local Solicitation** 2017-H2342-OR-DJ

| Application | || Correspondence | | Application: | Switch to ... ▾ |

**Application Handbook**

Overview

Applicant Information

Project Information

Budget and Program Attachments

Assurances and Certifications

Review SF 424

Submit Application

Help/Frequently Asked Questions

GMS Home

Log Off

## Project Information

| Descriptive Title of Applicant's Project |
|---|
| Edward Byrne Memorial Justice Assistance Grant (JAG) Program Fiscal Year 2017 Local Solicitation to assist the Portland-Metropolitan area law enforcement and criminal justice community to prevent and reduce crime and violence |

| Areas Affected by Project |
|---|
| The cities of Portland and Gresham and the county of Multnomah, Oregon |

| Proposed Project | | |
|---|---|---|
| | *Start Date | October/ 01/ 2016 |
| | *End Date | September/ 30/ 2020 |

| *Congressional Districts of | | |
|---|---|---|
| | Project | Congressional District 01, OR<br>Congressional District 03, OR<br>Congressional District 05, OR |

| *Estimated Funding | |
|---|---|
| Federal | $385515.00 |
| Applicant | $0.00 |
| State | $0.00 |
| Local | $0.00 |
| Other | $0.00 |
| Program Income | $0.00 |
| TOTAL | $385515.00 |

[ Continue ]

Decl. of Nordeen
Exhibit 2, Page 5 of 50

**BJA FY 17 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - Local Solicitation** 2017-H2342-OR-DJ

| Application | || | Correspondence | | | Application: | Switch to ... ▾ |

**Application Handbook**

Overview

Applicant Information

Project Information

Budget and Program Attachments

Assurances and Certifications

Review SF 424

Submit Application

Help/Frequently Asked Questions

GMS Home

Log Off

This page allows you to upload the Budget Detail Worksheet, Financial Management and System of Internal Controls Questionnaire (FCQ) form, Program Narrative, and other Program attachments. Click the attach button to continue.

### FCQ Attachment

In accordance with the Part 200 Uniform Requirements as set out at 2 C.F.R. 200.205, Federal agencies must have in place a framework for evaluating the risks posed by applicants before they receive a Federal award. To facilitate part of this risk evaluation, all applicants are to download, complete, and submit the Financial Management and System of Internal Controls Questionnaire.

For your convenience your most recently submitted FCQ Form is attached below. Please review it for accuracy. If you need to make changes, please submit an updated FCQ form, that will replace your most recently submitted FCQ Form.

| Most Recently Submitted FCQ form | |
| --- | --- |
| FinancialCapability.pdf | |

### Budget and other Program Attachments

| |
| --- |
| JAG 2017 Progam Abstract Att 1.pdf |
| JAG 2017 Progam Narr Att 2.pdf |
| JAG 2017 Budget Detail and Narr Att 3.pdf |
| JAG 2017 Signed Cert Standard Assurances Att 4.pdf |
| JAG 2017 Addt'l Att-Dsclr Projects Att 5.pdf |
| JAG 2017 Addt'l Att-Review Narr Att 6.pdf |
| JAG 2017 Addt'l Att-GPD_COP IGA Att 7.pdf |
| JAG 2017 Addt'l Att-MC Ltr Att 8.pdf |
| JAG 2017 Financial Capability Att 9.pdf |

Continue

*Please download the latest version of* Adobe Acrobat Reader®.

**BJA FY 17 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - Local Solicitation**  2017-H2342-OR-DJ

| Application || Correspondence | | Application: [Switch to ... ▼]

**Application Handbook**

Overview

Applicant Information

Project Information

Budget and Program Attachments

Assurances and Certifications

Review SF 424

Submit Application

Help/Frequently Asked Questions

GMS Home

Log Off

## Assurances and Certifications

To the best of my knowledge and belief, all data in this application/preapplication is true and correct, the document has been duly authorized by the governing body of the applicant and the applicant will comply with the attached assurances if the assistance is awarded.

Your typed name, in lieu of your signature represents your legal binding acceptance of the terms of this application and your statement of the veracity of the representations made in this application. The document has been duly authorized by the governing body of the applicant and the applicant will comply with the following:

1. Assurances
2. Certifications Regarding Lobbying; Debarment, Suspension and Other Responsibility Matters; and Drug-Free Workplace requirements.

If you are an applicant for any Violence Against Women grants, this includes the Certification of Compliance with the Statutory Eligibility Requirements of the Violence Against Women Act.

| | |
|---|---|
| *Prefix | Mayor |
| Name Prefix: (Other) | |
| *First Name | Ted |
| Middle Initial (if any) | |
| *Last Name | Wheeler |
| Suffix | |
| Name Suffix: (Other) | |
| *Title | Mayor |
| *Address Line 1 | 1120 SW Fifth Avenue |
| Address Line 2 | Room 1250 |
| *City | Portland |
| County | Multnomah |
| *State | Oregon |
| *Zip Code | 97204-1912 |
| *Phone | 503-823-4120     Ext : |
| Fax | -- |
| *E-mail | MayorWheeler@portlandoregon.gov |

☑ **I have examined the information provided here**

Case 6:18-cv-01959-MC    Document 25    Filed 04/08/19    Page 53 of 199

regarding the signing authority and certify it is accurate. I am the signing authority, or have been delegated or designated formally as the signing authority by the appropriate authority of official, to provide the information requested throughout this application system on behalf of this jurisdiction. Information regarding the signing authority, or the delegation of such authority, has been placed in a file and is available on-site for immediate review.

Continue

Decl. of Nordeen
Exhibit 2, Page 8 of 50
9/5/2017



**BJA FY 17 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - Local Solicitation** 2017-H2342-OR-DJ

| Application | || | Correspondence | | Application: | Switch to ... |

**Review SF-424**   Print a Copy

Application Handbook

Overview

Applicant Information

Project Information

Budget and Program Attachments

Assurances and Certifications

Review SF 424

Submit Application

Help/Frequently Asked Questions

GMS Home

Log Off

| APPLICATION FOR FEDERAL ASSISTANCE | 2. DATE SUBMITTED<br><br>September 05, 2017 | Applicant Identifier |
|---|---|---|
| 1. TYPE OF SUBMISSION<br><br>Application Non-Construction | 3. DATE RECEIVED BY STATE | State Application Identifier |
| | 4. DATE RECEIVED BY FEDERAL AGENCY | Federal Identifier |

| 5.APPLICANT INFORMATION | |
|---|---|
| Legal Name<br><br>City of Portland | Organizational Unit<br><br>Portland Police Bureau |
| Address<br><br>1120 SW Fifth Avenue<br>Room 1250<br>Portland, Oregon<br>97204-1912 | Name and telephone number of the person to be contacted on matters involving this application<br><br>Clark, Michael<br>(503) 823-6862 |
| 6. EMPLOYER IDENTIFICATION NUMBER (EIN)<br><br>93-6002236 | 7. TYPE OF APPLICANT<br><br>Municipal |
| 8. TYPE OF APPLICATION<br><br>New | 9. NAME OF FEDERAL AGENCY<br><br>Bureau of Justice Assistance |

| 10. CATALOG OF FEDERAL DOMESTIC ASSISTANCE<br><br>NUMBER:    16.738<br>CFDA    Edward Byrne Memorial Justice Assistance<br>TITLE:    Grant Program | 11. DESCRIPTIVE TITLE OF APPLICANT'S PROJECT<br><br>Edward Byrne Memorial Justice Assistance Grant (JAG) Program Fiscal Year 2017 Local Solicitation to assist the Portland-Metropolitan area law enforcement and criminal justice community to prevent and reduce crime and violence |
|---|---|

| 12. AREAS AFFECTED BY PROJECT<br><br>The cities of Portland and Gresham and the county of Multnomah, Oregon | |
|---|---|
| 13. PROPOSED PROJECT<br>Start Date:        October 01, 2016<br>End Date:         September 30, 2020 | 14. CONGRESSIONAL DISTRICTS OF<br><br>a. Applicant<br>b. Project    OR05 OR01 OR03 |

| 15. ESTIMATED FUNDING | | 16. IS APPLICATION SUBJECT TO REVIEW BY STATE |
|---|---|---|
| Federal | $385,515 | |

| | | |
|---|---|---|
| Applicant | $0 | **EXECUTIVE ORDER 12372 PROCESS?** |
| State | $0 | Program has not been selected by state for review |
| Local | $0 | |
| Other | $0 | |
| Program Income | $0 | **17. IS THE APPLICANT DELINQUENT ON ANY FEDERAL DEBT?** |
| TOTAL | $385,515 | N |

**18. TO THE BEST OF MY KNOWLEDGE AND BELIEF, ALL DATA IN THIS APPLICATION PREAPPLICATION ARE TRUE AND CORRECT, THE DOCUMENT HAS BEEN DULY AUTHORIZED BY GOVERNING BODY OF THE APPLICANT AND THE APPLICANT WILL COMPLY WITH THE ATTACHED ASSURANCES IF THE ASSISTANCE IS REQUIRED.**

Continue

**BJA FY 17 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - Local Solicitation** 2017-H2342-OR-DJ

| [Application](#) || [Correspondence](#) | Application: | Switch to ... ⌄ |

**Application Handbook**   **Submit Application**

[Overview](#)

[Applicant Information](#)

[Project Information](#)

[Budget and Program Attachments](#)

[Assurances and Certifications](#)

[Review SF 424](#)

[Submit Application](#)

[Help/Frequently Asked Questions](#)

[GMS Home](#)

[Log Off](#)

- Application submitted and last updated on 05-Sep-2017

Decl. of Nordeen
Exhibit 2, Page 11 of 50
9/5/2017

 **BJA FY 17 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - Local Solicitation** 2017-H2342-OR-DJ 

Application          Correspondence          Application: [ Switch to ... ▾ ]

### Review SF-424  Print a Copy

**Application Handbook**

Overview

Applicant Information

Project Information

Budget and Program Attachments

Assurances and Certifications

Review SF 424

Submit Application

Help/Frequently Asked Questions

GMS Home

Log Off

| APPLICATION FOR FEDERAL ASSISTANCE | 2. DATE SUBMITTED | Applicant Identifier |
|---|---|---|
| **1. TYPE OF SUBMISSION**<br><br>Application Non-Construction | **3. DATE RECEIVED BY STATE** | **State Application Identifier** |
| | **4. DATE RECEIVED BY FEDERAL AGENCY** | **Federal Identifier** |

| **5.APPLICANT INFORMATION** | |
|---|---|
| **Legal Name**<br><br>City of Portland | **Organizational Unit**<br><br>Portland Police Bureau |
| **Address**<br><br>1120 SW Fifth Avenue<br>Room 1250<br>Portland, Oregon<br>97204-1912 | **Name and telephone number of the person to be contacted on matters involving this application**<br><br>Clark, Michael<br>(503) 823-6862 |
| **6. EMPLOYER IDENTIFICATION NUMBER (EIN)**<br><br>93-6002236 | **7. TYPE OF APPLICANT**<br><br>Municipal |
| **8. TYPE OF APPLICATION**<br><br>New | **9. NAME OF FEDERAL AGENCY**<br><br>Bureau of Justice Assistance |
| **10. CATALOG OF FEDERAL DOMESTIC ASSISTANCE**<br><br>NUMBER:  16.738<br>CFDA TITLE:  Edward Byrne Memorial Justice Assistance Grant Program | **11. DESCRIPTIVE TITLE OF APPLICANT'S PROJECT**<br><br>2017 Portland Metropolitan Area Law Enforcement Community Justice Assistance Grant (JAG) Program |
| **12. AREAS AFFECTED BY PROJECT**<br><br>The cities of Portland and Gresham and the county of Multnomah, Oregon | |

| **13. PROPOSED PROJECT**<br>Start Date:  October 01, 2016<br>End Date:  September 30, 2020 | **14. CONGRESSIONAL DISTRICTS OF**<br><br>a. Applicant<br><br>b. Project  OR01 OR03 OR05 |
|---|---|

| **15. ESTIMATED FUNDING** | | **16. IS APPLICATION SUBJECT TO REVIEW BY STATE EXECUTIVE ORDER 12372 PROCESS?** |
|---|---|---|
| Federal | $385,515 | |

Decl. of Nordeen
Exhibit 2, Page 12 of 50
8/10/2017

| Applicant | $0 | Program has not been selected by state for review |
| State | $0 | |
| Local | $0 | |
| Other | $0 | |
| Program Income | $0 | **17. IS THE APPLICANT DELINQUENT ON ANY FEDERAL DEBT?** |
| TOTAL | $385,515 | |
| | | N |

**18. TO THE BEST OF MY KNOWLEDGE AND BELIEF, ALL DATA IN THIS APPLICATION PREAPPLICATION ARE TRUE AND CORRECT, THE DOCUMENT HAS BEEN DULY AUTHORIZED BY GOVERNING BODY OF THE APPLICANT AND THE APPLICANT WILL COMPLY WITH THE ATTACHED ASSURANCES IF THE ASSISTANCE IS REQUIRED.**

Continue

Ted Wheeler, Mayor                    Date    8/29/17

Decl. of Nordeen
Exhibit 2, Page 13 of 50



**U.S. DEPARTMENT OF JUSTICE**
**OFFICE OF JUSTICE PROGRAMS**

OMB Number: 1121-0329
Expiration Date: 12/31/2018

## FINANCIAL MANAGEMENT AND SYSTEM OF INTERNAL CONTROLS QUESTIONNAIRE

The financial management system of each non-Federal entity must provide for the following
- Retention requirements for records
- Requests for transfer of records
- Methods for collection, transmission and storage of information
- Access to records
- Restrictions on public access to records

(1)  Identification, in its accounts, of all Federal awards received and expended and the Federal programs under which they were received. Federal program and Federal award identification must include, as applicable, the CFDA title and number, Federal award identification number and year, name of the Federal agency, and name of the pass-through entity, if any.

(2)  Accurate, current, and complete disclosure of the financial results of each Federal award or program.

(3)  Records that identify adequately the source and application of funds for federally-funded activities. These records must contain information pertaining to Federal awards, authorizations, obligations, unobligated balances, assets, expenditures, income and interest and be supported by source documentation.

(4)  Effective control over, and accountability for, all funds, property, and other assets. The non-Federal entity must adequately safeguard all assets and assure that they are used solely for authorized purposes.

(5)  Comparison of expenditures with budget amounts for each Federal award.

(6)  Written procedures to document the receipt and disbursement of Federal funds including procedures to minimize the time elapsing between the transfer of funds from the United States Treasury or the pass-through entity and the disbursement by the non-Federal entity whether the payment is made by electronic funds transfer, or issuance or redemption of checks, warrants, or payment by other means.

(7)  Written procedures for determining the allowability of costs.

## APPLICANT ORGANIZATIONAL INFORMATION

1. Name of Organization and Address:

| | |
|---|---|
| Organization Name: | City of Portland |
| Street1: | 1120 SW Fifth Avenue, Room 1250 |
| Street2: | |
| City: | Portland |
| State: | OR: Oregon |
| Zip Code: | 97204 |

2. Authorized Representative's Name and Title:

| Prefix: | First Name: | Middle Name: |
|---|---|---|
| Mr. | Ted | |

| Last Name: | Suffix: |
|---|---|
| Wheeler | |

Title:
Mayor

| 3. Phone: | (503) 823-4120 | 4. Fax: | |
|---|---|---|---|

5. Email:  MayorWheeler@portlandoregon.gov

| 6. Year Established: | 7. Employer Identification Number (EIN): | 8. DUNS Number: |
|---|---|---|
| 1851 | 93-6002236 | 0549711970000 |

9. Type of Organization:

☐ State   ☒ Municipality   ☐ Non-Profit   ☐ Higher Education   ☐ Tribal   ☐ For-Profit
☐ Other:



**U.S. DEPARTMENT OF JUSTICE**
**OFFICE OF JUSTICE PROGRAMS**

OMB Number: 1121-0329
Expiration Date: 12/31/2018

| AUDIT INFORMATION |
|---|

An audit is conducted using generally accepted auditing standards (GAAS) or Generally Accepted Governmental Auditing Standards (GAGAS) and results in an audit report with an opinion.

10. The organization has undergone the following types of audit(s)(Please check all that apply):

☒ OMB A-133 Single Audit
☒ Financial Statement Audit
☐ Defense Contract Agency Audit (DCAA)
☐ None
☒ Programmatic Audit & Agency:

> ### BJA Enhanced Programmatic Desk Review

☒ Other Audit & Agency:

> ## OIG Capacity Audit

11. Most Recent Audit:  ☒ Within the past 12 months  ☐ Within the past two years  ☐ More than two years

Name of Audit Agency/Firm: Moss Adams

**AUDITOR'S OPINION:**

12.  On the most recent audit, what was the auditor's opinion?

☒ Unqualified Opinion     ☐ Qualified Opinion     ☐ Disclaimer, Going Concern or Adverse Opinions

Please enter the number of findings: 0
Please enter the amount of questioned costs: $0.00

Were material weaknesses noted in either the Financial Statement or Single Audit?  ☐ Yes     ☒ No

| ACCOUNTING SYSTEM |
|---|

13. Which of the following best describes your accounting system:

☐ Manual    ☒ Automated    ☐ Combination

| | |
|---|---|
| 14. Does the accounting system identify the receipt and expenditure of program funds separately for each grant? | ☒ Yes ☐ No ☐ Not Sure |
| 15. Does the accounting system provide for the recording of expenditures for each grant/contract by budget cost categories shown in the approved budget? | ☒ Yes ☐ No ☐ Not Sure |
| 16. Does your accounting system have the capability to document the recording of cost sharing or match for each grant?  Can you determine if documentation is available to support recorded match or cost share? | ☒ Yes ☐ No ☐ Not Sure |
| 17. Are time distribution records maintained for each employee that specifically identify effort charged to a particular grant or cost objective? | ☒ Yes ☐ No ☐ Not Sure |
| 18. Does the accounting/financial system include budgetary controls to preclude incurring obligations or costs in excess of total funds available or by budget cost category (e.g. Personnel, Travel, etc.)? | ☒ Yes ☐ No ☐ Not Sure |
| 19. Is the organization familiar with the existing Federal regulation and guidelines containing the Cost Principles and procedures for the determination and allowance of costs in connection with Federal grants? | ☒ Yes ☐ No ☐ Not Sure |



**U.S. DEPARTMENT OF JUSTICE**
**OFFICE OF JUSTICE PROGRAMS**

OMB Number: 1121-0329
Expiration Date: 12/31/2018

| PROPERTY STANDARDS, PROCUREMENT STANDARDS, AND TRAVEL POLICIES |
|---|

**PROPERTY STANDARDS**

20. Does your property management system(s) provide for maintaining: (1) a description of the equipment; (2) an identification number; (3) source of the property, including the award number; (4) where title vests; (5) acquisition date; (6) federal share of property cost; (7) location and condition of the property; (8) acquisition cost; & (9) ultimate disposition information?

☒ Yes ☐ No ☐ Not Sure

**PROCUREMENT STANDARDS**

21. Does your organization maintain written procurement procedures which (1) avoid unnecessary purchases; (2) provide an analysis of lease and purchase alternatives; and (3) provide a process for soliciting goods and services?

☒ Yes ☐ No ☐ Not Sure

22. Does your procurement system provide for the conduct to determine selection on a competitive basis and documentation of cost or price analysis for each procurement action?

☒ Yes ☐ No ☐ Not Sure

23. Does your procurement system include provisions for checking the "Excluded Parties List" system for suspended or debarred sub-grantees and contractors, prior to award? Please visit www.sam.gov.

☒ Yes ☐ No ☐ Not Sure

**TRAVEL POLICY**

24. Does your organization:

(a) maintain a standard travel policy?    ☒ Yes ☐ No

(b) adhere to the Federal Travel Regulation? (FTR)    ☒ Yes ☐ No

**SUBRECIPIENT MANAGEMENT AND MONITORING**

25. (For Pass-through entities only). Does your organization have controls in place to monitor activities of subrecipients, as necessary, to determine that Federal awards are used for authorized purposes in compliance with laws, regulations, and the provisions of the award and that performance goals are achieved (2 CFR200)?

☒ Yes ☐ No ☐ Not Sure
☐ N/A (Your organization does not make subawards.)

| STANDARDS FOR FINANCIAL MANAGEMENT SYSTEMS AND APPLICANT CERTIFICATION |
|---|

I certify that the above information is complete and correct to the best of my knowledge. This document must be certified by the organization's Authorized Representative, Executive Director, Chief Financial Officer, Chairman of the Board of Directors, or similar position.

Name: **Ted Wheeler**    Date:

Title: ☐ Executive Director    ☐ Chief Financial Officer    ☐ Chairman
☒ Other  Mayor

Phone: (503) 823-4120

U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Assistance
Edward Byrne Memorial Justice Assistance Grant (JAG) Program:
FY 2017 Local Solicitation; #BJA-2017-11301
City of Portland, Oregon Police Bureau
Program Abstract
Application Attachment 1

---

Applicant name:       City of Portland, Oregon
Disparate partner:    City of Gresham, Oregon

Project title:  Edward Byrne Memorial Justice Assistance Grant (JAG) Program Fiscal Year 2017 Local Solicitation to assist the Portland-Metropolitan area law enforcement and criminal justice community to prevent and reduce crime and violence.

Project goals:
1. Hire a 1.0 FTE Training and Development Analyst for approximately 21 months.  This position will be pivotal in the development and implementation of the Portland Police Bureau's (PPB) equity training plan.
2. Contract with a local service provider that coordinates treatment, temporary housing, counseling, and training opportunities for females involved in prostitution-related offenses for approximately 11 months.
3. Host a regional training for 45 School Resource Officers (SROs) and send new PPB SRO personnel to the December 2017, National Leadership Summit presented by the National Association of School Resource Officers.
4. Purchase non-fixed solid metal fencing, security gate, and camera system for patrol vehicle parking lot.
5. Fund officer overtime for the "Every 15 Minutes" program for area high schools.

Project Identifiers:
1. City of Portland Police Bureau - Hiring of Personnel, Case Management, Community-Based Programs, Counseling, Screening & Assessment, Victimization, and Education.

2. City of Gresham Police Department – Equipment-General, Officer Safety, and Overtime

The City of Portland will act as fiscal agent for the grant and distribute funds to the unit of local government identified in the disparate certification, City of Gresham Police Department.  Each listed partner has agreed to the allocation of grant funding.

Decl. of Nordeen
Exhibit 2, Page 17 of 50

U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Assistance
Edward Byrne Memorial Justice Assistance Grant (JAG) Program:
FY 2017 Local Solicitation; #BJA-2017-11301
City of Portland, Oregon Police Bureau
Program Narrative
Application Attachment 2

---

**City of Portland Programs**

*Identifiers:  Hiring of Personnel, Case Management, Community-Based Programs, Counseling, Screening & Assessment, Victimization, and Education*

The Portland Police Bureau (Bureau) will hire a 1.0 FTE limited term Training and Development Analyst (TDA) for approximately 21 months.  This position will be pivotal in the development and implementation of the Bureau's equity training plan.  This position will assure that the training plan is inclusive of partners and community, based on best practices and national standards, as well as meet the needs of the local Portland culture and the Bureau.

Duties of the Training and Development Analyst:

- Assist with the rolling out of the Implicit Bias training in the In-Service structure.

- Serve as the equity lead for development of the Procedural Justice training.  This will include identifying Subject Matter Experts (SMEs) working with the Training Division Captain to build a development team, conduct train-the-trainer, and coordinate leadership training and rollout within In-Service and advanced academy structures.

- Develop a core series of trainings for new officers that removes assumptions of skill and instead replaces with intentionality to build skill and invest in Bureau members.  This series will include topics such as customer service, communication skills, understanding that community engagement is vital to success, and safety on the job.

- Work with Community Trainer Project Coordinator to establish a pool of community members who are organized to assist with the training of officers.  These interactions will

Decl. of Nordeen
Exhibit 2, Page 18 of 50

U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Assistance
Edward Byrne Memorial Justice Assistance Grant (JAG) Program:
FY 2017 Local Solicitation; #BJA-2017-11301
City of Portland, Oregon Police Bureau
Program Narrative
Application Attachment 2

_____

assure that new officers begin their tenure with Bureau establishing community relationships.

- Collaborate with the Oregon Department of Public Safety Standards and Training state academy. Review curriculum and assure the Bureau's training is not duplicative and that the curriculum is evolving.

- Bureau Curriculum Review/Gap Analysis-Review of all current training curriculum with an equity lens to identify areas that can be improved or embedded.

The position will be assigned to the Bureau's Strategic Services Division at a total cost of $162,603. The focus of the limited-term grant-funded position will be bureau-specific and involve law enforcement-related administrative duties.

*LifeWorks NW New Options for Women (NOW)*

Prostitution, as well as the compelling and promotion of prostitution by pimps, has created key public safety concerns in the City of Portland's East neighborhoods along the major north-south highway, 82nd Avenue, as well as general concerns for the victims of these crimes. That said, because the actual sex acts are performed throughout the city, many other neighborhoods are affected by these crimes. The PPB's East Precinct Sex Trafficking Unit (STU) utilizes a three-prong multidisciplinary approach in addressing the problems surrounding prostitution-related offenses. Not only does the STU consist of highly trained and experienced officers, it also includes a Multnomah County Deputy District Attorney (DDA) and a local service provider. This multidisciplinary approach allows the team to move beyond traditional law enforcement responses

U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Assistance
Edward Byrne Memorial Justice Assistance Grant (JAG) Program:
FY 2017 Local Solicitation; #BJA-2017-11301
City of Portland, Oregon Police Bureau
Program Narrative
Application Attachment 2

by utilizing social services to help victims of human trafficking and target those who purchase sex from these victims.

LifeWorks NW was selected as the sole source local service provider through a competitive process for the JAG 2016 grant cycle and remains the sole provider of such services.

LifeWorks NW New Options for Women (NOW) provides trauma-informed care to women in Portland in order to help them exit the sex industry. Most, if not all, of NOW's clients are survivors of childhood sexual abuse and/or molestation, which include human trafficking. This severe trauma does not go away when women turn 18. The NOW program works with women to reduce relapse into the lifestyle that traditionally surrounds prostitution. NOW's services include addictions treatment, treatment for mental health disorders (including psychiatric care, as needed), challenging criminality, domestic violence education and support, parenting education, urinalysis (to make sure they stay drug-free and are not lying about drug usage), and mentoring/case management. NOW provides an environment in which these women are able to speak about their experiences of being trafficked and prostituted and truly address their issues. NOW assists the women in the program in finding stable housing, legal income, furthering education, and assisting them in obtaining any form of identification they may need. Prior to the formation of NOW seven years ago, the women in this Portland population had no other options.

NOW staff will meet bi-weekly with STU officers and the DDA to discuss the women's progress. During these meetings, the team will discuss the status of each client and how to best help her successfully complete both the NOW program and county probation.

U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Assistance
Edward Byrne Memorial Justice Assistance Grant (JAG) Program:
FY 2017 Local Solicitation; #BJA-2017-11301
City of Portland, Oregon Police Bureau
Program Narrative
Application Attachment 2

---

The Fiscal Year 2017 JAG grant will provide funding to the LifeWorks NW NOW Program at a cost of $110,000.

The Bureau's Youth Services Division will host a regional training for 40 School Resource Officers (SROs) at the Bureau's Training Facility and send new Bureau SRO personnel to the National Leadership Summit presented by the National Association of School Resource Officers.

The Bureau's Youth Services Division currently employs 20 sworn personnel, 17 of which are School Resources Officers (SROs), their supervisors, and managers. School Resource Officers are police officers that have a permanent assignment in a local high school and the "feeder" schools that support that high school. These officers are responsible for helping provide a safe school environment, serve as educators for law-related topics, and serve as mentors to students. They are also integral at helping connect students and their families with additional resources as needed. They are also deeply rooted in Community Engagement and Outreach events and activities, both in their school clusters and in the community.

The National School Resource Officers Association (NASRO) is the national organization that sets the standard for best practices and standardized training for school-based policing, school security, and school safety. The Bureau Youth Services Division host a Basic SRO Certification Course for the Bureau and regional law enforcement agencies. The SROs, supervisors, and managers will be trained to the national standard. The SROs have not received NASRO training as a unit in the past due to budget restrictions, and since every agency program has new personnel that need to receive this training, it is of the utmost importance that the SROs be trained to the level of national standards and best practices to further enhance their connection with school staff,

U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Assistance
Edward Byrne Memorial Justice Assistance Grant (JAG) Program:
FY 2017 Local Solicitation; #BJA-2017-11301
City of Portland, Oregon Police Bureau
Program Narrative
Application Attachment 2

students and their families, and the community, and to further increase the trust and legitimacy of these officers within the community, as the SRO Program is the pinnacle of Community Engagement and Outreach in the Portland Police Bureau.

The Fiscal Year 2017 JAG grant will provide funding to the School Resource Officers trainings at a cost of $24,120.

**City of Gresham Programs**

*Identifiers: Equipment-General, Officer Safety, and Overtime*

The Gresham Police Department's north parking lot is the only 24-hour, fenced, and gated parking lot at the Department's headquarters. It is the designated parking lot for police patrol vehicles, command-type vehicles, certain Fire Department vehicles, and parking for the Mayor and School Superintendent.

The current chain-linked fence offers no visual deterrence nor much of a physical one. Detectives about to participate in covert surveillance operations can easily be identified by any legal passersby as can SWAT personnel as they conduct pre-mission walk-through rehearsals. As mobile computers become more advanced, officers are using their patrol vehicles as mobiles office for report writing, suspect investigations, and other critical work. As they do this work while parked in the police lot they are vulnerable to anyone wishing to do harm. Due to current community trends, the mentioned personnel, and visible assets, operations are at greater risk of harm, public scrutiny, and counter-intelligence. The Department desires to replace the existing chain-linked fence with a solid/opaque structure around the perimeter of the parking lot

U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Assistance
Edward Byrne Memorial Justice Assistance Grant (JAG) Program:
FY 2017 Local Solicitation; #BJA-2017-11301
City of Portland, Oregon Police Bureau
Program Narrative
Application Attachment 2

---

using metal material that can be removed if needed but will provide a solid barrier between the emergency vehicles and the public. A security gate and camera system will also be installed.

The Fiscal Year 2017 JAG grant will provide funding for non-permanent fencing, gate, and security cameras at a cost of $69,278.

Gresham will use 2017 JAG funds to support their "Every 15 Minutes" program by funding officer overtime. "Every 15 Minutes" offers real-life experience without the real-life risks. This emotionally charged program is designed to dramatically instill teenagers with the potentially dangerous consequences of drinking alcohol and texting while driving (distracted and impaired driving). This powerful program will challenge students to think about drinking, texting while driving, personal safety, and the responsibility of making mature decisions when lives are involved. This program is held at four local area high schools. The event is held in the spring and the requested budget will fund officer overtime for several school years.

The Fiscal Year 2017 JAG grant will provide funding for the officer overtime at a cost of $19,514.

*Grant Program Accountability Measures*

The grantee and subrecipient will report on their relevant General Information, Activity-Program Selection, Program Module, and semi-annual Goals & Objectives in accordance with the applicable JAG Accountability Measures in the BJA Performance Measurement Tool (PMT).

*Coordination of Related Justice Funds and JAG Funds*

The Cities of Portland and Gresham do not anticipate any coordination of related DOJ-funded projects and Fiscal Year 2017 JAG funded projects.

U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Assistance
Edward Byrne Memorial Justice Assistance Grant (JAG) Program:
FY 2017 Local Solicitation; #BJA-2017-11301
City of Portland, Oregon Police Bureau
Budget Detail and Budget Narrative
Application Attachment 3

_____

## Budget Detail

### A.  Personnel $114,067

| Position | Computation | Cost |
|---|---|---|
| 1.0 FTE Training and Development Analyst | | |
| 10/1/17 – 6/30/18 | $31.1596/hr x 1,560 hours | $ 48,609 |
| 7/1/18 – 6/30/19 | $31.47/hr x 2,080 hours | 65,458 |

### B.  Fringe Benefits $ 48,536

| Position | Computation | Cost |
|---|---|---|
| 1.0 FTE Training and Development Analyst | | |
| 10/1/17 – 6/30/18 | | |
| Fringe | | |
| Workers' Comp | 0.0141 x 1,560 hrs | $    22 |
| FICA | 0.0765 x 48,609 | 3,719 |
| Regional transit payroll tax | 0.0075 x 48,609 | 365 |
| Retirement | 0.2446 x 48,609 | 11,890 |
| Benefits | | |
| Insurances | $818/month x 9 mos | 7,362 |
| | | 23,358 |
| | | |
| 7/1/18 – 6/30/19 | | |
| Fringe | | |
| Workers' Comp | 0.0141 x 2,080 hrs | 29 |
| FICA | 0.0765 x 65,458 | 5,008 |
| Regional transit payroll tax | 0.0076 x 65,458 | 498 |
| Retirement | 0.2446 x 65,458 | 16,011 |
| Benefits | | |
| Insurances | $820/month x 4.429 mos* | 3,632 |
| | | 25,178 |

*The remaining Benefits will be covered by the Police Bureau's FY19 General Fund appropriations.

Decl. of Nordeen
Exhibit 2, Page 24 of 50

U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Assistance
Edward Byrne Memorial Justice Assistance Grant (JAG) Program:
FY 2017 Local Solicitation; #BJA-2017-11301
City of Portland, Oregon Police Bureau
Budget Detail and Budget Narrative
Application Attachment 3

---

**C.  Travel**                                                                $  7,720
*Portland's binding travel policy is available upon request.*

| Item | Computation | Cost |
|------|-------------|------|
| NASRO National School Safety Leaders' Summit | | |
| Wailea, HI | Airfare – 460/ticket x 4 tickets | 1,840 |
| December 8-11, 2017 | Lodging & per diem – 350/person x 4 SROs x 4 days | 5,600 |
| *Four attendees* | Baggage – 50/person x 4 SROs | 200 |
| | Airport economy parking – 40/car x 2 cars | 80 |

**D.  Equipment**                                                            $      0
*No expenses in this category*

**E.  Supplies**                                                             $      0
*No expenses in this category*

**F.  Construction**                                                    Not Allowed
*No expenses in this category*

**G.  Consultants/Contracts**                                            $198,792

*Subrecipients*

**City of Portland**
 *Prostitution Outreach and Prevention Program*
  Grant agreement with LifeWorks NW                    $110,000

**City of Gresham**

| Item | Computation | Cost |
|------|-------------|------|
| Non-Permanent Security Fencing for Patrol parking lot | 1 x $40,278 | 40,278 |
| Security gate | 1 x   14,000 | 14,000 |
| Security camera system | 1 x  15,000 | 15,000 |
| | | 69,278 |

Decl. of Nordeen
Exhibit 2, Page 25 of 50

U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Assistance
Edward Byrne Memorial Justice Assistance Grant (JAG) Program:
FY 2017 Local Solicitation; #BJA-2017-11301
City of Portland, Oregon Police Bureau
Budget Detail and Budget Narrative
Application Attachment 3

---

Officer overtime            $62.94/hr average OT rate x 288 hrs        18,127

Eligible Fringe Expenses
      FICA                     0.0765 x 18,127                           <u>1,387</u>
                                                                  19,514

**H. Other**                                                                          **$ 16,400**

| Item | Computation | Cost |
|------|-------------|------|

Regional training for School Resource Officers (SROs)
     National Association of School Resource Officers (NASRO)
         Registration          40 officers x $375 each        $ 15,000

NASRO National School Safety Leaders' Summit
     Registration                4 PPB SROs x 350 each          1,400

**Total Direct Costs**                                                        **$385,515**

**I. Indirect Costs**                                                         **$        0**
*No expenses in this category*

**TOTAL PROJECT COSTS**                                                **$385,515**

**Federal Request**                                                           **$385,515**

Decl. of Nordeen
Exhibit 2, Page 26 of 50

U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Assistance
Edward Byrne Memorial Justice Assistance Grant (JAG) Program:
FY 2017 Local Solicitation; #BJA-2017-11301
City of Portland, Oregon Police Bureau
Budget Detail and Budget Narrative
Application Attachment 3

_____

### Budget Summary

| | | |
|---|---|---|
| A.  Personnel/Salary Costs | $114,067 | |
| B.  Fringe Benefits | $ 48,536 | |
| C.  Travel | $   7,720 | |
| D.  Equipment | $         0 | |
| E.  Supplies | $         0 | |
| F.  Construction | Not Allowed | |
| G.  Consultants/Contracts | $198,792 | |
| H.  Other | $ 16,400 | |
| I.  Indirect Costs | $         0 | |
| **TOTAL PROJECT COSTS** | **$385,515** | |
| **Federal Request** | **$385,515** | |
| **Applicant Funds** | **$         0** | |

U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Assistance
Edward Byrne Memorial Justice Assistance Grant (JAG) Program:
FY 2017 Local Solicitation; #BJA-2017-11301
City of Portland, Oregon Police Bureau
Budget Detail and Budget Narrative
Application Attachment 3

---

**Budget Narrative**

Section A:  Personnel ($114,067)  This expense will provide funding for the City of Portland to hire a 1.0 FTE limited term Training and Development Analyst (TDA) for approximately 21 months.  The TDA will assist with the rolling out of the Police Bureau's Implicit Bias training in the In-Service structure; serve as the equity lead for development of the Procedural Justice training; develop a core series of trainings for new officers that removes assumptions of skill and instead replaces with intentionality to build skill and invest in Bureau members; work with Community Trainer Project Coordinator to establish a pool of community members who are organized to assist with the training of officers; and collaborate with the Oregon Department of Public Safety Standards and Training state academy.

Section B:  Fringe Benefits ($48,536)  This expense will fund the Fringe and Benefits expenses for the 1.0 FTE limited term Training and Development Analyst hired by the City under this grant program.

Section C:  Travel ($7,720)  This expense will fund the travel of three Bureau School Resource Officers (SROs) and the new Youth Services Division lieutenant, who is new to the School Resource Officer program, to the National Association of School Resource Officers' (NASRO) National Leadership Summit in December 2017.

Section D:  Equipment ($ -0- )  There are no Equipment costs associated with this grant request.

Section E:  Supplies ($ -0- )  There are no Supply costs associated with this grant request.

Section F:  Construction ($ -0- )  There are no Construction costs allowed with this grant request.

U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Assistance
Edward Byrne Memorial Justice Assistance Grant (JAG) Program:
FY 2017 Local Solicitation; #BJA-2017-11301
City of Portland, Oregon Police Bureau
Budget Detail and Budget Narrative
Application Attachment 3

Section G:  Consultants/Contracts ($198,792)  This expense will provide funding for the Fiscal Year 2017 JAG subrecipients.  The City will fund a grant agreement with LifeWorks NW NOW for prostitution outreach and prevention in the Portland-Metropolitan area.

The City of Gresham Police Department will purchase non-permanent fencing, gate, and security cameras for their parking lot in order to protect the safety of department members.  The Police Department will also fund officer overtime for their high school program "Every 15 Minutes."

Section H:  Other ($16,400)     This expense will fund the registration fees for two NASRO trainings for the Bureau's Youth Services Division.

Section I:  Indirect Costs ($ -0- )  There are no Indirect Costs associated with this grant request.

Decl. of Nordeen
Exhibit 2, Page 29 of 50

 

## BJA FY 17 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - Local Solicitation 2017-H2342-OR-DJ

<u>Application</u>          <u>Correspondence</u>          Application: [ Switch to ... ▾ ]

| **Application Handbook** | **Assurances and Certifications** |
|---|---|

<u>Overview</u>

<u>Applicant Information</u>

<u>Project Information</u>

<u>Budget and Program Attachments</u>

<u>Assurances and Certifications</u>

<u>Review SF 424</u>

<u>Submit Application</u>

<u>Help/Frequently Asked Questions</u>

<u>GMS Home</u>

<u>Log Off</u>

To the best of my knowledge and belief, all data in this application/preapplication is true and correct, the document has been duly authorized by the governing body of the applicant and the applicant will comply with the attached assurances if the assistance is awarded.

Your typed name, in lieu of your signature represents your legal binding acceptance of the terms of this application and your statement of the veracity of the representations made in this application. The document has been duly authorized by the governing body of the applicant and the applicant will comply with the following:

1. <u>Assurances</u>
2. <u>Certifications Regarding Lobbying; Debarment, Suspension and Other Responsibility Matters; and Drug-Free Workplace requirements.</u>

If you are an applicant for any Violence Against Women grants, this includes the Certification of Compliance with the Statutory Eligibility Requirements of the Violence Against Women Act.

\* - Indicates required field

| | |
|---|---|
| *Prefix: | [ Mayor ▾ ] |
| Prefix (Other): | [ ] |
| *First Name: | [ Ted ] |
| Middle Initial: | [ ] |
| *Last Name: | [ Wheeler ] |
| Suffix | [ Suffix: ▾ ] |
| Suffix (Other): | [ ] |
| *Title: | [ Mayor ] |
| *Address Line 1: | [ 1120 SW Fifth Avenue ] |
| Address Line 2: | [ Room 1250 ] |
| *City: | [ Portland ] |
| County: | [ Multnomah ] |
| *State: | [ Oregon ▾ ] |

Decl. of Nordeen
Exhibit 2, Page 30 of 50

| *Zip Code: | 97204 | - | 1912 | Zip+4 Lookup |
| *Phone: | 503 | - | 823 | - | 4120 | Ext : |
| Fax: | | - | | - | | |
| *E-mail: | MayorWheeler@portlan | Email Help |

*  ☑  I have examined the information provided here regarding the
signing authority and certify it is accurate. I am the signing authority,
or have been delegated or designated formally as the signing authority
by the appropriate authority of official, to provide the information
requested throughout this application system on behalf of this
jurisdiction. Information regarding the signing authority, or the
delegation of such authority, has been placed in a file and is available
on-site for immediate review.

Save and Continue

Ted Wheeler, Mayor                      8/29/17
                                        Date



OMB APPROVAL
NUMBER 1121-0140

EXPIRES 05/31/2019

**U.S. DEPARTMENT OF JUSTICE**

**OFFICE OF JUSTICE PROGRAMS**

**CERTIFIED STANDARD ASSURANCES**

On behalf of the Applicant, and in support of this application for a grant or cooperative agreement, I certify under penalty of perjury to the Office of Justice Programs (OJP), U.S. Department of Justice ("Department"), that all of the following are true and correct:

(1) I have the authority to make the following representations on behalf of myself and the Applicant. I understand that these representations will be relied upon as material in any OJP decision to make an award to the Applicant based on its application.

(2) I certify that the Applicant has the legal authority to apply for the federal assistance sought by the application, and that it has the institutional, managerial, and financial capability (including funds sufficient to pay any required non-federal share of project costs) to plan, manage, and complete the project described in the application properly.

(3) I assure that, throughout the period of performance for the award (if any) made by OJP based on the application--

    a.  the Applicant will comply with all award requirements and all federal statutes and regulations applicable to the award;

    b.  the Applicant will require all subrecipients to comply with all applicable award requirements and all applicable federal statutes and regulations; and

    c.  the Applicant will maintain safeguards to address and prevent any organizational conflict of interest, and also to prohibit employees from using their positions in any manner that poses, or appears to pose, a personal or financial conflict of interest.

(4) The Applicant understands that the federal statutes and regulations applicable to the award (if any) made by OJP based on the application specifically include statutes and regulations pertaining to civil rights and nondiscrimination, and, in addition--

    a.  the Applicant understands that the applicable statutes pertaining to civil rights will include section 601 of the Civil Rights Act of 1964 (42 U.S.C. § 2000d); section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794); section 901 of the Education Amendments of 1972 (20 U.S.C. § 1681); and section 303 of the Age Discrimination Act of 1975 (42 U.S.C. § 6102);

    b.  the Applicant understands that the applicable statutes pertaining to nondiscrimination may include section 815(c) of Title I of the Omnibus Crime Control and Safe Streets Act of 1968 (42 U.S.C. § 3789d(c)); section 1407(e) of the Victims of Crime Act of 1984 (42 U.S.C. § 10604(e)); section 299A(b) of the Juvenile Justice and Delinquency Prevention Act of 2002 (42 U.S.C. § 5672(b)); and that the grant condition set out at section 40002(b)(13) of the Violence Against Women Act (42 U.S.C. § 13925(b)(13)) also may apply;

    c.   the Applicant understands that it must require any subrecipient to comply with all such applicable statutes (and associated regulations); and

    d.   on behalf of the Applicant, I make the specific assurances set out in 28 C.F.R. §§ 42.105 and 42.204.

(5) The Applicant also understands that (in addition to any applicable program-specific regulations and to applicable federal regulations that pertain to civil rights and nondiscrimination) the federal regulations applicable to the award (if any) made by OJP based on the application may include, but are not limited to, 2 C.F.R. Part 2800 (the DOJ "Part 200 Uniform Requirements") and 28 C.F.R. Parts 22 (confidentiality - research and statistical information), 23 (criminal intelligence systems), and 46 (human subjects protection).

(6) I assure that the Applicant will assist OJP as necessary (and will require subrecipients and contractors to assist as necessary) with the Department's compliance with section 106 of the National Historic Preservation Act of 1966 (54 U.S.C. § 306108), the Archeological and Historical Preservation Act of 1974 (54 U.S.C. §§ 312501-312508), and the National Environmental Policy Act of 1969 (42 U.S.C. §§ 4321-4335), and 28 C.F.R. Parts 61 (NEPA) and 63 (floodplains and wetlands).

(7) I assure that the Applicant will give the Department and the Government Accountability Office, through any authorized representative, access to, and opportunity to examine, all paper or electronic records related to the award (if any) made by OJP based on the application.

(8) I assure that, if the Applicant is a governmental entity, with respect to the award (if any) made by OJP based on the application--

    a.   it will comply with the requirements of the Uniform Relocation Assistance and Real Property Acquisitions Act of 1970 (42 U.S.C. §§ 4601-4655), which govern the treatment of persons displaced as a result of federal and federally-assisted programs; and

    b.   it will comply with requirements of 5 U.S.C. §§ 1501-1508 and 7324-7328, which limit certain political activities of State or local government employees whose principal employment is in connection with an activity financed in whole or in part by federal assistance.

I acknowledge that a materially false, fictitious, or fraudulent statement (or concealment or omission of a material fact) in this certification, or in the application that it supports, may be the subject of criminal prosecution (including under 18 U.S.C. §§ 1001 and/or 1621, and/or 42 U.S.C. § 3795a), and also may subject me and the Applicant to civil penalties and administrative remedies for false claims or otherwise (including under 31 U.S.C. §§ 3729-3730 and 3801-3812). I also acknowledge that OJP awards, including certifications provided in connection with such awards, are subject to review by the Department, including by OJP and by the Department's Office of the Inspector General.

_____   6/29/17

Ted Wheeler, Mayor        Date

**U.S. DEPARTMENT OF JUSTICE**
**OFFICE OF JUSTICE PROGRAMS**
**OFFICE OF THE CHIEF FINANCIAL OFFICER**

**CERTIFICATIONS REGARDING LOBBYING; DEBARMENT, SUSPENSION AND OTHER RESPONSIBILITY MATTERS; AND DRUG-FREE WORKPLACE REQUIREMENTS**

Applicants should refer to the regulations cited below to determine the certification to which they are required to attest. Applicants should also review the instructions for certification included in the regulations before completing this form. Acceptance of this form provides for compliance with certification requirements under 28 CFR Part 69, "New Restrictions on Lobbying," 2 CFR Part 2867, "DOJ Implementation of OMB Guidance on Nonprocurement Debarment and Suspension," and 28 CFR Part 83, "Government-wide Debarment and Suspension," and Government-wide Requirements for Drug-Free Workplace (Grants)." The certifications shall be treated as a material representation of fact upon which reliance will be placed when the Department of Justice determines to award the covered transaction, grant, or cooperative agreement.

1. LOBBYING As required by Section 1352, Title 31 of the U.S. Code, and implemented at 28 CFR Part 69, for persons entering into a grant or cooperative agreement over $100,000, as defined at 28 CFR Part 69, the applicant certifies that:

(a) No Federal appropriated funds have been paid or will be paid, by or on behalf of the undersigned, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the making of any Federal grant, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal grant or cooperative agreement;

(b) If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this Federal grant or cooperative agreement, the undersigned shall complete and submit Standard Form - LLL, "Disclosure of Lobbying Activities," in accordance with its instructions;

(c) The undersigned shall require that the language of this certification be included in the award documents for all subawards at all tiers (including subgrants, contracts under grants and cooperative agreements, and subcontracts) and that all sub-recipients shall certify and disclose accordingly.

2. DEBARMENT, SUSPENSION, AND OTHER RESPONSIBILITY MATTERS (DIRECT RECIPIENT)

Pursuant to Executive Order 12549, Debarment and Suspension, implemented at 2 CFR Part 2867, for prospective participants in primary covered transactions, as defined at 2 CFR Section 2867.20(a), and other requirements:

A. The applicant certifies that it and its principals:

(a) Are not presently debarred, suspended, proposed for debarment, declared ineligible, sentenced to a denial of Federal benefits by a State or Federal court, or voluntarily excluded from covered transactions by any Federal department or agency;

(b) Have not within a three-year period preceding this application been convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (Federal, State, or local) transaction or contract under a public transaction; violation of Federal or State antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, or receiving stolen property;

(c) Have not within a two-year period preceding this application been convicted of a felony criminal violation under any Federal law, unless such felony criminal conviction has been disclosed in writing to the Office of Justice Programs (OJP) at Ojpcompliancereporting@usdoj.gov, and, after such disclosure, the applicant has received a specific written determination from OJP that neither suspension nor debarment of the applicant is necessary to protect the interests of the Government in this case.

(d) Are not presently indicted for or otherwise criminally or civilly charged by a governmental entity (Federal, State, or local) with commission of any of the offenses enumerated in paragraph (b) of this certification; and

(e) Have not within a three-year period preceding this application had one or more public transactions (Federal, State, or local) terminated for cause or default.

B. Where the applicant is unable to certify to any of the statements in this certification, he or she shall attach an explanation to this application.

3. FEDERAL TAXES

A. If the applicant is a corporation, the applicant certifies that either (1) the corporation has no unpaid Federal tax liability that has been assessed, for which all judicial and administrative remedies have been exhausted or have lapsed, that is not being paid in a timely manner pursuant to an agreement with the authority responsible for collecting the tax liability, or (2) the corporation has provided written notice of such an unpaid tax liability (or liabilities) to OJP at Ojpcompliancereporting@usdoj.gov, and, after such disclosure, the applicant has received a specific written determination from OJP that neither suspension nor debarment of the applicant is necessary to protect the interests of the Government in this case.

B. Where the applicant is unable to certify to any of the statements in this certification, he or she shall attach an explanation to this application.

4. DRUG-FREE WORKPLACE (GRANTEES OTHER THAN INDIVIDUALS)

As required by the Drug-Free Workplace Act of 1988, and implemented at 28 CFR Part 83, Subpart F, for grantees, as defined at 28 CFR Sections 83.620 and 83.650:

A. The applicant certifies that it will or will continue to provide a drug-free workplace by:

(a) Publishing a statement notifying employees that the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance is prohibited in the grantee's workplace and specifying the actions that will be taken against employees for violation of such prohibition;

(b) Establishing an on-going drug-free awareness program to inform employees about

(1) The dangers of drug abuse in the workplace;

(2) The grantee's policy of maintaining a drug-free workplace;

(3) Any available drug counseling, rehabilitation, and employee assistance programs; and

(4) The penalties that may be imposed upon employees for drug abuse violations occurring in the workplace;

(c) Making it a requirement that each employee to be engaged in the performance of the grant be given a copy of the statement required by paragraph (a);

(d) Notifying the employee in the statement required by paragraph (a) that, as a condition of employment under the grant, the employee will

(1) Abide by the terms of the statement; and

(2) Notify the employer in writing of his or her conviction for a violation of a criminal drug statute occurring in the workplace no later than five calendar days after such conviction;

(e) Notifying the agency, in writing, within 10 calendar days after receiving notice under subparagraph (d)(2) from an employee or otherwise receiving actual notice of such conviction. Employers of convicted employees must provide notice, including position title, to: Department of Justice, Office of Justice Programs, ATTN: Control Desk, 810 7th Street, N.W., Washington, D.C. 20531. Notice shall include the identification number(s) of each affected grant;

(f) Taking one of the following actions, within 30 calendar days of receiving notice under subparagraph (d)(2), with respect to any employee who is so convicted

(1) Taking appropriate personnel action against such an employee, up to and including termination, consistent with the requirements of the Rehabilitation Act of 1973, as amended; or

(2) Requiring such employee to participate satisfactorily in a drug abuse assistance or rehabilitation program approved for such purposes by a Federal, State, or local health, law enforcement, or other appropriate agency;

(g) Making a good faith effort to continue to maintain a drug-free workplace through implementation of paragraphs (a), (b), (c), (d), (e), and (f).

As the duly authorized representative of the applicant, I hereby certify that the applicant will comply with the above certifications.

Ted Wheeler, Mayor        Date

U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Assistance
Edward Byrne Memorial Justice Assistance Grant (JAG) Program:
FY 2017 Local Solicitation; #BJA-2017-11301
City of Portland, Oregon Police Bureau
Applicant Disclosure of Pending Applications
Application Attachment 5

---

Applicant name:        City of Portland, Oregon

Disparate partner:     City of Gresham, Oregon


The City of Portland and the City of Gresham do not have pending applications submitted within the last 12 months for federally funded assistance that include requests for funding to support the same projects being proposed under this solicitation and will cover the identical cost items outlined in the budget narrative and worksheet in the application under this solicitation.

U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Assistance
Edward Byrne Memorial Justice Assistance Grant (JAG) Program:
FY 2017 Local Solicitation; #BJA-2017-11301
City of Portland, Oregon Police Bureau
Additional Attachments
Review Narrative - Application Attachment 6

---

**Application Review**

The City of Portland, Oregon Police Bureau (Bureau) posted a notice regarding the Edward Byrne Memorial Justice Assistance Grant (JAG) Program FY 2017 Local Solicitation on the City of Portland website on August, 8, 2017.

Visitors to the Bureau's home page (https://www.portlandoregon.gov/police/ ) were able to link to a description of the JAG grant program, a link to the Office of Justice Programs solicitation web page, and the JAG 2017 solicitation.

The name, telephone number, and email address for the Bureau's grant program manager was listed in the event someone wanted to contact the Bureau. The solicitation posting was removed and the joint grant application was posted on September 5, 2017. The application will remain on the home page until October 6, 2017, after the 30-day wait period for non-emergency Council items.

**Governing Body and Public Review**

The Edward Byrne Memorial Justice Assistance Grant (JAG) Program FY 2017 Local Solicitation JAG application documents were submitted to the Bureau's Commissioner-in-Charge, Mayor Ted Wheeler on August 16, 2017.

Copies of the JAG documents were made available on August 25, 2017, to each City Council member (4), the Auditor's Office, the City Attorney, members of the media, and the public. Prior to the August 30, Council meeting, the Council Agenda items and related documents were posted to the City's website. The City Auditor's Office emails the agenda items

U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Assistance
Edward Byrne Memorial Justice Assistance Grant (JAG) Program:
FY 2017 Local Solicitation; #BJA-2017-11301
City of Portland, Oregon Police Bureau
Additional Attachments
Review Narrative - Application Attachment 6

to a variety of email addresses in the region.  The agenda items are also published in the "Daily Journal of Commerce."  The Agenda Calendar is a permanent online public record.

The First Reading of the JAG application ordinance was on August 30, 2017.  The Bureau's Business Operations Manager read a statement about the City's and its partner's proposed 2017 funding projects and answered questions from Council members.  The testimony was entered into the record.  Public testimony was also entered into the record.  The Second Reading, where public testimony is allowed but not expected, will be on September 6, 2017.  The application ordinance will become effective 30-days after the Second Reading, which will be October 6, 2017.

DOJ OJP BJA JAG 2017 Local Solicitation
Portland, Oregon Police Bureau
Additional Attachments
Intergovernmental Agreement with City of Gresham, Oregon – Application Attachment 7

---

City of Gresham/City of Portland
INTERGOVERNMENTAL AGREEMENT
For the Use of U.S. Department of Justice, Office of Justice Programs,
Bureau of Justice Assistance; CFDA 16.738
FY 2017 Edward Byrne Memorial Justice Assistance Grant (JAG) Program Funds
COP Contract Number:                         COG Contract Number:

---

This Agreement is made by and between the City of Gresham, Oregon, acting on behalf of its Police Department (GPD), and the City of Portland, Oregon, on behalf of its Police Bureau (PPB).  This Agreement may refer to GPD or PPB individually as a "Party" or jointly as the "Parties."

**RECITALS:**

A.       WHEREAS, the City of Portland, Oregon, as applicant and fiscal agent, desires to submit a joint application for the aggregate eligible allocation to all disparate municipalities for the FY 2017 Justice Assistance Grant (JAG) program.  The City of Gresham will receive $88,792, and the City of Portland will receive $296,723; and

B.       WHEREAS, PPB considers GPD to be a subrecipient of awarded federal funds.  As federal funds are involved in the Agreement, the following Exhibits are attached hereto, and by, this reference made a part of this Agreement as if set forth in full:

Exhibit A:  **JAG 2017 Grant Application, Grant Award Document, Performance Metrics and Report Calendar**
Exhibit B:  **Federal Requirements and Certifications**
Exhibit C:  **Information required by 2 CFR 200.331; and**
Exhibit D:  **Request for Reimbursement (RFR) Template**

C.       WHEREAS, the City of Gresham and the City of Portland have authority to cooperate for any lawful purpose with each other by means of an intergovernmental Agreement according to ORS 190.110 et seq. to enter into an Agreement to perform any lawful purpose; and

D.       WHEREAS, the purpose of this Agreement is to address payment to the City of Gresham as a subrecipient of FY 2017 JAG; and

E.       WHEREAS, the City of Gresham and the City of Portland desire to enter into this Agreement.

NOW, THEREFORE, GPD and PPB agree as follows:

1.       **TERM**

This Agreement shall be effective on the date the grant funds are released by the Office of Justice Programs (OJP) and extend through September 30, 2020, or until grant funds are exhausted unless earlier terminated in accordance with Section 7 of this Agreement or modified as provided in Section 15.

COP Ordinance #

DOJ OJP BJA JAG 2017 Local Solicitation
Portland, Oregon Police Bureau
Additional Attachments
Intergovernmental Agreement with City of Gresham, Oregon – Application Attachment 7

City of Gresham/City of Portland
INTERGOVERNMENTAL AGREEMENT
For the Use of U.S. Department of Justice, Office of Justice Programs,
Bureau of Justice Assistance; CFDA 16.738
FY 2017 Edward Byrne Memorial Justice Assistance Grant (JAG) Program Funds
COP Contract Number:                    COG Contract Number:

**2.    FEDERAL REQUIREMENTS**

Parties are subject to the rules and regulations of the following:

    a.  2 CFR 200:  Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards,
http://www.ecfr.gov/cgi-bin/text-idx?tpl=/ecfrbrowse/Title02/2cfr200_main_02.tpl

    b.  2015 Office of Justice Program (OJP) Financial Guide, http://ojp.gov/financialguide/DOJ/

    c.  FY 2017 JAG Submitted Application and Award Document

    d.  Exhibit A:  JAG and Federal Requirements and Certifications

**3.    RESPONSIBILITIES OF GPD**

GPD agrees to:

a.    Use JAG program funds for authorized purpose areas as described in the approved 2017 application.

b.    Provide consistent communication with PPB.

c.    Provide data that measures the results of their work.  Quarterly performance metrics reports must be submitted through Bureau of Justice Assistance (BJA) Performance Measurement Tool (PMT)
website: https://www.bjaperformancetools.org/help/JAGTraining.html

d.    Provide semi-annual Goals & Objectives reports to PPB.

e.    Submit quarterly invoices for approved program expenses to PPB.

f.    Provide documentation upon request from PPB demonstrating compliance with all of the applicable JAG requirements, Federal civil rights laws, including having an EEOP in place, reporting Findings of Discrimination, and providing language services to LEP persons.

**4.    RESPONSIBILITIES OF PPB**

PPB agrees to:

a.    Provide consistent communication with GPD.

b.    Submit quarterly financial status (SF-425) reports through the BJA portal Grant Monitoring System (GMS).

c.    Collect, compile, and submit collective quarterly reports through PMT and GMS.

d.    Administer and distribute FY 2017 JAG program funds.

e.    Monitor subaward in accordance with 2 CFR 200.

f.    Provide ongoing oversight and assistance and assure compliance of Federal Civil Rights Laws.

**5.    COMPENSATION**

COP Ordinance #

Decl. of Nordeen
Exhibit 2, Page 41 of 50

DOJ OJP BJA JAG 2017 Local Solicitation
Portland, Oregon Police Bureau
Additional Attachments
Intergovernmental Agreement with City of Gresham, Oregon – Application Attachment 7

City of Gresham/City of Portland
INTERGOVERNMENTAL AGREEMENT
For the Use of U.S. Department of Justice, Office of Justice Programs,
Bureau of Justice Assistance; CFDA 16.738
FY 2017 Edward Byrne Memorial Justice Assistance Grant (JAG) Program Funds
COP Contract Number:                          COG Contract Number:

5.1   Not-to-Exceed.  Total project costs to be realized by GPD will not exceed $88,792.00.

5.2   PPB, through the U.S. Department of Justice (DOJ) OJP BJA FY 2017 JAG grant, will reimburse GPD 100% of the total program costs when submitted with proper expense reimbursement documentation as required by 2 CFR 200: Uniform Guidance and OJP Financial Guide.

5.3   Invoicing.  GPD will submit quarterly invoices for program costs with back-up documentation in accordance with 2 CFR 200: Uniform Guidance and OJP Financial Guide to PPB Fiscal Division at inboxppbgrants@portlandoregon.gov

**6.     PAYMENT TERMS**

Electronic funds transfer. PPB shall send payment to GPD within thirty (30) days after receipt of each billing via electronic funds transfer.

**7.     EARLY TERMINATION**

This Agreement may be terminated prior to the end of the grant upon sixty (60) days mutual written consent of the parties or upon ninety (90) days written notice by one party.  Termination under any provision of this paragraph shall not affect any rights, obligation, or liability of GPD or PPB, which accrued prior such termination.

**8.     INDEMNIFICATION CONTRIBUTION**

8.1     IF ANY THIRD PARTY MAKES ANY CLAIM OR BRINGS ANY ACTION, SUIT OR PROCEEDING ALLEGING A TORT AS NOW OR HEREAFTER DEFINED IN ORS 30.260 ("THIRD PARTY CLAIM") AGAINST A PARTY (THE "NOTIFIED PARTY") WITH RESPECT TO WHICH THE OTHER PARTY ("OTHER PARTY") MAY HAVE LIABILITY, THE NOTIFIED PARTY MUST PROMPTLY NOTIFY THE OTHER PARTY IN WRITING OF THE THIRD PARTY CLAIM AND DELIVER TO THE OTHER PARTY A COPY OF THE CLAIM, PROCESS, AND ALL LEGAL PLEADINGS WITH RESPECT TO THE THIRD PARTY CLAIM. EITHER PARTY IS ENTITLED TO PARTICIPATE IN THE DEFENSE OF A THIRD PARTY CLAIM, AND TO DEFEND A THIRD PARTY CLAIM WITH COUNSEL OF ITS OWN CHOOSING. RECEIPT BY THE OTHER PARTY OF THE NOTICE AND COPIES REQUIRED IN THIS PARAGRAPH AND MEANINGFUL OPPORTUNITY FOR THE OTHER PARTY TO PARTICIPATE IN THE INVESTIGATION, DEFENSE AND SETTLEMENT OF THE THIRD PARTY CLAIM WITH COUNSEL OF ITS OWN CHOOSING ARE CONDITIONS PRECEDENT TO THE OTHER PARTY'S LIABILITY WITH RESPECT TO THE THIRD PARTY CLAIM.

COP Ordinance #

DOJ OJP BJA JAG 2017 Local Solicitation
Portland, Oregon Police Bureau
Additional Attachments
Intergovernmental Agreement with City of Gresham, Oregon – Application Attachment 7

City of Gresham/City of Portland
INTERGOVERNMENTAL AGREEMENT
For the Use of U.S. Department of Justice, Office of Justice Programs,
Bureau of Justice Assistance; CFDA 16.738
FY 2017 Edward Byrne Memorial Justice Assistance Grant (JAG) Program Funds
COP Contract Number:                           COG Contract Number:

8.2    WITH RESPECT TO A THIRD PARTY CLAIM FOR WHICH THE CITY OF GRESHAM IS JOINTLY LIABLE WITH THE CITY OF PORTLAND (OR WOULD BE IF JOINED IN THE THIRD PARTY CLAIM ), THE CITY OF GRESHAM SHALL CONTRIBUTE TO THE AMOUNT OF EXPENSES (INCLUDING ATTORNEYS' FEES), JUDGMENTS, FINES AND AMOUNTS PAID IN SETTLEMENT ACTUALLY AND REASONABLY INCURRED AND PAID OR PAYABLE BY THE CITY OF PORTLAND IN SUCH PROPORTION AS IS APPROPRIATE TO REFLECT THE RELATIVE FAULT OF THE CITY OF GRESHAM ON THE ONE HAND AND OF THE CITY OF PORTLAND ON THE OTHER HAND IN CONNECTION WITH THE EVENTS WHICH RESULTED IN SUCH EXPENSES, JUDGMENTS, FINES OR SETTLEMENT AMOUNTS, AS WELL AS ANY OTHER RELEVANT EQUITABLE CONSIDERATIONS. THE RELATIVE FAULT OF THE CITY OF GRESHAM ON THE ONE HAND AND OF THE CITY OF PORTLAND ON THE OTHER HAND SHALL BE DETERMINED BY REFERENCE TO, AMONG OTHER THINGS, THE PARTIES' RELATIVE INTENT, KNOWLEDGE, ACCESS TO INFORMATION AND OPPORTUNITY TO CORRECT OR PREVENT THE CIRCUMSTANCES RESULTING IN SUCH EXPENSES, JUDGMENTS, FINES OR SETTLEMENT AMOUNTS. THE CITY OF GRESHAM'S CONTRIBUTION AMOUNT IN ANY INSTANCE IS CAPPED TO THE SAME EXTENT IT WOULD HAVE BEEN CAPPED UNDER OREGON LAW IF THE CITY OF GRESHAM HAD SOLE LIABILITY IN THE PROCEEDING.

8.3    WITH RESPECT TO A THIRD PARTY CLAIM FOR WHICH THE CITY OF PORTLAND IS JOINTLY LIABLE WITH THE CITY OF GRESHAM (OR WOULD BE IF JOINED IN THE THIRD PARTY CLAIM), THE CITY OF PORTLAND SHALL CONTRIBUTE TO THE AMOUNT OF EXPENSES (INCLUDING ATTORNEYS' FEES), JUDGMENTS, FINES AND AMOUNTS PAID IN SETTLEMENT ACTUALLY AND REASONABLY INCURRED AND PAID OR PAYABLE BY THE CITY OF GRESHAM IN SUCH PROPORTION AS IS APPROPRIATE TO REFLECT THE RELATIVE FAULT OF THE CITY OF PORTLAND ON THE ONE HAND AND OF THE CITY OF GRESHAM ON THE OTHER HAND IN CONNECTION WITH THE EVENTS WHICH RESULTED IN SUCH EXPENSES, JUDGMENTS, FINES OR SETTLEMENT AMOUNTS, AS WELL AS ANY OTHER RELEVANT EQUITABLE CONSIDERATIONS.  THE RELATIVE FAULT OF THE CITY OF PORTLAND ON THE ONE HAND AND OF THE CITY OF GRESHAM ON THE OTHER HAND SHALL BE DETERMINED BY REFERENCE TO, AMONG OTHER THINGS, THE PARTIES' RELATIVE INTENT, KNOWLEDGE, ACCESS TO INFORMATION AND OPPORTUNITY TO CORRECT OR PREVENT THE CIRCUMSTANCES RESULTING IN SUCH EXPENSES, JUDGMENTS, FINES OR SETTLEMENT AMOUNTS. THE CITY OF PORTLAND'S CONTRIBUTION AMOUNT IN ANY INSTANCE IS CAPPED TO THE SAME EXTENT IT WOULD HAVE BEEN CAPPED UNDER OREGON LAW IF IT HAD SOLE LIABILITY IN THE PROCEEDING.

COP Ordinance #

Decl. of Nordeen
Exhibit 2, Page 43 of 50

DOJ OJP BJA JAG 2017 Local Solicitation
Portland, Oregon Police Bureau
Additional Attachments
Intergovernmental Agreement with City of Gresham, Oregon – Application Attachment 7

City of Gresham/City of Portland
INTERGOVERNMENTAL AGREEMENT
For the Use of U.S. Department of Justice, Office of Justice Programs,
Bureau of Justice Assistance; CFDA 16.738
FY 2017 Edward Byrne Memorial Justice Assistance Grant (JAG) Program Funds
COP Contract Number:                          COG Contract Number:

### 9.  INSURANCE

Each party shall each be responsible for providing worker's compensation insurance as required by law.  Neither party shall be required to provide or show proof of any other insurance coverage.

### 10.  OREGON LAW AND FORUM

This Agreement shall be construed according to the laws of the State of Oregon.  Any action regarding this Agreement or work performed under this Agreement shall be filed in Multnomah County or in the United States District Court for the district of Oregon.

### 11.  NON-DISCRIMINATION

Parties will comply with all federal, state, and local statutes regarding civil rights and non-discrimination practices.

### 12.  ACCESS TO RECORDS

Each party shall have access to the books, documents and other records of the other that are related to this Agreement and the FY 2017 JAG grant program for the purpose of examination, copying, site visit, and audit, unless otherwise limited by law.  The books, documents and other records related to this Agreement and the FY 2017 JAG shall be maintained as long as stipulated in the federal grant award or by the Pass-Through Entity (PPB), whichever is the longer.

### 13.  SUBCONTRACTS AND ASSIGNMENT

Neither party shall subcontract or assign any part of this Agreement without the written consent of the other party.

### 14.  FORCE MAJEURE

Neither GPD nor PPB shall be held responsible for delay or default caused by fire, riot, acts of nature, power outage, government fiat, terrorist acts or other acts of political sabotage, civil unrest, labor unrest, or war, where such cause is beyond the reasonable control of GPD or PPB.  However, both parties shall make all reasonable efforts to remove or eliminate such cause of delay or default and shall, upon the cessation of the cause, diligently pursue performance of its obligations under this Agreement.

### 15.  MODIFICATION

This Agreement may be modified by mutual consent of the parties.  Any modification to provisions of this Agreement shall be reduced to writing and signed by all parties.

COP Ordinance #

DOJ OJP BJA JAG 2017 Local Solicitation
Portland, Oregon Police Bureau
Additional Attachments
Intergovernmental Agreement with City of Gresham, Oregon – Application Attachment 7

City of Gresham/City of Portland
INTERGOVERNMENTAL AGREEMENT
For the Use of U.S. Department of Justice, Office of Justice Programs,
Bureau of Justice Assistance; CFDA 16.738
FY 2017 Edward Byrne Memorial Justice Assistance Grant (JAG) Program Funds
COP Contract Number:                              COG Contract Number:

**16.     ENTIRE AGREEMENT**

This Agreement constitutes the entire Agreement between the parties.  This Agreement may be modified or amended only by the written Agreement of the parties.

**17.     ALTERNATIVE DISPUTE RESOLUTION.**

The Parties should attempt in good faith to resolve any dispute arising out of this Agreement.  This may be done at any management level, including at a level higher than persons directly responsible for administration of the Agreement.  In addition, the parties may agree to utilize a jointly selected mediator or arbitrator (for non-binding arbitration) to resolve the dispute short of litigation.

**18.     SEVERABILITY**

The Parties agree that if any term or provision of this Agreement is declared by a court of competent jurisdiction to be illegal or in conflict with any law, the validity of the remaining terms and provisions shall not be affected, and the rights and obligations of the Parties shall be construed and enforced as if the Agreement did not contain the particular term held to be invalid.

**19.     COUNTERPARTS**

This Agreement may be executed in several counterparts, all of which when taken together shall constitute one Agreement binding on all Parties, notwithstanding that all Parties are not signatories to the same counterpart.  Each copy of the Agreement so executed shall constitute an original.

**20.     ADDITIONAL TERMS AND CONDITIONS:  NONE**

EACH PARTY, BY EXECUTION OF THIS AGREEMENT, HEREBY ACKNOWLEDGES THAT HE/SHE HAS READ THIS AGREEMENT, UNDERSTANDS IT, AGREES TO BE BOUND BY ITS TERMS AND CONDITIONS, AND HAS THE AUTHORITY TO SIGN AND BIND ITS AGENCY.

**CITY OF GRESHAM, OREGON**                    **CITY OF PORTLAND, OREGON:**


_____              _____

Erik Kvarsten, City Manager                   Ted Wheeler, Mayor


Date: _____                 Date: _____

COP Ordinance #

Decl. of Nordeen
Exhibit 2, Page 45 of 50

DOJ OJP BJA JAG 2017 Local Solicitation
Portland, Oregon Police Bureau
Additional Attachments
Intergovernmental Agreement with City of Gresham, Oregon – Application Attachment 7

**City of Gresham/City of Portland**
**INTERGOVERNMENTAL AGREEMENT**
**For the Use of U.S. Department of Justice, Office of Justice Programs,**
**Bureau of Justice Assistance; CFDA 16.738**
**FY 2017 Edward Byrne Memorial Justice Assistance Grant (JAG) Program Funds**
COP Contract Number: _____     COG Contract Number: _____

Approved: _____

Mary Hull Caballero
City Auditor

Date: _____

Approved as to form:                         Approved as to form:

By: _____          By: _____
City of Gresham Legal Counsel                City of Portland Attorney

Date: _____        Date: _____

**Exhibit A – JAG 2017 and Federal Requirements and Certifications**

COP Ordinance #

DOJ OJP BJA JAG 2017 Local Solicitation
Portland, Oregon Police Bureau
Additional Attachments
Intergovernmental Agreement with City of Gresham, Oregon – Application Attachment 7

City of Gresham/City of Portland
INTERGOVERNMENTAL AGREEMENT
For the Use of U.S. Department of Justice, Office of Justice Programs,
Bureau of Justice Assistance; CFDA 16.738
FY 2017 Edward Byrne Memorial Justice Assistance Grant (JAG) Program Funds
COP Contract Number:                              COG Contract Number:

I.    **General.** The City of Gresham Police Department (GPD), also known as subgrantee, agrees to comply with all federal requirements applicable to this Agreement, including without limitation financial management and procurement requirements and maintain accounting and financial records in accordance with Generally Accepted Accounting Principles (GAAP) and financial, administrative, and audit requirements as set forth in the most recent versions of the Code of Federal Regulations (CFR), U.S. Department of Justice program legislation, and Office of Justice Programs, Bureau of Justice Assistance policies and regulations.

II.   **Specific Requirements and Certifications**

   A.  **FY 2017 JAG Requirements**

       1.  <u>Compliance with Applicable Federal Laws</u>
           Applicants for state and local JAG formula grants are required to certify compliance with all applicable federal laws at the time of application.  In that regard, Members of Congress have asked the Department of Justice to examine whether jurisdictions with "sanctuary policies" (i.e., policies that either prevent law enforcement from releasing persons without lawful immigration status into federal custody for deportation, or that prevent state or local law enforcement from sharing certain information with Department of Homeland Security [DHS] officials), are in violation of 8 U.S.C. section 1373.

           All applicants should understand that if OJP receives information that indicates that an applicant may be in violation of any applicable federal law, that applicant may be referred to the DOJ Office of Inspector General (OIG) for investigation; if the applicant is found to be in violation of an applicable federal law by the OIG, the applicant may be subject to criminal and civil penalties, in addition to relevant OJP programmatic penalties, including suspension or termination of funds, inclusion on the high risk list, repayment of funds, or suspension and debarment.

       2.  <u>Law Enforcement Agency Training Information</u>

COP Ordinance #

DOJ OJP BJA JAG 2017 Local Solicitation
Portland, Oregon Police Bureau
Additional Attachments
Intergovernmental Agreement with City of Gresham, Oregon – Application Attachment 7

---

City of Gresham/City of Portland
INTERGOVERNMENTAL AGREEMENT
For the Use of U.S. Department of Justice, Office of Justice Programs,
Bureau of Justice Assistance; CFDA 16.738
FY 2017 Edward Byrne Memorial Justice Assistance Grant (JAG) Program Funds
COP Contract Number:                    COG Contract Number:

---

Any law enforcement agency receiving direct or subawarded JAG funding must submit quarterly accountability metrics data related to training on use of force, racial and ethnic bias, de-escalation of conflict, and constructive engagement with the public that officers have received. **Any grantees that fail to submit this data will have their grant funds frozen.**

Accountability metrics reports must be submitted through BJA's PMT, available at   www.bjaperformancetools.org.

## CITY OF GRESHAM, OREGON

_____
Erik Kvarsten, City Manager

Date: _____

Approved as to form:

By: _____
       City of Gresham Legal Counsel

Date: _____

COP Ordinance #

Case 6:18-cv-01959-MC   Document 25   Filed 04/08/19   Page 94 of 199

DOJ OJP BJA JAG 2017 Local Solicitation
Portland, Oregon Police Bureau
Additional Attachments
Intergovernmental Agreement with City of Gresham, Oregon – Application Attachment 7

**U.S. DEPARTMENT OF JUSTICE**
**OFFICE OF JUSTICE PROGRAMS**

**State or Local Government:  FY 2017 Certification of Compliance with 8 U.S.C. § 1373**

On behalf of the applicant government entity named below, and in support of its application, I certify under penalty of perjury to the Office of Justice Programs ("OJP"), U.S. Department of Justice ("USDOJ"), that all of the following are true and correct:

(1) I am the chief legal officer of the State or local government of which the applicant entity named below is a part ("the jurisdiction"), and I have the authority to make this certification on behalf of the jurisdiction and the applicant entity (that is, the entity applying directly to OJP).  I understand that OJP will rely upon this certification as a material representation in any decision to make an award to the applicant entity.

(2) I have carefully reviewed 8 U.S.C. § 1373(a) and (b), including the prohibitions on certain actions by State and local government entities, -agencies, and -officials regarding information on citizenship and immigration status.  I also have reviewed the provisions set out at (or referenced in) 8 U.S.C. § 1551 note ("Abolition ... and Transfer of Functions"), pursuant to which references to the "Immigration and Naturalization Service" in 8 U.S.C. § 1373 are to be read, as a legal matter, as references to particular components of the U.S. Department of Homeland Security.

(3) I (and also the applicant entity) understand that the U.S. Department of Justice will require States and local governments (and agencies or other entities thereof) to comply with 8 U.S.C. § 1373, with respect to any "program or activity" funded in whole or in part with the federal financial assistance provided through the FY 2017 OJP program under which this certification is being submitted ("the FY 2017 OJP Program" identified below), specifically including any such "program or activity" of a governmental entity or -agency that is a subrecipient (at any tier) of funds under the FY 2017 OJP Program.

(4) I (and also the applicant entity) understand that, for purposes of this certification, "program or activity" means what it means under title VI of the Civil Rights Act of 1964 (see 42 U.S.C. § 2000d-4a), and that terms used in this certification that are defined in 8 U.S.C. § 1101 mean what they mean under that section 1101, except that the term "State" also shall include American Samoa (cf. 42 U.S.C. § 901(a)(2)).  Also, I understand that, for purposes of this certification, neither a "public" institution of higher education (i.e., one that is owned, controlled, or directly funded by a State or local government) nor an Indian tribe is considered a State or local government entity or -agency.

(5) I have conducted (or caused to be conducted for me) a diligent inquiry and review concerning both—

(a) the "program or activity" to be funded (in whole or in part) with the federal financial assistance sought by the applicant entity under this FY 2017 OJP Program; and

(b) any prohibitions or restrictions potentially applicable to the "program or activity" sought to be funded under the FY 2017 OJP Program that deal with sending to, requesting or receiving from, maintaining, or exchanging information of the types described in 8 U.S.C. § 1373(a) or (b), whether imposed by a State or local government entity, -agency, or -official.

(6) As of the date of this certification, neither the jurisdiction nor any entity, agency, or official of the jurisdiction has in effect, purports to have in effect, or is subject to or bound by, any prohibition or any restriction that would apply to the "program or activity" to be funded in whole or in part under the FY 2017 OJP Program (which, for the specific purpose of this paragraph 6, shall not be understood to include any such "program or activity" of any subrecipient at any tier), and that deals with either— (1) a government entity or -official sending to or receiving information regarding citizenship or immigration status as described in 8 U.S.C. § 1373(a); or (2) a government entity or -agency sending to, requesting or receiving from, maintaining, or exchanging information of the types (and with respect to the entities) described in 8 U.S.C. § 1373(b).

I acknowledge that a materially false, fictitious, or fraudulent statement (or concealment or omission of a material fact) in this certification, or in the application that it supports, may be the subject of criminal prosecution (including under 18 U.S.C. §§ 1001 and/or 1621, and/or 42 U.S.C. § 3795a), and also may subject me and the applicant entity to civil penalties and administrative remedies for false claims or otherwise (including under 31 U.S.C. §§ 3729-3730 and §§ 3801-3812).  I also acknowledge that OJP awards, including certifications provided in connection with such awards, are subject to review by USDOJ, including by OJP and by the USDOJ Office of the Inspector General.

_____         _____
Signature of Chief Legal Officer of the Jurisdiction         Printed Name of Chief Legal Officer

_____         _____
Date of Certification                                                            Title of Chief Legal Officer of the Jurisdiction

_____
Name of Applicant Government Entity (i.e., the applicant to the FY 2017 OJP Program identified below)

**FY 2017 OJP Program:  Byrne Justice Assistance Grant ("JAG") Program**

BJA-2017-11391
Decl. of Nordeen
Exhibit 2, Page 49 of 50

OJ JAG FY 2015 Local Solicitation
Portland, Oregon Police Bureau
Additional Attachments
Multnomah County Letter of Non-Participation - Attachment 8



# Deborah Kafoury
## Multnomah County Chair

501 SE Hawthorne Blvd., Suite 600
Portland, Oregon 97214
Phone: (503) 988-3308
Email: mult.chair@multco.us

August 21, 2017

Catherine Reiland
JAG Program Manager
Sr. Business Operations Manager
Portland Police Bureau
1111 SW 2nd Ave., #1406
Portland, Oregon  97204

Dear Ms. Reiland,

This letter is to confirm that Multnomah County will not participate in the FY 17 City of Portland Byrnes JAG grant. We want to thank Portland staff for their time and commitment to the application process.

Sincerely,

Deborah Kafoury
Multnomah County Chair

Page 1 of 1

Decl. of Nordeen
Exhibit 2, Page 50 of 50

**(http://ojp.gov)**



OFFICE OF JUSTICE PROGRAMS

**BJA** Edward Byrne Memorial Justice Assistance Grant Program

HOME (INDEX.HTML)

FUNDING (FUNDING.HTML)

REPORTING REQUIREMENTS (REPORTING.HTML)

RESOURCES (RESOURCES.HTML)

TTA (TTA.HTML)

FREQUENTLY ASKED QUESTIONS (HTTPS://WWW.BJA.GOV/PROGRAMS/JAG/JAG-FAQS-OCTOBER-2018.PDF)

ARCHIVES (ARCHIVES.HTML)

CONTACT US (CONTACT.HTML)

Home (index.html) | FY 2017 and FY 2018 JAG Award Special Notices

# FY 2017 and FY 2018 JAG Award Special Notices

**Special Notice Re: FY 2017 Byrne JAG award conditions 52-56 to the following:**

| |
|---|
| **State of New York and political subdivisions of New York**<br>**State of Connecticut and political subdivisions of Connecticut**<br>**State of New Jersey and political subdivisions of New Jersey**<br>**State of Rhode Island and political subdivisions of Rhode Island**<br>**State of Washington and political subdivisions of Washington**<br>**Commonwealth of Massachusetts and political subdivisions of Massachusetts**<br>**Commonwealth of Virginia and political subdivisions of Virginia**<br>**City of New York** |

At present, DOJ's authority to require compliance with Award Conditions 52 through 56 in FY 2017 JAG awards to the foregoing jurisdictions is the subject of pending litigation. Accordingly (and consonant with Award Condition 1), DOJ has determined that, at this time, it will not use or enforce those conditions in FY 2017 JAG awards to the foregoing jurisdictions. If the posture of the pending litigation changes (or if the pending litigation is resolved) in a manner that would permit DOJ to use or enforce any or all of Award Conditions 52 through 56 in the FY 2017 JAG awards to the foregoing jurisdictions, then DOJ will provide them with specific, formal, written notice of DOJ's intent to use or enforce those conditions following the notice. During the period in which Award

Conditions 52 through 56 are not used or enforced pursuant to this Special Notice, the FY 2017 Byrne JAG – Chief Legal Officer Certification of Compliance with 8 U.S.C. § 1373 shall not be required of the foregoing jurisdictions.


**Special Notice Re: <u>FY 2017</u> Byrne JAG award conditions <u>52-56</u> and <u>California</u>:** At present, DOJ's authority to require compliance with Award Conditions 52 through 56 in FY 2017 JAG awards to the State of California and jurisdictions within that State is the subject of pending litigation. Accordingly (and consonant with Award Condition 1), DOJ has determined that, at this time, it will not use or enforce those conditions in FY 2017 JAG awards to California or its political subdivisions. If the posture of the pending litigation changes (or if the pending litigation is resolved) in a manner that would permit DOJ to use or enforce any or all of Award Conditions 52 through 56 in the FY 2017 JAG awards to the State or its subdivisions, then DOJ will provide them with specific, formal, written notice of DOJ's intent to use or enforce those conditions following the notice. During the period in which Award Conditions 52 through 56 are not used or enforced pursuant to this Special Notice, the FY 2017 Byrne JAG – Chief Legal Officer Certification of Compliance with 8 U.S.C. § 1373 shall not be required of California or its political subdivisions.


**Special Notice Re: <u>FY 2018</u> Byrne JAG award conditions <u>41-43 and 45-47</u> to the following:**

| **State of Illinois**<br>**State of California and political subdivisions of California**<br>**City of Philadelphia**<br>**City of Chicago (and its disparate-group subrecipients)** |
| :-- |

At present, DOJ's authority to require compliance with Award Conditions 41 through 43 and 45 through 47 in FY 2018 JAG awards to the foregoing jurisdictions is the subject of pending litigation. Accordingly (and consonant with Award Condition 1), DOJ has determined that, at this time, it will not use or enforce those conditions in FY 2018 JAG awards to these jurisdictions. If the posture of the pending litigation changes (or if the pending litigation is resolved) in a manner such that DOJ decides to use or enforce any or all of Award Conditions 41 through 43 and 45 through 47 in the FY 2018 JAG awards to the foregoing, then DOJ will provide them with specific, formal, written notice of DOJ's intent to use or enforce those conditions following the notice. During the period in which Award Conditions 41 through 43 are not used or enforced in an award to a jurisdiction pursuant to this Special Notice, the FY 2018 Byrne JAG Certification of Compliance with 8 U.S.C. §§ 1373 & 1644 shall not be required of that jurisdiction; and during the period in which Award Conditions 45 through 47 are not used or enforced in an award to a jurisdiction pursuant to this Special Notice, the FY 2018 Byrne JAG –Certification Relating to 8 U.S.C. §§ 1226(a) & (c), 1231(a), 1324(a), 1357(a), & 1366(1) & (3) shall not be required of that jurisdiction.


**Special Notice Re: <u>FY 2018</u> Byrne JAG award conditions <u>45-46</u> to the following:**

| **State of Indiana and political subdivisions of Indiana**<br>**State of Wisconsin and political subdivisions of Wisconsin**<br>**political subdivisions of State of Illinois, other than Chicago (and its disparate-group subrecipients)** |
| :-- |

At present, DOJ's authority to require compliance with Award Conditions 45 and 46 in FY 2018 JAG awards to the foregoing jurisdictions is the subject of pending litigation. Accordingly (and consonant with Award Condition 1), DOJ has determined that, at this time, it will not use or enforce those conditions in FY 2018 JAG awards to these jurisdictions. If the posture of the pending litigation changes (or if the pending litigation is resolved) in a manner such that DOJ decides to use or enforce either or both of Award Conditions 45 and 46 in the FY 2018 JAG awards to the foregoing, then DOJ will provide them with specific, formal, written notice of DOJ's intent to use or enforce those conditions following the notice. During the period in which Award Conditions 45

through 46 are not used or enforced in an award to a jurisdiction pursuant to this Special Notice, the FY 2018 Byrne JAG Certification Relating to 8 U.S.C. §§ 1226(a) & (c), 1231(a), 1324(a), 1357(a), & 1366(1) & (3) shall not be required of that jurisdiction.

**FY17 Byrne JAG Extension**: Recently, a preliminary injunction was issued relating to the "section 1373," "notice," and "access" award conditions that are contained in FY 2017 Byrne JAG awards. As a result, the Department is currently enjoined from enforcing those award conditions in FY 2017 Byrne JAG awards made to members of the U.S. Conference of Mayors. In order to afford the Department time to evaluate its options and provide guidance regarding that preliminary injunction, the Department is extending the deadline to accept FY 2017 Byrne JAG awards to October 5, 2018. This extension applies to all recipients of FY 2017 Byrne JAG award documents, whether or not they are covered under the terms of the preliminary injunction (as members of the U.S. Conference of Mayors).

**Special Notice Re: FY17 Byrne JAG award conditions 52-56**: At present, DOJ's authority to require compliance with Award Conditions 52 through 56 in FY 2017 JAG awards to members of the United States Conference of Mayors is the subject of pending litigation, including a preliminary injunction. Accordingly (and consonant with Award Condition 1), DOJ has determined that, at this time, it will not use or enforce those conditions in FY 2017 JAG awards to such members. If the posture of the pending litigation changes (or if the pending litigation is resolved) in a manner that would permit DOJ to use or enforce Award Conditions 52 through 56 in the FY 2017 JAG awards to such members, then DOJ will provide those recipients of FY 2017 JAG awards that are such members with specific, formal, written notice of DOJ's intent to use or enforce those conditions following the notice.



**Funding (funding.html)**

**Reporting Requirements (reporting.html)**

**Resources (resources.html)**

**TTA (tta.html)**

Decl. of Nordeen
Exhibit 3, Page 3 of 3

3/3

OMB No. 1121-0329
Approval Expires 11/30/2020

**U.S. Department of Justice**
Office of Justice Programs
*Bureau of Justice Assistance*



The U.S. Department of Justice (DOJ)*,* Office of Justice Programs (OJP)*,* Bureau of Justice Assistance (BJA) is seeking applications for the Edward Byrne Memorial Justice Assistance Grant (JAG) Program. This program furthers the Department's mission by assisting state, local, and tribal efforts to prevent or reduce crime and violence.

# Edward Byrne Memorial
# Justice Assistance Grant (JAG) Program
# FY 2018 Local Solicitation

## Applications Due: August 22, 2018

## Eligibility

Only units of local government may apply under this solicitation. By law, for purposes of the JAG Program, the term "units of local government" includes a town, township, village, parish, city, county, borough, or other general purpose political subdivision of a state; or, it may be a federally recognized Indian tribal government that performs law enforcement functions (as determined by the Secretary of the Interior). A unit of local government also may be any law enforcement district or judicial enforcement district established under applicable state law with authority to independently establish a budget and impose taxes; for example, in Louisiana, a unit of local government means a district attorney or parish sheriff.

A JAG application is not complete, and a unit of local government may not access award funds, unless the chief executive of the applicant unit of local government (e.g., a mayor) properly executes, and the unit of local government submits, the "Certifications and Assurances by Chief Executive of Applicant Government" attached to this solicitation as Appendix A.

In addition, as discussed further below, in order to validly accept a Fiscal Year (FY) 2018 JAG award, the chief legal officer of the applicant unit of local government must properly execute, and the unit of local government must submit, the specific certifications regarding compliance with certain federal laws attached to this solicitation as Appendix B and Appendix C. (Note: this requirement does not apply to Indian tribal governments.) (The text of the relevant federal laws appears in Appendix D.)

Eligible allocations under JAG are posted annually on the JAG web page.

Decl. of Nordeen
Exhibit 4, Page 1 of 57

All recipients and subrecipients (including any for-profit organization) must forgo any profit or management fee.

# Deadline

Applicants must register in the OJP Grants Management System (GMS) at https://grants.ojp.usdoj.gov/ prior to submitting an application under this solicitation. All applicants must register, even those that previously registered in GMS. Select the "Apply Online" button associated with the solicitation title. All registrations and applications are due by 5 p.m. eastern time on August 22, 2018.

For additional information, see How to Apply in Section D. Application and Submission Information.

# Contact Information

For technical assistance with submitting an application, contact the Grants Management System Support Hotline at 888–549–9901, option 3, or via email at GMS.HelpDesk@usdoj.gov. The GMS Support Hotline operates 24 hours a day, 7 days a week, including on federal holidays.

An applicant that experiences unforeseen GMS technical issues beyond its control that prevent it from submitting its application by the deadline must email the National Criminal Justice Reference Service (NCJRS) Response Center at grants@ncjrs.gov **within 24 hours after the application deadline** in order to request approval to submit its application. Additional information on reporting technical issues appears under "Experiencing Unforeseen GMS Technical Issues" in How to Apply in Section D. Application and Submission Information.

For assistance with any other requirement of this solicitation, applicants may contact the NCJRS Response Center by telephone at 1–800–851–3420; via TTY at 301–240–6310 (hearing impaired only); by email at grants@ncjrs.gov; by fax to 301–240–5830, or by web chat at https://webcontact.ncjrs.gov/ncjchat/chat.jsp. The NCJRS Response Center hours of operation are 10:00 a.m. to 6:00 p.m. eastern time, Monday through Friday, and 10:00 a.m. to 8:00 p.m. eastern time on the solicitation close date. Applicants also may contact the appropriate BJA State Policy Advisor.

Release date: July 20, 2018

# Contents

A. Program Description ............................................................................ 5

    Overview .............................................................................................5

    Program-specific Information ...............................................................5

        Permissible uses of JAG Funds – In general ..............................5

        Limitations on the use of JAG funds ..........................................6

        Requirements specific to "disparate" jurisdictions.....................10

        Required compliance with applicable federal laws ...................10

    BJA Areas of Emphasis ....................................................................12

    Objectives and Deliverables..............................................................13

    Evidence-based Programs or Practices .............................................13

    Information Regarding Potential Evaluation of Programs and Activities....................14

B. Federal Award Information ................................................................. 15

    Type of Award....................................................................................15

    Financial Management and System of Internal Controls....................16

    Budget and Financial Information.......................................................17

    Cost Sharing or Match Requirement ..................................................17

    Pre-agreement Costs (also known as Pre-award Costs) ...................17

    Prior Approval, Planning, and Reporting of Conference/Meeting/Training Costs.......17

    Costs Associated with Language Assistance (if applicable).......................18

C. Eligibility Information ......................................................................... 18

D. Application and Submission Information ............................................. 18

    What an Application Should Include....................................................18

    How to Apply .....................................................................................31

E. Application Review Information .......................................................... 34

    Review Process .................................................................................34

F. Federal Award Administration Information........................................... 35

    Federal Award Notices......................................................................35

    Statutory and Regulatory Requirements; Award Conditions .....................35

    General Information about Post-federal Award Reporting Requirements .................37

G. Federal Awarding Agency Contact(s) ................................................ 38

H. Other Information .............................................................................. 38

    Freedom of Information Act and Privacy Act (5 U.S.C. § 552 and 5 U.S.C. § 552a)..38

    Provide Feedback to OJP .......................................................................38

Decl. of Nordeen
Exhibit 4, Page 3 of 57

Appendix A: Certifications and Assurances by the Chief Executive ...........................40

Appendix B: Certification of Compliance with 8 U.S.C. §§ 1373 and 1644 ...............42

Appendix C: Certification of Compliance with 8 U.S.C. §§ 1226(a) & (c), 1231(a)(4), 1324(a), 1357(a), and 1366(1) & (3) ........................................................................44

Appendix D: Certain relevant federal laws, as in effect on June 7, 2018 ..................46

Appendix E: Information regarding Communication with the Department of Homeland Security (DHS) and/or Immigration and Customs Enforcement (ICE)........................52

Appendix F: Additional Award Purposes ..................................................................53

Appendix G: Application Checklist ...........................................................................56

Decl. of Nordeen
Exhibit 4, Page 4 of 57

# Edward Byrne Memorial Justice Assistance (JAG)
# Grant Program
# FY 2018 Local Solicitation
# CFDA #16.738

## A. Program Description

**Overview**
The Edward Byrne Memorial Justice Assistance Grant (JAG) Program is the primary provider of federal criminal justice funding to states and units of local government. BJA will award JAG Program funds to eligible units of local government under this FY 2018 JAG Program Local Solicitation. (A separate solicitation will be issued for applications to BJA directly from states.)

**Statutory Authority:** The JAG Program statute is Subpart I of Part E of Title I of the Omnibus Crime Control and Safe Streets Act of 1968. Title I of Pub. L. No. 90-351 (generally codified at 34 U.S.C. 10151-10158), including subpart 1 of part E (codified at 34 U.S.C. 10151 - 10158); see also 28 U.S.C. 530C(a).

**Program-specific Information**

**Permissible uses of JAG Funds – In general**
In general, JAG funds awarded to a unit of local government under this FY 2018 solicitation may be used to provide additional personnel, equipment, supplies, contractual support, training, technical assistance, and information systems for **criminal justice**, including any one or more of the following:

- Law enforcement programs
- Prosecution and court programs
- Prevention and education programs
- Corrections and community corrections programs
- Drug treatment and enforcement programs
- Planning, evaluation, and technology improvement programs
- Crime victim and witness programs (other than compensation)
- Mental health programs and related law enforcement and corrections programs, including behavioral programs and crisis intervention teams

Additionally, JAG funds awarded to a unit of local government under this FY 2018 solicitation may be used for any purpose indicated in Appendix F.

In connection with all of the above purposes (including those indicated in the appendix), it should be noted that the statute defines "criminal justice" as "activities pertaining to crime

5
BJA-2018-13626

prevention, control, or reduction, or the enforcement of the criminal law, including, but not limited to, police efforts to prevent, control, or reduce crime or to apprehend criminals, including juveniles, activities of courts having criminal jurisdiction, and related agencies (including but not limited to prosecutorial and defender services, juvenile delinquency agencies and pretrial service or release agencies), activities of corrections, probation, or parole authorities and related agencies assisting in the rehabilitation, supervision, and care of criminal offenders, and programs relating to the prevention, control, or reduction of narcotic addiction and juvenile delinquency."

Under the JAG Program, units of local government may also use award funds for broadband deployment and adoption activities as they relate to criminal justice activities.

**Limitations on the use of JAG funds**
*Prohibited uses of funds* – JAG funds may not be used (whether directly or indirectly) for any purpose prohibited by federal statute or regulation, including those purposes specifically prohibited by the JAG Program statute as set out at 34 U.S.C. § 10152.

JAG funds may not be used (directly or indirectly) for security enhancements or equipment for nongovernmental entities not engaged in criminal justice or public safety. Additionally, **JAG funds may not be used (directly or indirectly) to pay for any of the following items unless the BJA Director certifies that extraordinary and exigent circumstances exist,** making them essential to the maintenance of public safety and good order:
- Vehicles, vessels, or aircraft*
- Luxury items
- Real estate
- Construction projects (other than penal or correctional institutions)
- Any similar items

**\*Police cruisers, police boats, and police helicopters are allowable vehicles under JAG and do not require BJA certification.**

For information related to requesting a waiver to obtain BJA certification for a listed prohibited item, or for examples of allowable vehicles that do not require BJA certification, refer to the JAG FAQs.

*Cap on use of JAG award funds for administrative costs* – Up to 10 percent of a JAG award, including up to 10 percent of any earned interest, may be used for costs associated with administering the award.

*Prohibition of supplanting; no use of JAG funds as match* – JAG funds may not be used to supplant state or local funds but must be used to increase the amounts of such funds that would, in the absence of federal funds, be made available for law enforcement activities. See the JAG FAQs for examples of supplanting.

Although supplanting is prohibited, as discussed under What An Application Should Include, the leveraging of federal funding is encouraged.

Absent specific federal statutory authority to do so, JAG award funds may not be used as a match for the purposes of other federal awards.

*Other restrictions on use of funds* – If a unit of local government chooses to use its FY 2018 JAG funds for particular, defined types of expenditures, it must satisfy certain preconditions:

- Body-Worn Cameras (BWC)
  A unit of local government that proposes to use FY 2018 JAG award funds to purchase BWC equipment, or to implement or enhance BWC programs, must provide OJP with a certification(s) that each unit of local government law enforcement agency receiving the equipment or implementing the program has policies and procedures in place related to BWC equipment usage, data storage and access, privacy considerations, and training. The certification form related to BWC policies and procedures can be found at: https://www.bja.gov/Funding/BodyWornCameraCert.pdf.

  A unit of local government that proposes to use JAG funds for BWC-related expenses will have funds withheld until the required certification is submitted and approved by OJP. If the unit of local government proposes to change project activities to utilize JAG funds for BWC-related expenses after the award is accepted, the unit of local government must submit the signed certification to OJP at that time.

  Further, before making any subaward for BWC-related expenses, the unit of local government JAG recipient must collect a completed BWC certification from the proposed subrecipient. Any such certifications must be maintained by the unit of local government JAG recipient, and made available to OJP upon request.

  **The BJA BWC Toolkit provides model BWC policies and best practices to assist departments in implementing BWC programs.**

  Apart from the JAG Program, BJA provides funds under the Body-Worn Camera Policy and Implementation Program (BWC Program). The BWC Program allows jurisdictions to develop and implement policies and practices required for effective program adoption and address program factors, including the purchase, deployment, and maintenance of camera systems and equipment; data storage and access; and privacy considerations. Interested units of local government may wish to refer to the BWC web page for more information. Units of local government should note, however, that JAG funds may not be used as any part of the 50 percent match required by the BWC Program.

- Body Armor
  Body armor purchased with FY 2018 JAG funds may be purchased at any threat level designation, make, or model from any distributor or manufacturer, as long as the body armor has been tested and found to comply with the latest applicable National Institute of Justice (NIJ) ballistic or stab standards. Further, body armor purchased with FY 2018 JAG funds must be made in the United States, and must be "uniquely fitted." S*ee* 34 U.S.C. § 10202(c)(1)(A). For a definition of "uniquely fitted" and more information about requirements associated with body armor purchases, see the JAG FAQs.

  A unit of local government that proposes to use FY 2018 JAG award funds to purchase body armor must provide OJP with a certification(s) that each unit of local government law enforcement agency receiving body armor has a written "mandatory wear" policy in effect. *See* 34 U.S.C. § 10202(c). The certification form related to mandatory wear can be found at: www.bja.gov/Funding/BodyArmorMandatoryWearCert.pdf.

A unit of local government that proposes to use JAG funds to purchase body armor will have funds withheld until the required certification is submitted and approved by OJP. If the unit of local government proposes to change project activities to utilize JAG funds to purchase body armor after the award is accepted, the unit of local government must submit the signed certification to OJP at that time.

Further, before making any subaward for the purchase of body armor, the unit of local government JAG recipient must collect a completed mandatory wear certification from the proposed subrecipient. Any such certifications must be maintained by the unit of local government JAG recipient, and made available to OJP upon request.

A mandatory wear concept and issues paper and a model policy are available at the BVP Customer Support Center, at vests@usdoj.gov or toll free at 1–877–758–3787. Additional information and FAQs related to the mandatory wear policy and certifications can be found at https://www.bja.gov/Funding/JAGFAQ.pdf.

Apart from the JAG program, BJA provides funds under the Bulletproof Vest Partnership (BVP) Program. The BVP Program is designed to provide a critical resource to state and local law enforcement agencies for the purchase of ballistic-resistant and stab-resistant body armor. For more information on the BVP Program, including eligibility and application, refer to the BVP web page. Units of local government should note, however, that JAG funds may not be used as any part of the 50 percent match required by the BVP Program. *It is also important to note that eligibility for the BVP Program is impacted by a local jurisdiction's use of funds under a local JAG award to purchase body armor.* For additional information on the BVP Program, and eligibility restrictions related to receipt of JAG funding, review the BVP FAQs.

- <u>Interoperable Communications</u>
  Units of local government (and subrecipients) that use FY 2018 JAG funds to support emergency communications activities (including the purchase of interoperable communications equipment and technologies such as voice-over-internet protocol bridging or gateway devices, or equipment to support the build out of wireless broadband networks in the 700 MHz public safety band under the Federal Communications Commission Waiver Order) should review FY 2018 SAFECOM Guidance. The SAFECOM Guidance is updated annually to provide current information on emergency communications policies, eligible costs, best practices, and technical standards for state, local, tribal, and territorial grantees investing federal funds in emergency communications projects. Additionally, emergency communications projects funded with FY 2018 JAG funds should support the Statewide Communication Interoperability Plan (SCIP) and be coordinated with the fulltime Statewide Interoperability Coordinator (SWIC) in the state of the project. As the central coordination point for their state's interoperability effort, the SWIC plays a critical role, and can serve as a valuable resource. SWICs are responsible for the implementation of SCIP through coordination and collaboration with the emergency response community. The U.S. Department of Homeland Security Office of Emergency Communications maintains a list of SWICs for each of the states and territories. Contact OEC@hq.dhs.gov. All communications equipment purchased with FY 2018 JAG Program funding should be identified during quarterly performance metrics reporting.

Further, information sharing projects funded with FY 2018 JAG funds must comply with DOJ's Global Justice Information Sharing Initiative guidelines, as applicable, in order to

promote information sharing and enable interoperability among disparate systems across the justice and public safety community. Recipients (and subrecipients) must conform to the Global Standards Package (GSP) and all constituent elements, where applicable, as described at: https://www.it.ojp.gov/gsp_grantcondition. Recipients (and subrecipients) will be required to document planned approaches to information sharing and describe compliance to the GSP and an appropriate privacy policy that protects shared information, or provide detailed justification for why an alternative approach is recommended.

For JAG applicants considering implementing communications technology projects, it is worthwhile to consider the First Responder Network Authority (FirstNet) program. The Middle Class Tax Relief and Job Creation Act of 2012 (47 U.S.C. §§ 1401 *et seq.*) established FirstNet as an independent authority within the National Telecommunications and Information Administration. FirstNet's statutory mission is to take all actions necessary to ensure the establishment of a nationwide public safety broadband network (NPSBN). The NPSBN will use the 700 MHz D block spectrum to provide Long-Term Evolution (LTE)-based broadband services and applications to public safety entities. The network is based on a single, national network architecture that will evolve with technological advances and initially consist of a core network and radio access network. While mission critical voice communications will continue to occur on land mobile radio, in time, FirstNet is expected to provide the public safety entities with mission critical broadband data capabilities and services including, but not limited to: messaging; image sharing; video streaming; group text; voice; data storage; applications; location-based services; and quality of service, priority, and preemption. This reliable, highly secure, interoperable, and innovative public safety communications platform will bring 21st century tools to public safety agencies and first responders, allowing them to get more information quickly and helping them to make faster and better decisions. For more information on FirstNet services, the unique value of the FirstNet network to public safety, and how to subscribe for the FirstNet service once your state or territory opts in, visit www.FirstNet.gov. To learn about FirstNet's programs and activities, including its consultation and outreach with public safety, the state plan's process, FirstNet's history and promise, and how it plans to ensure the FirstNet network meets the needs of public safety—every day and in every emergency—visit www.FirstNet.gov or contact info@firstnet.gov.

- <u>DNA Testing of Evidentiary Materials and Upload of DNA Profiles to a Database</u>
  If JAG Program funds will be used for DNA testing of evidentiary materials, any resulting eligible DNA profiles must be uploaded to the Combined DNA Index System (CODIS, the national DNA database operated by the FBI) by a government DNA lab with access to CODIS. No profiles generated with JAG funding may be entered into any other non-governmental DNA database without prior express written approval from BJA.

  In addition, funds may not be used for purchase of DNA equipment and supplies when the resulting DNA profiles from such technology are not acceptable for entry into CODIS.

- <u>Entry of Records into State Repositories</u>
  As appropriate and to the extent consistent with law, a condition may be imposed that would require the following: With respect to any "program or activity" that receives federal financial assistance under this solicitation that is likely to generate or upgrade court dispositions or other records that are relevant to National Instant Background Check System (NICS) determinations, a system must be in place to ensure that all such

NICS-relevant dispositions or records that are generated or upgraded are made available in timely fashion to state repositories/databases that are accessed by NICS.

**Requirements specific to "disparate" jurisdictions**
According to the JAG program statute, a "disparity" may exist between the funding eligibility of a county and its associated municipalities. *See* 34 U.S.C. § 10156(d)(4). Three different types of disparities may exist:

- The first type is a zero-county disparity. This situation exists when one or more municipalities within a county are eligible for a direct award but the county is not; yet the county is responsible for providing criminal justice services (such as prosecution and incarceration) for the municipality. In this case, the county is entitled to part of the municipality's award because it shares the cost of criminal justice operations, although it may not report crime data to the FBI. This is the most common type of disparity.

- A second type of disparity exists when both a county and a municipality within that county qualify for a direct award, but the award amount for the municipality exceeds 150 percent of the county's award amount.

- The third type of disparity occurs when a county and multiple municipalities within that county are all eligible for direct awards, but the sum of the awards for the individual municipalities exceeds 400 percent of the county's award amount.

Jurisdictions identified by BJA as disparate must identify a fiscal agent that will submit a joint application for the aggregate eligible allocation to all disparate municipalities. The joint application must determine and specify the award distribution to each unit of local government and the purposes for which the funds will be used. A memorandum of understanding (MOU) that identifies which jurisdiction will serve as the applicant or fiscal agent for joint funds must be completed and signed by the authorized representative for each participating jurisdiction. The signed MOU should be attached to the application. For a sample MOU, go to: www.bja.gov/Funding/JAGMOU.pdf.

Once an award is made, the fiscal agent will be responsible for distributing award funds to the other jurisdictions in the disparate group through subawards that include all appropriate award conditions. Unless specified differently, any reference in this solicitation to "applicant" or "recipient" includes each fiscal agent applying on behalf of a disparate group. Further, "subrecipients" includes those disparate jurisdictions that receive award funding from the fiscal agent, rather than directly from OJP.

**Required compliance with applicable federal laws**
By law, the chief executive (e.g., the mayor) of each unit of local government that applies for an FY 2018 JAG award must certify that the unit of local government will "comply with all provisions of [the JAG Program statute] and all other applicable Federal laws." To satisfy this requirement, each unit of local government applicant must submit three properly executed certifications using the forms shown in Appendices A, B, and C.

All applicants should understand that OJP awards, including certifications provided in connection with such awards, are subject to review by DOJ, including by OJP and by the DOJ Office of the Inspector General. Applicants also should understand that a materially false, fictitious, or fraudulent statement (or concealment or omission of a material fact) in a

Decl. of Nordeen
Exhibit 4, Page 10 of 57

certification submitted to OJP in support of an application may be the subject of criminal prosecution, and also may result in civil penalties and administrative remedies for false claims or otherwise. Administrative remedies that may be available to OJP with respect to an FY 2018 award include suspension or termination of the award, placement on the DOJ high risk grantee list, disallowance of costs, and suspension or debarment of the recipient.

**National Incident-Based Reporting System (NIBRS) 3 percent set-aside**
In FY 2016, the Federal Bureau of Investigation (FBI) formally announced its intention to sunset the Uniform Crime Reporting (UCR) Program's traditional Summary Reporting System (SRS) and replace it with the UCR Program's National Incident-Based Reporting System (NIBRS). By January 1, 2021, the FBI intends for NIBRS to be the law enforcement crime data reporting standard for the nation.

By statute, JAG Program awards are calculated using summary Part 1 violent crime data from the FBI's UCR Program. *See* 34 U.S.C. § 10156. Once SRS has been replaced by NIBRS, JAG award amounts will be calculated using NIBRS data. In preparation for the FBI's 2021 NIBRS compliance deadline, beginning in FY 2018, BJA is requiring, through the application of a special condition, that direct JAG award recipients not certified by their state (or, as applicable, the FBI) as NIBRS compliant to dedicate 3 percent of their JAG award toward achieving full compliance with the FBI's NIBRS data submission requirements under the UCR Program. The 3 percent requirement will assist state and local jurisdictions in working toward compliance to ensure they continue to have critical criminal justice funding available through JAG when SRS is replaced by NIBRS in FY 2021.

The requirement for a NIBRS set-aside will be applicable to all jurisdictions in a disparate group, but will not otherwise be applied to subawards. That is, the unit of local government serving as fiscal agent for a disparate group will be required by special condition to require each of the other jurisdictions in the disparate group to set aside 3 percent of FY 2018 JAG funds received by that jurisdiction to be used for NIBRS compliance activities, unless that jurisdiction receives a waiver from the BJA Director, as described below. Units of local government must clearly indicate in their application narratives and budgets what projects will be supported with this 3 percent set-aside.

The following are examples of costs and projects that relate to NIBRS implementation at the state or local level that could be funded under the JAG Program: software, hardware, and labor that directly support or enhance a state or agency's technical capacity for collecting, processing, and analyzing data reported by local law enforcement (LE) agencies and then submitting NIBRS data to the FBI; training personnel responsible for the state's Incident Based Reporting (IBR) program on receiving, processing, analyzing, and validating incident-based data from local LE agencies in their state; training local agencies in how to collect and submit NIBRS data; and technical assistance for LE agency personnel responsible for (1) managing the agency's crime incident data, (2) processing and validating the data, and (3) extracting and submitting IBR data to the state UCR Program, according to the states, and/or directly to the FBI, according to the NIBRS standard.

Units of local government that have been certified as NIBRS compliant by their state, or directly by the FBI, may submit a waiver to the BJA Director requesting an exemption from the 3 percent set-aside requirement. The waiver request from an appropriate local official must clearly state that the unit of local government has been certified as NIBRS compliant by their state, or directly by the FBI, and should be submitted with the application, or, as appropriate, through request for a Grant Adjustment Notice after an award is made. In any instance in which a waiver

request is submitted, the unit of local government must retain documentation on file that demonstrates the state or FBI certification of NIBRS-compliance. Such documentation must be made available for BJA review, upon request. The BJA Director will review all requests for waivers. If approved, states will not be subject to the 3 percent set-aside requirement.

Note: U.S. Territories and tribal jurisdictions will not be subject to the 3 percent set-aside for NIBRS-compliance until FY 2019. Tribal jurisdictions and the five U.S. territories are strongly encouraged to dedicate a portion of JAG funding to NIBRS conversion; however, this is not a requirement for FY 2018 JAG funding. Utilizing this phased-in approach will allow the territories and tribal jurisdictions to plan for the change in funding direction and provide BJA with time to coordinate or provide any necessary technical assistance surrounding this topic.

**BJA Areas of Emphasis**

BJA recognizes that many state and local criminal justice systems currently face challenging fiscal environments, and that an important, cost-effective way to relieve those pressures is to share or leverage resources through cooperation between federal, state, and local law enforcement. BJA intends to focus much of its work on the areas of emphasis described below, and encourages each recipient of an FY 2018 JAG award to join federal law enforcement agencies in addressing these challenges.

Reducing Violent Crime – Recognizing that crime problems, including felonious possession and use of a firearm and/or gang violence, illegal drug sales and distribution, human trafficking, and other related violent crime, vary from community to community, BJA encourages states to tailor their programs to the local crime issues, and to be data-informed in their work. States should consider investing JAG funds in programs to combat gun violence, and to improve the process for ensuring that persons prohibited from purchasing guns (see, e.g., 18 U.S.C. § 922(g)) are prevented from doing so, by utilizing technology such as eTrace and NIBIN to analyze evidence as well as by enhancing complete, accurate, and timely reporting to the FBI's NICS. States are also encouraged to coordinate with United States Attorneys Offices and Project Safe Neighborhood (PSN) grantees in order to leverage funding for violence reduction projects, and to coordinate their law enforcement activities with those of federal law enforcement agencies, such as the FBI, the Bureau of Alcohol, Tobacco, Firearms, and Explosives, the Drug Enforcement Administration, and the Department of Homeland Security.

Officer Safety and Wellness – The issue of law enforcement safety and wellness is an important priority for BJA and DOJ. According to the *Preliminary 2017 Law Enforcement Officer Fatalities Report*, released by the National Law Enforcement Officers Memorial Fund (NLEOMF), as of December 28, 2017, there were 128 law enforcement line-of-duty deaths nationwide in 2017. Firearms-related deaths were the second leading cause of law enforcement deaths (44) in 2017, according to the NLEOMF report. Of those deaths, the leading circumstance was officers shot while responding to a domestic disturbance (7), followed by traffic enforcement, investigative activities, and dealing with a suspicious person or vehicle—6 instances in each circumstance. Additionally, deaths due to circumstances other than firearms- or traffic-related deaths increased by 61 percent in 2017, with 37 deaths compared to 23 in 2016. Sixteen of those deaths were due to job-related illnesses, including 10 due to heart attacks.

Based on the latest reports (2016 and 2015) from the FBI's *Law Enforcement Officers Killed and Assaulted* (LEOKA) data, there appeared to be a continuing increase in assaults between 2015 and 2016. There were 57,180 assaults in 2016 versus 50,212 in 2015. Of those, 16,535 resulted in officer injuries in 2016 compared to 14,281 in 2015. The 2016 LEOKA reports that

there were 17 officers killed in ambush situations, which is an increase from 2015 when 4 officers were killed in ambush situations.

BJA sees a vital need to focus not only on tactical officer safety concerns, but also on health and wellness as they affect officer performance and safety. It is important for law enforcement to have the tactical skills necessary, and also be physically and mentally well, to perform, survive, and be resilient in the face of the demanding duties of the profession. BJA encourages states to use JAG funds to address these needs by providing training, and paying for tuition and travel expenses related to attending trainings such as those available through the BJA VALOR Initiative, as well as funding for health and wellness programs for law enforcement officers.

Border Security – Securing U.S. borders (and internationally accessible waterways and -airports) is critically important to the reduction and prevention of transnational drug-trafficking networks and combating all forms of human trafficking within the United States (including sex and labor trafficking of foreign nationals and U.S. citizens of all sexes and ages). Smuggling and trafficking operations to, from and within the United States contribute to a significant increase in violent crime and U.S. deaths. BJA encourages units of local government to enhance border, waterway, and port security by using JAG funds to support law enforcement hiring, training, and technology enhancement, as well as cooperation and coordination among federal, state, local, and tribal law enforcement agencies.

Collaborative Prosecution and Law Enforcement – BJA supports strong partnerships between prosecutors and law enforcement, at all levels of government, in order to help take violent offenders off the street. BJA strongly encourages state and local law enforcement agencies to foster strong partnerships with federal law enforcement agencies, and with their own prosecutors, as well as federal prosecutors, to adopt new, cost-effective, collaborative strategies to reduce crime, particularly violent crime. (BJA's Innovative Prosecution Solutions Initiative is a related effort to promote partnerships between prosecutors and researchers to develop and deliver effective, data-driven, evidence-based strategies to solve chronic problems and fight crime.)

**Objectives and Deliverables**
In general, the FY 2018 JAG Program is designed to provide additional personnel, equipment, supplies, contractual support, training, technical assistance, and information systems for criminal justice. Although the JAG Program provides assistance directly to states, through pass-through (and similar) requirements, the JAG Program also is designed to assist units of local government with respect to criminal justice.

As discussed in more detail in the General Information about Post-federal Award Reporting Requirements discussion, a state that receives an FY 2018 JAG award will be required to produce various types of reports and to submit data related to performance measures and accountability. The objectives and deliverables are directly related to the JAG Program accountability measures at https://bjapmt.ojp.gov/help/jagdocs.html.

**Evidence-based Programs or Practices**
OJP strongly emphasizes the use of data and evidence in policy making and program development in criminal justice, juvenile justice, and crime victim services. OJP is committed to:

- Improving the quantity and quality of evidence OJP generates.

- Integrating evidence into program, practice, and policy decisions within OJP and the field.
- Improving the translation of evidence into practice.

OJP considers programs and practices to be evidence-based when their effectiveness has been demonstrated by causal evidence, generally obtained through one or more outcome evaluations. Causal evidence documents a relationship between an activity or intervention (including technology) and its intended outcome, including measuring the direction and size of a change, and the extent to which a change may be attributed to the activity or intervention. Causal evidence depends on the use of scientific methods to rule out, to the extent possible, alternative explanations for the documented change. The strength of causal evidence, based on the factors described above, will influence the degree to which OJP considers a program or practice to be evidence-based. The OJP CrimeSolutions.gov website at https://www.crimesolutions.gov/ is one resource that applicants may use to find information about evidence-based programs in criminal justice, juvenile justice, and crime victim services.

A useful matrix of evidence-based policing programs and strategies is available through BJA's Matrix Demonstration Project. BJA offers a number of program models designed to effectively implement promising and evidence-based strategies through the BJA "Innovation Suite" of programs including Innovations in Policing, Prosecution, Supervision, Reentry, and others (see https://www.bja.gov/Programs/CRPPE/innovationssuite.html). BJA encourages states to use JAG funds to support these "crime innovation" strategies, including effective partnerships with universities and research partners and with non-traditional criminal justice partners.

**Information Regarding Potential Evaluation of Programs and Activities**
The Department of Justice has prioritized the use of evidence-based programming and deems it critical to continue to build and expand the evidence informing criminal and juvenile justice programs and crime victim services to reach the highest level of rigor possible. Therefore, applicants should note that OJP may conduct or support an evaluation of the programs and activities funded under this solicitation. Recipients and subrecipients will be expected to cooperate with program-related assessments or evaluation efforts, including through the collection and provision of information or data requested by OJP (or its designee) for the assessment or evaluation of any activities and/or outcomes of those activities funded under this solicitation. The information or data requested may be in addition to any other financial or performance data already required under this program.

**BJA Success Stories**
The BJA-sponsored Success Stories web page features projects that have demonstrated success or shown promise in reducing crime and positively impacting communities. This web page is a valuable resource for states, localities, territories, tribes, and criminal justice professionals who seek to identify and learn about JAG and other successful BJA-funded projects linked to innovation, crime reduction, and evidence-based practices. **BJA strongly encourages the recipient to submit success stories annually (or more frequently).**

If a state has a success story it would like to submit, it may be submitted through My BJA account, using "add a Success Story" and the Success Story Submission form. Register for a My BJA account using this registration link.

## B. Federal Award Information

BJA estimates that it will make up to 1,147 local awards totaling an estimated $84,500,000.

Awards of at least $25,000 are 4 years in length, and performance periods will be from October 1, 2017 through September 30, 2021. Extensions beyond this period may be made on a case-by-case basis at the discretion of BJA and must be requested via GMS no fewer than 30 days prior to the grant end date.

Awards of less than $25,000 are 2 years in length, and performance periods will be from October 1, 2017 through September 30, 2019. Extensions of up to 2 years can be requested for these awards via GMS no fewer than 30 days prior to the grant end date, and will be automatically granted upon request.

All awards are subject to the availability of appropriated funds and to any modifications or additional requirements that may be imposed by statute.

**Type of Award**
BJA expects that any award under this solicitation will be in the form of a grant. See Statutory and Regulatory Requirements; Award Conditions, under Section F. Federal Award Administration Information, for a brief discussion of important statutes, regulations, and award conditions that apply to many (or in some cases, all) OJP grants.

JAG awards are based on a statutory formula as described below:

Once each fiscal year's overall JAG Program funding level is determined, BJA works with the Bureau of Justice Statistics (BJS) to begin a four-step grant award calculation process, which, in general, consists of:

(1) Computing an initial JAG allocation for each state, based on its share of violent crime and population (weighted equally).

(2) Reviewing the initial JAG allocation amount to determine if the state allocation is less than the minimum award amount defined in the JAG legislation (0.25 percent of the total). If this is the case, the state is funded at the minimum level, and the funds required for this are deducted from the overall pool of JAG funds. Each of the remaining states receives the minimum award plus an additional amount based on its share of violent crime and population.

(3) Dividing each state's final award amount (except for the territories and District of Columbia) between the state and its units of local governments at a rate of 60 and 40 percent, respectively.

(4) Determining unit of local government award allocations, which are based on their proportion of the state's 3-year violent crime average. If the "eligible award amount" for a particular unit of local government, as determined on this basis, is $10,000 or more, then the unit of local government is eligible to apply directly to OJP (under the JAG Local solicitation) for a JAG award. If the "eligible award amount" to a particular unit of local government, as determined on this basis, is less than $10,000, however, the funds are not made available for a direct award to that particular unit of local government, but

instead are added to the amount that otherwise would have been awarded to the state. (Additional requirements related to "disparate" jurisdictions are summarized above).

**Financial Management and System of Internal Controls**

Award recipients and subrecipients (including recipients or subrecipients that are pass-through entities[1]) must, as described in the Part 200 Uniform Requirements[2] as set out at 2 C.F.R. 200.303:

(a) Establish and maintain effective internal control over the Federal award that provides reasonable assurance that [the recipient (and any subrecipient)] is managing the Federal award in compliance with Federal statutes, regulations, and the terms and conditions of the Federal award. These internal controls should be in compliance with guidance in "Standards for Internal Control in the Federal Government" issued by the Comptroller General of the United States and the "Internal Control Integrated Framework", issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO).

(b) Comply with Federal statutes, regulations, and the terms and conditions of the Federal awards.

(c) Evaluate and monitor [the recipient's (and any subrecipient's)] compliance with statutes, regulations, and the terms and conditions of Federal awards.

(d) Take prompt action when instances of noncompliance are identified including noncompliance identified in audit findings.

(e) Take reasonable measures to safeguard protected personally identifiable information and other information the Federal awarding agency or pass-through entity designates as sensitive or [the recipient (or any subrecipient)] considers sensitive consistent with applicable Federal, State, local, and tribal laws regarding privacy and obligations of confidentiality.

To help ensure that applicants understand the administrative requirements and cost principles, OJP encourages prospective applicants to enroll, at no charge, in the DOJ Grants Financial Management Online Training, available at https://ojpfgm.webfirst.com/. (This training is required for all OJP award recipients.)

Also, applicants should be aware that OJP collects information from applicants on their financial management and systems of internal controls (among other information) which is used to make award decisions. Under Section D. Application and Submission Information, applicants may access and review the OJP Financial Management and System of Internal Controls Questionnaire (https://ojp.gov/funding/Apply/Resources/FinancialCapability.pdf) that OJP requires **all** applicants (other than an individual applying in his/her personal capacity) to download, complete, and submit as part of the application.

---

[1] For purposes of this solicitation, the phrase "pass-through entity" includes any recipient or subrecipient that provides a subaward ("subgrant") to carry out part of the funded award or program.

[2] The "Part 200 Uniform Requirements" refers to the DOJ regulation at 2 C.F.R Part 2800, which adopts (with certain modifications) the provisions of 2 C.F.R. Part 200.

**Budget and Financial Information**

Trust Fund – Units of local government may draw down JAG funds either in advance or on a reimbursement basis. Non-federal entities must maintain advance payments of federal awards in interest-bearing accounts, unless regulatory exclusions apply (2 CFR 200.305(b)(8)). Subrecipients that draw down JAG funds in advance are subject to the same requirement and must first establish an interest-bearing account.

Tracking and reporting regarding JAG funds used for administrative costs – As indicated earlier, up to 10 percent of a JAG award, including up to 10 percent of any earned interest, may be used for costs associated with administering the award. Administrative costs (when utilized) must be tracked separately; a recipient must report in separate financial status reports (SF-425) those expenditures that specifically relate to each particular JAG award during any particular reporting period.

No commingling – Both the unit of local government recipient and all subrecipients of JAG funds are prohibited from commingling funds on a program-by-program or project-by-project basis. **For this purpose, use of the administrative JAG funds to perform work across all active awards in any one year is not considered commingling.**

**Cost Sharing or Match Requirement**

The JAG Program does not require a match. However, if a successful application proposes a voluntary match amount, and OJP approves the budget, the total match amount incorporated into the approved budget becomes mandatory and subject to audit.

For additional cost sharing and match information, see the DOJ Grants Financial Guide at https://ojp.gov/financialguide/DOJ/index.htm.

**Pre-agreement Costs (also known as Pre-award Costs)**

Pre-agreement costs are costs incurred by the applicant prior to the start date of the period of performance of the grant award.

OJP does **not** typically approve pre-agreement costs. An applicant must request and obtain the prior written approval of OJP for any such costs. All such costs incurred prior to award and prior to approval of the costs are incurred *at the sole risk* of the applicant. (Generally, no applicant should incur project costs *before* submitting an application requesting federal funding for those costs.)

Should there be extenuating circumstances that make it appropriate for OJP to consider approving pre-agreement costs, the applicant may contact the point of contact listed on the title page of this solicitation for the requirements concerning written requests for approval. If approved in advance by OJP, award funds may be used for pre-agreement costs, consistent with the recipient's approved budget and applicable cost principles. See the section on Costs Requiring Prior Approval in the DOJ Grants Financial Guide at https://ojp.gov/financialguide/DOJ/index.htm for more information.

**Prior Approval, Planning, and Reporting of Conference/Meeting/Training Costs**

OJP strongly encourages every applicant that proposes to use award funds for any conference-, meeting-, or training-related activity (or similar event) to review carefully—before submitting an application—the OJP and DOJ policy and guidance on approval, planning, and reporting of such

events, available at:
https://www.ojp.gov/financialguide/DOJ/PostawardRequirements/chapter3.10a.htm. OJP policy
and guidance (1) encourage minimization of conference, meeting, and training costs; (2) require
prior written approval (which may affect project timelines) of most conference, meeting, and
training costs for cooperative agreement recipients, as well as some conference, meeting, and
training costs for grant recipients; and (3) set cost limits, which include a general prohibition of
all food and beverage costs.

**Costs Associated with Language Assistance (if applicable)**
If an applicant proposes a program or activity that would deliver services or benefits to
individuals, the costs of taking reasonable steps to provide meaningful access to those services
or benefits for individuals with limited English proficiency may be allowable. Reasonable steps
to provide meaningful access to services or benefits may include interpretation or translation
services, where appropriate.

For additional information, see the "Civil Rights Compliance" section under "Overview of Legal
Requirements Generally Applicable to OJP Grants and Cooperative Agreements - FY 2018
Awards" in the OJP Funding Resource Center at https://ojp.gov/funding/index.htm.

# C. Eligibility Information

For information on eligibility, see the title page.

Note that, as discussed in more detail below, the certifications regarding compliance with certain
federal laws. (See Appendices B and C) must be executed and submitted before a unit of local
government (other than an Indian tribal government) can make a valid award acceptance. Also,
a unit of local government may not access award funds (and its award will include a condition
that withholds funds) until it submits a properly executed "Certifications and Assurances by
Chief Executive of Applicant Government." (See Appendix A).

# D. Application and Submission Information

**What an Application Should Include**
This section describes in detail what an application should include. An applicant should
anticipate that if it fails to submit an application that contains all of the specified elements, it may
negatively affect the review of its application; and, should a decision be made to make an
award, it may result in the inclusion of award conditions that preclude the recipient from
accessing or using award funds until the recipient satisfies the conditions and OJP makes the
funds available.

NOTE: OJP has combined the Budget Detail Worksheet and Budget Narrative in a single
document collectively referred to as the Budget Detail Worksheet. See "Budget Information and
Associated Documentation" below for more information about the Budget Detail Worksheet and
where it can be accessed.

OJP strongly recommends that applicants use appropriately descriptive file names (e.g.,
"Program Narrative," "Budget Detail Worksheet," "Timelines," "Memoranda of Understanding,"

"Résumés") for all attachments. Also, OJP recommends that applicants include résumés in a single file.

Please review the "Note on File Names and File Types" under How to Apply to be sure applications are submitted in permitted formats.

**In general, if a unit of local government fails to submit required information or documents, OJP either will return the unit of local government's application in the Grants Management System (GMS) for submission of the missing information or documents, or will attach a condition to the award that will withhold award funds until the necessary information and documents are submitted. (As discussed elsewhere in this solicitation, the certification regarding compliance with certain federal laws—which are set out at Appendix B and Appendix C—will be handled differently. Unless and until those certifications are submitted, the unit of local government (other than an Indian tribal government) will be unable to make a valid acceptance of the award.)**

1. **Information to Complete the Application for Federal Assistance (SF-424)**
   The SF-424 is a required standard form used as a cover sheet for submission of pre-applications, applications, and related information. GMS takes information from the applicant's profile to populate the fields on this form.

   To avoid processing delays, an applicant must include an accurate legal name on its SF-424. Current OJP award recipients, when completing the field for "Legal Name," should use the same legal name that appears on the prior year award document, which is also the legal name stored in OJP's financial system. On the SF-424, enter the Legal Name in box 5 and Employer Identification Number (EIN) in box 6 exactly as it appears on the prior year award document. An applicant with a current, active award(s) must ensure that its GMS profile is current. If the profile is not current, the applicant should submit a Grant Adjustment Notice updating the information on its GMS profile prior to applying under this solicitation.

   A new applicant entity should enter its official legal name, its address, its EIN, and its Data Universal Numbering System (DUNS). A new applicant entity should attach official legal documents to its application (e.g., articles of incorporation, 501(c)(3) status documentation, organizational letterhead) to confirm the legal name, address, and EIN entered into the SF-424. OJP will use the System for Award Management (SAM) to confirm the legal name and DUNS number entered in the SF-424; therefore, an applicant should ensure that the information entered in the SF-424 matches its current registration in SAM. See the How to Apply section for more information on SAM and DUNS numbers.

   **Intergovernmental Review:**
   This solicitation ("funding opportunity") **is** subject to Executive Order 12372. An applicant may find the names and addresses of State Single Points of Contact (SPOCs) at the following website: https://www.whitehouse.gov/wp-content/uploads/2017/11/Intergovernmental_-Review-_SPOC_01_2018_OFFM.pdf. If the state appears on the SPOC list, the applicant must contact the state SPOC to find out about, and comply with, the state's process under E.O. 12372. In completing the SF-424, an applicant whose state appears on the SPOC list is to make the appropriate selection in response to question 16 once the applicant has complied with its State E.O. 12372 process. (An applicant whose state does not appear on the SPOC list should answer question 16 by

selecting the response that the "Program is subject to E.O. 12372 but has not been selected by the State for review.")

2. **Project Identifiers**

Applications should identify at least three and no more than ten project identifiers that would be associated with proposed project activities. The list of identifiers can be found at www.bja.gov/funding/JAGIdentifiers.pdf.

3. **Program Narrative**

The following sections **should** be included as part of the program narrative[3]:

a. Description of the Issues – Identify the unit of local government's strategy/funding priorities for the FY 2018 JAG funds, the subgrant award process and timeline, and a description of the programs to be funded over the grant period. Units of local government are strongly encouraged to prioritize the funding on evidence-based projects.

b. Project Design and Implementation – Describe the unit of local government's strategic planning process, if any, that guides its priorities and funding strategy. This should include a description of how the local community is engaged in the planning process and the data and analysis utilized to support the plan; it should identify the stakeholders currently participating in the strategic planning process, the gaps in the needed resources for criminal justice purposes, and how JAG funds will be coordinated with state and related justice funds.

c. Capabilities and Competencies – Describe any additional strategic planning/coordination efforts in which the units of local government participates with other criminal justice criminal/juvenile justice agencies in the state.

d. Plan for Collecting the Data Required for this Solicitation's Performance Measures – OJP will require each successful applicant to submit specific performance measures that demonstrate the results of the work carried out under the award (see "General Information about Post-Federal Award Reporting Requirements" in Section F. Federal Award Administration Information). The performance measures data directly relate to the objectives and deliverables identified under Objectives and Deliverables in Section A. Program Description.

Applicants should visit OJP's performance measurement page at www.ojp.gov/performance for an overview of performance measurement activities at OJP.

Post award, recipients will be required to submit quarterly performance metrics through BJA's Performance Measurement Tool (PMT), located at: https://bjapmt.ojp.gov. The application should describe the applicant's plan for collection of all of the performance measures data listed in the JAG Program accountability measures at: https://bjapmt.ojp.gov/help/jagdocs.html.

---

[3] For information on subawards (including the details on proposed subawards that should be included in the application), see "Budget and Associated Documentation" under Section D. Application and Submission Information.

The application should demonstrate the applicant's understanding of the performance data reporting requirements for this grant program and detail how the applicant will gather the required data should it receive funding.

Please note that applicants are **not** required to submit performance data with the application. Performance measures information is included as an alert that successful applicants will be required to submit performance data as part of the reporting requirements under an award.

**Note on Project Evaluations**

An applicant that proposes to use award funds through this solicitation to conduct project evaluations should be aware that certain project evaluations (such as systematic investigations designed to develop or contribute to generalizable knowledge) may constitute "research" for purposes of applicable DOJ human subjects protection regulations. However, project evaluations that are intended only to generate internal improvements to a program or service, or are conducted only to meet OJP's performance measure data reporting requirements, likely do not constitute "research." Each applicant should provide sufficient information for OJP to determine whether the particular project it proposes would either intentionally or unintentionally collect and/or use information in such a way that it meets the DOJ regulatory definition of research that appears at 28 C.F.R. Part 46 ("Protection of Human Subjects").

Research, for the purposes of human subjects protection for OJP-funded programs, is defined as "a systematic investigation, including research development, testing and evaluation, designed to develop or contribute to generalizable knowledge." 28 C.F.R. 46.102(d).

For additional information on determining whether a proposed activity would constitute research for purposes of human subjects protection, applicants should consult the decision tree in the "Research and the Protection of Human Subjects" section of the "Requirements related to Research" web page of the "Overview of Legal Requirements Generally Applicable to OJP Grants and Cooperative Agreements - FY 2018 Awards" available through the OJP Funding Resource Center at https://ojp.gov/funding/index.htm. Every prospective applicant whose application may propose a research or statistical component also should review the "Data Privacy and Confidentiality Requirements" section on that web page.

4. **Budget and Associated Documentation**

The Budget Detail Worksheet and the Budget Narrative are now combined in a single document collectively referred to as the Budget Detail Worksheet. The Budget Detail Worksheet is a user-friendly, fillable, Microsoft Excel-based document designed to calculate totals. Additionally, the Excel workbook contains worksheets for multiple budget years that can be completed as necessary. **All applicants should use the Excel version when completing the proposed budget in an application, except in cases where the applicant does not have access to Microsoft Excel or experiences technical difficulties.** If an applicant does not have access to Microsoft Excel or experiences technical difficulties with the Excel version, then the applicant should use the 508-compliant accessible Adobe Portable Document Format (PDF) version.

Both versions of the Budget Detail Worksheet can be accessed at
https://ojp.gov/funding/Apply/Forms/BudgetDetailWorksheet.htm.

**a. Budget Detail Worksheet**
The Budget Detail Worksheet should provide the detailed computation for each budget line item, listing the total cost of each and showing how it was calculated by the applicant. For example, costs for personnel should show the annual salary rate and the percentage of time devoted to the project for each employee paid with grant funds. The Budget Detail Worksheet should present a complete itemization of all proposed costs.

For questions pertaining to budget and examples of allowable and unallowable costs, see the DOJ Grants Financial Guide at https://ojp.gov/financialguide/DOJ/index.htm.

**b. Budget Narrative**
The budget narrative should thoroughly and clearly describe every category of expense listed in the proposed budget detail worksheet. OJP expects proposed budgets to be complete, cost effective, and allowable (e.g., reasonable, allocable, and necessary for project activities). **This narrative should include a full description of all costs, including funds set aside for NIBRS project(s) and administrative costs (if applicable).**

An applicant should demonstrate in its budget narrative how it will maximize cost effectiveness of award expenditures. Budget narratives should generally describe cost effectiveness in relation to potential alternatives and the objectives of the project. For example, a budget narrative should detail why planned in-person meetings are necessary, or how technology and collaboration with outside organizations could be used to reduce costs, without compromising quality.

The budget narrative should be mathematically sound and correspond clearly with the information and figures provided in the Budget Detail Worksheet. The narrative should explain how the applicant estimated and calculated all costs, and how those costs are necessary to the completion of the proposed project. The narrative may include tables for clarification purposes, but need not be in a spreadsheet format. As with the Budget Detail Worksheet, the budget narrative should describe costs by year

**c. Information on Proposed Subawards (if any), as well as on Proposed Procurement Contracts (if any)**
Applicants for OJP awards typically may propose to make "subawards." Applicants also may propose to enter into procurement "contracts" under the award.

Whether an action—for federal grants administrative purposes—is a subaward or procurement contract is a critical distinction as significantly different rules apply to subawards and procurement contracts. If a recipient enters into an agreement that is a subaward of an OJP award, specific rules apply—many of which are set by federal statutes and DOJ regulations; others by award conditions. These rules place particular responsibilities on an OJP recipient for any subawards the OJP recipient may make. The rules determine much of what the written subaward agreement itself must require or provide. The rules also determine much of what an OJP recipient must do both before and after it makes a subaward. If a recipient enters into an agreement that is a

procurement contract under an OJP award, a substantially different set of federal rules applies.

OJP has developed the following guidance documents to help clarify the differences between subawards and procurement contracts under an OJP award and outline the compliance and reporting requirements for each. This information can be accessed online at https://ojp.gov/training/training.htm.

- Subawards under OJP Awards and Procurement Contracts under Awards: A Toolkit for OJP Recipients.
- Checklist to Determine Subrecipient or Contractor Classification.
- Sole Source Justification Fact Sheet and Sole Source Review Checklist.

In general, the central question is the relationship between what the third-party will do under its agreement with the recipient and what the recipient has committed (to OJP) to do under its award to further a public purpose (e.g., services the recipient will provide, products it will develop or modify, research or evaluation it will conduct). If a third party will provide some of the services the recipient has committed (to OJP) to provide, will develop or modify all or part of a product the recipient has committed (to OJP) to develop or modify, or conduct part of the research or evaluation the recipient has committed (to OJP) to conduct, OJP will consider the agreement with the third party a subaward for purposes of federal grants administrative requirements.

This will be true **even if** the recipient, for internal or other non-federal purposes, labels or treats its agreement as a procurement, a contract, or a procurement contract. Neither the title nor the structure of an agreement determines whether the agreement–for purposes of federal grants administrative requirements–is a "subaward" or is instead a procurement "contract" under an award. The substance of the relationship should be given greater consideration than the form of agreement between the recipient and the outside entity.

1. **Information on proposed subawards and required certifications regarding certain federal laws from certain subrecipients**
   General requirement for federal authorization of any subaward; statutory authorizations of subawards under the JAG Program statute. Generally, a recipient of an OJP award may not make subawards ("subgrants") unless the recipient has specific federal authorization to do so. Unless an applicable statute or DOJ regulation specifically authorizes (or requires) particular subawards, a recipient must have authorization from OJP before it may make a subaward.

   **JAG subawards that are required or specifically authorized by statute (see 34 U.S.C. § 10152(a) and 34 U.S.C. § 10156) do not require prior approval to authorize subawards. This includes subawards made by units of local government under the JAG Program.**

   A particular subaward may be authorized by OJP because the recipient included a sufficiently detailed description and justification of the proposed subaward in the application as approved by OJP. If, however, a particular subaward is not authorized by federal statute or regulation and is not sufficiently described and justified in the

application as approved by OJP, the recipient will be required, post award, to request and obtain written authorization from OJP before it may make the subaward.

If an applicant proposes to make one or more subawards to carry out the federal award and program, and those subawards are not specifically authorized (or required) by statute or regulation, the applicant should: (1) identify (if known) the proposed subrecipient(s), (2) describe in detail what each subrecipient will do to carry out the federal award and federal program, and (3) provide a justification for the subaward(s), with details on pertinent matters such as special qualifications and areas of expertise. Pertinent information on subawards should appear not only in the Program Narrative, but also in the Budget Detail Worksheet and Budget Narrative.

<u>Required certifications, generally relating to various federal statutes, from any proposed subrecipient that is a state or local government entity.</u> Before a unit of local government may subaward FY 2018 award funds to another unit of local government or to a public institution of higher education, it will be required (by specific award condition, the terms of which will govern) to obtain a properly executed certification, generally relating to various specific federal laws, from the proposed subrecipient. (This requirement regarding these federal laws will not apply to subawards to Indian tribes). The specific certification the unit of local government must require from another unit of local government will vary somewhat from the specific certification it must require from a public institution of higher education. The forms will be posted and available for download at: https://ojp.gov/funding/Explore/SampleCertifications-8USC1373.htm.

## 2. Information on proposed procurement contracts (with specific justification for proposed noncompetitive contracts over $150,000)

Unlike a recipient contemplating a subaward, a recipient of an OJP award generally does not need specific prior federal authorization to enter into an agreement that— for purposes of federal grants administrative requirements—is considered a procurement contract, **provided that** (1) the recipient uses its own documented procurement procedures and (2) those procedures conform to applicable federal law, including the Procurement Standards of the (DOJ) Part 200 Uniform Requirements (as set out at 2 C.F.R. 200.317 - 200.326). The Budget Detail Worksheet and budget narrative should identify proposed procurement contracts. (As discussed above, subawards must be identified and described separately from procurement contracts.)

The Procurement Standards in the Part 200 Uniform Requirements, however, reflect a general expectation that agreements that (for purposes of federal grants administrative requirements) constitute procurement "contracts" under awards will be entered into on the basis of full and open competition. All noncompetitive (sole source) procurement contracts must meet the OJP requirements outlined at https://ojp.gov/training/subawards-procurement.htm. If a proposed procurement contract would exceed the simplified acquisition threshold—currently, $150,000—a recipient of an OJP award may not proceed without competition unless and until the recipient receives specific advance authorization from OJP to use a non-competitive approach for the procurement. An applicant that (at the time of its application) intends—without competition—to enter into a procurement contract that would exceed $150,000 should include a detailed justification that explains to OJP why, in the particular circumstances, it is appropriate to proceed without competition.

Decl. of Nordeen
Exhibit 4, Page 24 of 57

If the applicant receives an award, sole source procurements that do not exceed the Simplified Acquisition Threshold (currently $150,000) must have written justification for the noncompetitive procurement action maintained in the procurement file. If a procurement file does not have the documentation that meets the criteria outlined in 2 C.F.R. 200, the procurement expenditures may not be allowable. Sole source procurement over the $150,000 Simplified Acquisition Threshold must have prior approval from OJP using a Sole Source Grant Adjustment Notice (GAN). Written documentation justifying the noncompetitive procurement must be submitted with the GAN and maintained in the procurement file.

### d. Pre-Agreement Costs

For information on pre-agreement costs, see Section B. Federal Award Information.

## 5. Indirect Cost Rate Agreement (if applicable)

Indirect costs may be charged to an award only if:

(a) The recipient has a current (unexpired), federally approved indirect cost rate; or
(b) The recipient is eligible to use, and elects to use, the "de minimis" indirect cost rate described in the (DOJ) Part 200 Uniform Requirements, as set out at 2 C.F.R. 200.414(f).

**Note**: This rule does not eliminate or alter the JAG-specific restriction in federal law that charges for administrative costs may not exceed 10 percent of the award amount, regardless of the approved indirect cost rate.

An applicant with a current (unexpired) federally approved indirect cost rate is to attach a copy of the indirect cost rate agreement to the application. An applicant that does not have a current federally approved rate may request one through its cognizant federal agency, which will review all documentation and approve a rate for the applicant entity, or, if the applicant's accounting system permits, applicants may propose to allocate costs in the direct cost categories.

For assistance with identifying the appropriate cognizant federal agency for indirect costs, please contact the OCFO Customer Service Center at 1–800–458–0786 or at ask.ocfo@usdoj.gov. If DOJ is the cognizant federal agency, applicants may obtain information needed to submit an indirect cost rate proposal at: www.ojp.gov/funding/Apply/Resources/IndirectCosts.pdf.

Certain OJP recipients have the option of electing to use the "de minimis" indirect cost rate. An applicant that is eligible to use the "de minimis" rate that wishes to use the "de minimis" rate should attach written documentation to the application that advises OJP of both-- (1) the applicant's eligibility to use the "de minimis" rate, and (2) its election to do so. If an eligible applicant elects the "de minimis" rate, costs must be consistently charged as either indirect or direct costs, but may not be double charged or inconsistently charged as both. The "de minimis" rate may no longer be used once an approved federally-negotiated indirect cost rate is in place. (No entity that ever has had a federally-approved negotiated indirect cost rate is eligible to use the "de minimis" rate.) For the "de minimis" rate requirements (including additional information on eligibility to elect to use the rate), see Part 200 Uniform Requirements, at 2 C.F.R. 200.414(f).

Decl. of Nordeen
Exhibit 4, Page 25 of 57

6. **Tribal Authorizing Resolution**
   A tribe, tribal organization, or third party that proposes to provide direct services or assistance to residents on tribal lands should include in its application a resolution, letter, affidavit, or other documentation, as appropriate, that demonstrates (as a legal matter) that the applicant has the requisite authorization from the tribe(s) to implement the proposed project on tribal lands. In those instances when an organization or consortium of tribes applies for an award on behalf of a tribe or multiple specific tribes, the application should include appropriate legal documentation, as described above, from all tribes that would receive services or assistance under the award. A consortium of tribes for which existing consortium bylaws allow action without support from all tribes in the consortium (i.e., without an authorizing resolution or comparable legal documentation from each tribal governing body) may submit, instead, a copy of its consortium bylaws with the application.

7. **Financial Management and System of Internal Controls Questionnaire (including applicant disclosure of high risk status)**
   Every OJP applicant is to download, complete, and submit the OJP Financial Management and System of Internal Controls Questionnaire (Questionnaire) located at https://ojp.gov/funding/Apply/Resources/FinancialCapability.pdf as part of its application. The Questionnaire helps OJP assess the financial management and internal control systems, and the associated potential risks of an applicant as part of the pre-award risk assessment process.

   The Questionnaire should only be completed by financial staff most familiar with the applicant's systems, policies, and procedures in order to ensure that the correct responses are recorded and submitted to OJP. The responses on the Questionnaire directly impact the pre-award risk assessment and should accurately reflect the applicant's financial management and internal control system at the time of the application. The pre-award risk assessment is only one of multiple factors and criteria used in determining funding. However, a pre-award risk assessment that indicates that an applicant poses a higher risk to OJP may affect the funding decision and/or result in additional reporting requirements, monitoring, special conditions, withholding of award funds, or other additional award requirements.

   Among other things, the form requires each applicant to disclose whether it currently is designated "high risk" by a federal grant-making agency outside of DOJ. For purposes of this disclosure, high risk includes any status under which a federal awarding agency provides additional oversight due to the applicant's past performance, or other programmatic or financial concerns with the applicant. If an applicant is designated high risk by another federal awarding agency, the applicant must provide the following information:

   - The federal awarding agency that currently designates the applicant high risk.
   - The date the applicant was designated high risk.
   - The high risk point of contact at that federal awarding agency (name, phone number, and email address).
   - The reasons for the high risk status, as set out by the federal awarding agency.

   OJP seeks this information to help ensure appropriate federal oversight of OJP awards. An applicant that is considered "high risk" by another federal awarding agency is not automatically disqualified from receiving an OJP award. OJP may, however, consider the

information in award decisions, and may impose additional OJP oversight of any award under this solicitation (including through the conditions that accompany the award document).

8. **Disclosure of Lobbying Activities**
Each applicant must complete and submit a Disclosure of Lobbying Activities form (SF-LLL). An applicant that expends any funds for lobbying activities is to provide all of the information requested on the form. An applicant that does not expend any funds for lobbying activities is to enter "N/A" in the text boxes for item 10 ("a. Name and Address of Lobbying Registrant" and "b. Individuals Performing Services").

9. **Certifications and Assurances by the Chief Executive of the Applicant Government**
A JAG application is not complete, and a unit of local government may not access award funds, unless the chief executive of the applicant unit of local government (e.g., the mayor) properly executes, and the unit of local government submits, the "Certifications and Assurances by the Chief Executive of the Applicant Government" attached to this solicitation as Appendix A.

OJP will not deny an application for an FY 2018 award for failure to submit these "Certifications and Assurances by the Chief Executive of the Applicant Government" by the application deadline, but a unit of local government will not be able to access award funds (and its award will include a condition that withholds funds) until it submits these certifications and assurances, properly executed by the chief executive of the unit of local government (e.g., the mayor).

10. **Certifications by the Chief Legal Officer of the Applicant Government**
The chief legal officer of an applicant unit of local government (e.g., the City Attorney) is to carefully review the two certifications attached to this solicitation as Appendix B and Appendix C. If the chief legal officer determines that he or she may execute the certifications, the unit of local government is to submit the certification as part of its application. (Note: this requirement does not apply to Indian tribal governments.)

As discussed further in the Federal Award Notices section, a unit of local government (other than an Indian tribal government) applicant will be **unable to make a valid award acceptance** of an FY 2018 JAG award unless and until both properly executed certifications by its chief legal officer are received by OJP on or before the day the unit of local government submits an executed award document.

11. **Additional Attachments**

  a. **Information regarding Communication with the Department of Homeland Security (DHS) and/or Immigration and Customs Enforcement (ICE)**
  Each applicant must provide responses to the following questions as an attachment to the application:
  (1) Does your jurisdiction have any laws, policies, or practices related to whether, when, or how employees may communicate with DHS or ICE?
  (2) Is your jurisdiction subject to any laws from a superior political entity (e.g., a state law that binds a city) that meet the description in question 1?
  (3) If yes to either:
    • Please provide a copy of each law or policy;

27

- Please describe each practice; and
- Please explain how the law, policy, or practice complies with section 1373.

See Appendix E for a template that applicants may use to prepare this attachment.

Note: Responses to these questions must be provided by the applicant as part of the JAG application. Further, the requirement to provide this information applies to all tiers of JAG funding, for all subawards made to state or local government entities, including public institutions of higher education. All subrecipient responses must be collected and maintained by the direct recipient of JAG funding and must be made available to DOJ upon request. Responses to these questions are not required from subrecipients that are either a tribal government/organization, a nonprofit organization, or a private institution of higher education.

OJP will not deny an application for an FY 2018 award for failure to submit these required responses by the application deadline, but a unit of local government will not be able to access award funds (and its award will include a condition that withholds funds) until it submits these responses.

**b. Applicant Disclosure of Pending Applications**

Each applicant is to disclose whether it has (or is proposed as a subrecipient under) any pending applications for federally funded grants or cooperative agreements that (1) include requests for funding to support the same project being proposed in the application under this solicitation and (2) would cover identical cost items outlined in the budget submitted to OJP as part of the application under this solicitation. The applicant is to disclose applications made directly to federal awarding agencies, and also applications for subawards of federal funds (e.g., applications to state agencies that will subaward ("subgrant") federal funds).

OJP seeks this information to help avoid any inappropriate duplication of funding. Leveraging multiple funding sources in a complementary manner to implement comprehensive programs or projects is encouraged and is not seen as inappropriate duplication.

Each applicant that has one or more pending applications as described above is to provide the following information about pending applications submitted within the last 12 months:

- The federal or state funding agency
- The solicitation name/project name
- The point of contact information at the applicable federal or state funding agency

| Federal or State Funding Agency | Solicitation Name/Project Name | Name/Phone/Email for Point of Contact at Federal or State Funding Agency |
|---|---|---|
| DOJ/Office of Community Oriented Policing Services (COPS) | COPS Hiring Program | Jane Doe, 202/000-0000; jane.doe@usdoj.gov |
| Health & Human Services/ Substance Abuse and Mental Health Services Administration | Drug-Free Communities Mentoring Program/ North County Youth Mentoring Program | John Doe, 202/000-0000; john.doe@hhs.gov |

Each applicant should include the table as a separate attachment to its application. The file should be named "Disclosure of Pending Applications." The applicant Legal Name on the application must match the entity named on the disclosure of pending applications statement.

Any applicant that does not have any pending applications as described above is to submit, as a separate attachment, a statement to this effect: "[Applicant Name on SF-424] does not have (and is not proposed as a subrecipient under) any pending applications submitted within the last 12 months for federally funded grants or cooperative agreements (or for subawards under federal grants or cooperative agreements) that request funding to support the same project being proposed in this application to OJP and that would cover identical cost items outlined in the budget submitted as part of this application."

c. **Research and Evaluation Independence and Integrity (if applicable)**
If an application involves research (including research and development) and/or evaluation, the applicant must demonstrate research/evaluation independence and integrity, including appropriate safeguards, before it may receive award funds. The applicant must demonstrate independence and integrity regarding both this proposed research and/or evaluation, and any current or prior related projects.

Each application should include an attachment that addresses **both** i. and ii. below.

i. For purposes of this solicitation, each applicant is to document research and evaluation independence and integrity by including one of the following two items:

a. A specific assurance that the applicant has reviewed its application to identify any actual or potential apparent conflicts of interest (including through review of pertinent information on the principal investigator, any co-principal investigators, and any subrecipients), and that the applicant has identified no such conflicts of interest—whether personal or financial or organizational (including on the part of the applicant entity or on the part of staff, investigators, or subrecipients)—that could affect the

independence or integrity of the research, including the design, conduct, and reporting of the research.

OR

b.  A specific description of actual or potential apparent conflicts of interest that the applicant has identified—including through review of pertinent information on the principal investigator, any co-principal investigators, and any subrecipients—that could affect the independence or integrity of the research, including the design, conduct, or reporting of the research. These conflicts may be personal (e.g., on the part of investigators or other staff), financial, or organizational (related to the applicant or any subrecipient entity). Some examples of potential investigator (or other personal) conflict situations are those in which an investigator would be in a position to evaluate a spouse's work product (actual conflict), or an investigator would be in a position to evaluate the work of a former or current colleague (potential apparent conflict). With regard to potential organizational conflicts of interest, as one example, generally an organization would not be given an award to evaluate a project, if that organization had itself provided substantial prior technical assistance to that specific project or a location implementing the project (whether funded by OJP or other sources), because the organization in such an instance might appear to be evaluating the effectiveness of its own prior work. The key is whether a reasonable person understanding all of the facts would be able to have confidence that the results of any research or evaluation project are objective and reliable. Any outside personal or financial interest that casts doubt on that objectivity and reliability of an evaluation or research product is a problem and must be disclosed.

ii.  In addition, for purposes of this solicitation, each applicant is to address possible mitigation of research integrity concerns by including, at a minimum, one of the following two items:

a.  If an applicant reasonably believes that no actual or potential apparent conflicts of interest (personal, financial, or organizational) exist, then the applicant should provide a brief narrative explanation of how and why it reached that conclusion. The applicant also is to include an explanation of the specific processes and procedures that the applicant has in place, or will put in place, to identify and prevent (or, at the very least, mitigate) any such conflicts of interest pertinent to the funded project during the period of performance. Documentation that may be helpful in this regard may include organizational codes of ethics/conduct and policies regarding organizational, personal, and financial conflicts of interest. There is no guarantee that the plan, if any, will be accepted as proposed.

OR

b.  If the applicant has identified actual or potential apparent conflicts of interest (personal, financial, or organizational) that could affect the independence and integrity of the research, including the design, conduct,

or reporting of the research, the applicant is to provide a specific and robust mitigation plan to address each of those conflicts. At a minimum, the applicant is expected to explain the specific processes and procedures that the applicant has in place, or will put in place, to identify and eliminate (or, at the very least, mitigate) any such conflicts of interest pertinent to the funded project during the period of performance. Documentation that may be helpful in this regard may include organizational codes of ethics/conduct and policies regarding organizational, personal, and financial conflicts of interest. There is no guarantee that the plan, if any, will be accepted as proposed.

OJP will assess research and evaluation independence and integrity based on considerations such as the adequacy of the applicant's efforts to identify factors that could affect the objectivity or integrity of the proposed staff and/or the applicant entity (and any subrecipients) in carrying out the research, development, or evaluation activity; and the adequacy of the applicant's existing or proposed remedies to control any such factors.

**d. Local Governing Body Review**

Applicants must submit information via the Certification and Assurances by the Chief Executive (See Appendix A) which documents that the JAG application was made available for review by the governing body of the unit of local government, or by an organization designated by that governing body, for a period that was not less than 30 days before the application was submitted to BJA. The same Chief Executive Certification will also specify that an opportunity to comment on this application was provided to citizens prior to the application submission to the extent applicable law or established procedures make such opportunity available. In the past, this has been accomplished via submission of specific review dates; now, OJP will only accept a chief executive's certification to attest to these facts. Units of local government may continue to submit actual dates of review, should they wish to do so, in addition to the submission of the Chief Executive Certification.

## How to Apply

An applicant must submit its application through the Grants Management System (GMS), which provides support for the application, award, and management of awards at OJP. Each applicant entity **must register in GMS for each specific funding opportunity** and should **register promptly** to meet the GMS registration deadline for this funding opportunity, especially if this is the first time the applicant is using the system. Find complete instructions on how to register and submit an application in GMS at www.ojp.gov/gmscbt/. An applicant that experiences technical difficulties during this process should email GMS.HelpDesk@usdoj.gov or call 888–549–9901 (option 3), available 24 hours a day, 7 days a week, including on federal holidays. OJP recommends that each applicant **register promptly** to prevent delays in submitting an application package by the deadline.

**Note on File Types: GMS does not accept executable file types as application attachments**. These disallowed file types include, but are not limited to, the following extensions: ".com," ".bat," ".exe," ".vbs," ".cfg," ".dat," ".db," ".dbf," ".dll," ".ini," ".log," ".ora," ".sys," and ".zip." GMS may reject applications with files that use these extensions. It is important to allow time to change the type of file(s) if the application is rejected.

Decl. of Nordeen
Exhibit 4, Page 31 of 57

**Unique Entity Identifier (DUNS Number) and System for Award Management (SAM)**
Every applicant entity must comply with all applicable System for Award Management (SAM) and unique entity identifier (currently, a Data Universal Numbering System [DUNS] number) requirements. SAM is the repository for certain standard information about federal financial assistance applicants, recipients, and subrecipients. A DUNS number is a unique nine-digit identification number provided by the commercial company Dun and Bradstreet. More detailed information about SAM and the DUNS number is in the numbered sections below.

If an applicant entity has not fully complied with the applicable SAM and unique identifier requirements by the time OJP makes award decisions, OJP may determine that the applicant is not qualified to receive an award and may use that determination as a basis for making the award to a different applicant.

If the applicant entity already has an Employer Identification Number (EIN), the SAM registration will take **up to two weeks to process**. If the entity does not have an EIN, then **the applicant should allow two to five weeks for obtaining the information from IRS when requesting the EIN via phone, fax, mail or Internet**. For more information about EIN, visit https://www.irs.gov/individuals/international-taxpayers/taxpayer-identification-numbers-tin.

**Registration and Submission Steps**
All applicants should complete the following steps:

1. **Acquire a unique entity identifier (DUNS number).** In general, the Office of Management and Budget requires every applicant for a federal award (other than an individual) to include a "unique entity identifier" in each application, including an application for a supplemental award. Currently, a DUNS number is the required unique entity identifier.

   This unique entity identifier is used for tracking purposes, and to validate address and point of contact information for applicants, recipients, and subrecipients. It will be used throughout the life cycle of an OJP award. Obtaining a DUNS number is a free, one-time activity. Call Dun and Bradstreet at 866–705–5711 to obtain a DUNS number or apply online at www.dnb.com/. A DUNS number is usually received within 2 business days.

2. **Acquire or maintain registration with SAM.** Any applicant for an OJP award creating a **new** entity registration (or updating or renewing a registration) in SAM.gov must submit an original, signed notarized letter appointing the authorized Entity Administrator within thirty (30) days of the registration activation. **Notarized letters must be submitted via U.S. Postal Service Mail. Read the Alert at www.sam.gov to learn more about what is required in the notarized letter, and read the Frequently Asked Questions (FAQs) at www.gsa.gov/samupdate to learn more about this process change.**

   All applicants for OJP awards (other than individuals) must maintain current registrations in the SAM database. Applicants will need the authorizing official of the organization and an Employer Identification Number (EIN).

   Information about SAM registration procedures can be accessed at https://www.sam.gov/.

3. **Acquire a GMS username and password**. New users must create a GMS profile by selecting the "First Time User" link under the sign-in box of the GMS home page. For more information on how to register in GMS, go to www.ojp.gov/gmscbt. Previously registered

applicants should ensure, prior to applying, that the user profile information is up-to-date in GMS (including, but not limited to, address, legal name of agency and authorized representative) as this information is populated in any new application.

4. **Verify the SAM (formerly CCR) registration in GMS.** OJP requires each applicant to verify its SAM registration in GMS. Once logged into GMS, click the "CCR Claim" link on the left side of the default screen. Click the submit button to verify the SAM (formerly CCR) registration.

5. **Search for the funding opportunity on GMS.** After logging into GMS or completing the GMS profile for username and password, go to the "Funding Opportunities" link on the left side of the page. Select "BJA" and "**FY 18 Edward Byrne Memorial Local Justice Assistance Grant (JAG) Program.**"

6. **Register by selecting the "Apply Online" button associated with the funding opportunity title.** The search results from step 5 will display the "funding opportunity" (solicitation) title along with the registration and application deadlines for this solicitation. Select the "Apply Online" button in the "Action" column to register for this solicitation and create an application in the system.

7. **Follow the directions in GMS to submit an application consistent with this solicitation.** Once the application is submitted, GMS will display a confirmation screen stating the submission was successful. **Important:** In some instances, applicants must wait for GMS approval before submitting an application. OJP urges each applicant to submit its application **at least 72 hours prior** to the application due date.

**Note: Application Versions**
If an applicant submits multiple versions of the same application, OJP will review **only** the most recent system-validated version submitted.

**Experiencing Unforeseen GMS Technical Issues**
An applicant that experiences unforeseen GMS technical issues beyond its control that prevent it from submitting its application by the deadline may contact the GMS Help Desk or the SAM Help Desk (Federal Service Desk) at https://www.fsd.gov/fsd-gov/home.do to report the technical issue and receive a tracking number. The applicant must email the NCJRS Response Center identified in the Contact Information section on the title page **within 24 hours after the application deadline** to request approval to submit its application after the deadline. The applicant's email must describe the technical difficulties, and must include a timeline of the applicant's submission efforts, the complete grant application, the applicant's DUNS number, and any GMS Help Desk or SAM tracking number(s).

**Note: OJP does not automatically approve requests to submit a late application.** After OJP reviews the applicant's request, and contacts the GMS Help Desk to verify the reported technical issues, OJP will inform the applicant whether the request to submit a late application has been approved or denied. If OJP determines that the untimely application submission was due to the applicant's failure to follow all required procedures, OJP will deny the applicant's request to submit its application.

Decl. of Nordeen
Exhibit 4, Page 33 of 57

The following conditions generally are insufficient to justify late submissions to OJP solicitations:

- Failure to register in SAM or GMS in sufficient time (SAM registration and renewal can take as long as 10 business days to complete.)
- Failure to follow GMS instructions on how to register and apply as posted on the GMS website
- Failure to follow each instruction in the OJP solicitation
- Technical issues with the applicant's computer or information technology environment such as issues with firewalls

# E. Application Review Information

**Review Process**
OJP is committed to ensuring a fair and open process for making awards. BJA reviews the application to make sure that the information presented is reasonable, understandable, measurable, and achievable, as well as consistent with the solicitation. BJA will also review applications to help ensure that JAG program-statute requirements have been met.

Pursuant to the Part 200 Uniform Requirements, before award decisions are made, OJP also reviews information related to the degree of risk posed by applicants. Among other things, to help assess whether an applicant that has one or more prior federal awards has a satisfactory record with respect to performance, integrity, and business ethics, OJP checks whether the applicant is listed in SAM as excluded from receiving a federal award.

In addition, if OJP anticipates that an award will exceed $150,000 in federal funds, OJP also must review and consider any information about the applicant that appears in the non-public segment of the integrity and performance system accessible through SAM (currently, the Federal Awardee Performance and Integrity Information System; "FAPIIS").

**Important note on FAPIIS:** An applicant, at its option, may review and comment on any information about itself that currently appears in FAPIIS and was entered by a federal awarding agency. OJP will consider any such comments by the applicant, in addition to the other information in FAPIIS, in its assessment of the risk posed by the applicant. The evaluation of risks goes beyond information in SAM, however. OJP itself has in place a framework for evaluating risks posed by applicants. OJP takes into account information pertinent to matters such as:

(1) Applicant financial stability and fiscal integrity
(2) Quality of the management systems of the applicant, and the applicant's ability to meet prescribed management standards, including those outlined in the DOJ Grants Financial Guide
(3) Applicant's history of performance under OJP and other DOJ awards (including compliance with reporting requirements and award conditions), as well as awards from other federal agencies
(4) Reports and findings from audits of the applicant, including audits under the (DOJ) Part 200 Uniform Requirements
(5) Applicant's ability to comply with statutory and regulatory requirements, and to effectively implement other award requirements

Absent explicit statutory authorization or written delegation of authority to the contrary, the Assistant Attorney General will make all final award decisions.

# F. Federal Award Administration Information

**Federal Award Notices**

Award notifications are expected to be made by September 30, 2018. OJP sends award notifications by email through GMS to the individuals listed in the application as the point of contact and the authorizing official. The email notification includes detailed instructions on how to access and view the award documents, and steps to take in GMS to start the award acceptance process. GMS automatically issues the notifications at 9:00 p.m. eastern time on the award date.

**NOTE:** In order to validly accept an award under the FY 2018 JAG Program, a unit of local government (other than an Indian tribal government) must submit to GMS the certification by its chief legal officer regarding compliance with certain federal laws, executed using the forms that appear in Appendices B and C. (The forms also may be downloaded at https://ojp.gov/funding/Explore/SampleCertifications-8USC1373.htm.) Unless the executed certifications either (1) are submitted to OJP together with the signed award document or (2) are uploaded in GMS no later than the day the signed award document is submitted, **OJP will reject as invalid** any submission by a unit of local government (other than an Indian tribal government) that purports to accept an award under this solicitation.

Rejection of an initial submission as an invalid award acceptance is not a denial of the award. Consistent with award requirements, once the unit of local government **does** submit the necessary certification regarding compliance with certain federal laws, the unit of local government **will** be permitted to submit an award document executed by the unit of local government on or after the date of those certifications.

Also, in order for an applicant validly to accept an award under the FY 2018 JAG program, an individual with the necessary authority to bind the applicant will be required to log in; execute a set of legal certifications and a set of legal assurances; designate a financial point of contact; thoroughly review the award, including **all** award conditions; and sign and accept the award. The award acceptance process requires physical signature of the award document by the authorized representative and the scanning of the fully-executed award document (along with the required certifications regarding compliance with certain federal laws, if not already uploaded in GMS) to OJP.

**Statutory and Regulatory Requirements; Award Conditions**

If selected for funding, in addition to implementing the funded project consistent with the OJP-approved application, the recipient must comply with award conditions, as well as all applicable requirements of federal statutes and regulations (including applicable requirements referred to in the assurances and certifications executed at the time of award acceptance). OJP strongly encourages prospective applicants to review information on post-award legal requirements and common OJP award conditions **prior** to submitting an application.

Applicants should consult the "Overview of Legal Requirements Generally Applicable to OJP Grants and Cooperative Agreements - FY 2018 Awards," available in the OJP Funding Resource Center at https://ojp.gov/funding/index.htm. In addition, applicants should examine the

following two legal documents, as each successful applicant must execute both documents in GMS before it may receive any award funds. (An applicant is not required to submit these documents as part of an application.)

- Certifications Regarding Lobbying; Debarment, Suspension and Other Responsibility Matters; and Drug-Free Workplace Requirements

- Certified Standard Assurances

The web pages accessible through the "Overview of Legal Requirements Generally Applicable to OJP Grants and Cooperative Agreements - FY 2018 Awards" are intended to give applicants for OJP awards a general overview of important statutes, regulations, and award conditions that apply to many (or in some cases, all) OJP grants and cooperative agreements awarded in FY 2018. Individual OJP awards typically also will include additional award conditions. Those additional conditions may relate to the particular statute, program, or solicitation under which the award is made; to the substance of the funded application; to the recipient's performance under other federal awards; to the recipient's legal status (e.g., as a for-profit entity); or to other pertinent considerations.

Individual FY 2018 awards made pursuant to this solicitation will, as appropriate and to the extent consistent with law, include conditions that will require the recipient (and any subrecipient) that accepts the award to do various things, with respect to the "program or activity" that would receive federal financial assistance thereunder. **Although the specific terms of each of those conditions are what will govern the awards**, included among such conditions will be some that, **generally speaking**, will require the recipient (and any subrecipient) that accepts the award to do some or all of the following:

- Not to violate 8 U.S.C. § 1373 (prohibiting restrictions on—
  (1) communication to/from the Department of Homeland Security ("DHS") of information regarding the citizenship or immigration status of any individual; and
  (2) maintaining, or exchanging with any government entity, information regarding the immigration status of any individual).

- Not to violate 8 U.S.C. § 1644 (prohibiting restrictions on communication to/from DHS of information regarding the immigration status of an alien).

- Not to violate, or aid or abet any violation of, 8 U.S.C. § 1324(a) (forbidding any "person," in "knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law," to "conceal, harbor, or shield from detection, or attempt to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation" or to "engage in any conspiracy to commit any of the preceding acts … "or aid or abet the commission of any of the preceding acts").

- Not to impede the exercise of the authority of the federal government under 8 U.S.C. § 1266(a) & (c) (authorizing arrest and detention of certain aliens and providing that the federal government "shall take into custody" certain criminal aliens "when the alien is released") and 8 U.S.C. § 1231(a)(4) (relating to removal from the United States of aliens after detention/confinement at the federal, state, and local level), specifically by requiring such recipients to provide (where feasible) at least 48 hours' advance notice to DHS regarding the

scheduled release date and time of an alien in the recipient's custody when DHS requests such notice in order to take custody of the alien pursuant to the Immigration and Nationality Act.

- Not to impede the exercise by DHS agents, "anywhere in or outside the United States" (8 C.F.R. § 287.5(a)(1)), of their authority under 8 U.S.C. § 1357(a)(1) to "interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States," specifically by requiring such recipients to permit DHS agents to have access to any correctional facility in order to meet with an alien (or an individual believed to be an alien) and inquire as to his right to be or remain in the United States.

The reasonable costs (to the extent not reimbursed under any other federal program) of complying with these conditions, including honoring any duly authorized requests from DHS that is encompassed by these conditions, will be allowable costs under the award.

**General Information about Post-federal Award Reporting Requirements**
In addition to the deliverables described in Section A. Program Description, any recipient of an award under this solicitation will be required to submit the following reports and data.

Required reports. Recipients typically must submit quarterly financial status reports, semi-annual progress reports, final financial and progress reports, and, if applicable, an annual audit report in accordance with the Part 200 Uniform Requirements or specific award conditions. Future awards and fund drawdowns may be withheld if reports are delinquent. (In appropriate cases, OJP may require additional reports.)

Awards that exceed $500,000 will include an additional condition that, under specific circumstances, will require the recipient to report (to FAPIIS) information on civil, criminal, and administrative proceedings connected with (or connected to the performance of) either the OJP award or any other grant, cooperative agreement, or procurement contract from the federal government. Additional information on this reporting requirement appears in the text of the award condition posted on the OJP website at: https://ojp.gov/funding/FAPIIS.htm.

Data on performance measures. In addition to required reports, each award recipient also must provide data that measure the results of the work done under the award. To demonstrate program progress and success, as well as to assist DOJ with fulfilling its responsibilities under the Government Performance and Results Act of 1993 (GPRA), Public Law 103-62, and the GPRA Modernization Act of 2010, Public Law 111–352, OJP will require any award recipient, post award, to provide accountability metrics data as part of regular progress reporting. Accountability metrics data must be submitted through BJA's Performance Measurement Tool (PMT), available at https://bjapmt.ojp.gov. The accountability measures are available at: https://bjapmt.ojp.gov/help/jagdocs.html. (Note: if a law enforcement agency receives JAG funds from a state, the state must submit quarterly accountability metrics data related to training that officers have received on use of force, racial and ethnic bias, de-escalation of conflict, and constructive engagement with the public.) Successful applicants will be required to access OJP's performance measurement page at www.ojp.gov/performance for an overview of performance measurement activities at OJP.

OJP may restrict access to award funds if a recipient of an OJP award fails to report the required accountability metrics data in a timely manner.

Decl. of Nordeen
Exhibit 4, Page 37 of 57

## G. Federal Awarding Agency Contact(s)

For OJP contact(s), see the title page.

For contact information for GMS, see the title page.

## H. Other Information

**Freedom of Information Act and Privacy Act (5 U.S.C. § 552 and 5 U.S.C. § 552a)**
All applications submitted to OJP (including all attachments to applications) are subject to the federal Freedom of Information Act (FOIA) and to the Privacy Act. By law, DOJ may withhold information that is responsive to a request pursuant to FOIA if DOJ determines that the responsive information either is protected under the Privacy Act or falls within the scope of one of nine statutory exemptions under FOIA. DOJ cannot agree in advance of a request pursuant to FOIA not to release some or all portions of an application.

In its review of records that are responsive to a FOIA request, OJP will withhold information in those records that plainly falls within the scope of the Privacy Act or one of the statutory exemptions under FOIA. (Some examples include certain types of information in budgets, and names and contact information for project staff other than certain key personnel.) In appropriate circumstances, OJP will request the views of the applicant/recipient that submitted a responsive document.

For example, if OJP receives a request pursuant to FOIA for an application submitted by a nonprofit or for-profit organization or an institution of higher education, or for an application that involves research, OJP typically will contact the applicant/recipient that submitted the application and ask it to identify—quite precisely—any particular information in the application that applicant/recipient believes falls under a FOIA exemption, the specific exemption it believes applies, and why. After considering the submission by the applicant/recipient, OJP makes an independent assessment regarding withholding information. OJP generally follows a similar process for requests pursuant to FOIA for applications that may contain law-enforcement sensitive information.

**Provide Feedback to OJP**
To assist OJP in improving its application and award processes, OJP encourages applicants to provide feedback on this solicitation, the application submission process, and/or the application review process. Provide feedback to OJPSolicitationFeedback@usdoj.gov.

**IMPORTANT:** This email is for feedback and suggestions only. OJP does **not** reply to messages it receives in this mailbox. A prospective applicant that has specific questions on any program or technical aspect of the solicitation **must** use the appropriate telephone number or email listed on the front of this solicitation document to obtain information. These contacts are provided to help ensure that prospective applicants can directly reach an individual who can address specific questions in a timely manner.

If you are interested in being a reviewer for other OJP grant applications, please email your résumé to ojpprsupport@usdoj.gov. (Do not send your résumé to the OJP Solicitation Feedback email account.) **Note:** Neither you nor anyone else from your organization or entity can be a

Decl. of Nordeen
Exhibit 4, Page 38 of 57

peer reviewer in a competition in which you or your organization/entity has submitted an
application.

**Appendix A**

**Certifications and Assurances by the Chief Executive of the Applicant Government**

Template for use by chief executive of the unit of local government (e.g., the mayor)

Visit https://ojp.gov/funding/Explore/SampleCertifications-8USC1373.htm to download the most up-to-date version.

**Note:** By law, for purposes of the JAG Program, the term "unit of local government " includes a town, township, village, parish, city, county, borough, or other general purpose political subdivision of a state; or, it may be a federally recognized Indian tribal government that performs law enforcement functions (as determined by the Secretary of the Interior). A unit of local government may be any law enforcement district or judicial enforcement district established under applicable state law with authority to independently establish a budget and impose taxes; for example, in Louisiana, a unit of local government means a district attorney or parish sheriff.

U.S. DEPARTMENT OF JUSTICE
OFFICE OF JUSTICE PROGRAMS

**Edward Byrne Justice Assistance Grant Program FY 2018 Local Solicitation**

**Certifications and Assurances by the Chief Executive of the Applicant Government**

On behalf of the applicant unit of local government named below, in support of that locality's application for an award under the FY 2018 Edward Byrne Justice Assistance Grant ("JAG") Program, and further to 34 U.S.C. § 10153(a), I certify under penalty of perjury to the Office of Justice Programs ("OJP"), U.S. Department of Justice ("USDOJ"), that all of the following are true and correct:

1. I am the chief executive of the applicant unit of local government named below, and I have the authority to make the following representations on my own behalf and on behalf of the applicant unit of local government. I understand that these representations will be relied upon as material in any OJP decision to make an award, under the application described above, to the applicant unit of local government.

2. I certify that no federal funds made available by the award (if any) that OJP makes based on the application described above will be used to supplant local funds, but will be used to increase the amounts of such funds that would, in the absence of federal funds, be made available for law enforcement activities.

3. I assure that the application described above (and any amendment to that application) was submitted for review to the governing body of the unit of local government (e.g., city council or county commission), or to an organization designated by that governing body, not less than 30 days before the date of this certification.

4. I assure that, before the date of this certification— (a) the application described above (and any amendment to that application) was made public; and (b) an opportunity to comment on that application (or amendment) was provided to citizens and to neighborhood or community-based organizations, to the extent applicable law or established procedure made such an opportunity available.

5. I assure that, for each fiscal year of the award (if any) that OJP makes based on the application described above, the applicant unit of local government will maintain and report such data, records, and information (programmatic and financial), as OJP may reasonably require.

6. I certify that— (a) the programs to be funded by the award (if any) that OJP makes based on the application described above meet all the requirements of the JAG Program statute (34 U.S.C. §§ 10151-10158); (b) all the information contained in that application is correct; (c) in connection with that application, there has been appropriate coordination with affected agencies; and (d) in connection with that award (if any), the applicant unit of local government will comply with all provisions of the JAG Program statute and all other applicable federal laws.

7. I have examined certification entitled "State or Local Government: FY 2018 Certification of Compliance with 8 U.S.C. §§ 1373 & 1644" executed by the chief legal officer of the applicant government with respect to the FY 2018 JAG program and submitted in support of the application described above, and I hereby adopt that certification as my own on behalf of that government. (This provision is not applicable to Indian tribal government applicants.)

8. I have examined certification entitled "State or Local Government: FY 2018 Certification Relating to 8 U.S.C. §§ 1226(a) & (c), 1231(a)(4), 1357(a), & 1366(1) & (3)" executed by the chief legal officer of the applicant government with respect to the FY 2018 JAG program and submitted in support of the application described above, and I hereby adopt that certification as my own on behalf of that government. (This provision is not applicable to Indian tribal government applicants.)

I acknowledge that a materially false, fictitious, or fraudulent statement (or concealment or omission of a material fact) in this certification, or in the application that it supports, may be the subject of criminal prosecution (including under 18 U.S.C. §§ 1001 and/or 1621, and/or 34 U.S.C. §§ 10271-10273), and also may subject me and the applicant unit of local government to civil penalties and administrative remedies for false claims or otherwise (including under 31 U.S.C. §§ 3729-3730 and §§ 3801-3812). I also acknowledge that OJP awards, including certifications provided in connection with such awards, are subject to review by USDOJ, including by OJP and by the USDOJ Office of the Inspector General.

_____

Signature of Chief Executive of the Applicant Unit of Local Government

_____

Printed Name of Chief Executive

_____

Name of Applicant Unit of Local Government

_____

Date of Certification

_____

Title of Chief Executive

41

**Appendix B**

**State or Local Government:**

**Certification of Compliance with 8 U.S.C. §§ 1373 and 1644**

Template for use by the chief legal officer of the unit of local government (e.g., the city attorney)

Visit https://ojp.gov/funding/Explore/SampleCertifications-8USC1373.htm to download the most up-to-date version.

**Note:** This Certification is not required by Indian tribal government applicants.

**U.S. DEPARTMENT OF JUSTICE**
**OFFICE OF JUSTICE PROGRAMS**

**Local Government:  FY 2018 Certification of Compliance with 8 U.S.C. §§ 1373 & 1644**

On behalf of the applicant government entity named below, and in support of its application, I certify under penalty of perjury to the Office of Justice Programs ("OJP"), U.S. Department of Justice ("USDOJ"), that all of the following are true and correct:

(1)  I am the chief legal officer of the State or local government of which the applicant entity named below is a part ("the jurisdiction"), and I have the authority to make this certification on behalf of the jurisdiction and the applicant entity (that is, the entity applying directly to OJP).  I understand that OJP will rely upon this certification as a material representation in any decision to make an award to the applicant entity.

(2)  I have carefully reviewed 8 U.S.C. §§ 1373(a) & (b), and 1644, including the prohibitions on certain actions by State and local government entities, -agencies, and -officials regarding information on citizenship and immigration status. I also have reviewed the provisions set out at (or referenced in) 8 U.S.C. § 1551 note ("Abolition … and Transfer of Functions"), pursuant to which references to the "Immigration and Naturalization Service" in 8 U.S.C. §§ 1373 & 1644 are to be read, as a legal matter, as references to particular components of the U.S. Department of Homeland Security.

(3)  I (and also the applicant entity) understand that the U.S. Department of Justice will require States and local governments (and agencies or other entities thereof) to comply with 8 U.S.C. §§ 1373 & 1644, with respect to any "program or activity" funded in whole or in part with the federal financial assistance provided through the FY 2018 OJP program under which this certification is being submitted (the "FY 2018 OJP Program" identified below), specifically including any such "program or activity" of a governmental entity or -agency that is a subrecipient (at any tier) of funds under the FY 2018 OJP Program.

(4)  I (and also the applicant entity) understand that, for purposes of this certification, "program or activity" means what it means under title VI of the Civil Rights Act of 1964 (*see* 42 U.S.C. § 2000d-4a), and that terms used in this certification that are defined in 8 U.S.C. § 1101 mean what they mean under that section 1101, except that the term "State" also shall include American Samoa (*cf.* 34 U.S.C. § 10251(a)(2)). Also, I understand that, for purposes of this certification, neither a "public" institution of higher education (*i.e.*, one that is owned, controlled, or directly funded by a State or local government) nor an Indian tribe is considered a State or local government entity or -agency.

(5)  I have conducted (or caused to be conducted for me) a diligent inquiry and review concerning both—

(a)  the "program or activity" to be funded (in whole or in part) with the federal financial assistance sought by the applicant entity under this FY 2018 OJP Program; and

(b)  any prohibitions or restrictions potentially applicable to the "program or activity" sought to be funded under the FY 2018 OJP Program that deal with sending to, requesting or receiving from, maintaining, or exchanging information of the types described in 8 U.S.C. §§ 1373(a) & (b), and 1644, whether imposed by a State or local government entity, -agency, or -official.

(6)  As of the date of this certification, neither the jurisdiction nor any entity, agency, or official of the jurisdiction has in effect, purports to have in effect, or is subject to or bound by, any prohibition or any restriction that would apply to the "program or activity" to be funded in whole or in part under the FY 2018 OJP Program (which, for the specific purpose of this paragraph 6, shall not be understood to include any such "program or activity" of any subrecipient at any tier), and that deals with either— (1) a government entity or -official sending or receiving information regarding citizenship or immigration status as described in 8 U.S.C. §§ 1373(a) & 1644; or (2) a government entity or -agency sending to, requesting or receiving from, maintaining, or exchanging information of the types (and with respect to the entities) described in 8 U.S.C. § 1373(b).

I acknowledge that a materially false, fictitious, or fraudulent statement (or concealment or omission of a material fact) in this certification, or in the application that it supports, may be the subject of criminal prosecution (including under 18 U.S.C. §§ 1001 and/or 1621, and/or 34 U.S.C. § 10271-10273), and also may subject me and the applicant entity to civil penalties and administrative remedies for false claims or otherwise (including under 31 U.S.C. §§ 3729-3730 and §§ 3801-3812). I also acknowledge that OJP awards, including certifications provided in connection with such awards, are subject to review by USDOJ, including by OJP and by the USDOJ Office of the Inspector General.

_____          _____
Signature of Chief Legal Officer of the Jurisdiction          Printed Name of Chief Legal Officer

_____          _____
Date of Certification          Title of Chief Legal Officer of the Jurisdiction

_____
Name of Applicant Government Entity (*i.e.*, the applicant to the FY 2018 OJP Program identified below)

**FY 2018 OJP Program**:  **Byrne Justice Assistance Grant (JAG) Program: Local**

**Appendix C**

**State or Local Government:**

**Certification of Compliance with 8 U.S.C. §§ 1226(a) & (c), 1231(a)(4), 1324(a), 1357(a), and 1366(1) & (3)**

Template for use by chief legal officer of the unit of local government (e.g., the city attorney)

Visit https://ojp.gov/funding/Explore/SampleCertifications-8USC1373.htm to download the most up-to-date version.

**Note:** This Certification is not required by Indian tribal government applicants.

U.S. DEPARTMENT OF JUSTICE
OFFICE OF JUSTICE PROGRAMS

**Local Government:  FY 2018 Certification Relating to
8 U.S.C. §§ 1226(a) & (c), 1231(a)(4), 1324(a), 1357(a), & 1366(1) & (3)**

On behalf of the applicant government entity named below, and in support of its application, I certify under penalty of perjury to the Office of Justice Programs ("OJP"), U.S. Department of Justice ("USDOJ"), that all of the following are true and correct:

1. I am the chief legal officer of the unit of local government of which the applicant entity named below is a part ("the jurisdiction"), and I have the authority to make this certification on behalf of the jurisdiction and the applicant entity (that is, the entity applying directly to OJP). I understand that OJP will rely upon this certification as a material representation in any decision to make an award to the applicant entity.

2. I have carefully reviewed each of the following sections of title 8, United States Code:

    a. § 1226(a) & (c) (authorizing arrest and detention of certain aliens and providing that the federal government "shall take into custody" certain criminal aliens "when the alien is released");
    b. § 1231(a)(4) (federal government may not "remove an alien who is sentenced to imprisonment until the alien is released from imprisonment");
    c. § 1324(a) (forbidding any "person," in "knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law," to "conceal[], harbor[], or shield[] from detection, or attempt[] to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation" or to "engage in any conspiracy to commit any of the preceding acts … or aid[] or abet[] the commission of any of the preceding acts");
    d. § 1357(a) (authorizing immigration officers, "anywhere in or outside the United States" (*see* 8 C.F.R. § 287.5(a)), to "interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States"); and
    e. § 1366(1) & (3) (requiring the Attorney General annually to submit to Congress "a report detailing … (1) the number of illegal aliens incarcerated in Federal and State prisons for having committed felonies, stating the number incarcerated for each type of offense; [and] (3) programs and plans underway in the Department of Justice to ensure the prompt removal from the United States of criminal aliens subject to removal").

3. I (and also the applicant entity) understand that USDOJ will require States and local governments (including State and local government entities, -agencies, and -officials), with respect to any "program or activity" funded in whole or in part with the federal financial assistance provided through the FY 2018 OJP program under which this certification is being submitted (the "FY 2018 OJP Program" identified below), specifically including any such "program or activity" of a governmental entity or -agency that is a subrecipient (at any tier) of funds under the FY 2018 OJP Program, not to violate, or to aid or abet any violation of, 8 U.S.C. § 1324(a), and not to impede the exercise by federal officers of authority under 8 U.S.C. § 1357(a) or relating to 8 U.S.C. § 1366(1) & (3) or 8 U.S.C. § 1226(a) & (c).

4. I (and also the applicant entity) understand that, for purposes of this certification, "program or activity" means what it means under title VI of the Civil Rights Act of 1964 (*see* 42 U.S.C. § 2000d-4a), and that terms used in this certification that are defined in 8 U.S.C. § 1101 mean what they mean under that section 1101, except that the term "State" also shall include American Samoa (*cf.* 34 U.S.C. § 10251(a)(2)).  Also, I understand that, for purposes of this certification, neither a "public" institution of higher education (*i.e.*, one that is owned, controlled, or directly funded by a State or local government) nor an Indian tribe is considered a State or local government entity or -agency.

5. I have conducted (or caused to be conducted for me) a diligent inquiry and review concerning both—

    a. the "program or activity" to be funded (in whole or in part) with the federal financial assistance sought by the applicant entity under this FY 2018 OJP Program; and
    b. any laws, rules, policies, or practices potentially applicable to the "program or activity" sought to be funded under this FY 2018 OJP Program that implicate any of the requirements relating to 8 U.S.C. §§ 1226(a) & (c), 1324(a), 1357(a), & 1366(1) & (3) that are described in ¶ 3 of this certification, whether imposed by a State or local government entity, -agency, or -official.

6. As of the date of this certification, neither the jurisdiction nor any entity, agency, or official of the jurisdiction has in effect, purports to have in effect, or is subject to or bound by, any law, rule, policy, or practice that would apply to the "program or activity" to be funded in whole or in part under the FY 2018 OJP Program (which, for the specific purpose of this paragraph 6, shall not be understood to include any such "program or activity" of any subrecipient at any tier), and that would or does— (1) violate, or aid or abet any violation of, 8 U.S.C. § 1324(a); (2) impede the exercise by federal officers of authority under 8 U.S.C. § 1357(a); (3) impede the exercise by federal officers of authority relating to 8 U.S.C. § 1366(1) & (3); or (4) impede the exercise by federal officers of authority relating to 8 U.S.C. § 1226(a) & (c).

I acknowledge that a materially false, fictitious, or fraudulent statement (or concealment or omission of a material fact) in this certification, or in the application that it supports, may be the subject of criminal prosecution (including under 18 U.S.C. §§ 1001 and/or 1621, and/or 34 U.S.C. §§ 10271-10273), and also may subject me and the applicant entity to civil penalties and administrative remedies for false claims or otherwise (including under 31 U.S.C. §§ 3729-3730 and §§ 3801-3812).  I also acknowledge that OJP awards, including associated certifications, are subject to review by USDOJ, including by OJP and the USDOJ Office of the Inspector General.

_____          _____
Signature of Chief Legal Officer of the Jurisdiction          Printed Name of Chief Legal Officer

_____          _____
Date of Certification          Title of Chief Legal Officer of the Jurisdiction

_____
Name of Applicant Government Entity (*i.e.*, the applicant to the FY 2018 OJP Program identified below

*FY 2018 OJP Program:*  **Byrne Justice Assistance Grant (JAG) Program: Local**

45
BJA-2018-13626

Decl. of Nordeen
Exhibit 4, Page 45 of 57

## Appendix D

## Certain relevant federal laws, as in effect on June 7, 2018

**8 U.S.C. § 1373**

**Communication between government agencies and the Immigration and Naturalization Service**

**(a) In general**

Notwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual.

**(b) Additional authority of government entities**

Notwithstanding any other provision of Federal, State, or local law, no person or agency may prohibit, or in any way restrict, a Federal, State, or local government entity from doing any of the following with respect to information regarding the immigration status, lawful or unlawful, of any individual:

**(1)** Sending such information to, or requesting or receiving such information from, the Immigration and Naturalization Service.

**(2)** Maintaining such information.

**(3)** Exchanging such information with any other Federal, State, or local government entity.

**(c) Obligation to respond to inquiries**

The Immigration and Naturalization Service shall respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information.

**8 U.S.C. § 1644**

**Communication between State and local government agencies and Immigration and Naturalization Service**

Notwithstanding any other provision of Federal, State, or local law, no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from the Immigration and Naturalization Service information regarding the immigration status, lawful or unlawful, of an alien in the United States.

**8 U.S.C. § 1226(a) & (c)**

**Apprehension and detention of aliens**

(a) Arrest, detention, and release

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General--

(1) may continue to detain the arrested alien; and
(2) may release the alien on--
    (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
    (B) conditional parole; but
(3) may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

***

(c) Detention of criminal aliens
    (1) Custody
The Attorney General shall take into custody any alien who--
    (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
    (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
    (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence1 to a term of imprisonment of at least 1 year, or
    (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

    (2) Release
The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.


## 8 U.S.C. § 1231(a)(4)

(a) Detention, release, and removal of aliens ordered removed
***

### 4) Aliens imprisoned, arrested, or on parole, supervised release, or probation

#### (A) In general
Except as provided in section 259(a) of title 42 and paragraph (2), the Attorney General may not remove an alien who is sentenced to imprisonment until the alien is released from imprisonment. Parole, supervised release, probation, or possibility of arrest or further imprisonment is not a reason to defer removal.

**(B) Exception for removal of nonviolent offenders prior to completion of sentence of imprisonment**

The Attorney General is authorized to remove an alien in accordance with applicable procedures under this chapter before the alien has completed a sentence of imprisonment-

   i.   in the case of an alien in the custody of the Attorney General, if the Attorney General determines that (I) the alien is confined pursuant to a final conviction for a nonviolent offense (other than an offense related to smuggling or harboring of aliens or an offense described in section 1101(a)(43)(B), (C), (E), (I), or (L) of this title and (II) the removal of the alien is appropriate and in the best interest of the United States; or

   ii.   in the case of an alien in the custody of a State (or a political subdivision of a State), if the chief State official exercising authority with respect to the incarceration of the alien determines that (I) the alien is confined pursuant to a final conviction for a nonviolent offense (other than an offense described in section 1101(a)(43)(C) or (E) of this title), (II) the removal is appropriate and in the best interest of the State, and (III) submits a written request to the Attorney General that such alien be so removed.

**(C) Notice**

Any alien removed pursuant to this paragraph shall be notified of the penalties under the laws of the United States relating to the reentry of deported aliens, particularly the expanded penalties for aliens removed under subparagraph (B).

**(D) No private right**

No cause or claim may be asserted under this paragraph against any official of the United States or of any State to compel the release, removal, or consideration for release or removal of any alien.

## 8 U.S.C. § 1324(a)

**Bringing in and harboring certain aliens**

(a) Criminal penalties

  (1)(A) Any person who—

      i.   knowing that a person is an alien, brings to or attempts to bring to the United States in any manner whatsoever such person at a place other than a designated port of entry or place other than as designated by the Commissioner, regardless of whether such alien has received prior official authorization to come to, enter, or reside in the United States and regardless of any future official action which may be taken with respect to such alien;

      ii.   knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law;

      iii.   knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation;

    iv.    encourages or induces an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law; or

    v.    (v)(I) engages in any conspiracy to commit any of the preceding acts, or

    vi.    (II) aids or abets the commission of any of the preceding acts, shall be punished as provided in subparagraph (B).

(B) A person who violates subparagraph (A) shall, for each alien in respect to whom such a violation occurs—

    I.    in the case of a violation of subparagraph (A)(i) or (v)(I) or in the case of a violation of subparagraph (A)(ii), (iii), or (iv) in which the offense was done for the purpose of commercial advantage or private financial gain, be fined under title 18, imprisoned not more than 10 years, or both;

    II.    in the case of a violation of subparagraph (A)(ii), (iii), (iv), or (v)(II), be fined under title 18, imprisoned not more than 5 years, or both;

    III.    in the case of a violation of subparagraph (A)(i), (ii), (iii), (iv), or (v) during and in relation to which the person causes serious bodily injury (as defined in section 1365 of title 18) to, or places in jeopardy the life of, any person, be fined under title 18, imprisoned not more than 20 years, or both; and

    IV.    in the case of a violation of subparagraph (A)(i), (ii), (iii), (iv), or (v) resulting in the death of any person, be punished by death or imprisoned for any term of years or for life, fined under title 18, or both.

(C) It is not a violation of clauses (ii) or (iii) of subparagraph (A), or of clause (iv) of subparagraph (A) except where a person encourages or induces an alien to come to or enter the United States, for a religious denomination having a bona fide nonprofit, religious organization in the United States, or the agents or officers of such denomination or organization, to encourage, invite, call, allow, or enable an alien who is present in the United States to perform the vocation of a minister or missionary for the denomination or organization in the United States as a volunteer who is not compensated as an employee, notwithstanding the provision of room, board, travel, medical assistance, and other basic living expenses, provided the minister or missionary has been a member of the denomination for at least one year.


    (2) Any person who, knowing or in reckless disregard of the fact that an alien has not received prior official authorization to come to, enter, or reside in the United States, brings to or attempts to bring to the United States in any manner whatsoever, such alien, regardless of any official action which may later be taken with respect to such alien shall, for each alien in respect to whom a violation of this paragraph occurs-

    (A) be fined in accordance with title 18 or imprisoned not more than one year, or both; or

    (B) in the case of-

    (i) an offense committed with the intent or with reason to believe that the alien unlawfully brought into the United States will commit an offense against the United States or any State punishable by imprisonment for more than 1 year,

    (ii) an offense done for the purpose of commercial advantage or private financial gain, or

    (iii) an offense in which the alien is not upon arrival immediately brought and presented to an appropriate immigration officer at a designated port of entry,

be fined under title 18 and shall be imprisoned, in the case of a first or second violation of subparagraph (B)(iii), not more than 10 years, in the case of a first or second violation of

subparagraph (B)(i) or (B)(ii), not less than 3 nor more than 10 years, and for any other violation, not less than 5 nor more than 15 years.

   (3)(A) Any person who, during any 12-month period, knowingly hires for employment at least 10 individuals with actual knowledge that the individuals are aliens described in subparagraph (B) shall be fined under title 18 or imprisoned for not more than 5 years, or both.
   (B) An alien described in this subparagraph is an alien who-
               (i) is an unauthorized alien (as defined in section 1324a(h)(3) of this title), and
               (ii) has been brought into the United States in violation of this subsection.

   (4) In the case of a person who has brought aliens into the United States in violation of this subsection, the sentence otherwise provided for may be increased by up to 10 years if-
               (A) the offense was part of an ongoing commercial organization or enterprise;
               (B) aliens were transported in groups of 10 or more; and
               (C)(i) aliens were transported in a manner that endangered their lives; or
               (ii) the aliens presented a life-threatening health risk to people in the United States.


## 8 U.S.C. § 1357(a)

### Powers of immigration officers and employees

(a) Any officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have power without warrant—
   **(1)** to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States;
   **(2)** to arrest any alien who in his presence or view is entering or attempting to enter the United States in violation of any law or regulation made in pursuance of law regulating the admission, exclusion, expulsion, or removal of aliens, or to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest, but the alien arrested shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States;
   **(3)** within a reasonable distance from any external boundary of the United States, to board and search for aliens any vessel within the territorial waters of the United States and any railway car, aircraft, conveyance, or vehicle, and within a distance of twenty-five miles from any such external boundary to have access to private lands, but not dwellings, for the purpose of patrolling the border to prevent the illegal entry of aliens into the United States;
   **(4)** to make arrests for felonies which have been committed and which are cognizable under any law of the United States regulating the admission, exclusion, expulsion, or removal of aliens, if he has reason to believe that the person so arrested is guilty of such felony and if there is likelihood of the person escaping before a warrant can be obtained for his arrest, but the person arrested shall be taken without unnecessary delay before the nearest available officer empowered to commit persons charged with offenses against the laws of the United States; and
   **(5)** to make arrests-
   **(6)** for any offense against the United States, if the offense is committed in the officer's or employee's presence, or

**(7)** for any felony cognizable under the laws of the United States, if the officer or employee has reasonable grounds to believe that the person to be arrested has committed or is committing such a felony,

**(8)** if the officer or employee is performing duties relating to the enforcement of the immigration laws at the time of the arrest and if there is a likelihood of the person escaping before a warrant can be obtained for his arrest.

Under regulations prescribed by the Attorney General, an officer or employee of the Service may carry a firearm and may execute and serve any order, warrant, subpoena, summons, or other process issued under the authority of the United States. The authority to make arrests under paragraph (5)(B) shall only be effective on and after the date on which the Attorney General publishes final regulations which (i) prescribe the categories of officers and employees of the Service who may use force (including deadly force) and the circumstances under which such force may be used, (ii) establish standards with respect to enforcement activities of the Service, (iii) require that any officer or employee of the Service is not authorized to make arrests under paragraph (5)(B) unless the officer or employee has received certification as having completed a training program which covers such arrests and standards described in clause (ii), and (iv) establish an expedited, internal review process for violations of such standards, which process is consistent with standard agency procedure regarding confidentiality of matters related to internal investigations.

### 8 U.S.C. § 1366(1) & (3)

**Annual report on criminal aliens**
Not later than 12 months after September 30, 1996, and annually thereafter, the Attorney General shall submit to the Committees on the Judiciary of the House of Representatives and of the Senate a report detailing—
   (1) the number of illegal aliens incarcerated in Federal and State prisons for having committed felonies, stating the number incarcerated for each type of offense;
   ***
   (3) programs and plans underway in the Department of Justice to ensure the prompt removal from the United States of criminal aliens subject to removal;
   *** .

Decl. of Nordeen
Exhibit 4, Page 51 of 57

**Appendix E**

**Information regarding Communication with the Department of Homeland Security (DHS) and/or Immigration and Customs Enforcement (ICE)**

Each applicant must provide responses to the following questions as an attachment to the application:

(1)  Does your jurisdiction have any laws, policies, or practices related to whether, when, or how employees may communicate with DHS or ICE?

(2) Is your jurisdiction subject to any laws from a superior political entity (e.g., a state law that binds a city) that meet the description in question 1?

(3) If yes to either:
- Please provide a copy of each law or policy;
- Please describe each practice; and
- Please explain how the law, policy, or practice complies with section 1373.

Note: Responses to these questions must be provided by the applicant to BJA as part of the JAG application. Further, the requirement to provide this information applies to all tiers of JAG funding, for all subawards made to state or local government entities, including public institutions of higher education. All subrecipient responses must be collected and maintained by the direct recipient of JAG funding and must be made available to DOJ upon request. Responses to these questions are not required from subrecipients that are either a tribal government/organization, a nonprofit organization, or a private institution of higher education.

## Appendix F

**Additional purposes for which JAG funds awarded to a state under this FY 2018 solicitation may be used:**

(a)    To enforce state and local laws that establish offenses similar to offenses established in 21 U.S.C. § 801 et seq., to improve the functioning of the **criminal justice** system, with emphasis on violent crime and serious offenders, by means including providing additional personnel, equipment, training, technical assistance, and information systems for the more widespread apprehension, prosecution, adjudication, detention, and rehabilitation of persons who violate these laws, and to assist the victims of such crimes (other than compensation), including—

(1)    demand-reduction education programs in which law enforcement officers participate;

(2)    multi-jurisdictional task-force programs that integrate federal, state, and local drug-law-enforcement agencies and prosecutors for the purpose of enhancing inter-agency co-ordination and intelligence, and facilitating multi-jurisdictional investigations;

(3)    programs designed to target the domestic sources of controlled and illegal substances, such as precursor chemicals, diverted pharmaceuticals, clandestine laboratories, and cannabis cultivations;

(4)    providing community and neighborhood programs that assist citizens in preventing and controlling crime, including special programs that address the problems of crimes committed against the elderly and special programs for rural jurisdictions;

(5)    disrupting illicit commerce in stolen goods and property;

(6)    improving the investigation and prosecution of white-collar crime, organized crime, public-corruption crimes, and fraud against the government, with priority attention to cases involving drug-related official corruption;

(7)(A)    improving the operational effectiveness of law enforcement through the use of crime-analysis techniques, street-sales enforcement, schoolyard-violator programs, and gang-related and low-income-housing drug-control programs; and

(B)    developing and implementing anti-terrorism plans for deep-draft ports, international airports, and other important facilities;

(8)    career-criminal prosecution programs, including the development of proposed model drug-control legislation;

(9)    financial investigative programs that target the identification of money-laundering operations and assets obtained through illegal drug trafficking, including the development of proposed model legislation, financial investigative training, and financial information-sharing systems;

(10)    improving the operational effectiveness of the court process, by expanding prosecutorial, defender, and judicial resources, and implementing court-delay-reduction programs;'

(11)    programs designed to provide additional public correctional resources and improve the corrections system, including treatment in prisons and jails, intensive-supervision programs, and long-range corrections and sentencing strategies;

(12)    providing prison-industry projects designed to place inmates in a realistic working and training environment that will enable them to acquire

53

marketable skills and to make financial payments for restitution to their victims, for support of their own families, and for support of themselves in the institution;

(13)  providing programs that identify and meet the treatment needs of adult and juvenile drug-dependent and alcohol-dependent offenders;

(14)  developing and implementing programs that provide assistance to jurors and witnesses, and assistance (other than compensation) to victims of crimes;

(15)(A) developing programs to improve drug-control technology, such as pretrial drug-testing programs, programs that provide for the identification, assessment, referral to treatment, case-management and monitoring of drug-dependent offenders, and enhancement of state and local forensic laboratories; and

(B)  developing programs to improve **criminal justice** information systems (including automated fingerprint identification systems) to assist law enforcement, prosecution, courts, and corrections organizations;

(16)  innovative programs that demonstrate new and different approaches to enforcement, prosecution, and adjudication of drug offenses and other serious crimes;

(17)  addressing the problems of drug trafficking and the illegal manufacture of controlled substances in public housing;

(18)  improving the criminal and juvenile justice system's response to domestic and family violence, including spouse abuse, child abuse, and abuse of the elderly;

(19)  drug-control evaluation programs that the state and units of local government may utilize to evaluate programs and projects directed at state drug-control activities;

(20)  providing alternatives to prevent detention, jail, and prison for persons who pose no danger to the community;

(21)  programs of which the primary goal is to strengthen urban enforcement and prosecution efforts targeted at street drug sales;

(22)  programs for the prosecution of driving while intoxicated charges and the enforcement of other laws relating to alcohol use and the operation of motor vehicles;

(23)  programs that address the need for effective bindover systems for the prosecution of violent 16- and 17-year-old juveniles, in courts with jurisdiction over adults, for the crimes of—

(A)  murder in the first degree;
(B)  murder in the second degree;
(C)  attempted murder;
(D)  armed robbery when armed with a firearm;
(E)  aggravated battery or assault when armed with a firearm;
(F)  criminal sexual penetration when armed with a firearm; and
(G)  drive-by shootings as described 18 U.S.C. § 36;

(24)  law-enforcement and prevention programs relating to gangs or to youth who are involved or at risk of involvement in gangs;

(25)  developing or improving, in a forensic laboratory, a capability to analyze DNA for identification purposes; and

(26)  developing and implementing anti-terrorism training programs and procuring equipment for use by local law-enforcement authorities; and

54

**(b)**      To reduce crime and improve public safety, including but not limited to, the following:

(1)(A)          hiring, training, and employing on a continuing basis new, additional law enforcement officers and necessary support personnel;

(B)      paying overtime to presently-employed law enforcement officers and necessary support personnel for the purpose of increasing the number of hours worked by such personnel; and

(C)      procuring equipment, technology, and other material directly related to basic law-enforcement functions;

(2)      enhancing security measures—

(A)      in and around schools; and

(B)      in and around any other facility or location that is considered by the unit of local government to have a special risk for incidents of crime;

(3)      establishing crime-prevention programs that may, though not exclusively, involve law-enforcement officials and that are intended to discourage, disrupt, or interfere with the commission of criminal activity, including neighborhood-watch and citizen-patrol programs, sexual-assault and domestic-violence programs, and programs intended to prevent juvenile crime;

(4)      establishing or supporting drug courts;

(5)      establishing early-intervention and -prevention programs for juveniles, in order to reduce or eliminate crime;

(6)      enhancing the adjudication process of cases involving violent offenders, including violent juvenile offenders;

(7)      enhancing programs under **(a)**, above;

(8)      establishing co-operative task forces between adjoining units of local government to work co-operatively to prevent and combat criminal activity, particularly criminal activity that is exacerbated by drug- or gang-related involvement; and

(9)      establishing a multi-jurisdictional task force, particularly in rural areas, composed of law-enforcement officials representing units of local government, that works with Federal law-enforcement officials to prevent and control crime.

**Appendix G**
**Application Checklist**

**Edward Byrne Memorial Justice Assistance Grant (JAG) Program:**

**FY 2018 Local Solicitation**

This application checklist has been created as an aid in developing an application.

**What an Applicant Should Do:**

*Prior to Registering in GMS:*
_____ Acquire a DUNS Number                                                    (see page 31)
_____ Acquire or renew registration with SAM                                   (see page 32)
*To Register with GMS*:
_____ For new users, acquire a GMS username and password*                      (see page 32)
_____ For existing users, check GMS username and password* to ensure account access
                                                                                (see page 32)
_____ Verify SAM registration in GMS                                           (see page 32)
_____ Search for correct funding opportunity in GMS                            (see page 32)
_____ Select correct funding opportunity in GMS                                (see page 32)
_____ Register by selecting the "Apply Online" button associated with the funding opportunity
    title                                                                       (see page 32)
    _____ Read OJP policy and guidance on conference approval, planning, and reporting
available at ojp.gov/financialguide/DOJ/PostawardRequirements/chapter3.10a.htm
                                                                                (see page 17)
_____ If experiencing technical difficulties in GMS, contact the NCJRS Response Center
                                                                            (see pages 2 and 33)

*Password Reset Notice* – GMS users are reminded that while password reset capabilities exist,
this function is only associated with points of contact designated within GMS at the time the
account was established. Neither OJP nor the GMS Help Desk will initiate a password reset
unless requested by the authorized official or a designated point of contact associated with an
award or application.

**Overview of Post-Award Legal Requirements:**

_____ Review the "Overview of Legal Requirements Generally Applicable to OJP Grants and
Cooperative Agreements - FY 2018 Awards" in the OJP Funding Resource Center at
https://ojp.gov/funding/index.htm.

**Scope Requirement:**

_____ The federal amount requested is within the allowable limit(s) of the FY 2018 JAG
Allocations List as listed on BJA's JAG web page.

**Eligibility Requirement:** Only units of local government may apply under this solicitation. By
law, for purposes of the JAG Program, the term "units of local government" includes a town,
township, village, parish, city, county, borough, or other general purpose political subdivision of

a state; or, it may be a federally recognized Indian tribal government that performs law enforcement functions (as determined by the Secretary of the Interior). A unit of local government also may be any law enforcement district or judicial enforcement district established under applicable state law with authority to independently establish a budget and impose taxes.

**What an Application Should Include:**

_____ Application for Federal Assistance (SF-424)                              (see page 19)
_____ Intergovernmental Review                                                (see page 19)
_____ Project Identifiers                                                     (see page 19)
_____ Program Narrative                                                       (see page 20)
_____ Budget Detail Worksheet                                                 (see page 21)
_____ Budget Narrative                                                        (see page 22)
_____ Indirect Cost Rate Agreement (if applicable)                            (see page 25)
_____ Tribal Authorizing Resolution (if applicable)                           (see page 26)
_____ Financial Management and System of Internal Controls Questionnaire      (see page 26)
_____ Disclosure of Lobbying Activities (SF-LLL) (if applicable)              (see page 27)
_____ Certifications and Assurances by Chief Executive                        (see page 27)
_____ Certification of Compliance with 8 U.S.C. § 1373 by Chief Legal Officer (Note: this requirement does not apply to Indian tribal governments.)                     (see page 27)
_____ OJP Certified Standard Assurances                                       (see pages 39–44)
          Additional Attachments
    _____ Applicant Disclosure of Pending Applications                        (see page 28)
    _____ Research and Evaluation Independence and Integrity (if applicable)  (see page 29)

Decl. of Nordeen
Exhibit 4, Page 57 of 57




BJA FY 18 Edward Byrne Memorial Justice Assistance Grant
(JAG) Program - Local Solicitation  2018-H4206-OR-DJ

Application          Correspondence          Application: [ Switch to ...          ▼ ]

**Application Handbook**                          **Overview**

Overview

Applicant
Information

Project Information

Budget and
Program
Attachments

Assurances and
Certifications

Review SF 424

Submit Application

Help/Frequently
Asked Questions

GMS Home

Log Off

This handbook allows you to complete the application process for applying to the
BJA FY 18 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - Local
Solicitation. At the end of the application process you will have the opportunity to
view and print the SF-424 form.

| *Type of Submission | ○ Application Construction ○ Preapplication Construction ◉ Application Non-Construction ○ Preapplication Non-Construction |
| *Type of Application | [ New ▼ ] |
| | If Revision, select appropriate option [ Type of Revision ▼ ] |
| | If Other, specify [ ] |
| *Is application subject to review by state executive order 12372 process? | ○ Yes  This preapplication/application was made available to the state executive order 12372 process for review on [ ▼ ] [ ▼ ] [ ▼ ] |
| | ○ No  Program is not covered by E.O. 12372 |
| | ◉ N/A  Program has not been selected by state for review |

[ Save and Continue ]

Decl. of Nordeen
Exhibit 5, Page 1 of 38

8/22/2018

BJA FY 18 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - Local Solicitation



**BJA FY 18 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - Local Solicitation**  2018-H4206-OR-DJ



Application          Correspondence          Application: [Switch to ...          ▼]

**Application Handbook**                    **Applicant Information**

Overview                Verify that the following information filled is correct and fill out any missing
                        information. To save changes, click on the "Save and Continue" button.
Applicant
Information              \* - Indicates required field

Project Information

Budget and
Program
Attachments

Assurances and
Certifications

Review SF 424

Submit Application

Help/Frequently
Asked Questions

GMS Home

Log Off

| | |
|---|---|
| \*Is the applicant delinquent on any federal debt? (If Yes is selected, please upload an explanation) | ○ Yes  ⦿ No |
| \*Employer Identification Number (EIN) | 93 - 6002236 |
| \*Type of Applicant | Municipal ▼ |
| Type of Applicant (Other): | |
| \*Organizational Unit | Portland Police Bureau |
| \*Legal Name (Legal Jurisdiction Name) | City of Portland, Oregon |
| \*Vendor Address 1 | 1120 SW Fifth Ave., Room 1; |
| Vendor Address 2 | |
| \*Vendor City | Portland |
| Vendor County/Parish | Multnomah |
| \*Vendor State | Oregon ▼ |
| \*Vendor ZIP | 97204 - 1912  Zip+4 Lookup |
| **Please provide Point of Contact Information for matters involving this application** | |
| \*Contact Prefix: | Mr. ▼ |
| Contact Prefix (Other): | |
| \*Contact First Name: | Michael |
| Contact Middle Initial: | |
| \*Contact Last Name: | Clark |
| Contact Suffix: | Select a Suffix ▼ |
| Contact Suffix (Other) : | |

Decl. of Nordeen
Exhibit 5, Page 2 of 38

| | |
|---|---|
| *Contact Title: | Financial Analyst |
| *Contact Address Line 1: | 1120 SW 5th Ave., Room 1250 |
| Contact Address Line 2: | |
| *Contact City | Portland |
| Contact County: | Multnomah |
| *Contact State: | Oregon ▼ |
| *Contact Zip Code: | 97204 - 1912    Zip+4 Lookup |
| *Contact Phone Number: | 503   823   6862   Ext: |
| Contact Fax Number: | |
| *Contact E-mail Address: | michael.clark@portlandoregon.gov    Email Help |

Save and Continue

 BJA FY 18 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - Local Solicitation 2018-H4206-OR-DJ 

Application          Correspondence          Application: Switch to ... ▼

| Application Handbook | Project Information |
|---|---|

Overview

Applicant Information

Project Information

Budget and Program Attachments

Assurances and Certifications

Review SF 424

Submit Application

Help/Frequently Asked Questions

GMS Home

Log Off

**Descriptive Title of Applicant's Project**
2018 Portland Metropolitan Area Law Enforcement Community Justice Assistance Grant (JAG) Program

**Areas Affected by Project**
The cities of Portland and Gresham and the counties of Multnomah, Washington and Clackamas

Proposed Project

| | | |
|---|---|---|
| | *Start Date | October ▼  01 ▼  2018 ▼ |
| | *End Date | September ▼  30 ▼  2021 ▼ |

*Congressional Districts of

| | Project | Congressional District 01, OR<br>Congressional District 02, OR<br>Congressional District 03, OR<br>Congressional District 04, OR |
|---|---|---|

**Estimated Funding**

| | | |
|---|---|---|
| Federal | $ 391694 | .00 |
| Applicant | $ 0 | .00 |
| State | $ 0 | .00 |
| Local | $ 0 | .00 |
| Other | $ 0 | .00 |
| Program Income | $ 0 | .00 |
| TOTAL | $ 391694 | .00 |

Save and Continue

Decl. of Nordeen
Exhibit 5, Page 4 of 38

 BJA FY 18 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - Local Solicitation  2018-H4206-OR-DJ 

Application          Correspondence          Application: [ Switch to ... ▾ ]

**Application Handbook**

Overview

Applicant Information

Project Information

Budget and Program Attachments

Assurances and Certifications

Review SF 424

Submit Application

Help/Frequently Asked Questions

GMS Home

Log Off

## Assurances and Certifications

To the best of my knowledge and belief, all data in this application/preapplication is true and correct, the document has been duly authorized by the governing body of the applicant and the applicant will comply with the attached assurances if the assistance is awarded.

Your typed name, in lieu of your signature represents your legal binding acceptance of the terms of this application and your statement of the veracity of the representations made in this application. The document has been duly authorized by the governing body of the applicant and the applicant will comply with the following:

1. Assurances
2. Certifications Regarding Lobbying; Debarment, Suspension and Other Responsibility Matters; and Drug-Free Workplace requirements.

If you are an applicant for any Violence Against Women grants, this includes the Certification of Compliance with the Statutory Eligibility Requirements of the Violence Against Women Act.

\* - Indicates required field

| | |
|---|---|
| *Prefix: | [ Mr. ▾ ] |
| Prefix (Other): | [ ] |
| *First Name: | Ted |
| Middle Initial: | [ ] |
| *Last Name: | Wheeler |
| Suffix: | [ Suffix: ▾ ] |
| Suffix (Other): | [ ] |
| *Title: | Mayor |
| *Address Line 1: | 1120 SW Fifth Ave., Room 1250 |
| Address Line 2: | [ ] |
| *City: | Portland |
| County: | Multnomah |
| *State: | [ Oregon ▾ ] |
| *Zip Code: | 97204 - 1912  Zip+4 Lookup |
| *Phone: | 503 - 823 - 4120  Ext : [ ] |
| Fax: | [ ] - [ ] - [ ] |
| *E-mail: | mayorwheeler@portlandoreg  Email Help |

Decl. of Nordeen
Exhibit 5, Page 5 of 38

* ☑  I have examined the information provided here regarding the signing authority and certify it is accurate. I am the signing authority, or have been delegated or designated formally as the signing authority by the appropriate authority of official, to provide the information requested throughout this application system on behalf of this jurisdiction. Information regarding the signing authority, or the delegation of such authority, has been placed in a file and is available on-site for immediate review.

Save and Continue

8/22/18

Ted Wheeler, Mayor

Decl. of Nordeen
Exhibit 5, Page 6 of 38



OMB APPROVAL
NUMBER 1121-0140

EXPIRES 05/31/2019

**U.S. DEPARTMENT OF JUSTICE**

**CERTIFIED STANDARD ASSURANCES**

On behalf of the Applicant, and in support of this application for a grant or cooperative agreement, I certify under penalty of perjury to the U.S. Department of Justice ("Department"), that all of the following are true and correct:

(1) I have the authority to make the following representations on behalf of myself and the Applicant. I understand that these representations will be relied upon as material in any Department decision to make an award to the Applicant based on its application.

(2) I certify that the Applicant has the legal authority to apply for the federal assistance sought by the application, and that it has the institutional, managerial, and financial capability (including funds sufficient to pay any required non-federal share of project costs) to plan, manage, and complete the project described in the application properly.

(3) I assure that, throughout the period of performance for the award (if any) made by the Department based on the application--

    a. the Applicant will comply with all award requirements and all federal statutes and regulations applicable to the award;

    b. the Applicant will require all subrecipients to comply with all applicable award requirements and all applicable federal statutes and regulations; and

    c. the Applicant will maintain safeguards to address and prevent any organizational conflict of interest, and also to prohibit employees from using their positions in any manner that poses, or appears to pose, a personal or financial conflict of interest.

(4) The Applicant understands that the federal statutes and regulations applicable to the award (if any) made by the Department based on the application specifically include statutes and regulations pertaining to civil rights and nondiscrimination, and, in addition--

    a. the Applicant understands that the applicable statutes pertaining to civil rights will include section 601 of the Civil Rights Act of 1964 (42 U.S.C. § 2000d); section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794); section 901 of the Education Amendments of 1972 (20 U.S.C. § 1681); and section 303 of the Age Discrimination Act of 1975 (42 U.S.C. § 6102);

    b. the Applicant understands that the applicable statutes pertaining to nondiscrimination may include section 809(c) of Title I of the Omnibus Crime Control and Safe Streets Act of 1968 (34 U.S.C. § 10228(c)); section 1407(e) of the Victims of Crime Act of 1984 (34 U.S.C. § 20110(e)); section 299A(b) of the Juvenile Justice and Delinquency Prevention Act of 2002 (34 U.S.C. § 11182(b)); and that the grant condition set out at section 40002(b)(13) of the Violence Against Women Act (34 U.S.C. § 12291(b)(13)), which will apply to all awards made by the Office on Violence Against Women, also may apply to an award made otherwise;

    c.  the Applicant understands that it must require any subrecipient to comply with all such applicable statutes (and associated regulations); and

    d.  on behalf of the Applicant, I make the specific assurances set out in 28 C.F.R. §§ 42.105 and 42.204.

(5) The Applicant also understands that (in addition to any applicable program-specific regulations and to applicable federal regulations that pertain to civil rights and nondiscrimination) the federal regulations applicable to the award (if any) made by the Department based on the application may include, but are not limited to, 2 C.F.R. Part 2800 (the DOJ "Part 200 Uniform Requirements") and 28 C.F.R. Parts 22 (confidentiality - research and statistical information), 23 (criminal intelligence systems), 38 (regarding faith-based or religious organizations participating in federal financial assistance programs), and 46 (human subjects protection).

(6) I assure that the Applicant will assist the Department as necessary (and will require subrecipients and contractors to assist as necessary) with the Department's compliance with section 106 of the National Historic Preservation Act of 1966 (54 U.S.C. § 306108), the Archeological and Historical Preservation Act of 1974 (54 U.S.C. §§ 312501-312508), and the National Environmental Policy Act of 1969 (42 U.S.C. §§ 4321-4335), and 28 C.F.R. Parts 61 (NEPA) and 63 (floodplains and wetlands).

(7) I assure that the Applicant will give the Department and the Government Accountability Office, through any authorized representative, access to, and opportunity to examine, all paper or electronic records related to the award (if any) made by the Department based on the application.

(8) I assure that, if the Applicant is a governmental entity, with respect to the award (if any) made by the Department based on the application--

    a.  it will comply with the requirements of the Uniform Relocation Assistance and Real Property Acquisitions Act of 1970 (42 U.S.C. §§ 4601-4655), which govern the treatment of persons displaced as a result of federal and federally-assisted programs; and

    b.  it will comply with requirements of 5 U.S.C. §§ 1501-1508 and 7324-7328, which limit certain political activities of State or local government employees whose principal employment is in connection with an activity financed in whole or in part by federal assistance.

(9) If the Applicant applies for and receives an award from the Office of Community Oriented Policing Services (COPS Office), I assure that as required by 34 U.S.C. § 10382(c)(11), it will, to the extent practicable and consistent with applicable law--including, but not limited to, the Indian Self-Determination and Education Assistance Act--seek, recruit, and hire qualified members of racial and ethnic minority groups and qualified women in order to further effective law enforcement by increasing their ranks within the sworn positions, as provided under 34 U.S.C. § 10382(c)(11).

I acknowledge that a materially false, fictitious, or fraudulent statement (or concealment or omission of a material fact) in this certification, or in the application that it supports, may be the subject of criminal prosecution (including under 18 U.S.C. §§ 1001 and/or 1621, and/or 34 U.S.C. §§ 10271-10273), and also may subject me and the Applicant to civil penalties and administrative remedies for false claims or otherwise (including under 31 U.S.C. §§ 3729-3730 and 3801-3812). I also acknowledge that the Department's awards, including certifications provided in connection with such awards, are subject to review by the Department, including by its Office of the Inspector General.

8/22/18

_____
Ted Wheeler, Mayor

**U.S. DEPARTMENT OF JUSTICE**

**CERTIFICATIONS REGARDING LOBBYING; DEBARMENT, SUSPENSION AND OTHER RESPONSIBILITY MATTERS; AND DRUG-FREE WORKPLACE REQUIREMENTS**

**Applicants should refer to the regulations cited below to determine the certification to which they are required to attest. Applicants should also review the instructions for certification included in the regulations before completing this form. The certifications shall be treated as a material representation of fact upon which reliance will be placed when the U.S. Department of Justice ("Department") determines to award the covered transaction, grant, or cooperative agreement.**

**1. LOBBYING**

**As required by 31 U.S.C. § 1352, as implemented by 28 C.F.R. Part 69, the Applicant certifies and assures (to the extent applicable) the following:**

**(a) No Federal appropriated funds have been paid or will be paid, by or on behalf of the Applicant, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the making of any Federal grant, the entering into of any cooperative agreement, or the extension, continuation, renewal, amendment, or modification of any Federal grant or cooperative agreement;**

**(b) If the Applicant's request for Federal funds is in excess of $100,000, and any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a member of Congress, an officer or employee of Congress, or an employee of a member of Congress in connection with this Federal grant or cooperative agreement, the Applicant shall complete and submit Standard Form - LLL, "Disclosure of Lobbying Activities" in accordance with its (and any DOJ awarding agency's) instructions; and**

**(c) The Applicant shall require that the language of this certification be included in the award documents for all subgrants and procurement contracts (and their subcontracts) funded with Federal award funds and shall ensure that any certifications or lobbying disclosures required of recipients of such subgrants and procurement contracts (or their subcontractors) are made and filed in accordance with 31 U.S.C. § 1352.**

**2. DEBARMENT, SUSPENSION, AND OTHER RESPONSIBILITY MATTERS**

**A. Pursuant to Department regulations on nonprocurement debarment and suspension implemented at 2 C.F.R. Part 2867, and to other related requirements, the Applicant certifies, with respect to prospective participants in a primary tier "covered transaction", as defined at 2 C.F.R. § 2867.20(a), that neither it nor any of its principals--**

**(a) is presently debarred, suspended, proposed for debarment, declared ineligible, sentenced to a denial of Federal benefits by a State or Federal court, or voluntarily excluded from covered transactions by any Federal department or agency;**

**(b) has within a three-year period preceding this application been convicted of a felony criminal violation under any Federal law, or been convicted or had a civil judgment rendered against it for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (Federal, State, tribal, or local) transaction or private agreement or transaction;**

(c) is presently indicted for or otherwise criminally or civilly charged by a governmental entity (Federal, State, tribal, or local) with commission of any of the offenses enumerated in paragraph (b) of this certification; and/or

(d) has within a three-year period preceding this application had one or more public transactions (Federal, State, tribal, or local) terminated for cause or default.

B. Where the Applicant is unable to certify to any of the statements in this certification, it shall attach an explanation to this application. Where the Applicant or any of its principals was convicted, within a three-year period preceding this application, of a felony criminal violation under any Federal law, the Applicant also must disclose such felony criminal conviction in writing to the Department (for OJP Applicants, to OJP at Ojpcompliancereporting@usdoj.gov; for OVW Applicants, to OVW at OVW.GFMD@usdoj.gov; or for COPS Applicants, to COPS at AskCOPSRC@usdoj.gov), unless such disclosure has already been made.

## 3. FEDERAL TAXES

A. If the Applicant is a corporation, it certifies either that (1) the corporation has no unpaid Federal tax liability that has been assessed, for which all judicial and administrative remedies have been exhausted or have lapsed, that is not being paid in a timely manner pursuant to an agreement with the authority responsible for collecting the tax liability, or (2) the corporation has provided written notice of such an unpaid tax liability (or liabilities) to the Department (for OJP Applicants, to OJP at Ojpcompliancereporting@usdoj.gov; for OVW Applicants, to OVW at OVW.GFMD@usdoj.gov; or for COPS Applicants, to COPS at AskCOPSRC@usdoj.gov).

B. Where the Applicant is unable to certify to any of the statements in this certification, it shall attach an explanation to this application.

## 4. DRUG-FREE WORKPLACE (GRANTEES OTHER THAN INDIVIDUALS)

As required by the Drug-Free Workplace Act of 1988, as implemented at 28 C.F.R. Part 83, Subpart F, for grantees, as defined at 28 C.F.R. §§ 83.620 and 83.650:

A. The Applicant certifies and assures that it will, or will continue to, provide a drug-free workplace by--

(a) Publishing a statement notifying employees that the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance is prohibited in its workplace and specifying the actions that will be taken against employees for violation of such prohibition;

(b) Establishing an on-going drug-free awareness program to inform employees about--

(1) The dangers of drug abuse in the workplace;

(2) The Applicant's policy of maintaining a drug-free workplace;

(3) Any available drug counseling, rehabilitation, and employee assistance programs; and

(4) The penalties that may be imposed upon employees for drug abuse violations occurring in the workplace;

(c) Making it a requirement that each employee to be engaged in the performance of the award be given a copy of the statement required by paragraph (a);

**(d)** Notifying the employee in the statement required by paragraph (a) that, as a condition of employment under the award, the employee will--

**(1)** Abide by the terms of the statement; and

**(2)** Notify the employer in writing of the employee's conviction for a violation of a criminal drug statute occurring in the workplace no later than five calendar days after such conviction;

**(e)** Notifying the Department, in writing, within 10 calendar days after receiving notice under subparagraph (d)(2) from an employee or otherwise receiving actual notice of such conviction. Employers of convicted employees must provide notice, including position title of any such convicted employee to the Department, as follows:

For COPS award recipients - COPS Office, 145 N Street, NE, Washington, DC, 20530;

For OJP and OVW award recipients - U.S. Department of Justice, Office of Justice Programs, ATTN: Control Desk, 810 7th Street, N.W., Washington, D.C. 20531.

Notice shall include the identification number(s) of each affected award;

**(f)** Taking one of the following actions, within 30 calendar days of receiving notice under subparagraph (d)(2), with respect to any employee who is so convicted:

**(1)** Taking appropriate personnel action against such an employee, up to and including termination, consistent with the requirements of the Rehabilitation Act of 1973, as amended; or

**(2)** Requiring such employee to participate satisfactorily in a drug abuse assistance or rehabilitation program approved for such purposes by a Federal, State, or local health, law enforcement, or other appropriate agency; and

**(g)** Making a good faith effort to continue to maintain a drug-free workplace through implementation of paragraphs (a), (b), (c), (d), (e), and (f).

**5. COORDINATION REQUIRED UNDER PUBLIC SAFETY AND COMMUNITY POLICING PROGRAMS**

As required by the Public Safety Partnership and Community Policing Act of 1994, at 34 U.S.C. § 10382(c)(5), if this application is for a COPS award, the Applicant certifies that there has been appropriate coordination with all agencies that may be affected by its award. Affected agencies may include, among others, Offices of the United States Attorneys; State, local, or tribal prosecutors; or correctional agencies.

I acknowledge that a materially false, fictitious, or fraudulent statement (or concealment or omission of a material fact) in this certification, or in the application that it supports, may be the subject of criminal prosecution (including under 18 U.S.C. §§ 1001 and/or 1621, and/or 34 U.S.C. §§ 10271-10273), and also may subject me and the Applicant to civil penalties and administrative remedies for false claims or otherwise (including under 31 U.S.C. §§ 3729-3730 and 3801-3812). I also acknowledge that the Department's awards, including certifications provided in connection with such awards, are subject to review by the Department, including by its Office of the Inspector General.

_8/22/18_

Ted Wheeler, Mayor



U.S. DEPARTMENT OF JUSTICE
OFFICE OF JUSTICE PROGRAMS

Approved: OMB No. 1121-0329
Expires 11/30/2020

**Background**

Recipients' financial management systems and internal controls must meet certain requirements, including those set out in the "Part 200 Uniform Requirements" (2.C.F.R. Part 2800).

Including at a minimum, the financial management system of each OJP award recipient must provide for the following:

(1) Identification, in its accounts, of all Federal awards received and expended and the Federal programs under which they were received. Federal program and Federal award identification must include, as applicable, the CFDA title and number, Federal award identification number and year, and the name of the Federal agency.

(2) Accurate, current, and complete disclosure of the financial results of each Federal award or program.

(3) Records that identify adequately the source and application of funds for Federally-funded activities. These records must contain information pertaining to Federal awards, authorizations, obligations, unobligated balances, assets, expenditures, income, and interest, and be supported by source documentation.

(4) Effective control over, and accountability for, all funds, property, and other assets. The recipient must adequately safeguard all assets and assure that they are used solely for authorized purposes.

(5) Comparison of expenditures with budget amounts for each Federal award.

(6) Written procedures to document the receipt and disbursement of Federal funds including procedures to minimize the time elapsing between the transfer of funds from the United States Treasury and the disbursement by the OJP recipient.

(7) Written procedures for determining the allowability of costs in accordance with both the terms and conditions of the Federal award and the cost principles to apply to the Federal award.

(8) Other important requirements related to retention requirements for records, use of open and machine readable formats in records, and certain Federal rights of access to award-related records and recipient personnel.

**1. Name of Organization and Address:**

| | |
|---|---|
| Organization Name: | City of Portland |
| Street1: | 1120 SW Fifth Avenue, Room 1250 |
| Street2: | |
| City: | Portland |
| State: | OREGON |
| Zip Code: | 97204 |

**2. Authorized Representative's Name and Title:**

Prefix: Mr.   First Name: Ted      Middle Name:

Last Name: Wheeler      Suffix:

Title: Mayor

3. Phone: (503) 823-4120      4. Fax:

5. Email: MayorWheeler@portlandoregon.gov

| 6. Year Established: | 7. Employer Identification Number (EIN): | 8. DUNS Number: |
|---|---|---|
| | 936002236 | 549711970000 |

9. a) Is the applicant entity a nonprofit organization (including a nonprofit institution of higher education) as described in 26 U.S.C. 501(c)(3) and exempt from taxation under 26 U.S.C. 501(a)? ☐ Yes ☑ No

If "No" skip to Question 10.
If "Yes", complete Questions 9. b) and 9. c).



U.S. DEPARTMENT OF JUSTICE
OFFICE OF JUSTICE PROGRAMS

Approved: OMB No. 1121-0329
Expires 11/30/2020

## AUDIT INFORMATION

| 9. b) Does the applicant nonprofit organization maintain offshore accounts for the purpose of avoiding paying the tax described in 26 U.S.C. 511(a)? | ☐ Yes  ☐ No |
|---|---|
| 9. c) With respect to the most recent year in which the applicant nonprofit organization was required to file a tax return, does the applicant nonprofit organization believe (or assert) that it satisfies the requirements of 26 C.F.R. 53.4958-6 (which relate to the reasonableness of compensation of certain individuals)?<br><br>If "Yes", refer to "Additional Attachments" under "What An Application Should Include" in the OJP solicitation (or application guidance) under which the applicant is submitting its application. If the solicitation/guidance describes the "Disclosure of Process related to Executive Compensation," the applicant nonprofit organization must provide -- as an attachment to its application -- a disclosure that satisfies the minimum requirements as described by OJP. | ☐ Yes  ☐ No |

For purposes of this questionnaire, an "audit" is conducted by an independent, external auditor using generally accepted auditing standards (GAAS) or Generally Governmental Auditing Standards (GAGAS), and results in an audit report with an opinion.

10. Has the applicant entity undergone any of the following types of audit(s)(Please check all that apply):

☑ "Single Audit" under OMB A-133 or Subpart F of 2 C.F.R. Part 200
☑ Financial Statement Audit
☐ Defense Contract Agency Audit (DCAA)
☑ Other Audit & Agency (list type of audit):

BJA Enhanced Programmatic Desk Review & OIG Capacity Audit

☐ None (if none, skip to question 13)

| 11. Most Recent Audit Report Issued: | ☑ Within the last 12 months | ☐ Within the last 2 years | ☐ Over 2 years ago | ☐ N/A |
|---|---|---|---|---|

Name of Audit Agency/Firm:  Moss Adams

### AUDITOR'S OPINION

| 12. On the most recent audit, what was the auditor's opinion? | | | |
|---|---|---|---|
| ☑ Unqualified Opinion | ☐ Qualified Opinion | ☐ Disclaimer, Going Concern or Adverse Opinions | ☐ N/A: No audits as described above |

Enter the number of findings (if none, enter "0"): 0
Enter the dollar amount of questioned costs (if none, enter "$0"): $ 0

| Were material weaknesses noted in the report or opinion? | ☐ Yes  ☑ No |
|---|---|

13. Which of the following best describes the applicant entity's accounting system:
☐ Manual    ☑ Automated    ☐ Combination of manual and automated

| 14. Does the applicant entity's accounting system have the capability to identify the receipt and expenditure of award funds separately for each Federal award? | ☑ Yes  ☐ No  ☐ Not Sure |
|---|---|
| 15. Does the applicant entity's accounting system have the capability to record expenditures for each Federal award by the budget cost categories shown in the approved budget? | ☑ Yes  ☐ No  ☐ Not Sure |
| 16. Does the applicant entity's accounting system have the capability to record cost sharing ("match") separately for each Federal award, and maintain documentation to support recorded match or cost share? | ☑ Yes  ☐ No  ☐ Not Sure |

U.S. DEPARTMENT OF JUSTICE
OFFICE OF JUSTICE PROGRAMS

Approved: OMB No. 1121-0329
Expires 111/30/2020

| | |
|---|---|
| 17. Does the applicant entity's accounting system have the capability to accurately track employees actual time spent performing work for each federal award, and to accurately allocate charges for employee salaries and wages for each federal award, and maintain records to support the actual time spent and specific allocation of charges associated with each applicant employee? | ☒ Yes   ☐ No   ☐ Not Sure |
| 18. Does the applicant entity's accounting system include budgetary controls to preclude the applicant entity from incurring obligations or costs that exceed the amount of funds available under a federal award (the total amount of the award, as well as the amount available in each budget cost category)? | ☒ Yes   ☐ No   ☐ Not Sure |
| 19. Is applicant entity familiar with the "cost principles" that apply to recent and future federal awards, including the general and specific principles set out in 2 C.F.R  Part 200? | ☒ Yes   ☐ No   ☐ Not Sure |

## PROPERTY STANDARDS AND PROCUREMENT STANDARDS

| | |
|---|---|
| 20. Does the applicant entity's property management system(s) maintain the following information on property purchased with federal award funds (1) a description of the property; (2) an identification number; (3) the source of funding for the property, including the award number; (4) who holds title; (5) acquisition date; (6) acquisition cost; (7) federal share of the acquisition cost; (8) location and condition of the property; (9) ultimate disposition information? | ☒ Yes   ☐ No   ☐ Not Sure |
| 21. Does the applicant entity maintain written policies and procedures for procurement transactions that -- (1) are designed to avoid unnecessary or duplicative purchases; (2) provide for analysis of lease versus purchase alternatives; (3) set out a process for soliciting goods and services, and (4) include standards of conduct that address conflicts of interest? | ☒ Yes   ☐ No   ☐ Not Sure |
| 22. a) Are the applicant entity's procurement policies and procedures designed to ensure that procurements are conducted in a manner that provides full and open competition to the extent practicable, and to avoid practices that restrict competition? | ☒ Yes   ☐ No   ☐ Not Sure |
| 22. b) Do the applicant entity's procurement policies and procedures require documentation of the history of a procurement, including the rationale for the method of procurement, selection of contract type, selection or rejection of contractors, and basis for the contract price? | ☒ Yes   ☐ No   ☐ Not Sure |
| 23. Does the applicant entity have written policies and procedures designed to prevent the applicant entity from entering into a procurement contract under a federal award with any entity or individual that is suspended or debarred from such contracts, including provisions for checking the "Excluded Parties List" system (www.sam.gov) for suspended or debarred sub-grantees and contractors, prior to award? | ☒ Yes   ☐ No   ☐ Not Sure |

## TRAVEL POLICY

| | |
|---|---|
| 24. Does the applicant entity: | |
| (a) maintain a standard travel policy?         ☒ Yes   ☐ No | |
| (b) adhere to the Federal Travel Regulation (FTR)?   ☒ Yes   ☐ No | |

## SUBRECIPIENT MANAGEMENT AND MONITORING

| | |
|---|---|
| 25. Does the applicant entity have written policies, procedures, and/or guidance designed to ensure that any subawards made by the applicant entity under a federal award -- (1) clearly document applicable federal requirements, (2) are appropriately monitored by the applicant, and (3) comply with the requirements in 2 CFR Part 200 (see 2 CFR 200.331)? | ☒ Yes   ☐ No   ☐ Not Sure<br><br>☐ N/A - Applicant does not make subawards under any OJP awards |

**U.S. DEPARTMENT OF JUSTICE**
**OFFICE OF JUSTICE PROGRAMS**

Approved: OMB No. 1121-0329
Expires 11/30/2020

| | |
|---|---|
| 26. Is the applicant entity aware of the differences between subawards under federal awards and procurement contracts under federal awards, including the different roles and responsibilities associated with each? | [x] Yes ☐ No ☐ Not Sure<br>☐ N/A - Applicant does not make subawards under any OJP awards |
| 27. Does the applicant entity have written policies and procedures designed to prevent the applicant entity from making a subaward under a federal award to any entity or individual is suspended or debarred from such subawards? | [x] Yes ☐ No ☐ Not Sure<br>☐ N/A - Applicant does not make subawards under any OJP awards |

**DESIGNATION AS 'HIGH-RISK' BY OTHER FEDERAL AGENCIES**

28. Is the applicant entity designated "high risk" by a federal grant-making agency outside of DOJ?  (High risk includes any status under which a federal awarding agency provides additional oversight due to the applicant's past performance, or other programmatic or financial concerns with the applicant.)

☐ Yes [x] No ☐ Not Sure

If "Yes", provide the following:

(a) Name(s) of the federal awarding agency:

(b) Date(s) the agency notified the applicant entity of the "high risk" designation:

(c) Contact information for the "high risk" point of contact at the federal agency:

Name:

Phone:

Email:

(d) Reason for "high risk" status, as set out by the federal agency:

**CERTIFICATION ON BEHALF OF THE APPLICANT ENTITY**
(Must be made by the chief executive, executive director, chief financial officer, designated authorized representative ("AOR"), or other official with the requisite knowledge and authority)

On behalf of the applicant entity, I certify to the U.S. Department of Justice that the information provided above is complete and correct to the best of my knowledge.  I have the requisite authority and information to make this certification on behalf of the applicant entity.

Name: Ted Wheeler     Date: 2018-08-20

Title: ☐ Executive Director    ☐ Chief Financial Officer    ☐ Chairman

[x] Other: Mayor

Phone: (503) 823-4120

_Ted Wheeler_ (signature)     8/22/18

Ted Wheeler, Mayor

Page 4 of 4

## DISCLOSURE OF LOBBYING ACTIVITIES

Approved by OMB
0348-0046

Complete this form to disclose lobbying activities pursuant to 31 U.S.C. 1352
(See reverse for public burden disclosure.)

| 1. Type of Federal Action: | 2. Status of Federal Action: | 3. Report Type: |
|---|---|---|
| **b** a. contract<br>b. grant<br>c. cooperative agreement<br>d. loan<br>e. loan guarantee<br>f. loan insurance | **a** a. bid/offer/application<br>b. initial award<br>c. post-award | **a** a. initial filing<br>b. material change<br>**For Material Change Only:**<br>year _____ quarter _____<br>date of last report _____ |

| 4. Name and Address of Reporting Entity: | 5. If Reporting Entity in No. 4 is a Subawardee, Enter Name and Address of Prime: |
|---|---|
| ☑ Prime     ☐ Subawardee<br>Tier _____, *if known:*<br><br>City of Portland<br>1120 SW Fifth Ave., Room 1250<br>Portland, OR 97204-1912<br><br>**Congressional District,** *if known:* 1, 3, 5 | <br><br><br><br><br>**Congressional District,** *if known:* |

| 6. Federal Department/Agency: | 7. Federal Program Name/Description: |
|---|---|
| USDOJ, OJP, BJA | Edward Byrne Memorial Justice Assistance Grant Program<br><br>CFDA Number, *if applicable:* 16.738 _____ |

| 8. Federal Action Number, *if known:* | 9. Award Amount, *if known:* |
|---|---|
| FY 2018 Local Solicitation | $ |

| 10. a. Name and Address of Lobbying Registrant<br>(*if individual. last name. first name. MI*): | b. Individuals Performing Services (*including address if different from No. 10a*)<br>(*last name. first name, MI*): |
|---|---|
| Squire Patton Boggs (USA) LLP<br>2550 M Street Northwest<br>Washington, D.C. 20037 | Cram, M., Victoria |

| 11. | Information requested through this form is authorized by title 31 U.S.C. section 1352. This disclosure of lobbying activities is a material representation of fact upon which reliance was placed by the tier above when this transaction was made or entered into. This disclosure is required pursuant to 31 U.S.C. 1352. This information will be reported to the Congress semi-annually and will be available for public inspection. Any person who fails to file the required disclosure shall be subject to a civil penalty of not less that $10,000 and not more than $100,000 for each such failure. | Signature: _____ 8/22/18 |
|---|---|---|
| | | Print Name: Ted Wheeler |
| | | Title: Mayor |
| | | Telephone No.: (503) 823-4120     Date: 8/20/2018 |

| Federal Use Only: | Authorized for Local Reproduction<br>Standard Form LLL (Rev. 7-97) |
|---|---|

## INSTRUCTIONS FOR COMPLETION OF SF-LLL, DISCLOSURE OF LOBBYING ACTIVITIES

This disclosure form shall be completed by the reporting entity, whether subawardee or prime Federal recipient, at the initiation or receipt of a covered Federal action, or a material change to a previous filing, pursuant to title 31 U.S.C. section 1352. The filing of a form is required for each payment or agreement to make payment to any lobbying entity for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with a covered Federal action. Complete all items that apply for both the initial filing and material change report. Refer to the implementing guidance published by the Office of Management and Budget for additional information.

1. Identify the type of covered Federal action for which lobbying activity is and/or has been secured to influence the outcome of a covered Federal action.

2. Identify the status of the covered Federal action.

3. Identify the appropriate classification of this report. If this is a followup report caused by a material change to the information previously reported, enter the year and quarter in which the change occurred. Enter the date of the last previously submitted report by this reporting entity for this covered Federal action.

4. Enter the full name, address, city, State and zip code of the reporting entity. Include Congressional District, if known. Check the appropriate classification of the reporting entity that designates if it is, or expects to be, a prime or subaward recipient. Identify the tier of the subawardee, e.g., the first subawardee of the prime is the 1st tier. Subawards include but are not limited to subcontracts, subgrants and contract awards under grants.

5. If the organization filing the report in item 4 checks "Subawardee," then enter the full name, address, city, State and zip code of the prime Federal recipient. Include Congressional District, if known.

6. Enter the name of the Federal agency making the award or loan commitment. Include at least one organizational level below agency name, if known. For example, Department of Transportation, United States Coast Guard.

7. Enter the Federal program name or description for the covered Federal action (item 1). If known, enter the full Catalog of Federal Domestic Assistance (CFDA) number for grants, cooperative agreements, loans, and loan commitments.

8. Enter the most appropriate Federal identifying number available for the Federal action identified in item 1 (e.g., Request for Proposal (RFP) number; Invitation for Bid (IFB) number; grant announcement number; the contract, grant, or loan award number; the application/proposal control number assigned by the Federal agency). Include prefixes, e.g., "RFP-DE-90-001."

9. For a covered Federal action where there has been an award or loan commitment by the Federal agency, enter the Federal amount of the award/loan commitment for the prime entity identified in item 4 or 5.

10. (a) Enter the full name, address, city, State and zip code of the lobbying registrant under the Lobbying Disclosure Act of 1995 engaged by the reporting entity identified in item 4 to influence the covered Federal action.

    (b) Enter the full names of the individual(s) performing services, and include full address if different from 10 (a). Enter Last Name, First Name, and Middle Initial (MI).

11. The certifying official shall sign and date the form, print his/her name, title, and telephone number.

According to the Paperwork Reduction Act, as amended, no persons are required to respond to a collection of information unless it displays a valid OMB Control Number. The valid OMB control number for this information collection is OMB No. 0348-0046. Public reporting burden for this collection of information is estimated to average 10 minutes per response, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding the burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Office of Management and Budget, Paperwork Reduction Project (0348-0046), Washington, DC 20503.

U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Assistance
Edward Byrne Memorial Justice Assistance Grant (JAG) Program:
FY 2018 Local Solicitation; #BJA-2018-13626
City of Portland, Oregon Police Bureau
Project Identifiers
Application Attachment 1

---

Applicant name:     City of Portland, Oregon
Disparate partners:     Multnomah County, Oregon
                                      City of Gresham, Oregon

Project title:  Edward Byrne Memorial Justice Assistance Grant (JAG) Program Fiscal Year 2018 Local Solicitation to assist the Portland-Metropolitan area law enforcement and criminal justice community to prevent and reduce crime and violence.

Project Identifiers:

1.  City of Portland Police Bureau – Computer Software/Hardware, Data Sharing Linkage, Overtime, and Public Engagement

2.  Multnomah County Office of District Attorney – Prosecution and Public Engagement

3.  City of Gresham Police Department – Education and Overtime

The City of Portland will act as fiscal agent for the grant and distribute funds to the units of local government (subawards) identified in the disparate certification.  Each listed partner has agreed to the allocation of grant funding.

Decl. of Nordeen
Exhibit 5, Page 18 of 38

U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Assistance
Edward Byrne Memorial Justice Assistance Grant (JAG) Program:
FY 2018 Local Solicitation; #BJA-2018-13626
City of Portland, Oregon Police Bureau
Program Narrative
Application Attachment 2

---

**City of Portland Police Bureau Programs**

*Identifiers:   Computer Software/Hardware, Data Sharing Linkage, Overtime, and Public Engagement*

<u>Bicycle Theft Prevention and Outreach</u>

The Portland Police Bureau has been a nationwide leader in bike theft prevention efforts since the creation of their Bicycle Theft Task Force (BTTF).  The proposed grant funded initiative will provide a 'best practice model' for other law enforcement agencies to follow.

Bike theft is currently one of Portland's most prolific crime segments.  Bike thieves target about 10,000 bicycles each year.  This equates to $10 million worth of property loss for the community each year.  The impacts are great, interfering with the bike-centric lifestyles of the community and placing lasting barriers to the city's goals of promoting alternative transportation.

Part of the solution revolves around community members registering their equipment and notifying the community and police when it is stolen.  Bike thieves fear the registered bike.  Bike registration acts as the single best deterrent to bike theft because it increases the thieves' liability and creates a barrier to selling the stolen goods to the public.  The BTTF refers the public to two open source bike registries, Bike Index and Project 529.  Utilizing these existing national public databases provides unmatched benefits that span jurisdictional boundaries.  These registries provide an incredibly successful return rate for police.  If a bicycle is registered and police come in contact with it, it will be returned to the rightful owner.  If the bicycle is not registered, the return rate is less than 10%.

Decl. of Nordeen
Exhibit 5, Page 19 of 38

U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Assistance
Edward Byrne Memorial Justice Assistance Grant (JAG) Program:
FY 2018 Local Solicitation; #BJA-2018-13626
City of Portland, Oregon Police Bureau
Program Narrative
Application Attachment 2

---

Bicycle registration is voluntary, which poses another challenge. Most citizens don't think to do it until it's too late. In the past four years, the BTTF has increasingly emphasized bike registration. They believe this is the only path forward to truly addressing bike theft proactively. Registration has always been the weakest link in fighting bike theft and needs to be prioritized in such a way as to saturate the market with registered bikes.

JAG 2018 grant funding will provide the first year of funding for this three-year initiative. The Bureau will seek additional grant funding for the second and third years. Benefits to this initiative include:

- Bike theft will decrease. This will save personnel hours processing stolen bike investigations. Members of the public will be saved the high financial loss of their property. These results are measurable and the program's effectiveness can easily be evaluated through tracked performance measures.

- Police will experience higher recovery and return rates after the bicycles are stolen. This will show greater legitimacy of police efforts. There are about 1,000 bikes that pass through PPB's Property and Evidence Division annually, most of which go unclaimed and face disposition.

- Intentional community interaction. The focus of this initiative is on community engagement and involvement. Bike theft is one of the unique crime categories that can truly only be combatted by harnessing the help of the community.

Decl. of Nordeen
Exhibit 5, Page 20 of 38

U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Assistance
Edward Byrne Memorial Justice Assistance Grant (JAG) Program:
FY 2018 Local Solicitation; #BJA-2018-13626
City of Portland, Oregon Police Bureau
Program Narrative
Application Attachment 2

---

This initiative will provide a 'best practice model' for other law enforcement agencies to follow. The City of Vancouver, Canada has demonstrated that three years is an ideal initial time frame. The goal is to register 100,000 bikes in the 36-month time frame. Until there is a culture that instinctively relies on bike registration, it will require personal engagement by police officers to explain the benefits and necessity of registration. Eighty percent of citizens have shown that they will register their bikes when given the opportunity to do so with on-the-spot assistance.

Grant funding will provide for BTTF overtime, participation in bicycle events to encourage on-the-spot registration, and registration kits for low income community members.

Regional Records Management Data Sharing Exchange

In the aftermath of multiple partner agencies leaving the Portland Police Bureau's regional records management system (RMS) program RegJIN, Portland decided to post a Request for Proposal (RFP) for a new records management system (RMS), as other agencies have done. Data sharing, however, remains an unresolved issue as regional agencies implement their own RMSs.

As difficulties with RegJIN partnerships mounted, the Chiefs of the 30-plus RegJIN agencies met to discuss the growing list of issues and possible solutions. The Chiefs valued the regional partnership because they appreciated the many potential benefits of sharing records data quickly and accurately among regional law enforcement agencies (LEAs). Despite any implementation difficulties, the promise of data sharing was frequently brought up as the prime reason for agencies to work together.

Portland's RegJIN team proposes building a digital exchange, known as a hub, for sharing records data. The hub will be separate from the RMS, and be designed for easy integration with

U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Assistance
Edward Byrne Memorial Justice Assistance Grant (JAG) Program:
FY 2018 Local Solicitation; #BJA-2018-13626
City of Portland, Oregon Police Bureau
Program Narrative
Application Attachment 2

---

any RMS an agency may choose. It would provide the ability for any agency participating in the hub to query records of all other participating LEAs. The hub would be pass-through only; it would not be a repository for agency's law enforcement data, but would rather pass one agency's records queries directly to other agencies' records systems, gather the results, and return them, without storing anything.

This solution would be designed to provide a simple yet effective means of sharing regional data among varied records systems. The system would present a well-documented, carefully designed, secure, and conservatively managed interface that agencies may confidently integrate knowing that it will be very stable. Providing a simple, stable interface will provide the additional benefit of low support, maintenance, and fixed costs. Specifically, attaining a low fixed cost for the system means that maintenance and support costs vary proportionally with the size of the membership, making the cost of the system more stable as member agencies join or leave.

There are three expected phases to this project. Phase 1 will be the research, budget formalization, and solicitation steps in accordance with 2 CFR 200 Uniform Guidance and City of Portland procurement policies. Phase 2 will produce a production ready data exchange in approximately 15-months. Phase 3 will involve working with interested regional partners to build connectivity to the hub. Participating agencies will work with their RMS vendors to integrate with the hub and be responsible for associated start-up costs.

The Bureau will seek additional grant funding for the future phases of the project.

Decl. of Nordeen
Exhibit 5, Page 22 of 38

U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Assistance
Edward Byrne Memorial Justice Assistance Grant (JAG) Program:
FY 2018 Local Solicitation; #BJA-2018-13626
City of Portland, Oregon Police Bureau
Program Narrative
Application Attachment 2

---

**Multnomah County District Attorney's Office**

*Identifiers:  Prosecution and Public Engagement*

The Multnomah County District Attorney's Office (MCDA) will fund approximately a 0.45 FTE Neighborhood Deputy District Attorney Level 2 (DDA) for 24-months.

The Neighborhood Deputy District Attorney (NDDA) program is unique to MCDA.  Each NDDA in Multnomah County is assigned to a specific City of Portland Police Bureau (PPB) Precinct.  These assignments include North, East, and Central Precincts, as well as the Gresham Police Department for the City of Gresham and the regional Transit Authority, TriMet.  The NDDA screens all "quality of life" misdemeanor cases, as well as select felonies of specific interest to their respective precinct.  Those cases deemed of particular import to the community are kept on the NDDA's caseload and personally handled in all stages of prosecution, from indictment to sentencing.  Additionally, the NDDA attends community meetings, including but not limited to: 1) Neighborhood association meetings; 2) private citizen group meetings; 3) business group meetings; 4) public safety counsel meetings; 5) city hall meetings; and 6) crime prevention meetings.  The NDDA also works closely with precinct officers to educate them on search and seizure issues, improve report writing, and develop strategies to address recurring quality of life problems.

The FY 2018 JAG funds will be applied towards a Neighborhood DDA position assigned to PPB's North Precinct.  This DDA will work with citizens, citizen groups, business owners, community associations, and law enforcement to identify crime issues pertinent to the community.  The DDA will assist these groups in maintaining the current crime reduction and prevention

U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Assistance
Edward Byrne Memorial Justice Assistance Grant (JAG) Program:
FY 2018 Local Solicitation; #BJA-2018-13626
City of Portland, Oregon Police Bureau
Program Narrative
Application Attachment 2

strategies, as well as help develop wholly new strategies viewed through the lens of improving residents' and business owners' quality of life.

The DDA works closely with PPB's Neighborhood Response Team (NRT) to address problems that directly impact citizens' quality of life. One example of this is problem drug houses. To problem solve these locations the DDA works collaboratively, utilizing a collective impact model involving the NRT team, the City Attorney's Office, and citizen groups. The consideration of different viewpoints allows the group to create unique solutions for these locations, some of which have plagued the community for years. The results have been apparent as certain persistent problem locations have been quieted or altogether eliminated.

The DDA also works with the PPB Burglary Task Force (BTF). This assignment represents an effort to reduce burglaries in North Precinct and to facilitate better prosecutions throughout the criminal justice system. The DDA regularly attends the BTF Roll Call in an effort to educate themselves about cases that are important to the community. The DDA is then "on call" to the BTF in the event legal questions arise during the course of an investigation or if assistance is needed to problem solve an issue with a specific case.

In recent years, the DDA has indicted aging cold cases with new DNA evidence, and resolved a 48-count burglary case involving close to 30 victims and affecting a huge swath of North Precinct. Because those cases involved a DDA, community meetings were attended by both neighbors and local public safety groups to educate them on the progress of the case. As a result, not only were the individuals responsible held accountable for their actions, but the community

U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Assistance
Edward Byrne Memorial Justice Assistance Grant (JAG) Program:
FY 2018 Local Solicitation; #BJA-2018-13626
City of Portland, Oregon Police Bureau
Program Narrative
Application Attachment 2

---

was involved in a manner that was not possible without a DDA heavily involved in the community efforts.

Additionally, the DDA assists in the writing and execution of search warrants. These consults cover everything from whether a search warrant is required, to strategies involving service of the warrant, and when additional evidence is needed for adequate probable cause. When appropriate, the DDA will accompany the writing officer to the Judge's Chambers for signing of the warrant, in the event there are legal questions requiring the DDA's expertise.

| FY | Dates | Annual Compensation | Grant Funded Months | Dollars |
|----|-------|---------------------|---------------------|---------|
| FY19 | 10/1/19 to 6/30/20 | $ 154,761 | 9 | $ 55,860 |
| FY20 | 7/1/20 to 6/30/21 | $ 164,820 | 12 | $ 74,480 |
| FY21 | 7/1/21 to 9/30/21 | $ 173,061 | 3 | $ 18,620 |
| | | | 24 | $ 148,960 |

## City of Gresham Programs

*Identifiers: Education and Overtime*

The City of Gresham Police Department (GPD) will use a portion of 2018 JAG funds to support the "Every 15 Minutes" program. "Every 15 Minutes" (EFM) offers real-life experience without the real-life risks. This emotionally charged program is designed to dramatically instill teenagers with the potentially dangerous consequences of drinking alcohol and texting while driving (distracted and impaired driving). This powerful program will challenge students to think about drinking, texting while driving, personal safety, and the responsibility of making mature decisions when lives are involved. This program is held at four Gresham high schools. The event

U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Assistance
Edward Byrne Memorial Justice Assistance Grant (JAG) Program:
FY 2018 Local Solicitation; #BJA-2018-13626
City of Portland, Oregon Police Bureau
Program Narrative
Application Attachment 2

---

is held in the spring and the requested budget will fund the program for school years FY 2019

through FY 2021.


*Grant Program Accountability Measures*

The subgrantee and subrecipients will report on their relevant General Information,

Activity-Program Selection, Program Module, and semi-annual Goals & Objectives in accordance

with the applicable JAG Accountability Measures in the BJA Performance Measurement Tool

(PMT).

| **Personnel** | | | | | | | | Per Year | |
|---|---|---|---|---|---|---|---|---|---|
| Sworn personnel overtime for school years 2019, 2020 and 2021 | | | | | Years | | | | |
| Average OT Rate | $68.33 | x | 198.585 | Hours | x | 3 | 40,710 | 13,570 | rounded |
| **Fringe Benefits** | | | | | | | | | |
| | FICA | 7.65% | x | $40,709.77 | | | 3,114 | | |
| | Workers' Comp | 2.75% | x | $40,709.77 | | | 1,120 | | |
| | Unemployment | 0.30% | x | $40,709.77 | | | 122 | | |
| | | | | | | | 4,356 | 1,452 | rounded |
| **Supplies** | Qty. | | | Price/Unit | | Years | | | |
| Fresh Flowers | 16 | x | | $18.00 | x | 3 | 864 | | |
| Black Roses | 40 | x | | $4.00 | x | 3 | 480 | | |
| Make-up/Remover | 25 | x | | $3.00 | x | 3 | 225 | | |
| Paint | 3 | x | | $58.00 | x | 3 | 522 | | |
| Replacement Robes | 5 | x | | $65.00 | x | 3 | 975 | | |
| Robe Dry-Cleaning | 30 | x | | $16.00 | x | 3 | 1,440 | | |
| Staging Supplies | 1 | x | | $45.00 | x | 3 | 135 | | |
| Gloves | 15 | x | | $16.50 | x | 3 | 743 | | |
| T-shirts & Printing | 100 | x | | $8.00 | x | 3 | 2,400 | | |
| Banners | 4 | x | | $25.00 | x | 3 | 300 | | |
| | | | | | | | 8,084 | 2,695 | rounded |
| **Total Every 15 Minutes Budget** | | | | | | | $ 53,149 | $17,716 | rounded |

Decl. of Nordeen
Exhibit 5, Page 26 of 38

U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Assistance
Edward Byrne Memorial Justice Assistance Grant (JAG) Program:
FY 2018 Local Solicitation; #BJA-2018-13626
City of Portland, Oregon Police Bureau
Program Narrative
Application Attachment 2

---

*Additional Performance Measures for the District Attorney's Office*

The Multnomah County District Attorney's Office (MCDA) is committed to employing evidence based practices in order to make certain that the goals of the program are fully realized. To that end, MCDA will demonstrate success through additional performance measures that include the capture and reporting of the activities outlined the in above narrative. In addition, MCDA will track the outcomes of those activities to ensure that results are consistent with the goals of the program. The MCDA will utilize data points provided by Local Public Safety Coordination Counsel (LPSCC), a body which tracks objective crime data in Multnomah County, in addition to data provided internally that measures the number of cases issued and indicted, as well as the case outcomes. Further, the Neighborhood DDA will personally track law enforcement and community contacts.

In order to further effectuate the program goals, the Neighborhood DDA will screen misdemeanor and select felony cases with a particular emphasis on prosecuting chronic residential burglaries, problem drug, and chronic nuisance properties. The Neighborhood DDA will meet with precinct police officers, attend community and business group meetings, and develop and maintain projects and cases that specifically target quality of life problems in their neighborhood area.

| Activity | Data Collection Method | Projected Measurements: 6 Months | Projected Measurements: 12 months |
|---|---|---|---|
| Misdemeanor and Felony case screening | Specific case flags are assigned to all cases screened by the | 150 cases screened | 300 cases screened |

Decl. of Nordeen
Exhibit 5, Page 27 of 38

U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Assistance
Edward Byrne Memorial Justice Assistance Grant (JAG) Program:
FY 2018 Local Solicitation; #BJA-2018-13626
City of Portland, Oregon Police Bureau
Program Narrative
Application Attachment 2

| | Neighborhood DDA and track in MCDA's internal database | | |
|---|---|---|---|
| Community Meeting Attendance | Neighborhood DDA complies monthly list of meetings | 25 meetings | 50 meetings |
| Individual Citizen Contacts | Neighborhood DDA maintains monthly list of contacts | 1000 citizens | 2000 citizens |
| Business Contacts | Neighborhood DDA maintains monthly list of contacts | 50 business contacts | 100 business contacts |
| Individual Police Contacts | Neighborhood DDA maintains monthly list of contacts | 2000 officers | 4000 officers |
| Governmental Agency Contacts | Neighborhood DDA maintains monthly list of contacts | 100 agency contacts | 200 agency contacts |
| Neighborhood Group and Association Contacts | Neighborhood DDA maintains monthly list of contacts | 40 groups / associations | 80 groups / associations |
| Crime Prevention Projects | Neighborhood DDA maintains list of projects developed and maintained, as well as a log of hours spent working these projects | 200 hours | 400 hours |
| Search warrants executed against neighborhood drug and chronic nuisance properties | Neighborhood DDA maintains list of search warrants written and executed | 1-2 search warrant | 2-4 search warrants |
| Felony residential burglary charges indicted | Specific case flags are assigned to all cases prosecuted by the Neighborhood DDA and tracked in MCDA's internal database. | 6 separate burglaries | 12 separate burglaries |

Decl. of Nordeen
Exhibit 5, Page 28 of 38

U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Assistance
Edward Byrne Memorial Justice Assistance Grant (JAG) Program:
FY 2018 Local Solicitation; #BJA-2018-13626
City of Portland, Oregon Police Bureau
Program Narrative
Application Attachment 2

---

*Coordination of Related JAG Funds*

The cities of Portland and Gresham and the county of Multnomah do not anticipate any coordination of Fiscal Year 2018 JAG funded projects.

Decl. of Nordeen
Exhibit 5, Page 29 of 38

USDOJ OJP BJA Edward Byrne Memorial Justice Assistance Grant (JAG) Program:
FY 2018 Local Solicitation: #BJA-2018-13626
City of Portland, Oregon Police Bureau
BDW Attachment 3
Budget Summary

## Budget Summary

*Note: Any errors detected on this page should be fixed on the corresponding Budget Detail tab.*

| Budget Category | Year 1 | | Year 2 (if needed) | | Year 3 (if needed) | | Year 4 (if needed) | | Year 5 (if needed) | | Total(s) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Federal Request | Non-Federal Request | Federal Request | Non-Federal Request | Federal Request | Non-Federal Request | Federal Request | Non-Federal Request | Federal Request | Non-Federal Request | |
| A. Personnel | $72,348 | $0 | $29,630 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $101,978 |
| B. Fringe Benefits | $1,050 | $0 | $430 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $1,480 |
| C. Travel | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| D. Equipment | $10,000 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $10,000 |
| E. Supplies | $41,300 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $41,300 |
| F. Construction | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| G. Subawards (Subgrants) | $73,577 | $0 | $92,196 | $0 | $36,336 | $0 | $0 | $0 | $0 | $0 | $202,109 |
| H. Procurement Contracts | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| I. Other | $34,827 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $34,827 |
| Total Direct Costs | $233,102 | $0 | $122,256 | $0 | $36,336 | $0 | $0 | $0 | $0 | $0 | $391,694 |
| J. Indirect Costs | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Total Project Costs | $233,102 | $0 | $122,256 | $0 | $36,336 | $0 | $0 | $0 | $0 | $0 | $391,694 |
| Does this budget contain conference costs which is defined broadly to include meetings, retreats, seminars, symposia, and training activities? - Y/N | | | | | | | | | No | | |

U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Assistance
Edward Byrne Memorial Justice Assistance Grant (JAG) Program:
FY 2018 Local; Solicitation No. BJA-2018-13626
City of Portland, Oregon Police Bureau
Additional Attachments:
Applicant Information Regarding Communication with DHS and/or ICE
Application Attachment 4

---

Applicant name:  City of Portland, Oregon

1. *Does your jurisdiction have any laws, policies, or practices related to whether, when, or how your employees may communicate with DHS or ICE?*
2. *Is your jurisdiction subject to any laws from a superior political entity (e.g., a state law that binds a city) that meets the description in question 1?*
3. *If yes to either:*
    o *Please provide a copy of each law or policy;*
    o *Please describe each practice; and*
    o *Please explain how the law, policy, or practice complies with Section 1373.*

    The United States Court of Appeals for the Ninth Circuit has held that Executive Order 13,768, "Enhancing Public Safety in the Interior of the United States," which directed the Department of Justice to "withhold funds appropriated by Congress in order to further the Administration's policy objective of punishing cities and counties that adopt so-called 'sanctuary' policies," is unconstitutional because it "violates the constitutional principle of the Separation of Powers." *City & County. of San Francisco v. Trump et al.*, __ P.3d __, 2018 WL 3637911 (9th Cir. Aug. 1, 2018). Furthermore, federal courts have held that that Congress "did not impose any immigration enforcement conditions" on the receipt of JAG funds—"In fact, Congress repeatedly *refused* to approve of measures that would tie funding to state and local immigration policies"— that Section 1373 is unconstitutional under the Tenth Amendment, and that "the Attorney General has no authority to demand compliance with Section 1373 * * * under the Byrne JAG statute." *City of Chicago v. Sessions*, 888 F.3d 272, 277 (7th Cir. 2018) (emphasis added); *City of Chicago v. Sessions*, __ F. Supp.3d __, 2018 WL 3608564 (N.D. Ill. July 27, 2018).

U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Assistance
Edward Byrne Memorial Justice Assistance Grant (JAG) Program:
FY 2018 Local; Solicitation No. BJA-2018-13626
City of Portland, Oregon Police Bureau
Additional Attachments:
Applicant Information Regarding Communication with DHS and/or ICE
Application Attachment 4

---

For those reasons, and without waiving any other arguments, claims, or defenses, the requests and conditions placed upon the award and disbursement of JAG funds in Paragraph 11(a) of the 2018 solicitation are unlawful, unconstitutional, unenforceable, and *ultra vires*. The City accordingly declines to provide the information requested in Paragraph 11(a) on page 27.

U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Assistance
Edward Byrne Memorial Justice Assistance Grant (JAG) Program:
FY 2018 Local Solicitation; #BJA-2018-13626
City of Portland, Oregon Police Bureau
Additional Attachments:  Applicant Disclosure of Pending Applications
Application Attachment 5

---

Applicant name:        City of Portland, Oregon

The City of Portland does not have pending applications submitted within the last 12 months for federally funded assistance that include requests for funding to support the same projects being proposed under this solicitation and will cover the identical cost items outlined in the budget narrative and worksheet in the application under this solicitation.

Decl. of Nordeen
Exhibit 5, Page 33 of 38

U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Assistance
Edward Byrne Memorial Justice Assistance Grant (JAG) Program:
FY 2018 Local Solicitation; #BJA-2018-13626
City of Portland, Oregon Police Bureau
Additional Attachments:  Memoranda of Understanding
Application Attachment 6

---

The City of Portland will execute the appropriate legal instrument (Intergovernmental Agreement) with each disparate JAG partner upon notification of the 2018 award.    The Intergovernmental Agreements, with their terms and conditions, require award information per 2 CFR 200 Uniform Guidance.

Decl. of Nordeen
Exhibit 5, Page 34 of 38

8/22/2018

BJA FY 18 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - Local Solicitation

 BJA FY 18 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - Local Solicitation  2018-H4208-OR-DJ 

<u>Application</u>          <u>Correspondence</u>          Application: [ Switch to ...          ▼ ]

**Review SF-424**  <u>Print a Copy</u>

**Application Handbook**

<u>Overview</u>

<u>Applicant Information</u>

<u>Project Information</u>

<u>Budget and Program Attachments</u>

<u>Assurances and Certifications</u>

<u>Review SF 424</u>

<u>Submit Application</u>

<u>Help/Frequently Asked Questions</u>

<u>GMS Home</u>

<u>Log Off</u>

| APPLICATION FOR FEDERAL ASSISTANCE | 2. DATE SUBMITTED | Applicant Identifier |
|---|---|---|
| **1. TYPE OF SUBMISSION**<br><br>Application Non-Construction | **3. DATE RECEIVED BY STATE** | **State Application Identifier** |
| | **4. DATE RECEIVED BY FEDERAL AGENCY** | **Federal Identifier** |

| **5.APPLICANT INFORMATION** | |
|---|---|
| **Legal Name**<br><br>City of Portland, Oregon | **Organizational Unit**<br><br>Portland Police Bureau |
| **Address**<br><br>1120 SW Fifth Ave., Room 1250<br>Portland, Oregon<br>97204-1912 | **Name and telephone number of the person to be contacted on matters involving this application**<br><br>Clark, Michael<br>(503) 823-6862 |
| **6. EMPLOYER IDENTIFICATION NUMBER (EIN)**<br><br>93-6002236 | **7. TYPE OF APPLICANT**<br><br>Municipal |
| **8. TYPE OF APPLICATION**<br><br>New | **9. NAME OF FEDERAL AGENCY**<br><br>Bureau of Justice Assistance |
| **10. CATALOG OF FEDERAL DOMESTIC ASSISTANCE**<br><br>NUMBER: 16.738<br>CFDA TITLE: Edward Byrne Memorial Justice Assistance Grant Program | **11. DESCRIPTIVE TITLE OF APPLICANT'S PROJECT**<br><br>2018 Portland Metropolitan Area Law Enforcement Community Justice Assistance Grant (JAG) Program |

| **12. AREAS AFFECTED BY PROJECT** |
|---|
| The cities of Portland and Gresham and the counties of Multnomah, Washington and Clackamas |

| **13. PROPOSED PROJECT**<br>Start Date:      October 01, 2018<br>End Date:        September 30, 2021 | **14. CONGRESSIONAL DISTRICTS OF**<br><br>a. Applicant<br>b. Project        OR01 OR03 OR05 |
|---|---|

| **15. ESTIMATED FUNDING** | | **16. IS APPLICATION SUBJECT TO REVIEW BY STATE EXECUTIVE ORDER 12372 PROCESS?** |
|---|---|---|
| Federal | $391,694 | |
| Applicant | $0 | Program has not been selected by state for review |
| State | $0 | |
| Local | $0 | |
| Other | $0 | |
| Program Income | $0 | **17. IS THE APPLICANT DELINQUENT ON ANY FEDERAL DEBT?** |
| TOTAL | $391,694 | N |

| **18. TO THE BEST OF MY KNOWLEDGE AND BELIEF, ALL DATA IN THIS APPLICATION PREAPPLICATION ARE TRUE AND CORRECT, THE DOCUMENT HAS BEEN DULY AUTHORIZED** |
|---|

Decl. of Nordeen
Exhibit 5, Page 35 of 38

1/2

8/22/2018

Case 6:18-cv-01959-MC    Document 25    Filed 04/08/19    Page 191 of 199
BJA FY 18 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - Local Solicitation

**BY GOVERNING BODY OF THE APPLICANT AND THE APPLICANT WILL COMPLY WITH THE ATTACHED ASSURANCES IF THE ASSISTANCE IS REQUIRED.**

Continue

8/22/18

Ted Wheeler, Mayor

Decl. of Nordeen
Exhibit 5, Page 36 of 38

 **BJA FY 18 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - Local Solicitation** 2018-H4206-OR-DJ 

Help/Frequently
Asked Questions

GMS Home

Log Off

**Submit Application**

Your application for the BJA FY 18 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - Local Solicitation has been successfully submitted. You will no longer be able to edit any information submitted. However, you can log in any time to view the application information.

You will be contacted by the Program Office when your application is processed or any other action is required by you.

Decl. of Nordeen
Exhibit 5, Page 37 of 38

 BJA FY 18 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - Local Solicitation  2018-H4206-OR-DJ 

<u>Application</u>          <u>Correspondence</u>          Application: | Switch to ... ▼ |

**Application Handbook**   **Submit Application**

<u>Overview</u>

<u>Applicant Information</u>

<u>Project Information</u>

<u>Budget and Program Attachments</u>

<u>Assurances and Certifications</u>

<u>Review SF 424</u>

<u>Submit Application</u>

<u>Help/Frequently Asked Questions</u>

<u>GMS Home</u>

<u>Log Off</u>

- Application submitted and last updated on 22-Aug-2018

Decl. of Nordeen
Exhibit 5, Page 38 of 38

**Nordeen, Veronica**

| | |
|---|---|
| **From:** | Wiley, Heather (OJP) <Heather.Wiley@usdoj.gov> |
| **Sent:** | Thursday, October 12, 2017 11:00 AM |
| **To:** | Nordeen, Veronica |
| **Subject:** | RE: JAG 2017 Funding Notification |

Not yet, we are hoping we will receive further information by the end of the week.

Heather

**From:** Nordeen, Veronica [mailto:Veronica.Nordeen@portlandoregon.gov]
**Sent:** Thursday, October 12, 2017 1:42 PM
**To:** Wiley, Heather (OJP) <Heather.Wiley@ojp.usdoj.gov>
**Subject:** JAG 2017 Funding Notification

Good afternoon,

Has BJA sent out award letters to JAG 2017 awardees?

Veronica Nordeen
PPB Fiscal - Grants
503-823-0331

**Nordeen, Veronica**

| | |
|---|---|
| **From:** | Nordeen, Veronica |
| **Sent:** | Wednesday, July 18, 2018 9:09 AM |
| **To:** | Tillstrom, Nils |
| **Subject:** | FW: BJA Contact Update   FW: JAG 2017 Application |



**From:** Wiley, Heather (OJP) [mailto:Heather.Wiley@usdoj.gov]
**Sent:** Thursday, July 12, 2018 10:40 AM
**To:** Clark, Michael <Michael.Clark@portlandoregon.gov>
**Cc:** Nordeen, Veronica <Veronica.Nordeen@portlandoregon.gov>
**Subject:** RE: JAG 2017 Application

Michael,

There is no further information at this time.

Heather

**From:** Clark, Michael [mailto:Michael.Clark@portlandoregon.gov]
**Sent:** Thursday, July 12, 2018 1:16 PM
**To:** Wiley, Heather (OJP) <Heather.Wiley@ojp.usdoj.gov>
**Cc:** Nordeen, Veronica <Veronica.Nordeen@portlandoregon.gov>
**Subject:** RE: JAG 2017 Application

Good morning Heather,

Just checking in about the status of the 2017 JAG grant.  We noticed on the BJA website that the majority of the state, local and tribal FY JAG awards have been processed.

**Important Updates**

As a result of a stay issued by the 7th Circuit on June 26, 2018, BJA has now processed the majority of the state, local and tribal FY17 JAG awards. Reviews of some applications remain ongoing. A list of completed awards will be available on OJP's website at:

https://ojp.gov/funding/Explore/OJPAwardData.htm

Thanks in advance for any information that you can provide.

Michael

**From:** Clark, Michael
**Sent:** Monday, July 02, 2018 7:59 AM
**To:** Wiley, Heather (OJP) <Heather.Wiley@usdoj.gov>
**Cc:** Nordeen, Veronica <Veronica.Nordeen@portlandoregon.gov>
**Subject:** RE: JAG 2017 Application

Good morning Heather,

Thank you for the update.  We appreciate the support you provide with our JAG grants.

Thanks,

Michael

**From:** Wiley, Heather (OJP) [mailto:Heather.Wiley@usdoj.gov]
**Sent:** Monday, July 2, 2018 7:50 AM
**To:** Clark, Michael <Michael.Clark@portlandoregon.gov>
**Cc:** Nordeen, Veronica <Veronica.Nordeen@portlandoregon.gov>
**Subject:** RE: JAG 2017 Application

Michael,

2

Thank you for your note, I inquired about the 2017 JAG grant and I was told this morning that there is no timeframe on when this will be resolved. Management here is currently working with several offices at this time but we cannot provide a date for resolution. Apologies for the impact this is having on your program.

Kindly,

Heather

**From:** Clark, Michael [mailto:Michael.Clark@portlandoregon.gov]
**Sent:** Friday, June 29, 2018 3:40 PM
**To:** Wiley, Heather (OJP) <Heather.Wiley@ojp.usdoj.gov>
**Cc:** Nordeen, Veronica <Veronica.Nordeen@portlandoregon.gov>
**Subject:** RE: JAG 2017 Application

Thank you. We haven't received any official correspondence yet, but wanted to know for planning purposes.

Have a wonderful weekend!

Michael

**From:** Wiley, Heather (OJP) [mailto:Heather.Wiley@usdoj.gov]
**Sent:** Friday, June 29, 2018 12:31 PM
**To:** Clark, Michael <Michael.Clark@portlandoregon.gov>
**Cc:** Nordeen, Veronica <Veronica.Nordeen@portlandoregon.gov>
**Subject:** Re: JAG 2017 Application

Not at this time, my understanding is that there will be an update soon. Did your office receive any official correspondence yet?

Sent from my iPhone

On Jun 29, 2018, at 1:53 PM, Clark, Michael <Michael.Clark@portlandoregon.gov> wrote:

> Good morning Heather,
>
> I was wondering if you could provide any updates about the status of our JAG 2017 application.
>
> Thanks,
>
> Michael
>
> Michael Clark, MIB, MA, MLS, GCPM, GMC
> OMF - Grants Management Division/GMD | City of Portland, Oregon
> 1120 SW Fifth Ave., Rm. 1250; Portland, OR 97204-1912
> Phone: 1.503.823.6862 | ✉ michael.clark@portlandoregon.gov
> Telework Schedule: Tuesdays (every week) & Thursdays (alternating weeks)

# Portland Police Increasing Outreach to Address Safety Concerns in Immigrant and Refugee Community (Photo)



PPB_Everyone.jpg

**January 30, 2017 15:20**

Today, Monday January 30, 2017, Portland Police Bureau Chief Mike Marshman stood with community members, including those from our immigrant and refugee community, to provide reassurances to people struggling with uncertainty and fear.

At today's news conference, Chief Marshman shared a statement he sent to all members of the Portland Police Bureau:

"On Friday January 27, 2017, President Donald Trump signed an executive order restricting travel to the United States from seven countries in what is being described by many as a "Muslim ban." This action has spread fear and uncertainty to our refugee and immigrant communities served by the Portland Police Bureau.

"I want you, the members of the Portland Police Bureau, to be a source of reassurance to the community. We must be diligent in our efforts to the community who now more than ever might see us as a source of fear. We must be the ones who reach out first to all whom we serve and be able to answer their questions and provide clarity on what our role is in regard to immigration. That means giving assurance that we are not an extension of Immigration and Customs Enforcement (ICE). We follow and enforce Oregon law. We do not enforce federal immigration laws, under Oregon Revised Statute (ORS) 181A.820 https://www.oregonlaws.org/ors/181A.820

"I further ask that you continue to provide extra patrol around mosques, Islamic schools and community centers as another layer of protection for those in our community who may be experiencing fear and anxiety, especially after an attack in Quebec, Canada on Sunday. While we have no known threats locally, our presence may provide reassurances to those in fear.

"Over the past few months, I have received many heartfelt thanks from the immigrant and refugee communities describing their positive encounters with Portland Police officers. Although these communities have a heightened sense of fear and uncertainty, I am confident we will continue to be an agency they can turn to for safety and security."

The Bureau investigates all reported incidents of bias crimes and encourages any member of our community who is the victim of such a crime to contact law enforcement. Under Oregon law, bias crimes are defined as any criminal act that targets a victim based on the suspect's perception of the victim's race, color, religion, sexual orientation, disability, or national origin. Detectives work to determine whether or not bias elements are present during the reported crime that align with Oregon law as defined in ORS:

Portland Police News Articles | Portland, Oregon

* ORS 166.165 - Intimidation in the First Degree - https://www.oregonlaws.org/ors/166.165

* ORS 166.155 -- Intimidation in the Second Degree - https://www.oregonlaws.org/ors/166.155

If you have been the victim of a bias crime assault, immediately call 9-1-1. If you have been the victim of a bias crime, such as vandalism or graffiti, please call the non-emergency line at 503-823-3333.

To learn more about bias crime investigations, please visit http://www.portlandoregon.gov/police/article/423009

The Bureau has several community advisory groups and outreach opportunities for community members and police officers to come together. Advisory groups include the Portland Muslim Community Police Council, the Alliance for Safer Communities, the African American Advisory Council, and the Slavic Advisory Council. To learn more about these advisory groups and the Bureau's commitment to the Portland community, please visit http://www.portlandoregon.gov/police/30379

###PPB###

*************


Media Relations:
PPBPIO@portlandoregon.gov
Phone: 503-823-0830
1111 SW 2nd Ave
Portland, OR 97204

     

Decl. of Nordeen
Exhibit 8, Page 2 of 2

2/2